IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
        :
In re:                               :    Chapter 11
        :
FILENE'S BASEMENT, LLC, et al.,        :    Case No. 11-13511 (___)
        :
           Debtors.[1]          :    Joint Administration Pending
        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' APPLICATION FOR ENTRY OF ORDER PURSUANT TO 28 U.S.C. §
156(C), FED. R. BANKR. P. 2002 AND DEL. BANKR. L.R. 2002-1(F) AUTHORIZING
DEBTORS TO EMPLOY AND RETAIN KURTZMAN CARSON
CONSULTANTS LLC AS NOTICE, CLAIMS AND
SOLICITATION AGENT *NUNC PRO TUNC* TO THE PETITION DATE**

The debtors and debtors in possession in the above-captioned cases (collectively, the

"Debtors") hereby apply (the "Application") for entry of an order (the "Order") pursuant to

section 156(c) of title 28 of the United States Code, section 503(b) of title 11 of the United States

Code (the "Bankruptcy Code"), Rule 2002 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and Rules 2002-1(f) and 9013-1(m) of the Local Rules of Bankruptcy

Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the

"Local Bankruptcy Rules"), authorizing the Debtors' employment and retention of Kurtzman

Carson Consultants LLC ("KCC") as notice, claims and solicitation agent in connection with the

Debtors' chapter 11 cases.  In support of this Application, the Debtors rely upon and incorporate

by reference (1) the Declaration of Gary Binkoski in Support of Chapter 11 Petitions and First

Day Pleadings (the "First Day Declaration"), filed with the Court concurrently herewith and

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Filene's
Basement, LLC (8277), Syms Corp. (5228), Syms Clothing, Inc. (3869), and Syms Advertising Inc. (5234).
The Debtors' address is One Syms Way, Secaucus, New Jersey 07094.

(2) the Affidavit of Albert Kass, Vice President of Corporate Restructuring Services of KCC (the "Kass Affidavit"), which is attached hereto as Exhibit A.  In further support of this Application, the Debtors respectfully state as follows:

## JURISDICTION

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of these cases and this Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The legal predicates for the relief requested herein are 28 U.S.C. § 156(c) and Bankruptcy Code section 503(b).  Such relief is also warranted pursuant to Bankruptcy Rule 2002 and Local Bankruptcy Rules 2002-1(f) and 9013-1(m).

## BACKGROUND

2.      On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.  The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these bankruptcy cases, is set forth in detail in the First Day Declaration, filed concurrently herewith and fully incorporated herein by reference.[2]

3.      The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

## RELIEF REQUESTED

4.      By this Application, the Debtors seek to retain and employ KCC, *nunc pro tunc* to the Petition Date, subject to that certain agreement for services, dated as of October 20,

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

2011, by and between KCC and the Debtors (such agreement together with all amendments, modifications, renewals thereof and all documents ancillary thereto or otherwise entered into in connection therewith, are collectively referred to herein as the "Services Agreement"), a copy of which is attached hereto as Exhibit B and incorporated by reference herein.

## KCC'S QUALIFICATIONS

5.        As described in the First Day Declaration, the Debtors have thousands of potential creditors and stakeholders.  In addition to these creditors, there are thousands of other parties in interest in the Debtors' chapter 11 cases.  Although the office of the Clerk of the United States Bankruptcy Court for the District of Delaware (the "Clerk's Office") ordinarily would serve notices on the Debtors' creditors, stakeholders and other parties in interest and administer claims against the Debtors, the Clerk's Office may not have the resources to undertake such tasks, especially in light of the sheer magnitude of the Debtors' creditor body and the tight timelines that frequently arise in chapter 11 cases.

6.        Accordingly, the Debtors propose to engage KCC to act as the Debtors' notice, claims and solicitation agent.  This retention is the most effective and efficient manner of noticing the thousands of creditors, stakeholders and parties in interest of the filing of the chapter 11 cases and other developments in the chapter 11 cases.  In that capacity, KCC will transmit, receive, docket and maintain proofs of claim filed in connection with the chapter 11 cases.

7.        KCC is a bankruptcy administrator that specializes in providing comprehensive chapter 11 administrative services including noticing, claims processing, balloting and other related services critical to the effective administration of chapter 11 cases. Indeed, KCC has developed efficient and cost-effective methods to handle properly the voluminous mailings associated with the noticing, claims processing and balloting portions of chapter 11 cases to ensure the orderly and fair treatment of creditors, equity security holders and

all parties in interest. Further, KCC will work with the Clerk's Office to ensure that such methodology conforms with all of the Court's procedures, the Local Bankruptcy Rules and the provisions of any orders entered by this Court.

        8.    KCC has substantial experience in matters of this size and complexity and has acted as the official notice, claims and solicitation agent in many large bankruptcy cases in this District and other jurisdictions. See, e.g., In re NewPage Corp., Case No. 11-12804 (Bankr. D. Del. Sept. 8, 2011); In re Neb. Book Co., Inc., Case No. 11-12005 (Bankr. D. Del. June 28, 2011); In re DSI Holdings, Inc., Case No. 11-11941 (Bankr. D. Del. June 26, 2011); In re Caribe Media, Inc., Case No. 11-11387 (Bankr. D. Del. May 5, 2011); In re Barnes Bay Development, Ltd., Case No. 11-10792 (Bankr. D. Del. Mar. 17, 2011); In re New Stream Secured Capital, Inc., Case No. 11-10753 (Bankr. D. Del. Mar. 15, 2011); In re Ultimate Acquisition Partners, LP, Case No. 11-10245 (Bankr. D. Del. Jan. 26, 2011); In re Javo Beverage Co., Case No. 11-10212 (Bankr. D. Del. Jan. 24, 2011); In re Appleseed's Intermediate Holdings LLC, Case No. 11-10160 (Bankr. D. Del. Jan. 19, 2011); In re Constar Int'l Inc., Case No. 11-10109 (Bankr. D. Del. Jan. 13, 2011); In re Local Insight Media Holdings, Inc., Case No. 10-13677 (Bankr. D. Del. Nov. 19, 2010); In re Claim Jumper Rests., LLC, Case No. 10-12819 (Bankr. D. Del. Sept. 13, 2010); In re Caribbean Petroleum Corp., Case No. 10-12553 (Bankr. D. Del. Aug. 23, 2010); In re Am. Safety Razor Co., Case No. 10-12351 (Bankr. D. Del. July 30, 2010); In re Marco Polo Seatrade B.V., Case No. 11-13634 (Bankr. S.D.N.Y. July 29, 2011); In re MSR Resort Golf Course LLC, Case No. 11-10372 (Bankr. S.D.N.Y. Feb. 3, 2011); In re Vertis Holdings, Inc., Case No. 10-16170 (Bankr. S.D.N.Y. Nov. 17, 2010); In re Am. Media, Inc., Case No. 10-16140 (Bankr. S.D.N.Y. Nov. 19, 2010); In re Loehmann's Holdings, Inc., Case No. 10-16077 (Bankr. S.D.N.Y. Nov. 15, 2010); In re Archdiocese of Milwaukee, Case No. 11-20059 (Bankr. E.D.

