IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
In re:                                      :    Chapter 11
                                            :
FILENE'S BASEMENT, LLC, et al.,             :    Case No. 11-13511 (___)
                                            :
       Debtors.[1]                          :    Joint Administration Pending
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ORDER PURSUANT TO
11 U.S.C. §§ 105(a), 363, 507(a)(7), 1107 AND 1108
AND FED. R. BANKR. P. 6003 AUTHORIZING CONTINUATION OF
CERTAIN CUSTOMER PRACTICES**

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby move (the "Motion") this Court for entry of an order, pursuant to sections 105(a), 363, 507(a)(7), 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to continue (a) to honor prepetition obligations owed to customers on account of gift cards, gift certificates, certain returns, refunds, and exchanges; (b) to continue certain promotional programs; and (c) to receive, process and honor credit card transactions. In support of the Motion, the Debtors rely upon and incorporate by reference the Declaration of Gary Binkoski in Support of Chapter 11 Petitions and First Day Pleadings (the "First Day Declaration"), filed with the Court concurrently herewith. In further support of the Motion, the Debtors, by and through their undersigned proposed counsel, respectfully represent:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Filene's Basement, LLC (8277), Syms Corp. (5228), Syms Clothing, Inc. (3869), and Syms Advertising Inc. (5234). The Debtors' address is One Syms Way, Secaucus, New Jersey 07094.

**JURISDICTION**

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409. The legal predicates for the relief requested herein are Bankruptcy Code sections 105(a), 363, 507(a)(7), 1107 and 1108. Such relief is warranted pursuant to Bankruptcy Rule 6003.

**BACKGROUND**

2. On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code. The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these bankruptcy cases, is set forth in detail in the First Day Declaration, filed concurrently herewith and fully incorporated herein by reference.[2]

3. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

**RELIEF REQUESTED**

4. By this Motion, the Debtors seek entry of an order authorizing the Debtors (A) to honor prepetition obligations owed to customers on account of gift cards, gift certificates, certain returns, refunds, and exchanges and (B) to continue certain promotional programs (collectively, the "Customer Programs"), thereby ensuring and maintaining customer satisfaction and loyalty without interruption during the course of the Debtors' going-out-of-business sales.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

The Debtors also seek entry of an order authorizing the Debtors to continue to receive, process and honor credit card transactions (the "Credit Card Processing") and to pay fees necessary to continue Credit Card Processing, thereby ensuring that the Debtors maintain a key method of accepting customer payments.

5. The Debtors also request an order (a) authorizing and directing all banks to receive, process, honor and pay any and all checks, drafts and other forms of payment, including fund transfers and other bank accounts used by the Debtors with respect to the Customer Programs and Credit Card Processing, whether presented before, on or after the Petition Date, (b) authorizing the banks to rely on the representations of the Debtors as to which checks are subject to this Motion, provided that sufficient funds are on deposit in the applicable accounts to cover such payments, (c) prohibiting the Debtors' banks from placing any holds on, or attempting to reverse, any automatic transfers to any account of the Customer Programs and Credit Card Processing, and (d) authorizing the Debtors to issue new postpetition checks to replace any checks, drafts and other forms of payment, or effect new postpetition fund transfers, which may be inadvertently dishonored or rejected and to reimburse any expenses that may be incurred as a result of any bank's failure to honor a prepetition check.

**BASIS FOR RELIEF**

**A. The Customer Programs**

6. Prior to the Petition Date, the Debtors provided their customers with certain benefits in the form of the Customer Programs. The following are general descriptions of the Debtors' principal Customer Programs:

7. **Promotional Programs**. The Debtors operate two promotional programs: Filene's Basement, LLC ("Filene's Basement") operates the Filene's Basement Fan Club ("Fan

Club") and Syms Corp. ("Syms") operates the Educated Consumer program ("Educated Consumer"). Customers are able to sign up for the Fan Club and the Educated Consumer program, respectively, at a Filene's Basement or Syms' retail store location, or on the appropriate Debtor's website. Under these programs, customers provide the applicable Debtor with their name, address, email and telephone number, in exchange for certain benefits. Fan Club members receive coupon mailers from Filene's Basement that typically include 15% off coupons on various occasions during the year. Educated Consumer members receive coupon mailers from Syms that typically include promotional coupons for a certain amount off a purchase at Syms (i.e., spend X, get Y off) on various occasions during the year. Both Fan Club and Educated Consumer members receive special emails alerts of upcoming special events, sales and new merchandise arrivals.

