IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
              :
In re:           :  Chapter 11
              :
FILENE'S BASEMENT, LLC, et al.,  :  Case No. 11-13511 (___)
              :
      Debtors.[1]   :  Joint Administration Pending
              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEBTORS' MOTION FOR ORDER PURSUANT TO
## 11 U.S.C. §§ 105(a) 363(b), 503(b), 506, 1107 AND 1108 AND FED. R. BANKR. P. 6003
## AUTHORIZING PAYMENT OF CERTAIN PREPETITION SHIPPING AND
## DELIVERY CHARGES

    The debtors and debtors in possession in the above-captioned cases (collectively,

the "Debtors") hereby move (the "Motion") for entry of an order, pursuant to sections 105(a),

363(b), 503(b), 506, 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy

Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

authorizing the Debtors to pay certain prepetition shipping and delivery charges and related

possessory liens.  In support of the Motion, the Debtors rely upon and incorporate by reference

the Declaration of Gary Binkoski in Support of Chapter 11 Petitions and First Day Pleadings (the

"First Day Declaration"), filed with the Court concurrently herewith.  In further support of the

Motion, the Debtors, by and through their undersigned proposed counsel, respectfully represent:

### JURISDICTION AND VENUE

    1.  This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157

and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Filene's Basement, LLC (8277), Syms Corp. (5228), Syms Clothing, Inc. (3869), and Syms Advertising Inc. (5234). The Debtors' address is One Syms Way, Secaucus, New Jersey 07094.

Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The legal predicates for the relief requested herein are Bankruptcy Code sections 105(a), 363(b), 506(b), 1107(a), 1108 and Bankruptcy Rule 6003.

## BACKGROUND

2.      On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.  The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these bankruptcy cases, is set forth in detail in the First Day Declaration, filed concurrently herewith and fully incorporated herein by reference.[2]

3.      The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

## RELIEF REQUESTED

4.      By this Motion, the Debtors seek entry of an order authorizing, but not directing, the payment of prepetition shipping and associated fees and expenses (the "Shipping Charges") to third party shippers, haulers, common carriers and other transporters (the "Shippers") that the Debtors determine, in the exercise of their business judgment, are necessary or appropriate to obtain the release of goods in the possession of such parties and to satisfy the liens, if any, in respect of amounts owed to such parties.  The Debtors estimate that the prepetition Shipping Charges to be paid pursuant to this Motion are collectively approximately no more than $700,000.

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

5.     The Debtors propose that any payments made pursuant to the Motion be

subject to the following conditions:

(a)     The Debtors, in their sole discretion, shall determine which parties, if any, are entitled to payment under this Motion;

(b)     Prior to making a payment to a party under this Motion, the Debtors may, in their absolute discretion, settle all or some of the prepetition claims of such party for less than their face amount without further notice or hearing; and

(c)     The applicable Shipper, as a condition to payment, agrees to (i) release any liens it may have; and (ii) on a prospective basis, provide credit, pricing or payment terms equal to, or better than, provided to the Debtors prepetition.

6.     The Debtors also seek entry of an order confirming that the Shippers will

have administrative expense priority claims under Bankruptcy Code section 503(b) for those

undisputed obligations arising from prepetition purchase orders outstanding as of the Petition

Date relating to goods delivered, received and accepted by the Debtors after the Petition Date,

including goods in transit on or after the Petition Date.

7.     The Debtors also request an order (a) authorizing and directing all banks

to receive, process, honor and pay any and all checks, drafts and other forms of payment,

including fund transfers and other bank accounts used by the Debtors to pay the Shipping

Charges, whether presented before, on or after the Petition Date; (b) authorizing the banks to rely

on the representations of the Debtors as to which checks are subject to this Motion, provided that

sufficient funds are on deposit in the applicable accounts to cover such payments; (c) prohibiting

the Debtors' banks from placing any holds on, or attempting to reverse, any automatic transfers

to any account of Shipping Charges; and (d) authorizing the Debtors to issue new postpetition

checks to replace any checks, drafts and other forms of payment, or effect new postpetition fund

transfers, which may be inadvertently dishonored or rejected and to reimburse any expenses that Shippers may incur as a result of any bank's failure to honor a prepetition check.

