IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                             :

In re:                          :     Chapter 11
                             :

FILENE'S BASEMENT, LLC, et al.,    :     Case No. 11-13511 (___)
                             :

            Debtors.[1]     :     Joint Administration Pending
                             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEBTORS' MOTION FOR ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 1107 AND 1108 AND FED. R. BANKR. P. 6003 AUTHORIZING DEBTORS TO (I) MAINTAIN EXISTING INSURANCE POLICIES AND PAY ALL INSURANCE OBLIGATIONS ARISING THEREUNDER, (II) RENEW, REVISE, EXTEND, SUPPLEMENT, CHANGE OR ENTER INTO NEW INSURANCE POLICIES AND (III) CONTINUE TO HONOR INSURANCE PREMIUM FINANCING OBLIGATIONS

        The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby move (the "Motion") for entry of an order, under sections 105, 361, 362, 363, 364, 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing, but not directing, the Debtors to (i) maintain their existing insurance policies and pay all insurance obligations arising thereunder or in connection therewith; (ii) renew, revise, extend, supplement, change or enter into new insurance coverage and insurance premium financing as needed in their business judgment; and (iii) continue to honor insurance premium financing obligations. In support of the Motion, the Debtors rely upon and incorporate by reference the Declaration of Gary Binkoski in Support of Chapter 11 Petitions and First Day Pleadings (the "First Day

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Filene's Basement, LLC (8277), Syms Corp. (5228), Syms Clothing, Inc. (3869), and Syms Advertising Inc. (5234). The Debtors' address is One Syms Way, Secaucus, New Jersey 07094.

Declaration"), filed with the Court concurrently herewith.  In further support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.　　This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.  The legal predicates for the relief requested herein are Bankruptcy Code sections 105, 361, 362, 363, 364, 1107 and 1108, and Bankruptcy Rule 6003.

## BACKGROUND

2.　　On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.  The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these bankruptcy cases, is set forth in detail in the First Day Declaration, filed concurrently herewith and fully incorporated herein by reference.[2]

3.　　The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

## RELIEF REQUESTED

4.　　The Debtors maintain various insurance programs providing coverage for, among other things, workers' compensation liability, employment practices liability, automobile liability, marine liability, commercial property liability, directors and officers liability, fiduciary

---

[2]　Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

liability, internet liability, and commercial umbrella and excess liability claims (collectively, the "Insurance Programs").  The Insurance Programs include coverage primarily from the insurance policies listed on Exhibit A hereto (collectively, the "Insurance Policies"), which the Debtors have obtained through third-party insurance carriers (collectively, the "Insurance Carriers").  As of the Petition Date, the Debtors believe they are current on all of their premium obligations arising under the Insurance Policies.

5.	By this Motion, the Debtors seek entry of an order authorizing, but not directing, the Debtors to maintain their Insurance Policies and to pay all premiums, deductibles, administration fees and consulting fees (the "Insurance Obligations") arising under or in connection with the Insurance Policies which the Debtors have obtained through the Insurance Carriers, including any Insurance Obligations for prepetition periods.

6.	The Debtors also seek entry of an order authorizing, but not directing, the Debtors to renew, revise, extend, supplement, change or enter into new Insurance Policies and insurance premium financing as needed in their business judgment without further order of the Court.  Further, the Debtors request entry of an order authorizing, but not directing, the Debtors to continue their insurance premium financing and, to the extent necessary, to pay insurance premium financing obligations owed by the Debtors on account of such programs (the "Premium Financing Obligations").

7.	Finally, the Debtors also request an order (a) authorizing and directing all banks to receive, process, honor and pay any and all checks, drafts and other forms of payment, including fund transfers, used by the Debtors to pay the Insurance Obligations and Premium Financing Obligations, whether presented before, on or after the Petition Date; (b) authorizing the banks to rely on the representations of the Debtors as to which checks are subject to this

Motion, provided that sufficient funds are on deposit in the applicable accounts to cover such payments; (c) prohibiting the Debtors' banks from placing any holds on, or attempting to reverse, any automatic transfers to any account of Insurance Obligations; and (d) authorizing the Debtors to issue new postpetition checks to replace any checks, drafts and other forms of payment, or effect new postpetition fund transfers, which may be inadvertently dishonored or rejected and to reimburse any expenses that may incur as a result of any bank's failure to honor a prepetition check.

