IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
             :

In re:                        :      Chapter 11
             :

FILENE'S BASEMENT, LLC, <u>et al.</u>,    :      Case No. 11-13511 (___)
             :

          Debtors.[1]      :      Joint Administration Pending
             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS UNDER 11 U.S.C. §§ 105, 361, 362, 363, AND 507(b), FED. R. BANKR. P. 2002, 4001(b) AND 9014, AND DEL. BANKR. L.R. 4001-2 (I) AUTHORIZING THE USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) SCHEDULING A FINAL HEARING AND (IV) GRANTING RELATED RELIEF

        The debtors and debtors in possession in the above-captioned cases (collectively,

the "<u>Debtors</u>"), hereby move (the "<u>Motion</u>") this Court for entry of interim (the "<u>Interim Order</u>")

and final (the "<u>Final Order</u>") orders under sections 105, 361, 362, 363, and 507(b) of title 11 of

the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001(b) and 9014 of the Federal

Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Local Bankruptcy Rule 4001-2 of

the Local Bankruptcy Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware ("<u>Local Bankruptcy Rules</u>"), authorizing the use

of Cash Collateral (as defined below), granting adequate protection, and scheduling a final

hearing regarding the same.  At the interim hearing, the Debtors will request entry of an Interim

Order, substantially in the form of the Interim Order attached hereto.  In support of the Motion,

the Debtors rely upon and incorporate by reference the Declaration of Gary Binkoski in Support

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Filene's Basement, LLC (8277), Syms Corp. (5228), Syms Clothing, Inc. (3869), and Syms Advertising Inc. (5234). The Debtors' address is One Syms Way, Secaucus, New Jersey 07094.

of Chapter 11 Petitions and First Day Pleadings (the "First Day Declaration"), filed with the Court concurrently herewith. In further support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The legal predicates for the relief requested herein are Bankruptcy Code sections 105, 361, 362, 363 and 507(b), Bankruptcy Rules 2002, 4001(b) and 9014, and Local Bankruptcy Rule 4001-2.

## BACKGROUND

3. On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code. The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these bankruptcy cases, is set forth in detail in the First Day Declaration, filed concurrently herewith and fully incorporated herein by reference.[2]

4. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5. Despite the Debtors' best efforts and initiatives to improve the performance of their deteriorating businesses or find a viable strategic alternative during the

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

course of the last several months – as more fully discussed in the First Day Declaration – the Debtors have reached the difficult conclusion that the best way to maximize the value of their assets for the benefit of their estates, creditors, stakeholders, and other parties in interest, is to conduct an orderly going-out-of-business liquidation and wind-down process.

6.      The Debtors intend to fund their operations during the liquidation and wind-down process primarily from an advance payment to be made to the Debtors upon approval by this Court of the Agency Agreement (as defined below) simultaneously filed herewith.  Until such time as the Court has entered an order approving the Agency Agreement, however, the Debtors do not have sufficient cash to fund their operations.  Accordingly, by this Motion, the Debtors seek authority to utilize Cash Collateral (as defined below) to fund their operations until such time as the Court has entered an order approving the Agency Agreement and the Debtors have received the advance payment necessary to fund their liquidation and wind-down process.

## RELIEF REQUESTED

7.      By this Motion, the Debtors hereby request entry of interim and final orders authorizing the use of cash that constitutes Cash Collateral under the Pre-Petition Credit Agreement (defined below), granting adequate protection in connection with the use of such Cash Collateral, and scheduling a final hearing regarding the same.  The Debtors propose to serve a copy of any interim order granting this Motion within three (3) business days after entry thereof.  The Debtors further request that the Court (a) set a deadline for filing objections to the Motion and entry of the Final Order thereon; (b) set a final hearing on the Motion; and (c) enter the Final Order on this Motion at or after such final hearing.

## BASIS FOR RELIEF

8.    Syms Corp. and Filene's Basement, LLC (collectively, the "Borrowers")[3] and Bank of America, N.A., as administrative agent and collateral agent (in such capacities, the "Pre-Petition Agent"), and various lenders (the "Pre-Petition Lender Parties") are parties to that certain Credit Agreement, dated as of August 27, 2009 (as amended and modified and together with all ancillary documents, the "Pre-Petition Credit Agreement") and related Security Agreement, dated as of August 27, 2009 (the "Pre-Petition Security Agreement"), and related Mortgage, Security Agreement and Collateral Assignment of Leases and Rents, dated as of August 27, 2009 (the "Mortgage") and Leasehold Mortgage, Security Agreement and Collateral Assignments of Leases and Rents, dated as of March 8, 2011 (the "Pre-Petition Mortgage" and, together with the Pre-Petition Credit Agreement, the Mortgage and the Pre-Petition Security Agreement, the "Pre-Petition Credit Documents"), whereby the Pre-Petition Lender Parties provided a revolving credit facility to the Borrowers, and various account control agreements and other agreements furnished the Pre-Petition Agent with control over the Pre-Petition Lender Parties' Collateral.

9.    As of the Petition Date, the aggregate principal amount outstanding under the Pre-Petition Credit Agreement was approximately $31,310,959, consisting of approximately $20,249,859 of Committed Loans and approximately $11,061,100 of L/C Obligations (as each of those terms is defined in the Pre-Petition Credit Agreement), together with interest, fees, indemnities, expense reimbursement obligations, and bank product and cash management services secured by the Pre-Petition Credit Documents (collectively, the "Pre-Petition Obligations").

---

[3]    Debtors Syms Clothing, Inc. and Syms Advertising Inc. are not Borrowers.

10.     The obligations under the Pre-Petition Credit Agreement are secured by security interests in and liens on, among other things, substantially all of their existing and after-acquired personal property – including all of the cash of the Debtors – as well as mortgages on certain real property as described in the Pre-Petition Credit Agreements (collectively, the "Pre-Petition Collateral").  As described in more detail in the Debtors' motion to continue to use their cash management system as modified, substantially all of the Debtors' cash is centralized around two accounts.  An operating account held by Syms Corp. (the "Syms Corp. Operating Account") ultimately receives all of the Debtors' receipts, and prior to the Petition Date was used to pay down the Debtors' revolving credit facility (the "Credit Facility").  Prior to the Petition Date, funds from the Credit Facility were borrowed and transferred to a single concentration Bank Account (the "Concentration Account") which funded all of the Debtors' disbursements in connection with payroll and accounts receivable.  The Debtors' cash constitutes "cash collateral" of the Pre-Petition Lender Parties under Bankruptcy Code section 363 (the "Cash Collateral").

11.     The Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses without the use of the Cash Collateral.  The Debtors' ability to maintain business relationships with their vendors, suppliers and customers, to pay their employees and otherwise finance their operations during the liquidation and wind-down process is essential to the Debtors' ability to maximize value for all stakeholders.  In the absence of the Debtors' use of the Cash Collateral, the proper administration and funding of these chapter 11 cases and an orderly wind-down would not be possible, and serious and irreparable harm to the Debtors, their estates, their creditors and stakeholders would occur.  The preservation and maintenance of the ongoing operations of the Debtors are of the utmost

importance to a successful liquidation and wind-down of the Debtors under Chapter 11 of the Bankruptcy Code.

12.    As detailed in the Debtors' Emergency Motion For Entry Of Orders (A) Scheduling A Hearing And Approving The Form And Manner Of The Notice Of The Motion And Hearing Thereon And (B)(I) Approving The Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Assets Through Store Closing Sales, (III) Authorizing The Debtors To Abandon Unsold Property, (IV) Waiving Compliance With Contractual Store Closing Sale Restrictions And Exempting The Debtors From State Wage Pay Requirements And Laws Restricting Store Closing Sales, (V) Authorizing The Debtors' Assumption Of October Agency Agreement And (VI) Granting Related Relief (the "Agency Agreement Motion"), filed contemporaneously herewith, the Debtors seek to enter into an Agency Agreement (the "Agency Agreement") with a joint venture of Gordon Brothers Retail Partners, LLC and Hilco Merchant Resources, LLC (the "Liquidators") to conduct an orderly liquidation and wind-down of the Debtors' businesses.

13.    Pursuant to the Agency Agreement, the Liquidators will advance (the "Advance") to the Debtors eighty percent (80%) of the estimated guaranteed wind-down proceeds under the Agency Agreement within two (2) days after entry of an order of this Court authorizing the Debtors to enter into the Agency Agreement, and the Liquidators will pay "expenses of sale" thereby relieving the Debtors and their estates of such expenses.  As set forth in the Budget (as defined herein) and as a necessary term and condition of the consensual use of the Cash Collateral by the Debtors under the proposed Interim Order and Final Order, and as adequate protection to the Pre-Petition Lender Parties, the Advance will be used first to pay the

Pre-Petition Lender Parties under the Pre-Petition Credit Agreement in full and then to fund the ongoing wind-down process.

14.     Prior to the entry of an order granting the Agency Agreement Motion, the Debtors will be unable to fund their chapter 11 cases and the liquidation and wind-down process or otherwise meet their financial obligations without the use of Cash Collateral. The Pre-Petition Lender Parties have consented to such use of Cash Collateral pursuant to the terms summarized below and set forth in greater detail in the proposed form of order attached hereto. For the foregoing reasons, the Debtors submit that the relief requested herein is in the best interests of the Debtors, their estates, creditors and stakeholders.

## SUMMARY OF SELECTED TERMS OF INTERIM ORDER[4]

15.     In accordance with Local Bankruptcy Rule 4001-2, the following is a summary of the relief requested and set forth in the proposed form of Interim Order.[5]

(a)     <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of the Interim Order, and in accordance with the Budget, the Debtors are authorized to use Cash Collateral for the period (the "<u>Specified Period</u>") from the Petition Date through the earliest to occur of (i) the date of expiration of the Remedies Notice Period (as defined in the Interim Order) or (ii) 11:59 p.m. (Eastern time) on November 22, 2011, or (iii) the entry of an order by the Court approving the Debtors' entry into an agency agreement with a third party liquidator for the sale of the Debtors' inventory and equipment and the initial payment of the Guaranteed Amount thereunder (which shall be applied in accordance with the provisions of Paragraph 7 of the Interim Order). For clarity, after payment in full of the Pre-Petition Obligations, subject to the provisions of Paragraph 8 of the Interim Order, the Debtors may continue to use Cash Collateral in the ordinary course of business and without regard to any budget notwithstanding the expiration of the Specified Period. Except as otherwise expressly provided in the Interim Order, Cash Collateral may be

---

[4]     The description of the terms of the proposed Interim Order provided in this Motion is intended only as a summary. In the event of any inconsistency between the descriptions set forth herein and the terms of the Interim Order, the terms of the Interim Order shall govern.

[5]     The terms of the Final Order should be substantially similar to the terms of the Interim Order.

used during the Specified Period, at the times, in the amounts, and for the purposes identified in the cash collateral budget previously approved by the Pre-Petition Agent, a copy of which is attached to the Interim Order as Exhibit A (as may be amended as provided in the Interim Order, the "Budget").  The limitation on Cash Collateral use during the Remedies Notice Period (as defined in Paragraph 14 of the Interim Order) shall not affect Paragraph 16 of the Interim Order.  All Cash Collateral use must be in accordance with the terms of the Budget, subject to the variance provided in Paragraph 13(n) of the Interim Order.  The authorization for the Debtors to use Cash Collateral pursuant to the Interim Order shall terminate upon the expiration of the Specified Period.  Nothing in the Interim Order shall constitute the Pre-Petition Secured Parties' consent to the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or the Debtors' use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in the Interim Order.

