# AGREEMENT

THIS AGREEMENT, MADE BY AND BETWEEN

## LOCAL 400

Chartered by the

**United Food & Commercial Workers International Union**



and

SYMS CORPORATION

**FALLS CHURCH, VIRGINIA**
**ROCKVILLE, MARYLAND**

**Effective:  May 1, 2009          Expiration:   April 30, 2012**

# TABLE OF CONTENTS

AGREEMENT ...........................................................................................................1

WITNESSETH ........................................................................................................1

RECOGNITION ......................................................................................................1

UNION SECURITY ................................................................................................1

HOURS AND OVERTIME......................................................................................2

SENIORITY.............................................................................................................4

HOLIDAYS .............................................................................................................4

LEAVES OF ABSENCE .........................................................................................5

SICK LEAVE ..........................................................................................................6

MILITARY LEAVE ................................................................................................6

VACATIONS...........................................................................................................7

DISPUTE PROCEDURES-GRIEVANCE AND ARBITRATION .........................8

JOINT LABOR MANAGEMENT ..........................................................................8

WORKING CONDITIONS .....................................................................................9

SEPARABILITY CLAUSE....................................................................................10

WAGES ................................................................................................................10

HEALTH AND WELFARE ...................................................................................11

PENSION FUND....................................................................................................11

JURY DUTY/COURT SERVICES ........................................................................12

SHOP STEWARDS................................................................................................12

VOLUNTARY CHECK-OFF.................................................................................13

401-K PLAN ..........................................................................................................14

NO STRIKES OR LOCKOUTS.............................................................................14

DURATION OF CONTRACT ...............................................................................15

# AGREEMENT

THIS AGREEMENT made by and between SYMS CORP., 6350 Seven Corners Center, Falls Church, Virginia 22044 and 1900 Chapman Avenue, Rockville, Maryland 20850, referred to as the Employer, and UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 400, chartered by the United Food and Commercial Workers International Union of Washington, D.C., hereinafter referred to as the Union.

## WITNESSETH

Whereas the parties to this Agreement desire to establish and maintain a mutual understanding to create harmonious relations between the Employer and the employees, and to abide by this Agreement to settle any and whatever dispute that may arise between them, and whereas the Employer and the Union in the performance of this Agreement agree not to discriminate against any employee or applicant for employment because of race, color, religious creed, sex or origin, and age in accordance with the law, it is therefore, by both parties understood that:

## ARTICLE 1
## Recognition

To the extent permitted by applicable law, the Employer recognizes the Union as the exclusive bargaining agent for all employees in the bargaining unit in the Employer's present establishments, located at 1900 Chapman Avenue, Rockville, Maryland, and 6350 Seven Corners Center, Falls Church, Virginia excluding Bona Fide Store Managers.

## ARTICLE 2
## Union Security

2.1     It shall be a condition of employment that all employees of the Employer covered by this Agreement who are members of the Union, in good standing on the effective date of this Agreement shall remain members in good standing and those who are not members on the effective date of this Agreement, shall, on the 31st day following the effective date of this Agreement become and remain members in good standing in the Union.  It shall also be a condition of employment, that all employees covered by this Agreement, and hired on or after its effective date shall, on the 31st day following the beginning of such employment, become and remain members in good standing in the Union.  For the purpose of this section, the execution date of this Agreement shall be considered as the effective date.

2.2     The application of paragraph 2.1 is deferred in any jurisdiction where the Union Shop is not permitted by state law.  However, should such prohibition be repealed or amended so as to permit the Union Security Clause set forth above, the Employer and the Union agree that they shall put into full effect and force the provisions for Union Security as stated above, making the Union Security Clause effective upon the earliest date permitted by such enabling legislation.

2.3     The Employer will notify the Union Shop Steward of any new employees, reinstated employees, and employees transferred into the bargaining unit.  The Steward shall be given the opportunity to obtain the home address, social security number, job classification, date of employment, reinstatement, or transfer.

2.4     Upon failure of any employee to become and remain a member of the Union within the period and under the conditions specified in Paragraph 2.1 above, the Union shall notify the Employer, in writing, of such failure and the Employer shall, within seven (7) days of receipt of such notice, discharge any such employee as provided in the Labor Management Relations Act of 1947, as amended.

## ARTICLE 3
### Hours and Overtime

3.1     The guaranteed basic work week for all full time employees shall be forty (40) hours per week, consisting of five (5) days.

3.2     For the purpose of this Agreement the basic work week shall be from Monday through Saturday, inclusive.

Employees hired after July 1, 1997, the basic work week shall be from Sunday through Saturday, inclusive.

3.3     Sunday work shall be isolated and shall not be part of the basic work week.

3.4     All time worked by an employee in excess of five (5) days in one (1) week, or forty (40) hours in any work week, or in excess of the thirty-two (32) hours in any week in which one of the specified holidays fall, shall be deemed overtime.  Such overtime work shall be paid at the rate of time and one-half (1-1/2) the employee's regular rate of pay.

3.5     All employees who work an eight (8) hour shift shall be guaranteed a one (1) hour lunch uninterrupted or two (2) half (1/2) hour breaks taken during the middle of the first four (4) hours and the middle of the second four (4) hours of the shift.  The Employer has the right to specify the option upon mutual agreement of the employee.

Employees who work a shift of less than eight (8) hours but more than five (5) hours shall upon request be granted an uninterrupted meal period of one-half (1/2) hour.

3.6     There shall be no split shifts.

3.7     (a) Employees hired prior to August 10, 1994, who work on Sunday shall be compensated for at one and one-half (1-1/2) the employee's rate of straight time pay.  Employees hired on or after August 10, 1994, who work on Sunday shall be compensated for at their straight time rate of pay.

(b) No employee shall be required to work on Sunday. All work performed on Sundays shall be offered to full time employees first, based upon seniority and the employee's ability to perform the work required.

(c) Full time employees shall be offered eight (8) hours if the store is open for eight (8) hours. Part time employees shall be offered not less than four (4) hours. Any employee accepting Sunday work shall work not less than four (4) hours. Employees shall not be discriminated against for declining Sunday work nor shall they be coerced into accepting it. In the event there are insufficient volunteers, the Employer may schedule by inverse seniority.

3.8     The Employer shall not discipline any employee for refusal to work unreasonable overtime. On days where overtime is worked, it shall be offered to employees according to their ability to do the work. On days where overtime is worked and a second meal period is taken, it shall consist of one-half (1/2) hour duration only.

3.9     With the exception of students, no part time employees shall be scheduled for less than four (4) hours in any one day. The four (4) hour minimum in any one day may be waived by mutual agreement between the Employer and the employee.

3.10    Part time employees who report to work pursuant to instructions and are not given work shall be paid for their scheduled hours.

3.11    Full time employees reporting for work at their scheduled time or on instructions from their Employer shall be guaranteed eight (8) hours at straight time rate of pay for the employee's scheduled work days, and four (4) hours with pay for non-scheduled days at the overtime rate of pay.

3.12    The Employer agrees to post a weekly work schedule by noon on Monday of the week preceding the week for which the schedule is effective. Full time employees can work a maximum of three (3) nights per week.

3.13    Part time employees, except students, shall be scheduled a minimum of twenty (20) hours per week provided they are available to work said hours on a regular and continuing basis, up to a maximum of thirty-nine (39) hours per week. The twenty (20) hour minimum shall be waived by mutual agreement between the Employer and the employee. Part time employees may be scheduled as many nights as needed, up to a maximum of four (4).

3.14    The Company shall make every effort to give full time employees the same day or days off each week in accordance with the needs of the business.

3.15    The employer shall combine existing part time open assignments, on a seniority basis, unless hours duplicate each other, providing the employee has the ability to perform the work, so as to provide maximum part time employment per individual within the definition of part time employment. The employer shall provide the necessary training for employees as required to perform the work.

# ARTICLE 4
## Seniority

4.1     Seniority for the purpose of this Agreement shall be calculated by continuous service from the last date of employment.  A seniority list for all full time employees and a separate list for all part time employees shall be set up by the Employer and shall be furnished to the Union upon request.

4.2     The Employer recognizes the principle of seniority as being one in which the movement of an employee from one job to another or from one location to another through promotion, demotion, layoff, recall after layoff, or permanent transfer, shall be governed by the length of service of the employee, and in connection with such movement the Employer may take into consideration as to each employee involved his ability to perform the work.

4.3     In connection with layoffs and store closings, seniority will apply.

4.4     In all layoffs the ordinary rules of seniority shall prevail with due consideration being given to the job classification, fitness for the work involved, and the practicability of applying the rules of seniority in the particular case.

4.5     Full time employees to be reduced to part time may exercise their right to complete lay-off without prejudice to their right to recall.

# ARTICLE 5
## Holidays

5.1     (a) The Employer agrees that the following days shall be holidays.  When a holiday falls on a Sunday, the following Monday shall be observed:

|  |  |
|---|---|
| New Year's Day | Labor Day |
| Memorial Day | Thanksgiving Day |
| Independence Day | Christmas Day |

(b) Work may be performed on any of the herein above mentioned holidays, however, work as such shall be compensated for at the rate of one and one-half times (1-1/2) the employee's regular straight time rate of pay.  The employee will also be paid holiday pay.

(c) No employee shall be required to work on a holiday.  All work performed on Holidays shall be offered to full time employees first, based upon seniority and the employee's ability to perform the work required. In the event there are insufficient volunteers, the Employer may schedule by inverse seniority.

(d) Full time employees shall be offered eight (8) hours if work is available, and if the store is open for eight (8) hours.  Part time employees shall be offered not less than four (4) hours.  Any employee accepting holiday work shall not work less than four (4) hours.  Employees shall not be discriminated against for declining holiday work nor shall they be coerced into accepting it.

5.2     Full time employees shall be granted holiday pay based on an eight (8) hour day.

5.3     Part time employees working twelve (12) hours or more with six (6) months of service shall be paid four (4) hours holiday pay at the straight time hourly rate provided one of the holidays listed in paragraph 5.1 falls on a day he or she would normally be scheduled to work provided such employees work his or her scheduled work day before and his or her work day after such holiday, Sundays excepted. Where an employee is scheduled to work only one (1) day in a week and the holiday falls on that day, the one (1) day requirement shall be waived.

5.4     If any employee is absent for any cause other than illness or vacation on the day before or the day after such holiday, he or she shall not be paid for such holiday. The Company reserves the right to request a doctor's certificate.

5.5     Employees hired prior to August 10, 1994, shall be entitled to four (4) personal holidays per contract year (one (1) which may be used for Martin Luther King Jr.'s Birthday). Employees hired on or after August 10, 1994, shall be entitled to three (3) personal holidays per anniversary year. Unless otherwise agreed between the store manager and the employee, a one (1) week notice must be given by the employee of his intent to take a personal holiday. Full time employees shall be paid for eight (8) hours at their current straight time rate. Part time employees shall be paid five (5) hours at their straight time rate.

**ARTICLE 6**
**Leaves of Absence**

Subject to the following conditions, employees shall be granted leaves of absence which shall not interrupt their service records:

6.1     Leave of absence shall be granted up to one hundred eighty (180) days without pay when an employee with six (6) or more months of continuous service is unable to work because of sickness, accident or pregnancy. This disability must be attested to by a registered physician. The employee must give two (2) weeks notice in writing prior to the date he intends to return to work.

6.2     In case of a death in the immediate family (parent, spouse, child, brother, sister, grandparent, mother-in-law, father-in-law, stepmother, stepfather, stepchildren, legal guardian or any other relative residing in the employees home at the time of death) of any full time or part time employee requiring the employee's absence from his regularly scheduled assignments, the employee shall be granted leave of absence, with pay of three (3) scheduled work days. Certificate of death and proof of relationship may be requested. The funeral days designated in this Article may begin with, end with, or be centered around the day of death or the death related service, (i.e. funeral, memorial service, etc.).

6.3     Employees, full or part time, who serve in the National Guard or military reserve units which require annual training shall be granted the necessary leave without pay to fulfill the annual training requirements of the unit in which they serve. Such employee shall give the Employer two (2) weeks

prior notice. Employees called to active duty shall be guaranteed employment upon return provided the employee reapplies within ninety (90) days of release from active duty.

6.4    Any member of the Union employed by the Employer who is elected to a permanent office in the Union or is assigned by the Union to a Union activity necessitating leave of absence, shall be granted such leave of absence and shall, at the end of the term in the first instance or at the end of his mission in the second instance, be given reemployment at his former wage rate plus any increase or less any reductions that may have become effective during his absence.

6.5    Approved leaves of absence for reasons other than those listed above shall not interrupt an employee's service record.

6.6    Employees on leave in accordance with the Family Medical Leave Act will not be required to use paid time off.

## ARTICLE 7
### Sick Leave

7.1    All employees upon completion of twelve (12) weeks of employment shall be eligible for sick leave with pay earned at the rate of one (1) day for every two (2) months with a maximum of six (6) days for any one (1) year period.  Sick leave may be used for personal emergencies.

7.2    After one (1) year of employment, sick leave shall not be based on the two (2) month period, but shall be paid for as used, up to a maximum of six (6) days in any one (1) year period.

7.3    Sick leave for part time workers shall be pro-rated.

7.4    Employees hired prior to August 10, 1994, will receive pay for unused sick leave at the end of each year.

7.5    Employees hired on or after August 10, 1994, will not receive pay for unused sick leave at the end of each year.

## ARTICLE 8
### Military Service

The Employer will comply with the applicable laws of the United States concerning the reemployment of persons leaving the military service of the United States.  At the time an employee leaves for military service, he shall receive whatever vacation pay is due him.  The application of this provision will comply with the Military Selective Service Act of 1967 as amended.

## ARTICLE 9
## Vacations

9.1     Full time employees with one or more years of continuous service shall be granted vacations as follows:

| ANNUAL VACATION | PRO-RATA ON TERMINATION |
|---|---|
| Two weeks uninterrupted after one year | 2/12 week for each additional month |
| Three weeks after five years | 3/12 week for each additional month |
| Four weeks after twelve years | 4/12 week for each additional month |

9.2     Employees discharged for proven or acknowledged dishonesty shall not be entitled to any vacation pay.

9.3     Vacations may be limited during peak selling periods of the Company.

9.4     Any person on a leave of absence for reasons other than illness shall forfeit vacation entitlement for that period of time. Vacation pay shall be calculated on all hours worked in the fifty-two (52) weeks divided by fifty-two (52).

