# **EXHIBIT C**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                               :

In re:                                    :     Chapter 11
                                               :

FILENE'S BASEMENT, LLC, et al.,     :     Case No. 11-13511 (KJC)
                                             :

Debtors.[1]                      :     Joint Administration Pending
                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x    **Related Docket Nos. ____**

**ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 363(b), 364(e), 365(a) AND 554(a) AND BANKRUPTCY RULES 2002, 6003, 6004, 6006, AND 9014 (I) APPROVING THE DEBTORS' ENTRY INTO AGENCY AGREEMENT, (II) AUTHORIZING THE DEBTORS TO SELL CERTAIN MERCHANDISE THROUGH STORE CLOSING SALES, (III) AUTHORIZING THE DEBTORS TO ABANDON UNSOLD PROPERTY, (IV) WAIVING COMPLIANCE WITH CONTRACTUAL STORE CLOSING SALE RESTRICTIONS AND EXEMPTING THE DEBTORS FROM CERTAIN STATE WAGE PAY REQUIREMENTS AND LAWS RESTRICTING STORE CLOSING SALES, (V) AUTHORIZING THE DEBTORS' ASSUMPTION OF OCTOBER AGENCY AGREEMENT AND (VI) GRANTING RELATED RELIEF**

Upon the emergency motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (the "Debtors") for an order pursuant to sections 105, 363, 364, 365 and 554 of the Bankruptcy Code and Rules 2002, 6003, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking authority to, among other things, enter into an agency agreement with liquidators to conduct going of business, store closing, sale on everything or similar sales (collectively, "Store Closing Sales") at all of the Debtors' store locations, sell certain merchandise through store closing sales, abandon unsold property, waive compliance with contractual store closing sale restrictions and be exempt from certain state wage pay re-

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Filene's Basement, LLC (8277), Syms Corp. (5228), Syms Clothing, Inc. (3869), and Syms Advertising Inc. (5234). The Debtors' address is One Syms Way, Secaucus, New Jersey 07094.

[2]    All terms not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Agency Agreement, as applicable.

quirements and laws restricting store closing sales, and assume a separate agency agreement with liquidators to continue store closing sales at five (5) Filene's Basement locations; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157; and adequate notice of the Motion having been given and it appearing that no other notice need be given; and a joint venture of Gordon Brothers Retail Partners, LLC ("GBRP") and Hilco Merchant Resources, LLC ("Hilco" and, together with GBRP, the "Agent") and the Debtors having agreed upon terms and conditions for the Agent to act as the Debtors' exclusive agent to conduct sales (the "Sales") of the Debtors' merchandise ("Merchandise"), which terms and conditions are set forth in that certain Agency Agreement, made as of November 2, 2011, by and between the Agent and the Debtors, a copy of which is attached hereto as Exhibit A (the "Agency Agreement"); and the transaction represented by the Agency Agreement having been determined to be the highest and best offer for the Merchandise; and a hearing having been held on November ___, 2011 (the "Hearing") to consider the relief requested in the Motion and approval of the Agency Agreement; and upon the Declarations of Gary Binkoski, Steve Lipman, Bernard Douton and Ben Nortman, each dated November 2, 2011 and filed with the Motion; and upon all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors, their stakeholders and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is hereby

**FOUND AND DETERMINED that:**[3]

        A.      **Jurisdiction:** This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334. Approval of the Debtors' entry into the Agency Agreement, and the transactions contemplated thereby, is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (D), (N) and (O).

        B.      **Venue:** Venue of these cases in this District is proper pursuant to 28 U.S.C. § 1409(a).

        C.      **Statutory predicates:** The statutory predicates for the approval of the Agency Agreement and transactions contemplated therein are sections 105, 363, 364, 365 and 554 of the Bankruptcy Code and Rules 2002, 6003, 6004, 6006 and 9014 of the Bankruptcy Rules.

---

[3] The findings of fact and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

D.    **Notice:** Proper, timely, adequate and sufficient notice of the Motion and the Hearing has been provided in accordance with sections 102(1), 105(a), and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6003, 6004, 6006, and 9014 and under the circumstances. No other or further notice is required.  In particular, a reasonable opportunity to object or be heard regarding the relief requested in the Motion, the Agency Agreement, and the transactions pursuant thereto have been afforded to all interested persons and entities, including, without limitation, the following: (i) the Office of the United States Trustee; (ii) counsel to Bank of America, N.A. ("BofA" or the "Prepetition Lender"); (iii) all parties who are known to assert a security interest, lien, or claim in any of the Merchandise; (iv) all the Debtors' landlords; (v) all applicable federal, state, and local taxing authorities (collectively, the "Taxing Authorities"); (vi) all applicable county and state consumer protection agencies; (vii) all applicable state attorneys general; (viii) all other government agencies required to receive notice under the Bankruptcy Rules; and (ix) the parties included on the Debtors' lists of twenty (20) largest unsecured creditors, ((i) through (ix) collectively, the "Notice Parties"). Objections, if any, to the Motion have been overruled, withdrawn or resolved.