Wisc. Jan. 4, 2011); In re Black Gaming, LLC, No. 10-13301 (Bankr. D. Nev. Mar. 5, 2010); In re Movie Gallery, Inc., No. 10-30696 (Bankr. E.D. Va. Feb. 3, 2010).[3]

## SERVICES TO BE PROVIDED

9.      Specifically, the Debtors seek to engage KCC to provide certain noticing, claims processing and balloting administration services, as may be requested by the Debtors, including, without limitation:

(a)     Preparing and serving required notices and documents in the chapter 11 cases, including:

    (i)     notice of the commencement of the chapter 11 cases and the initial meeting of creditors under Bankruptcy Code § 341(a);

    (ii)    a notice of the claims bar date;

    (iii)   notices of objections to claims and objections to transfers of claims;

    (iv)    notices of hearings on motions filed by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee");

    (v)     notices of transfers of claims;

    (vi)    notices of any hearings on a disclosure statement and confirmation of a plan or plans of liquidation; and

    (vii)   such other miscellaneous notices and documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of the chapter 11 cases.

(b)     Within seven days after the mailing of a particular notice, filing with the Court a copy of the notice served with a certificate of service attached indicating the name and complete address of each party served.

    (i)     Receiving, examining, and maintaining copies of all proofs of claim and proofs of interest filed in the chapter 11 cases.

(c)     Maintaining official claims registers in the chapter 11 cases by docketing all proofs of claim and proofs of interest in a claims database that includes the following information for each such claim or interest asserted:

---

[3] Because of the voluminous nature of the orders cited herein, they are not attached to the Application. Copies of these orders, however, are available on request.

(i)      the name and address of the claimant or interest holder and any agent thereof, if the proof of claim or proof of interest was filed by an agent;

(ii)     the date the proof of claim or proof of interest was received by KCC and/or the Court;

(iii)    the claim number assigned to the proof of claim or proof of interest;

(iv)    the asserted amount and classification of the claim; and

(v)     the applicable Debtor against which the claim or interest is asserted.

(d)    Recording all transfers of claims pursuant to Bankruptcy Rule 3001(e).

(e)    Revising the creditor matrix after the objection period expires.

(f)    Recording any order entered by the Court which may affect a claim by making a notation on the claims register.

(g)    Monitoring the Court's docket for any claims related pleading filed and making necessary notations on the claims register.

(h)    Maintaining a separate claims register for each Debtor.

(i)    Filing a quarterly updated claims register with the Court in alphabetical and numerical order.  If there was no claims activity, a certification of no claim activity may be filed.

(j)    Maintaining an up-to-date mailing list of all creditors and all entities who have filed proofs of claim or proofs of interest and/or request for notices in the case and providing such list to the Court or any interested party upon request (within 48 hours).

(k)    Providing access to the public for examination of claims and the claims register at no charge.

(l)    Forwarding all claims, an updated claims register and an updated mailing list to the Court within 10 days of entry of an order converting a case or within 30 days of entry of a final decree.  The claims register and mailing list will be provided in both paper and on disc and in alphabetical and numerical order.  The mailing list disc will be in .txt format.

(m)   Implementing necessary security measures to ensure the completeness and integrity of the claims registers.

(n)    Complying with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

(o)    Providing temporary employees to process claims as necessary.

(p)     Promptly complying with such further conditions and requirements as the Clerk's Office or the Court may at any time prescribe.

(q)     Mail and tabulate ballots for purposes of voting in these chapter 11 cases, and provide a certification and testimony (if necessary) in connection therewith.

(r)     Providing such other claims processing, noticing, and administrative services as may be requested from time to time by the Debtors.

10.     In addition to the foregoing, KCC will assist with, among other things: (a) maintaining and updating the master mailing lists of creditors; (b) to the extent necessary, gathering data in conjunction with the preparation of the Debtors' schedules of assets and liabilities and statements of financial affairs; (c) tracking of claims; and (d) performing other administrative tasks pertaining to the administration of the chapter 11 cases, as may be requested by the Debtors or the Clerk's Office.  KCC will follow the notice and claim procedures that conform to the guidelines promulgated by the Clerk of the Court and the Judicial Conference of the United States and as may be entered by the Court's order.

## COMPENSATION

11.     The fees to be charged by KCC in connection with these chapter 11 cases are set forth in the Services Agreement.  The Debtors propose that the cost of KCC's services be paid from the Debtors' estates as provided by 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(1)(A). The Debtors obtained and reviewed proposals from three other noticing and balloting agents, and as such, the Debtors respectfully submit that KCC's rates for its services in connection with the notice, claims processing and solicitation services are competitive and comparable to the rates charged by their competitors for similar services.  Prior to the Petition Date, the Debtors paid KCC an initial retainer of $25,000.

12.     Furthermore, the Debtors respectfully submit that the fees and expenses incurred by KCC are administrative in nature and, therefore, should not be subject to the

standard fee application procedures for professionals. Specifically, the Debtors request authorization to compensate KCC in accordance with the terms and conditions set forth in the Services Agreement, upon KCC's submission to the Debtors of invoices summarizing in reasonable detail the services rendered and expenses incurred in connection with services provided by KCC to the Debtors.

## INDEMNIFICATION

13. As part of the overall compensation payable to KCC under the terms of the Services Agreement, subject to the limitations described below, the Debtors have agreed to indemnify and hold harmless KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents for any and all losses, claims, damages, judgments, liabilities and expenses (collectively, "Losses") arising out of or relating to KCC's services in these cases, pursuant to the Services Agreement and to the extent permitted by applicable law.

14. The Debtors shall have no obligation to indemnify any person, or provide contribution or reimbursement to any person, for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen primarily from that person's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors allege breach of the KCC's contractual obligations under the Services Agreement unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to that person's gross negligence or willful misconduct, but determined by this Court, after notice and a hearing, to be a claim or expense for which that person should not receive indemnity, contribution, or reimbursement under the terms of the Services Agreement as modified by the Application and Order.

15.     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this case (that order having become a final order no longer subject to appeal); and (ii) the entry of an order closing this chapter 11 case, KCC believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Indemnification Agreement (as modified by this Application Order), including without limitation the advancement of defense costs, KCC must file an application before this Court, and the Debtors may not pay any such amounts before the entry of an order by this Court approving the payment.  This paragraph 15 is intended only to specify the period of time under which the court shall have jurisdiction over any request for fees and expenses for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify KCC.