8. **Gift Cards.** Prior to the Petition Date, each Debtor sold pre-paid gift cards and gift certificates for use at their respective stores. Customers had the option of purchasing gift cards in any denomination between ten ($10) and five hundred ($500) dollars. At Syms, customers could also purchase paper gift certificates in any denomination. Certain customers also received either gift cards or gift certificates in exchange for merchandise they had returned to the Debtors' stores. As of the Petition Date, many customers had not yet redeemed their gift cards and gift certificates. When the customers in question purchased or received these gift cards and gift certificates, they had every expectation that they would be redeemable.

9. The Debtors estimate that, as of October 1, 2011, the approximate amount of outstanding obligations with respect to gift cards is $2.5 million for Filene's Basement and $1.2 million for Syms. The Debtors expect that the gift card obligations that are likely to be redeemed amount to a liability of approximately $1.1 million for Filene's Basement and

$719,000 for Syms. Those sums represent the obligation on gift cards that are less than two years old. In the Debtors' experience, gift cards that have aged for over two years are unlikely to be redeemed. Furthermore, the Filene's Basement sum reflects that Filene's Basement has a reserve of approximately $1.15 million for unredeemed gift cards. The Debtors estimate that the approximate amount of outstanding obligations with respect to gift certificates is approximately $0 for Filene's Basement and $2.9 million for Syms. Syms does not expect many of these gift certificate obligations to be redeemed because the gift certificates are all older than 90 days, and such certificates historically have low redemption rates.

10. **Returns, Refunds, Exchanges**. Certain customers also hold contingent claims against the Debtors for potential refunds, returns and exchanges (collectively, the "Refunds") relating to goods sold to customers at the Debtors' stores prior to the Petition Date. If a customer is not satisfied with the merchandise after the purchase, the customer has the option to return or exchange the goods to a retail store of the appropriate debtor, with a receipt, within thirty (30) days after the purchase date.[3] If the customer has a receipt, the customer is entitled to a full refund in the tender of original payment or to exchange the merchandise.

11. The Debtors' believe their ability to continue to provide the Refunds to customers is very important to maintain customer goodwill and maximize value during their wind-down process. Ascertaining with precision an estimate of the aggregate amount of requests for Refunds for merchandise purchased prior to the Petition Date is difficult. The Debtors estimate that for the year to date, through October 1, 2011, approximately $18.5 million in merchandise has been returned to Filene's Basement stores and $9.47 million in merchandise has

---

[3] Prepetition, if the customer did not have a receipt or sought to return merchandise after the thirty day period, but before sixty days, store management had the authority, in their discretion, to provide the customer with a merchandise credit. The Debtors do not intend to continue this practice postpetition.

5

been returned to Syms' stores. The Debtors sales return reserve, as of October 1, 2011, is approximately $667,000 for Filene's Basement and approximately $335,000 for Syms.

12. **Syms Card Discount**. As explained in more detail below, Syms offers their customers the opportunity to purchase merchandise using a private label credit card (the "Syms Card") issued by GE Money Bank ("GEMB"). By using the Syms Card, customers are offered a discount of five (5) percent on all purchases at Syms charged to their Syms Card (the "Syms Card Discount"). The ability to continue the Syms Card Discount will help foster sales from loyal customers during the wind-down process.

**B.     Credit Card Processing**

13. The Debtors are parties to certain agreements with credit card companies and processors, including a private label credit card administrator, pursuant to which the Debtors are able to accept credit card payments, subject to certain adjustments, returns, promotional fees and refunds.