## BASIS FOR RELIEF

8.     In the ordinary course of their businesses, the Debtors incur certain fees and charges to several common carriers to ship, transport, store and deliver goods through the Debtors' established distribution networks.  The Debtors have contracts with many of these common carriers for the transportation services provided.  The contracts typically set forth agreed upon rates for the transportation services.  The common carriers are generally not paid in advance but rather invoice the Debtors for shipping services previously rendered.  At any given time, there are common carriers shipping goods to the Debtors' Distribution Centers (defined below) as well as carriers shipping goods from the Distribution Centers to the Debtors' stores.  In addition, the Debtors may be required to pay customs duties for goods delivered to them from overseas.

9.     The Debtors rely extensively on their Shippers to distribute and transport merchandise to and from their distribution centers in Auburn, Massachusetts and Secaucus, New Jersey (collectively, the "Distribution Centers").  The Debtors also may rely on their Shippers to return goods, merchandise and products to the Debtors' vendors.  The services provided by these Shippers are critical to the day-to-day operations of the Debtors' retail business.  At any given time, shipments are en route to the Debtors' Distribution Centers and stores.  As an example of the magnitude of the Debtors' reliance on the Shippers, during the 2010 fiscal year, the Debtors' merchandise-related Shipping Charges were approximately $5.4 million.  The Debtors seek authorization to pay any prepetition Shipping Charges, including, but not limited to, customs duties, in an amount not to exceed $700,000.

10.     The Debtors seek to pay the prepetition Shipping Charges for several reasons.  First, because of the filing of these chapter 11 cases, certain Shippers who hold goods for delivery to or from the Debtors may refuse to release such goods pending payment for their services.  Second, if the prepetition Shipping Charges are not paid, many of the Shippers may refuse to perform future services for the Debtors.  In such event, the Debtors will incur additional expenses (such as premium shipping costs) to replace the Shippers, which amounts may exceed the amount of unpaid prepetition Shipping Charges that the Debtors request permission to pay hereunder.

11.     Third, because of the method of distribution employed by the Debtors, as well as space limitations, the Debtors' Distribution Centers and the stores themselves hold only limited quantities of merchandise at a given time.  If shipments from the Distribution Centers to the stores are not made promptly and regularly, the Debtors may risk having inadequate in-store inventory, which would disrupt the wind-down process.  Such a disruption would be especially damaging because any delay would frustrate the Debtors' ability to capitalize on the upcoming holiday shopping season.

12.     Finally, any delays in payment of Shipping Charges with respect to goods that are in the possession of the Shippers as of the Petition Date will likely result in the assertion, under applicable law, of possessory liens upon the Debtors' property in the possession of such parties.  For instance, Massachusetts and New Jersey statutes provide that any common carrier engaged in the shipment of goods covered by a bill of lading is entitled to a lien on such goods for charges and expenses incurred thereupon.  Mass. Gen. Laws Ann. ch. 106, § 7-307 (West 2007); N.J. Stat. Ann. § 12A:7-307 (West 2004).  Thus, the Debtors will have no alternative but

to pay the Shipping Charges in full in any event in order to effect the release of any liens securing payment of such charges.

## APPLICABLE AUTHORITY

**A.      Payment Of The Shipping Charges Is Appropriate Under Bankruptcy Code 363(b)**

13.      Bankruptcy Code section 363(b) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."  11 U.S.C. § 363(b)(1).  Under this section, a court may authorize a debtor to pay certain prepetition claims.  See In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989); see also In re FV Steel and Wire Co., Case No. 04-22421 (Bankr. E.D. Wis. Feb. 26, 2004); In re UAL Corp., Case No. 02-48191 (Bankr. N.D. Ill. Dec. 11, 2002).  To do so, "the debtor must articulate some business justification, other than mere appeasement of major creditors . . . ."  Ionosphere Clubs, 98 B.R. at 175.

14.      As discussed above, it is the Debtors' business judgment that the failure to pay the Shipping Charges could have a material adverse impact on the operations of their businesses and, thus, their efforts to maximize the value of their estates.