**BASIS FOR RELIEF**

8.      The Debtors maintain various Insurance Policies.  As set forth on <u>Exhibit A</u>, the Insurance Policies include coverage for, among others, workers' compensation liability, employment practices liability, automobile liability, marine liability, commercial property liability, directors and officers liability, fiduciary liability, internet liability, and commercial umbrella and excess liability claims.  The Debtors maintain the Insurance Policies in amounts and types of coverage in accordance with laws governing the multiple jurisdictions in which the Debtors do business as well as in accordance with their contractual obligations.

9.      For the policy period 2010-2011, the total annual premiums under the Insurance Policies equaled approximately $2,527,173.  The current annual premiums under each of the Insurance Policies are set forth on <u>Exhibit A</u>.  The coverage types, levels and premiums for these Insurance Policies are neither unusual in amount nor in number in relation to the extent of the business operations conducted by the Debtors, and are similar to businesses of a comparable size and type to those of the Debtors.  As of the Petition Date, the Debtors were substantially current on amounts owed under the Insurance Policies.  For the avoidance of doubt, the Debtors seek authorization to make payments of Insurance Obligations and Premium

Financing Obligations attributable to the prepetition period in an amount aggregating approximately $365,000 (plus any unforeseen deductible payment amounts for prepetition claims).

10.     The Insurance Policies maintained by the Debtors will eventually expire under their annual terms, beginning with policies due to expire on November 15, 2011. Maintenance of insurance coverage is required under the United States Trustee for the District of Delaware Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees for Chapter 11 Cases (Jan. 26, 2009) (the "Guidelines"), the laws of many of the various jurisdictions in which the Debtors operate, the Debtors' various contractual agreements, and/or prudent business practices.  Furthermore, coverage under the Insurance Policies is needed to protect the Debtors as they wind down their businesses in an orderly fashion.  Therefore, the Debtors request entry of an order authorizing them to revise, extend, supplement, renew, change or enter into new insurance coverage, as needed in their business judgment.

11.     To the extent that any Insurance Policy premiums may be attributed to prepetition insurance coverage, the Debtors believe that payment of such Insurance Policy premiums is necessary to ensure continued coverage.  Similarly, the Debtors' believe that continued payment of Insurance Policy premiums as such premiums come due is necessary to ensure continued coverage.

12.     The Debtors have been represented in their negotiations with the various Insurance Carriers by City Underwriting Agency, Inc. and Willis of New York, Inc. (the "Insurance Consultants").  The employment of the Insurance Consultants has allowed the Debtors to obtain the insurance coverage necessary to operate their businesses in a reasonable and prudent manner, and to realize considerable savings in the procurement of such policies.

5

The Debtors believe that it is in the best interests of their creditors, stakeholders and estates to continue their business relationship with the Insurance Consultants. Accordingly, the Debtors seek the entry of an order authorizing them to continue their prepetition practice of paying fees to the Insurance Consultants in connection with their representation of the Debtors in various ongoing negotiations with the Debtors' Insurance Carriers.

13. The Debtors finance the payment of premiums for their commercial property liability and marine liability policies (the "Financed Policies") through a Premium Finance Agreement dated June 14, 2011 (the "Premium Financing Agreement"). The terms of the Premium Financing Agreement provide that the Debtors pay an initial down payment, followed by monthly installments, to Flatiron Capital ("Flatiron") in exchange for Flatiron's agreement to pay the full annual insurance premiums for the Financed Policies, in advance, to the Insurance Carrier that provides the Financed Policies. The Debtors' obligation to pay Flatiron is secured by any unearned premiums or other sums payable under the Financed Policies (collectively, the "Unearned Premiums").