(b)     Adequate Protection Liens.  Pursuant to sections 361 and 363(e) of the Bankruptcy Code, the Pre-Petition Agent, for the benefit of itself and the other Pre-Petition Secured Parties, as adequate protection of the interests of the Pre-Petition Secured Parties against any Diminution in Value of their interest in the Pre-Petition Collateral, is hereby granted additional and replacement continuing valid, binding, enforceable, non-avoidable, and automatically perfected post-petition security interests in and liens (the "Adequate Protection Liens") on any and all presently owned and hereafter acquired personal property, real property and all other assets of the Debtors and their estates, together with any proceeds thereof (collectively, the "Adequate Protection Collateral" and together with the Pre-Petition Collateral, the "Collateral").  For purposes of the Interim Order, "Adequate Protection Collateral" shall include causes of action under section 549 of the Bankruptcy Code and the proceeds thereof but shall not include other causes of action under chapter 5 of the Bankruptcy Code.

(i)     The Adequate Protection Liens shall be junior only to:  (A) the Carve Out; (B) the Pre-Petition Liens; and (C) liens and security interests which are valid, properly perfected and non-avoidable as of the Petition Date.  The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the Adequate Protection Collateral.

(ii)    The Adequate Protection Liens shall be enforceable against and binding upon the Debtors, their estates and any successor thereto, including without limitation, any trustee or other estate representative appointed in the Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of the Cases, or in any other proceedings superseding or related to any of the

foregoing (collectively, "Successor Case").  Except as provided in the Interim Order, the Adequate Protection Liens shall not be made subject to or pari passu with any lien or security interest by any court order heretofore or hereafter entered in the Cases or any Successor Case, and the Adequate Protection Liens shall be valid and enforceable against any trustee appointed in the Cases or any Successor Case, or upon the dismissal of the Cases or any Successor Case.  The Adequate Protection Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made pari passu with or senior to the Pre-Petition Liens or the Adequate Protection Liens.

(c)     Adequate Protection Superpriority Claims.

(i)      As further adequate protection against any Diminution in Value of the interests of the Pre-Petition Agent and the other Pre-Petition Secured Parties in the Pre-Petition Collateral, the Pre-Petition Agent and the other Pre-Petition Secured Parties are each hereby granted as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Cases and any Successor Case (collectively, the "Adequate Protection Superpriority Claim").

(ii)     Except for the Carve Out, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 1113 and 1114 of the Bankruptcy Code.

(d)     Adequate Protection Payments and Protections.

(i)      Until all Pre-Petition Obligations have been paid in full, the Debtors are authorized and directed to provide adequate protection payments to the Pre-Petition Agent, on behalf of itself and the other Pre-Petition Secured Parties (the "Adequate Protection Payments"), in the form of:  (A) payments of interest at the non-default rate and letter of credit and cash management fees, at the times specified therein; (B) ongoing payment of the reasonable fees, costs and expenses of the Pre-Petition Agent, including, without limitation, the fees and expenses of legal and other professionals (if any) retained by the Pre-Petition Agent; (C) payment of the net proceeds from the sale or other disposition of

any real estate of the Debtors, (D) payment of the Guaranteed Amount and other amounts payable to the Debtors under any agency agreement with a third party liquidator for the sale of the Debtors' inventory and equipment, and (E) payment of an administrative agent's fee in the sum of $50,000 upon the entry of the Interim Order.

(ii)     In addition, the Debtors shall (A) provide continued maintenance and insurance of the Collateral in the amounts and for the risks, and by the entities, required under the Pre-Petition Credit Documents, and (B) pay all post-petition real estate and other taxes on the Collateral as and when due. Professionals for the Pre-Petition Agent shall not be required to comply with the U.S. Trustee fee guidelines for the payment of fees and expenses.

(e)     <u>Indemnity Obligations</u>.

(i)     After payment of the Pre-Petition Obligations (including the cash collateralization of all letters of credit), the Pre-Petition Agent and the Pre-Petition Secured Parties shall retain their Pre-Petition Liens, the Adequate Protection Liens, and the Adequate Protection Superpriority Claim. In addition, the net proceeds from the sale or other disposition of any real estate of the Debtors (the "<u>Real Estate Proceeds</u>") shall be held by the Debtors and not disbursed to any other persons and creditors (other than in payment of operating expenses in the ordinary course of business) as security for any reimbursement, indemnification or similar continuing obligations of the Debtors in favor of the Pre-Petition Agent and the other Pre-Petition Secured Parties under the Pre-Petition Credit Documents (the "<u>First Lien Indemnity Obligations</u>"); <u>provided</u>, <u>however</u>, that all Pre-Petition Liens, the Adequate Protection Liens, the Adequate Protection Superpriority Claim and rights with respect to Real Estate Proceeds as set forth in the Interim Order shall terminate upon the expiration of the Challenge Period (as defined in the Interim Order) if, as of such date, no person or entity has filed or asserted (by motion, complaint or otherwise) against the Pre-Petition Agent or any other Pre-Petition Secured Party an adversary proceeding, cause of action, objection, claim, defense or other Challenge (as defined in the Interim Order).

(ii)     In the event that any person or entity files or asserts (by motion, complaint or otherwise) a Challenge against any of the Pre-Petition Agent or any other Pre-Petition Secured Party prior to the Challenge Period Termination, then the Challenge Period shall automatically be extended, and shall not terminate or expire and the Pre-Petition Liens, the Adequate Protection Liens, the Adequate Protection Superpriority Claim and the rights of the Pre-

Petition Agent and the other Pre-Petition Secured Parties with respect to Real Estate Proceeds as set forth in Paragraph 8(a) of the Interim Order shall not terminate or expire, unless and until (A) all such Challenges are resolved and adjudicated by the entry of a final order of a court of competent jurisdiction from which no appeal (or no further appeal) can be taken, and (B) any and all indemnification claims of any of the Pre-Petition Agent and the other Pre-Petition Secured Parties related thereto or arising therefrom have been satisfied in full.

(f)     <u>Perfection of Adequate Protection Liens</u>.  The Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens, without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens, or to entitle the Pre-Petition Agent and the other Pre-Petition Secured Parties to the priorities granted in the Interim Order.  The Pre-Petition Agent shall continue to have all rights pursuant to all third party notifications and/or agreements in connection with the Pre-Petition Credit Documents, including all collateral access agreements and all other agreements with third parties (including any depository bank) relating to, or waiving claims against, any Pre-Petition Collateral, including without limitation, each collateral access agreement duly executed and delivered by any landlord of the Debtors and including, for the avoidance of doubt, all Blocked Account Agreements (as defined in the Pre-Petition Credit Documents).

(g)     <u>Debtors' Obligations</u>.  Until the Pre-Petition Obligations are paid in full and the Challenge Period has expired, the Debtors shall:

(i)     Maintain their current cash management system as it may be modified with the consent of the Pre-Petition Agent (such consent not to be unreasonably withheld) and subject to any order of this Court approving the Debtors' motion to continue such cash management system and in connection therewith, remit all Cash Collateral, as and when received (including, without limitation, any funds in any deposit account maintained by the Debtors to one or more deposit accounts maintained by the Debtors at Bank of America, N.A., which accounts shall be subject to the Pre-Petition Liens and the Adequate Protection Liens of the Pre-Petition Agent, but which Cash Collateral may be used by the Debtors to the extent provided in this Order;

(ii)    Apply Cash Collateral and other sources of cash available to the Debtors hereunder to the expenses of the operation of its business as provided in the Budget;

(iii)   Deliver to the Pre-Petition Agent on or before the close of business on Wednesday of each week (and if such day is not a business day, then the next succeeding business day) a (A) comparison for the prior week of actual results of all items contained in the Budget to the amounts originally contained in the Budget (B) cumulative comparison for the period from the Petition Date through the end of the prior week of the actual results of all items contained in the Budget to the amounts originally contained in the Budget, and (C) until the Pre-Petition Obligations have been paid in full (except as provided in Paragraph 8 of the Interim Order) an updated Borrowing Base Certificate, in each case along with such supporting information as the Pre-Petition Agent may request;

(iv)    Provide the Pre-Petition Agent with financial reports, including cash expenditures in relation to the Budget, when reasonably requested by the Pre-Petition Agent;

(v)     Serve the Pre-Petition Agent and its counsel with a copy of each monthly report filed by the Debtors in these Cases as required by the Court, the U.S. Trustee or applicable law; and

(vi)    Provide to the Pre-Petition Agent such information as it may reasonably request.

(h)    Disposition of Collateral.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral other than (A) Inventory in the ordinary course of business, consistent with past practices, without the prior written consent of the Pre-Petition Agent, or (B) as further ordered by the Court after notice and a hearing.

(i)    Events of Default.  The occurrence of any of the following events, unless waived by the Pre-Petition Agent in writing, shall constitute an event of default (collectively, the "Events of Default"):

(i)     the failure by the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under the Interim Order (including, without limitation, the payment by the Debtors of administrative expenses other than as set forth in the Budget);

(ii)    other than as provided in the Interim Order, the obtaining after the Petition Date of credit or the incurring of indebtedness that is (A) secured by a security interest, mortgage or other lien on all or any portion of the Collateral which is equal or senior to any security

interest, mortgage or other lien of the Pre-Petition Agent or the other Pre-Petition Secured Parties, or (B) entitled to priority administrative status which is equal or senior to that granted to the Pre-Petition Agent or the other Pre-Petition Secured Parties in the Interim Order;

(iii)    any lien or security interest purported to be created under the Pre-Petition Credit Documents shall cease to be a valid and perfected lien on or security interest in any Collateral, with the priority required by the applicable Pre-Petition Credit Documents or in the Interim Order;

(iv)    the entry of an order by the Court granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (A) to allow any creditor to execute upon or enforce a lien on or security interest in (i) any inventory or (ii) in any other Collateral that is senior to any liens or security interests of the Pre-Petition Secured Parties, or (B) the granting (whether voluntary or involuntary) of any lien on any Collateral to any state or local environmental or regulatory agency or authority that is senior to any liens or security interests of the Pre-Petition Secured Parties;

(v)    any of the Debtor's return of goods (other than damaged goods) constituting Collateral pursuant to section 546(h) of the Bankruptcy Code (other than with the consent of the Pre-Petition Agent);

(vi)    reversal, vacatur, or modification (other than a modification acceptable to the Pre-Petition Agent and the other Pre-Petition Secured Parties) of the Interim Order;

(vii)    dismissal of the Cases or conversion of the Cases to a chapter 7 case, or appointment of a chapter 11 trustee or examiner with enlarged powers or other responsible person;

(viii)    any misrepresentation of a material fact made after the Petition Date by any of the Debtors to the Pre-Petition Agent or the other Pre-Petition Secured Parties about the financial condition of the Debtors, the nature, extent, location or quality of any Collateral, or the disposition or use of any Collateral, including Cash Collateral;

(ix)    a default by the Debtors in reporting after the Petition Date financial information as and when required in the Interim Order;

(x)    the sale after the Petition Date of any portion of any of the Debtors' assets outside the ordinary course of business without an order of this Court, after notice and a hearing;

(xi)    the granting by the Court of any motion providing for reconsideration of the Interim Order or the granting by the Court of relief from stay by any Person other than the Pre-Petition Agent or the other Pre-Petition Secured Parties on all or any portion of the Collateral;

(xii)    the payment by the Debtors of amounts in excess of 110% of "Operating Disbursements" set forth in the "High" column of the Budget, tested weekly on a cumulative basis as of the close of business on Saturday of each week;

(xiii)    the failure to make Adequate Protection Payments or other payments to the Pre-Petition Agent as set forth in the Budget and in the Interim Order when due;

(xiv)    the failure of the Debtors to file a motion seeking approval of the Debtors' entry into an agency agreement with a third party liquidator for the sale of the Debtors' inventory and equipment on terms acceptable to the Pre-Petition Agent by November 4, 2011;

(xv)    the failure of the Debtors to obtain an order of the Court approving the Debtors' entry into an agency agreement with a third party liquidator for the sale of the Debtors' inventory and equipment by November 22, 2011 on terms reasonably acceptable to the Pre-Petition Agent (it being understood that the provisions of the Second Agency Agreement dated agreement dated November 2, 2011 with a joint venture of Gordon Brothers Retail Partners, LLC and Hilco Merchant Resources, LLC and furnished to the Pre-Petition Agent is acceptable);

(xvi)    the failure of the Debtors to obtain proceeds from the liquidation sale of described in clause (xv) above in an amount sufficient to pay, and used to pay, all Pre-Petition Obligations in full by November 25, 2011; or

(xvii)    the failure of the Court to enter the Final Order by November 22, 2011.