9.5     When a holiday designated in Article 5.1, occurs during the full time employee's vacation, the employee shall be entitled to an extra days vacation, said day to be continuous with employee's vacation, or cash in lieu thereof, based on straight time pay for an eight (8) hour work day.

9.6     Seniority of employees shall be the governing factor in selection of vacation dates. The vacation schedule of any employee cannot be changed except by mutual agreement, when it is less than sixty (60) days to the date the employee has selected. The vacation schedule shall be available on request by an employee. No request for vacation shall be unreasonably denied.

9.7     Vacation pay is to be paid to the employee prior to the day the vacation begins.

9.8     Part time employees shall be entitled to a vacation on or after each anniversary date of their employment, to be taken as outlined in paragraph 9.3, pro-rated on the basis of the average straight time hours worked during the preceding year according to the vacation formula set forth above and subject to the same conditions as pertain to full time employees.

9.9     When a holiday designated in Article 5.1 occurs during a part time employee's vacation, he shall be paid for all hours he would normally have worked that day.

## ARTICLE 10
## Dispute Procedures - Grievances and Arbitration

10.1    Disputes and grievances arising between the parties involving questions of interpretation or application of any provisions of this Agreement shall be submitted in writing promptly but in no case later than within fifteen (15) calendar days (bona fide grievances disputing wage rates may be presented without regard to a time limitation) after the occurrences of the alleged grievances by the party claiming to be aggrieved to the other party.  An earnest effort shall be made promptly to adjust such matters in accordance with the following procedures:

**Step 1.**  By conference between aggrieved employee, Steward and the Store Manager within seven (7) calendar days in which the grievance is filed in accordance to 10.1.

**Step 2.**  If not settled in Step One then it shall be taken up by the Union representative and designated Company official.

**Step 3.**  If the difference still remains unsettled after Step 2, the dispute may, at the request of the Union by registered mail or at the request of the Employer by registered mail, be submitted to arbitration within seven (7) calendar days or the dispute shall be considered to be closed.  The arbitrator shall be chosen in accordance with the procedure of the Mediation and Conciliation Service of the Federal Government.

(a)  The decision of such arbitrator shall be final and binding on both parties and may be enforced by the appropriate proceedings in a court of competent jurisdiction; no one, however, may alter, amend, add to or detract from any of the provisions of this Agreement.

(b)  The fees and expenses shall be shared equally by both parties (the Union and the Employer).

(c)  Extension of time at each step shall be only at the mutual consent of the parties hereto.

10.2    Discussions between employees and the Employer concerning disputes and grievances shall take place at a mutually convenient time which will not interfere with the normal operations of the business.

## ARTICLE 11
## Joint Labor Management

The Employer agrees to establish a Joint Labor Management Committee to meet twice a year to discuss matters of mutual interest to both parties.  The Committee shall consist of Union representatives, rank and file employees chosen by the Union, and Syms management representatives.

## ARTICLE 12
## Working Conditions

12.1    The Employer shall have the right to discharge or discipline any employee for just cause, including but not limited to, proven or acknowledged dishonesty, intoxication during working hours, drinking or gambling on employer's premises, or direct refusal to obey orders by the Employer which are not in violation of this Agreement, provided, however, that no employee shall be discharged or discriminated against because of membership in the Union or for Union activities.

12.2    Employees shall not be discharged except for just cause such as dishonesty, insubordination, willful destruction of Company property, use of or trafficking in alcohol or any narcotic or dangerous or illegal drug, falsification of employment application or work records, causing, encouraging or participating in a work stoppage or slow-down, incompetence or inefficiency, excessive absenteeism, failure to report damage, neglect of duty resulting in loss of company property, or violation of work rules which are not inconsistent with this Agreement.

The enumeration, by way of example, of offenses which may constitute just cause, is not intended to limit the definition of just cause for which employees may be discharged or otherwise disciplined.

Any employee wishing to contest their discharge must do so in writing within ten (10) days of the date of discharge.

Probationary employees who have not completed ninety (90) continuous working days may be terminated without cause and shall not have recourse to the grievance procedure.

Employees terminated for any reason shall receive their pay on the next regular pay day.

12.3    Representatives of the Union shall have access to the Employer's stores for the purpose of determining that the terms of this Agreement are being complied with including but not limited to inspecting work schedules, investigating the standing of employees and inspecting the pay records, which shall be available for a reasonable length of time.

12.4    No employee shall suffer a reduction of hourly wage rates, increase of hours, or reduced vacation time solely by the signing of this Agreement.

12.5    If a physical examination or health permit is required by the Employer or Local Government, all expenses attached to the same shall be borne by the Employer.

12.6    Employees shall be at their stores ready for work at their scheduled starting time, otherwise they are reporting late. They shall remain at their work until their scheduled quitting time. Employees shall be paid for all time worked. There shall be a time clock in each of the Employer's stores for the purpose of recording time worked. The Employer and the Union agree that a proven violation of established time clock rules, including working before punching in or after punching out, may subject such an employee to disciplinary action up to and including discharge. Furthermore, all

time during which an employee is suffered or permitted to work or is required to be on duty on the Employer's premises at a given work place shall be considered hours worked, and recorded on the time cards or time sheets.

12.7    The Employer shall maintain a first aid kit, fully equipped in each store to be available for all shifts worked.

12.8    Notice concerning Union business will be posted in designated locations in the stores.  The company shall provide a suitable bulletin board for this purpose.

12.9    Under no circumstances of any kind will the Company demand or require that any employee submit to any polygraph examination or electrical examination for any reason.  Any employee disciplined following any such requirement shall be entitled to reinstatement without loss of pay or other benefits.

12.10    When an employee needs to leave the floor, the Manager will continue to allow the employee to do so.  Any disputes which arise from this practice will not be subject to the grievance and arbitration procedure.

**ARTICLE 13**
**Separability Clause**

Should any Article, Section or portion thereof of this Agreement be held unlawful and unenforceable by any court of competent jurisdiction, such decision of the court shall apply only to the specific Article, Section or portion thereof directly specified in the decision, provided, however, that upon such a decision, the parties agree immediately to negotiate a substitute for the invalidated Article, Section or portion thereof, and provided further, that upon failure to reach agreement thereon within a period of not more than thirty (30) days, either party may submit the issue to arbitration and the Board of Arbitration shall have the power to devise such a substitute.

**ARTICLE 14**
**Wages**

Employees shall be entitled to the following increases on each effective date:

| Effective | Effective |
|---|---|
| November 1, 2010 | November 1, 2011 |
| $.25/hr | $.20/hr |

# ARTICLE 15
## Health and Welfare

15.1    The Employer shall participate in the Washington Wholesalers Health and Welfare Fund ("Fund"). The Employer agrees that it is bound by, and assents to the terms of, the Agreement and Declaration of Trust of the Fund, rules adopted by the Board of Trustees in administering the Fund in accordance with the Trust, and actions of the Trustees in administering the Fund in accordance with the Trust.

15.2    *Eligibility*

   a)    All full time employees will become eligible for benefits the 1st day of the month following the completion of six (6) months of continuous employment with the employer.

   b)    All part time employees will become eligible for benefits the 1st day of the month following the completion of nine (9) months of continuous employment with the employer.

15.3    *Contributions*  The Employer agrees to pay the full cost of Health and Welfare benefits, and related expenses, as submitted by the administrator of the Washington Wholesalers Health and Welfare Fund, to pay for Syms employees (active and retired) who are eligible for benefits (Plans C & A-M).

15.4    *Benefit Levels*

   a)    All full time & part time employees hired on or before July 1, 1997 will be eligible for Plan A-M benefits.

   b)    All full time & part time employees hired after July 1, 1997 will be eligible for Plan C benefits.

# ARTICLE 16
## Pension Fund

16.1    The Employer shall remain a participating Employer in the UFCW Unions and Participating Employers Pension Fund ("Fund"). The Employer agrees that it is bound by, and assents to the terms of, the Agreement and Declaration of Trust of the Fund, rules adopted by the Board of Trustees in administering the Fund in accordance with the Trust, and actions f the Trustees in administering the Fund in accordance with the Trust.

16.2     Effective May 1, 2009, the Employer shall make pension contributions as follows:

> May 1, 2009 – forty ($.40) cents per hour
> May 1, 2010 – fifty ($.50) cents per hour
> May 1, 2011 – sixty ($.60) cents per hour
> January 1, 2012 – seventy-six ($.76) cents per hour

16.3     <u>Eligibility</u>     All regular full time and part time bargaining unit employees who have completed sixty (60) days continuous employment with the Employer.

16.4     <u>Contributions</u>     Contributions will begin the first of the month following completion of sixty (60) days of continuous employment with the Employer.

## ARTICLE 17
### Jury Duty / Court Services

### Jury Duty

17.1     Employees actually serving on juries shall receive the difference between their straight time weekly basic pay and the amount received while on jury duty. They will be expected to work their regularly posted schedule on days when the jury is not in session. The schedule of a part time employee shall not be altered solely for the purpose of avoiding jury duty pay.

17.2     An employee serving on the jury shall not be required to work hours other than those during which the employee is normally scheduled and in no case shall they be required to report for less than four (4) hours.

17.3     Jury Duty shall be limited to thirty (30) days per year.

17.4     <u>Witness Services</u> -   Time spent at legal proceedings at the request of the Employer or Employer's counsel shall be compensated at straight time rates. Such compensation shall also be paid for time spent at the request of any law enforcement agency, involving investigation or legal proceeding for the benefit of the Employer. Such hours shall be considered as time worked for the computation of daily or weekly overtime, unless it is a part of the regularly scheduled work week.

## ARTICLE 18
### Shop Stewards

18.1     The Union shall have the right to appoint two Shop Stewards in each store, whose duties shall be to report any irregularities to the Union. In no instance shall the Shop Steward be discriminated against for discharging such duties, provided such duties do not unreasonably interfere with the regular performance of their work for the Employer. Shop Stewards shall report all irregularities to the Store Manager prior to reporting same to the Union.

18.2    Shop Stewards may not be transferred from store or job assignment without written consent of the Union, except in cases of promotion. The Shop Stewards shall have seniority among all other employees for lay off and recall only. Further, the Shop Stewards shall not be threatened, coerced or intimidated for performing Union activities.

18.3    In the interest of promoting cooperative relations the Store Manager shall introduce each new employee in his store to the Union Shop Stewards within one week after the new employee reports to work. Stewards shall give the new employee a copy of the contract and shall explain its operation. The Shop Steward may answer any questions the new employee asks him. They may request the new employee to join the Union and may make arrangements for the new employee to become a member.

18.4    One (1) Shop Steward per store shall be entitled to a leave of one day each calendar year with pay for Shop Steward Training and Education. Additionally, up to two (2) Shop Stewards per store shall be entitled to a leave of one day each calendar year without pay for Shop Steward Training and Education. The Union must notify the Employer at least two (2) weeks in advance thereof. The Shop Steward must upon returning from the leave present the Store Manager with written evidence from the Union that the Steward has used the leave for the purpose for which the leave was intended.

## ARTICLE 19
## Voluntary Check-Off

19.1    _Dues_ - The Employer agrees to deduct Union dues, the initiation fee and authorized assessments from the weekly wages of employees in the bargaining unit who provide the Employer with a voluntary written authorization to do so. Such deductions shall be made by the Employer each payroll period, from the wages of employees. The Employer shall forward such payroll deductions to the Secretary-Treasurer of the Union, within ten (10) days following the last payroll period of the month, indicating the employee's name, social security number and the amount deducted for each employee. In the event no wages are due an employee or the wages of an employee are insufficient to cover the required deductions, the deductions for such week shall nevertheless be made from the wages of an adequate amount next due the employee and thereupon transmitted to the Union.

19.2    _Active Ballot Club Deductions_ - The Employer hereby agrees to make payroll deductions for those employees, who so authorize in writing, for the United Food & commercial Workers International Union Active Ballot Club. The employer shall forward such payroll deductions to the Union within ten (10) days following the last payroll period of the month, indicating the employee's name and the amount deducted for each employee.

19.3    _Credit Union_ - The Employer agrees to deduct from an employee's earnings each payroll period, including vacation pay, the amount specified by an employee on the AFL-CIO Employees Federal Credit Union written authorization for payroll deduction form. Payroll deductions will commence with the payroll period following receipt of an employee's written authorization for AFL-CIO Employees Federal Credit Union payroll deductions. The employer shall forward such payroll

## ARTICLE 22
## Duration of Contract

This Agreement shall continue in effect from May 1, 2009, through April 30, 2012, and shall continue in effect from year to year after April 30, 2009, unless either party serves notice in writing on or before February 28, 2009, or on or before February 28th of any year thereafter of a desire for termination of or for changes in the Agreement. In the event either party serves such notice in respect to changes in the Agreement, the employer and the Union shall immediately begin negotiations on the proposed changes, and that pending the termination of negotiations neither party shall change conditions existing under the Agreement, it being understood and agreed that either party may in its own discretion, by written notice, unilaterally terminate such negotiations whenever it so desires.

In witness whereof, the parties hereto have set their hand and seal the day and year first above written.

**FOR THE EMPLOYER:**

_____ 1/31/11
                          Date

**FOR THE UNION:**

_____ 2/16/11
Thomas P. McNutt              Date
President

# COLLECTIVE BARGAINING AGREEMENT

# BETWEEN

# LOCAL 1102 RWDSU UFCW

# AND

# FILENE'S BASEMENT LLC

## June 22, 2010  - June 21, 2012

# TABLE OF CONTENTS

| ARTICLE PAGE | SUBJECT | PAGE # |
|---|---|---|
| 1 | Recognition | 2 |
| 2 | Union Security | 3 |
| 3 | Checkoff | 3 |
| 4 | Hiring | 4 |
| 5 | Trial Period | 4 |
| 6 | Hours of Work | 4 |
| 7 | Overtime | 5 |
| 8 | Wage Increases | 5 |
| 9 | Holidays | 6 |
| 10 | Personal Days | 7 |
| 11 | Sick Leave | 7 |
| 12 | Vacations | 7 |
| 13 | Bereavement | 8 |
| 14 | Jury Duty | 8 |
| 15 | Severance Pay | 8 |
| 16 | Transfers | 9 |
| 17 | Successors & Assigns | 9 |
| 18 | Non-Discrimination | 9 |
| 19 | Incapacitated Employees | 10 |
| 20 | Union Representative | 10 |
| 21 | No Private Agreements | 10 |
| 22 | No Strike - No Lockout | 10 |
| 23 | Discharge | 10 |
| 24 | Layoff and Recall | 11 |
| 25 | Grievance Procedure | 12 |
| 26 | Health Insurance | 14 |
| 27 | Pension Benefits | 14 |
| 28 | Breaches & Defaults | 14 |
| 29 | Management Rights | 14 |
| 30 | Duration | 15 |

# AGREEMENT

AGREEMENT made and entered into as of June 22, 2010, by Local 1102 RWDSU UFCW, with offices at 1587 Stewart Avenue, Westbury, New York, 11590 (hereinafter referred to as the "Union") and Filene's Basement LLC, with principal offices c/o Syms Corp. located at 1 Syms Way, Secaucus, NJ, 07094 (hereinafter referred to as the Employer).