E.    **Bid Solicitation and Marketing Process:** As demonstrated by: (i) the declarations of Gary Binkoski, Bernard Douton, Steve Lipman and Benjamin Nortman filed with the Motion, (ii) the testimony and other evidence proffered or adduced at the Hearing and (iii) the representations of counsel made on the record at the Hearing, the Debtors have considered all of their strategic alternatives, including possible going concern transactions with one or more strategic or financial buyers and liquidation sales by one or more retail liquidators.  The Debtors also adequately marketed to potential liquidators the opportunity to serve as liquidation agent, conducting the bid solicitation and marketing process fairly, with adequate opportunity for par-

ties that either expressed an interest in acquiring or liquidating the Merchandise, or who the Debtors believed may have an interest in acquiring or liquidating the Merchandise, to submit competing bids. The Debtors and the Agent have respectively negotiated and undertaken their roles leading to the Sales and entry into the Agency Agreement in a diligent, noncollusive, fair and good faith manner.

F.     **Highest and Best Offer:** The Agency Agreement, including the form and total consideration to be realized by the Debtors pursuant to the Agency Agreement, (i) is the highest and best offer received by the Debtors for the Merchandise; (ii) is fair and reasonable; and (iii) is in the best interests of the Debtors, their estates, their creditors, their stakeholders, and all other parties in interest. There is no legal or equitable reason to delay entry into the Agency Agreement, and the transactions contemplated therein, including, without limitation, the Sales.

G.     **Business Judgment:** The Debtors' decision to (i) liquidate all their Merchandise pursuant to the Sales, (ii) enter into the Agency Agreement, and (iii) perform under and make payments required by the Agency Agreement, is a reasonable exercise of the Debtors' sound business judgment consistent with their fiduciary duties and is in the best interests of the Debtors, their estates, their creditors, their stakeholders, and all other parties in interest.

H.     **Personally Identifiable Information:** The transactions contemplated by the Agency Agreement do not include the sale or lease of personally identifiable information, as defined in section 101(41A) of the Bankruptcy Code ("Personally Identifiable Information").

I.     **Time of the Essence:** Time is of the essence in effectuating the Agency Agreement and proceeding with the Sales contemplated therein without interruption. Based on the record of the Hearing, the Motion, and for the reasons stated on the record at the Hearing, Sales under the Agency Agreement must be commenced on or before November 11, 2011 to

maximize the value that the Agent may realize from the Sales, and the value that the Debtors

may realize from entering into the Agency Agreement. Accordingly, the requested relief is nec-

essary to avoid immediate or irreparable harm as contemplated by Bankruptcy Rule 6003 and

cause exists to lift the stay to the extent necessary, as contemplated by Bankruptcy Rule 6004(h),

and to permit the immediate effectiveness of this Order.

J. **Sale Free and Clear:** A sale of the Merchandise other than one free and

clear of liens, claims, encumbrances, defenses (including, without limitation, rights of setoff and

recoupment) and interests, including, without limitation, security interests of whatever kind or

nature, mortgages, conditional sales or title retention agreements, pledges, deeds of trust, hy-

pothecations, liens, encumbrances, assignments, preferences, debts, easements, charges, suits,

licenses, options, rights-of-recovery, judgments, orders and decrees of any court or foreign or

domestic governmental entity, taxes (including foreign, state and local taxes), licenses, covenants,

restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement, contri-

bution, indemnity or exoneration, successor, product, environmental, tax, labor, ERISA,

CERCLA, alter ego and other liabilities, causes of action, contract rights and claims, to the full-

est extent of the law, in each case, of any kind or nature (including, without limitation, all

"claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether pre-

petition or post-petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or

unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded

or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory,

matured or unmatured, legal or equitable (collectively, "Encumbrances") and without the protec-

tions of this Order would hinder the Debtors' ability to obtain the consideration provided for in

the Agency Agreement and, thus, would impact materially and adversely the value that the Debt-

ors' estates would be able to obtain for the sale of such Merchandise. But for the protections afforded to the Agent under the Bankruptcy Code and this Order, the Agent would not have offered to pay the consideration contemplated in the Agency Agreement. Each entity with an Encumbrance upon the Merchandise, (i) has consented to the Sales or is deemed to have consented to the Sales; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code, and therefore, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Encumbrances who did not object, or who withdrew their objections, to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Therefore, approval of the Agency Agreement and the consummation of the Sales free and clear of Encumbrances, with the Liens to attach to the Proceeds in order of their priority, is appropriate pursuant to section 363(f) of the Bankruptcy Code and is in the best interests of the Debtors' estates, their creditors, their stakeholders, and other parties in interest.

K. **Arms-length Sale:** The consideration to be paid by the Agent under the Agency Agreement was negotiated at arm's-length and constitutes reasonably equivalent value and fair and adequate consideration for the Merchandise under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the laws of the United States, any state, territory, possession thereof or the District of Columbia. The terms and conditions set forth in the Agency Agreement are fair and reasonable under these circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying or defrauding any of the Debtors, their creditors, or other stakeholders under any applicable laws.

L.     **Good Faith:** The Debtors, their management and their board of directors, and the Agent, its members and their respective officers, directors, employees, agents and representatives, actively participated in the solicitation process and acted in good faith. The Agency Agreement between the Agent and the Debtors was negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud. The Debtors were free to deal with any other party interested in buying, or selling on behalf of the Debtors' estates, some or all of the Merchandise. Neither the Debtors nor the Agent has engaged in any conduct that would cause or permit the Sales, the Agency Agreement, or any related action or the transactions contemplated thereby to be avoided under section 363(n) of the Bankruptcy Code, or that would prevent the application of section 363(m) or section 364(e) of the Bankruptcy Code. The Agent has not violated section 363(n) of the Bankruptcy Code by any action or inaction. Specifically, the Agent has not acted in a collusive manner with any person and was not controlled by any agreement among bidders. The Agent's prospective performance and payment of amounts owing under the Agency Agreement are in good faith and for valid business purposes and uses.