## KCC'S DISINTERESTEDNESS

16.     Although the Debtors do not propose to retain KCC under section 327 of the Bankruptcy Code, to the best of KCC's knowledge, and except as set forth in the Kass Affidavit, KCC neither holds nor represents an interest materially adverse to the Debtors' estates nor has a connection to the Debtors, their creditors or their related parties with respect to any matter for which KCC will be employed.  KCC may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which KCC serves or has served in a neutral capacity as claims and noticing agent for another chapter 11 debtor.

17.     To the best of the Debtors' knowledge and except as disclosed in the Kass Affidavit, KCC neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed and that it is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, 11 U.S.C. §§ 101-1532, as referred to in section 327(a) of the Bankruptcy Code.

18.     KCC represents, among other things, that:

(a)     it will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as claims and noticing agent;

(b)     by accepting employment in this bankruptcy case, KCC waives any right to receive compensation from the United States government in connection with this case;

(c)     in its capacity as claims and noticing agent, KCC will not be an agent of the United States and will not act on behalf of the United States; and

(d)     KCC will not employ any past or present employees of the Debtors in connection with its work as agent.

19.     Should KCC discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, KCC will use reasonable efforts to file promptly a supplemental affidavit.

**BASIS FOR RELIEF**

20.     Bankruptcy Rule 2002 generally regulates what notices must be provided to creditors and other parties in interest in bankruptcy cases. Under Bankruptcy Rule 2002, the Court may direct that some person other than the Clerk give notice of the various matters described therein.

21.     Section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of a bankruptcy court, authorizes the Court to use "facilities" or "services" other than the Clerk's Office for administration of bankruptcy cases. It states:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

22.     In addition, Local Bankruptcy Rule 2002-1(f) provides, in relevant part, as follows:

> <u>Notice and Claims Clerk</u>.   Upon motion of the debtor or trustee, at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c).   In all cases with more than 200 creditors . . . unless the Court orders otherwise, the debtor shall file such motion on the first day of the case or within seven (7) days thereafter.

Del. Bankr. Local R. 2002-1(f).

23.     Accordingly, § 156(c) of title 28 of the United States Code empowers the Court to utilize outside agents and facilities for notice and claims purposes, provided the Debtors' estates pay the cost of such services.   Additionally, Local Bankruptcy Rule 2002-1(f) requires, in all cases with over 200 creditors (such as these chapter 11 cases), a debtor to file a motion to retain a claims agent on the first day of the case or within seven days thereafter.   Therefore, for all of the foregoing reasons, the Debtors believe that the retention of KCC as the notice, claims and solicitation agent in the chapter 11 cases is in the best interests of the Debtors and their estates, creditors and stakeholders.   Furthermore, the Debtors respectfully submit that the fees and expenses that would be incurred by KCC under the proposed engagement would be administrative in nature and, therefore, should not be subject to standard fee application procedures of professionals.

24.     The relief requested herein is commonly granted in this District.   <u>See</u>, <u>e.g.</u>, <u>In re NewPage Corp.</u>, Case No. 11-12804 (Bankr. D. Del. Sept. 8, 2011); <u>In re Neb. Book Co., Inc.</u>, Case No. 11-12005 (Bankr. D. Del. June 28, 2011); <u>In re DSI Holdings, Inc.</u>, Case No. 11-11941 (Bankr. D. Del. June 26, 2011); <u>In re Caribe Media, Inc.</u>, Case No. 11-11387 (Bankr. D. Del. May 5, 2011); <u>In re Barnes Bay Development, Ltd.</u>, Case No. 11-10792 (Bankr. D. Del. Mar. 17, 2011); <u>In re New Stream Secured Capital, Inc.</u>, Case No. 11-10753 (Bankr. D. Del. Mar. 15, 2011); <u>In re Ultimate Acquisition Partners, LP</u>, Case No. 11-10245 (Bankr. D. Del. Jan. 26,

2011); <u>In re Javo Beverage Co.</u>, Case No. 11-10212 (Bankr. D. Del. Jan. 24, 2011); <u>In re Appleseed's Intermediate Holdings LLC</u>, Case No. 11-10160 (Bankr. D. Del. Jan. 19, 2011); <u>In re Constar Int'l Inc.</u>, Case No. 11-10109 (Bankr. D. Del. Jan. 13, 2011); <u>In re Local Insight Media Holdings, Inc.</u>, Case No. 10-13677 (Bankr. D. Del. Nov. 19, 2010); <u>In re Claim Jumper Rests., LLC</u>, Case No. 10-12819 (Bankr. D. Del. Sept. 13, 2010); <u>In re Caribbean Petroleum Corp.</u>, Case No. 10-12553 (Bankr. D. Del. Aug. 23, 2010); <u>In re Am. Safety Razor Co.</u>, Case No. 10-12351 (Bankr. D. Del. July 30, 2010).[4]

25.     For these reasons, the Debtors submit that the relief requested herein is in the best interest of the Debtors, their estates, creditors, stakeholders and other parties in interest, and therefore, should be granted.

## NOTICE

26.     Notice of this Application will be given to: (i) the United States Trustee for the District of Delaware; (ii) counsel to the agent for the prepetition lenders; (iii) the parties included on the Debtors' lists of twenty (20) largest unsecured creditors; and (iv) all parties entitled to notice pursuant to Local Bankruptcy Rule 9013-1(m).

## NO PRIOR REQUEST

27.     No prior application for the relief requested herein has been made to this or any other court.

## CONCLUSION

28.     WHEREFORE, for the reasons set forth herein and in the First Day Declaration and in the Kass Affidavit, the Debtors respectfully request that this Court enter an order (a) authorizing the Debtors to employ and retain KCC as their notice, claims and

---

[4]     Because of the voluminous nature of the orders cited herein, they are not attached to the Application.  Copies of these orders, however, are available on request.

solicitation agent effective as of the Petition Date; (b) approving the terms of the Services

Agreement; and (c) granting such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
November 2, 2011


FILENE'S BASEMENT, LLC
(on behalf of itself and the other Debtors)

*/s/ Gary Binkoski*
Name: Gary Binkoski

**EXHIBIT A**
**Kass Affidavit**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                 :

In re:                               :    Chapter 11

                                  :

FILENE'S BASEMENT, LLC, et al.,    :    Case No. 11- _____ (__)

                                  :

            Debtors.[1]          :    Joint Administration Pending

                                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### AFFIDAVIT OF ALBERT KASS IN SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF KURTZMAN CARSON CONSULTANTS LLC AS NOTICE, CLAIMS AND SOLICITATION AGENT *NUNC PRO TUNC* TO THE PETITION DATE

1.    I, Albert Kass, being duly sworn, state the following under penalty of perjury:

2.    I am the Vice President of Corporate Restructuring Services of Kurtzman Carson Consultants LLC ("KCC"), a company specializing in the administration of large bankruptcy cases.

3.    I submit this Affidavit in support of the application (the "Application") of the Debtors[2] for authorization to employ and retain KCC as notice, claims and solicitation agent in connection with these chapter 11 cases. Except as otherwise noted, I have personal knowledge of the matters set forth herein.