14. As noted above, Syms has an agreement with GEMB that provides for the issuance of the Syms Card, a private label credit card, to Syms' customers for use in Syms' retail stores.[4] Syms Card transactions are processed, settled and authorized by GE Capital. The Debtors also have an agreement with First Data Merchant Services ("FDMS") governing the processing and authorization of Visa, MasterCard, American Express and Discover transactions. FDMS also handles the settlement of the Debtors' Visa and MasterCard transactions. Additionally, the Debtors are parties to agreements with American Express and Discover, which provide for the settlement of transactions through those cards at all of the Debtors' stores.

---

[4] The term of the credit program agreement between Syms and GEMB ended as of March 1, 2011. At the end of such term, GEMB and Syms agreed to allow the terms of the agreement to automatically renew on a month to month basis.

15. Approximately seventy-five to eighty-five percent of the products sold at the Debtors' stores are purchased with credit cards, and the Debtors' continued ability to honor and process credit card transactions is essential to the Debtors' wind-down efforts. Without this ability, the Debtors would lose a major method for conducting sales transactions during the going-out-of-business sales. Under the terms of their agreements, the Debtors are required to pay the credit card companies and processors fees for their services, certain amounts of which may have accrued but remain unpaid as of the Petition Date.

16. The Debtors request authority to continue to pay the Credit Card Processing fees, including, but not limited to, amounts related to promotional fees and returns and exchanges, in order to avoid interruption of vital credit card processing services and programs. During the twelve month period ending in September 2011, Filene's Basement paid, on account of credit processing and related fees, approximately $3,221,000 to Visa and MasterCard, $839,371 to American Express and $109,000 to Discover. During that same period, Syms paid, on account of credit processing and related fees, approximately $1,815,000 to Visa and MasterCard, $710,500 to American Express and $49,000 to Discover. During that same period, Syms also spent approximately $150,000 on credit processing and related fees for the Syms Card. As of the Petition Date, the Debtors estimate that approximately $800,000 is owed in prepetition fees to credit card companies and processors, with approximately $500,000 for Filene's Basement and approximately $300,000 for Syms.

17. Under the Debtors' agreements relating to the processing of credit cards, upon a customer's return of merchandise purchased using a credit card, the Debtors are obligated to refund to the card processor the purchase price of the returned merchandise plus certain adjustments (collectively, the "<u>Chargebacks</u>"). Generally, Debtors' Chargeback obligations are

satisfied by a reduction of payments currently owing to the Debtors under the processing agreements in the amount of the outstanding Chargebacks.

18. It is possible that certain Chargebacks incurred by the Debtors immediately prior to the Petition Date may not have been fully netted out against credit card payments the Debtors received prior to the Petition Date. Moreover, although the Debtors believe that any Chargebacks arising after the Petition Date would be postpetition obligations of the Debtors, it may be argued that Chargebacks arising after the Petition Date nevertheless would be prepetition obligations where the merchandise returned was purchased from the Debtors prior to the Petition Date. In such circumstances, to the extent that the netting of the parties' obligations would not constitute recoupment, the setoff of Chargebacks against credit card payments arguably may be foreclosed by the automatic stay imposed by Bankruptcy Code section 362(a). By this Motion, the Debtors seek authority to pay all Chargeback obligations, and to continue to pay any Chargebacks along with the other fees related to Credit Card Processing.

**C.     The Critical Nature of the Customer Programs and Credit Card Processing**

19. The ability of the Debtors to maximize the value of their businesses and their inventory are dependent upon the patronage and loyalty of their customers. In this regard, the Debtors' Customer Programs and Credit Card Processing are critical, and any delay in honoring the Debtors' obligations thereunder could severely disrupt the Debtors' wind-down process. Any failure to honor prepetition customer obligations or inability to process credit card transactions, for even a brief time, may well drive away valuable customers, thereby harming the Debtors' efforts to maximize the value of their inventory. Accordingly, the Debtors seek Court authority to continue the Customer Programs and Credit Card Processing.