**B.      Payment Of The Shipping Charges Will Allow The Debtors To Avoid The Imposition Of Possessory Liens Under Bankruptcy Code Section 546(b)**

15.      In addition, the Debtors believe that their failure to pay the Shipping Charges may result in the assertion of possessory liens by the respective claimants under applicable state law with respect to any goods in their possession (collectively, the "Liens").  Under Bankruptcy Code section 362(b)(3), the act of perfecting such Liens, to the extent

consistent with Bankruptcy Code section 546(b),[3] is expressly excluded from the automatic stay otherwise imposed by Bankruptcy Code section 362(a).

16.     Moreover, to protect their asserted lien rights, the Shippers may refuse to release goods in their possession unless and until their prepetition claims for services have been satisfied.  Therefore, notwithstanding the automatic stay imposed by Bankruptcy Code section 362, many of these parties: (a) may be entitled to assert and perfect Liens against the Debtors' property, which would entitle them to payment ahead of other general unsecured creditors in any event; and (b) may hold the property subject to the asserted Liens pending payment, to the direct detriment of the Debtors and their estates.

17.     Moreover, since the amount of Shipping Charges likely is less than the value of any property securing those claims, any party holding lien rights arguably are fully secured creditors.  In general, under Bankruptcy Code section 506(b), fully secured creditors are entitled to receive: (a) payment in full of their prepetition claims under any confirmed plan or plans in these chapter 11 cases; and (b) the postpetition interest accruing on such claims to the extent that such claims are oversecured.  Consequently, payment of the Shipping Charges will: (a) give the Shippers no more than that to which they otherwise would be entitled under a plan; and (b) save the Debtors the interest costs that otherwise may accrue on the Shipping Charges during these chapter 11 cases.

**C.     Payment Of The Shipping Charges Is In Furtherance Of The Debtors' Fiduciary Duties Under Bankruptcy Code Sections 1107(a) And 1108**

18.     The Debtors, operating their businesses as debtors in possession under Bankruptcy Code sections 1107(a) and 1108, are fiduciaries "holding the bankruptcy estate[s]

---

[3]     Under Bankruptcy Code section 546(b), a debtor's lien avoidance powers "are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection . . . ."  11 U.S.C. § 546(b)(1)(A).

and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." Id.

19. Courts have noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." Id. The CoServ court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate," id., and also when the payment was to "sole suppliers of a given product," id. at 498. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

Id.

20. Payment of the Shipping Charges meets each element of the CoServ court's standard. Alternative providers would be difficult, and in certain instances, nearly impossible to find while the Debtors wind down their affairs. Any disruption in the Debtors' interdependent transportation network would significantly disrupt the Debtors' businesses and the wind-down process. Such disruption would cost the Debtors' estates a substantial amount in lost revenue. The harm and economic disadvantage that would stem from the failure to pay any of the Shippers is grossly disproportionate to the amount of the prepetition claim that would have to be paid. Finally, with respect to each of the Shippers, the Debtors have determined that, to

avoid significant disruption of the Debtors' business operations and wind-down efforts, there exists no practical or legal alternative to payment of the Shipping Charges. Therefore, the Debtors can only meet their fiduciary duties as debtors in possession under Bankruptcy Code sections 1107(a) and 1108 through payment of the Shipping Charges.

**D.      Bankruptcy Code Section 105(a) And The Doctrine Of Necessity Further Support Payment Of The Shipping Charges**

21.      The proposed payments of the Shipping Charges should be authorized under Bankruptcy Code section 105(a) and under the "doctrine of necessity." The Court's power to utilize the doctrine of necessity in chapter 11 cases derives from the Court's inherent equity powers and its statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The United States Supreme Court first articulated the doctrine of necessity over a century ago, in Miltenberger v. Logansport Ry. Co., 106 U.S. 286 (1882), in affirming the authorization by the lower court of the use of receivership funds to pay pre-receivership debts owed to employees, vendors and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in receivership. See id. at 310. The modern application of the doctrine of necessity is largely unchanged from the Court's reasoning in Miltenberger. See In re Lehigh & New England. Ry. Co., 657 F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the [debtor's] continued operation . . . in serious jeopardy.").

22.      The doctrine of necessity "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor." In re Ionosphere Clubs, Inc., 98 B.R. at 176;

see also In re Just for Feet, Inc., 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment); In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[T]he court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."); In re Eagle-Picher Indus., Inc., 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the chapter 11 process.").