14. The Debtors' initial principal obligation was $501,014, which consisted of $477,700 in premiums under the Financed Policies and $23,314 in broker fees. The Debtors made a down payment of $42,258 and, including $6,078 in interest accruing over the term of the Premium Financing Agreement, financed a total of $464,834. The Premium Financing Agreement requires eleven monthly payments of $42,258. As of the Petition Date, the Debtors had made five (5) monthly installment payments totaling $211,290, leaving a balance of approximately $247,437, payable in six equal monthly installments.

## APPLICABLE AUTHORITY

**A.**    **Payment of Insurance Obligations and Maintenance of the Insurance Programs is Necessary to Comply with United States Trustee Requirements.**

15.    Maintenance of insurance coverage under the various Insurance Policies is required under the Guidelines, the laws of the various states in which the Debtors operate, and the Debtors' various financial agreements.  <u>See</u> Guidelines ¶ 3 (requiring proof of insurance coverage).  Given this requirement, the Debtors believe that the maintenance of their Insurance Programs and Insurance Policies, through payment of the Insurance Obligations and the Premium Financing Obligations and the renewal, revision, extension, supplementation, change, or entering into new insurance coverage and premium financing agreements, as needed in their business judgment without further order of the Court, is necessary and essential to the Debtors' operation of their businesses during these chapter 11 cases.

16.    Specifically, under the terms of the Premium Financing Agreement, Flatiron may cancel the Financed Policies for non-payment and may accelerate and declare due and payable the entire unpaid premiums upon the Debtors' failure to pay the monthly Premium Financing Obligations.  Because the Debtors are required to maintain insurance coverage during their chapter 11 cases, the cancellation of these policies would be particularly disastrous.  <u>See</u> Guidelines ¶ 3.  Even if Flatiron did not immediately cancel the insurance coverage upon the Debtors' default, the Debtors' failure to pay monthly Premium Financing Obligations would result in a depletion of the Unearned Premiums, thereby reducing Flatiron's equity cushion.  <u>See</u>, <u>e.g.</u>, <u>In re Universal Motor Express, Inc.</u>, 72 B.R. 208, 210 (Bankr. W.D.N.C. 1987); <u>Schwinn Plan Comm. v. Transamerica Ins. Fin. Corp.</u>, 200 B.R. 980, 995 (Bankr. N.D. Ill. 1996).

17.    Insofar as the employment of the Insurance Consultants is necessary for the maintenance of the Insurance Policies in the most efficient, cost-effective manner, and based

on the fact that failure to maintain the Insurance Policies and Insurance Programs would violate the Guidelines, the Debtors believe that they should be authorized to continue to pay the applicable Insurance Obligations to the Insurance Consultants as these obligations become due.

**B.      Payment of the Premium Financing Obligations is Warranted Under Bankruptcy Code Sections 361, 362 and 363.**

18.      Security interests created by premium financing agreements generally are recognized as secured claims in bankruptcy to the extent of the amount of unearned premiums financed pursuant to such agreements.  See TIFCO, Inc. v. U.S. Repeating Arms Co., 67 B.R. 990, 994-95 (Bankr. D. Conn. 1986); Drabkin v. A.I. Credit Corp., 9 B.R. 159, 164-66 (Bankr. D.D.C. 1981).  As a secured creditor, Flatiron would be entitled to seek relief from the automatic stay, either to cancel the Financed Policies in accordance with the terms of the Premium Financing Agreement, or to seek adequate protection of its investment.  See In re Universal Motor Express, 72 B.R. at 211 (recognizing that a default under the financing arrangement and the resulting decline in value of the unearned premiums justified relief from the automatic stay).

19.      As duly perfected secured creditors, insurance premium financiers are entitled to adequate protection of the value of their security, pursuant to Bankruptcy Code section 361, to protect them against diminution in value of their collateral.  Adequate protection may take many forms, including relief from the automatic stay and authority to apply unearned premiums to the outstanding debt.  Where the unearned premiums have diminished to less than the amount of the outstanding debt, cash payments may suffice as adequate protection of the insurance premium financier's interest.  See TIFCO, 67 B.R. at 999-1000.