(j)    <u>Rights and Remedies Upon Event of Default</u>.  Immediately upon the occurrence and during the continuation of an Event of Default, the Pre-Petition Agent may declare a termination, reduction or restriction of the ability of the Debtors to use any Cash Collateral, (any such declaration, shall be referred to in the Interim Order as a "<u>Termination Declaration</u>"). The Termination Declaration shall be given by facsimile (or other electronic means) to counsel to the Debtors, counsel to any Statutory Committee and the U.S. Trustee (the earliest date any such Termination Declaration is made shall be referred to in the Interim Order as the

"Termination Declaration Date"). At the expiration of the Remedies Notice Period, the Debtors' right to use Cash Collateral shall automatically cease. Within five (5) business days after the Termination Declaration Date (the "Remedies Notice Period") the Debtors shall be entitled to seek an emergency hearing with the Court. Unless the Court determines otherwise during the Remedies Notice Period, the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice or order, and the Debtors shall no longer have the right to use or seek to use Cash Collateral and the Pre-Petition Agent and the other Pre-Petition Secured Parties shall be permitted to exercise all remedies set forth in the Interim Order in the Pre-Petition Credit Documents and as otherwise available at law against the Collateral, without further order of or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the Collateral or any other rights and remedies granted to the Pre-Petition Agent and the other Pre-Petition Secured Parties with respect thereto pursuant to the Pre-Petition Credit Agreement or Pre-Petition Credit Documents, or the Interim Order, as applicable.

(k)     Carve Out.

(i)     *Carve Out*. As used in the Interim Order, the "Carve Out" means the following expenses: (A) statutory fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) until the indefeasible payment in full in cash of the Pre-Petition Obligations, and (B) **$50,000 for counsel to any Statutory Committee under sections 327 or 1103(a) of the Bankruptcy Code (together with any professionals retained by the Debtors, a "Case Professional") to be utilized to investigate the claims, liens and security interests of the Pre-Petition Agent and other Pre-Petition Secured Parties and any possible clams that may be asserted against any of the Pre-Petition Secured Parties.**[6] The Carve Out shall be senior in priority to the Pre-Petition Liens, the Adequate Protection Liens and the Adequate Protection Superpriority Claim. No payment of any Carve Out amount shall reduce any Pre-Petition Obligations.

(ii)    *No Direct Obligation to Pay Professional Fees*. None of the Pre-Petition Agent or the other Pre-Petition Secured Parties shall be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Cases or any Successor Case. Nothing in the Interim

---

[6]    The Carve Out for Case Professionals is limited because it is anticipated that there will be ample proceeds of estate property to pay professional fees incurred in these cases.

Order or otherwise shall be construed (A) to obligate any of the Pre-Petition Agent or the other Pre-Petition Secured Parties in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement, (B) to increase the Carve Out, (C) as a consent to the allowance of any professional fees or expenses of any Case Professionals, or (D) to affect the right of the Pre-Petition Agent, or the other Pre-Petition Secured Parties to object to the allowance and payment of such fees and expenses.

(l) <u>Limitations on the Cash Collateral and the Case Professionals Carve Out</u>. The Case Professionals Carve Out may not be used: (i) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (A) against any of the Pre-Petition Agent or the other Pre-Petition Secured Parties or seeking relief that would impair their respective rights and remedies under the Pre-Petition Credit Documents or the Interim Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors or any Statutory Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration or similar relief that would impair the ability of any of the Pre-Petition Agent or the other Pre-Petition Secured Parties to recover on the Pre-Petition Obligations or seeking affirmative relief against them, (B) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Pre-Petition Obligations, (C) for monetary, injunctive or other affirmative relief against any of the Pre-Petition Agent or, the other Pre-Petition Secured Parties or the Collateral that would impair the ability of the Pre-Petition Agent or the other Pre-Petition Secured Parties to recover on the Pre-Petition Obligations or seeking affirmative relief against them, or (D) preventing, hindering or otherwise delaying the exercise by any of the Pre-Petition Agent or the other Pre-Petition Secured Parties of any rights and/or remedies under the Interim Order, the Pre-Petition Credit Documents, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the Pre-Petition Agent or the other Pre-Petition Secured Parties upon any of the Collateral; (ii) subject to the limited use of Cash Collateral set forth in Paragraph 3 and 16 of the Interim Order, to object to, contest, or interfere with in any way the enforcement or realization upon any of the Collateral by the Pre-Petition Agent or the other Pre-Petition Secured Parties once an Event of Default has occurred; (iii) to object to or challenge in any way the claims, liens, or interests (including interests in the Collateral) held by or on behalf of the Pre-Petition Agent or the other Pre-Petition Secured Parties; (iv) to assert, commence or prosecute any claims or causes of action whatsoever,

including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the Pre-Petition Agent or the other Pre-Petition Secured Parties; (v) to prosecute an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Pre-Petition Obligations, Pre-Petition Liens or any other rights or interests of the Pre-Petition Agent or the other Pre-Petition Secured Parties, including, without limitation, the Adequate Protection Liens and the Superpriority Claims granted in the Interim Order; or (vi) to prevent, hinder or otherwise delay the exercise by the Pre-Petition Agent or the other Pre-Petition Secured Parties of any rights and remedies granted under the Interim Order.

(m)     Reservation of Certain Third Party Rights and Bar of Challenges and Claims.

(i)     Nothing in the Interim Order shall prejudice the rights of a Statutory Committee or any other party in interest granted standing by the Court (other than the Debtors but including any trustee appointed in the Cases), to file an adversary proceeding or contested matter seeking to object to or challenging the Debtors' Stipulations, including, but not limited to those in relation to: (A) the validity, extent, priority, enforceability or perfection of the mortgages, security interests, and liens of any of the Pre-Petition Agent or the other Pre-Petition Secured Parties; (B) the validity, allowability, priority, full secured status or amount of any of the Pre-Petition Obligations; or (C) otherwise asserting any claims or causes of action against the Pre-Petition Agent or the other Pre-Petition Secured Parties.

(ii)     **A person or entity, including any Statutory Committee, if appointed, must commence, as appropriate, a contested matter or adversary proceeding raising any such objection or challenge,** including, without limitation, any claim against the Pre-Petition Agent or the other Pre-Petition Secured Parties in the nature of a setoff, counterclaim or defense to the applicable Pre-Petition Obligations, or a claim, related in any manner to the Pre-Petition Obligations, that seeks an affirmative recovery from the Pre-Petition Agent or the Pre-Petition Secured Parties (each, a "Challenge") **within the earlier of: (A) with respect to any Statutory Committee, sixty (60) calendar days from the effective date of retention of counsel to any Statutory Committee, and (B) with respect to other parties in interest with requisite standing other than the Debtors or any Statutory Committee, seventy-five (75) calendar days following the date of entry of the Interim Order**, in each case subject to extension by agreement of the Debtors and the Pre-Petition Agent (together, the "Challenge Period"). Upon the expiration of the

17

Challenge Period, as extended if applicable (the "Challenge Period Termination Date"), as to the Pre-Petition Agent and the other Pre-Petition Secured Parties against whom a Challenge has not been properly commenced, without further action by the Court: (x) any and all such Challenges by any person or entity (including, without limitation, any Statutory Committee, any receiver, any administrator, any responsible officer, any chapter 11 trustee, and/or any examiner or other estate representative appointed in the Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case or in any jurisdiction), shall be deemed to be forever waived, released and barred; (y) all of the Debtors' Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, validity, amount and secured status as to the Pre-Petition Agent's and each other Pre-Petition Secured Party's claims, liens, and interests shall be of full force and effect and forever binding upon the Debtors, the Debtors' bankruptcy estates and all creditors, interest holders, and other parties in interest in these Cases and any Successor Case and the Pre-Petition Obligations shall be deemed to be allowed in full as a fully secured claim within the meaning of Section 506 of the Bankruptcy Code for all purposes in connection with the Cases or any Successor Case; and (z) any repayment, whether prior or subsequent to the Petition Date, of the Pre-Petition Obligations shall be deemed final and indefeasible, not subject to subordination or disgorgement and otherwise unavoidable.

(iii) If a Challenge is filed or asserted (by motion, complaint or otherwise) within the Challenge Period, then the Challenge Period shall not expire but shall be automatically extended, and the Challenge Period Termination Date shall not occur, unless and until (A) all such Challenges are resolved and adjudicated by the entry of a final order of a court of competent jurisdiction from which no appeal (or no further appeal) can be taken, and (B) any and all indemnification claims of the Pre-Petition Agent or any of the other Pre-Petition Secured Parties related thereto or arising therefrom have been satisfied in full.

(n) **Section 506(c) Claims. Subject to and upon entry of the Final Order and the terms thereof, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the Pre-Petition Agent or the other Pre-Petition Secured Parties, or any of their respective claims or the Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the Pre-Petition Agent**

**and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.**

## APPLICABLE AUTHORITY

**A.      The Use of Cash Collateral is Necessary and is a Sound Exercise of the Debtors' Business Judgment**

16.      As discussed above, all of the Debtors' cash constitutes the Cash Collateral of the Pre-Petition Lender Parties.  As such, without immediate authority to use Cash Collateral, the Debtors would have insufficient cash to sustain their business operations and would be forced to immediately cease operating as a going concern and commence a disorderly, value-destructive liquidation under chapter 7 to the detriment of all stakeholders.  The Debtors and their estates will suffer irreparable harm if such use is not immediately authorized.  Accordingly, the need for the immediate use of Cash Collateral pending the final hearing is critical.