# WITNESSETH:

WHEREAS, the Employer has become, as a result of an acquisition, a division of Syms Corp. (Syms), a discount clothing retailer. Syms is an employer which operates multi-location retail stores (and distribution center(s)) in the United States, and has had a long collective bargaining relationship with the Union and has been and is bound by the terms of a collective bargaining agreement with the Union, which for many years been applied to Syms operations throughout the United States; and

WHEREAS, Syms and the Union, have agreed that the appropriate bargaining unit includes all retail stores and distribution center(s) on a multi-location bargaining unit basis and that terms of a collective bargaining agreement be made applicable to all Syms operations; and

WHEREAS, Syms, as the owner of Filene's Basement LLC, a clothing retailer with multi-location operations in the United States, has determined that as part of its business model, the co-branding of some or all retail locations enhances the operations of the Company as a whole; and

WHEREAS, the Union has demonstrated its majority status as exclusive bargaining representative for the Employees of the Employer as well as Syms, jointly and severally, and there is no question that the Union represents more than a majority of the employees; and

WHEREAS, the covered operations include workers that have long been within the work jurisdiction of the Union and the parties desire to establish and maintain proper and suitable working conditions which permit it to successfully operate; and

WHEREAS, the Employer has recognized and bargained with the Union as the exclusive bargaining representative for the employees; and

WHEREAS, the parties desire to incorporate into this Agreement the terms and conditions which have been negotiated and agreed upon with respect to terms and conditions of employment to be applicable to the employees in the bargaining unit covered hereby and has agreed that through collective bargaining

1

with the Union, terms or conditions of employment that may arise during the term of the Agreement, including issues involving co-branded locations are best resolved through a single collective bargaining relationship.

NOW THEREFORE, in consideration of the aforesaid and of the mutual promises, conditions and covenants herein contained, it is hereby mutually agreed as follows:

## ARTICLE 1 - RECOGNITION

A.   The Union has demonstrated to the Employer that the Union represents more than a majority of the employees in the bargaining unit and the Employer has recognized the Union as the sole and exclusive collective bargaining agent representing all its sales and service employees, and distribution center(s) employees, excluding store managers, department managers, HR coordinators and loss prevention employees, guards, watchmen, clerical employees and supervisors as defined in the National Labor Relations Act, as amended, and agrees to deal with such representatives of the Union as the Union may from time to time select.

B.   The term "employee" or "employees", as hereinafter used, shall mean and include all salespersons, cashiers, stock clerks, tailors, wrappers, porters, receiving and shipping clerks and anyone performing the duty of waiting on trade in whole or in part, and distribution center employees, employed for full-time work, part-time work, extra work, temporary work, temporary extra work, in all of the present and future establishments owned or operated by the Employer as now and as it may hereinafter be constituted, whether individually or co-partnership or corporation.  The provisions of this Agreement shall apply to all bargaining units, including, but not limited to, newly established or acquired business, operations, and consolidations of business.

C.   The parties agree that this Agreement is a multi-location Agreement and covers multi-locations of the Employer, such locations, as of the date of this Agreement, being set forth on Schedule A attached hereto.  All locations covered by the Agreement are recognized and considered by the parties to comprise a single bargaining unit and this Agreement shall also apply to any new, expanded, or relocated operations, facilities or locations of the Employer which are operated or owned by the Employer during the term of this Agreement.  Schedule A shall be deemed to be amended during the term of this Agreement to incorporate such other operation, facility or location.

## ARTICLE 2 - UNION SECURITY

A.  It shall be a condition of employment that all employees of the Employer covered by this Agreement who are members of the Union in good standing on the execution or effective date of this Agreement, whichever is later, shall remain members in good standing for the term of this Agreement, and those who are not members in good standing on the execution or effective date of this Agreement, whichever is later, shall on the thirtieth (30) day following the execution or effective date of this Agreement, whichever is later, become  and remain members in good standing in the Union for the term of this Agreement.  It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its execution or effective date, shall after thirty days from the beginning of such employment and for the term of this Agreement, become and remain members in good standing in the Union.  The requirement of membership in good standing under this section is satisfied by the payment of the financial obligations of the Union's initiation fee and periodic dues uniformly required and to the extent permissible under the provisions of the Labor Management Relations Act, as amended.  This section shall be deemed coextensive with applicable law.

B.  The Employer shall immediately upon hiring, notify the Employee of the Union Security provisions of this Agreement, and the Union in writing of the employment of such employee covered by this Agreement giving the employee's name, address, date of hire and position.  Upon notice from the Union to the Employer that any employee is delinquent in payment of, or has failed to tender the initiation fee and periodic dues uniformly required as condition of acquiring and/or retaining membership in good standing, the Employer shall immediately discharge such employee and advise the Union thereof in writing by Certified Mail, Return Receipt Requested, of its action taken.

## ARTICLE 3 – CHECKOFF

Upon the written authorization of the employees, the Employer shall deduct dues and initiation fees from the wages of such employees, and the Employer further agrees upon such deduction to transmit such sums collected by the Employer to the Union not later than the fifteenth (15th) day of the next month, following the month of the collection.  The Employer shall hold such funds in trust for the Union and agrees to be personally liable for the same.  The authorization shall not be irrevocable for a period of more than one (1) year, or beyond the termination date of the Agreement, whichever occurs sooner.

## ARTICLE 4 - HIRING

The Employer shall notify the Union when new employees are to be hired. The Union shall have the right to send applicants for the job or jobs, and the Employer agrees to interview such applicants and give the same interview considerations to union sent applicants as are given to applicants from other sources. The Employer reserves the right to finally pass on the qualifications and experience of all applicants for employment.

## ARTICLE 5 - TRIAL PERIOD

All employees shall be on trial period for the first ninety (90) days of employment. During such trial period, the employee may be discharged without further recourse. After the trial period, the employee shall be placed on the regular seniority list retroactive to the first date of hire.

## ARTICLE 6 - HOURS OF WORK

A.  The basic workweek for full-time employees employed in stores and Distribution Center shall be thirty five (35) hours per week during any five (5) days, Sunday through Saturday.

B.  The hours shall be consecutive and absent an express request of an employee, no staggering of hours shall be permitted. A schedule of the working hours for employees shall be posted on the premises where the employees are employed no later than the Friday before the commencement of the next work week and such schedule shall be subject to inspection by the Union. Employees shall not be required to work more than nine (9) hours in one day with any one (1) meal period. Unless mutually agreed, In no event, shall the employee's work exceed forty (40) hours during any said five (5) days of said week. The Employer shall continue its existing practices with respect to meal/break periods provided to employees, which at all times shall be consistent with applicable law.

C.  An employee employed for fifteen (15) or less hours per week, shall, after thirty (30) days, be required to become a member of the Union but shall, at all times, be regarded as a temporary extra who may be discharged at any time by the Employer.

D.  An employee employed for more than fifteen (15) hours, but less than thirty (35) hours, shall be regarded as a regular part-time employee who shall be required to become a member of the Union after thirty (30) days.

E.  Employees engaged for seasonal periods (defined as the period from October 15

to January 15) for temporary-extra work shall be designated as "seasonal temporary employees" who may be discharged at any time. After thirty (30) days such seasonal temporary employee shall become a member of the Union in accordance with provisions of this Agreement and if such employee is retained after January 15, shall no longer be regarded as a seasonal temporary employee and shall be entitled to seniority rights from his/her date of hire.

F.      On no less than on a quarterly basis, the Employer will confer with the Union to review the hours actually worked by employees to assure that employees are categorized as full-time, part-time, or temporary extra, consistent with the actual hours which the employee works.

## ARTICLE 7 - OVERTIME

A.      Should the Employer require the services of an employee in excess of forty (40) hours of actual work per week as hereinabove provided, the Employer shall be required to pay for overtime at the rate of time and one-half of the hourly wage of said employee. Overtime is optional with the employee. An employee shall not receive overtime pay until such employee actually works in excess of forty (40) hours. Hours will be offered in shift periods of no less than four (4) hours.

B.      It shall be optional for the employee to accept employment for the sixth day of work.

## ARTICLE 8 - WAGE INCREASES

A.      Non-probationary full-time employees shall receive a bonus payment of $500 (gross) as soon as practicable after the execution of this Agreement. Non-probationary part-time employees shall receive a bonus of $200 (gross) as soon as practicable after the execution of this Agreement..

B.      At least sixty (60) days prior to the first anniversary of this Agreement, the Union may request that the Company reopen this Article of the Agreement to negotiate adjustments in compensation to be effective for the second year of the Agreement.

C.      New employees may be engaged at a salary no less than the applicable Minimum Wage and Hour Laws. However, those employees engaged at the applicable Minimum Wage and Hour rate, shall, after thirty (30) days, receive an increase of twenty (.20¢) cents per hour.

# ARTICLE 9 - HOLIDAYS

A.  The Employer agrees to allow each regular employee employed more than thirty (30) days, the following holidays at average pay each year as provided herein. Part-time employees shall be paid in accordance with the average number of hours worked per week over the previous quarter divided by five days.

　　　1.  There shall be six (6) holidays which are:

New Year's Day*　　　　Labor Day*
Memorial Day*　　　　　Thanksgiving Day**
Independence Day*　　　Christmas Day**

*A day off in lieu of this holiday may be scheduled by the Company for each eligible employee within the holiday week.
**In any other week containing a holiday or other regularly scheduled day of closing, the closed day shall be the only day off.

The Company shall have the right to change the scheduled days off for any employee during said six (6) holiday workweeks, during the period between Thanksgiving and Christmas, and in any week including a holiday on which a store is open.

B.  If the Employer keeps his store open on a holiday, any regular employee who works on that day shall receive straight time in addition to regular pay for the holiday except as otherwise may be required by applicable state law.

C.  Employees to be eligible for holiday pay for the foregoing holidays, shall be required to work the scheduled work day before and the scheduled work day after the holiday, unless the employee has a substantive and provable reason for the absence.

D.  Any employee otherwise qualified to receive holiday pay who takes his or her contractual vacation during a week in which any of the paid holidays as above defined falls, shall receive either a compensatory day off that is mutually agreeable between the employee and the Company or straight time pay for such holiday.

# ARTICLE 10 - PERSONAL DAYS

A.     The Employer agrees to allow each regular employee as of the first day of the month following sixty (90) days of employment and annually thereafter, two (2) "personal days" with average pay, and except as provided for in Section B hereof, only one which may be taken in any single season during the course of the year. Upon termination only a current season unused personal day will be paid.

B.     Upon at least one (1) week's advance notice, an employee, with the consent of the Employer, may use his personal day or days for observing any additional holidays, including religious holidays, not designated by the Employer. In designating his "personal day", the employee shall not choose a day during a period immediately preceding or during a peak season.

C.     Personal days must be taken during the year in which they are earned and the privilege of taking such personal days shall not be unreasonably withheld by the Employer.

D.     No employee may be deprived of the right to observe his religious holidays or Martin Luther King's Birthday.


# ARTICLE 11 - SICK LEAVE

A.     Every regular full-time or part-time employee shall be entitled to five (5) and two (2) days sick leave respectively, during each contract year at average earnings. Unused sick pay shall not be paid to employees.

B.     No sick leave shall be earned during a new employee's trial period. However, if the employee is continued in employment beyond the trial period, he shall receive retroactive to the first day of employment, pro-rata of the above sick leave computed upon completion of each month of employment, until the full allotment is earned during his first year of employment.


# ARTICLE 12 - VACATIONS

A.     Full-Time Employees shall be entitled to the following vacations:

     1. A worker who has completed 6 months of active employment prior to the end of the vacation year will be entitled to one week of vacation during the vacation period.

2. A worker who has completed 12 months of active employment prior to the end of the vacation year will be entitled to an additional week of vacation during the vacation period.

3. On January 1st following one year of active employment, a worker will be eligible for 2 weeks of vacation during the vacation period.   .

4. On January 1st following a Co-worker's fifth anniversary, a worker will be eligible for 3 weeks of vacation during the vacation period.

B.   In the event of a sale, bankruptcy, assignment or reorganization of an Employer, employees shall become immediately entitled to be paid pro rata vacation pay.

## ARTICLE 13 - BEREAVEMENT

In the event of the death of an employee's spouse, mother, father, brother, sister, or child, the Employer will grant, upon the employee's request, five (5) days bereavement leave with pay; three (3) days bereavement leave with pay for grandparent, father-in-law or mother-in-law.

## ARTICLE 14 - JURY DUTY

The Employer shall permit regular employees to serve on a Jury when called for that purpose.  It is expected that employees who are called for service and are excused from their duties will return each day to the store as soon as possible after they are excused.   The Employer agrees to pay such employees the difference between the amount received by said employees as compensation for Jury Duty and their straight-time pay for each day.

## ARTICLE 15 - SEVERANCE PAY

A.   Where the services of an employee are terminated through no fault of his own, then and in that event, the Employer shall pay on the date of such termination the following severance pay:

1. Two (2) but less than four (4) consecutive years:  One (1) week full salary.
2. Four (4) but less than eight (8) consecutive years:  Two (2) weeks' full salary.
3. Eight (8) but less than twelve (12) consecutive years: Three (3) weeks' full salary.
4. Twelve (12) or more years:  Four (4) weeks' full salary.

## ARTICLE 16 - TRANSFERS

A.   If the Employer operates more than one store in a local metropolitan area, it may with the mutual consent of the employee, transfer an employee from one store to another, providing they are reasonably geographical proximate (or "Cluster").

B.   In the event that a store is closed or discontinued, the employees who are to be terminated shall be those with the least amount of seniority in the store. Impacted employees may be offered but need not accept an available position in another store.   The Company reserves the right to determine whether an employee will be offered a position, so long as such right is not exercised in an arbitrary or capricious manner.