M.     **Insider Status:** The Agent is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code. No common identity of directors or controlling stockholders exists between the Agent and the Debtors.

N.     **Security Interests:** The liens and superpriority administrative expense claims provided for in the Agency Agreement and this Order to secure the Debtors' obligations under the Agency Agreement to the Agent are necessary to induce the Agent to agree to terms for the Agency Agreement that maximize value for the Debtors' estates. The absence of such protections would impact materially and adversely the value available to the Debtors in the liquidation of their stores in partnership with a liquidation agent. But for the protections afforded to

the Agent under the Bankruptcy Code, this Order, and the Agency Agreement, the Agent would not have agreed to pay the Debtors the compensation provided for under the Agency Agreement. In addition, BofA, which holds a security interest in the property to which the Agent's security interests attach, has consented to the superpriority administrative expense claims and security interests provided for in the Agency Agreement, subject to the satisfaction of the conditions set forth in the Agency Agreement and in this Order.

O.   **Corporate Authority:** Each of the Debtors (i) has full corporate or other power to execute, deliver and perform its obligations under the Agency Agreement and all other transactions contemplated thereby, and entry into the Agency Agreement has been duly and validly authorized by all necessary corporate or similar action; (ii) has all of the corporate or other power and authority necessary to consummate the transactions contemplated by the Agency Agreement; and (iii) has taken all actions necessary to authorize and approve the Agency Agreement and the transactions contemplated thereby.  No consents or approvals, other than those expressly provided for herein or in the Agency Agreement, are required for the Debtors to consummate such transactions.

P.   **No Successor Liability:** No sale, transfer or other disposition of the Merchandise pursuant to the Agency Agreement or entry into the Agency Agreement will subject the Agent to any liability for claims, obligations or Encumbrances asserted against the Debtors or the Debtors' interests in such Merchandise by reason of such transfer under any laws, including, without limitation, any bulk-transfer laws or any theory of successor or transferee liability, antitrust, environmental, product line, de facto merger or substantial continuity or similar theories. The Agent is not a successor to the Debtors or their respective estates.

Q.     **No Sub Rosa Plan:** Entry into the Agency Agreement and the transactions contemplated thereby neither impermissibly restructures the rights of the Debtors' creditors and stockholders, nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors.  Entry into the Agency Agreement does not constitute a *sub rosa* chapter 11 plan.

R.     **Business Judgment Regarding October Agency Agreement**: The Debtors' decision to (i) immediately assume the Agency Agreement between Gordon Brothers Retail Partners, LLC, Syms and FB, dated as of October 12, 2011 (the "<u>October Agency Agreement</u>") and (ii) continue performance under and make payments required by the October Agency Agreement is a reasonable exercise of the Debtors' sound business judgment consistent with their fiduciary duties and is in the best interest of the Debtors, their estates, their creditors, their stakeholders, and all parties in interest.  The Debtors have demonstrated good, sufficient, and sound business purposes and justification for the relief approved herein on an emergency basis.  Immediate assumption of the October Agency Agreement is therefore justified pursuant to section 365 of the Bankruptcy Code.

**ORDERED, ADJUDGED AND DECREED that:**

A.     <u>**Motion Granted, Objections Overruled**</u>

1.     The relief requested in the Motion is granted as set forth herein.

2.     Any remaining objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections are overruled in all respects and denied.

B.     <u>**Agency Agreement Approved and Authorized**</u>

3.     The Agency Agreement is approved pursuant to section 363 of the Bankruptcy Code.  The Debtors are hereby authorized and empowered to enter into and perform under the

Agency Agreement, and the Agency Agreement (and each of the transactions contemplated therein) is hereby approved in its entirety and is incorporated herein by reference. The Agent is hereby appointed as the Debtors' exclusive agent for the limited purpose of conducting the Sales in accordance with the Agency Agreement. The failure to include specifically any particular provision of the Agency Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Agency Agreement and all of its provisions, payments and transactions, be authorized and approved in their entirety. Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

4.      All amounts payable to the Agent under the Agency Agreement shall be payable to the Agent without the need for any application of the Agent therefor or any further order of the Court.

5.      Subject to the provisions of this Order, the Debtors and the Agent are hereby authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the Sales in accordance with the Agency Agreement and the sale guidelines (the "SCS Guidelines") attached hereto as Exhibit B, which SCS Guidelines are hereby approved in their entirety.

6.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtors, the Agent and each of their respective officers, employees and agents are hereby authorized and directed to execute such documents and to do such acts as are necessary or desirable to carry out the Sales and effectuate the Agency Agreement and each of the transactions and related actions contemplated or set forth therein.

**C.      Use of Consideration**

7.      Immediately upon the Payment Date, the Debtors are authorized and directed to repay or cause to be repaid the Prepetition Lender Obligations, indefeasibly in full in cash by

making one or more payments to BofA, in such amounts as are necessary to repay in full in cash at closing all Prepetition Lender Obligations outstanding thereunder. Notwithstanding anything herein or in the Agency Agreement to the contrary, the Agent is authorized to pay the Payoff Amount (as defined below) in accordance with the Payoff Letter (as defined below) and such payment shall satisfy (a) the Agent's obligations to the Debtors under the Agency Agreement to the extent (but only to the extent) of the Payoff Amount, and (b) the Debtors' obligations under the BofA Loan Documents to the extent (but only to the extent) of the Payoff Amount. Without limiting the foregoing, and notwithstanding anything herein to the contrary, upon (i) receipt by BofA of a payoff letter, substantially in the form of Exhibit C hereto (the "Payoff Letter") ac-knowledged by the Debtors, (ii) the payment, in full, in cash of the Payoff Amount plus the Per Diem Amount (if any) (each as defined in the Payoff Letter), and (iii) entry of this Order, all liens on property of the Debtors relating to the Debtors' Prepetition Lender Obligations under the BofA Credit Agreement shall automatically, without further action by the Debtors or of BofA, be deemed released, and BofA shall take all reasonably requested actions to confirm the removal of any liens on the assets securing the claims under the BofA Credit Agreement, with related costs borne by the Debtors and the Termination Date (as defined in the BofA Credit Agreement) shall be deemed to have occurred. The Debtors are hereby authorized and directed to execute and de-liver the Payoff Letter to BofA.