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Filene's Basement, LLC (8277), Syms Corp. (5228), Syms Clothing, Inc. (3869), and Syms Advertising Inc. (5234). The Debtors' address is One Syms Way, Secaucus, New Jersey 07094.

[2]    All capitalized terms used but otherwise not defined herein shall have the same meanings set forth in the Application.

## KCC'S QUALIFICATIONS

4.     KCC is a bankruptcy administrator that specializes in providing comprehensive chapter 11 administrative services including noticing, claims processing, balloting and other related services critical to the effective administration of chapter 11 cases.  Indeed, KCC has developed efficient and cost-effective methods to handle properly the voluminous mailings associated with the noticing, claims processing and balloting portions of chapter 11 cases to ensure the orderly and fair treatment of creditors, equity security holders and all parties in interest.  Further, KCC will work with the Clerk's Office to ensure that such methodology conforms with all of the Court's procedures, the Local Bankruptcy Rules and the provisions of any orders entered by this Court.

5.     KCC has substantial experience in matters of this size and complexity and has acted as the official notice, claims and solicitation agent in many large bankruptcy cases in this District and other jurisdictions.  See, e.g., In re NewPage Corporation, et al., Case No. 11-12804 (Bankr. D. Del. Sept. 7, 2011); In re DSI Holdings, Inc., et al., Case No. 11-11941 (Bankr. D. Del. June 26, 2011); In re Nebraska Book Co., Inc., et al., Case No. 11-12005 (Bankr. D. Del. June 27, 2011); In re Caribe Media, Inc., et al., Case No. 11-11387 (Bankr. D. Del. May 3, 2011); In re Barnes Bay Development, Ltd., et al., Case No. 11-10792 (Bankr. D. Del. March 17, 2011); In re New Stream Secured Capital, Inc., et al., Case No. 11-10753 (Bankr. D. Del. March 13, 2011); In re Ultimate Acquisition Partners, LP, Case No. 11-10245 (Bankr. D. Del. January 26, 2011); In re Javo Beverage Co., Inc., Case No. 11-10212 (Bankr. D. Del. January 24, 2011); In re Appleseed's Intermediate Holdings LLC, Case No. 11-10160 (Bankr. D. Del. January 19, 2011); In re Constar Int'l Inc., Case No. 11-10109 (Bankr. D. Del. January 11, 2011); In re Local Insight Media Holdings, Inc., et al., Case No. 10-13677 (Bankr. D. Del. November 17, 2010); In re Claim Jumper Restaurants, LLC, et al., Case No. 10-12819 (Bankr. D. Del. September 10,

2010); In re Caribbean Petroleum Corp., et al., Case No. 10-12553 (Bankr. D. Del. August 12,

2010); In re American Safety Razor Company, LLC, et al., Case No. 10-12351 (Bankr. D. Del.

July 28, 2010); In re Marco Polo Seatrade B.V., et al., Case No. 11-13634 (Bankr. S.D.N.Y. July

29, 2011); In re MSR Resort Golf Course LLC, et al., Case No. 11-10372 (Bankr. S.D.N.Y.

February 1, 2011); In re Vertis Holdings, Inc., Case No. 10-16170 (Bankr. S.D.N.Y. November

17, 2010); In re American Media, Inc., Case No. 10-16140 (Bankr. S.D.N.Y. November 17,

2010); In re Loehmann's Holdings, Inc., Case No. 10-16077 (Bankr. S.D.N.Y. November 15,

2010); In re Archdiocese of Milwaukee, Case No. 11-20059 (Bankr. E.D. Wisc. January 4, 2011);

In re Ecoly Int'l, Inc., et al. (a/k/a Sexy Hair Concepts, LLC), Case No. 10-25922 (Bankr. C.D.

Cal. December 21, 2010); In re Black Gaming, LLC, No. 10-13301 (Bankr. D. Nev. Mar. 5,

2010); In re Movie Gallery, Inc., No. 10-30696 (Bankr. E.D. Va. Feb. 3, 2010).[3]

## SERVICES TO BE PROVIDED

6.    Specifically, the Debtors seek to engage KCC to provide certain noticing, claims

processing and balloting administration services including, without limitation:

(a)    Preparing and serving required notices and documents in the chapter 11 cases, including:

   (i)    notice of the commencement of the chapter 11 cases and the initial meeting of creditors under Bankruptcy Code § 341(a);

   (ii)    a notice of the claims bar date;

   (iii)    notices of objections to claims and objections to transfers of claims;

   (iv)    notices of hearings on motions filed by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee");

   (v)    notices of transfers of claims;

---

[3]    Because of the voluminous nature of the orders cited herein, they are not attached to the Application. Copies of these orders, however, are available on request.

(vi)    notices of any hearings on a disclosure statement and confirmation of a plan or plans of liquidation; and

(vii)    such other miscellaneous notices and documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of the chapter 11 cases.

(b)    Within seven days after the mailing of a particular notice, filing with the Court a copy of the notice served with a certificate of service attached indicating the name and complete address of each party served.

    (i)    Receiving, examining, and maintaining copies of all proofs of claim and proofs of interest filed in the chapter 11 cases.

(c)    Maintaining official claims registers in the chapter 11 cases by docketing all proofs of claim and proofs of interest in a claims database that includes the following information for each such claim or interest asserted:

    (i)    the name and address of the claimant or interest holder and any agent thereof, if the proof of claim or proof of interest was filed by an agent;

    (ii)    the date the proof of claim or proof of interest was received by KCC and/or the Court;

    (iii)    the claim number assigned to the proof of claim or proof of interest;

    (iv)    the asserted amount and classification of the claim; and

    (v)    the applicable Debtor against which the claim or interest is asserted.

(d)    Recording all transfers of claims pursuant to Bankruptcy Rule 3001(e).

(e)    Revising the creditor matrix after the objection period expires.

(f)    Recording any order entered by the Court which may affect a claim by making a notation on the claims register.

(g)    Monitoring the Court's docket for any claims related pleading filed and making necessary notations on the claims register.

(h)    Maintaining a separate claims register for each Debtor.

(i)    Filing a quarterly updated claims register with the Court in alphabetical and numerical order. If there was no claims activity, a certification of no claim activity may be filed.

(j)    Maintaining an up-to-date mailing list of all creditors and all entities who have filed proofs of claim or proofs of interest and/or request for notices in the case and

providing such list to the Court or any interested party upon request (within 48 hours).

(k)   Providing access to the public for examination of claims and the claims register at no charge.

(l)   Forwarding all claims, an updated claims register and an updated mailing list to the Court within 10 days of entry of an order converting a case or within 30 days of entry of a final decree. The claims register and mailing list will be provided in both paper and on disc and in alphabetical and numerical order. The mailing list disc will be in .txt format.