## APPLICABLE AUTHORITY

20. The Debtors submit that an order authorizing them (i) to continue the Customer Programs and Credit Card Processing as they determine to be appropriate; (ii) to honor and pay, in their discretion, the customer obligations and fees for Credit Card Processing arising prior to the Petition Date; and (iii) to renew, modify, terminate or replace such Customer Programs or agreements relating to Credit Card Processing that, in their discretion, are necessary and in the best interests of the Debtors' estates, creditors, stakeholders and other parties in interest.

### A. The Proposed Honoring of Customer Obligations Should Be Authorized Under Bankruptcy Code Section 507

21. A portion of the obligations of the Debtors to their customers may be entitled to priority treatment pursuant to Bankruptcy Code section 507(a)(7), which grants a seventh-level priority to

> allowed unsecured claims of individuals, to the extent of $2,600 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use of such individuals, that were not delivered or provided.

11 U.S.C. § 507(a)(7). Money collected prepetition by the Debtors pursuant to the Customer Programs falls within this priority category.

22. For example, the purchase of a gift card or gift certificate represents a "deposit . . . of money in connection with the purchase . . . of property, or the purchase of services, for the personal, family, or household use of such individual . . .". Id. Furthermore, unless this motion is granted, such "deposits" will represent payment for goods or services "that were not delivered or provided." Id. Thus, the Debtors' customers who participated in some of the Customer Programs described above may be entitled to a priority claim.

**B. In Order To Fulfill Their Fiduciary Obligation To Maximize The Value Of Their Estates, Under Bankruptcy Code Sections 1107 And 1108, The Debtors Must Be Permitted To Continue To Honor Customer Obligations And Maintain The Customer Programs and Credit Card Processing**

23. The Debtors, operating their businesses as debtors in possession under Bankruptcy Code sections 1107(a) and 1108, are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." Id.

24. Courts have noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." Id.; see also In re Mirant Corp., 296 B.R. 427, 429-30 (Bankr. N.D. Tex. 2003) (allowing debtors to pay claims "reasonably believe[d]" to be authorized under the CoServ test or whose payment was necessary "in the exercise of their business judgment . . . in order for [the d]ebtors to continue their respective businesses"). The CoServ court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . .". CoServ, 273 B.R. at 497. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

Id. at 498.

25. Honoring the customer obligations and maintaining the Customer Programs meets each element of the CoServ court's standard. As described above, conducting a value maximizing and orderly wind-down of the Debtors' retail stores depends, in large part, upon continued customer loyalty. In the Debtors' business judgment, the uninterrupted maintenance of their Customer Programs and Credit Card Processing is essential to maintaining such loyalty. Any disruption and adverse publicity that would necessarily result from the failure to meet customer obligations, from discontinuing their Customer Programs or from failing to maintain the Credit Card Processing would threaten the Debtors' customer base and ultimately, their ability to maximize the value of their inventory through the planned liquidation sales.

26. The Debtors believe that they can only meet their fiduciary duties as debtors in possession under Bankruptcy Code sections 1107(a) and 1108 by maintaining the Customer Programs, by honoring legitimate customer obligations, and maintaining the Credit Card Processing.

**C. Maintenance Of The Customer Programs And Credit Card Processing Are Also Appropriate Under Bankruptcy Code Section 105 And The Doctrine Of Necessity.**

27. Maintenance of the Customer Programs and Credit Card Processing should be authorized pursuant to Bankruptcy Code section 105 and under the "doctrine of necessity." The Court's power to utilize the doctrine of necessity in chapter 11 cases derives from the Court's inherent equity powers and its statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The United States Supreme Court first articulated the doctrine of necessity over a century ago, in Miltenberger v. Logansport, C. & S. W. R. Co., 106 U.S. 286 (1882), in affirming the authorization by the lower court of the use of receivership funds to pay pre-receivership debts owed to employees, vendors and suppliers, among others, when such

11

payments were necessary to preserve the receivership property and the integrity of the business in receivership. See id. at 309-14. The modern application of the doctrine of necessity is largely unchanged from the Court's reasoning in Miltenberger. See In re Lehigh & New Eng. Ry., 657 F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the [debtor's] continued operation . . . in serious jeopardy.").