23.    The doctrine of necessity is an accepted component of modern bankruptcy jurisprudence.  See Just For Feet, 242 B.R. at 826 (approving payment of key inventory suppliers' prepetition claims when such suppliers could destroy debtor's business by refusing to deliver new inventory on eve of debtor's key sales season); In re Payless Cashways, Inc., 268 B.R. 543, 546-47 (Bankr. W.D. Mo. 2001) (authorizing payment of critical prepetition suppliers' claims when such suppliers agree to provide postpetition trade credit); see also In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994); In re Ionosphere Clubs, Inc., 98 B.R. at 175.

24.    For the reasons set forth herein, and in light of the critical need for the Debtors to preserve the value of their businesses in order to effect a successful wind-down process through, among other things, preservation of the Debtors' distribution chain, payment of the Shipping Charges as requested herein is proper in accordance with Bankruptcy Code section 105(a) and the doctrine of necessity.

25.    The relief requested herein is commonly granted in this District.  See, e.g., In re Harry & David Holdings, Inc., Case No. 11-10884 (MFW) (Bankr. D. Del. Mar. 29, 2011); In re Sportsman's Warehouse, Inc., Case No. 09-10990 (CSS) (Bankr. D. Del. Mar. 23, 2009); In

re Goody's Family Clothing, Inc., Case No. 08-11133 (CSS) (Bankr. Del. Del. June 10, 2008); In re Tweeter Home Entm't Grp., Inc., Case No. 07-10787 (PJW) (Bankr. D. Del. June 12, 2007); In re Radnor Holdings Corp., Case No. 06-10894 (PJW) (Bankr. D. Del. Aug. 23, 2006); In re Werner Holding Co. (DE), Inc., Case No. 06-10578 (KJC) (Bankr. D. Del. June 13, 2006); In re Ultimate Elecs., Inc., Case No. 05-10104 (PJW) (Bankr. D. Del. Jan. 13, 2005); In re Cone Mills Corp., Case No. 03-12944 (MFW) (Bankr. D. Del. Sept. 26, 2003).[4]

26.     For these reasons, the Debtors submit that the relief requested herein is in the best interest of the Debtors, their estates, creditors, stakeholders and other parties in interest, and therefore, should be granted.

## RESERVATION OF RIGHTS

27.     Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an assumption or rejection of any executory contract or unexpired lease pursuant to Bankruptcy Code section 365; or (e) otherwise affect the Debtors' rights under Bankruptcy Code section 365 to assume or reject any executory contract with any party subject to this Motion.

## IMMEDIATE RELIEF IS NECESSARY TO AVOID IMMEDIATE AND IRREPARABLE HARM

28.     Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003; see also In re First NLC Fin. Servs., LLC, 382 B.R. 547, 548-49 (Bankr. S.D. Fla. 2008) (holding that Rule 6003 permits entry of retention orders on an interim basis to avoid

---

[4]     Because of the voluminous nature of the orders cited herein, they are not attached to the Motion.  Copies of these orders, however, are available on request.

irreparable harm).  The Third Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions.  In that context, the court instructed that irreparable harm is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.  See, e.g., Norfolk S. Ry. Co. v. City of Pittsburgh, 235 F. App'x. 907, 910 (3d Cir. 2007) (citing Glasco v. Hills, 558 F.2d 179, 181 (3d Cir. 1977)).  Furthermore, the harm must be shown to be actual and imminent, not speculative or unsubstantiated.  See, e.g., Acierno v. New Castle County, 40 F.3d 645, 653-55 (3d Cir. 1994).  The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors.

### WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

29.     The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their businesses without interruption and to preserve value for their estates.  Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

### NOTICE

30.     Notice of this Motion will be given to: (i) the United States Trustee for the District of Delaware; (ii) counsel to the agent for the prepetition lenders; (iii) the parties included on the Debtors' lists of twenty (20) largest unsecured creditors; and (iv) all parties entitled to notice pursuant to Local Bankruptcy Rule 9013-1(m).