20.      Pursuant to the Premium Financing Agreement, Flatiron maintains a security interest in the Debtors' Unearned Premiums, and therefore Flatiron may be entitled to adequate protection in its interests in the Unearned Premiums under Bankruptcy Code section

363(e). The Debtors' failure to provide such adequate protection – for example by failing to pay the ongoing installments due under the Premium Financing Agreements – may constitute cause under Bankruptcy Code section 362(d) for Flatiron to obtain relief from the automatic stay and terminate the Financed Policies.

21. Even if the Debtors were successful in preventing Flatiron from lifting the automatic stay to pursue its remedies, such litigation likely would be contested and thus very costly to the estates. More importantly, if unsuccessful in the automatic stay litigation, the Debtors may be unable to find a carrier willing to provide them similar insurance coverage or a company willing to finance the premiums without charging significantly higher premiums and fees.

**C.      Payment of the Insurance Obligations is Authorized Under Bankruptcy Code Sections 1107(a) and 1108.**

22. The Debtors, operating their businesses as debtors in possession under Bankruptcy Code sections 1107(a) and 1108, are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." Id.

23. Courts have noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." Id.; see also In re Mirant Corp., 296 B.R. 427, 429-30 (Bankr. N.D. Tex. 2003) (allowing debtors to pay claims "reasonably believe[d]" to be authorized under the CoServ test or whose payment was necessary "in the exercise of their business judgment . . . in order for [the d]ebtors to continue their respective businesses"). The CoServ court specifically noted that preplan satisfaction of

prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." CoServ, 273 B.R. at 497. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

Id. at 498.

24. Payment of the Insurance Obligations and Premium Financing Obligations and the revision, extension, supplementation, renewal, change or entering into new Insurance Policies, as needed in the Debtors' business judgment, meets the CoServ court's standard. As noted above, insurance coverage is required by the Guidelines. Moreover, as a fiduciary for the bankruptcy estates, the Debtors could be violating their duties if they in any way jeopardize the coverage provided under the Insurance Policies. In addition, in the event that the Debtors were unable to pay the Insurance Consultants' fees, it is likely that the Debtors would lose the services of a knowledgeable agent and be forced to find other entities willing to serve as their insurance consultant. The Insurance Consultants have a unique knowledge of the Debtors' business and insurance needs that would be difficult to replace in the event that the Insurance Consultants refuse to continue as the Debtors' agent.

25. Second, as described above, non-payment of the Insurance Obligations and Premium Financing Obligations could result in cancellation of the Insurance Policies and disengagement of the Insurance Consultants, in which case the Debtors would not only be in violation of the Guidelines, the laws of various states in which the Debtors operate, and various

contractual agreements, but also the Debtors may be unable to find alternative insurance coverage and consulting services, or find such alternatives only at a much higher cost than the Debtors currently incur. Therefore, the potential harm and economic disadvantage that would stem from the cancellation of the Insurance Policies, disengagement of the Insurance Consultants, and failure to renew the Insurance Policies or revise, extend, supplement, change or enter into new insurance arrangements as needed in their business judgment, are grossly disproportionate to the amount of the Insurance Obligations and Premium Financing Obligations, and the costs to renew, revise, extend, supplement, change or enter into new insurance coverage.

26. Accordingly, to meet their fiduciary duties as debtors in possession under Bankruptcy Code sections 1107(a) and 1108, the Debtors must be authorized to pay the Insurance Obligations and Premium Financing Obligations and to revise, extend, supplement, renew, change or enter into new Insurance Policies, as needed in their business judgment. The Debtors thus seek authority to pay all Insurance Obligations and Premium Financing Obligations that may become due with respect to the Insurance Policies if such payment is necessary in the Debtors' business judgment in order to avoid cancellation or interruption of insurance coverage or brokerage services. In addition, the Debtors seek authority to revise, extend, supplement, renew, change or enter into new Insurance Policies, as needed in their business judgment.