17.      Moreover, the Debtors submit that the terms and conditions set forth in the Interim Order and Final Order (i) are, taken as a whole, fair and reasonable under the circumstances; (ii) reflect the Debtors' reasonable exercise of business judgment consistent with their fiduciary duties; and (iii) are supported by reasonably equivalent value and fair consideration.  The terms of the Interim Order providing for the Debtors' use of Cash Collateral were negotiated at arms' length and in good faith by the Debtors, the Pre-Petition Agent, and their respective counsel.  Accordingly, the relief requested is warranted under the circumstances.  See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (business judgment rule requires finding that good business reason exists to grant debtor's application under section 363(b)); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 178-79 (D. Del. 1991).

**B.      The Use of Cash Collateral is Warranted Based on the Pre-Petition Lender Parties' Consent**

18.      The use of estate property by a debtor in possession is governed by Bankruptcy Code section 363.  Section 363(c)(1) provides that a debtor may use estate assets in the ordinary course of its business without notice or a hearing.  11 U.S.C. § 363(c)(1).  Section 363(c)(2), however, permits a debtor to use, sell or lease cash collateral only if the entity with an interest in the cash collateral consents or the Court authorizes such use.  11 U.S.C. § 363(c)(1), (2).  Here, the Pre-Petition Lender Parties have consented to the Debtors' continued use of Cash Collateral pursuant to the terms of the Interim Order and the Final Order.  Therefore, the Court has authority to enter such orders pursuant to Bankruptcy Code section 363(c)(2).

**C.      The Pre-Petition Lender Parties' Interests are Adequately Protected**

19.      The Debtors believe that the Pre-Petition Lender Parties are adequately protected in connection with the Debtors' proposed use of Cash Collateral.  What constitutes adequate protection is determined on a case-by-case basis.  See MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393, 1396-97 (10th Cir. 1987); Martin v. U.S. (In re Martin), 761 F.2d 472, 474 (8th Cir. 1985); In re Beker Indus. Corp., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).  Although the Bankruptcy Code does not define the term "adequate protection," it provides a non-exhaustive list of types of adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditor's interest in such property.  See 11 U.S.C. § 361.  Specifically, Bankruptcy Code section 361 provides the following non-exclusive examples of what may constitute adequate protection:

> (1)      requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the . . . use . . . under section 363 . . . results in a decrease in the value of such entity's interest in such property;

(2)      providing to such entity an additional or replacement lien to the extent that such . . . use . . . results in a decrease in the value of such entity's interest in such property; or

(3)      granting such other relief . . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

20.      Essentially, the Bankruptcy Code intends "adequate protection" to shield a secured creditor from diminution in the value of its interest in the particular collateral during the period of use by the debtor.  See In re Swedeland Dev. Group, Inc., 16 F.3d 552, 554 (3d Cir. 1994) ("[T]he whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.") (internal quotation omitted); In re 495 Cent. Park Ave. Corp., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992).  The Debtors' requested use of Cash Collateral and the protections afforded the Pre-Petition Lender Parties in the Interim Order, in light of the circumstances, are reasonable, appropriate, and sufficient to satisfy the legal standard of "adequate protection" and will serve to maintain the value of the Pre-Petition Collateral.

21.      The proposed use of the Pre-Petition Lender Parties' Cash Collateral provides adequate protection to the Pre-Petition Lender Parties.  As set forth above, the Pre-Petition Lender Parties' Cash Collateral will be used to sustain the Debtors' business operations, allowing for an orderly liquidation and wind-down process designed to achieve maximum value for all of the Debtors' stakeholders.  The orderly liquidation of the Debtors' assets will provide the highest and best value.  If Cash Collateral was not available for this purpose, the Debtors would not have the ability to fund payroll or otherwise maintain their operations during the liquidation and wind-down process.  The Court's authorization of the use of Cash Collateral,

therefore, will protect the Pre-Petition Lender Parties' security interests by preserving the value of their collateral. See In re Constable Plaza Assocs., L.P., 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (observing that debtor's use of rents to maintain and operate property "will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the secured lender's] mortgage"); In re Cardinal Indus. Inc., 118 B.R. 971, 981 (Bankr. S.D. Ohio 1990) (ruling that secured lenders were adequately protected by debtor's use of rents to maintain and manage encumbered properties).

22.     Further, the Bankruptcy Code expressly provides that "providing [a] replacement lien" is a means of adequate protection. 11 U.S.C. § 361(2). Granting replacement liens provides ample adequate protection of the secured creditors' interest in cash collateral. See, e.g., In re Gen. Growth Props., Inc., 412 B.R. 122, 131 (Bankr. S.D.N.Y. 2009), appeal dismissed as moot, 423 B.R. 716 (S.D.N.Y. 2010); In re Karl A. Neise, Inc., 16 B.R. 602, 603 (Bankr. S.D. Fla. 1981).

23.     Here, the Debtors have, among other things, granted the Pre-Petition Lender Parties several primary forms of adequate protection. First, the Debtors will adequately protect the Pre-Petition Lender Parties' interests in Cash Collateral by granting the Replacement Liens. Second, the Pre-Petition Lender Parties will be granted allowed administrative expense claims having priority specified in Bankruptcy Code section 507(b). Third, as a necessary condition of the Debtors' consensual use of the Cash Collateral and as further adequate protection for the Pre-Petition Lender Parties, they will be entitled to receive payment in full of all amounts owed to them under the Pre-Petition Credit Documents and the Interim and Final Order upon the Debtors receipt of the Advance. The Debtors have agreed to make the Adequate Protection Payments to the Pre-Petition Agent and the Pre-Petition Lender Parties.

24.     For the foregoing reasons, the Debtors' requested use of Cash Collateral and the protections provided to the Pre-Petition Lender Parties' are reasonable, appropriate, necessary and sufficient to satisfy the legal standard of "adequate protection."

## COMPLIANCE WITH LOCAL RULE 4001-2

25.     Local Bankruptcy Rule 4001-2(a)(i) provides, in pertinent part, that a motion for the use of cash collateral shall "(a) recite whether the proposed form of order and/or underlying cash collateral stipulation . . . contains any provision of the type indicated [in Local Bankruptcy Rule 4001-2], (b) identify the location of any such provision in the proposed form of order [or] cash collateral stipulation . . . and (c) justify the inclusion of such provision."  Del. Bankr. L.R. 4001-2(a)(i).

26.     As highlighted above, the Interim Order contemplates two provisions that implicate or potentially implicate Local Bankruptcy Rule 4001-2.  Specifically, the Interim Order (i) includes provisions, stipulations by the Debtors and findings of fact that bind the Debtors (but not their estates prior to termination of the Challenge Period), a statutory committee or other parties in interest with respect to the validity, perfection or amount of the Pre-Petition Lender Parties' prepetition liens or the Debtors' the waiver of claims against the Pre-Petition Lender Parties without potentially first giving parties in interest at least seventy-five (75) days from the entry of the Interim Order and a statutory committee at least sixty (60) days from the date of its retention of counsel to investigate such matters (see Interim Order ¶¶ E(1)(i)-(vi), 17); and (ii) contains a waiver of the estate's rights under Bankruptcy Code section 506(c), but only upon entry of the Final Order (see Interim Order ¶ 19).

27.     The Debtors undertook a review of the validity and priority of the Pre-Petition Lender Parties' prepetition liens and security interests and concluded that the liens and security interests are both valid and properly perfected.

28.     The facts and circumstances of these cases otherwise justify the inclusion of the above terms that require disclosure under Local Bankruptcy Rule 4001-2, and these terms should be approved.

### REQUEST FOR FINAL HEARING

29.     Pursuant to Bankruptcy Rule 4001(b)(2), which requires that a final hearing on a motion to use cash collateral be commenced no earlier than fourteen (14) days after service of the motion, the Debtors request that the Court schedule the final hearing for a date that is as soon as practicable, but in no event later than seven (7) days following the date scheduled for a creditors' committee organizational meeting, and establish the deadline prior to the final hearing for parties to file objections to the entry of a final order.

### NOTICE

30.     Notice of this Motion will be given to: (i) the United States Trustee for the District of Delaware; (ii) counsel to the agent for the Prepetition lenders; (iii) the parties included on the Debtors' lists of twenty (20) largest unsecured creditors; (iv) all parties entitled to notice pursuant to Local Bankruptcy Rule 9013-1(m); and (v) all parties entitled to notice pursuant to Bankruptcy Rule 4001(b)(1)(C).

### NO PRIOR REQUEST

31.     No prior request for the relief requested herein has been made to this or any other Court.

### CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
November 2, 2011

*/s/ Mark S. Chehi*

Mark S. Chehi (I.D. No. 2855)
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000
(302) 651-3001

- and -

Jay M. Goffman
Mark M. McDermott
David M. Turetsky
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036-6522
(212) 735-3000
(212) 735-2000

Proposed Counsel for Debtors and Debtors in Possession

25

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------  x
In re:                                                                :    Chapter 11
                                                                         :
FILENE'S BASEMENT, LLC                             :    Case Nos. 11-13511, 11-13512,
SYMS CORP                                                    :                11-13513, 11-13514
SYMS CLOTHING, INC.                                   :    Jointly Administered
SYMS ADVERTISING, INC.                             :
                                                                         x
            Debtors
-------------------------------------------------------

# INTERIM ORDER (i) AUTHORIZING USE OF CASH COLLATERAL, (ii) GRANTING ADEQUATE PROTECTION, (iii) MODIFYING THE AUTOMATIC STAY, AND (iv) SCHEDULING A FINAL HEARING

This matter having come before the Court upon the motion (the "Motion") of Filene's Basement, LLC, Syms Corp, Syms Clothing, Inc. and Syms Advertising, Inc., as debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Cases"), pursuant to sections 105, 361, 362, 363, and 507 of title 11 of the United States Code, 11 U.S.C. §§101 *et seq.* (as amended, the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking entry of an interim order (this "Interim Order") *inter alia*:

(i)        authorizing the Debtors' use of "cash collateral" (as defined in section 363(a) of the Bankruptcy Code, "Cash Collateral") of the Pre-Petition Agent and the Pre-Petition Secured Parties (each as defined herein);

(ii)        providing adequate protection to Pre-Petition Agent and the Pre-Petition Secured Parties for any diminution in value of their respective interests in the Pre-Petition Collateral (as defined herein), including the Cash Collateral;

(iii)        vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of

this Interim Order; and

(iv)     scheduling a final hearing (the "<u>Final Hearing</u>") to consider the relief requested in the Motion and the entry of a Final Order (as defined herein), and approving the form of notice with respect to the Final Hearing.

The Court having considered the Motion, the Declaration of Gary Binkoski, in Support of Chapter 11 Petitions and First Day Relief dated November __, 2011, the exhibits attached thereto, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on November __, 2011(the "<u>Interim Hearing</u>"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014; and the Interim Hearing to consider the interim relief requested in the Motion having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.     *Petition Date.*  On November 2, 2011 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>"). The Cases are being jointly administered.

B.  *Debtors in Possession*.  The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

C.  *Jurisdiction and Venue*.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings and property affected hereby.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Cases appears proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.  *Statutory Committee*.  As of the date hereof, the United States Trustee (the "U.S. Trustee") has not yet appointed an official committee of unsecured creditors in the Cases pursuant to section 1102 of the Bankruptcy Code (a "Statutory Committee").