## ARTICLE 17 - SUCCESSORS AND ASSIGNS

A.   Any Employer who is a bona fide purchaser for value of the fixtures, merchandise and/or lease, or who only buys the lease and fixtures of a store, agrees to be bound by all of the terms, covenants and conditions hereof at said store location for any employees engaged by him at the time of the purchase and any employees who may enter his employ subsequent to the date of purchase.

B.   This Agreement shall be binding on the Employer, its successors and assigns. In the event the Employer should sell or transfer all or part of his or its business, the Employer agrees to give to the Union reasonable notice of his or its intention to sell and shall require the purchaser, assignee or transferee to agree to accept and assume in writing all of the terms and conditions of this Agreement.

C.   If the Union disputes the fact that the sale is a bona fide sale, it shall so notify the Employer by certified mail, return receipt requested, within three (3) working days after receipt of written notice of the sale.  The matter shall forthwith be submitted to arbitration, as herein provided, and only if the arbitrator finds the sale to be bona fide, then and only then shall the provisions of this Article protecting the purchaser apply.


## ARTICLE 18 - NON-DISCRIMINATION

The Employer and Union agree that all employees are guaranteed equality in all conditions of employment.  The Employer shall not discriminate against any Employee on the basis of race, color, religion, sex, age, national origin, marital status, veteran status, disability, sexual orientation, or union membership.

B. Nothing in this Agreement shall be deemed or construed to limit or restrict the right of the employer to summarily discharge an employee for dishonesty, intoxication, illegal drug use, or violent conduct in which event the Employer, shall forthwith give notice to the Union by certified mail, return receipt requested. The Employee shall not be permitted on the premises from the date of discharge. If the Union challenges the justification of such discharge, it shall forthwith notify the Employer, by certified mail, return receipt requested or overnight or facsimile delivery, and shall immediately proceed to dispose of the matter by arbitration in the manner hereinafter provided.

C. Disciplinary action taken by the Employer against an employee, if not challenged by the Employee and the Union within thirty (30) days after receipt of the notice as herein provided shall be deemed waived and may not thereafter be submitted to arbitration without the consent of the Employer. Disciplinary notices or warnings in an employees personnel file shall be deemed "stale" after a period of twenty-four (24) months and may not be used to support a just cause termination of employment.

## ARTICLE 24 – LAYOFF AND RECALL

A. Seniority shall govern with respect to layoff and recall, i.e. the last employee hired, shall be the first employee laid-off and the last employee laid-off shall be the first employee hired.

B. Seniority for purposes of layoff shall be based upon a store-wide seniority, provided the senior employee is capable of performing the required tasks of the job. There shall be separate seniority lists for full-time and part-time employees. Distribution Center employees shall have a separate seniority list.

C. Seasonal or temporary employees shall be laid-off before full-time or part-time employees. So long as there are full-time or part-time employees on layoff, the Employer may not schedule seasonal, temporary or extra employees to available hours unless such laid-off employees have been offered, but refuse to accept such work. Reasonable notice shall be provided to such laid-off employee of such available hours.

D. Seniority rights shall terminate upon termination for cause, resignation or after the passage of a one year period from the employee's last day of work.

E. Stewards designated by the Union shall have superseniority for purpose of layoff and recall.

## ARTICLE 19 - INCAPACITATED EMPLOYEES

Except as hereinafter provided, unless an incapacitated employee is cleared by a duly licensed physician to return to full-time active employment within 180 days from the commencement of his leave for illness, the Employer may terminate such employee. An employee must be actively employed as scheduled for no less than thirty days after return from such leave of absence before being eligible for additional leave for extended illness which cumulatively, in any yearly period may not exceed 180 days.


## ARTICLE 20 - UNION REPRESENTATIVE

The Employer shall permit the Union's business representative or any other duly authorized representative of the Union to visit its store or stores at any time for the purpose of interviewing or observing the employees in connection with performance of their work.


## ARTICLE 21 - NO PRIVATE AGREEMENTS

The Employer may not negotiate nor make any private agreement with employees, unless it shall be through duly authorized officers of the Union.


## ARTICLE 22 - NO STRIKE - NO LOCKOUT

The Union and the Employer mutually agree that there shall be no strike by the Union or lockout by the Employer during the life of this Agreement.


## ARTICLE 23 - DISCHARGE

A.    A regular employee may be discharged or suspended only for just cause. Written notice by the Employer to the Union shall be sent by certified mail, facsimile transmission or overnight delivery service within seven (7) calendar days from the date of such discharge.  Such notice to the Union reporting such discharge shall set forth the details impelling the reason for the discharge.

## ARTICLE 25 - GRIEVANCE PROCEDURE

A.     All disputes of whatsoever kind or nature, whether specifically provided for herein, or otherwise, arising out of or under this Agreement, or any dispute with respect to any other acts, conduct or relations between the Union and the Employer, shall be arbitrated before an arbitrator mutually agreed upon who shall be designated as Impartial Chairman for such dispute. Notice of the demand for arbitration shall be given in writing by the party initiating such proceeding to the other, by certified mail, return receipt requested, addressed to the office of the other party hereto, or by overnight delivery or by facsimile, which notice shall set forth the nature of the dispute to be arbitrated. The decision of the Impartial Chairman shall be final, conclusive and binding on all of the parties to this Agreement including the Employees and the Employer.

B.     The Impartial Chairman shall strive to hold a hearing within thirty (30) days after demand therefore by the aggrieved party.

C.     In the absence or inability of the parties to designate an arbitrator, the Union and the Employer agree to submit to arbitration before an arbitrator designated by the American Arbitration Association under its labor arbitration rules. Such designated arbitrator shall thereupon be the Impartial Chairman with respect to that dispute.

D.     Only the parties to this Agreement, to wit: the Union and/or the Employer may request an arbitration hearing.

E.     The oath of the Impartial Chairman is expressly waived.

F.     The Impartial Chairman shall have the power to issue subpoenas for all books, vouchers, papers and records which may be pertinent to any of the issues in any proceeding had before him and may issue subpoenas directing the attendance before him of any persons whose testimony may be relevant in any such proceeding. The arbitrator, if he finds that there was not just cause to support the discharge or suspension of the employee may reinstate the employee and provide for payment of back pay as well as all benefits and fringe benefit fund contributions on behalf of the employee.

G.     In the event a party to arbitration shall default in appearing before an Impartial Chairman, the latter, in his discretion, is empowered to take proof of the party appearing and render an award thereon.

H.     The decision, order, direction or award of the Impartial Chairman shall be final, conclusive and binding on the parties and enforceable in any Court of competent jurisdiction.

I.     No employee or group of employees or Employer or group of Employers shall

have the right to initiate arbitration or commence any action or proceeding to enforce this Agreement. It is understood that the right to enforce this Agreement, including the rights of the employees and the Employer is vested exclusively in the Union and the Employer. The parties agree that enforcing this Agreement shall be limited to the procedures provided in this Agreement.

J.   Before any matters in dispute are submitted to arbitration, the party raising such matter (i.e. the Union or the Employer) shall advise the other of the dispute and the Employer and the Union shall attempt to resolve the disputed matter, whereupon, if not resolved, the parties shall proceed to arbitration as herein provided.

Disputes and grievances arising between the parties involving discharge or suspension of an employee shall be submitted promptly, but in no case unless extension is mutually agreed, no later than thirty (30) work days after the receipt of notice of the occurrence of the alleged grievance by the party claiming to be aggrieved to the other party. An earnest effort shall be made promptly to adjust such matters in accordance with the following procedures unless otherwise agreed to by the parties. Discussions between the employee and the Employer concerning the dispute shall take place at a mutually convenient time which will not interfere with the normal operations of the business.

  Step 1. By conference between aggrieved employee, Steward or designated union representative and the Store Manager within seven (7) calendar days of the date of the occurrence or notice to the employee whichever is later.

  Step 2. If not thus settled within seven (7) calendar days after it is first submitted, it shall be taken up by the business representative and designated Company official.

  Step 3. If the difference still remains unsettled after Step 2, the dispute may, at the request of the Union by mail (but not by an individual employee or groups of employees) or at the request of the Employer by mail, be submitted to arbitration within thirty (30) work days from receipt of the notice by the Union of the discharge or suspension, or the dispute shall, unless otherwise mutually agreed upon, be considered to be closed.

K.   The procedure established in this Agreement for the resolution of complaints, grievances or disputes shall be the exclusive means for the determination of any complaint, grievance or dispute, including, without limiting the generality of the foregoing strikes, stoppages, slow-downs and lockouts, and any and all claims, demands and actions arising therefrom. No proceeding or action in a court of law or equity or administrative tribunal shall be initiated other than to compel arbitration or to enforce the award of the Impartial Chairman or to obtain an award in furtherance thereof. This paragraph shall constitute a complete defense

and ground for a stay of any action or proceeding instituted contrary thereto.

## ARTICLE 26 - HEALTH INSURANCE

Effective for the first anniversary of this Agreement, the Union may request the Employer to reopen this Article with respect to alternative health programs. Unless otherwise mutually agreed upon by the parties in writing, the existing Health Insurance Program shall be maintained during the term of this Agreement. Should the Employer seek to change the existing Health Insurance Program, it shall notify the Union no less than sixty (60) days in advance, and discuss with the Union the basis of the change and details of the changes that will be implemented. No such change in the Health Insurance Program shall be permitted unless it is to be implemented company-wide.

## ARTICLE 27 – PENSION BENEFITS

Effective for the first anniversary of this Agreement, the Union may request the Employer to reopen this Article with respect to alternative pension programs. Unless otherwise mutually agreed upon by the parties in writing, the existing 401(k) Pension Plan shall be maintained during the term of this Agreement.

## ARTICLE 28 - BREACHES AND DEFAULTS

The failure of the Union or the Employer to insist upon a strict performance of any of the terms, conditions and covenants herein shall not be deemed a waiver of any rights or remedies that the Union or the Employer may have and shall not be deemed a waiver of any subsequent breach or default in the terms, conditions and covenants therein contained.

## ARTICLE 29 - MANAGEMENT RIGHTS

A. Except as otherwise expressly provided, nothing in this Agreement shall be deemed to limit the Employer in any way of the exercise of the usual, regular and/or customary rights of Management, including, by way of example, to determine the size of the working force, to make appropriate changes, and to adopt and implement reasonable work rules and regulations.

B. Any of the rights, powers, and authorities the Employer had prior to entering into this Agreement are retained by the Employer, except as expressly and specifically abridged, delegated, granted or modified.

C. The parties recognize that in the event an issue arises in connection with the Syms-Filene's co-branded stores, which is not otherwise provided for herein, is to be resolved through collective bargaining seeking mutual agreement, with final resort for resolution under the grievance/arbitration provisions provided for in this

Agreement.

## ARTICLE 30 - DURATION

All of the terms, covenants and conditions of this Agreement shall continue in full force and effect without change for a period of two (2) years effective June 22, 2010. Unless notice be given in writing by either party to the other by certified mail, return receipt requested, by facsimile transmission, email or by overnight delivery service at least sixty (60) days prior to June 21, 2012 to modify the terms and conditions thereof, this Agreement shall be automatically extended from year to year thereafter, subject to the aforesaid sixty (60) day notice requirement.

IN WITNESS WHEREOF, the Union and the Employer have caused these presents to be signed by their duly authorized representatives the day and year first above written.

**LOCAL 1102 RWDSU UFCW**          **FILENE'S BASEMENT LLC**

BY: _____          BY: _____

TITLE: _____Pres._____          TITLE: __SVP, HR__

COLLECTIVE BARGAINING AGREEMENT

Between

**SYMS CORP.**

And

**LOCAL 108**
**RETAIL, WHOLESALE AND DEPARTMENT STORE UNION**

1576 Springfield Avenue
Maplewood, NJ 07040
(973) 762-7224

EFFECTIVE DATE: MAY 27, 2006
EXPIRATION DATE: MAY 31, 2009

# Table of Contents

AGREEMENT.................................................................................1

ARTICLE I – RECOGNITION..........................................................1

ARTICLE II – CLASSIFICATION OF EMPLOYEES.........................1

ARTICLE III – SENIORITY..............................................................2

ARTICLE IV – HOURS OF WORK....................................................2

ARTICLE V – HOLIDAYS................................................................3

ARTICLE VI – SICK LEAVE.............................................................4

ARTICLE VII – VACATION..............................................................4

ARTICLE VIII – MOURNING PERIOD.............................................5

ARTICLE IX – JURY DUTY.............................................................5

ARTICLE X – LAY-OFFS, DISCHARGES, AND TRANSFERS........5

ARTICLE XI – CHECK-OFF.............................................................6

ARTICLE XII – VISITATION............................................................6

ARTICLE XIII – HEALTH PLAN......................................................6

ARTICLE XIV – RETIREMENT PLAN.............................................7

ARTICLE XV – MANAGEMENT AND PREROGATIVES.................8

ARTICLE XVI – SALE OF STORE...................................................8

ARTICLE XVII – SEVERANCE PAY................................................9

ARTICLE XVIII – WAIVER AND MODIFICATIONS........................9

ARTICLE XIX – GRIEVANCE AND ARBITRATION.......................9

ARTICLE XX – NOTICES...............................................................10

ARTICLE XXI – NO STRIKE-NO LOCKOUT................................10

ARTICLE XXII – TERM OF AGREEMENT....................................10

ARTICLE XXIII – WAGES..............................................................11

# AGREEMENT

THIS COLLECTIVE BARGAINING AGREEMENT made this 27th day of May, 2006 by and between SYMS CORPORATION, with offices at Syms Way, Secaucus, New Jersey 07094, hereinafter referred to as the "EMPLOYER" and LOCAL 108, RETAIL, WHOLESALE AND DEPARTMENT STORE UNION, located at 1576 Springfield Avenue, Maplewood, New Jersey 07040, hereinafter referred to as the "UNION".

## WITNESSETH

WHEREAS, it is for the best interest of industry and labor to effect a reasonable basis for cooperation between industry and labor; and

WHEREAS, the parties desire to cooperate in establishing working condition was for the employees of the Employer; and to provide methods for fair and peaceful adjustment of any disputes that may arise with respect to the working conditions and terms of employment of the employees of the Employer and related matters, and to achieve such other beneficial purposes as may be achieved through the machinery of collective bargaining.

NOW, THEREFORE, the parties agree as follows:

## ARTICLE I – RECOGNITION AND UNION SECURITY

<u>Section (1)</u>    The Employer herewith recognizes the Union as the sole exclusive bargaining agent for the employees of the Employer covered by this Agreement excluding the store manager and department manager.