**D.    Order Binding**

8.    This Order shall be binding upon and shall govern the acts of all entities, includ-ing, without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental de-partments, secretaries of state, federal, state and local officials, and all other persons and entities

who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Merchandise.

9. This Order and the terms and provisions of the Agency Agreement shall be binding on all of the Debtors' creditors and stakeholders (whether known or unknown), the Debtors, the Agent, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting an interest in the Merchandise, notwithstanding any subsequent appointment of any trustee, party, entity or other fiduciary under any section of the Bankruptcy Code with respect to the forgoing parties, and as to such trustee, party, entity or other fiduciary, such terms and provisions likewise shall be binding.

10. The provisions of this Order and the terms and provisions of the Agency Agreement, and any actions taken pursuant hereto or thereto shall survive the entry of any order which may be entered confirming or consummating any plan of the Debtors or converting the Debtors' cases from chapter 11 to chapter 7, and the terms and provisions of the Agency Agreement, as well as the rights and interests granted pursuant to this Order and the Agency Agreement, shall continue in these or any superseding cases and shall be binding upon the Debtors, the Agent and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code. Any trustee appointed in these cases shall be and hereby is authorized to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of this Order and the Agency Agreement, and the Agent and the trustee shall be and hereby are authorized to perform under the Agency Agreement upon the appointment of the trustee without the need for further order of this Court.

### E.    Good Faith

11.    Entry into the Agency Agreement is undertaken by the parties thereto in good faith, as that term is used in section 363(m) and section 364(e) of the Bankruptcy Code, and the Agent shall be protected by section 363(m) and section 364(e) of the Bankruptcy Code in the event that this Order is reversed or modified on appeal. The reversal or modification on appeal of the authorization provided herein to enter into the Agency Agreement and consummate the transactions contemplated thereby shall not affect the validity of such transactions, unless such authorization is duly stayed pending such appeal. The Agent is entitled to all of the benefits and protections afforded by section 363(m) and section 364(e) of the Bankruptcy Code. The transactions contemplated by the Agency Agreement are not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

### F.    Conduct of the Sales

12.    Except as otherwise provided in the Agency Agreement, pursuant to section 363(f) of the Bankruptcy Code, the Agent shall be authorized to sell all Merchandise and all Additional Agent Merchandise to be sold pursuant to the Agency Agreement free and clear of any and all Encumbrances, including, without limitation, the liens and security interests, as the same may have been amended from time to time, of BofA, whether arising by agreement, any statute or otherwise and whether arising before, on or after the date on which these chapter 11 cases were commenced, with any presently existing liens encumbering all or any portion of the Merchandise or the Proceeds thereof attaching only to the Guaranteed Amount or, subject to the Agent's liens granted pursuant to the Agency Agreement and this Order, other amounts payable to the Debtors under the Agency Agreement, with the same validity, force and effect as the same had with re-

spect to the Merchandise at issue, subject to any and all defenses, claims and/or counterclaims or setoffs that may exist. For the sake of clarity, however, nothing in this paragraph is intended to diminish the liens in favor of the Agent, as reflected in the Agency Agreement and this Order, that attach to, among other things, the proceeds of the Sales.

13.    If any person or entity that has filed financing statements, mortgages, construction or mechanic's liens, *lis pendens* or other documents or agreements evidencing liens on or interests in the Merchandise shall not have delivered to the Debtors, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of any Encumbrances which the person or entity has with respect to the Merchandise, each such person or entity is hereby directed to deliver all such statements, instruments and releases and the Debtors and the Agent are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity asserting the same and the Agent is authorized to file a copy of this Order which, upon filing, shall be conclusive evidence of the release and termination of such interest. Each and every federal, state and local governmental unit is hereby directed to accept any and all documents and instruments necessary or appropriate to give effect to the Sales and related transactions.

14.    All entities that are presently in possession of some or all of the Merchandise or other property in which the Debtors hold an interest that are or may be subject to the Agency Agreement hereby are directed to surrender possession of such Merchandise or other property to the Agent.

15.    The Debtors and the Agent shall not extend the Sale Termination Date beyond January 31, 2012 without notice and further order of the Court; provided, however, that no notice

or further order of the Court shall be required for one extension that does not exceed ten (10) days.

16.     Unless otherwise ordered by the Court, all newspapers and other advertising media in which the Sales may be advertised and all landlords are directed to accept this Order as binding authority so as to authorize the Debtors and the Agent to consummate the Agency Agreement and to consummate the transactions contemplated therein, including, without limitation, to conduct and advertise the Sales in the manner contemplated by the Agency Agreement, including, without limitation, conducting and advertising of the Sales (at the contractual rates charged to the Debtors prior to the Petition Date) in accordance with the Agency Agreement, the SCS Guidelines, and this Order.