(m)   Implementing necessary security measures to ensure the completeness and integrity of the claims registers.

(n)   Complying with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

(o)   Providing temporary employees to process claims as necessary.

(p)   Promptly complying with such further conditions and requirements as the Clerk's Office or the Court may at any time prescribe.

(q)   Mail and tabulate ballots for purposes of voting in these chapter 11 cases, and provide a certification and testimony (if necessary) in connection therewith.

(r)   Providing such other claims processing, noticing, and administrative services as may be requested from time to time by the Debtors.

7.   In addition to the foregoing, KCC will assist with, among other things:

(a) maintaining and updating the master mailing lists of creditors; (b) to the extent necessary, gathering data in conjunction with the preparation of the Debtors' schedules of assets and liabilities and statements of financial affairs; (c) tracking of claims; and (d) performing other administrative tasks pertaining to the administration of the chapter 11 cases, as may be requested by the Debtors or the Clerk's Office. KCC will follow the notice and claim procedures that conform to the guidelines promulgated by the Clerk of the Court and the Judicial Conference of the United States and as may be entered by the Court's order.

## COMPENSATION

8.    The Services Agreement sets forth the fees KCC charges for the services it will provide to the Debtors.  The proposed compensation arrangement is consistent with, and typical of, arrangements of KCC and its competitor firms to provide claims and noticing agent services in chapter 11 cases.

9.    KCC requests that the Debtors pay their fees and expenses in accordance with the terms of the Services Agreement.  KCC will submit invoices summarizing, in reasonable detail, the services and expenses for which compensation is sought.

## KCC'S DISINTERESTEDNESS

10.    Although the Debtors do not propose to retain KCC under § 327 of the Bankruptcy Code, KCC has nonetheless conducted a conflicts analysis and, to the best of its knowledge, KCC neither holds nor represents an interest materially adverse to the Debtors' estates nor has a material connection to the Debtors, their creditors or their related parties with respect to any matter for which KCC will be employed.  KCC may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which KCC serves or has served in a neutral capacity as claims and noticing agent for another chapter 11 debtor.  To the best of my knowledge, such relationships are materially unrelated to these chapter 11 cases.  In addition, KCC personnel may have relationships with some of the Debtors' creditors or other parties in interest.  However, to the best of my knowledge, such relationships, to the extent they exist, are of a personal financial nature and completely unrelated to these chapter 11 cases.  KCC has and will continue to represent clients in matters materially unrelated to these chapter 11 cases.  In addition, KCC has had and will continue to have relationships in the ordinary course of its business with certain vendors, professionals and other parties in interest that may be involved in the Debtors' cases in matters unrelated to these cases.

11.     KCC is an indirect subsidiary of Computershare Limited. Computershare Limited is a financial services and technologies provider for the global securities industry. Within the Computershare corporate structure, KCC operates as a separate, segregated business unit. As such, any relationships that Computershare Limited and its affiliates maintain do not create an interest of KCC that would be materially adverse to the Debtors' estates or any class of creditors or equity security holders.

12.     To the best of my knowledge and except as disclosed herein, KCC neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed and that it is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, 11 U.S.C. §§ 101–1532 as referred to in section 327(a) of the Bankruptcy Code. KCC will supplement its disclosure to the Court if any facts or circumstances are discovered that would require disclosure.

13.     KCC represents, among other things, that:

(a)     it will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as claims and noticing agent;

(b)     by accepting employment in this bankruptcy case, KCC waives any right to receive compensation from the United States government in connection with this case;

(c)     in its capacity as claims and noticing agent, KCC will not be an agent of the United States and will not act on behalf of the United States; and

(d)     KCC will not employ any past or present employees of the Debtors in connection with its work as Agent.

14.     Should KCC discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, KCC will use reasonable efforts to file promptly a supplemental affidavit.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 31, 2011

By: _~~Albert H. Kass~~_____
    Albert H. Kass
    Vice President of Corporate Restructuring
    Services

State of California
County of Los Angeles

Subscribed and sworn to before me on this 31st day of October 2011, by Albert Kass, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

WITNESS my hand and official seal.

Signature _____

Commission # 486 78609

My Comm. Expires Oct 10, 2013

ELIZABETH MARIE BARNETT
Commission # 1867869
Notary Public - California
Los Angeles County
My Comm. Expires Oct 10, 2013

1713824-New York Server 7A - MSW

# EXHIBIT B
## Services Agreement


KURTZMAN
CARSON
CONSULTANTS

# KCC AGREEMENT FOR SERVICES

This Agreement is entered into as of the 20th day of October, 2011, between Syms Corp. (together with its affiliates and subsidiaries, the "Company"),[1] and Kurtzman Carson Consultants LLC (together with its affiliates and subcontractors, "KCC").

In consideration of the premises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**Terms and Conditions**

I.  SERVICES

A.  KCC agrees to provide the Company with consulting services regarding, each as may be specifically requested by the Company, noticing, claims management and reconciliation, plan solicitation, balloting, disbursements and any other services agreed upon by the parties or otherwise required by applicable law, government regulations or court rules or orders.

B.  KCC further agrees to provide (i) computer software support and training in the use of the support software, (ii) KCC's standard reports as well as consulting and programming support for the Company requested reports, (iii) program modifications, (iv) data base modifications, and/or (v) other features and services in accordance with the fees outlined in a pricing schedule provided to the Company (the "KCC Fee Structure").

C.  Without limiting the generality of the foregoing, KCC may, upon request by the Company, (i) provide a communications plan including, but not limited to, preparation of communications materials, dissemination of information and a call center staffed by KCC and/or (ii) provide confidential on-line workspaces or virtual data rooms and publish documents to such workspaces or data rooms (which publication shall not be deemed to violate the confidentiality provisions of this Agreement).

D.  The price listed for each service in the KCC Fee Structure represents a bona fide proposal for such services, which may be accepted in whole or in part. Services will be provided when requested by the Company or required by applicable law, government regulations or court rules or orders. Services are mutually exclusive and are deemed delivered and accepted by the Company when provided by KCC.

E.  The Company acknowledges and agrees that KCC will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "Company Parties") with respect to the services being provided under this Agreement. The parties agree that KCC may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company. The Company agrees and understands that KCC shall not provide the Company or any other party with any legal advice.

---

[1] The term Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in its chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



# KCC AGREEMENT FOR SERVICES

## II.    PRICES, CHARGES AND PAYMENT

A.     KCC agrees to charge and the Company agrees to pay KCC for its services, expenses and supplies at the rates or prices set by KCC and in effect as of the date of this Agreement in accordance with the KCC Fee Structure.  KCC's prices are generally adjusted periodically to reflect changes in the business and economic environment.  KCC reserves the right to reasonably increase its prices, charges and rates annually.  If any price increases exceed 10%, KCC will give thirty (30) days written notice to the Company.