28. The doctrine of necessity "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor." In re Ionosphere Clubs, Inc., 98 B.R. at 174 (Bankr. S.D.N.Y 1989); see also In re Just for Feet, Inc., 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment); In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[T]he court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."); In re Eagle-Picher Indus., Inc., 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the chapter 11 process.").

29. The doctrine of necessity is an accepted component of modern bankruptcy jurisprudence. See Just For Feet, 242 B.R. at 826 (approving payment of key inventory suppliers' prepetition claims when such suppliers could destroy debtor's business by refusing to deliver new inventory on eve of debtor's key sales season); In re Payless Cashways, Inc., 268 B.R. 543, 546-47 (Bankr. W.D. Mo. 2001) (authorizing payment of critical prepetition suppliers'

claims when such suppliers agree to provide postpetition trade credit); see also In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994); In re Ionosphere Clubs, Inc., 98 B.R. at 175.

30. Maintaining the Customer Programs and Credit Card Processing, and satisfying any related prepetition obligations or fees, as needed in the Debtors' business judgment, meets the CoServ court's standard. As noted above, the Customer Programs and Credit Card Processing are both vital to the Debtors' efforts to maximize the value of their estates. The potential harm and economic disadvantage that would stem from an inability to honor customer obligations or accept credit card payments is grossly disproportionate to the costs associated with the Customer Programs and the Credit Card Processing.

31. The relief requested herein is commonly granted in this District. See, e.g., In re Xerium Techs., Inc., Case No. 10-11031 (KJC) (Bankr. D. Del. Mar. 31, 2010); In re Sportsman's Warehouse, Inc., Case No. 09-10990 (CSS) (Bankr. D. Del. Mar. 23, 2009); In re Goodys, LLC, No. 09-10124 (CSS) (Bankr. D. Del. Feb. 5, 2009); In re Tweeter Home Entm't Group, Inc., No. 07-10787 (PJW) (Bankr. D. Del. June 12, 2007); In re Radnor Holdings Corp., No. 06-10894 (PJW) (Bankr. D. Del. Aug. 23, 2006); In re Werner Holding Co. (DE), Inc., No. 06-10578 (KJC) (Bankr. D. Del. June 13, 2006); In re Russell-Stanley Holdings, Inc., Case No. 05-12339 (PJW) (Bankr. D. Del. Aug. 22, 2005).[5]

**IMMEDIATE RELIEF IS NECESSARY TO AVOID IMMEDIATE AND IRREPARABLE HARM**

32. Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm . . .". Fed. R.

---

[5] Because of the voluminous nature of the orders cited herein, they are not attached to the Motion. Copies of these orders, however, are available on request.

13

Bankr. P. 6003; see also In re First NLC Fin. Servs., LLC, 382 B.R. 547, 549 (Bankr. S.D. Fla. 2008) (holding that Rule 6003 permits entry of retention orders on an interim basis to avoid irreparable harm). The Third Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions. In that context, the court has instructed that irreparable harm is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. See, e.g., Norfolk S. Ry. Co. v. City of Pittsburgh, 235 F. App'x 907, 910 (3d Cir. 2007) (citing Glasco v. Hills, 558 F.2d 179, 181 (3d Cir. 1977)). Furthermore, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. See, e.g., Acierno v. New Castle County, 40 F.3d 645, 653-55 (3d Cir. 1994). The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

33. The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their businesses without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## NOTICE

34. Notice of this Motion will be given to: (i) the United States Trustee for the District of Delaware; (ii) counsel to the agent for the prepetition lenders; (iii) the parties included on the Debtors' lists of twenty (20) largest unsecured creditors; and (iv) all parties entitled to notice pursuant to Local Bankruptcy Rule 9013-1(m).