**NO PRIOR REQUEST**

31. No previous request for the relief sought herein has been made to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
      November 2, 2011

*/s/ Mark S. Chehi*
Mark S. Chehi (I.D. No. 2855)
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000
(302) 651-3001

- and -

Jay M. Goffman
Mark A. McDermott
David M. Turetsky
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036-6522
(212) 735-3000
(212) 735-2000

Proposed Counsel for Debtors and Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re: : Chapter 11
:
FILENE'S BASEMENT, LLC, et al., : Case No. 11-13511 (___)
:
Debtors.[1] : Joint Administration Pending
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x  **Related Docket No. __**

**ORDER PURSUANT TO 11 U.S.C. §§ 105(a),
363(b), 503(b), 506, 1107 AND 1108 AND FED. R. BANKR. P. 6003
AUTHORIZING PAYMENT OF CERTAIN PREPETITION
<u>SHIPPING AND DELIVERY CHARGES</u>**

Upon the motion (the "<u>Motion</u>")[2] of the Debtors for entry of an order, pursuant to

Bankruptcy Code sections 105(a), 363(b), 503(b), 506, 1107 and 1108 and Bankruptcy Rule

6003, authorizing the Debtors to pay certain prepetition shipping and delivery charges and

related possessory liens; and upon the First Day Declaration; and due and sufficient notice of the

Motion having been given under the particular circumstances; and it appearing that no other or

further notice need be provided; and it appearing that the relief requested by the Motion is in the

best interests of the Debtors, their estates, their creditors, their shareholders and other parties in

interest; and after due deliberation thereon and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED that:**

1. The Motion is GRANTED as set forth herein.

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Filene's
        Basement, LLC (8277), Syms Corp. (5228), Syms Clothing, Inc. (3869), and Syms Advertising Inc. (5234).
        The Debtors' address is One Syms Way, Secaucus, New Jersey 07094.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

2.      The Debtors are authorized, but not directed, to make such payments to the Shippers as the Debtors determine, in the exercise of their business judgment, are necessary or appropriate in order to obtain release of goods held by such Shippers.  Notwithstanding anything to the contrary in this order, such payments shall not exceed $700,000 in the aggregate (the "Shipping Cap").  All payments made pursuant to this order shall be subject to the following conditions:

(a)     The Debtors, in their sole discretion, shall determine which parties, if any, are entitled to payment under this Motion;

(b)     Prior to making a payment to a party under this Motion, the Debtors may, in their absolute discretion, settle all or some of the prepetition claims of such party for less than their face amount without further notice or hearing; and

(c)     The applicable Shipper, as a condition to payment, agrees to (i) release any liens it may have and (ii) on a prospective bases, provide credit, pricing or payment terms equal to, or better than, provided to the Debtors prepetition.

3.      The Shippers shall have administrative expense claims with priority under Bankruptcy Code section 503(b) for those undisputed obligations arising from prepetition purchase orders outstanding as of the Petition Date and relating to goods delivered, received and accepted by the Debtors after the Petition Date, including goods in transit on or after the Petition Date, and the Debtors are authorized to pay such claims in the ordinary course of business.

4.      All banks are (a) authorized and directed to receive, process, honor and pay any and all checks drawn on the payroll, drafts and other forms of payment, including fund transfers, used by the Debtors to satisfy their Shipping Charges, whether presented before, on or after the Petition Date; (b) authorized to rely on the representations of the Debtors as to which checks are subject to this Motion; provided that sufficient funds are on deposit in the applicable accounts to cover such payments; and (c) prohibited from placing any holds on, or attempting to reverse, any

automatic transfers for Shipping Charges; provided further that the Debtors are authorized to issue new postpetition checks to replace any checks, drafts and other forms of payment, or effect new postpetition fund transfers, which may be inadvertently dishonored or rejected and to reimburse any expenses that Shippers may incur as a result of any bank's failure to honor a prepetition check.

5.      The Debtors are authorized to issue postpetition checks as necessary to replace any prepetition checks that were issued with respect to the Shipping Charges and may be dishonored and such reissued checks shall reduce the Shipping Cap.

6.      Nothing herein shall be deemed an assumption or an authorization to assume any contracts or other agreements with any of the Shippers pursuant to 11 U.S.C. § 365.

7.      The provisions contained herein shall not be construed to limit, or in any way affect, the Debtors' ability to contest any claims on any ground permitted by applicable law.

8.      The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

9.      Notwithstanding Bankruptcy Rule 6004(h), this order shall be effective and enforceable immediately upon entry hereof.

10.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this order.

Dated:  Wilmington, Delaware
                  _____, 2011


                  _____
                  Honorable
                  UNITED STATES BANKRUPTCY JUDGE

3