**D.      Bankruptcy Code Section 105 and the Doctrine of Necessity Supports Payment of the Insurance Obligations and Premium Financing Obligations.**

27. The proposed payments of prepetition Insurance Obligations and Premium Financing Obligations should be authorized pursuant to Bankruptcy Code section 105 and under the "doctrine of necessity." The Court's power to utilize the doctrine of necessity in chapter 11 cases derives from the Court's inherent equity powers and its statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this

11

title." 11 U.S.C. § 105(a). The United States Supreme Court first articulated the doctrine of necessity over a century ago, in <u>Miltenberger v. Logansport Ry. Co.</u>, 106 U.S. 286 (1882), in affirming the authorization by the lower court of the use of receivership funds to pay pre-receivership debts owed to employees, vendors and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in receivership. <u>See</u> <u>id.</u> at 309. The modern application of the doctrine of necessity is largely unchanged from the Court's reasoning in <u>Miltenberger</u>. <u>See</u> <u>In re Lehigh & New Eng. Ry.</u>, 657 F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the continued operation of the [debtor] in serious jeopardy.").

28.     The doctrine of necessity "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor." <u>In re Ionosphere Clubs, Inc.</u>, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); <u>see also</u> <u>In re Just for Feet, Inc.</u>, 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment); <u>In re NVR L.P.</u>, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[T]he court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."); <u>In re Eagle-Picher Indus., Inc.</u>, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the chapter 11 process.").

29.     The doctrine of necessity is an accepted component of modern bankruptcy jurisprudence.  See Just For Feet, 242 B.R. at 826 (approving payment of key inventory suppliers' prepetition claims when such suppliers could destroy debtor's business by refusing to deliver new inventory on eve of debtor's key sales season); In re Payless Cashways, Inc., 268 B.R. 543, 546-47 (Bankr. W.D. Mo. 2001) (authorizing payment of critical prepetition suppliers' claims when such suppliers agree to provide postpetition trade credit); see also In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994); In re Ionosphere Clubs, Inc., 98 B.R. at 175-76.

## RESERVATION OF RIGHTS

30.     Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an assumption or rejection of any executory contract or unexpired lease pursuant to Bankruptcy Code section 365; or (e) otherwise affect the Debtors' rights under Bankruptcy Code section 365 to assume or reject any executory contract with any party subject to this Motion.

## IMMEDIATE RELIEF IS NECESSARY TO AVOID IMMEDIATE AND IRREPARABLE HARM

31.     Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003; see also In re First NLC Fin. Servs., LLC, 382 B.R. 547, 549-50 (Bankr. S.D. Fla. 2008) (holding that Rule 6003 permits entry of retention orders on an interim basis to avoid irreparable harm).  The Third Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions.  In that context, the court has instructed that irreparable harm is a continuing harm which cannot be adequately redressed by final relief on the

merits and for which money damages cannot provide adequate compensation.  See, e.g., Norfolk S. Ry. Co. v. City of Pittsburgh, 235 F. App'x 907, 910 (3d Cir. 2007) (citing Glasco v. Hills, 558 F.2d 179, 181 (3d Cir. 1977)).  Furthermore, the harm must be shown to be actual and imminent, not speculative or unsubstantiated.  See, e.g., Acierno v. New Castle County, 40 F.3d 645, 653-55 (3d Cir. 1994).  The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors.

### WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

32.     The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their businesses without interruption and to preserve value for their estates.  Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

### NOTICE

33.     Notice of this Motion will be given to: (i) the United States Trustee for the District of Delaware; (ii) counsel to the agent for the prepetition lenders; (iii) the parties included on the Debtors' lists of twenty (20) largest unsecured creditors; and (iv) all parties entitled to notice pursuant to Local Bankruptcy Rule 9013-1(m).