E.  *Debtors' Stipulations*.  Subject to the provisions of Paragraph 17 of this Interim Order, and without prejudice to the rights of parties in interest as set forth in Paragraph 17 herein, the Debtors, for themselves, admit, stipulate, acknowledge and agree that (collectively, Paragraph E(i) through Paragraph E(v) below are referred to herein as the "Debtors' Stipulations"):

(i)  *Pre-Petition Credit Facility*.  Prior to the commencement of the Cases, pursuant to that certain Credit Agreement dated as of August 27, 2009 (as amended, supplemented, restated, or otherwise modified prior to the Petition Date, the "Pre-Petition Credit Agreement" and together with all other loan, guaranty, security and other documents executed in connection therewith (the "Pre-Petition Credit Documents"), among Syms Corp and Filene's Basement, LLC (collectively, the "Borrowers"), Bank of America, N.A., as administrative agent and collateral agent for the Lenders party to the Pre-Petition Credit Agreement (in such capacities, the "Pre-Petition Agent") and such Lenders (the "Pre-Petition Lenders"; the Pre-

Petition Agent and the Pre-Petition Lenders, together with any other secured parties under the Pre-Petition Credit Agreement and the other Pre-Petition Credit Documents are collectively referred to herein as the "Pre-Petition Secured Parties"), the Pre-Petition Lenders provided a revolving credit facility to the Borrowers (such facility, the "Revolver").

(ii)     *Pre-Petition Obligations.*  As of the Petition Date, the aggregate principal amount outstanding under the Pre-Petition Credit Agreement was approximately $31,310,959, consisting of approximately $20,249,859 of Committed Loans and approximately $11,061,100 of L/C Obligations (as each of those terms is defined in the Pre-Petition Credit Agreement), together with interest, fees, indemnities, expense reimbursement obligations, and bank product and cash management services secured by the Pre-Petition Credit Documents (collectively, the "Pre-Petition Obligations").

(iii)     *Pre-Petition Liens and Collateral.*  As more fully set forth in the Pre-Petition Credit Documents, prior to the Petition Date, the Borrowers granted security interests in and liens on, among other things, substantially all of their existing and after-acquired personal property, as well as mortgages on certain of its real property as described in the Pre-Petition Credit Documents (collectively, the "Pre-Petition Collateral") to the Pre-Petition Agent for the Pre-Petition Secured Parties (the "Pre-Petition Liens").

(iv)     *Validity, Perfection and Priority of Pre-Petition Liens and Pre-Petition Obligations.*  Subject to the provisions of Paragraph 17 of this Order, and without prejudice to the rights of parties in interest as set forth in Paragraph 17 herein, the Debtors acknowledge and agree that:  (a) as of the Petition Date, the Pre-Petition Liens on the Pre-Petition Collateral were valid, binding, enforceable, non-avoidable and properly perfected; (b) as of the Petition Date, the Pre-Petition Liens were senior in priority over any and all other liens and claims on the Pre-

Petition Collateral, subject only to certain liens otherwise permitted by the Pre-Petition Credit Documents (to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Pre-Petition Liens as of the Petition Date, the "Permitted Prior Encumbrances");[1] (c) the Pre-Petition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Borrowers; (d) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Pre-Petition Obligations exist, and no portion of the Pre-Petition Liens or the Pre-Petition Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors have no claims, objections, challenges, causes of actions, and/or choses in action, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against any of the Pre-Petition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, managers, members, directors and employees arising out of, based upon or related to their respective loans or other credit extensions to the Borrowers pursuant to the Pre-Petition Credit Documents; (f) as of the Petition Date, the value of the Pre-Petition Collateral securing the Pre-Petition Obligations exceeded the amount of such obligations, and accordingly the Pre-Petition Obligations are allowed secured claims within the meaning of section 506 of the Bankruptcy Code, in the principal amount, as of the Petition Date, of approximately $31,310,959 together with interest, fees, indemnities, expense reimbursement obligations (including, without limitation, reasonable attorneys' fees and

---

[1] Nothing herein shall constitute a finding or ruling by this Court that any such Permitted Prior Encumbrances are valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party in interest including, but not limited, to the Debtors, the Pre-Petition Secured Parties, and any Statutory Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such Permitted Prior Encumbrance and/or security interest.

related expenses), bank product and cash management services and any and all other charges of whatever nature owing or hereafter accruing in respect of such Pre-Petition Obligations; and (g) any payments made under the Pre-Petition Credit Documents or on account of the Pre-Petition Obligations to or for the benefit of the Pre-Petition Secured Parties prior to the Petition Date were on account of amounts in respect of which the Pre-Petition Secured Parties were oversecured, were payments out of the Pre-Petition Collateral and were made in the ordinary course of business, and such payments did not diminish any property otherwise available for distribution to unsecured creditors.

(v) *Cash Collateral*. The Debtors represent that all of the Borrowers' cash, including the cash in the Borrowers' deposit accounts, wherever located constitute Cash Collateral in which the Pre-Petition Secured Parties have an interest.

(vi) *Default by the Debtors*. Subject to the provisions of Paragraph 17 of this Interim Order, and without prejudice to the rights of parties in interest as set forth in Paragraph 17 herein, the Debtors acknowledge and stipulate that the Borrowers are in default of their debts and obligations under the Pre-Petition Credit Documents.

F. *Adequate Protection*. The Pre-Petition Agent, for the benefit of the Pre-Petition Secured Parties is entitled to receive adequate protection to the extent of any diminution in value of its interests in the Pre-Petition Collateral (including the Cash Collateral) resulting from the use, sale or lease of Pre-Petition Collateral (including the Cash Collateral), the subordination of the Pre-Petition Liens to the Carve Out, as described herein, and the imposition of the automatic stay (collectively the "Diminution in Value") pursuant to sections 361, 362, and 363 of the Bankruptcy Code. Pursuant to sections 361, 363, and 507(b), as adequate protection: (i) the Pre-Petition Agent, for the benefit of the Pre-Petition Secured Parties, will receive (a) the Adequate

Protection Liens, (b) the Adequate Protection Superpriority Claim, and (c) the Adequate Protection Payments (each as defined herein).

G.    *Sections 506(c) and 552(b)*.  In light of Pre-Petition Agent's  agreement to subordinate its lien and superpriority claims to the Carve Out and to permit the use of its Cash Collateral for payments made in accordance with the Budget (as defined below) and the terms of this Interim Order, the Pre-Petition Agent and the other Pre-Petition Secured Parties are entitled, subject to and upon entry of the Final Order (as defined below) and the terms thereof as entered by the Court, to a waiver by the Debtors and their estates of (a) any "equities of the case" claims under section 552(b) of the Bankruptcy Code against the Pre-Petition Agent and the Pre-Petition Secured Parties, and (b) the provisions of section 506(c) of the Bankruptcy Code against the Pre-Petition Agent and the Pre-Petition Secured Parties.

H.    *Necessity of Relief Requested*.  The ability of the Debtors to finance their operations requires the use of Cash Collateral, absent which immediate and irreparable harm will result to the Debtors, their estates and creditors.  The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or to maintain their properties without the use of Cash Collateral.  The relief requested in the Motion is therefore necessary, essential, and appropriate for the continued operation of the Debtors' businesses and the management and preservation of their property.  The Pre-Petition Secured Parties and Debtors have negotiated at arms' length and in good faith regarding the Debtors' use of Cash Collateral to fund the operation of the Debtors' businesses during the Specified Period (as defined below).  The Pre-Petition Secured Parties have agreed to permit the Debtors to use their Cash Collateral for the Specified Period, subject to the terms and conditions set forth herein. Entry of this Interim Order is in the best interests of the Debtors and their estates.

I.     *Final Hearing*.  At the Final Hearing, the Debtors will seek final approval of the relief requested in the Motion for the proposed use of Cash Collateral arrangements on a final basis pursuant to a final order (in form and substance acceptable to the Pre-Petition Secured Parties, the "Final Order"), notice of which Final Hearing will be provided in accordance with this Interim Order.

J.     *Notice*.  Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including:  (i) the Office of the United States Trustee; (ii) the parties included on the Debtors' list of the twenty (20) largest unsecured creditors; (iii) counsel to the Pre-Petition Agent for itself and for the other Pre-Petition Secured Parties; and (iv) other secured parties of record.  The parties have made reasonable efforts to afford notice under the circumstances to permit the interim relief set forth in this Interim Order, and no other or further notice is or shall be required for such interim relief.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.     Motion Granted.  The Motion is granted, and the use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Interim Order.

2.     Objections Overruled.  All objections to the entry of this Interim Order to the extent not withdrawn or resolved are hereby overruled.

3.     Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Interim Order, and in accordance with the Budget, the Debtors are authorized to use Cash Collateral for the period (the "Specified Period") from the Petition Date through the earliest to occur of (a) the date of expiration of the Remedies Notice Period (as defined herein) or (b) 11:59

8

p.m. (Eastern time) on November 22, 2011, or (c) the entry of an order by the Court approving the Debtors' entry into an agency agreement with a third party liquidator for the sale of the Debtors' inventory and equipment and the initial payment of the Guaranteed Amount thereunder (which shall be applied in accordance with the provisions of Paragraph 7 hereof). For clarity, after payment in full of the Pre-Petition Obligations, subject to the provisions of Paragraph 8 hereof, the Debtors may continue to use Cash Collateral in the ordinary course of business and without regard to any budget notwithstanding the expiration of the Specified Period. Except as otherwise expressly provided herein, Cash Collateral may be used during the Specified Period, at the times, in the amounts, and for the purposes identified in the cash collateral budget previously approved by the Pre-Petition Agent, a copy of which is attached hereto as Exhibit A (as may be amended as provided herein, the "Budget"). The limitation on Cash Collateral use during the Remedies Notice Period (as defined in Paragraph 14 hereof) shall not affect Paragraph 16 of this Interim Order. All Cash Collateral use must be in accordance with the terms of the Budget, subject to the variance provided in Paragraph 13(n), below. The authorization for the Debtors to use Cash Collateral pursuant to this Interim Order shall terminate upon the expiration of the Specified Period. Nothing in this Interim Order shall constitute the Pre-Petition Secured Parties' consent to the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or the Debtors' use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order.

4. <u>Budget Maintenance</u>. The Budget and any modification thereto, or extension, amendment or update thereof, shall be in form and substance acceptable to and approved in writing by the Pre-Petition Agent in its sole discretion. The Budget may be amended or modified in writing from time to time only with the written consent of the Pre-Petition Agent.

5.     <u>Adequate Protection Liens</u>.

(a)     Pursuant to sections 361 and 363(e) of the Bankruptcy Code, the Pre-Petition Agent, for the benefit of itself and  the other Pre-Petition Secured Parties, as adequate protection of the interests of the Pre-Petition Secured Parties against any Diminution in Value of their interest in the Pre-Petition Collateral, is hereby granted additional and replacement continuing valid, binding, enforceable, non-avoidable, and automatically perfected post-petition security interests in and liens (the "<u>Adequate Protection Liens</u>") on any and all presently owned and hereafter acquired personal property, real property and all other assets of the Debtors and their estates, together with any proceeds thereof (collectively, the "<u>Adequate Protection Collateral</u>"[2] and together with the Pre-Petition Collateral, the "<u>Collateral</u>").  For purposes of this Interim Order, "Adequate Protection Collateral" shall include causes of action under section 549 of the Bankruptcy Code and the proceeds thereof but shall not include other causes of action under chapter 5 of the Bankruptcy Code.