<u>Section (2)</u>    Except as otherwise provided, the Employer shall continue in his employ, in non-exempt positions, only such persons as thirty (30) days after the date of their employment or the date of this contract, whichever is later, shall become members of the Union and remain members of the Union in good standing as condition of their employment. The Union shall be the sole judge of the standing of its members.

<u>Section (3)</u>    It is agreed that no employee or prospective employee shall be discriminated against for reasons of race, color, creed, or for Union activity or Union membership.

<u>Section (4)</u>    It is further understood that except for the Shop Stewards, all Union activity shall be conducted on the employee's time.

## ARTICLE II – CLASSIFICATION OF EMPLOYEES

<u>Section (1)</u>    Full-time regular employees shall be those employees who are regularly employed to work at least (40) hours per week.

1

**Section (2)** Part-time regular employees shall be those employees who are regularly scheduled to work less than thirty-five (35) hours per week.

**Section (3)** All full time employees hired prior to June 1, 2000 shall have the option to continue working a minimum of thirty (30) hours per week and maintain their full-time status. These full-time employees shall be given the option of working thirty-five (35) hours per week if they so desire.

## ARTICLE III – SENIORITY

**Section (1)** All employees shall be considered as hired for a trial period of twelve (12) weeks during which trial period shall be subject to discharge at will. Employees retained in the employ of the Employer subsequent to the expiration of the trial period shall be deemed regular employees and placed on seniority list of the employees of the Employer, such seniority to date back to the beginning of their employment at said premises. The provisions hereof shall apply to both full-time employees and part-time employees on separate seniority lists.

**Section (2)** When a regular employee completes his military service, he shall be restored to his former position with full seniority, plus any increases in rate which may become effective in his absence.

**Section (3)** The seniority of an employee shall be ended in the event he quits or is fired for cause. Also in the event he is laid-off, or is out sick for a period in excess of four (4) consecutive months.

## ARTICLE IV – HOURS OF WORK

**Section (1)** The regular work week of employees shall be five (5) days, forty (40) hours.

**Section (2)** Any employee who works more than forty (40) hours in any week shall be compensated at the rate of one-and-one-half (1 ½) times his regular rate for all work in excess of forty (40) hours.

**Section (3)** Employees hired prior to June 1, 1986, shall not be required to work any Sundays. However, if a sufficient number of employees are not available to staff the store on a Sunday, the Employer may require in reverse order of seniority, a sufficient number of employees to properly staff the store, but in no event shall any employee be required to work more than (2) Sundays per month.

**Section (4a)** All other employees shall not be required to work more than (2) Sundays a month.

<u>Section (4b)</u>  Employees hired prior to June 1, 1992 who work on Sunday shall be paid for at one-and-a-half (1 ½) times the employees' regular hourly rate regardless of the amount of hours worked in that week.

<u>Section (5)</u>  Employees hired prior to May 30, 1996, who are required to work on Inventory, shall receive time-and-one-half (1 ½) for all hours worked.  Employees hired after June 1, 1996, or thereafter, who are required to work on Inventory shall receive straight time for all hours worked, unless the Overtime Provisions in this contract are applicable.

## ARTICLE V – HOLIDAYS

<u>Section (1)</u>  Each employee who is employed four (4) weeks or more shall receive the following legal holidays:

| | | |
|---|---|---|
| New Year's Day | Declaration Day | July 4th |
| Christmas Day | Thanksgiving Day | Labor Day |

<u>Section (2)</u>  During weeks in which the legal holidays listed in Section (1) occur, employees shall be entitled to time-and-one-half (1 ½) for all hours worked in excess of thirty-two (32) hours.  Overtime shall not be pyramided.

<u>Section (3)</u>  All employees hired prior to June 1, 2000, shall be entitled to five (5) personal use days during each calendar year.

<u>Section (4)</u>  All employees hired after June 1, 2000 shall be entitled to one (1) personal use day during their first (1st) year of employment and two (2) additional personal use days during their second (2nd) year of employment and each year thereafter.

<u>Section (5)</u>  Employees may request use of their personal use days at least two (2) weeks in advance.  Requests shall not be made during peak periods and shall always be at the discretion of the Employer.  The Employer agrees not to withhold approval arbitrarily.  "Personal Use" days may be used prior to the end of the calendar year.

<u>Section (6)</u>  If the store is opened on any of the aforementioned holidays, the employees if required, shall work on such holiday pay.  If the store is closed or if the holiday falls on an employee's scheduled day off, such employee shall receive an average day's pay (based on previous four (4) weeks); however, employees shall not be required to work on New Year's Day, Thanksgiving Day and Christmas.

<u>Section (7)</u>  Holidays for part-time employees shall be pro-rated.

<u>Section (8)</u>  Employees must work the last scheduled day before a holiday and the first scheduled day following a holiday to be eligible for holiday pay unless due to proven illness or an excused absence.

# ARTICLE VI – SICK LEAVE

<u>Section (1)</u>    All employees upon the completion of twelve (12) weeks of employment shall be eligible for sick leave with pay earned at the rate of one (1) day, or an equivalent number of hours, for every two (2) months.  If the first day of sick leave occurs during the trial period, it shall be paid for at the completion of the trial period.

<u>Section (2)</u>    After one (1) full year of employment, starting with January 1st; sick leave shall not be based on the two (2) month period, but shall be paid for as used, up to a maximum of six (6) days, or an equivalent number of hours, in any one (1) year period.

<u>Section (2a)</u>    If, at the end of any calendar year, An employee employed prior to May 30, 1996, has not used the full six (6) days, or an equivalent number of hours, sick leave, the Employer shall, within a reasonable time after the end of the calendar year, but not to exceed thirty (30) days, pay for the average pay for the number of sick leave days, or an equivalent number of hours, not used.  Unused sick pay shall not be paid to employees hired on or after May 30, 1996.

<u>Section (3)</u>    Sick leave for part-time workers shall be pro-rated.

# ARTICLE VII – VACATIONS

<u>Section (1)</u>    All employees employed six (6) MONTHS OR MORE AS January 1st in (may) year, shall receive one (1) continuous week of vacation with pay to be taken during the designated Summer Vacation Period.

<u>Section (2)</u>    All employees employed for one (1) year or more as of January 1st in any year, shall receive two (2) weeks vacations with pay to be taken during the designated Summer Vacation Period.

<u>Section (3)</u>    All employees employed five (5) years or more as of January 1st in any year shall receive three (3) weeks vacation with pay to be taken as follows:

> Two (2) weeks during the designated Summer Vacation Period
> One (1) week during the designated Winter Vacation Period

<u>Section (4)</u>    Employees, who have completed twelve (12) years as of December 31st of any year, shall receive a fourth (4th) week of vacation during the following year. Employees who are eligible for four (4) weeks of vacation shall take vacation according to the following schedule:

> Two (2) weeks during the designated summer vacation period; One (1) week during the designated winter vacation period; and One (1) week upon mutual agreement between the Employer and Employee.

4

Section (5)     In the event a holiday occurs during the vacation period, the employees shall receive an additional one (1) day of vacation with pay.

Section (6)     Vacation for part-time employees shall be pro-rated.

Section (7)     In the event that any employee who has qualified for vacation is discharged in cases of proven dishonesty, such employee shall not be entitled to his vacation.

## ARTICLE VIII – MOURNING PERIOD

Section (1)     All employees, both full-time and part-time, after completion of the trial period, shall be entitled to be absent from work for a period of three (3) days in the event of a death in the immediate family (spouse, child, parent, brother or sister) and shall be paid therefore.

Section (2)     All employees, All employees, both full-time and part-time, after completion of the trial period, shall be entitled to be absent from work for a period of one (1) days in the event of a death to a mother-in-law, father-in-law, or grandparent and shall be paid therefore.

## ARTICLE IX – JURY DUTY

All full-time employees employed continuously for at least six (6) weeks who serve as jurors shall be paid their weekly base pay less, the compensation paid for jury duty for up two (2) weeks maximum.

## ARTICLE X – LAY-OFFS, DISCHARGES AND TRANSFERS

Section (1)     The Employer shall have the right to determine the number of types of employees from time to time required in the operation of this business, and to determine the necessity for and extent of lay-offs.  In laying-off and re-hiring employees, the principle of seniority shall be given effect subject to provisions of this agreement.  Full-time and part-time employees shall have separate seniority lists.

Section (2)     Employees, after expiration of their trial period, may be discharged only for cause.  In the event of any dispute as to the existence of cause for discharge, such dispute shall be determined in accordance with the grievance and arbitration provisions hereinafter contained.  Unless written claims of wrongful discharge are made within one (1) week of the date of discharge, discharge shall be deemed to be for good cause.

Section (3)     No employee shall be required to accept a transfer out of the jurisdiction of Local 108.

# ARTICLE XI – CHECK-OFF

Section (1)    On each pay day, the Employer shall deduct from the wages of each employee an amount equal to the weekly Union dues and installment of initiation fees, if any, which may be due to the Union. The Employer shall be furnished with check-off authorizations signed by each employee, which shall conform to legal requirements pertaining thereto.

Section (2)    The dues and initiation fees checked-off pursuant hereto shall be forwarded directly to the Union immediately after check-off as provided herein.

Section (3)    The Employer agrees to make payroll deductions, for those employees who so authorize in writing, for the Committee on Political Education. Deductions will be forwarded to the Union monthly and shall be accompanied by a list of the names of the employees and the amount deducted.

# ARTICLE XII – VISITATION

Authorized representatives of the Union shall be permitted to have access to the premises during the business hours for the purpose of observing the operation of this Agreement.

# ARTICLE XIII – HEALTH PLAN

Section (1)    The Employer agrees to make contributions to the LOCAL 108 HEALTH FUND on behalf of each eligible employee who has completed thirty (30) days of employment. For the purposes of determining eligibility for HEALTH FUND contributions, employment begun (or ended) on or before the 15th day of the month shall be considered as begun (or ended) on the 16th day of the month, or thereafter, shall be considered as begun (or ended) on the first day of the following month.

Section (2)    The contributions made by the Employer shall be as follows:

**FULL-TIME**
Effective June 1, 2006        $400.00 per month
Effective June 1, 2007        $450.00 per month
Effective June 1, 2008        $500.00 per month
                              520.   current

**PART-TIME**
Effective January 1, 2007     $300.00 per month
Effective January 1, 2008     $325.00 per month
Effective January 1, 2009     $350.00 per month
                              362.   current

The Trustees of the Local 108 Health Fund reserve the right during the term of the Agreement to implement a Forty dollar ($40.00) per month, per employee contribution to pay for increases in medical premiums. Should such a deduction become necessary, the

6

Employer agrees to deduct from any employee contributions through payroll deductions and to forward said deduction to the Health Fund on a monthly basis.

Section (3)    The Employer shall continue to pay welfare contributions to the Health Plan for employees who have been employed for one (1) year or more and who were regularly employed for thirty-five (35) hours or more per week and who are out for illness for a period not to exceed seventeen (17) weeks in any one illness.

Section (4)    The Employer further agrees to make contributions to the State of New Jersey covering their employers for Unemployment Compensation and Temporary Disability Insurance Benefits.

Section (5)    The Employer further agrees to assume responsibility for any claims made to the Union's Health Plan by their employees for whom they have failed to properly report and pay.

Section (6)    If the Union establishes an "Enhanced Benefits Plan" and/or a "Supplementary Benefits Plan", which employees may select if they so desire, the Employee pays the entire cost of coverage for the Plan(s) and the Employer assumes no responsibility/liability for the Plan(s). The Employer does agree to deduct said costs for said Plan(s) through payroll deductions should the Employee request this method of payment.

## ARTICLE XIV – RETIREMNT FUND

Section (1)    The Employer agrees to contribute Eighty dollars ($80.00) per month to the Local 108 Retirement Fund on behalf of each eligible full time employee who has completed three (3) months employment. For the purpose of determining eligibility for contribution to the Local 108 Retirement Fund on behalf of each employee who has completed three (3) months of employment. For the purpose of determining eligibility for contribution to the Local 108 Retirement Fund, employment begun (or ended) on or before the fifteenth (15th) day of the month shall be considered as begun (or ended) on the first (1st) day of that same month; and employment begun (or ended) on the first (1st) day of the following month.

Section (1a)    The Employer agrees to the following increases:

| | |
|---|---|
| Effective January 1, 2007 | $85.00 per month |
| Effective January 1, 2008 | $90.00 per month |
| Effective January 1, 2009 | $95.00 per month |

Section (2)    The Employer agrees to contribute one-half (1/2) the hourly contribution listed in Section (1) above for each hour worked on behalf of each part-time employee who works in excess of one thousand (1,000) in 2003.

The Employer agrees to contribute the hourly contribution listed Section (1) above for each hour worked on behalf of part-time employee who works in excess of thousand (1,000) hours each year thereafter. The increases in the contribution on behalf of part-time employees shall be one half (1/2) of the increases made on behalf on the full-time employees.

Section (3)    The said Fund shall be used exclusively for the purpose of providing pensions to workers who are entitled thereto under the rules, regulations and by-laws of the said Fund, and for the operating and administrative expense in connection with the functioning of the said Fund.

Section (4)    The Employer and the workers shall be bound by, and shall comply with, all rules, regulations, by-laws and decisions issued, made or promulgated, or to be issued, made or promulgated by the Trustees of the said Fund, including any and all amendments and changes thereto. The Employer shall have no right, title, interest or claim, legal or equitable, in or to any payments made by it or by any other Employer to the said Fund, or in or to any of the funds or assets of the said Fund. No worker shall have any right, title, interest or claim, legal or equitable to the said Fund, or in or to any of the funds or assets of the said Fund, except as may be prescribed by the rules, regulations and by-laws of the said Fund.

Section (5)    The payments of the said Fund, as hereinto before provided, shall not constitute or be deemed wages due to the workers.

## ARTICLE XV – MANAGEMENT AND PREROGATIVES

Section (1)    Any and all rights and prerogatives of the Employer in the operation and management of his business and the direction of his employees existing prior to the execution of this agreement shall. Except as and to the extent specifically modified and limited by this Agreement, be and remain vested in the Employer.

Section (2)    The management of the business and the direction of the working forces is vested exclusively in the Employer. All employees shall perform any duties to which they may be assigned.