17.     The Sales shall not be exempt from, and the Agent shall be required to comply with, laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws").  Nothing in this order shall alter or affect the Debtors' and Agent's obligations to comply with all federal safety laws and regulations.  Nothing in this Order shall be deemed to bar any Governmental Unit (as defined in Bankruptcy Code section 101(27)) from enforcing General Laws in this Court, subject to the Debtors' or the Agent's right to assert that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, or under this Order, Notwithstanding any other provision in this Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Order and/or any applicable law, or that enforcement of such applicable law is

preempted by the Bankruptcy Code. Nothing in this Order shall be deemed to have made any rulings on any such issues.

18. **Disputes Between Government Units and the Debtors or the Agent**. To the extent that the Sales are subject to any federal, state or local statute, ordinance, or rule, or licensing requirement solely directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or bulk sale laws (each a "GOB Law" and together, the "GOB Laws"), including laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the Sales and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply solely to Sales (collectively, the "Liquidation Laws"), the following provisions shall apply:

a. Provided that the Sales are conducted in accordance with the terms of this Order, the Agency Agreement and the SCS Guidelines, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtors shall be presumed to be in compliance with any GOB Laws and Liquidation Laws and, subject to Paragraph 18 herein, are authorized to conduct the Sales in accordance with the terms of this Order and the SCS Guidelines without the necessity of further showing compliance with any such GOB Laws and Liquidation Laws.

b. Within five (5) business days of entry of this Order, the Debtors shall serve copies of this Order, the Agency Agreement and the SCS Guidelines via e-mail, facsimile or regular mail, on: (i) the Attorney General's office for each state where the Sales are being held, (ii) the county consumer protection agency or similar agency for each county where the Sales

will be held, (iii) the division of consumer protection for each state where the Sales will be held; and (iv) the chief legal counsel for the local jurisdiction.

c.       To the extent there is a dispute arising from or relating to the Sales, this Order, the Agency Agreement, or the SCS Guidelines, which dispute relates to any GOB Laws or Liquidation Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to re-solve the Reserved Dispute. Any time within fourteen (14) days following service of this Order, any Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute to counsel for the Debtors and counsel for the Agent at the addresses set forth in the Agency Agreement so as to ensure delivery thereof within one (1) business day the-reafter. If the Debtors, the Agent and the Governmental Unit are unable to resolve the Reserved Dispute within fourteen (14) days of service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

d.       In the event a Dispute Resolution Motion is filed, nothing in this Order shall preclude the Debtors, a landlord, the Agent or other interested party from asserting (i) that the provisions of any GOB Laws and/or Liquidation Laws are preempted by the Bankruptcy Code or (ii) that neither the terms of this Order, nor the Debtors or the Agent's conduct pursuant to this Order, violates such GOB Laws and/or Liquidation Laws.

e.       Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Order or to limit or interfere with the Debtors' or the Agent's ability to conduct or to continue to conduct the Sales pursuant to this Order and the Agency Agreement, absent further order of this Court. The Court grants authority for the Debtors and the Agent to conduct the Sales pursuant to the terms of this Order, the Agency Agreement, and/or the SCS

Guidelines attached hereto and to take all actions reasonably related thereto or arising in connection therewith. A Governmental Unit shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Laws or the lack of any preemption of such GOB Laws and/or Liquidation Laws by the Bankruptcy Code. Nothing in this Order shall constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

        f.      If, at any time, a dispute arises between the Debtors and/or the Agent and a Governmental Unit as to whether a particular law is a GOB Law and/or Liquidation Law, and subject to any provisions contained in this Order related to GOB Laws and/or Liquidation Laws, then any party to that dispute may utilize the provisions of Subparagraph (c) hereunder by serving a notice to the other party and proceeding thereunder in accordance with those Paragraphs. Any determination with respect to whether a particular law is a GOB Law and/or Liquidation Law shall be made de novo.

        19.      Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the Sales, to the extent that disputes arise during the course of the Sales regarding laws regulating the use of sign-walkers and banner advertising, and the Debtors and the Agent are unable to resolve the matter consensually with the Governmental Unit, any party may request an immediate hearing with this Court pursuant to these provisions. Such hearing will, to the extent practicable, be scheduled initially within two (2) business days of such request. This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

        20.      Except to the extent of the reserved rights of Governmental Units expressly granted elsewhere in this Order, the Debtors and Agent are hereby authorized to take such ac-

tions as may be necessary and appropriate to implement the Agency Agreement and to conduct the Sales without necessity of further order of this Court as provided in the Agency Agreement or the SCS Guidelines, including, but not limited to, advertising the Sales as "going out of business," "total liquidation," "store-closing" or similar-themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall Stores), use of signwalkers and street signage.

21.     Except as expressly provided in the Agency Agreement, the Sales shall be conducted by the Debtors and the Agent notwithstanding any restrictive provision of any lease, sublease or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Sales, the rejection of leases, abandonment of Merchandise or "going dark" provisions.  The Agent and landlords of the Stores are authorized to enter into agreements ("Side Letters") between themselves modifying the SCS Guidelines without further order of the Court, and such Side Letters shall be binding as among the Agent and any such landlords, provided that nothing in such Side Letters affects the provisions of Paragraph 18.  In the event of any conflict between the SCS Guidelines and any Side Letter, the terms of such Side Letter shall control.