B.     The Company agrees to pay the reasonable out of pocket expenses incurred by KCC in connection with services provided under this Agreement.  Pursuant to the KCC Fee Structure, the Company is not responsible for any travel or meal expenses of KCC.

C.     In addition to all fees for services and expenses hereunder, the Company shall pay to KCC (i) any fees and expenses related to, arising out of, or as a result of any error or omission made by the Company or the Company Parties, as mutually determined by KCC and the Company, and (ii) all taxes that are applicable to this Agreement or that are measured by payments made under this Agreement and are required to be collected by KCC or paid by KCC to a taxing authority.

D.     Where the Company requires services that are unusual or beyond the normal business practices of KCC, or are otherwise not provided for in the KCC Fee Structure, the cost of such services shall be charged to the Company at a competitive rate.

E.     KCC agrees to submit its invoices to the Company monthly and the Company agrees that the amount invoiced is due and payable upon the Company's receipt of the invoice. However, where total fees and expenses are expected to exceed $10,000 in any single month, KCC may require advance payment from the Company due and payable upon demand and prior to the performance of services hereunder.  If any amount is unpaid as of thirty (30) days from the receipt of the invoice, the Company further agrees to pay a late charge, calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days.  In the case of a dispute in the invoice amount, the Company shall give written notice to KCC within ten (10) days of receipt of the invoice by the Company.  The undisputed portion of the invoice will remain due and payable immediately upon receipt of the invoice.  Late charges shall not accrue on any amounts in dispute.  Unless otherwise agreed to in writing, the fees for print notice and media publication (including commissions) as well as certain expenses must be paid at least three (3) days in advance of those fees and expenses being incurred.

F.     In the event that the Company files for protection pursuant to chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Filing"), the parties intend that KCC shall be employed pursuant to 28 U.S.C. § 156(c) ("Section 156(c)") and that all fees and expenses due under this Agreement shall be paid as administrative expenses of the Company's chapter 11 estate.  As soon as practicable following a Chapter 11 Filing (and otherwise in accordance with applicable law and rules and orders of the Bankruptcy Court), the Company shall cause a motion to be filed with the Bankruptcy Court seeking entry of an order pursuant to Section 156(c) approving this Agreement in its entirety (the "Section 156(c) Order").  The form and substance of the motion and the Section 156(c) Order shall be reasonably acceptable to KCC.  If any Company chapter 11

2


KURTZMAN
CARSON
CONSULTANTS

# KCC AGREEMENT FOR SERVICES

case converts to a case under chapter 7 of the Bankruptcy Code, KCC will continue to be paid for its services in accordance with Section 156(c) and under the terms of this Agreement.

G.  To the extent permitted by applicable law, KCC shall receive a retainer in the amount of $25,000 (the "Retainer") that may be held by KCC as security for the Company's payment obligations under the Agreement. The Retainer is due upon execution of this Agreement. KCC shall be entitled to hold the Retainer until the termination of the Agreement. Following termination of the Agreement, KCC shall return to the Company any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

## III.  RIGHTS OF OWNERSHIP

A.  The parties understand that the software programs and other materials furnished by KCC pursuant to this Agreement and/or developed during the course of this Agreement by KCC are the sole property of KCC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. The Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B.  The Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or KCC's performance of its services developed or utilized during the term of this Agreement by KCC shall be the exclusive property of KCC. Fees and expenses paid by the Company do not vest in the Company any rights in such property, it being understood that such property is only being made available for the Company's use during and in connection with the services provided by KCC under this Agreement.

## IV.  NON-SOLICITATION

The Company agrees that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ or otherwise retain employees of KCC during the term of this Agreement and for a period of twelve (12) months after termination of this Agreement unless KCC provides prior written consent to such solicitation or retention.

## V.  CONFIDENTIALITY

Each of KCC and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.

3


KURTZMAN
CARSON
CONSULTANTS

# KCC AGREEMENT FOR SERVICES

## VI. SUSPENSION OF SERVICE AND TERMINATION

A. This Agreement shall remain in force until terminated or suspended by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined herein). As used herein, the term "Cause" means (i) gross negligence or willful misconduct of KCC that causes serious and material harm to the Company's reorganization under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay KCC invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of invoices or unpaid services in excess of the retainer held by KCC where KCC reasonably believes it will not be paid.

B. In the event that this contract is terminated, regardless of the reason for such termination, KCC shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions and KCC shall provide all necessary staff, services and assistance required for an orderly transfer. The Company agrees to pay for such services in accordance with KCC's then existing prices for such services. If such termination occurs following entry of the Section 156(c) Order, the Company shall immediately seek entry of an order (in form and substance reasonably acceptable to KCC) that discharges KCC from service and responsibility under Section 156(c) and this Agreement.

C. Any data, programs, storage media or other materials furnished by the Company to KCC or received by KCC in connection with the services provided under the terms of this Agreement may be retained by KCC until the services provided are paid for, or until this Agreement is terminated with the services paid in full. The Company shall remain liable for all fees and expenses imposed under this Agreement as a result of data or physical media maintained or stored by KCC. KCC shall dispose of the data and media in the manner requested by the Company. The Company agrees to pay KCC for reasonable expenses incurred as a result of the disposition of data or media. If the Company has not utilized KCC's services under this Agreement for a period of at least ninety (90) days, KCC may dispose of the data or media, and be reimbursed by the Company for the expense of such disposition, after giving the Company thirty (30) days' notice. Notwithstanding any term herein to the contrary, following entry of the Section 156(c) Order, the disposition of any data or media by KCC shall be in accordance with any applicable instructions from the clerk of the Bankruptcy Court, local Bankruptcy Court rules and orders of the Bankruptcy Court.

## VII. SYSTEM IMPROVEMENTS

KCC strives to provide continuous improvements in the quality of service to its clients. KCC, therefore, reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the KCC data center serving the Company, so long as any such changes do not materially interfere with ongoing services provided to the Company in connection with the Company's chapter 11 case.

4


KURTZMAN
CARSON
CONSULTANTS

# KCC AGREEMENT FOR SERVICES

VIII.  LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.  The Company shall indemnify and hold KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to KCC's performance under this Agreement. Such indemnification shall exclude Losses resulting from KCC's gross negligence or willful misconduct.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any Indemnified Party. The Company shall notify KCC in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that the Company becomes aware of with respect to the services provided by KCC under this Agreement.  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

B.  Except as provided herein, KCC's liability to the Company or any person making a claim through or under the Company for any Losses of any kind, even if KCC has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of KCC, shall be limited to the total amount billed or billable to the Company for the portion of the particular work which gave rise to the alleged Loss.  In no event shall KCC's liability to the Company for any Losses, whether direct or indirect, arising out of this Agreement exceed the total amount billed to the Company and actually paid to KCC for the services contemplated under the Agreement.  In no event shall KCC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.