## NO PRIOR REQUEST

35. No previous request for the relief sought herein has been made to this Court or any other court.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
November 2, 2011

*/s/ Mark S. Chehi*
Mark S. Chehi (I.D. No. 2855)
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000
(302) 651-3001

- and -

Jay M. Goffman
Mark A. McDermott
David M. Turetsky
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036-6522
(212) 735-3000
(212) 735-2000

Proposed Counsel for Debtors and Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re: : Chapter 11
:
FILENE'S BASEMENT, LLC, et al., : Case No. 11-13511 (___)
:
Debtors.[1] : Joint Administration Pending
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x  **Related Docket No. __**

**ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363,
507(a)(7), 1107 AND 1108 AND FED. R. BANKR. P. 6003 AUTHORIZING
CONTINUATION OF CERTAIN CUSTOMER PRACTICES**

Upon the motion (the "Motion")[2] of the Debtors for an order, pursuant to Bankruptcy Code sections 105(a), 363, 507(a)(7), 1107 and 1108 and Bankruptcy Rule 6003, authorizing the Debtors to continue (a) to honor prepetition obligations owed to customers on account of gift cards, gift certificates, certain returns, refunds, and exchanges; (b) to continue certain promotional programs; and (c) to receive, process and honor credit card transactions; and upon the First Day Declaration; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Debtors, their estates, their creditors, their shareholders and other parties in interest; and after due deliberation thereon and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED that**:

1. The Motion is GRANTED as set forth herein.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Filene's Basement, LLC (8277), Syms Corp. (5228), Syms Clothing, Inc. (3869), and Syms Advertising Inc. (5234). The Debtors' address is One Syms Way, Secaucus, New Jersey 07094.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

2. The Debtors are authorized, but not directed, to honor those prepetition Customer Programs that they deem necessary and in the best interests of their estates, creditors and stakeholders, in the same manner as such obligations were honored and such Customer Programs were implemented before the commencement of these chapter 11 cases; _provided_ that the Debtors shall not satisfy obligations in excess of $5.5 million in the aggregate on account of prepetition obligations under the Customer Programs without further order of this Court.

3. The Debtors are authorized, but not directed, to continue to receive, process and honor credit card transactions and debit transactions and continue to pay processing and related fees to credit card companies, credit card processors and debit service providers. The Debtors are further authorized, but not directed, to pay all Chargebacks along with the other fees related to Credit Card Processing. The Debtors shall not make cash payments in excess of $850,000 in the aggregate on account of prepetition Credit Card Processing and related fees, including, but not limited to Chargebacks, without further order of this Court.

4. All banks are (a) authorized and directed to receive, process, honor and pay any and all checks drawn on the payroll, drafts and other forms of payment, including fund transfers, used by the Debtors on account of the Customer Programs and Credit Card Processing, whether presented before, on or after the Petition Date, (b) authorized to rely on the representations of the Debtors as to which checks are subject to this Motion, _provided_ that sufficient funds are on deposit in the applicable accounts to cover such payments, and (c) prohibited from placing any holds on, or attempting to reverse, any automatic transfers on account of the Customer Programs and Credit Card Processing; _provided_ that the Debtors are authorized to issue new postpetition checks to replace any checks, drafts and other forms of payment, or effect new postpetition fund transfers, which may be inadvertently dishonored or

rejected and to reimburse any expenses that may be incurred as a result of any bank's failure to honor a prepetition check.

5. The Debtors are authorized, but not directed, to continue, renew, replace, modify and/or terminate the Customer Programs and Credit Card Processing as they deem appropriate, in their discretion, without further application to the Court. The Debtors shall provide the U.S. Trustee with notice of any material changes to their gift card and gift certificate policies.

6. Neither the provisions contained herein, nor any actions or payments made by the Debtors pursuant to this order, shall be deemed an admission as to the validity of the underlying obligation or a waiver of any rights the Debtors may have to subsequently dispute such obligation on any ground that applicable law permits.

7. Nothing in this order or the Motion shall be deemed to constitute postpetition assumption or adoption of any agreement under Bankruptcy Code section 365. Notwithstanding the relief granted herein and any actions taken hereunder, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

8. The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

9. Notwithstanding Bankruptcy Rule 6004(h), this order shall be effective and enforceable immediately upon entry hereof.

10. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this order.

Dated: Wilmington, Delaware
_____, 2011

                                                              _____
                                                              Honorable
                                                              UNITED STATES BANKRUPTCY JUDGE