## NO PRIOR REQUEST

34.     No previous request for the relief sought herein has been made to this

Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order

granting the relief requested in the Motion and such other and further relief as may be just and

proper.

Dated:  Wilmington, Delaware
        November 2, 2011


*/s/ Mark S. Chehi*
Mark S. Chehi (I.D. No. 2855)
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000
(302) 651-3001

- and -

Jay M. Goffman
Mark M. McDermott
David M. Turetsky
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036-6522
(212) 735-3000
(212) 735-2000

Proposed Counsel for Debtors and Debtors in Possession

**EXHIBIT A**

**Policy Schedule**

# EXHIBIT A

## POLICY SCHEDULE

| POLICY TYPE | POLICY NUMBER | EFFECTIVE PERIOD | CARRIER | PREMIUM |
|---|---|---|---|---|
| Commercial General Liability | EB2631509778030 | Nov. 15, 2010 - Nov. 15, 2011 | Liberty Mutual Fire Insurance Company | $208,885 |
| Commercial Automobile | AS2631509778020 | Nov. 15, 2010 - Nov. 15, 2011 | Liberty Mutual Fire Insurance Company | $115,175 |
| Workers Compensation | WA763D509778010 | Nov. 15, 2010 - Nov. 15, 2011 | Liberty Mutual Fire Insurance Company | $371,326 |
| Commercial Umbrella Primary | TH2661065717010 | Nov. 15, 2010 - Nov. 15, 2011 | Liberty Mutual Fire Insurance Company | 155,856 |
| Directors & Officers Liability | NN756768/0 | Jan. 1, 2011 - Jan. 1, 2012 | Axis Insurance Company | $99,891 |
| Excess Directors & Officers | 03051979 | Jan. 1, 2011 - Jan. 1, 2012 | Allied World National Assurance Company | $67,351 |
| Crime | SAA2346181 | Jan. 8, 2011 - Jan. 8, 2012 | Great American Insurance Co. | $16,205 |
| Kidnap Ransom | KR1595392 | Jan. 1, 2011 - Jan. 1, 2012 | Great American Insurance Co. | $7,402 |
| Internet Liability | W103B6090201 | Dec. 22, 2010 - Dec. 22, 2011 | Lloyds of London | $58,819 |
| Employment Practices Liability | MNN756770 | Dec. 22, 2010 - Dec. 22, 2011 | Axis Insurance | $46,840 |
| Fiduciary Liability | U71050631 | Dec. 22, 2010 - Dec. 22, 2011 | U.S. Specialty Insurance Company | $8,310 |
| Commercial Property | AM667 | June 1, 2011 - June 1, 2012 | Affiliated FM Insurance Company | $498,413 |
| Ocean Marine | NYTRA110826000001PRM | June 1, 2011 - June 1, 2012 | St. Paul Fire and Marine Insurance Company | $2,700 |
| Medical Stop-Loss | HCL18728 | Oct. 1, 2011 – Sept. 30, 2012 | HCC Life Insurance Company | $870,000 (approximate) |
| **Total** | | | | **$2,527,173 (approximate)** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                 :

In re:                           :     Chapter 11
                                 :

FILENE'S BASEMENT, LLC, <u>et al.</u>,    :     Case No. 11-13511 (___)
                                 :

            Debtors.[1]         :     Joint Administration Pending
                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x    **Related Docket No. __**

## ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 1107 AND 1108 AND FED. R. BANKR. P. 6003 AUTHORIZING DEBTORS TO (I) MAINTAIN EXISTING INSURANCE POLICIES AND PAY ALL INSURANCE OBLIGATIONS ARISING THEREUNDER, (II) TO RENEW, REVISE, EXTEND, SUPPLEMENT, CHANGE OR ENTER INTO NEW INSURANCE POLICIES AND (III) CONTINUE TO HONOR <u>INSURANCE PREMIUM FINANCING OBLIGATIONS</u>

Upon the motion (the "<u>Motion</u>")[2] of the Debtors for an order, pursuant to