(i)     The Adequate Protection Liens shall be junior only to:  (A) the Carve Out; (B) the Pre-Petition Liens; and (C) liens and security interests which are valid, properly perfected and non-avoidable as of the Petition Date.  The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the Adequate Protection Collateral.

(ii)     The Adequate Protection Liens shall be enforceable against and binding upon the Debtors, their estates and any successor thereto, including without limitation, any trustee or other estate representative appointed in the Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of the Cases, or in any other proceedings superseding or

---

[2] For the avoidance of doubt, the liens granted in this Interim Order with respect to the Collateral shall include the proceeds of leased real property and are not direct liens on the Debtor's leases of real property.

related to any of the foregoing (collectively, "Successor Case"). Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Cases or any Successor Case, and the Adequate Protection Liens shall be valid and enforceable against any trustee appointed in the Cases or any Successor Case, or upon the dismissal of the Cases or any Successor Case. The Adequate Protection Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Pre-Petition Liens or the Adequate Protection Liens.

6. <u>Adequate Protection Superpriority Claims</u>.

(a) As further adequate protection against any Diminution in Value of the interests of the Pre-Petition Agent and the other Pre-Petition Secured Parties in the Pre-Petition Collateral, the Pre-Petition Agent and the other Pre-Petition Secured Parties are each hereby granted as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Cases and any Successor Case (collectively, the "<u>Adequate Protection Superpriority Claim</u>").

(b) Except for the Carve Out, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 1113 and 1114 of the Bankruptcy Code.

7. <u>Adequate Protection Payments and Protections</u>.

(a) Until all Pre-Petition Obligations have been paid in full, the Debtors are authorized and directed to provide adequate protection payments to the Pre-Petition Agent, on behalf of itself and the other Pre-Petition Secured Parties (the "Adequate Protection Payments"), in the form of: (i) payments of interest at the non-default rate and letter of credit and cash management fees, at the times specified therein; (ii) ongoing payment of the reasonable fees, costs and expenses of the Pre-Petition Agent, including, without limitation, the fees and expenses of legal and other professionals (if any) retained by the Pre-Petition Agent; (iii) payment of the net proceeds from the sale or other disposition of any real estate of the Debtors, (iv) payment of the Guaranteed Amount and other amounts payable to the Debtors under any agency agreement with a third party liquidator for the sale of the Debtors' inventory and equipment, and (v) payment of an administrative agent's fee in the sum of $50,000 upon the entry of this Interim Order.

(b) In addition, the Debtors shall (i) provide continued maintenance and insurance of the Collateral in the amounts and for the risks, and by the entities, required under the Pre-Petition Credit Documents, and (ii) pay all post-petition real estate and other taxes on the Collateral as and when due. Professionals for the Pre-Petition Agent shall not be required to comply with the U.S. Trustee fee guidelines for the payment of fees and expenses.

8. Indemnity Obligations.

(a) After payment of the Pre-Petition Obligations (including the cash collateralization of all letters of credit), the Pre-Petition Agent and the Pre-Petition Secured Parties shall retain their Pre-Petition Liens, the Adequate Protection Liens, and the Adequate Protection Superpriority Claim. In addition, the net proceeds from the sale or other disposition of any real estate of the Debtors (the "Real Estate Proceeds") shall be held by the Debtors and not

disbursed to any other persons and creditors (other than in payment of operating expenses in the ordinary course of business) as security for any reimbursement, indemnification or similar continuing obligations of the Debtors in favor of the Pre-Petition Agent and the other Pre-Petition Secured Parties under the Pre-Petition Credit Documents (the "First Lien Indemnity Obligations"); provided, however, that all Pre-Petition Liens, the Adequate Protection Liens, the Adequate Protection Superpriority Claim and rights with respect to Real Estate Proceeds as set forth above shall terminate upon the expiration of the Challenge Period (as defined herein) if, as of such date, no person or entity has filed or asserted (by motion, complaint or otherwise) against the Pre-Petition Agent or any other Pre-Petition Secured Party an adversary proceeding, cause of action, objection, claim, defense or other Challenge (as defined herein).

(b)     In the event that any person or entity files or asserts (by motion, complaint or otherwise) a Challenge against any of the Pre-Petition Agent or any other Pre-Petition Secured Party prior to the Challenge Period Termination, then the Challenge Period shall automatically be extended, and shall not terminate or expire and the Pre-Petition Liens, the Adequate Protection Liens, the Adequate Protection Superpriority Claim and the rights of the Pre-Petition Agent and the other Pre-Petition Secured Parties with respect to Real Estate Proceeds as set forth in Paragraph 8(a) above shall not terminate or expire, unless and until (i) all such Challenges are resolved and adjudicated by the entry of a final order of a court of competent jurisdiction from which no appeal (or no further appeal) can be taken, and (ii) any and all indemnification claims of any of the Pre-Petition Agent and the other Pre-Petition Secured Parties related thereto or arising therefrom have been satisfied in full.

9.     Modification of Automatic Stay.  The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of

this Interim Order, including, without limitation, to: (a) permit the Debtors to grant the Adequate

Protection Liens and Adequate Protection Superpriority Claims; (b) permit the Debtors to

perform such acts as the Pre-Petition Agent, or the other Pre-Petition Secured Parties may

request in its or their sole discretion to assure the perfection and priority of the liens granted

herein; and (c) authorize the Debtors to pay, and the Pre-Petition Agent and the other Pre-

Petition Secured Parties to retain and apply, payments made in accordance with the terms of this

Interim Order.

10.     <u>Perfection of Adequate Protection Liens</u>.  This Interim Order shall be sufficient

and conclusive evidence of the validity, perfection, and priority of the Adequate Protection

Liens, without the necessity of filing or recording any financing statement or other instrument or

document which may otherwise be required under the law or regulation of any jurisdiction or the

taking of any other action (including, for the avoidance of doubt, entering into any deposit

account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy

law) the Adequate Protection Liens, or to entitle the Pre-Petition Agent and the other Pre-Petition

Secured Parties to the priorities granted herein.  Notwithstanding the foregoing, the Pre-Petition

Agent is authorized to file, as it deems necessary in its sole discretion, such financing statements,

mortgages, notices of liens and other similar documents to perfect in accordance with applicable

non-bankruptcy law or to otherwise evidence the applicable Adequate Protection Liens, and all

such financing statements, mortgages, notices and other documents shall be deemed to have been

filed or recorded as of the Petition Date; <u>provided</u>, <u>however</u>, that no such filing or recordation

shall be necessary or required in order to create or perfect the Adequate Protection Liens.  The

Debtors are authorized and directed to execute and deliver to the Pre-Petition Agent, promptly

upon demand therefor, all such financing statements, mortgages, notices and other documents as

the Pre-Petition Agent or the other Pre-Petition Secured Parties may reasonably request. The Pre-Petition Agent, in its sole discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument. The Pre-Petition Agent shall continue to have all rights pursuant to all third party notifications and/or agreements in connection with the Pre-Petition Credit Documents, including all collateral access agreements and all other agreements with third parties (including any depository bank) relating to, or waiving claims against, any Pre-Petition Collateral, including without limitation, each collateral access agreement duly executed and delivered by any landlord of the Debtors and including, for the avoidance of doubt, all Blocked Account Agreements (as defined in the Pre-Petition Credit Documents).

11.     <u>Debtors' Obligations</u>.  Until the Pre-Petition Obligations are paid in full and the Challenge Period has expired, the Debtors shall:

(a)     Maintain its current cash management system as it may be modified with the consent of the Pre-Petition Agent (such consent not to be unreasonably withheld) and subject to any order of this Court approving the Debtors' motion to continue such cash management system and in connection therewith, remit all Cash Collateral, as and when received (including, without limitation, any funds in any deposit account maintained by the Debtors to one or more deposit accounts maintained by the Debtors at Bank of America, N.A., which accounts shall be subject to the Pre-Petition Liens and the Adequate Protection Liens of the Pre-Petition Agent, but which Cash Collateral may be used by the Debtors to the extent provided in this Order;

(b)     Apply Cash Collateral and other sources of cash available to the Debtors hereunder to the expenses of the operation of its business as provided in the Budget;

(c)     Deliver to the Pre-Petition Agent on or before the close of business on Wednesday of each week (and if such day is not a business day, then the next succeeding business day) a (i) comparison for the prior week of actual results of all items contained in the Budget to the amounts originally contained in the Budget (ii) cumulative comparison for the period from the Petition Date through the end of the prior week of the actual results of all items contained in the Budget to the amounts originally contained in the Budget, and (iii) until the Pre-Petition Obligations have been paid in full (except as provided in Paragraph 8 hereof) an updated Borrowing Base Certificate, in each case along with such supporting information as the Pre-Petition Agent may request;

(d)     Provide the Pre-Petition Agent with financial reports, including cash expenditures in relation to the Budget, when reasonably requested by the Pre-Petition Agent ;

(e)     Serve the Pre-Petition Agent and its counsel with a copy of each monthly report filed by the Debtors in these Cases as required by the Court, the U.S. Trustee or applicable law; and

(f)     Provide to the Pre-Petition Agent such information as it may reasonably request.

12.     <u>Disposition of Collateral</u>.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral other than (i) Inventory in the ordinary course of business, consistent with past practices, without the prior written consent of the Pre-Petition Agent, or (ii) as further ordered by the Court after notice and a hearing.

13.     <u>Events of Default</u>.  The occurrence of any of the following events, unless waived by the Pre-Petition Agent in writing, shall constitute an event of default (collectively, the "<u>Events of Default</u>"):

(a)     the failure by the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Interim Order (including, without limitation, the payment by the Debtors of administrative expenses other than as set forth in the Budget);

(b)     other than as provided herein, the obtaining after the Petition Date of credit or the incurring of indebtedness that is (i) secured by a security interest, mortgage or other lien on all or any portion of the Collateral which is equal or senior to any security interest, mortgage or other lien of the Pre-Petition Agent or the other Pre-Petition Secured Parties, or (ii) entitled to priority administrative status which is equal or senior to that granted to the Pre-Petition Agent or the other Pre-Petition Secured Parties herein;

(c)     any lien or security interest purported to be created under the Pre-Petition Credit Documents shall cease to be a valid and perfected lien on or security interest in any Collateral, with the priority required by the applicable Pre-Petition Credit Documents or herein;

(d)     the entry of an order by the Court granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor to execute upon or enforce a lien on or security interest in (A) any inventory or (B) in any other Collateral that is senior to any liens or security interests of the Pre-Petition Secured Parties, or (ii) the granting (whether voluntary or involuntary) of any lien on any Collateral to any state or local environmental or regulatory agency or authority that is senior to any liens or security interests of the Pre-Petition Secured Parties;

(e)     any of the Debtor's return of goods (other than damaged goods) constituting Collateral pursuant to section 546(h) of the Bankruptcy Code (other than with the consent of the Pre-Petition Agent);

(f)　　reversal, vacatur, or modification (other than a modification acceptable to the Pre-Petition Agent and the other Pre-Petition Secured Parties) of this Interim Order;

(g)　　dismissal of the Cases or conversion of the Cases to a chapter 7 case, or appointment of a chapter 11 trustee or examiner with enlarged powers or other responsible person;

(h)　　any misrepresentation of a material fact made after the Petition Date by any of the Debtors to the Pre-Petition Agent or the other Pre-Petition Secured Parties about the financial condition of the Debtors, the nature, extent, location or quality of any Collateral, or the disposition or use of any Collateral, including Cash Collateral;