## ARTICLE XVI – SALE OF STORE

Where the Employer discontinues business or sells the store a store and/or stores to a bona fide purchaser for value and said Employer is no longer connected with said business or store in any way whatsoever, and the employees by the said Employer remain in the employ of the Employer until the store is closed, or the Employer severs his relationship with the said business, then and in that event, the employees so employed, who shall have been continuously employed for two (2) or more consecutive years prior thereto shall receive the following severance pay:

Two (2) but less that four (4) Consecutive Years: One (1) Week's Full Salary.

Four (4) but less that eight (8) Consecutive Years: Two (2) Week's Full Salary.
Eight (8) but less that Twelve (12) Consecutive Years: Three (3) Week's Full Salary.
Twelve (12) or more Consecutive Years: Four (4) Week's Full Salary.

## ARTICLE XVII – SEVERANCE PAY

Where the services of an employee are terminated through no fault of his own, then and in that event, the Employer shall pay on the date of such termination the following severance pay:

Two (2) but less that four (4) Consecutive Years: One (1) Week's Full Salary.
Four (4) but less that eight (8) Consecutive Years: Two (2) Week's Full Salary.
Eight (8) but less that Twelve (12) Consecutive Years: Three (3) Week's Full Salary.
Twelve (12) or more Consecutive Years: Four (4) Week's Full Salary.

## ARTICLE XV111 – WAIVER AND MODIFICATIONS

Section (1)    Any dispute between the Union and the Employer arising out of or under this Agreement shall first be taken up for amicable adjustment between the disputants.

Section (2)    If the parties to any such dispute shall be unable to adjust such dispute, either party may elect to have such dispute arbitrated in accordance with the arbitration machinery of the New Jersey State Board of Mediation.  Such election shall be made by making written application for arbitration to the New Jersey State Board of Mediation in accordance with its rules and regulations, and at the same time sending a signed copy of such application to the other party to such dispute.

Section (3)    All arbitration proceedings shall be conducted in accordance with the applicable provisions of the laws of the State of New Jersey, and the rules and regulations of the New Jersey State Board of Mediation, and the determination made in said arbitration proceedings shall be binding and enforceable in the manner provided by law.

Section (4)    Time shall be of the essence in any arbitration proceeding, and both parties to the dispute shall exert their best efforts in obtaining a speedy determination.

## ARTICLE XIX – GRIEVANCE AND ARBITRATION

Section (1)    Any dispute between the Union and Employer arising out of or under this Agreement shall first be taken up for amicable adjustment between the disputants.

Section (2)    If the parties to any such dispute shall be unable to adjust such dispute, either party may elect to have such dispute arbitration in accordance with the arbitration machinery of the New Jersey State Board Mediation.  Such election shall be made by making written application for arbitration to the New Jersey State Board of Mediation in

accordance with its rules and regulations, and at the same time sending a signed copy of such application to the other party to such dispute.

Section (3)    All arbitration proceedings shall be conducted in accordance with the applicable provisions of the laws of the State of New Jersey, and the rules and regulations of the New Jersey State Board of Mediation, and the determination made in said arbitration proceedings shall be binding and enforceable in the manner provided by law.

Section (4)    Time shall be of the essence in any arbitration proceeding, and both parties to the dispute shall exert their best efforts in obtaining a speedy determination.

## ARTICLE XX – NOTICES

Section (1)    All notices which either party shall desire to be required to give either party in accordance with the provisions hereof or in connection with the subject matter hereof, shall be in writing, duly signed by the party giving the notice and sent by registered mail addressed to the last known address of the party for whom such notice shall be intended.

Section (2)    Company policy changes shall be posted on bulletin boards.

## ARTICLE XXI – NO STRIKE – NO LOCKOUT

Section (1)    Neither the Union nor the employees shall conduct any strike, work stoppage or any kind of picketing during the term of this Agreement, except for failure of the Employer to comply with the final determination of a dispute made in accordance with the provisions of Article XX hereof.

Section (2)    The Employer shall not lock-out his employees during the terms of the Agreement, except for failure of the Union or of such employees to comply with a final determination of a dispute made in accordance with the provisions of Article XX hereof.

## ARTICLE XXII – TERM OF AGREEMENT

Section (1)    This Agreement shall become effective from the date of execution thereof, and shall remain operative and binding for a period of three years ending May 31, 2009. Thereafter, this Agreement shall be automatically renewed from year to year unless and until either party shall give notice to the other, not less than 60 days, by certified mail, a notice of election not to renew.

Section (2)    It is expressly understood and agreed that this contract shall apply in all of its terms to any store or stores now operated by the Employer in the State of New Jersey and also to any store or stores now which may hereafter be acquired by the employer in the State of New Jersey during the term of this contract, whether said store or stores be owned, maintained or operated in the name of the Employer herein or in the name of any other person, firm or corporation actually owned or controlled by the Employer herein.

# ARTICLE XXIII – WAGES

<u>Section (1)</u>     All employees on the payroll hired on or prior to June 1, 2003 shall receive increases as follows:

|                          |                   |
|--------------------------|-------------------|
| EFFECTIVE MAY 28, 2006   | $0.35 PER HOUR    |
| EFFECTIVE MAY 28, 2007   | $0.35 PER HOUR    |
| EFFECTIVE JUNE 1, 2008   | $0.30 PER HOUR    |

<u>Section (2)</u>     All employees hired after June 1, 2003 shall receive the aforementioned increases on their anniversary date if hire.

IN WITNESS WHEREOF, the Employer has hereunto affixed his signature or caused this Agreement to be executed by its duly authorized officers, and the Union has caused this Agreement to be executed by its duly authorized representatives the day and year first above written.

## LOCAL 108, RETAIL, WHOLESALE AND DEPARTMENT STORE UNION

Dated: _____11/3/06_____

_____

## SYMS CORPORATION

Dated: _____11/1/06_____

_____

# MEMORANDUM OF UNDERSTANDING BETWEEN SYMS CORP AND LOCAL 108, RWDSU, UFCW

The parties, after having met and conferred, have agreed to modify the collective bargaining agreement between the parties as follows:

Term of Contract

1. Three (3) year agreement – Effective November 1, 2010 – November 1, 2013.

2. The Employer agrees to contribute to the Local 108 Health Fund the following premiums:
   a. Effective January 1, 2011 – Full-time- $540.00       Part-time - $382.00
   b. Effective January 1, 2012 – Full-time - $560.00      Part-time - $392.00
   c. Effective January 1, 2013 – Full-time - $570.00      Part-time - $400.00

3. The Employer agrees to contribute to the Local 108 Retirement Fund on behalf of each eligible employee:
   a. Effective January 1, 2011 – Full-time - $100.00      Part-time - $50.00
   b. Effective January 1, 2012 – Full-time - $110.00      Part-time - $55.00
   c. Effective January 1, 2013 – Full-time - $110.00      Part-time - $55.00

4. Modify Article 14 to remove 2003.

5. Wage Increase:
   a. All employees hired by November 1, 2009 will receive an increase of $0.30 per hour on November 1, 2010.

      Effective November 1, 2011 - $0.30 per hour
      Effective November 1, 2012 - $0.30 per hour

   b. All employees hired after November 1, 2009 shall receive aforementioned increases on their anniversary date of hire.

# Local 1102 RWDSU

*Frank S. Bail*
*esident*

*Timothy Pranschke*
*Secretary-Treasurer*

*Gemma de Leon*
*Executive Vice President*



# COLLECTIVE BARGAINING AGREEMENT

# BETWEEN

# LOCAL 1102 RWDSU UFCW

# AND

# ASSOCIATED MEN'S WEAR
# RETAILERS OF NEW YORK, INC.

# NOVEMBER 1, 2010 – OCTOBER 31, 2013

Retail Wholesale & Department Store Union • United Food & Commercial Workers Union
1587 Stewart Avenue, Westbury, New York 11590 • Tel: (516) 683-1102 • Fax: (516) 832-9205

# TABLE OF CONTENTS

| ARTICLE | SUBJECT | PAGE # |
|:---:|---|:---:|
| 1 | Recognition | 1 |
| 2 | Union Security | 2 |
| 3 | Checkoff | 3 |
| 4 | Hiring | 3 |
| 5 | Trial Period | 3 |
| 6 | Hours of Work | 3 |
| 7 | Sunday Work | 4 |
| 8 | Overtime | 5 |
| 9 | Wage Increases | 5 |
| 10 | Holidays | 6 |
| 11 | Personal Days | 7 |
| 12 | Sick Leave | 7 |
| 13 | Vacations | 8 |
| 14 | Bereavement | 8 |
| 15 | Jury Duty | 9 |
| 16 | Severance Pay | 9 |
| 17 | Guarantee of Employment | 9 |
| 18 | RWDSU Committee On Political Education | 9 |
| 19 | Transfers | 9 |
| 20 | Vacancies | 10 |
| 21 | Sale of Store | 10 |
| 22 | Successors & Assigns | 10 |
| 23 | Non-Discrimination | 11 |
| 24 | Incapacitated Employees | 11 |
| 25 | Union Representative | 11 |
| 26 | No Private Agreements | 11 |
| 27 | No Strike - No Lockout | 11 |
| 28 | Discharge | 12 |
| 29 | Grievance Procedure | 12 |
| 30 | Health & Benefit Fund | 14 |
| 31 | Pension Fund | 15 |
| 32 | Breaches & Default | 17 |
| 33 | Management Rights | 17 |
| 34 | Duration | 17 |

# AGREEMENT

AGREEMENT made and entered into as of the first day of November, 2010, by Local 1102 RWDSU UFCW, with offices at 1587 Stewart Avenue, Westbury, New York, 11590 (hereinafter referred to as the "Union") and Associated Men's Wear Retailers of New York, Inc., with principal offices located at 6268 Jericho Turnpike, Suite 12A, Commack, New York, 11725 for and on behalf of those present and future members of the Association (herein referred to as the "Association"), who have authorized the Association to act as their bargaining agent, each of which is referred to as an Employer.

## WITNESSETH:

WHEREAS, the Union is a labor organization and represents more than a majority of the employees covered by this agreement; and

WHEREAS, the Association is a membership organization composed of retail stores having for its purpose the welfare of the industry and desires to establish and maintain proper and suitable working conditions in the said industry with the Union; and

WHEREAS, the Employers are members of the Association engaged in the retail business and have designated the Association as their collective bargaining representative;

NOW THEREFORE, in consideration of the aforesaid and of the mutual promises, conditions and covenants herein contained, it is hereby mutually agreed as follows:

## ARTICLE 1 - RECOGNITION

A.   The Employer recognizes the Union as the sole and exclusive collective bargaining agent representing all its sales and service employees, excluding guards, watchmen, clerical employees and supervisors as defined in the National Labor Relations Act, as amended and agrees to recognize and deal through the Association with such representatives of the Union as the Union may from time to time select.

B.   The term "employee" or "employees", as hereinafter used, shall mean and include all salespersons, selling managers, cashiers, stock clerks, tailors, wrappers, porters, receiving and shipping clerks and anyone performing the duty of waiting on trade in whole or in part, employed for full-time work, part-time work, extra work, temporary work, temporary extra work, in all of the present and future establishments owned or operated by the Employer as now and as it may hereinafter be constituted, whether individually or co-partnership or corporation. The provisions of this Agreement shall apply to all bargaining units, including, but not limited to, newly established or acquired business and consolidations of business.

C.  Where the Employer Member is a corporation, individual or co-partnership, no more than either two officers, directors, stockholders or co-partners shall be eligible to perform bargaining unit work except where more than two were recognized in the original agreement between the parties, then and in such an event, the number shall be the same as recognized in the said original agreement.

D.  Where an Employer Member expands or reorganizes as a result of which the number of officers, directors, stockholders or co-partners is increased beyond the number prescribed in its original agreement, provided such persons are currently associated with the Employer Member, upon application by the Association to the Union on behalf of said Employer, the Union shall allow such additional officers, directors, stockholders or co-partners to perform bargaining unit work.

E.  The term "Employer Member" or "Employer" as herein used means a Member of the Association.

F.  The parties agree that this Agreement is a multi-employer Agreement and may cover multi-locations of an Employer. All locations covered by the Agreement are recognized and considered by the parties to comprise a single bargaining unit.

## ARTICLE 2 - UNION SECURITY

A.  It shall be a condition of employment that all employees of the Employer covered by this Agreement who are members of the Union in good standing on the execution or effective date of this Agreement, whichever is later, shall remain members in good standing for the term of this Agreement, and those who are not members in good standing on the execution or effective date of this Agreement, whichever is later, shall on the thirtieth (30) day following the execution or effective date of this Agreement, whichever is later, become and remain members in good standing in the Union for the term of this Agreement. It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its execution or effective date, shall after thirty days from the beginning of such employment and for the term of this Agreement, become and remain members in good standing in the Union. The requirement of membership in good standing under this section is satisfied by the payment of the financial obligations of the Union's initiation fee and periodic dues uniformly required and to the extent permissible under the provisions of the Labor Management Relations Act, as amended, this section shall be deemed coextensive with applicable law.

B.  The Employer shall immediately upon hiring, notify the Union in writing of the employment of such employee covered by this Agreement giving the employee's name, address, date of hire and position. Upon notice from the Union to the Employer that any employee is delinquent in payment of, or has failed to tender the initiation fee and periodic dues uniformly required as condition of acquiring and/or retaining membership in good standing, the Employer shall immediately discharge such employee and advise the Union thereof in writing by Certified Mail, Return Receipt Requested, of its action taken.

## ARTICLE 3 – CHECKOFF

Upon the written authorization of the employees, the Employer shall deduct dues and initiation fees from the wages of such employees, and the Employer further agrees upon such deduction to transmit such sums collected by the Employer to the Union not later than the fifteenth (15th) day of the next month, following the month of the collection. The Employer shall hold such funds in trust for the Union and agrees to be personally liable for the same. The authorization shall not be irrevocable for a period of more than one (1) year, or beyond the termination date of the Agreement, whichever occurs sooner.

## ARTICLE 4 - HIRING

The Employer shall notify the Union when new employees are to be hired. The Union shall have the right to send applicants for the job or jobs, and the Employer agrees to interview such applicants and give the same interview considerations to union-sent applications as are given to applicants from other sources. The Employer reserves the right to finally pass on the qualifications and experience of all applicants for employment.

## ARTICLE 5 - TRIAL PERIOD

All employees shall be on trial period for the first ninety (90) days of employment. During such trial period, the employee may be discharged without further recourse. After the trial period, the employee shall be placed on the regular seniority list retroactive to the first date of hire.