22.     Except as expressly provided for herein or in the SCS Guidelines, and except with respect to any Governmental Unit (as to which Paragraph 18 shall apply), no person or entity, including but not limited to any landlord, licensor, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Sales, or the advertising and promotion (including the posting of signs or the use of signwalkers) of such Sales, and all such parties and persons of every nature and description, including landlords, licensors, creditors and utility companies and all those acting for or on behalf of such parties, are prohibited and enjoined from (i) interfering in any way with, or otherwise impeding, the conduct of the Sales

and/or (ii) instituting any action or proceeding in any court or administrative body seeking an order or judgment against, among others, the Debtors, the Agent, or the landlords at the Debtors' Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sales or other liquidation sales at the Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease or license based upon any relief authorized herein.

### G.     <u>Waiver of Contractual Restrictions</u>

23.    Except as may otherwise expressly be provided for in this Order, the Agency Agreement or the SCS Guidelines, the Sales shall be conducted by the Debtors and the Agent notwithstanding any restrictive provision of any lease, sublease or other agreement relative to occupancy, including (without limitation) reciprocal easement agreements, agreements containing covenants, conditions and restrictions (including, without limitation, "go-dark provisions and landlord recapture rights), or other similar documents or provisions, affecting or purporting to restrict the conduct of the Sales, the rejection of leases, abandonment of assets or "going dark" provisions; <u>provided</u>, <u>however</u>, that nothing in this Order shall impact any objection a landlord may have to assumption, assignment or rejection of their respective lease or to any proposed cure amount or rejection damages claim in association with such assumption, assignment or rejection, all of which are expressly reserved.

24.    The Debtors are authorized, notwithstanding any restrictive provisions of any lease purporting to affect the Sales, to sell the Merchandise and to take such other and further actions as may be necessary to effectuate the Sale, provided that such actions to not violate the SCS Guidelines.

25.     The Agent shall have the right to use the Debtors' stores and all related store ser-

vices, furniture, fixtures, equipment and other assets of the Debtors for the purpose of conducting

the Sales, free of any interference from any entity or person, subject to compliance with the SCS

Guidelines and this Order and subject to Paragraphs 18 of this Order.

26.     Nothing in this Order shall (a) alter or affect the Debtors' obligations to comply

with section 365(d)(3) of the Bankruptcy Code or (b) alter or modify the rights of any lessor or

other counterparty to a lease with the Debtors to file an appropriate motion or otherwise seek ap-

propriate relief if the Debtors fail to comply with section 365(d)(3) of the Bankruptcy Code; pro-

vided that the conduct of the Sales in accordance with the SCS Guidelines shall not be a viola-

tion of section 365(d)(3) of the Bankruptcy Code.

27.     Pursuant to section 554(a) of the Bankruptcy Code, the Debtors and the Agent, as

applicable, are permitted to abandon property of the Debtors' estates in accordance with the

terms and provisions of the Agency Agreement, including those terms and provisions contained

in section 7 of the Agency Agreement, without incurring liability to any person or entity pro-

vided, however, that, unless the Agent otherwise consents, the Agent may only abandon property

located in any Store, warehouse/distribution center or home office on or after the applicable Sale

Termination Date.  In the event of any such abandonment, all applicable landlords shall be au-

thorized to dispose of such property without any liability to any individual or entity that may

claim an interest in such abandoned property, and such abandonment shall be without prejudice

to any landlord's right to assert any claim based on such abandonment and without prejudice to

the Debtors or other party in interest to object thereto. Before any sale, abandonment or other

disposition of the Debtors' computers (including software) and/or cash registers and any other

point of sale FF&E located at the Stores, warehouse/distribution centers or home office (collec-

tively, "POS Equipment") which may contain customer lists, identifiable personal and/or confidential information about the Debtors' employees and/or customers, or credit card numbers ("Confidential Information") takes effect, the Debtors shall remove or cause to be removed the Confidential Information from the POS Equipment.

28.     During the Sale Term, Agent shall accept Debtors' Gift Certificates (as defined in the Agency Agreement) that were issued by the Debtors prior to the Sale Commencement Date and the Debtors shall reimburse Agent for such amounts during the weekly sale reconciliation provided for in Section 8.7 of the Agency Agreement.  Agent shall accept returns of merchandise sold by Merchant prior to the Sale Commencement Date ("Returned Merchandise"), provided that such return is in compliance with Merchant's return policy in effect as of the date such item was purchased. The Debtors shall promptly reimburse Agent in cash for any refunds Agent is required to issue to customers in respect of any such returns.  All state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."  The Debtors and/or the Agent shall accept return of any goods purchased during the Sales that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, provided that the consumer must return the merchandise within twenty-one (21) days of their purchase, the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect.  The Debtors shall promptly reimburse Agent in cash for any refunds Agent is required to issue to customers in respect of any goods purchased during the Sales that contain such a latent defect.

29.     During the Sale Term, the Agent shall be granted a limited license and right to use the trade names, logos and customer lists, mailing lists, email lists, and web and social networking sites relating to and used in connection with the operation of the Debtors' businesses, solely in

connection with the Sales in accordance with the terms of the Agency Agreement; provided, however, that the Agent shall not retain Personally Identifiable Information from the Debtors.

30.     Except as expressly provided for in the Agency Agreement, nothing in this Order or the Agency Agreement, and none of the Agent's actions taken in respect of the Sales shall be deemed to constitute an assumption by Agent of any of the Debtors' obligations relating to any of the Debtors' employees.  Moreover, the Agent shall not become liable under any collective bargaining or employment agreement or be deemed a joint or successor employer with respect to such employees.