C.  The Company is responsible for the accuracy of the programs, data and information it or any Company Party submits for processing to KCC and for the output of such information.  KCC does not verify information provided by the Company and, with respect to the preparation of schedules and statements, all decisions are at the sole discretion and direction of the Company. The Company reviews and approves all schedules and statements filed on behalf of, or by, the Company; KCC bears no responsibility for the accuracy or contents therein.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs and data submitted by the Company to KCC.

D.  The Company agrees that except as expressly set forth herein, KCC makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

5


KURTZMAN
CARSON
CONSULTANTS

# KCC AGREEMENT FOR SERVICES

IX.  FORCE MAJEURE

Whenever performance by KCC of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, strike, lock-out or other industrial or transportation disturbance, fire, lack of materials, law, regulation or ordinance, war or war condition, or by reason of any other matter beyond KCC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

X.  INDEPENDENT CONTRACTORS

The Company and KCC are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

XI.  NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or electronic mail or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:

| Kurtzman Carson Consultants LLC | Syms Corp. |
|---|---|
| 2335 Alaska Ave. | 1 Syms Way |
| El Segundo, CA 90245 | Secaucus, NJ 07094 |
| Attn: Drake D. Foster | Attn: |
| Tel: (310) 823-9000 | Tel: |
| Fax: (310) 823-9133 | Fax: |
| E-Mail: dfoster@kccllc.com | |

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

XII.  APPLICABLE LAW

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware.

XIII.  ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, other agreements, and communications oral and written between the parties relating to the subject matter of this Agreement.  The Company represents that it has the authority to enter into this Agreement, and the Agreement is non-dischargeable under any applicable statute or law.  If any

6



# KCC AGREEMENT FOR SERVICES

provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby. This Agreement may be modified only by a written instrument duly executed by an authorized representative of the Company and an officer of KCC.

XIV.    COUNTERPARTS; EFFECTIVENESS

This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties, which delivery may be made by exchange of copies of the signature page by facsimile or electronic mail.

XV.    ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned without written consent by KCC to a wholly-owned subsidiary or affiliate of KCC.

XVI.    ARBITRATION

Any controversy or claim arising out of or relating to this Agreement, or the breach thereof (collectively, "Disputes"), shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) shall be entered in any court having jurisdiction thereof. For that purpose, the parties hereto consent to the jurisdiction and venue of an appropriate court located in the State of Delaware. Notwithstanding the foregoing, in the event of a Chapter 11 Filing all Disputes will be adjudicated by the Bankruptcy Court.

XVII.    ATTORNEYS' FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorneys' fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

[SIGNATURE PAGE FOLLOWS]

7


KURTZMAN
CARSON
CONSULTANTS

# KCC AGREEMENT FOR SERVICES

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC

BY: _ALBERT H KASS_     DATE: 10/20/2011

TITLE: VP, Corporate Restructuring

Syms Corp.

BY: _Marcy Syms_     DATE: 10/21/11

TITLE: CHAIR + CEO

8



# KCC CORPORATE RESTRUCTURING
# FEE STRUCTURE

**FEES**

**Consulting Services & Rates[1]**

| _Position_ | _Hourly Rate_ | _25% Discounted Rate[2]_ |
| --- | --- | --- |
| Clerical | $40.00-$60.00 | $30.00-$45.00 |
| Project Specialist | $80.00-$140.00 | $60.00-$105.00 |
| Technology/Programming Consultant | $100.00-$200.00 | $75.00-$150.00 |
| Consultant | $125.00-$200.00 | $93.75-$150.00 |
| Senior Consultant | $225.00-$275.00 | $168.75-$206.25 |
| Senior Managing Consultant | $295.00 | $221.25 |
| Weekend, holidays and overtime | Waived | Waived |
| Travel expenses and working meals | Waived | Waived |

**EXPENSES[3]**

**Noticing Services**

| | |
| --- | --- |
| Set-up | Waived |
| Printing and photocopies | $0.08 per image |
| Labels | $0.05 per image |
| Electronic noticing (e-mail) | $50.00 per 1,000[4] |
| Electronic noticing (domestic facsimile) | $0.08 per page |
| Claim Acknowledgement Card | $0.10 per notice |
| Insert creditor information into customized documents | Waived |
| Document folding and inserting | Waived |
| Legal notice publishing | Quote prior to publishing |

---

[1] Please note that additional professional services not covered by this proposal will be charged at hourly rates, including any outsourced services performed under our supervision and control.

[2] In addition to the 25% discount, hourly rates for Sr. Managing Consultants and Sr. Consultants will be capped at $205.00.

[3] Expenses shall be consistent with the general practice procedures authorized in the District of Delaware.

[4] Expense waived for the first 5,000 emails.



# KCC CORPORATE RESTRUCTURING
# FEE STRUCTURE

**Claims Administration & Management**

| | |
|---|---|
| Database and System Access (Unlimited users) | $0.10 per record per month (all charges waived for first three months) |
| Case-specific public website hosting | Waived |
| Creditor import | Waived |
| Proof of Claim input | No per creditor charge |

**Document Management/Imaging**

| | |
|---|---|
| Electronic imaging (scanning & bar-coding) | $0.12 per imaged page |
| Virtual data room | Quote prior to VDR set-up |
| CD-ROMs (Mass Document Storage) | Varies upon requirements |

**Call Center Support Services**

| | |
|---|---|
| Case-specific voice-mail box for creditors | Waived |
| Interactive Voice Response ("IVR") | Set-up fee waived |
| | $0.34 per minute |
| Monthly maintenance charge | Waived |
| Management of Call Center | Standard hourly rates |

**Solicitation, Balloting & Tabulation Services**

| | |
|---|---|
| Set-up, tabulation and vote verification | Applicable consulting fees only |
| Printing and mailing ballots | Subject to above unit pricing for mailing and noticing |

Kurtzman Carson Consultants LLC  599 Lexington Avenue, 39th Floor, New York, New York 10022  PHONE 917-281-4800  FAX 917-281-4900  kccllc.com



# KCC CORPORATE RESTRUCTURING
# FEE STRUCTURE

## Public Securities Services

Quotes for the following services are available upon request:

- Notice Event - Informational mailings to security holders

- Voting Event - Mailing ballots to security holders and tabulating their votes on a plan of reorganization

- Corporate Action Event - Mailing election forms to security holders and tabulating the results, e.g., rights offering elections

- Voting and Corporate Action Event - Mailing ballots, which include both a vote and an election, to security holders and tabulating the results

- Security Holder Identification Report

## Disbursements

| | |
|---|---|
| Check issuance | Quote prior to printing |
| W-9 mailing and maintenance of TIN database | See hourly rates and noticing charges |