Bankruptcy Code sections 105, 361, 362, 363, 364, 1107, and 1108, and Bankruptcy Rule 6003

authorizing, but not directing, the Debtors to (i) maintain their existing insurance policies and to

pay all insurance obligations arising thereunder or in connection therewith; (ii) to renew, revise,

extend, supplement, change or enter into new insurance coverage and insurance premium

financing as needed in their business judgment; and (iii) continue to honor insurance premium

financing obligations; and upon the First Day Declaration; and due and sufficient notice of the

Motion having been given under the particular circumstances; and it appearing that no other or

further notice need be provided; and it appearing that the relief requested by the Motion is in the

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Filene's Basement, LLC (8277), Syms Corp. (5228), Syms Clothing, Inc. (3869), and Syms Advertising Inc. (5234). The Debtors' address is One Syms Way, Secaucus, New Jersey 07094.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

best interests of the Debtors, their estates, their creditors, their shareholders and other parties in interest; and after due deliberation thereon and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED that:**

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized, but not directed, to maintain their Insurance Policies, and to pay the Insurance Obligations and Premium Financing Obligations arising under or in connection with the Insurance Polices as such Insurance Obligations and Premium Financing Obligations become due.  The Debtors are authorized, but not directed, to continue their insurance premium financing and to pay their regular monthly installment payments under the Premium Financing Agreement as the same become due.  For the avoidance of doubt, this includes payment of all Insurance Obligations and Premium Financing Obligations attributable to the prepetition period in an aggregate amount up to $365,000 (plus any unforeseen deductible payment amounts for prepetition claims).

3.      The Debtors are authorized, but not directed, to continue their prepetition practice of paying all consultant fees arising under or in connection with the Insurance Policies as they become due, including, without limitation, all fees payable to City Underwriting Agency, Inc.

4.      Without further order of this Court, the Debtors are authorized, but not directed, to renew, revise, extend, supplement, change or enter into new insurance coverage and premium financing agreements as needed in their business judgment.

5.      The Debtors are authorized, but not directed, to continue their insurance premium financing and to pay their regular monthly installment payments under the Premium Financing Agreement as the same become due.

6.　　　All banks are (a) authorized and directed to receive, process, honor and pay any and all checks drawn on the payroll, drafts and other forms of payment, including fund transfers, used by the Debtors to satisfy their Insurance Obligations and Premium Financing Obligations, whether presented before, on or after the Petition Date; (b) authorized to rely on the representations of the Debtors as to which checks are subject to this Motion; <u>provided</u> that sufficient funds are on deposit in the applicable accounts to cover such payments; and (c) prohibited from placing any holds on, or attempting to reverse, any automatic transfers for Insurance Obligations or Premium Financing Obligations; <u>provided</u> <u>further</u>, that the Debtors are authorized to issue new postpetition checks to replace any checks, drafts and other forms of payment, or effect new postpetition fund transfers, which may be inadvertently dishonored or rejected and to reimburse any expenses that may incur as a result of any bank's failure to honor a prepetition check.

7.　　　Neither the provisions contained herein, nor any actions or payments made by the Debtors pursuant to this order, shall be deemed an admission as to the validity of the underlying obligation or a waiver of any rights the Debtors may have to subsequently dispute such obligation on any ground that applicable law permits.

8.　　　Nothing in this order or the Motion shall be deemed to constitute postpetition assumption or adoption of any agreement under Bankruptcy Code section 365. Notwithstanding the relief granted herein and any actions taken hereunder, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

9.     The Court finds and determines that the requirements of Bankruptcy Rule

6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable

harm.

10.     Notwithstanding Bankruptcy Rule 6004(h), this order shall be effective

and enforceable immediately upon entry hereof.

11.     This Court shall retain jurisdiction with respect to all matters arising from

or related to the implementation or interpretation of this order.

Dated:  Wilmington, Delaware
           _____, 2011


_____
Honorable
UNITED STATES BANKRUPTCY JUDGE