(i)　　a default by the Debtors in reporting after the Petition Date financial information as and when required herein;

(j)　　the sale after the Petition Date of any portion of any of the Debtors' assets outside the ordinary course of business without an order of this Court, after notice and a hearing;

(k)　　the granting by the Court of any motion providing for reconsideration of this Interim Order or the granting by the Court of relief from stay by any Person other than the Pre-Petition Agent or the other Pre-Petition Secured Parties on all or any portion of the Collateral;

(l)　　the payment by the Debtors of amounts in excess of 110% of "Operating Disbursements" set forth in the High" column of the Budget, tested weekly on a cumulative basis as of the close of business on Saturday of each week;

(m)　　the failure to make Adequate Protection Payments or other payments to the Pre-Petition Agent as set forth in the Budget and in this Interim Order when due;

(n)　　the failure of the Debtors to file a motion seeking approval of the Debtors'

entry into an agency agreement with a third party liquidator for the sale of the Debtors' inventory and equipment on terms acceptable to the Pre-Petition Agent by November 4, 2011;

(o)     the failure of the Debtors to obtain an order of the Court approving the Debtors' entry into an agency agreement with a third party liquidator for the sale of the Debtors' inventory and equipment by November 22, 2011 on terms reasonably acceptable to the Pre-Petition Agent (it being understood that the provisions of the Second Agency Agreement dated November 2, 2011 with a joint venture of Gordon Brothers Retail Partners, LLC and Hilco Merchant Resources, LLC and furnished to the Pre-Petition Agent is acceptable);

(p)     the failure of the Debtors to obtain proceeds from the liquidation sale of described in clause (q) above in an amount sufficient to pay, and used to pay, all Pre-Petition Obligations in full by November 25, 2011; or

(q)     the failure of the Court to enter the Final Order by November 22, 2011.

14.     <u>Rights and Remedies Upon Event of Default</u>.  Immediately upon the occurrence and during the continuation of an Event of Default, the Pre-Petition Agent may declare a termination, reduction or restriction of the ability of the Debtors to use any Cash Collateral, (any such declaration, shall be referred to herein as a "<u>Termination Declaration</u>").  The Termination Declaration shall be given by facsimile (or other electronic means) to counsel to the Debtors, counsel to any Statutory Committee and the U.S. Trustee (the earliest date any such Termination Declaration is made shall be referred to herein as the "<u>Termination Declaration Date</u>").  At the expiration of the Remedies Notice Period, the Debtors' right to use Cash Collateral shall automatically cease.  Within five (5) business days after the Termination Declaration Date (the "<u>Remedies Notice Period</u>") the Debtors shall be entitled to seek an emergency hearing with the Court.  Unless the Court determines otherwise during the Remedies Notice Period, the automatic

stay shall automatically be terminated at the end of the Remedies Notice Period without further

notice or order, and the Debtors shall no longer have the right to use or seek to use Cash

Collateral and the Pre-Petition Agent and the other Pre-Petition Secured Parties shall be

permitted to exercise all remedies set forth herein in the Pre-Petition Credit Documents and as

otherwise available at law against the Collateral, without further order of or application or

motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of

the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in

the Collateral or any other rights and remedies granted to the Pre-Petition Agent and the other

Pre-Petition Secured Parties with respect thereto pursuant to the Pre-Petition Credit Agreement

or Pre-Petition Credit Documents, or this Interim Order, as applicable.

15. <u>Carve Out</u>.

(a) *Carve Out*. As used in this Interim Order, the "<u>Carve Out</u>" means the

following expenses: (i) statutory fees payable to the United States Trustee pursuant to 28 U.S.C.

§ 1930(a)(6) until the indefeasible payment in full in cash of the Pre-Petition Obligations, and (ii)

$50,000 for counsel to any Statutory Committee under sections 327 or 1103(a) of the Bankruptcy

Code) (together with any professionals retained by the Debtors, a "<u>Case Professional</u>") to be

utilized to investigate the claims, liens and security interests of the Pre-Petition Agent and other

Pre-Petition Secured Parties and any possible clams that may be asserted against any of the Pre-

Petition Secured Parties. The Carve Out shall be senior in priority to the Pre-Petition Liens, the

Adequate Protection Liens and the Adequate Protection Superpriority Claim. No payment of any

Carve Out amount shall reduce any Pre-Petition Obligations.

(b) *No Direct Obligation to Pay Professional Fees*. None of the Pre-Petition

Agent or the other Pre-Petition Secured Parties shall be responsible for the direct payment or

reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Cases or any Successor Case. Nothing in this Interim Order or otherwise shall be construed (i) to obligate any of the Pre-Petition Agent or the other Pre-Petition Secured Parties in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement, (ii) to increase the Carve Out, (iii) as a consent to the allowance of any professional fees or expenses of any Case Professionals, or (iv) to affect the right of the Pre-Petition Agent, or the other Pre-Petition Secured Parties to object to the allowance and payment of such fees and expenses.

16.     <u>Limitations on the Cash Collateral and the Case Professionals Carve Out</u>.  The Case Professionals Carve Out may not be used:  (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) against any of the Pre-Petition Agent or the other Pre-Petition Secured Parties or seeking relief that would impair their respective rights and remedies under the Pre-Petition Credit Documents or this Interim Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors or any Statutory Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration or similar relief that would impair the ability of any of the Pre-Petition Agent or the other Pre-Petition Secured Parties to recover on the Pre-Petition Obligations or seeking affirmative relief against them, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Pre-Petition Obligations, (iii) for monetary, injunctive or other affirmative relief against any of the Pre-Petition Agent or, the other Pre-Petition Secured Parties or the Collateral that would impair the

ability of the Pre-Petition Agent or the other Pre-Petition Secured Parties to recover on the Pre-Petition Obligations or seeking affirmative relief against them, or (iv) preventing, hindering or otherwise delaying the exercise by any of the Pre-Petition Agent or the other Pre-Petition Secured Parties of any rights and/or remedies under this Interim Order, the Pre-Petition Credit Documents, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the Pre-Petition Agent or the other Pre-Petition Secured Parties upon any of the Collateral; (b) subject to the limited use of Cash Collateral set forth in Paragraph 3 and 16 above, to object to, contest, or interfere with in any way the enforcement or realization upon any of the Collateral by any of the , the Pre-Petition Agent or the other Pre-Petition Secured Parties once an Event of Default has occurred; (c) to object to or challenge in any way the claims, liens, or interests (including interests in the Collateral) held by or on behalf of the Pre-Petition Agent or the other Pre-Petition Secured Parties; (d) to assert, commence or prosecute any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the Pre-Petition Agent or the other Pre-Petition Secured Parties; (e) to prosecute an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Pre-Petition Obligations, Pre-Petition Liens or any other rights or interests of the Pre-Petition Agent or the other Pre-Petition Secured Parties, including, without limitation, the Adequate Protection Liens and the Superpriority Claims granted herein; or (f) to prevent, hinder or otherwise delay the exercise by the Pre-Petition Agent or the other Pre-Petition Secured Parties of any rights and remedies granted under this Interim Order.

     17.     <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.

     (a)     Nothing in this Interim Order shall prejudice the rights of a Statutory

Committee or any other party in interest granted standing by the Court (other than the Debtors but including any trustee appointed in the Cases), to file an adversary proceeding or contested matter seeking to object to or challenging the Debtors' Stipulations, including, but not limited to those in relation to: (a) the validity, extent, priority, enforceability or perfection of the mortgages, security interests, and liens of any of the Pre-Petition Agent or the other Pre-Petition Secured Parties; (b) the validity, allowability, priority, full secured status or amount of any of the Pre-Petition Obligations; or (c) otherwise asserting any claims or causes of action against the Pre-Petition Agent or the other Pre-Petition Secured Parties .

(b)      A person or entity, including any Statutory Committee, if appointed, must commence, as appropriate, a contested matter or adversary proceeding raising any such objection or challenge, including, without limitation, any claim against the Pre-Petition Agent or the other Pre-Petition Secured Parties in the nature of a setoff, counterclaim or defense to the applicable Pre-Petition Obligations, or a claim, related in any manner to the Pre-Petition Obligations, that seeks an affirmative recovery from the Pre-Petition Agent or the Pre-Petition Secured Parties (each, a "Challenge") within the earlier of: (i) with respect to any Statutory Committee, sixty (60) calendar days from the effective date of retention of counsel to any Statutory Committee, and (ii) with respect to other parties in interest with requisite standing other than the Debtors or any Statutory Committee, seventy-five (75) calendar days following the date of entry of this Interim Order, in each case subject to extension by agreement of the Debtors and the Pre-Petition Agent (together, the "Challenge Period"). Upon the expiration of the Challenge Period, as extended if applicable (the "Challenge Period Termination Date"), as to the Pre-Petition Agent and the other Pre-Petition Secured Parties against whom a Challenge has not been properly commenced, without further action by the Court: (A) any and all such Challenges by any person

or entity (including, without limitation, any Statutory Committee, any receiver, any administrator, any responsible officer, any chapter 11 trustee, and/or any examiner or other estate representative appointed in the Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case or in any jurisdiction), shall be deemed to be forever waived, released and barred; (B) all of the Debtors' Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, validity, amount and secured status as to the Pre-Petition Agent's and each other Pre-Petition Secured Party's claims, liens, and interests shall be of full force and effect and forever binding upon the Debtors, the Debtors' bankruptcy estates and all creditors, interest holders, and other parties in interest in these Cases and any Successor Case and the Pre-Petition Obligations shall be deemed to be allowed in full as a fully secured claim within the meaning of Section 506 of the Bankruptcy Code for all purposes in connection with the Cases or any Successor Case; and (C) any repayment, whether prior or subsequent to the Petition Date, of the Pre-Petition Obligations shall be deemed final and indefeasible, not subject to subordination or disgorgement and otherwise unavoidable.

(c)        If a Challenge is filed or asserted (by motion, complaint or otherwise) within the Challenge Period, then the Challenge Period shall not expire but shall be automatically extended, and the Challenge Period Termination Date shall not occur, unless and until (x) unless and until (x) all such Challenges are resolved and adjudicated by the entry of a final order of a court of competent jurisdiction from which no appeal (or no further appeal) can be taken, and (y) any and all indemnification claims of the Pre-Petition Agent or any of the other Pre-Petition Secured Parties related thereto or arising therefrom have been satisfied in full.

18.        <u>No Third Party Rights</u>.  Except as expressly provided herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct,

indirect, or incidental beneficiary.

19.     Section 506(c) Claims.  Subject to and upon entry of the Final Order and the terms thereof, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the Pre-Petition Agent or the other Pre-Petition Secured Parties, or any of their respective claims or the Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the Pre-Petition Agent  and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

20.     No Marshaling/Applications of Proceeds.  None of the Pre-Petition Agent or the other Pre-Petition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral.

21.     Section 552(b).  Subject to and upon entry of the Final Order and the terms thereof, the Pre-Petition Agent and the other Pre-Petition Secured Parties, shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Pre-Petition Agent or the other Pre-Petition Secured Parties with respect to proceeds, products, offspring or profits of any of the Pre-Petition Collateral.