## ARTICLE 6 - HOURS OF WORK

A.   The basic workweek for full-time employees employed in stores which opened prior to October 1, 1992 or were employed in any other store prior to July 15, 1994, shall be forty (40) hours per week during any five (5) days, Monday through Saturday.

B.   The basic workweek for full-time employees employed in stores which opened on or after October 1, 1992 or who are employed on or after July 15, 1994 in any other store shall be forty (40) hours per week during any five (5) days, Monday through Sunday.

C.   The hours shall be consecutive and no staggering of hours shall be permitted. A schedule of the working hours for employees shall be posted on the premises where the employees are employed no later than the Friday before the commencement of the next work week and such schedule shall be subject to inspection by the Union. Employees shall not be required to work more than nine (9) hours in one day with any one (1) meal period. In no event, however, shall the employee's work exceed forty (40) hours during any said five (5) days of said week. Each employee who

works a forty (40) hour week shall be entitled to one (1) night off. The employee who works forty-eight (48) hours shall be entitled to two (2) nights off. In each case, the Employer shall select the nights off. All meal periods referred to shall be for one (1) consecutive hour during the day. The maximum work hours provided herein shall be exclusive of all meal periods.

D.   An employee employed for fifteen (15) or less hours per week, shall, after thirty (30) days, be required to become a member of the Union but shall, at all times, be regarded as a temporary extra who may be discharged at any time by the Employer.

E.   An employee employed for more than fifteen (15) hours, but less than thirty (30) hours, shall be regarded as a regular part-time employee who shall be required to become a member of the Union after thirty (30) days. The Employer shall contribute to the Pension Fund after thirty (30) days of employment. Health & Benefit Fund contributions for such employees shall commence after ninety (90) days.

F.   Employees engaged for temporary-extra work during peak seasons, holidays, sale period, substitute for sick leave, vacations, etc. shall be designated as "temporary employees" who may be discharged at any time. After thirty (30) days such employee shall become a member of the Union in accordance with provisions of this Agreement.

## ARTICLE 7 - SUNDAY WORK

A.   If an Employer keeps a store open on Sundays and requires the services of his regular employees, employees employed in stores which opened prior to October 1, 1992 or were employed in any other store prior to July 15, 1994, shall report to work on a voluntary basis with the understanding that if they agree to work they shall be paid at the rate of time and one-half their straight time pay. Notwithstanding this provision, in the event that the regular employee does not accept the offer to work on Sunday, an employer may engage any employee not regularly employed by him for Sunday work at straight-time pay.

B.   If an employer keeps a store open on Sundays and requires the services of his regular employees, employees employed in stores which opened on or after October 1, 1992 or who were employed on or after July 15, 1994 in any other store, shall work on Sunday as part of a regular weekly schedule and be paid straight time pay.

C.   If a sufficient number of employees do not volunteer to work on a Sunday, the Employer may require, in reverse order of seniority, a sufficient number of employees to work in order to properly staff a store. In no event shall an employee who does not volunteer, be required to work more than two (2) Sundays per month.

## ARTICLE 8 - OVERTIME

A. Should the Employer require the services of an employee in excess of forty (40) hours per week as hereinabove provided, the Employer shall be required to pay for overtime at the rate of time and one-half of the weekly wage or weekly guarantee of said employee. Overtime is optional with the employee except as provided in subdivision C hereof. If an employee has exhausted all paid leave time, such employee shall not receive overtime pay until such employee actually works in excess of forty (40) hours.

B. It shall be optional for the employee to accept employment for the sixth day of work at overtime pay. If the Employer requests services of the employee for the sixth day, then and in that event it shall be obligatory for the Employer to provide, and the employee to work, a minimum of eight (8) hours on the said sixth day, for which the said employee shall be paid, at the hourly rate of time and one-half of his weekly wage or weekly guarantee. In requesting the employee to report for the sixth day of work, the Employer shall give prior reasonable notice of his intention to use the services of the said employee. Notice by Saturday night of the week prior shall be regarded as reasonable.

C. For the three weeks prior to Christmas and the two weeks prior to Father's Day, an employee, whose Employer requests services for the sixth day, will be required to work the sixth day, in which case, the Employer shall guarantee the employee eight (8) hours of work and the employee shall be required to work eight hours on the sixth day at time and one-half as provided.

## ARTICLE 9 - WAGE INCREASES

A. Employees hired before November 1, 2009 shall receive hourly wage adjustments effective November 1, 2010 of $.40/cents/hour for full-time employees and $.25/cents/hour for part-time employees. This wage adjustment is to be implemented as of the first payroll period after November 1, 2010. Employees hired on or after November 1, 2009 shall receive the foregoing stated increase as of the first payroll period following their first anniversary date of employment which anniversary date occurs during the period November 1, 2010 through October 31, 2011.

B. Employees hired before November 1, 2009 shall receive hourly wage adjustments effective November 1, 2011 of $.30/cents/hour for full-time employees and $.20/cents/hour for part-time employees. This wage adjustment is to be implemented as of the first payroll period after November 1, 2011. Employees hired on or after November 1, 2009 shall receive the foregoing stated increase as of the first payroll period following their anniversary date of employment which anniversary date occurs during the period November 1, 2011 through October 31, 2012.

C.  Employees hired before November 1, 2009 shall receive hourly wage adjustments effective November 1, 2012 of $.30/cents/hour for full-time employees and $.20/cents/hour for part-time employees. This wage adjustment is to be implemented as of the first payroll period after November 1, 2012. Employees hired on or after November 1, 2009 shall receive the foregoing stated increase as of the payroll period following their anniversary date of employment which anniversary date occurs during the period November 1, 2012 through October 31, 2013.

D.  New employees may be engaged at a salary no less than the applicable Minimum Wage and Hour Laws. However, those employees engaged at the applicable Minimum Wage and Hour rate, shall, after thirty (30) days, receive an increase of twenty (20¢) cents per hour.

## ARTICLE 10 - HOLIDAYS

A.  The Employer agrees to allow each regular employee employed more than thirty (30) days, the following holidays at average pay each year as provided herein. Part-time employees shall be paid in accordance with the average number of hours worked per week divided by five days.

    1.  There shall be six (6) "must" holidays which are:

| | |
|---|---|
| New Year's Day | Labor Day |
| Memorial Day | Thanksgiving Day |
| July 4th | Christmas Day |

B.  If the Employer keeps his store open on a "must" holiday, any regular employee employed prior to July 15, 1994 who works on that day shall receive double time pay in addition to regular pay for the said "must" holiday.

C.  If the Employer keeps his store open on a "must" holiday, any regular employee employed on or after July 15, 1994 who works on that day shall receive time and one-half pay in addition to regular pay for the said "must" holiday.

D.  Each employee hired prior to July 15, 1994 only, with the consent of the Employer, shall select two additional holidays for which he shall be paid average earnings. Such consent shall not be unreasonably withheld by the employer.

E.  Employees to be eligible for holiday pay for the foregoing holidays, shall be required to work the scheduled work day before and the scheduled work day after the holiday, unless the employee has good reason for the absence.

F.  Work on "must" holidays shall be voluntary, provided that if a sufficient number of employees do not volunteer to work on a holiday, the employer may require, in reverse order of seniority, a sufficient number of employees to work in order to properly staff a store.

G.    During a week where a contract holiday occurs, and unless excused by vacation or excused leave which shall count as worked time, employees shall be obliged to actively work a total of thirty-two (32) hours but shall receive the basic weekly salary for a forty (40) hour week. The schedule for the week shall be arranged accordingly by the Employer.

## ARTICLE 11 - PERSONAL DAYS

A.    The Employer agrees to allow each regular employee employed more than ninety (90) days, one (1) "personal day" with average pay, during the employee's first year of employment.

B.    Employees employed prior to July 15, 1994 after one (1) year or more shall receive a total of three (3) "personal days" with average pay each year.

C.    Employees employed on or after July 15, 1994 after one (1) year or more shall receive a total of two (2) personal days with average pay each year.

D.    Upon at least one (1) week's advance notice, an employee, with the consent of the employer, may use his personal day or days for observing any additional holidays, including religious holidays, not designated by the Employer. In designating his "personal day", the employee shall not choose a day during a period immediately preceding or during a peak season.

E.    Personal days must be taken during the year in which they are earned and the privilege of taking such personal days shall not be unreasonably withheld by the Employer.

F.    No employee may be deprived of the right to observe his religious holidays or Martin Luther King's Birthday.

## ARTICLE 12 - SICK LEAVE

A.    Every regular full-time or part-time employee shall be entitled to six (6) days sick leave during each contract year at average earnings. If, at the end of any contract year, an employee employed prior to July 15, 1994 has not used the full six (6) days sick leave, the Employer shall, within a reasonable time after the end of the contract year, not to exceed fourteen (14) days, pay the average pay for the number of sick leave days not used. Unused sick pay shall not be paid to employees hired on or after July 15, 1994.

B.    No sick leave shall be earned during a new employee's trial period. However, if the employee is continued in employment beyond the trial period, he shall receive retroactive to the first day of employment, one (1) day of sick leave for each two (2) months of employment, during his first year of employment.

C.  For purposes of this Article, the parties have agreed to modify the sick leave provision so to provide same on a calendar year instead of a contract year basis for accrual. Therefore, commencing April 1, 2011, employees will be entitled to four days (a prorated portion of the 2012 days) through December 31, 2011. As of January 1, 2012, the full entitlement will be deemed to have been earned for 2012 and such annually thereafter on a calendar year. It is the parties intent that no employee shall suffer a loss of sick days as a result of the conversion, nor will such change result in an increase in the number of sick days provided. For employees hired prior to July 15, 1994, who have not used up their sick leave by the December 31 year end, such unused sick leave will be paid to the employee by January 15 of the year then following.

## ARTICLE 13 - VACATIONS

A.  Regular full-time employees in the employ of the Employer on June 1st of the contract year shall be entitled to the following vacations during the months of June, July or August:

1.  Six (6) months but less than one (1) year as of June 1st: one (1) week with full pay.

2.  One (1) year but less than five (5) years as of June 1st: two (2) weeks with full pay.

3.  Five (5) years but less than twelve (12) years as of June 1st: three (3) weeks with full pay.

4.  Twelve (12) years or more as of June 1st: four (4) weeks with full pay.

The third week or fourth week of vacation need not be given consecutively with the first two (2) weeks of vacation period, provided that the employee shall receive the third week and/or the fourth week vacation, as designated by the Employer, before the end of the contract year.

B.  Employees working on straight salary plus commissions and/or P.M.'s shall receive pay for such vacations equivalent to their average earnings.

C.  In the event of a sale, bankruptcy, assignment or reorganization of an Employer, employees shall become immediately entitled to be paid pro rata vacation pay.

D.  Part-time employees in the employ of the Employer on June 1st shall be entitled to receive pro rata vacation based upon the average earnings.

## ARTICLE 14 - BEREAVEMENT

In the event of the death of an employee's spouse, mother, father, brother, sister, or child, the Employer will grant, upon the employee's request, three (3) days bereavement leave with pay.

## ARTICLE 15 - JURY DUTY

The Employer shall permit regular employees to serve on a Jury when called for that purpose. It is expected that employees who are called for service and are excused from their duties will return each day to the store as soon as possible after they are excused. The Employer agrees to pay such employees the difference between the amount received by said employees as compensation for Jury Duty and their straight-time pay for each day served to a maximum of thirty (30) days per contract year.

## ARTICLE 16 - SEVERANCE PAY

A.  Where the services of an employee are terminated through no fault of his own, then and in that event, the Employer shall pay on the date of such termination the following severance pay:

   1.  Two (2) but less than four (4) consecutive years:  One (1) week full salary.
   2.  Four (4) but less than eight (8) consecutive years: Two (2) weeks' full salary.
   3.  Eight (8) but less than twelve (12) consecutive years: Three (3) weeks' full salary.
   4.  Twelve (12) or more years:  Four (4) weeks' full salary.

## ARTICLE 17 - GUARANTEE OF EMPLOYMENT

The Employer agrees that each employee in its employ shall have fifty-two (52) consecutive weeks of employment during each year except as hereinafter modified.

## ARTICLE 18 - RWDSU COMMITTEE ON POLITICAL EDUCATION

The employer agrees to deduct and transmit to the RWDSU Committee on Political Education the amount specified from the wages of those employees who voluntarily authorize such contributions on the forms provided for that purpose by the RWDSU Committee on Political Education. These transmittals shall occur monthly and shall be accompanied by a list of the names of those employees for whom such deductions have been made and the amount deducted for each such employee.

## ARTICLE 19 - TRANSFERS

A.  If the Employer Member shall operate more than one store, it may transfer its employees from one to another, providing they are in the five boroughs of New York City. In the event that the Employer Member has additional stores outside of New York City, it is prohibited from transferring to the five New York City boroughs and reverse without the prior written consent of the Union.

B.  In the event that a store is closed or discontinued, the employees who are to be terminated shall be those with the least amount of seniority in all the Employer's stores; seniority rule shall prevail in the remaining store or stores.

## ARTICLE 20 - VACANCIES

Where the position occupied by an employee shall become vacant due to any cause whatsoever, the place of such employee shall forthwith be filled by another employee, except where the Employer is granted relief in accordance with subdivision 28(D) hereof.

## ARTICLE 21 - SALE OF STORE

A.     Where the Employer discontinues business or sells a store and/or stores to a bona fide purchaser for value and said Employer is no longer connected with said business or store in any way whatsoever, and the employees of the said Employer remain in the employ of the Employer until the store is closed, or the Employer severs his relationship with the said business, then and in that event, the employees so employed, who shall have been continuously employed for two (2) or more consecutive years prior thereto shall receive the following severance pay:

1. Two (2) but less than four (4) consecutive years: One (1) week full salary.

2. Four (4) but less than eight (8) consecutive years: Two (2) weeks' full salary.

3. Eight (8) but less than twelve (12) consecutive years: Three (3) weeks' full salary.

4. Twelve (12) or more consecutive years: Four (4) weeks' full salary.

## ARTICLE 22 - SUCCESSORS AND ASSIGNS

A.     Any Employer who is a bona fide purchaser for value of the fixtures, merchandise and/or lease, or who only buys the lease and fixtures of a store, agrees to be bound by all of the terms, covenants and conditions hereof at said store location for any employees engaged by him at the time of the purchase and any employees who may enter his employ subsequent to the date of purchase.

B.     This Agreement shall be binding on the Employer, its successors and assigns. In the event the Employer should sell or transfer all or part of his or its business, the Employer agrees to give to the Union reasonable notice of his or its intention to sell and shall require the purchaser, assignee or transferee to agree to accept and assume in writing all of the terms and conditions of this Agreement.