31.     To the extent that the Agent is owed the Adjustment Amount, and Debtors for any reason fail to timely pay to Agent the Adjustment Amount due, then to the extent that Lender receives, or has received, any funds on account of the Guaranteed Amount from Merchant or Agent, then the Lender shall, within two business days written demand by Agent, disgorge and remit the Adjustment Amount to Agent.

32.     The Agent shall not be liable for sales taxes except as expressly provided in the Agency Agreement and the payment of any and all sales taxes is the responsibility of the Debtors. The Debtors are directed to remit all taxes arising from the Sales to the applicable Taxing Authorities as and when due, provided that in the case of a bona fide dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the Taxing Authority.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor other than the Taxing Authority for which the sales taxes are collected.  The Agent shall collect, remit to the Debtors and account for sales taxes as and to the extent provided in the Agency Agreement.   Provided that Agent performs its responsibilities in accordance with Section 8.3 of the Agency Agreement,

Debtors (and Lender to the extent it has received any funds on account of Sales Taxes) shall indemnify and hold harmless Agent from and against any and all costs, including, but not limited to, reasonable attorneys' fees, assessments, fines or penalties which Agent sustains or incurs as a result or consequence of the failure by Debtors to promptly pay such taxes to the proper taxing authorities and/or the failure by Debtors to promptly file with such taxing authorities all reports and other documents required by applicable law to be filed with or delivered to such taxing authorities. If Agent fails to perform its responsibilities in accordance with Section 8.3 of the Agency Agreement, and provided Debtors comply with their obligations thereunder, Agent shall indemnify and hold harmless Debtors from and against any and all costs, including, but not limited to, reasonable attorneys' fees, assessments, fines or penalties which Debtors sustain or incur as a result or consequence of the failure by Agent to collect Sales Taxes and/or the failure by Agent to promptly deliver any and all reports and other documents required to enable Debtors to file any requisite returns with such taxing authorities.

33.     This Order does not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under State law.Subject to the terms set forth in the Agency Agreement, the Debtors and/or the Agent (as the case may be) are authorized and empowered to transfer Merchandise among the Debtors' distribution centers and/or the Stores. As set forth in Section 8.10 of the Agency Agreement, subject to compliance with applicable law, Agent shall, at Agents sole cost and expense, supplement the Merchandise in the Stores with goods of like kind and quality as are customarily sold in the Stores the "Additional Agent Merchandise"). Sales of Additional Agent Merchandise shall be run through the Debtors' cash register systems; provided however that Agent shall mark the Additional Agent Merchandise using either a "dummy" SKU

or department number or in such other manner so as to distinguish the sale of Additional Agenet Merchandise from the sale of Merchandise. Agent shall distinguish the sale of Additional Agent Merchandise from the sale of Merchandise in the Stores in a manner discernible by a reasonable customer. Agent shall provide reasonable customer notification in the Stores that Additional Agent Merchandise is being included in the Sales. Agent shall be authorized to purchase merchandise to be sold as Additional Agent Merchandise from any affiliate of Hilco or GBRP, provided, however, that any such purchase shall be made on terms that are either market or more favorable to Debtors than market.

34. The transactions under the Agency Agreement relating to the Additional Agent Merchandise are, and shall be construed as, a true consignment from the Agent to Debtors in all respects and not a consignment for security purposes. At all times and for all purposes (other than for purposes of Debtors' Sharing Amounts as contemplated by Section 3.2(a)), the Additional Agent Merchandise and their proceeds shall be the exclusive property of Agent, and no other person or entity (including without limitation Debtors, Lender, or any third person claiming a security interest in Debtors' property) shall have any claim against any of the Additional Agent merchandise or their proceeds. The Additional Agent Merchandise shall at all times remain subject to the exclusive control of Agent, and Agent shall, as an Expense of the Sale, insure the Additional Agent Merchandise and, if required, promptly file any proofs of loss with regard thereto with Agent's insurers.

35. The Agent is authorized to sell the Debtors' furniture, fixtures and equipment as provided for and in accordance with the terms of the Agency Agreement.

**H.** **Liens Granted To Agent**

36.     In accordance with the terms of the Agency Agreement and effective upon pay-

ment by Agent of the Initial Guaranty Payment and issuance of the Letter of Credit , pursuant to

section 364(d) of the Bankruptcy Code, Agent is hereby granted a valid and perfected first prior-

ity security interest in and lien upon (i) the Merchandise, (ii) Additional Agent Merchandise and

the proceeds thereof, (iii) all Proceeds (including, without limitation Credit Card Proceeds); (iv)

the commission regarding the sale or other disposition of Merchant Consignment Goods under

Section 5.4 of the Agency Agreement; (v) the commission regarding the sale or other disposition

of FF&E under Section 7 of the Agency Agreement; and (vi) any Sharing Amount, but only up

to the amount of Agent's percentage share of such Sharing Amount under Section 3.2(a) of the

Agreement, and all other "Agent Collateral" (as defined in the Agency Agreement)_ .  Pursuant

to section 364(c) of the Bankruptcy Code, any amounts owed to Agent under the Agreement

shall be granted the status of superpriority claims in these chapter 11 cases, junior only to any

superpriority claims of the Lender.