## Standard and Customized Reporting

*The following services are available at consulting rates:*

- Preparation of Service Lists
- Preparation of Claims Registers & Claims Reports
- Claims Reconciliation
- Preparation of Claims Objection Exhibits
- Custom Data Extraction & Forensics
- Preference Data Compilation
- Preparation of Schedules & SOFA
- Preparation of Ballot Tabulations/Disbursements Reports
- Contract and Lease Analysis
- Preparation of Claim Transfer Reports
- Preparation of Exhibits to Plan and Disclosure Statement
- Preparation of Custom Reports
- Other Services as Requested by Client

Kurtzman Carson Consultants LLC 599 Lexington Avenue, 39th Floor, New York, New York 10022 PHONE 917-281-4800 FAX 917-281-4900 kccllc.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
   :
In re:    :    Chapter 11
   :
FILENE'S BASEMENT, LLC, et al.,    :    Case No. 11-13511 (___)
   :
Debtors.[1]    :    Joint Administration Pending
   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x    **Related Docket No. __**

### ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF KURTZMAN CARSON CONSULTANTS LLC AS NOTICE, CLAIMS AND SOLICITATION AGENT FOR DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE

Upon the application (the "Application") of the Debtors[2] for entry of an order (this

"Order") pursuant to 28 U.S.C. § 156(c), Bankruptcy Code section 503(b), Bankruptcy Rule

2002 and Local Bankruptcy Rule 2002-1(f) and 9013-1(m), authorizing the employment of

Kurtzman Carson Consultants LLC ("KCC") as the notice, claims and solicitation agent for the

Debtors, all as more fully set forth in the Application; upon consideration of the Kass Affidavit

and the First Day Declaration; and it appearing that the relief requested is in the best interests of

the Debtors' estates, their creditors, their shareholders and all other parties in interest; and due

and sufficient notice of the Application having been given; and the Court having jurisdiction to

consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334;

and the Court having found that consideration of the Application and the relief requested therein

being a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having found that venue

being proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Filene's Basement, LLC (8277), Syms Corp. (5228), Syms Clothing, Inc. (3869), and Syms Advertising Inc. (5234). The Debtors' address is One Syms Way, Secaucus, New Jersey 07094.

[2]   All capitalized terms used but otherwise not defined herein shall have the meaning set forth in the Application.

that based on the representations made in the Kass Affidavit that KCC does not hold or represent an interest adverse to the Debtors' estates; and the Court having found that due and proper notice of the Application has been provided and no other or further notice need be provided; and the Court having determined that the legal and factual bases set forth in the Application and at the hearing establish just cause for the relief granted herein; and upon all of the proceedings heard before the Court; and after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby

**ORDERED, ADJUDGED AND DECREED that:**

1.      The Application is granted as set forth herein.

2.      The Debtors are authorized to employ and retain KCC as their notice, claims and solicitation agent in accordance with the terms and conditions set forth in the Application and the Services Agreement.

3.      KCC is authorized to provide noticing, claims processing and solicitation services as set forth in the Application and the Servicing Agreement.

4.      The terms of the Services Agreement are approved as provided herein as modified by the terms of this Order.

5.      In addition to the services set forth in the Application and the Services Agreement, KCC is authorized to provide other noticing, claims processing, solicitation and administrative services the Debtors may request from time to time; provided, however, that KCC shall not provide disbursement services under any plan prior to the effective date of such plan absent further order of the Court; provided further, that the services to be provided by KCC that are not specifically described in the Application shall be limited to ministerial services incident to the firm's role as claims, noticing and solicitation agent.

6.      KCC is appointed as agent for the office of the Clerk of this Court

(the "Clerk's Office") and, as such, is designated as the authorized repository for all proofs of

claims filed in these chapter 11 cases and is authorized and directed to maintain official claims

registers for each of the Debtors and to provide the Clerk's Office with a certified duplicate

thereof as the Clerk's Office may direct.

7.      Without further order of the Court, the Debtors are authorized to compensate

KCC in accordance with the terms and conditions of the Services Agreement, upon KCC's

submission to the Debtors of invoices summarizing in reasonable detail the services and

expenses for which compensation is sought; provided, however, that KCC shall provide copies

of such invoices to the Office of the United States Trustee and any official committee of

creditors appointed in these chapter 11 cases.

8.      Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses

of KCC incurred pursuant to the Services Agreement shall be an administrative expense of the

Debtors' estates.

9.      KCC may hold its retainer under the Services Agreement during the chapter 11

cases as security for the payment of expenses only (and not fees) under the Services Agreement.

10.     Notwithstanding any provision in the Services Agreement, the Debtors shall

indemnify KCC solely to the extent set forth below:

   (a)     Subject to the provisions of subparagraphs (c) and (d) below, the Debtors shall
           indemnify, KCC for any Losses arising from, related to or in connection with
           their performance of the services described in the Services Agreement;

   (b)     KCC shall not be entitled to indemnification, contribution or reimbursement for
           services other than the services to be provided under the Services Agreement,
           unless such services and the indemnification, contribution or reimbursement
           therefore are approved by the Court;

(c)     Notwithstanding anything to the contrary in the Services Agreement, the Debtors shall have no obligation to indemnify any person, or provide contribution or reimbursement to any person, for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen primarily from that person's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors allege breach of the KCC's contractual obligations under the Services Agreement unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (ii) settled prior to a judicial determination as to that person's gross negligence or willful misconduct, but determined by this Court, after notice and a hearing, to be a claim or expense for which that person should not receive indemnity, contribution, or reimbursement under the terms of the Services Agreement as modified by the Application and Order;

(d)     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this case (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing this chapter 11 case, KCC believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Indemnification Agreement (as modified by this Application Order), including without limitation the advancement of defense costs, KCC must file an application before this Court, and the Debtors may not pay any such amounts before the entry of an order by this Court approving the payment. This subparagraph (d) is intended only to specify the period of time under which the court shall have jurisdiction over any request for fees and expenses for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify KCC;

(e)     Notwithstanding anything contained in Section VIII of the Services Agreement to the contrary, KCC's liability shall not be limited to (i) the total amount billed or billable to the Debtors for the portion of the particular work which gave rise to the loss or damage or (ii) the total amount billed to the Debtors and paid to KCC for the services contemplated under the Services Agreement.

11.     KCC shall not cease providing claims processing services during the chapter 11 cases for any reason without prior order of this Court authorizing KCC to do so; provided, however, that KCC may seek such an order on expedited notice by filing a request with the Court with notice of such request to be served on the Debtors, the Office of the United States Trustee and any official committee of creditors appointed in these cases by facsimile or overnight

delivery; provided further, that except as expressly provided herein, the Debtors and KCC may otherwise terminate or suspend other services as provided under the Services Agreement.

12.     Nothing herein obligates a successor chapter 7 trustee or chapter 11 trustee to employ KCC.

13.     The Debtors and KCC are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

14.     Notwithstanding any term in the Services Agreement to the contrary, the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

15.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this order.

Dated:  Wilmington, Delaware
        _____, 2011


        _____
        Honorable
        UNITED STATES BANKRUPTCY JUDGE