22.     Rights Preserved.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly:  (a) the Pre-Petition Agent's or any other Pre-Petition Secured Party's right to seek any other or supplemental relief in respect of the Debtors, including the right to seek additional adequate protection (without prejudice to any other person's right to object to or otherwise oppose such additional adequate protection); (b) any of the rights of any of the Pre-Petition

Agent or the other Pre-Petition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of the Cases or any Successor Case, conversion of the Cases to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans.

23.     Section 507(b) Reservation.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Pre-Petition Agent or the other Pre-Petition Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their interests in the Pre-Petition Collateral during the Cases or any Successor Case.  Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by the Pre-Petition Agent or the other Pre-Petition Secured Parties that the adequate protection granted herein does in fact adequately protect the Pre-Petition Agent or the other Pre-Petition Secured Parties against any Diminution in Value of their respective interests in the Pre-Petition Collateral (including Cash Collateral).

24.     No Waiver by Failure to Seek Relief.  The failure of the Pre-Petition Agent and the other Pre-Petition Secured Parties to seek relief or otherwise exercise its rights and remedies under this Interim Order, the Pre-Petition Credit Documents or applicable law shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the Pre-Petition Agent or the other Pre-Petition Secured Parties.

25.     Proofs of Claim.  The Pre-Petition Agent and the other Pre-Petition Secured Parties shall not be required to file proofs of claim in the Cases or any Successor Case, and the Debtors' Stipulations in Paragraph E herein shall be deemed to constitute a timely filed proof of

claim. Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation administrative claims) in the Cases or any Successor Case shall not apply to the Pre-Petition Agent or the other Pre-Petition Secured Parties.

26. <u>Good Faith</u>. Based on the record at the Interim Hearing, the Pre-Petition Agent and the other Pre-Petition Secured Parties each have acted in good faith in connection with the negotiation and proposal of this Interim Order and their reliance on this Interim Order is in good faith.

27. <u>Binding Effect of Interim Order</u>. Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the Pre-Petition Agent and the other Pre-Petition Secured Parties, all other creditors of the Debtors, any Statutory Committee appointed in the Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Cases, any Successor Case, or upon dismissal of the Cases or any Successor Case. In the event of any inconsistency among the provisions of (i) this Interim Order, (ii) any "First Day" order, and (iii) any Pre-Petition Credit Document, the provisions of this Interim Order shall govern and control.

28. <u>No Modification of Interim Order</u>. If the Debtors seek any amendment, modification or extension of this Interim Order, the Pre-Petition Agent and the Pre-Petition Secured Parties shall have the right to object thereto and no consent to any such amendment, modification or extension shall be implied by any other action, inaction or acquiescence of the Pre-Petition Agent or other Pre-Petition Secured Parties. In the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this

Court or any other court, such modification, amendment or vacatur shall not affect the validity, perfection, priority, allowability, enforceability or non-avoidability of any payments or use of cash whether previously or hereunder, or lien, claim or priority authorized or created hereby. Any liens or claims granted to the Pre-Petition Agent and the other Pre-Petition Secured Parties hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

29.     Survival.

The provisions of this Interim Order, including the Adequate Protection Superpriority Claim, Adequate Protection Liens, Adequate Protection Payments and other protections granted to the Pre-Petition Agent and the other Pre-Petition Secured Parties pursuant to this Interim Order and any actions taken pursuant hereto (i) shall survive entry of any order which may be entered:  (A) confirming any plan of reorganization in the Cases; (B) converting the Cases to cases under chapter 7 of the Bankruptcy Code; (C) dismissing the Cases or any Successor Case; (D) pursuant to which this Court abstains from hearing the Cases or Successor Case, or (E) the expiration of the Specified Period or any earlier termination of the Debtors' authorization to use Cash Collateral, and (ii) such Adequate Protection Superpriority Claim, and Adequate Protection Liens shall maintain their priority as provided by this Interim Order until all Pre-Petition Obligations have been indefeasibly paid in full in cash.

30.     Final Hearing.  The Final Hearing to consider entry of the Final Order is scheduled for [          ] at [   ]:00 a.m. (Eastern Time) before the Honorable [                ], United States Bankruptcy Judge, Courtroom [   ] at the United States Bankruptcy Court for the District of Delaware.  On or before [                ], the Debtors shall serve, by United States

mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final

Hearing (the "Final Hearing Notice"), together with a copy of this Interim Order and the Motion,

on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed

prior to such date a request for notices with this Court; (c) counsel for any Statutory Committee;

and (d) the twenty (20) largest unsecured creditors. The Final Hearing Notice shall state that any

party in interest objecting to the relief requested in the Motion on a final basis shall file written

objections with the Clerk of the Court no later than on [                    ] at 4:00 p.m. (Eastern

Time), which objections shall be served so as to be received on or before such date and time by:

(i) counsel to the Debtors, Skadden, Arps, Meagher & Flom, LLP, One Rodney Square,

Wilmington, Delaware 19801, attn: Mark S. Chehi, Esq. and Jason M. Liberi, Esq. and Skadden,

Arps, Meagher & Flom, LLP, Four Times Square, New York, New York 10036, attn: Mark A.

McDermott, Esq. and David M. Turetsky, Esq ; (ii) counsel to any Statutory Committee; (iii)

counsel to the Pre-Petition Agent, Riemer & Braunstein, LLP, Three Center Plaza, Boston, MA

02108, attn: David S. Berman, Esq., Riemer & Braunstein, LLP, Seven Times Square, New

York, New York 10036, attn: Maura I. Russell, Esq and Womble Carlyle Sandridge & Rice,

PLLC, 222 Delaware Avenue, Suite 1501,Wilmington, Delaware 19801, attn.: Steven K.

Kortanek, Esq. ; and (iv) the Office of the United States Trustee, attn: _____.

     31.    <u>Effect of this Interim Order</u>.  This Interim Order shall constitute findings of fact

and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be

enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof.

32.    <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

SO ORDERED by the Court this _____ day of November, 2011.

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit A**

**Budget**

**Cash Collateral Budget**
**Syms/Filene's Basement**
**November 2, 2011**

($ in 000's)

## 4-Weeks ending November 5, 12, 19, 26

| | | November Cash Flow Forecast | | | | | | | | | |
| | | Week 1 Forecast 11/2/11 - 11/5/11 | | Week 2 Forecast 11/12/11 | | Week 3 Forecast 11/19/11 | | Week 4 Forecast 11/26/11 | | November Forecast Total | |
| | | Low | High | Low | High | Low | High | Low | High | Low | High |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | |
| **Operating Receipts** | | | | | | | | | | | |
| Operating Receipts | (1) | $2,973 | $3,964 | $5,242 | $6,989 | $5,124 | $6,832 | $5,715 | $7,620 | $19,053 | $25,404 |
| Rental Receipts | | - | 514 | - | - | - | - | - | 85 | 85 | 85 |
| Sale from leased Inventory | (2) | 343 | - | 600 | 900 | 600 | 900 | 600 | 900 | 2,143 | 3,214 |
| Total from leased Inventory | | 3,316 | 4,478 | 5,842 | 7,889 | 5,724 | 7,732 | 6,400 | 8,605 | 21,281 | 28,703 |
| Receipts from 3-Store GOB Sales | | 205 | 205 | 700 | 700 | 700 | 700 | 700 | 700 | 2,305 | 2,305 |
| **Total Receipts** | | $3,521 | $4,883 | $6,542 | $8,589 | $6,424 | $8,432 | $7,100 | $9,305 | $23,586 | $31,008 |
| **Disbursements** | | | | | | | | | | | |
| **Operating Disbursements** | (3) | | | | | | | | | | |
| Merchandise | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Payments to leased vendors | | 257 | 386 | 450 | 675 | 450 | 675 | 450 | 675 | 1,607 | 2,411 |
| Supplies | | 29 | 29 | 50 | 50 | 50 | 50 | 50 | 50 | 179 | 179 |
| Repairs and Maintenance | | 57 | 57 | 100 | 100 | 100 | 100 | 100 | 100 | 357 | 357 |
| General Operating | | 76 | 76 | 133 | 133 | 133 | 133 | 133 | 133 | 475 | 475 |
| Insurance | | 46 | 46 | 80 | 80 | 80 | 80 | 80 | 80 | 286 | 286 |
| Payroll & Payroll Taxes | | - | - | 2,250 | 2,250 | - | - | 2,250 | 2,250 | 4,500 | 4,500 |
| Benefits / 401K | | 206 | 206 | 302 | 302 | 176 | 176 | 562 | 562 | 1,246 | 1,246 |
| Rent/CAM | | - | - | - | - | 347 | 347 | - | - | 347 | 347 |
| Real Estate Taxes | | 77 | 77 | 135 | 135 | 135 | 135 | 135 | 135 | 480 | 480 |
| Utilities | | 120 | 120 | 210 | 210 | 210 | 210 | 210 | 210 | 750 | 750 |
| Credit Card Fees | | 514 | 514 | 30 | 30 | 30 | 30 | 30 | 30 | 604 | 604 |
| Sales and Other Taxes | | - | - | 83 | 83 | 1,333 | 1,333 | 250 | 250 | 1,666 | 1,666 |
| **Total Operating Disbursements** | | $1,381 | $1,510 | $3,823 | $4,048 | $3,043 | $3,288 | $4,249 | $4,474 | $12,497 | $13,300 |
| **Non-Operating Disbursements** | | | | | | | | | | | |
| Legal/Professional Fees | (4) | $0 | $0 | $150 | $150 | $127 | $127 | $0 | $0 | $277 | $277 |
| Interest | | 16 | 16 | 14 | 13 | - | 10 | 11 | 7 | 54 | 45 |
| Credit Card Deposit | (5) | 500 | 1,000 | - | - | - | - | - | - | 500 | 1,000 |
| Utility Deposits | (6) | 1,680 | 1,680 | - | - | - | - | - | - | 1,680 | 1,680 |
| **Total Non-Operating Disbursements** | | 2,196 | 2,696 | 164 | 163 | 140 | 137 | 11 | 47 | 2,511 | 3,002 |
| **Total Disbursements without GOB** | | 3,577 | 4,206 | 3,987 | 4,211 | 3,183 | 3,405 | 4,260 | 4,481 | 15,008 | 16,302 |
| Reimbursement of 3-Store GOB Sales | | 340 | 340 | 512 | 512 | 655 | 655 | 535 | 535 | 2,042 | 2,042 |
| **Total Disbursements with GOB** | | $3,917 | $4,546 | $4,499 | $4,722 | $3,838 | $4,060 | $4,795 | $5,016 | $17,050 | $18,344 |
| **Net Cash Flow** | | ($397) | $138 | $2,043 | $3,667 | $2,586 | $4,371 | $2,304 | $4,289 | $6,536 | $12,664 |
| **Beginning Cash** | | $2,000 | $2,000 | $1,603 | $2,138 | $3,646 | $6,004 | $6,232 | $10,376 | $2,000 | $2,000 |
| **Ending Cash** | | $1,603 | $2,138 | $3,646 | $6,004 | $6,232 | $10,376 | $8,536 | $14,664 | $8,536 | $14,664 |

**NOTES:**
(1) Reflects current sales trends, excluding special promotions.
(2) Includes DSW & Sense of Worth Sales.
(3) Eliminates merchandise payments as Company has filed for Chapter 11 protection.
(4) Assumes Bank, Real Estate and Public Relation professionals are paid while all other professionals are not.
(5) Assumes credit card deposits required.
(6) Assumes utility deposits required.