C.     If the Union disputes the fact that the sale is a bona fide sale, it shall so notify the Employer by certified mail, return receipt requested, within three (3) working days after receipt of written notice of the sale. The matter shall forthwith be submitted to arbitration, as herein provided, and only if the arbitrator finds the sale to be bona fide, then and only then shall the provisions of this Article protecting the purchaser apply.

## ARTICLE 23 - NON-DISCRIMINATION

The Employer and Union agree that all employees are guaranteed equality in all conditions of employment. The Employer shall not discriminate against any Employee on the basis of race, color, religion, sex, age, national origin, marital status, veteran status, disability, sexual orientation, or union membership.

## ARTICLE 24 - INCAPACITATED EMPLOYEES

Except as hereinafter provided, unless an incapacitated employee is cleared by a duly licensed physician to return to full-time active employment within 180 days from the commencement of his leave for illness, the Employer may terminate such employee. An employee must be actively employed as scheduled for no less than thirty days after return from such leave of absence before being eligible for additional leave for extended illness which cumulatively, in any yearly period may not exceed 180 days. However, the Employer shall continue to contribute to the Union Health and Pension Funds during the period of incapacity for such employee, not to exceed 180 days in any yearly period.

## ARTICLE 25 - UNION REPRESENTATIVE

The Employer shall permit the Union's business representative or any other duly authorized representative of the Union to visit its store or stores at any time for the purpose of interviewing or observing the employees in connection with performance of their work.

## ARTICLE 26 - NO PRIVATE AGREEMENTS

Neither the Association nor the Employer Member will negotiate nor make any agreement with employees, unless it shall be through duly authorized officers of the Union.

## ARTICLE 27 - NO STRIKE - NO LOCKOUT

The Union and the Employer mutually agree that there shall be no strike by the Union or lockout by the Employer during the life of this Agreement.

## ARTICLE 28 - DISCHARGE

A.    A regular employee may be discharged or suspended only for just cause. Written notice by the Association on behalf of the Employer Member to the Union shall be sent by certified mail within five (5) calendar days from the date of such discharge. Such notice to the Union reporting such discharge shall set forth the details impelling the reason for the discharge. (Slack season, however, shall not be deemed a cause or a reason for the discharge of a regular employee).

B.    Nothing in this Agreement shall be deemed or construed to limit or restrict the right of the employer to summarily discharge an employee for dishonesty, intoxication, drugs, or violent conduct in which event the Employer, through the Association, shall forthwith give notice to the Union by certified mail, return receipt requested. The Employee shall not be permitted on the premises from the date of discharge. If the Union challenges the justification of such discharge, it shall forthwith notify the Employer through the Association, by certified mail, return receipt requested, and shall immediately proceed to dispose of the matter by arbitration in the manner hereinafter provided.

C.    Disciplinary action taken by the Member Employer against an employee, if not challenged by the Employee and the Union within thirty (30) days after receipt of the notice as herein provided shall be deemed waived and may not thereafter be submitted to arbitration without the consent of the Association. Disciplinary notices or warnings in an employees personnel file shall be deemed "stale" after a period of twenty-four (24) months and may not be used to support a just cause termination of employment.

D.    Whenever it shall become necessary for an Employer to discharge an employee because the Employer seeks "relief", as both the Union and the Association understand that term, the employee last to enter the employ of the Employer shall be the one to be discharged. In other words, the seniority rule shall apply. Two weeks written notice by the Association on behalf of the Employer Member to the Union shall be sent by certified mail requesting the relief. Upon the refusal, failure or neglect of the Union to consent to such discharge within five (5) days after receipt of said notice, such employees nevertheless shall be continued in the employ of the Employer member until the matter shall have been determined by arbitration as hereinafter provided.

## ARTICLE 29 - GRIEVANCE PROCEDURE

A.    All disputes of whatsoever kind or nature, whether specifically provided for herein, or otherwise, arising out of or under this Agreement, or any dispute with respect to any other acts, conduct or relations between the Union, the Association and the Employer, shall be arbitrated before an arbitrator mutually agreed upon who shall be

designated as Impartial Chairman for such dispute. Notice of the demand for arbitration shall be given in writing by the party initiating such proceeding to the other, by certified mail, return receipt requested, addressed to the office of the other party hereto, which notice shall set forth the nature of the dispute to be arbitrated. The decision of the Impartial Chairman shall be final, conclusive and binding on all of the parties to this Agreement including the Employees and the Employer.

B.    The Impartial Chairman shall strive to hold a hearing within thirty (30) days after demand therefore by the aggrieved party.

C.    In the absence or inability of the parties to designate an arbitrator, the Union and the Association agree to submit to arbitration before an arbitrator designated by the New York State Employment Relations Board. Such designated arbitrator shall thereupon be the Impartial Chairman with respect to such dispute.

D.    Only the parties to this Agreement, to wit: the Union and/or the Association may request an arbitration hearing.

E.    The oath of the Impartial Chairman is expressly waived.

F.    The Impartial Chairman shall have the power to issue subpoenas for all books, vouchers, papers and records which may be pertinent to any of the issues in any proceeding had before him and may issue subpoenas directing the attendance before him of any persons whose testimony may be relevant in any such proceeding. The arbitrator, if he finds that there was not just cause to support the discharge or suspension of the employee may reinstate the employee and provide for payment of back pay as well as all benefits and fringe benefit fund contributions on behalf of the employee.

G.    In the event a party to arbitration shall default in appearing before an Impartial Chairman, the latter, in his discretion, is empowered to take proof of the party appearing and render an award thereon.

H.    The decision, order, direction or award of the Impartial Chairman shall be final, conclusive and binding on the parties and enforceable in any Court of competent jurisdiction.

I.    No employee or group of employees or Employer or group of Employers shall have the right to initiate an arbitration or commence any action or proceeding to enforce this Agreement. It is understood that the right to enforce this Agreement, including the rights of the employees and Employers thereunder, is vested exclusively in the Union and the Association. The parties agree that enforcing this Agreement shall be limited to the procedures provided in this Agreement.

J.    Before any matters in dispute are submitted to arbitration, the party raising such matter (i.e. the Union or the Association) shall advise the other of the dispute and the Association and the Union shall attempt to resolve the disputed matter, whereupon, if not resolved, the parties shall proceed to arbitration as herein provided.

Disputes and grievances arising between the parties involving discharge or suspension of an employee shall be submitted promptly, but in no case, later than thirty (30) calendar days after the receipt of notice of the occurrence of the alleged grievance by the party claiming to be aggrieved to the other party. An earnest effort shall be made promptly to adjust such matters in accordance with the following procedures unless otherwise agreed to by the parties. Discussions between the employee and the Employer concerning the dispute shall take place at a mutually convenient time which will not interfere with the normal operations of the business.

Step 1.   By conference between aggrieved employee, Steward and Store Manager within seven (7) calendar days of the date of the occurrence or notice to the employee whichever is later.

Step 2.   If not thus settled within seven (7) calendar days after it is first submitted, it shall be taken up by the business representative and designated Company official.

Step 3.   If the difference still remains unsettled after Step 2, the dispute may, at the request of the Union by mail (but not by an individual employee or groups of employees) or at the request of the Employer through the Association by mail, be submitted to arbitration within thirty (30) calendar days from receipt of the notice by the Union of the discharge or suspension, or the dispute shall be considered to be closed.

K.   The procedure established in this Agreement for the resolution of complaints, grievances or disputes shall be the exclusive means for the determination of any complaint, grievance or dispute, including, without limiting the generality of the foregoing strikes, stoppages, slow-downs and lockouts, and any and all claims, demands and actions arising therefrom. No proceeding or action in a court of law or equity or administrative tribunal shall be initiated other than to compel arbitration or to enforce the award of the Impartial Chairman. This paragraph shall constitute a complete defense and ground for a stay of any action or proceeding instituted contrary thereto.

## ARTICLE 30 - HEALTH & BENEFIT FUND

A.   Effective November 1, 2010, the employer shall continue to pay, on behalf of all employees covered by this Agreement, monthly on or before the 15th day of each month, to the Local 1102 Health and Benefit Fund the sum of $466.00 per month for all full time employees and the sum of $75.00 per month for all part-time employees working sixteen to twenty nine hours per week, including incapacitated employees covered under Article 24 of this Agreement.

B.   The Employer shall furnish a statement with the payment showing the employees employed and such other information as may be required by the Local 1102 Health and Benefit Fund to guarantee the sound and efficient operation of the Fund. Payments will be made for all new employees ninety (90) days from the commencement of their employment.

C.   The contributions shall be used by the Trustees for the benefits of said employees and their dependents, as they shall determine in their sole discretion. The contributions shall be held and managed under the terms and provisions of an Agreement and Declaration of Trust as amended, the original of which is on file in the office of the Local 1102 Health and Benefit Fund, and all amendments past, present and future made thereto from time to time. The parties hereto hereby confirm and approve the composition and membership of the Board of Trustees of the Local 1102 Health and Benefit Fund as now and hereinafter constituted.

D.   The Union, or the Local 1102 Health and Benefit Fund, in the name of its chairman, may intervene in any proceedings at law, in arbitration, in equity, bankruptcy or assignment for the purpose of effectuating the collection of any sums due from the Employer.

E.   The Employer shall make prompt payments in full to the Local 1102 Health and Benefit Fund. Failure to make such monthly payments by the above-mentioned dates shall constitute a material breach of this Agreement and, upon written notice to the Employer, the Union, not withstanding anything to the contrary contained in the Agreement, shall have the right to take such action as the Trustees and/or the Union deem necessary.

F.   In the event a dispute arises in connection with the failure of the Employer to make the required payments to the Fund provided for in this Agreement, and in the event that the Trustees and/or the Union submit the matter to arbitration, and if the arbitrator sustains the Union's position his decision shall contain a directive that the Employer pay all court costs, if any, costs of collection including attorney fees and interest at the legal rate.

G.   The Union and/or the Local 1102 Health and Benefit Fund shall have the right to examine all records of the Employer pertaining to the Employer's payment to the Health and Benefit Fund.

## ARTICLE 31 - PENSION FUND

A.   Effective November 1, 2010, the Employer shall continue to contribute monthly for each employee covered by this Agreement, on or before the 15th day of each month, to the Local 1102 Retirement Trust (herein referred to as the "Pension Fund") the sum of sixty-four dollars ($64.00) per month for full-time employees, and the sum of forty-six dollars ($46.00) per month for part-time employees working 16-29 hours per week, including incapacitated employees covered under Article 24 of this Agreement. Such monies shall be used by the Pension Fund to provide retirement and death benefits as the Pension Fund determines. Payments will be for full-time and regular part-time employees upon completion of their trial period and shall be made retroactive and effective as of the 31st day of employment.

B.   Effective November 1, 2011, the Employer shall contribute the sum of sixty-nine dollars ($69.00) monthly for each full-time employee and shall contribute the sum of fifty-one dollars ($51.00) monthly for each part-time employee.

C.   Effective November 1, 2012, the Employer shall contribute the sum of seventy-four dollars ($74.00) monthly for each full-time employee and shall contribute the sum of fifty-six dollars ($56.00) monthly for each part-time employee.

D.   The contributions shall be used by the Trustees for the benefits for said employees and their dependents as they shall determine in their sole discretion. The contributions shall be held and managed under the terms and provisions of an Agreement and Declaration of Trust as amended, the original of which is on file in the office of said Pension Fund, and all amendments past, present and future made thereto from time to time.  The parties hereto hereby confirm and approve the composition and membership of the Board of Trustees of such Pension Fund as now and hereinafter constituted.

E.   The Employer shall make available to the Union or the Pension Trustees, either by mail or directly to its authorized representatives, all wage and other data that said Trustees may require in connection with the sound and efficient operation of the Pension Fund.

F.   The Union or the Pension Fund in the name of its Chairman may institute or intervene in any proceedings at law, in equity, in arbitration, bankruptcy or assignment for the purpose of effectuating the collection of any sums due from the Employer.

G.   The Employer shall make prompt payments in full to the Pension Fund.  Failure to make such monthly payments by the above-mentioned dates shall constitute a material breach of this Agreement, and, upon written notice to the Employer, the Trustees and/or the Union, notwithstanding anything to the contrary contained in this Agreement, shall have the right to take such action as the Trustees and/or the Union deem necessary.

H.   In the event a dispute arises in connection with the failure of the Employer to make the required payments to the fund provided for in this Agreement, and in the event that the Trustees and/or the Union submit the matter to arbitration, and if the arbitrator sustains the Union's position, his decision shall contain a directive that the Employer pay all court costs, if any, costs of collection including attorney fees and interest at the legal rate.

I.   The Union and/or the Pension Fund shall have the right to examine all records of the Employer pertaining to the Employer's payment to the Pension Fund.

## ARTICLE 32 - BREACHES AND DEFAULTS

The failure of the Union or the Employer to insist upon a strict performance of any of the terms, conditions and covenants herein shall not be deemed a waiver of any rights or remedies that the Union or the Employer may have and shall not be deemed a waiver of any subsequent breach or default in the terms, conditions and covenants therein contained.

## ARTICLE 33 - MANAGEMENT RIGHTS

A.    Except as otherwise expressly provided, nothing in this Agreement shall be deemed to limit the Employer in any way of the exercise of the usual, regular and/or customary rights of Management, including, by way of example, to determine the size of the working force, to make appropriate changes, and to adopt and implement reasonable work rules and regulations.

B.    Any of the rights, powers, and authorities the Employer had prior to entering into this Agreement are retained by the Employer, except as expressly and specifically abridged, delegated, granted or modified.

## ARTICLE 34 - DURATION

All of the terms, covenants and conditions of this Agreement shall continue in full force and effect without change from November 1, 2010 and terminate October 31, 2013. Unless notice be given in writing by either party to the other by certified mail, return receipt requested, at least sixty (60) days prior to June 30, 2010 to modify the terms and conditions thereof, this Agreement shall be automatically extended from year to year thereafter, subject to the aforesaid sixty (60) day notice requirement.

IN WITNESS WHEREOF, the Union and the Association have caused these presents to be signed by their duly authorized representatives the day and year first above written.

**LOCAL 1102 RWDSU UFCW**         **ASSOCIATED MEN'S WEAR RETAILERS OF NEW YORK, INC.**

BY: _____     BY: _____

Frank S. Bail, President              Counsel - Director