37.     The Agent's security interests and liens in the Agent Collateral created under the

Agency Agreement are (i) validly created, (ii) effective upon entry of the Approval Order, per-

fected, and (iii) senior to all other liens and security interests, provided however, that, until the

Debtors receive payment of the Guaranteed Amount, and the issuance of the Letter of Credit to

secure payment of Expenses due to Debtors under the Agency Agreement, the security interest

and liens granted to Agent under this Order shall remain junior and subordinate in all respects to

the security interests of Lender in the Agent Collateral (other than the Additional Agent Mer-

chandise in which Lender has no security interest or other lien) but solely to the extent and

amount of the unpaid portion of the Guaranteed Amount and Expenses, and upon payment of

the Guaranteed Amount and issuance of the Letter of Credit, any security interest or lien of the

Lender in the Agent Collateral shall be junior and subordinate in all respects to the security interest and liens of Agent.

38.     The security interests granted herein and in the Agency Agreement to the Agent shall be deemed properly perfected as and when they arise without the necessity of filing financing statements or other documentation.  To the extent that there may be an emergence from bankruptcy by the Debtors or a dismissal of the Debtors' Bankruptcy Cases, the Debtors, as requested by the Agent, are directed, at their cost, to file financing statements or other documentation evidencing the liens granted under the Agency Agreement and this Order.  The Agent is hereby authorized, but not required, to file a copy of this Order as conclusive evidence of the creation, attachment, perfection, validity, and extent of the Agent's security interests and liens in the Agent Collateral granted hereunder with all State filing and recording offices.

39.     The Agent's performance under the Agency Agreement will be made in good faith and for valid business purposes and uses, and accordingly the Agent is entitled to the protection and benefits of section 364(e) of the Bankruptcy Code. In the event any provisions of this Order are modified, amended or vacated by a subsequent order of the Bankruptcy Court or any other court, the Agent shall be entitled to the protections provided in section 364(e) of the Bankruptcy Code and no such appeal, modification, amendment or vacatur shall affect the validity and enforceability of the liens or priority authorized or created under the Agency Agreement or this Order.

### I.     Exemption from State Wage Pay Laws

40.     The Debtors shall not be required to comply with any State Wage Pay Laws and regulations when terminating employees.

41.     The Debtors, their officers, employees and agents are authorized to take or refrain from taking such acts as are necessary and appropriate to implement and effectuate the relief granted herein.

**J.      Assumption of October Agency Agreement Approved and Authorized**

42.     Pursuant to section 365 of the Bankruptcy Code, assumption by the Debtors of the October Agency Agreement, attached as <u>Exhibit D</u> hereto is hereby directed, authorized and approved as a valid exercise of the Debtors' business judgment.  Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors are authorized to continue performance under and make all payments required by the October Agency Agreement as and when due thereunder without further order of this Court.  The Debtors, the Agent and each of their respective officers, employees and agents be, and they hereby are, authorized to execute such documents and to do such acts as are necessary or desirable to effectuate the October Agency Agreement and the transactions contemplated therein.

43.     The store closing sales contemplated by the October Agency Agreement shall be afforded the protections set forth in, this Order and the SCS Guidelines.

**K.      Other Provisions**

44.     The Agent shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Agent, in each case, other than as expressly provided for in the Agency Agreement.  The Agent shall have no successor liability whatsoever with respect to any Encumbrances or claims of any nature that may exist against the Debtors, including, without limitation, the Agents shall not be, or to be deemed to be: (i) a successor in interest or within the meaning of any law, including any revenue, successor liability, pension, labor, ERISA, bulk-transfer, products liability, tax or environmental law, rule or regulation, or any theory of

successor or transferee liability, antitrust, environmental, product line, *de facto* merger or substantial continuity or similar theories; or (ii) a joint employer, co-employer or successor employer with the Debtors, and the Agent shall have no obligation to pay the Debtors' wages, bonuses, severance pay, vacation pay, WARN act claims (if any), benefits or any other payments to employees of the Debtors, including pursuant to any collective bargaining agreement, employee pension plan, or otherwise, except as expressly set forth in the Agency Agreement.

45.     The Agent is a party in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Order, the various procedures contemplated herein, any issues related to or otherwise connected to the Sales, and the Agency Agreement.

46.     Nothing contained in any plan confirmed in the Debtors' chapter 11 cases or any order of this Court confirming such plan or in any other order in these chapter 11 cases (including any order entered after any conversion of these cases to cases under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Agency Agreement or the terms of this Order.

47.     The Agency Agreement and related documents may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court; provided that any such modification, amendment or supplement is not material and adverse to the Debtors and; provided further, that at least three business days prior notice of any such modification, amendment or supplement shall be provided to the Creditors Committee, in the event one is formed.

48.     Except with respect to any Governmental Unit (as to which the provisions of Paragraph 18 shall apply), this Court shall retain exclusive jurisdiction with regard to all issues or disputes relating to this Order or the Agency Agreement, including, but not limited to, (i) any

claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and signwalker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional and non-deceptive manner; (ii) any claim of the Debtors, the landlords and/or the Agent for protection from interference with the Sales; (iii) any other disputes related to the Sales; and (iv) to protect the Debtors and/or the Agent against any assertions of Encumbrances. No such parties or person shall take any action against the Debtors, the Agent, the landlords or the Sales until this Court has resolved such dispute. This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

49.     Notwithstanding Bankruptcy Rules 4001 and 6004, or any other law that would serve to stay or limit the immediate effect of this Order, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Agent are free to perform under the Agency Agreement at any time, subject to the terms of the Agency Agreement.

50.     To the extent that anything contained in this Order explicitly conflicts with a provision in the Agency Agreement or the SCS Guidelines, this Order shall govern and control.

Dated:  Wilmington, Delaware
        November _____, 2011

_____
Honorable
UNITED STATES BANKRUPTCY JUDGE