IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
           :

In re:                      :      Chapter 11
           :

FILENE'S BASEMENT, LLC, et al.,    :      Case No. 11-13511 (___)
           :

           Debtors.[1]    :      Joint Administration Pending
           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## COMPENDIUM OF DOCKETED ORDERS[2] CITED IN DEBTORS' EMERGENCY MOTION FOR ENTRY OF ORDERS PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 363(b), 364(e), 365(a) AND 554(a), BANKRUPTCY RULES 2002, 6003, 6004, 9006(c), AND 9014 AND LOCAL RULES 2002-1 AND 9006-1 (A) SCHEDULING A HEARING AND APPROVING THE FORM AND MANNER OF NOTICE OF THE MOTION AND HEARING THEREON AND (B)(I) APPROVING THE DEBTORS' ENTRY INTO AGENCY AGREEMENT, (II) AUTHORIZING THE DEBTORS TO SELL CERTAIN ASSETS THROUGH STORE CLOSING SALES, (III) AUTHORIZING THE DEBTORS TO ABANDON UNSOLD PROPERTY, (IV) WAIVING COMPLIANCE WITH CONTRACTUAL STORE CLOSING SALE RESTRICTIONS AND EXEMPTING THE DEBTORS FROM STATE WAGE PAY REQUIREMENTS AND LAWS RESTRICTING STORE CLOSING SALES, (V) AUTHORIZING THE DEBTORS' ASSUMPTION OF OCTOBER AGENCY AGREEMENT AND (VI) GRANTING RELATED RELIEF

Dated: Wilmington, Delaware
       November 2, 2011

                  */s/ Mark S. Chehi*
                  Mark S. Chehi (I.D. No. 2855)
                  Skadden, Arps, Slate, Meagher & Flom LLP
                  One Rodney Square
                  P.O. Box 636
                  Wilmington, Delaware 19899-0636
                  (302) 651-3000
                  (302) 651-3001

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Filene's Basement, LLC (8277), Syms Corp. (5228), Syms Clothing, Inc. (3869), and Syms Advertising Inc. (5234). The Debtors' address is One Syms Way, Secaucus, New Jersey 07094.

[2]    For the sake of brevity, the Debtors have not included the exhibits annexed to such orders. All such exhibits are available upon request to the Debtors' proposed counsel.

- and -

Jay M. Goffman
Mark M. McDermott
David M. Turetsky
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036-6522
(212) 735-3000
(212) 735-2000

Proposed Counsel for Debtors and Debtors in Possession

# INDEX

**CASES**                                                                    **TAB NO.**

In re Borders Grp., Inc.,
    No. 11-10614 (MG) (Bankr. S.D.N.Y. July 21, 2011)
    (Docket No. 1377) ................................................................................................1

In re Borders Grp., Inc.,
    No. 11-10614 (MG) (Bankr. S.D.N.Y. Feb. 18, 2011)
    (Docket No. 91) ..................................................................................................2

In re Blockbuster Inc.,
    No. 10-14997 (BRL) (Bankr. S.D.N.Y. Jan. 20, 2011)
    (Docket No. 86) ..................................................................................................3

In re Finlay Enters., Inc.,
    No. 09-14873 (JMP) (Bankr. S.D.N.Y. Sept. 25, 2009)
    (Docket No. 262) ................................................................................................4

In re Goody's LLC,
    No. 09-10124 (Bankr. D. Del. Jan. 21, 2009)
    (Docket No. 122) ................................................................................................5

In re Goody's LLC,
    No. 09-10124 (CSS) (Bankr. D. Del. Jan. 15, 2009)
    (Docket No. 72) ..................................................................................................6

In re KB Toys Inc.,
    No. 08-13269 (KJC) (Bankr. D. Del. Dec. 18, 2008)
    (Docket No. 102) ................................................................................................7

In re Circuit City Stores, Inc.,
    No. 08-35653 (KRH) (Bankr. E.D. Va. Nov. 10, 2008)
    (Docket No. 82) ..................................................................................................8

In re Linens Holding Co.,
    No. 08-10832 (Bankr. D. Del. Oct. 28, 2008)
    (Docket No. 1998) ..............................................................................................9

In re Steve & Barry's Manhattan LLC,
    No. 08-12579 (ALG) (Bankr. S.D.N.Y. Aug. 22, 2008)
    (Docket No. 628) ..............................................................................................10

<u>In re Whitehall Jewelers Holdings, Inc.</u>,
     No. 08-11261 (KG) (Bankr D. Del. Aug. 8, 2008)
     (Docket No. 543) ...................................................................................................11

<u>In re Goody's Family Clothing, Inc.</u>,
     No. 08-11133 (CSS) (Bankr D. Del. June 13, 2008)
     (Docket No. 116) ...................................................................................................12

<u>In re Linens Holding Co.</u>,
     No. 08-10832 (CSS) (Bankr. D. Del. May 30, 2008)
     (Docket No. 513) ...................................................................................................13

<u>In re Sharper Image Corp.</u>,
     No. 08-10322 (KG) (Bankr. D. Del. May 30, 2008)
     (Docket No. 763) ...................................................................................................14

TAB 1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| **BORDERS GROUP, INC.,** *et al.,*[1] | Case No. 11-10614 (MG) |
| Debtors. | (Jointly Administered) |

## ORDER APPROVING AGENCY AGREEMENT, <u>STORE CLOSING SALES AND RELATED RELIEF</u>

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in

possession (the "<u>Debtors</u>") for an order pursuant to sections 105, 363 and 365 of the Bankruptcy

Code and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>") seeking approval of, among other things, the sale of certain of the Debtors'

assets free and clear of Encumbrances (as defined herein), and authority to enter into an agency

agreement with liquidators to conduct going out of business sales at all of the Debtors' store

locations; and it appearing that the relief requested is in the best interests of the Debtors' estates,

their creditors, and other parties in interest; and it appearing that this Court has jurisdiction over

this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and it appearing that consideration of the Motion

and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157; and adequate

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Borders Group, Inc. (4588); Borders International Services, Inc. (5075); Borders, Inc. (4285); Borders Direct, LLC (0084); Borders Properties, Inc. (7978); Borders Online, Inc. (8425); Borders Online, LLC (8996); and BGP (UK) Limited.

[2] All terms not otherwise defined herein shall have the meanings assigned to them in the Motion or the Agency Agreement, as applicable.

notice of the Motion having been given and it appearing that no other notice need be given; and a

joint venture (the "Agent") composed of Hilco Merchant Resources, LLC, SB Capital Group,

LLC, Tiger Capital Group, LLC, Gordon Brothers Retail Partners, LLC and Great American

Group W.F. LLC and the Debtors having agreed upon terms and conditions for the Agent to act

as the Debtors' exclusive agent to conduct sales (the "Sales") of certain of the Debtors' assets

("Assets"), which terms and conditions are set forth in that certain Agency Agreement, dated

July 13, 2011, by and between the Agent and the Debtors, a copy of which is attached hereto as

Exhibit A (the "Agency Agreement"); and the transaction represented by the Agency Agreement

having been determined to be the highest and best offer for the Assets; and a hearing having been

held on July 14, 2011, whereupon the Court entered an Order approving bidding procedures and

the Debtors' designation of the Agency Agreement as a stalking horse bid [Docket No. 1253]

(the "Sale Procedures Order"); and a hearing having been held on July 21, 2011 (the "Sale

Hearing") to consider the remaining relief requested in the Motion and approval of the Agency

Agreement; and appearances of all interested parties having been noted on the record of the Sale

Hearing; and upon the Declarations of Richard Klein and Holly Etlin, each dated June 30, 2011

and filed with the Motion; and upon all of the proceedings had before the Court; and the Court

having found and determined that the relief sought in the Motion is in the best interests of the

Debtors, their estates, their creditors, and all parties in interest and that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefore, it is hereby

**FOUND AND DETERMINED THAT:**[3]

A. **Jurisdiction:** This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1134. Approval of the Debtors' entry into the Agency Agreement, and the transactions contemplated thereby is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) , (D), (N) and (O).

B. **Venue:** Venue of these cases in this district is proper pursuant to 28 U.S.C. § 1409(a).

C. **Statutory predicates:** The statutory predicates for the approval of the Agency Agreement and transactions contemplated therein are sections 105, 363, 364 and 554 of the Bankruptcy Code and Rules 2002, 4001, 6004 and 9014 of the Bankruptcy Rules.

D. **Notice:** Proper, timely, adequate and sufficient notice of the Motion and entry into the Agency Agreement, and the Sale Hearing has been provided in accordance with sections 102(1), 105(a), and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004, and in compliance with the Sale Procedures Order. No other or further notice is required.

E. **Opportunity to be Heard:** A reasonable opportunity to object or be heard regarding the relief requested in the Motion, the Agency Agreement, and the transactions pursuant thereto has been afforded to all interested persons and entities, including, without limitation, the following: (i) the Office of the United States Trustee, (ii) counsel to General Electric Capital Corporation and GA Capital LLC, as agents (in such capacity, together, the "DIP

---

[3] The findings of fact and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

3

Agents") for the lenders party to the DIP Credit Agreement;[1] (iii) counsel to the Creditors'

Committee, (iv) all parties who are known to assert a security interest, lien, or claim in any of the

Assets, (v) all the Debtors' landlords, (vi) all applicable federal, state, and local taxing authorities

(collectively, the "Taxing Authorities"), (vii) all applicable county and state consumer protection

agencies, (viii) all applicable state attorneys general, (ix) all other government agencies required

to receive notice under the Bankruptcy Rules and (x) all other applicable parties in interest,

including all entities on the 2002 service list as of the date of entry of the Sale Procedures Order

((i) through (x) collectively, the "Notice Parties"). Objections, if any, to the Motion have been

overruled, withdrawn or resolved.

F. **Marketing Process:** As demonstrated by: (i) the declarations of Holly

Felder Etlin and Richard Klein filed with the Motion, (ii) the testimony and other evidence

proffered or adduced at the Sale Hearing and (iii) the representations of counsel made on the

record at the Sale Hearing, the Debtors have thoroughly marketed the Assets and have conducted

the bidding solicitation fairly, with adequate opportunity for parties that either expressed an

interest in acquiring or liquidating Assets, or who the Debtors believed may have an interest in

acquiring or liquidating the Assets, to submit competing bids. The Debtors and the Agent have

respectively negotiated and undertaken their roles leading to the Sales and entry into the Agency

Agreement in a diligent, noncollusive, fair and good faith manner.

G. **Highest and Best Offer:** The Agency Agreement attached hereto as

**Exhibit A**, including the form and total consideration to be realized by the Debtors pursuant to

---

[1] The term "DIP Credit Agreement" has the meaning given to it in the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (1) Approving Postpetition Financing, (2) Authorizing Use of Cash Collateral, (3) Granting Liens and Providing Superiority Administrative Expense Status, (4) Granting Adequate Protection, and (5) Modifying Automatic Stay* (Docket No. 404) (the "Final DIP Order').

the Agency Agreement, (i) is the highest and best offer received by the Debtors for the Assets, (ii) is fair and reasonable, and (iii) is in the best interests of the Debtors, their estates, their creditors and all other parties in interest.  There is no legal or equitable reason to delay entry into the Agency Agreement, and the transactions contemplated therein, including, without limitation, the Sales.

H.     **Business Judgment:**  The Debtors' decision to (i) enter into the Agency Agreement, and (ii) perform under and make payments required by the Agency Agreement, is a reasonable exercise of the Debtors' sound business judgment consistent with their fiduciary duties and is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

I.     **Personally Identifiable Information:**  The transactions contemplated by the Agency Agreement do not include the sale or lease of personally identifiable information, as defined in section 101(41A) of the Bankruptcy Code ("Personally Identifiable Information") (or assets containing personally identifiable information).

J.     **Time of the Essence:**  Time is of the essence in effectuating the Agency Agreement and proceeding with the Sales contemplated therein without interruption.  Based on the record of the Sale Hearing, the Motion, and for the reasons stated on the record at the Sale Hearing, Sales under the Agency Agreement must be commenced on or before July 22, 2011 to maximize the value that the Agent may realize from the Sales, and the value that the Debtors may realize from entering into the Agency Agreement.  Accordingly, cause exists to lift the stay to the extent necessary, as contemplated by Bankruptcy Rule 6004(h) and permit the immediate effectiveness of this Order.

K.     **Sale Free and Clear:**  A sale of the Assets other than one free and clear of liens, claims, encumbrances, defenses (including, without limitation, rights of setoff and recoupment) and interests, including, without limitation, security interests of whatever kind or nature, mortgages, conditional sales or title retention agreements, pledges, deeds of trust, hypothecations, liens, encumbrances, assignments, preferences, debts, easements, charges, suits, licenses, options, rights-of-recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state and local taxes), licenses, covenants, restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement, contribution, indemnity or exoneration, successor, product, environmental, tax, labor, ERISA, CERCLA, alter ego and other liabilities, causes of action, contract rights and claims, to the fullest extent of the law, in each case, of any kind or nature (including, without limitation, all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether pre-petition or post-petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, matured or unmatured, legal or equitable (collectively, "Encumbrances") and without the protections of this Order would hinder the Debtors' ability to obtain the consideration provided for in the Agency Agreement and, thus, would impact materially and adversely the value that the Debtors' estates would be able to obtain for the sale of such Assets.  But for the protections afforded to the Agent under the Bankruptcy Code and this Order, the Agent would not have offered to pay the consideration contemplated in the Agency Agreement.  In addition, each entity with an Encumbrance upon the Assets, (i) has consented to the Sales or is deemed to have consented to the Sales, (ii) could be compelled in a

legal or equitable proceeding to accept money satisfaction of such interest, or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code, and therefore, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Encumbrances who did not object, or who withdrew their objections, to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Therefore, approval of the Agency Agreement and the consummation of the Sales free and clear of Encumbrances is appropriate pursuant to section 363(f) of the Bankruptcy Code and is in the best interests of the Debtors' estates, their creditors and other parties in interest.

L. **Arms-length Sale:** The consideration to be paid by the Agent under the Agency Agreement was negotiated at arm's-length and constitutes reasonably equivalent value and fair and adequate consideration for the Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the laws of the United States, any state, territory, possession thereof or the District of Columbia. The terms and conditions set forth in the Agency Agreement are fair and reasonable under these circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying or defrauding any of the Debtors or their creditors under any applicable laws.

M. **Good Faith:** The Debtors, their management and their board of directors, and the Agent, its members and their respective officers, directors, employees, agents and representatives, actively participated in the bidding process and acted in good faith. The Agency Agreement between the Agent and the Debtors was negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud. The Debtors were free to deal with any other party interested in buying or selling on behalf of the Debtors' estates some or all of the Assets. Neither the Debtors nor the Agent has engaged in any conduct that would

cause or permit the Sales, the Agency Agreement, or any related action or the transactions

contemplated thereby to be avoided under section 363(n) of the Bankruptcy Code, or that would

prevent the application of section 363(m) of the Bankruptcy Code. The Agent has not violated

section 363(n) of the Bankruptcy Code by any action or inaction. Specifically, the Agent has not

acted in a collusive manner with any person and was not controlled by any agreement among

bidders. The Agent's prospective performance and payment of amounts owing under the

Agency Agreement are in good faith and for valid business purposes and uses. The Agent has

disclosed, to the Debtors, the Court, the DIP Agents and the Creditors Committee in these cases

that certain affiliates of Gordon Brothers Retail Partners, LLC and Great American Group W.F.

LLC hold debt under the DIP Credit Agreement and that DJM Realty, the Court-approved real

estate consultant for the Debtors, is an affiliate of Gordon Brothers Retail Partners, LLC.

N.     **Insider Status:** The Agent is not an "insider" as that term is defined in

section 101(31) of the Bankruptcy Code. No common identity of directors or controlling

stockholders exists between the Agent and the Debtors.

O.     **Security Interests:** The liens and superpriority administrative expense

claims provided for in the Agency Agreement and this Order to secure the Debtors' obligations

under the Agency Agreement to the Agent are necessary to induce the Agent to agree to terms

for the Agency Agreement that maximize value for the Debtors' estates. The absence of such

protections would impact materially and adversely the value available to the Debtors in the

liquidation of their stores in partnership with a liquidation agent. But for the protections afforded

to the Agent under the Bankruptcy Code, this Order, and the Agency Agreement, the Agent

would not have agreed to pay the Debtors the compensation provided for under the Agency

Agreement. In addition, the DIP Agents, which hold a security interest in the property to which

the Agent's security interests attach, have consented to the superpriority administrative expense claims and security interests provided for in the Agency Agreement, subject to the satisfaction of the conditions set forth in the Agency Agreement and in Paragraph 33 of this Order.

P.   **Corporate Authority:**  Each of the Debtors (i) has full corporate or other power to execute, deliver and perform its obligations under the Agency Agreement and all other transactions contemplated thereby, and entry into the Agency Agreement has been duly and validly authorized by all necessary corporate or similar action, (ii) has all of the corporate or other power and authority necessary to consummate the transactions contemplated by the Agency Agreement, and (iii) has taken all actions necessary to authorize and approve the Agency Agreement and the transactions contemplated thereby.  No consents or approvals, other than those expressly provided for herein or in the Agency Agreement, are required for the Debtors to consummate such transactions.

Q.   **No  Successor Liability:**  No sale, transfer or other disposition of the Assets pursuant to the Agency Agreement or entry into the Agency Agreement will subject the Agent to any liability for claims, obligations or Encumbrances asserted against the Debtors or the Debtors' interests in such Assets by reason of such transfer under any laws, including, without limitation, any bulk-transfer laws or any theory of successor or transferee liability, antitrust, environmental, product line, de facto merger or substantial continuity or similar theories.  The Agent is not a successor to the Debtors or their respective estates.

R.   **No Sub Rosa Plan**:  Entry into the Agency Agreement and the transactions contemplated thereby neither impermissibly restructure the rights of the Debtors'

creditors, nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. Entry into the Agency Agreement does not constitute a *sub rosa* chapter 11 plan.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

A.    **Motion Granted, Objections Overruled**

1.    The relief requested in the Motion is granted as set forth herein.

2.    Any remaining objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections are overruled in all respects and denied.

B.    **Agency Agreement Approved and Authorized**

3.    The Agency Agreement is approved pursuant to section 363 of the Bankruptcy Code. The Debtors are hereby authorized and empowered to enter into and perform under the Agency Agreement, and the Agency Agreement (and each of the transactions contemplated therein) is hereby approved in its entirety and is incorporated herein by reference. The failure to include specifically any particular provision of the Agency Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Agency Agreement and all of its provisions, payments and transactions, be authorized and approved in their entirety. Likewise, all of the provisions of this Order are nonseverable and mutually dependent. The entity name in the Agency Agreement named "Great American Group, LLC" is "Great American Group WF, LLC" and Great American Group WF, LLC is the party to the Agency Agreement.

4. All amounts payable to the Agent under the Agency Agreement shall be payable to the Agent without the need for any application of the Agent therefor or any further order of the Court.

5. Subject to the provisions of this Order, the Debtors and the Agent are hereby authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the Sales in accordance with the Agency Agreement and the sale guidelines (the "GOB Sale Guidelines") attached hereto as Exhibit B, which GOB Sale Guidelines are hereby approved in their entirety.

6. Pursuant to section 363(b) of the Bankruptcy Code, the Debtors, the Agent and each of their respective officers, employees and agents are hereby authorized and directed to execute such documents and to do such acts as are necessary or desirable to carry out the Sales and effectuate the Agency Agreement and each of the transactions and related actions contemplated or set forth therein.

**C. Use of Consideration**

7. Immediately upon the Payment Date, the Debtors are authorized and directed to (i) fully fund the Carve-Out to the Carve-Out Amount (each as defined in the DIP Credit Agreement) (the "Carve-Out Funding"); (ii) repay, or cause to be repaid, the DIP Obligations (as defined in the Final DIP Order) indefeasibly in full in cash by making one or more payments to the DIP Agents, for the benefit of the DIP Lenders (as defined in the Final DIP Order), in such amounts as are necessary to repay in full in cash at closing all DIP Obligations outstanding thereunder, including the cash collateralization of all L/C Reimbursement Obligations (as defined in the DIP Credit Agreement) and (iii) to fully fund the Ad Valorem Tax Reserve Funding (defined below). Notwithstanding anything herein or in the Agency Agreement to the contrary, the Agent is authorized to pay the Payoff Amount (as defined below) in accordance

with the Payoff Letter (as defined below) and such payment shall satisfy (a) the Agent's obligations to the Debtors under the Agency Agreement to the extent (but only to the extent) of the Payoff Amount, and (b) the Debtors' obligations under the DIP Loan Documents to the extent (but only to the extent) of the Payoff Amount. Following the Carve-out Funding, the DIP Agents and the DIP Lenders shall have no further funding or other obligation with respect to the Carve-Out and the obligations of the DIP Agents and the DIP Lenders under the Final DIP Order and the DIP Loan Documents (as defined in the Final DIP Order) with respect to the Carve-Out shall be, and shall be deemed to be, fully and finally discharged and satisfied. Neither Debtors nor the DIP Agents or the DIP Lenders shall have any obligation to fund the Working Capital Indemnity Account or Term B Indemnity Account (each as defined in the DIP Credit Agreement). Without limiting the foregoing, and notwithstanding anything herein to the contrary, upon (i) receipt by the DIP Agents of a payoff letter, substantially in the form of Exhibit C hereto (the "Payoff Letter") acknowledged by the Debtors, (ii) the payment, in full, in cash of the Payoff Amount plus the Per Diem Amount (if any) (each as defined in the Payoff Letter), and (iii) entry of this Order (the "Payoff Effective Time"), all liens on property of the Debtors relating to the Debtors' Obligations under the DIP Credit Agreement shall automatically, without further action by the Debtors, the DIP Agents or the DIP Lenders, be deemed released, and the DIP Agents shall take all reasonably requested actions to confirm the removal of any liens on the assets securing the claims under the DIP Credit Agreement, with related costs borne by the Debtors and the Termination Date (as defined in the DIP Credit Agreement) shall be deemed to have occurred. The Debtors are hereby authorized and directed to execute and deliver to the DIP Agents the Payoff Letter. The Working Capital Agent (as defined in the Final DIP Order) shall return to the Debtors cash from the cash collateralization of

L/C Reimbursement Obligations (as defined in the DIP Credit Agreement), or portions thereof in accordance with the provisions of the DIP Credit Agreement relating to the cash collateralization of Letter of Credit Obligations (as defined in the DIP Credit Agreement) or at such earlier time as determined by the Working Capital Agent.

8.     On the Payment Date, the Debtors shall establish a segregated account into which there shall be deposited an amount equal to $1.343 million to provide for the payment of claims or liens of Taxing Authorities holding Identified Prior Claims which are secured by Prepetition Permitted Liens (each as defined in the Final DIP Order) with respect to ad valorem and similar taxes (the "Ad Valorem Tax Reserve Funding").  These segregated funds shall be on the order of adequate protection and shall constitute neither the allowance of the claims of the Taxing Authorities, nor a cap on the amounts they may be entitled to receive and nothing in this Order shall be deemed to release any claims against the Debtors asserted by, or liens of, Taxing Authorities holding Identified Prior Claims which are secured by Prepetition Permitted Liens. Furthermore, the claims and liens of the Taxing Authorities shall remain subject to any objections any party would otherwise be entitled to raise as to the priority, validity or extent of such liens.  The Encumbrances of any such Taxing Authorities shall attach to the funds held in such segregated account in the same priority, validity and extent as the Prepetition Permitted Liens and no DIP Secured Party (as defined in the Final DIP Order) shall have any liability with respect to any such obligations or to provide for the payment of any such obligations.  The funds held in such segregated account may be distributed only upon agreement between the applicable Taxing Authority and the Debtors, in consultation with the Creditors Committee, or else by subsequent Order of the Court, upon a motion duly noticed to the applicable Taxing Authority. For the avoidance of doubt, nothing in this provision is intended to limit or alter the security

interest granted to the Agent in the Agency Agreement and this Order.

**D.      Order Binding**

9.      This Order shall be binding upon and shall govern the acts of all entities, including, without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Assets.

10.      This Order and the terms and provisions of the Agency Agreement shall be binding on all of the Debtors' creditors (whether known or unknown), the Debtors, the Agent, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting an interest in the Assets, notwithstanding any subsequent appointment of any trustee, party, entity or other fiduciary under any section of the Bankruptcy Code with respect to the forgoing parties, and as to such trustee, party, entity or other fiduciary, such terms and provisions likewise shall be binding.  The provisions of this Order and the terms and provisions of the Agency Agreement, and any actions taken pursuant hereto or thereto shall survive the entry of any order which may be entered confirming or consummating any plan of the Debtors or converting the Debtors' cases from chapter 11 to chapter 7, and the terms and provisions of the Agency Agreement, as well as the rights and interests granted pursuant to this Order and the Agency Agreement, shall continue in these or any superseding cases and shall be binding upon the Debtors, the Agent and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.  Any trustee appointed in these

cases shall be and hereby is authorized to operate the business of the Debtors to the fullest extent

necessary to permit compliance with the terms of this Order and the Agency Agreement, and

Agent and the trustee shall be and hereby are authorized to perform under the Agency

Agreement upon the appointment of the trustee without the need for further order of this Court.

**E.** **Good Faith.**

11.     Entry into the Agency Agreement is undertaken by the parties thereto in good

faith, as that term is used in section 363(m) of the Bankruptcy Code, and Agent shall be

protected by section 363(m) of the Bankruptcy Code in the event that this Order is reversed or

modified on appeal.  The reversal or modification on appeal of the authorization provided herein

to enter into the Agency Agreement and consummate the transactions contemplated thereby shall

not affect the validity of the such transactions, unless such authorization is duly stayed pending

such appeal.  The Agent is entitled to all of the benefits and protections afforded by section

363(m) of the Bankruptcy Code.  The transactions contemplated by the Agency Agreement are

not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

**F.** **Conduct of the Sales**

12.     Except as otherwise provided in the Agency Agreement, pursuant to section

363(f) of the Bankruptcy Code, the Agent shall be authorized to sell all Merchandise and other

Assets to be sold pursuant to the Agency Agreement free and clear of any and all Encumbrances,

including, without limitation, the liens and security interests, as the same may have been

amended from time to time, of the DIP Agents and the Debtors' prepetition lenders whether

arising by agreement, any statute or otherwise and whether arising before, on or after the date on

which this chapter 11 case was commenced, with any presently existing liens encumbering all or

any portion of the Assets or the Proceeds thereof attaching only to the Guaranteed Amount or,

subject to the Agent's liens granted pursuant to the Agency Agreement and this Order, other

amounts payable to the Debtors under the Agency Agreement (or, with respect to Identified Prior Claims secured by Prepetition Permitted Liens, attaching only to the Ad Valorem Tax Reserve Funding), with the same validity, force and effect as the same had with respect to the assets at issue, subject to any and all defenses, claims and/or counterclaims or setoffs that may exist. For the sake of clarity, however, nothing in this paragraph is intended to diminish the liens in favor of the Agent, as reflected in the Agency Agreement and this Order, that attach to, among other things, the proceeds of the Sales.

13.     If any person or entity that has filed financing statements, mortgages, construction or mechanic's liens, *lis pendens* or other documents or agreement evidencing liens on or interests in the Assets shall not have delivered to the Debtors, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of any Encumbrances which the person or entity has with respect to the Assets, each such person or entity is hereby directed to deliver all such statements, instruments and releases and the Debtors and the Agent are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity asserting the same and the Agent is authorized to file a copy of this Order which, upon filing, shall be conclusive evidence of the release and termination of such interest. Each and every federal, state and local governmental unit is hereby directed to accept any and all documents and instruments necessary or appropriate to give effect to the Sales and related transactions.

14.     All entities that are presently in possession of some or all of the Assets or other property in which the Debtors hold an interest that are or may be subject to the Agency Agreement hereby are directed to surrender possession of such Assets or other property to the Agent.

15.     The Debtors and the Agent shall not extend the Sale Termination Date beyond November 13, 2011 without notice and further order of the Court; provided, however, that no notice or further order of the Court shall be required for one extension that does not exceed ten (10) days.

16.     Unless otherwise ordered by the Court, all newspapers and other advertising media in which the Sales may be advertised and all landlords are directed to accept this Order as binding authority so as to authorize the Debtors and the Agent to consummate the Agency Agreement and to consummate the transactions contemplated therein, including, without limitation, to conduct and advertise the Sales in the manner contemplated by the Agency Agreement, including, without limitation, conducting and advertising of the Sales (at the contractual rates charged to the Debtors prior to the Petition Date) in accordance with the Agency Agreement, the GOB Sale Guidelines, and this Order.

17.     Nothing in this Order or the Agency Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) that any entity would be subject to as the owner, lessor, lessee, or operator of the property after the date of entry of this Order.  Nothing contained in this Order or in the Agency Agreement shall in any way (i) diminish the obligation of any entity to comply with environmental laws, or (ii) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code.  Nothing herein shall be construed to be a determination that the Agent is an operator with respect to any environmental law or regulation.  Moreover, the Sales shall not be exempt from, and the Agent shall be required to comply with, laws of general applicability, including, without limitation, public health and

safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws").  Nothing in this order shall alter or affect the Debtors' and Agent's obligations to comply with all federal safety laws and regulations. Specifically, the Debtors and the Agent must comply with all security requirements and federal regulations to obtain proper security badges or similar documentation necessary for entry and operation in airport terminals.  Nothing in this Order shall be deemed to bar any Governmental Unit (as defined in Bankruptcy Code section 101(27)) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' or the Agent's right to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Order, or otherwise, pursuant to Paragraph 18 hereunder.  Notwithstanding any other provision in this Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code.  Nothing in this Order shall be deemed to have made any rulings on any such issues.

18.  Disputes Between Government Units and the Debtors or the Agent.  To the extent that the Sales are subject to any federal, state or local statute, ordinance, or rule, or licensing requirement solely directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or bulk sale laws (each a "GOB Law," and together, the "GOB Laws"), including laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the Sales and including ordinances establishing license or permit requirements, waiting periods, time

limits or bulk sale restrictions that would otherwise apply solely to Sales (collectively, the "Liquidation Laws"), the following provisions shall apply:

a.      Provided that the Sales are conducted in accordance with the terms of this Order, the Agency Agreement and the GOB Sale Guidelines, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtors shall be presumed to be in compliance with any GOB Laws and Liquidation Laws and, subject to Paragraphs 17 and 18 herein, are authorized to conduct the Sales in accordance with the terms of this Order and the GOB Sale Guidelines without the necessity of further showing compliance with any such GOB Laws and Liquidation Laws.

b.      Within five (5) business days of entry of this Order, the Debtors shall serve copies of this Order, the Agency Agreement and the Sale Guidelines via e-mail, facsimile or regular mail, on: (i) the Attorney General's office for each state where the Sales are being held, (ii) the county consumer protection agency or similar agency for each county where the Sales will be held, (iii) the division of consumer protection for each state where the Sales will be held; (iv) the chief legal counsel for the local jurisdiction; and (v) airport authorities and the TSA.

c.      To the extent there is a dispute arising from or relating to the Sales, this Order, the Agency Agreement, or the GOB Sale Guidelines, which dispute relates to any GOB Laws or Liquidation Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any time within fifteen (15) days following service of this Order, any Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute to counsel for the Debtors and counsel for the Agent at the addresses set forth in the Agency Agreement so as to ensure delivery thereof within one (1) business day

thereafter.  If the Debtors, the Agent and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen (15) days of service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

        d.      In the event a Dispute Resolution Motion is filed, nothing in this Order shall preclude the Debtors, a landlord, the Agent or other interested party from asserting (i) that the provisions of any GOB Laws and/or Liquidation Laws are preempted by the Bankruptcy Code or (ii) that neither the terms of this Order, nor the Debtors or the Agent's conduct pursuant to this Order, violates such GOB Laws and/or Liquidation Laws.  Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Order or to limit or interfere with the Debtors' or the Agent's ability to conduct or to continue to conduct the Sales pursuant to this Order and the Agency Agreement, absent further order of this Court.  The Court grants authority for the Debtors and the Agent to conduct the Sales pursuant to the terms of this Order, the Agency Agreement, and/or the GOB Sale Guidelines attached hereto and to take all actions reasonably related thereto or arising in connection therewith.  The Governmental Unit shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Laws or the lack of any preemption of such GOB Laws and/or Liquidation Laws by the Bankruptcy Code.  Nothing in this Order shall constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

        e.      If, at any time, a dispute arises between the Debtors and/or the Agent and a Governmental Unit as to whether a particular law is a GOB Law and/or Liquidation Law, and subject to any provisions contained in this Order related to GOB Laws and/or Liquidation Laws, then any party to that dispute may utilize the provisions of Subparagraphs (b) and (c) hereunder

by serving a notice to the other party and proceeding thereunder in accordance with those Paragraphs. Any determination with respect to whether a particular law is a GOB Law and/or Liquidation Law shall be made de novo.

f. Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the Sales, to the extent that disputes arise during the course of the Sales regarding laws regulating the use of sign-walkers and banner advertising and the Debtors and the Agent are unable to resolve the matter consensually with the Governmental Unit, any party may request an immediate telephonic hearing with this Court pursuant to these provisions. Such hearing will, to the extent practicable, be scheduled initially within two (2) business days of such request. This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

19. Except to the extent of the reserved rights of Governmental Units expressly granted elsewhere in this Order, the Debtors and Agent are hereby authorized to take such actions as may be necessary and appropriate to implement the Agency Agreement and to conduct the Sales without necessity of further order of this Court as provided in the Agency Agreement or the GOB Sale Guidelines, including, but not limited to, advertising the Sales as "going out of business," "total liquidation," "store-closing" or similar-themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall Stores, and at enclosed mall Stores to the extent the applicable Store entrance does not require entry into the enclosed mall common area), use of signwalkers and street signage.

20. Except as expressly provided in the Agency Agreement, the Sales shall be conducted by the Debtors and the Agent notwithstanding any restrictive provision of any lease,

sublease or other agreement relative to occupancy affecting or purporting to restrict the conduct

of the Sales, the rejection of leases, abandonment of assets or "going dark" provisions.  The

Agent and landlords of the Stores are authorized to enter into agreements ("Side Letters")

between themselves modifying the GOB Sale Guidelines without further order of the Court, and

such Side Letters shall be binding as among the Agent and any such landlords, provided that

nothing in such Side Letters affects the provisions of Paragraphs 17 and 18.  In the event of any

conflict between the GOB Sale Guidelines and any Side Letter, the terms of such Side Letter

shall control.

21.     Except as expressly provided for herein or in the GOB Sale Guidelines, and

except with respect to any Governmental Unit (as to which Paragraphs 17 and 18 shall apply), no

person or entity, including but not limited to any landlord, licensor, or creditor, shall take any

action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the

Sales, or the advertising and promotion (including the posting of signs or the use of signwalkers)

of such Sales, and all such parties and persons of every nature and description, including

landlords, licensors, creditors and utility companies and all those acting for or on behalf of such

parties, are prohibited and enjoined from (i) interfering in any way with, or otherwise impeding,

the conduct of the Sales and/or (ii) instituting any action or proceeding in any court or

administrative body seeking an order or judgment against, among others, the Debtors, the Agent,

or the landlords at the Debtors' Stores that might in any way directly or indirectly obstruct or

otherwise interfere with or adversely affect the conduct of the Sales or other liquidation sales at

the Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease,

sublease or license based upon any relief authorized herein.

22.     The Agent shall have the right to use the Debtors' stores and all related store services, furniture, fixtures, equipment and other assets of the Debtors for the purpose of conducting the Sales, free of any interference from any entity or person, subject to compliance with the GOB Sale Guidelines and this Order and subject to Paragraphs 17 and 18 of this Order.

23.     Nothing in this Order shall (a) alter or affect the Debtors' obligations to comply with section 365(d)(3) of the Bankruptcy Code or (b) alter or modify the rights of any lessor or other counterparty to a lease with the Debtors to file an appropriate motion or otherwise seek appropriate relief if the Debtors fail to comply with section 365(d)(3) of the Bankruptcy Code; provided that the conduct of the Sales in accordance with the Sale Guidelines shall not be a violation of section 365(d)(3) of the Bankruptcy Code.

24.     Pursuant to section 554(a) of the Bankruptcy Code, the Debtors and the Agent, as applicable, are permitted to abandon property of the Debtors' estates in accordance with the terms and provisions of the Agency Agreement, including those terms and provisions contained in section 3.2 (b) of the Agency Agreement, without incurring liability to any person or entity provided, however, that, unless the Agent otherwise consents, the Debtors may only abandon property located in any Store on or after the applicable Sale Termination Date.  In the event of any such abandonment, all applicable landlords shall be authorized to dispose of such property without any liability to any individual or entity that may claim an interest in such abandoned property, and such abandonment shall be without prejudice to any landlord's right to assert any claim based on such abandonment and without prejudice to the Debtors or other party in interest to object thereto.

25.     Before any sale, abandonment or other disposition of the Debtors' computers (including software) and/or cash registers and any other point of sale Owned FF&E located at the

Stores (collectively, "POS Equipment") which may contain customer lists, identifiable personal and/or confidential information about the Debtors' employees and/or customers, or credit card numbers ("Confidential Information") takes effect, the Debtors shall remove or cause to be removed the Confidential Information from the POS Equipment.

26.     The Agent and the Debtors agree that no FF&E (which includes supplies) at Seattle's Best Coffee LLC ("SBC") Borders cafes will be sold without SBC's prior consent as to the protections, if applicable, of its trademarks, trade names and other propriety information / trade secrets under its licensing agreement with the Debtors, such consent not to be unreasonably withheld. Without limitation, the parties, including SBC, understand and agree that retail inventory and cafe supplies will be sold to consumers as part of the going out of business sale by Agent (but not in bulk to third parties), FF&E bearing SBC marks may be sold after being de-identified, and espresso machines may be sold after removal of any SBC marks and proprietary data (including computer chips).

27.     During the Sale Term, Agent shall accept Debtors' gift cards and Merchandise credits that were issued by the Debtors prior to the Sale Commencement Date and the Debtors shall reimburse Agent for such amounts during the weekly sale reconciliation provided for in Section 8.6 of the Agency Agreement. During the Sale Term, the Agent shall accept returns of merchandise sold by the Debtors prior to the Sale Commencement Date, provided that such return is accompanied by the original store register receipt and is otherwise in compliance with the Debtors' return and price adjustment policy in effect as of the date such item was purchased. The Debtors shall promptly reimburse Agent in cash for any refunds Agent is required to issue to customers in respect of any such returns. During the first fourteen (14) days after the Sale Commencement Date, the Agent shall honor the Borders Rewards Loyalty Plus Program,

provided that, the discount provided under such program will be limited to an additional 10% off purchases. From the Sale Commencement Date through July 31, 2011, the Agent shall accept Borders Bucks. In each case, the Debtors shall not pay or reimburse the Agent for the costs of honoring such program, such costs shall not be deemed "Expenses" under the Agency Agreement, and the Agent shall indemnify the Debtors for any costs or obligations the Debtors incur in connection with the Agent honoring of such programs. For the avoidance of doubt, Agent shall not be required to honor any other Borders Rewards or loyalty programs during the Sale Term.

28.     All state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales." The Debtors and/or the Agent shall accept return of any goods purchased during the Sales that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, provided that the consumer must return the merchandise within twenty-one (21) days of their purchase, the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect. The Debtors shall promptly reimburse Agent in cash for any refunds Agent is required to issue to customers in respect of any goods purchased during the Sales that contain such a latent defect.

29.     During the Sale Term, the Agent shall be granted a limited license and right to use the trade names, logos and customer, mailing and e-mail lists relating to and used in connection with the operation of the stores, solely for the purpose of advertising the Sales in accordance with the terms of the Agency Agreement; provided, however, that the Agent shall not receive Personally Identifiable Information from the Debtors.

30.     Except as expressly provided for in the Agency Agreement, nothing in this Order or the Agency Agreement, and none of the Agent's actions taken in respect of the Sales shall be deemed to constitute an assumption by Agent of any of the Debtors' obligations relating to any of the Debtors' employees.  Moreover, the Agent shall not become liable under any collective bargaining or employment agreement or be deemed a joint or successor employer with respect to such employees.

31.     The Agent shall not be liable for sales taxes except as expressly provided in the Agency Agreement and the payment of any and all sales taxes is the responsibility of the Debtors.  The Debtors are directed to remit all taxes arising from the Sales to the applicable Taxing Authorities as and when due, provided that in the case of a bona fide dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the Taxing Authority.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor other than the Taxing Authority for which the sales taxes are collected.  The Agent shall collect, remit to the Debtors and account for sales taxes as and to the extent provided in the Agency Agreement.  If Agent fails to perform its responsibilities in accordance with Section 8.3 of the Agency Agreement, Agent shall indemnify and hold harmless the Debtors from and against any and all costs, including, but not limited to, reasonable attorneys' fees, assessments, fines or penalties which the Debtors sustain or incur as a result or consequence of the failure by Agent to collect and/or remit Sales Taxes and/or the failure by Agent to promptly deliver any and all reports and other documents required to enable the Debtors to file any requisite returns with Taxing Authorities.  Funds used to repay the DIP Obligations (as defined in the Final DIP Order) and to cash collateralize Letters of Credit (as defined in the DIP Credit Agreement) as set forth in

paragraph 7 hereof constitute proceeds of the DIP Collateral (as defined in the Final DIP Order). This Order does not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law, and does not consitute a declaratory judgment with respect to any party's liability for taxes under State law.

32.     Subject to the terms set forth in the Agency Agreement, the Debtors and/or the Agent (as the case may be) are authorized and empowered to transfer Assets among the Debtors' distribution centers and/or the Stores. As set forth in the Agency Agreement, the Agent is authorized to include in the Sales (a) additional non-book merchandise procured by Agent which is of like kind and no lesser quality to the Merchandise located in the Stores (provided, however, that the aggregate Cost Value of such non-book items shall not exceed 3% of the aggregate Cost Value of the Merchandise included in the Sales) and (b) certain items of merchandise located on the Sale Commencement Date at a storage facility in North Carolina not to exceed $3,800,000 at cost, which items the Agent purchased in connection with the prior liquidation sales approved by the Court. The Agent is authorized to sell the Debtors' furniture, fixtures and equipment as provided for and in accordance with the terms of the Agency Agreement.

G.      **Liens Granted To Agent**

33.     In accordance with the terms of the Agency Agreement and effective upon issuance of the Letter of Credit and the Payment Date, pursuant to section 364(d) of the Bankruptcy Code, Agent is granted (x) a valid and perfected first priority security interest in and lien upon (i) the Merchandise, (ii) Books in Storage, (iii) Additional Agent Merchandise and the proceeds thereof, (iv) Agent Sale FF&E and the proceeds realized from the disposition of the Agent Sale FF&E, (v) proceeds realized from the disposition of the Corporate FF&E up to the amount of the Agent's disposition commission related to Corporate FF&E as provided for in Section 15.9 and (vi) the Proceeds, to secure all obligations of Merchant to Agent under the

Agency Agreement and (y) to secure Merchant's obligations pursuant to Section 3.3(e) of the

Agency Agreement to repay any Over Payment Amount to the Agent, a superpriority

administrative expense claim payable from, and a valid and perfected first priority security

interests in and lien upon, each of the following (as defined in the Agency Agreement[2]):  (i)

Intellectual Property, (ii) the Kobo Interest (which shall remain subject to its shareholder

agreement), (iii) proceeds of Real Property Leases, (iv) Corporate FF&E, (v) Merchant's

Additional Goods Recovery Amount, (vi) Merchant's portion of proceeds related to Merchant

Consignment Goods, (vii) the Recovery Amount and (viii) proceeds related to any the foregoing

(the "Over Payment Collateral"); provided, however, that the foregoing security interest and

administrative expense claims shall remain junior and subordinate in all respects to (a)

Merchant's rights to receive payment of the Guaranteed Amount, Agent Sale FF&E Guarantee

and, Expenses and any other undisputed amounts due from Agent to Merchant under the Agency

Agreement (collectively, the "Agent's Payment Obligations") and (b) the liens, security interests

and claims of the DIP Agents, on behalf of themselves and the DIP Lenders, to the extent of any

unpaid portion of Agent's Payment Obligations, if any.

   34.  The security interests granted herein and in the Agency Agreement to the Agent

shall be deemed properly perfected as and when they arise without the necessity of filing

financing statements or other documentation.  To the extent that there may be an emergence from

bankruptcy by the Debtors or a dismissal of the Debtors' Bankruptcy Cases, the Debtors, as

requested by the Agent, are directed, at their cost, to file financing statements or other

documentation evidencing the liens granted under the Agency Agreement and this Order.

---

[2] The Agency Agreement refers to the Asset Purchase Agreement located at Docket No. 1130 to define items (i), (ii) and (iii).

35.     Upon the earlier occurrence of (a) date of the Final Inventory Report as reviewed, verified and reconciled by Merchant and Agent and payment of any Over Payment Amount, if any, (b) Agent's express written waiver of its rights to the Over Payment Amount or (c) entry by the Court of an Order finding that the Merchant satisfied its obligations to the Agent pursuant to Section 3.3(e) of the Agency Agreement, (the "Over Payment Collateral Release Date"), the Agent's liens on the Over Payment Collateral shall be deemed automatically released and the Agent will immediately disburse all amounts held in the Over Payment Escrow (as defined below) to the Merchant.

36.     During the period commencing on the Sale Commencement Date and after payment of the Guaranteed Amount Deposit and Agent Sale FF&E Guarantee and ending on the Over Payment Collateral Release Date (a) the Merchant shall not sell, assign, abandon or otherwise dispose of any item of Over Payment Collateral without Agent's consent, which consent will not be unreasonably withheld, (b) the proceeds of the sale of any Over Payment Collateral shall be placed in a segregated account with Agent (the "Over Payment Escrow") and Agent's liens shall attach to such proceeds in the same priority, validity and extent they encumbered such collateral, (c) the Agent is authorized to hold all proceeds due to the Merchant with respect to the Recovery Amount, Merchant's Additional Goods Recovery Amount and Merchant's portion of proceeds related to Merchant Consignment Goods in the Over Payment Escrow and (d) in the event the Agent seeks to foreclose on its security interest in proceeds of Real Property Leases, then as part of the Agent's exercise of remedies thereupon, the Debtors shall assume and assign any Real Property Leases directed by the Agent; provided, that the Debtors shall not incur any out-of-pocket costs for such assumption or assigning and provided

<u>further</u>, that the foregoing shall not impair or waive the Debtors' rights to oppose any such foreclosure or to contest the Over Payment Amount.

37.     The Agent's performance under the Agency Agreement will be made in good faith and for valid business purposes and uses, and accordingly the Agent is entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.  In the event any provisions of this Order are modified, amended or vacated by a subsequent order of the Bankruptcy Court or any other court, the Agent shall be entitled to the protections provided in section 364(e) of the Bankruptcy Code and no such appeal, modification, amendment or vacatur shall affect the validity and enforceability of the liens or priority authorized or created under the Agency Agreement or this Order.

38.     **Releases.**  Effective as of the Payoff Effective Time, each of (x) the Debtors, on behalf of themselves and their respective estates, officers and directors (collectively, the "<u>Debtor Released Parties</u>" and each a "<u>Debtor Released Party</u>") and (y) the Creditors Committee shall be deemed to have released and discharged the DIP Agents and the DIP Lenders, and their respective officers and directors (collectively, the "<u>DIP Released Parties</u>" and each a "<u>DIP Released Party</u>") of and from any and all past, present and future actions, causes of action, demands, suits, claims, liabilities, Encumbrances, lawsuits, adverse consequences, amounts paid in settlement, costs, damages, debts, deficiencies, diminution in value, disbursements, expenses, losses and other obligations of any kind or nature whatsoever, whether in law, equity or otherwise (including, without limitation, any avoidance actions arising under Sections 541 through 550 of the Bankruptcy Code or applicable state law and any interest or other carrying costs, penalties, legal, accounting or other professional fees and expenses, and incidental, consequential and punitive damages payable to third parties), whether known or unknown, fixed

or contingent, direct, indirect, or derivative, asserted or unasserted, foreseen or unforeseen,

suspected or unsuspected, now existing, heretofore existing or which may hereafter accrue

against any of the DIP Released Parties, whether held in a personal or representative capacity,

and which are based on any act, fact event or omission or other matter, cause or thing occurring

at any time prior to and including the Payoff Effective Time in any way directly or indirectly

arising out of, connected with or relating to the DIP Credit Agreement, the other DIP Loan

Documents, the Final DIP Order and the transactions contemplated thereby, and all other

agreements, certificates, instruments and other documents and statements (whether written or

oral) related to any of the foregoing; provided, however, that nothing herein shall release any

DIP Released Party from any act or omission of such DIP Released Party to the extent that such

act or omission is determined in a final, non-appealable order or judgment of this Court or

another court of competent jurisdiction to have constituted gross negligence or willful

misconduct.  Effective as of the Payoff Effective Time, the DIP Released Parties shall be deemed

to have released and discharged the Debtor Released Parties and the Creditors Committee of and

from any and all past, present and future actions, causes of action, demands, suits, claims,

liabilities, Encumbrances, lawsuits, adverse consequences, amounts paid in settlement, costs,

damages, debts, deficiencies, diminution in value, disbursements, expenses, losses and other

obligations of any kind or nature whatsoever, whether in law, equity or otherwise, whether

known or unknown, fixed or contingent, direct, indirect, or derivative, asserted or unasserted,

foreseen or unforeseen, suspected or unsuspected, now existing, heretofore existing or which

may hereafter accrue against any of the Debtor Released Parties or the Creditors Committee,

whether held in a personal or representative capacity, and which are based on any act, fact event

or omission or other matter, cause or thing occurring at any time prior to and including the

Payoff Effective Time in any way directly or indirectly arising out of, connected with or relating to the DIP Credit Agreement, the other DIP Loan Documents, the DIP Final Order and the transactions contemplated thereby, and all other agreements, certificates, instruments and other documents and statements (whether written or oral) related to any of the foregoing; <u>provided, however,</u> that nothing herein shall release any Debtor Released Party or the Creditors Committee from any act or omission of such Debtor Released Party or the Creditors Committee to the extent that such act or omission is determined in a final, non-appealable order or judgment of this Court or another court of competent jurisdiction to have constituted gross negligence or willful misconduct, and <u>provided</u>, <u>further</u> that, notwithstanding anything to the contrary contained in this Order, the Payoff Letter or in any related document, (i)  the obligations and liabilities of the Debtors to the DIP Secured Parties under or in respect of the DIP Loan Documents insofar as such obligations and liabilities survive termination of the DIP Loan Documents or relate to cash collateralization of Letters of Credit shall continue in full force and effect in accordance with their terms, and (ii) the Debtors acknowledge and agree that their respective obligations and liabilities under the DIP Loan Documents, including without limitation the Final DIP Order, and the liens securing those obligations and liabilities (subject to this Order), shall be reinstated with full force and effect or in such amount as is refunded if, at any time on or after the Payoff Effective Time, all or any portion of the Payoff Amount or the Per Diem Amount paid to either DIP Agent, in each case on behalf of itself and the applicable DIP Lenders, is voided, rescinded or refunded for any reason, including, without limitation, reversal, modification or vacatur of the Final DIP Order, all as though such payment had not been made, but in all cases, including (i) and (ii) above, such liens being subordinated to the Agent's liens granted pursuant to the Agency Agreement and Paragraph 33 of this Order.  For the avoidance of doubt, the obligations of the

parties set forth in the Payoff Letter shall not be extinguished or affected by the foregoing releases.

H.    **Books-A-Million, Inc. Transaction**

39.    Without affecting any other provision in this Order, and to the extent such authorization is necessary, the Court hereby approves and authorizes the Agent to enter into a sale of inventory, furniture, fixtures and equipment to Books-A-Million, Inc. ("BAM") as a bulk sale pursuant to Section 3.2(b) of the Agency Agreement as described on the record at the hearing on this matter, but such sale shall occur only with the express written consent of the Debtors, the Committee and the Agent, which consent may be witheld for any reason.  The Debtors are authorized to assume and assign any or all of the leases (the "BAM Leases"), listed on **Exhibit D** hereto, to BAM, but only with the consent of the Debtors, the Committee and each landlord and other parties to the respective BAM Leases, which consent may be witheld for any reason.  Such assumptions and assignments shall (i) obligate BAM to pay all cure costs (including, but not limited to, rent, taxes and CAM charges) and (ii) include a release of the Debtors and the estates pursuant to 11 U.S.C. § 365(k).  Nothing herein shall preclude the Debtors from seeking to assume and assign the BAM Leases on a contested basis.  Any transaction with BAM shall be subject to the execution of definitive documentation acceptable in form and substance to BAM, the Debtors, the Committee and the Agent.

40.    In connection with and effective upon the closing of any transaction with BAM: (i) Agent shall no longer be responsible for any Expenses accruing after the closing with respect to any store that is the subject of the BAM Leases; and (ii) the Sale Term with respect to any store that is the subject of the BAM Leases shall be deemed automatically terminated without further action and Agent shall be excused from providing any notices otherwise required under the Order or the Agency Agreement.

41. Notwithstanding anything to the contrary in this Order, nothing in this Order shall be construed to give the Debtors or the Agent the power to convey any interest in or authorize the purchasers to use the trademarks, trade names, trade dress, trade secrets, and other intellectual property (collectively, the "SBC IP") of Seattle's Best Coffee LLC ("SBC"). To the extent that any purchaser takes custody of, or otherwise acquires control over, any property that is marked with, includes, or otherwise carries any instance of SBC IP, the purchaser shall have no greater rights in or to that property than the Debtors held after the effective date of rejection and termination of the licensing agreement between the Debtors and SBC. After entry of this Order, SBC will retain the power to enforce its rights with respect to the SBC IP against any purchaser and the Debtors, including the right to seek injunctive relief and damages for any violations of SBC's rights in the SBC IP (provided that remedies against the Debtors may be limited by applicable bankruptcy law, and this Order does not prejudice either SBC or the Debtors with respect to arguments about the extent and effect of applicable bankruptcy law).

42. The Bankruptcy Court for the Southern District of New York shall retain exclusive jurisdiction over any matters related to the BAM Transactions that may arise between BAM and any other party.

## I. Other Provisions

43. The Agent shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Agent, in each case, other than as expressly provided for in the Agency Agreement. The Agent shall have no successor liability whatsoever with respect to any Encumbrances or claims of any nature that may exist against the Debtors, including, without limitation, the Agents shall not be, or to be deemed to be: (i) a successor in interest or within the meaning of any law, including any revenue, successor liability, pension, labor, ERISA, bulk-transfer, products liability, tax or environmental law, rule or regulation, or

any theory of successor or transferee liability, antitrust, environmental, product line, *de facto* merger or substantial continuity or similar theories; or (ii) a joint employer, co-employer or successor employer with the Debtors, and the Agent shall have no obligation to pay the Debtors' wages, bonuses, severance pay, vacation pay, WARN act claims (if any), benefits or any other payments to employees of the Debtors, including pursuant to any collective bargaining agreement, employee pension plan, or otherwise, except as expressly set forth in the Agency Agreement.

44.     The Agent is a party in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Order, the various procedures contemplated herein, any issues related to or otherwise connected to the Sales, and the Agency Agreement.

45.     Nothing contained in any plan confirmed in the Debtors' chapter 11 cases or any order of this Court confirming such plan or in any other order in these chapter 11 cases (including any order entered after any conversion of these cases to cases under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Agency Agreement or the terms of this Order.

46.     The Agency Agreement and related documents may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court, provided that any such modification, amendment or supplement is not material and adverse to the Debtors and, provided further, that at least three business days prior notice of any such modification, amendment or supplement shall be provided to the Creditors Committee and, prior to the Payoff Effective Date, to the DIP Agents.

47.     Except with respect to any Governmental Unit (as to which the provisions of Paragraph 17 and 18 shall apply), this Court shall retain exclusive jurisdiction with regard to all

issues or disputes relating to this Order or the Agency Agreement, including, but not limited to, (i) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and signwalker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional and non-deceptive manner, (ii) any claim of the Debtors, the landlords and/or the Agent for protection from interference with the Sales, (iii) any other disputes related to the Sales, and (iv) to protect the Debtors and/or the Agent against any assertions of Encumbrances. No such parties or person shall take any action against the Debtors, the Agent, the landlords or the Sales until this Court has resolved such dispute. This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

48. Notwithstanding Bankruptcy Rules 4001 and 6004, or any other law that would serve to stay or limit the immediate effect of this Order, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Agent are free to perform under the Agency Agreement at any time, subject to the terms of the Agency Agreement.

49. To the extent that anything contained in this Order explicitly conflicts with a provision in the Agency Agreement or the GOB Sale Guidelines, this Order shall govern and control.

Dated: July 21, 2011
      New York, New York


            **/s/Martin Glenn**
            MARTIN GLENN
        United States Bankruptcy Judge

TAB 2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                       :

**In re**                             :         **Chapter 11**
                                         :

**BORDERS GROUP, INC., et al.,**     :         **Case No. 11-10614**
                                         :

                      **Debtors.**[1]    :         **(Jointly Administered)**
                                         :

-------------------------------------------------------------x

## ORDER APPROVING AGENCY AGREEMENT, STORE CLOSING SALES AND RELATED RELIEF

Upon the Debtors' Emergency Motion for Entry of Order (I) Authorizing the Debtors to Sell Certain Assets Through Store Closing Sales and to Enter Into Agency Agreement With (A) Joint Venture Composed of Hilco Merchant Resources, LLC, SB Capital Group, LLC, and Tiger Capital Group, LLC or (B) Other Successful Bidder at the Auction, (II) Approving Stalking Horse Fee, (III) Authorizing Debtors to Abandon Unsold Property, (IV) Waiving Compliance With Contractual Store Closing Sale Restrictions, (V) Exempting (A) State and Local "Fast Pay" Laws and (B) Laws Restricting Store Closing Sales, and (VI) Granting Related Relief, (the "Motion");[2] and upon the Declaration of Scott Henry Pursuant to Local Bankruptcy Rule 1007-2 in Support of First Day Motions (the "Henry Declaration") and the Declaration of Holly Felder Etlin in Support of Store Closing Sale Motion (the "Etlin Declaration"); and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance

---

[1] The Debtors in these cases, along with the last four digits of the federal tax identification number for the Debtors are the following: Borders Group, Inc. (4588); Borders International Services, Inc. (5075); Borders, Inc. (4285); Borders Direct, LLC (0084); Borders Properties, Inc. (7978); Borders Online, Inc. (8425); Borders Online, LLC (8996); and BGP (UK) Limited.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agency Agreement.

with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges

for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10,

1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being

a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

provided to the parties set for in the Motion; and it appearing that no other or further notice need

be provided; and an auction having been held on February 16, 2011 (the "Auction"); and a joint

venture composed of Hilco Merchant Resources, LLC, SB Capital Group, LLC, Tiger Capital

Group, LLC and Gordon Brothers Retail Partners, LLC (the "Agent") having been the successful

bidder at the Auction; and the Debtors and the Agent having agreed to the terms of the sales (the

"Sales") of certain assets (the "Assets") in accordance with that certain Agency Agreement,

dated February 16, 2011, by and between the Agent and the Debtors, a copy of which is attached

hereto as Exhibit A (the "Agency Agreement"), pursuant to which the Agent shall act as the

Debtors' exclusive agent for the Sales of the Assets as set forth in the Agency Agreement; and a

hearing having been held on February 17, 2011 (the "Sale Hearing") to consider the relief

requested in the Motion and approval of the Agency Agreement; and the appearances of all

interested parties having been noted in the record of the Hearing; and upon all of the proceedings

had before the Court; and the Court having found and determined that the relief sought in the

Motion is in the best interests of the Debtors, their estates, their creditors, and all parties in

interest and that the legal and factual bases set forth in the Motion establish just cause for the

relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is

FOUND AND DETERMINED THAT:

A.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      The statutory predicates for the relief requested are §§105(a), 363, 364, 365 and 554 of the Bankruptcy Code and Rules 2002, 4001, 6003, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

C.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the conclusions of law constitute findings of fact, they are adopted as such.

D.      Notice of the Motion and of the Hearing was provided as set forth in the Motion and as required by applicable law.

E.      The notice of the Motion and of the Hearing was adequate and sufficient under the circumstances, and any otherwise applicable requirement for notice is hereby waived and dispensed with.  A reasonable opportunity to object or to be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities.

F.      As demonstrated by the Henry Declaration, the Etlin Declaration, and representations of counsel to the Debtors and other parties in interest made at the Hearing, the Debtors have conducted the bidding solicitation and auction process fairly, with adequate opportunity for parties that either expressed an interest in liquidating the Debtors' assets or who

the Debtors believed may have an interest in liquidating the Debtors' assets to submit competing bids.

G.  The Agency Agreement attached hereto as <u>Exhibit A</u>, including the form and total consideration to be realized by the Debtors pursuant to the Agency Agreement, (i) is the highest and best offer received by the Debtors, (ii) is fair and reasonable, and (iii) is in the best interest of the Debtors, their estates, their creditors and all other parties in interest.

H.  The Debtors' decision to (i) enter into the Agency Agreement and (ii) perform under and make payments required by the Agency Agreement is a reasonable exercise of the Debtors' sound business judgment consistent with their fiduciary duties and is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

I.  The transactions contemplated by the Agency Agreement do not include the sale or lease of personally identifiable information, as defined in section 101(41A) of the Bankruptcy Code ("<u>Personally Identifiable Information</u>") (or assets containing personally identifiable information).

J.  Time is of the essence in effectuating the Agency Agreement and proceeding with the Sales contemplated therein uninterrupted.  Based on the record of the Sale Hearing, the Motion, the Henry Declaration, the Etlin Declaration, and for the reasons stated on the record at the Sale Hearing, the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

K.  The Debtors (i) have full corporate power and authority to execute and deliver the Agency Agreement and all other documents contemplated thereby, and the Sales of the Assets have been duly and validly authorized by all necessary corporate action of the Debtors, (ii) have all of the corporate power and authority necessary to consummate the transactions contemplated

by the Agency Agreement, and (iii) have taken all corporate action necessary to authorize and approve the Agency Agreement and the consummation of the transactions contemplated thereby. No consents or approvals, other than those expressly provided for in the Agency Agreement, are required for the Debtors to consummate such transactions.

L.      The Agency Agreement was negotiated between the Agent and the Debtors and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud. Neither the Debtors nor Agent has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of or implicate section 363(n) of the Bankruptcy Code to the Agency Agreement or to the consummation of the transactions contemplated thereby.  The Agent's performance and payment of the Guaranteed Amount under the Agency Agreement are in good faith and for valid business purposes and uses.

M.      The Debtors have demonstrated a compelling and sound business justification for authorization to enter into the Agency Agreement.

N.      The Debtors were free to deal with any other party interested in liquidating some or all of the Assets.  The Agent has not violated section 363(n) of the Bankruptcy Code by any action or inaction.  Specifically, the Agent has not acted in a collusive manner with any person and was not controlled by any agreement among bidders.  The Agent is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.  No common identity of directors or controlling stockholders exists between the Agent and the Debtors.

O.      The Motion contemplates seeking authority to assume the Letter Agreement Governing Inventory Disposition dated December 9, 2010, between Hilco Merchant Resources, LLC ("Hilco") and Borders, Inc., a copy of which is attached to the Motion as Exhibit D (as amended by the First Amendment to Letter Agreement dated January 7, 2011, the "Existing

Agreement"), under which Hilco continues to perform store liquidations at certain retail store locations.

P.     Hilco Merchant Resources, LLC, SB Capital Group, LLC, Tiger Capital Group, LLC, on the one hand, and Gordon Brothers Retail Partners, LLC, on the other, each agree that neither party shall submit any joint bid at any future auction of Borders Group, Inc. and its affiliate Debtors without the prior consent of the Debtors and the agent for the Debtors' debtor-in-possession lenders.

Now, therefore, it is hereby ORDERED, ADJUDGED AND DECREED THAT:

1.     The Motion is granted to the extent provided herein.  All objections to the Motion that have not been withdrawn, waived, settled, or specifically addressed in this Order, and all reservations of rights, are overruled in all respects and denied.

2.     The Agency Agreement is approved pursuant to section 363 of the Bankruptcy Code.  The Debtors are hereby authorized and empowered to enter into the Agency Agreement, and the Agency Agreement (and each of the transactions contemplated therein) is hereby approved in its entirety and is incorporated herein by reference.  All amounts payable to the Agent under the Agency Agreement shall be payable to the Agent without the need for any application of the Agent therefor or any further order of the Court.

3.     Subject to the provisions of this Order, the Debtors and the Agent are hereby authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the Sales at the Stores in accordance with the Agency Agreement and the sale guidelines (the "Sale Guidelines") attached hereto as Exhibit B, which Sale Guidelines are hereby approved in their entirety.  To the extent that anything contained in this Order explicitly conflicts with a provision in the Agency Agreement or the Sale Guidelines, this Order shall govern and control.

4.     Pursuant to section 365 of the Bankruptcy Code, assumption by the Debtors of the Existing Agreement is hereby directed, authorized and approved as a valid exercise of the Debtors' business judgment and all amounts payable to Hilco under the Existing Agreement shall be payable to Hilco without the need for any application of Hilco therefor or any further order of the Court.

5.     Except as otherwise provided in the Agency Agreement, pursuant to section 363(f) of the Bankruptcy Code, upon payment of the Guaranteed Amount Deposit and delivery of the Letter of Credit, the Agent shall be authorized to sell all Assets pursuant to the Agency Agreement free and clear of any and all mortgages, security interests, conditional sales or title retention agreements, pledges, hypothecations, liens, judgments, encumbrances or claims of any kind or nature (including, without limitation, any and all "claims" as defined in section 101(5) of the Bankruptcy Code), including, without limitation, the liens and security interests of GECC and GA, as agents for Lenders under the DIP Facility, as the same may have been amended from time to time, and the Debtors' prepetition lenders whether arising by agreement, any statute or otherwise and whether arising before, on or after the date on which this chapter 11 case was commenced (collectively, the "Liens"), with any presently existing liens encumbering all or any portion of the Assets or the Proceeds thereof attaching only to the Guaranteed Amount, or other amounts payable to the Debtors under the Agency Agreement (collectively, the "Transaction Proceeds") with the same validity, force and effect as the same had with respect to the assets at issue, subject to any and all defenses, claims and/or counterclaims or setoffs that may exist.

6.     All of the transactions contemplated by the Agency Agreement shall be protected by section 363(m) of the Bankruptcy Code in the event that this Order is reversed or modified on

appeal. The transactions contemplated by the Agency Agreement are not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

7. Unless otherwise ordered by the Court, all newspapers and other advertising media in which the Sales may be advertised and all landlords are directed to accept this Order as binding authority so as to authorize the Debtors and the Agent to consummate the Agency Agreement and to consummate the transactions contemplated therein, including, without limitation, to conduct and advertise the Sales in the manner contemplated by the Agency Agreement, including, without limitation, conducting and advertising of the Sales (at the contractual rates charged to the Debtors prior to the Petition Date) in accordance with the Agency Agreement, the Sale Guidelines, and this Order.

8. The Sales shall not be exempt from, and the Agent shall be required to comply with, laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws"). Nothing in this Order shall be deemed to bar any Governmental Unit (as defined in Bankruptcy Code section 101(27)) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' or the Agent's right to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Order, or otherwise, pursuant to Paragraph 9 hereunder. Notwithstanding any other provision in this Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Order and/or any applicable law, or that enforcement of such applicable law is preempted by the

Bankruptcy Code. Nothing in this Order shall be deemed to have made any rulings on any such issues.

9.      To the extent that the Sales are subject to any federal, state or local statute, ordinance, or rule, or licensing requirement solely directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or bulk sale laws (each a "GOB Law," and together, the "GOB Laws"), including laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with GOB Sales and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply solely to GOB Sales (collectively, the "Liquidation Laws"), the following provisions shall apply:

a.      Provided that the Sales are conducted in accordance with the terms of this Order, the Agency Agreement and the Sale Guidelines, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtors shall be presumed to be in compliance with any GOB Laws and Liquidation Laws and, subject to Paragraphs 8 and 9 herein, are authorized to conduct the Sales in accordance with the terms of this Order and the Sale Guidelines without the necessity of further showing compliance with any such GOB Laws and Liquidation Laws.

b.      Within five (5) business days of entry of this Order, the Debtors shall serve copies of this Order, the Agency Agreement and the Sale Guidelines via e-mail, facsimile or regular mail, on: (i) the Attorney General's office for each state where the Sales are being held, (ii) the county consumer protection agency or similar agency for each county where the Sales will be held, (iii) the division of consumer protection for each state where the Sales will be held; and (iv) the chief legal counsel for the local jurisdiction.

c.      To the extent there is a dispute arising from or relating to the Sales, this Order, the Agency Agreement, or the Sale Guidelines, which dispute relates to any GOB Laws or Liquidation Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute.  Any time within fifteen (15) days following service of this Order, any Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute to counsel for the Debtors and counsel for the Agent at the addresses set forth in the Agency Agreement so as to ensure delivery thereof within one (1) business day thereafter. If the Debtors, the Agent and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen (15) days of service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

d.      In the event a Dispute Resolution Motion is filed, nothing in this Order shall preclude the Debtors, a landlord, the Agent or other interested party from asserting (i) that the provisions of any GOB Laws and/or Liquidation Laws are preempted by the Bankruptcy Code or (ii) that neither the terms of this Order, nor the Debtors or the Agent's conduct pursuant to this Order, violates such GOB Laws and/or Liquidation Laws.  Filing a motion as set forth in this Paragraph shall not be deemed to affect the finality of this Order or to limit or interfere with the Debtors' or the Agent's ability to conduct or to continue to conduct the Sales pursuant to this Order and the Agency Agreement, absent further order of this Court.  The Court grants authority for the Debtors and the Agent to conduct the Sales pursuant to the terms of this Order, the Agency Agreement, and/or the Sale Guidelines attached hereto and to take all actions reasonably related thereto or arising in connection therewith.  The Governmental Unit shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Laws or the lack of any preemption of such GOB Laws and/or

Liquidation Laws by the Bankruptcy Code. Nothing in this Order shall constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

e. If, at any time, a dispute arises between the Debtors and/or the Agent and a Governmental Unit as to whether a particular law is a GOB Law and/or Liquidation Law, and subject to any provisions contained in this Order related to GOB Laws and/or Liquidation Laws, then any party to that dispute may utilize the provisions of Subparagraphs (c) and (d) hereunder by serving a notice to the other party and proceeding thereunder in accordance with those Paragraphs. Any determination with respect to whether a particular law is a GOB Law and/or Liquidation Law shall be made *de novo*.

f. Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the Sales, to the extent that disputes arise during the course of the Sales regarding laws regulating the use of sign-walkers and banner advertising and the Debtors and the Agent are unable to resolve the matter consensually with the Governmental Unit, any party may request an immediate telephonic hearing with this Court pursuant to these provisions. Such hearing will, to the extent practicable, be scheduled initially within two (2) business days of such request. This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

10. Except to the extent of the reserved rights of Governmental Units expressly granted elsewhere in this Order, the Debtors and Agent are hereby authorized to take such actions necessary and appropriate to implement the Agency Agreement and to conduct the Sales without necessity of further order of this Court as provided in the Agency Agreement or the Sale Guidelines, including, but not limited to, advertising the Sales as "store-closing" or similar-

themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall Stores, and at enclosed mall Stores to the extent the applicable Store entrance does not require entry into the enclosed mall common area), use of signwalkers and street signage. The Agent shall not conduct the Sales as a "going out of business" or similar-themed sale.

11. Except as expressly provided in the Agency Agreement, the Sales shall be conducted by the Debtors and the Agent notwithstanding any restrictive provision of any lease, sublease or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Sales, the rejection of leases, abandonment of assets or "going dark" provisions; provided, however, that nothing in this Order shall impact any objection that any of the Debtors' landlords may have to the assumption, assignment or rejection of their respective lease or to any proposed cure amount or rejection damages claim in association with such assumption, assignment or rejection. The Agent and landlords of the Stores are authorized to enter into agreements ("Side Letters") between themselves modifying the Sale Guidelines without further order of the Court, and such Side Letters shall be binding as among the Agent and any such landlords, provided that nothing in such Side Letters affects the provisions of Paragraphs 8 and 9. In the event of any conflict between the Sale Guidelines and any Side Letter, the terms of such Side Letter shall control.

12. Except as expressly provided for herein or in the Sale Guidelines, and except with respect to any Governmental Unit (as to which Paragraphs 8 and 9 shall apply), no person or entity, including but not limited to any landlord, licensor, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Sales, or the advertising and promotion (including the posting of signs or the use of signwalkers) of such Sales, and all such parties and persons of every nature and description, including landlords,

licensors, creditors and utility companies and all those acting for or on behalf of such parties, are prohibited and enjoined from (i) interfering in any way with, or otherwise impeding, the conduct of the Sales and/or (ii) instituting any action or proceeding in any court or administrative body seeking an order or judgment against, among others, the Debtors, the Agent, or the landlords at the Debtors' Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sales or other liquidation sales at the Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease or license based upon any relief authorized herein.

13.     Except with respect to any Governmental Unit (as to which the provisions of Paragraph 8 and 9 shall apply), this Court shall retain exclusive jurisdiction with regard to all issues or disputes relating to this Order or the Agency Agreement, including, but not limited to, (i) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and signwalker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional and non-deceptive manner, (ii) any claim of the Debtors, the landlords and/or the Agent for protection from interference with the Sales, and (iii) any other disputes related to the Sales. No such parties or person shall take any action against the Debtors, the Agent, the landlords or the Sales until this Court has resolved such dispute. This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

14.     The Agent shall have the right to use the Stores and all related Store services, furniture, fixtures, equipment and other assets of the Debtors for the purpose of conducting the Sales, free of any interference from any entity or person, subject to compliance with the Sale Guidelines and this Order and subject to Paragraphs 8 and 9 of this Order.

15.     During the Sale Term, Agent shall accept Debtors' gift cards, Borders Rewards Plus Loyalty Program discounts, Borders Bucks, and Merchandise credits issued by the Debtors and the Debtors shall reimburse Agent for such amounts during the weekly sale reconciliation provided for in Section 8.6 of the Agency Agreement.  During the Sale Term, the Agent shall accept returns of merchandise sold by the Debtors prior to the Sale Commencement Date, provided that such return is accompanied by the original Store register receipt and is otherwise in compliance with the Debtors' return and price adjustment policy in effect as of the date such item was purchased.  The Debtors shall promptly reimburse Agent in cash for any refunds Agent is required to issue to customers in respect of any such returns.

16.     All state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales".  Debtors and/or Agent shall accept return of any goods purchased during the Sales that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, provided that the consumer must return the merchandise within twenty-one (21) days of their purchase, the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect.  The Debtors shall promptly reimburse Agent in cash for any refunds Agent is required to issue to customers in respect of any goods purchased during the Sales that contain such a latent defect.

17.     Until the Sale Termination Date, the Agent shall be granted a limited license and right to use the trade names, logos and customer, mailing and e-mail lists relating to and used in connection with the operation of the Stores, solely for the purpose of advertising the Sale in accordance with the terms of the Agency Agreement; provided, however, that the Agent shall not receive Personally Identifiable Information from the Debtors.

18.    Except as expressly provided for in the Agency Agreement, nothing in this Order or the Agency Agreement, and none of the Agent's actions taken in respect of the Sale shall be deemed to constitute an assumption by Agent of any of the Debtors' obligations relating to any of the Debtors' employees.  Moreover, the Agent shall not become liable under any collective bargaining or employment agreement or be deemed a joint or successor employer with respect to such employees.

19.    The Agent shall not be liable for sales taxes except as expressly provided in the Agency Agreement and the payment of any and all sale taxes is the responsibility of the Debtors. The Agent shall collect, remit to the Debtors and account for sales taxes as and to the extent provided in the Agency Agreement.  If Agent fails to perform its responsibilities in accordance with Section 8.3 of the Agency Agreement, Agent shall indemnify and hold harmless the Debtors from and against any and all costs, including, but not limited to, reasonable attorneys' fees, assessments, fines or penalties which the Debtors sustain or incur as a result or consequence of the failure by Agent to collect and/or remit Sales Taxes and/or the failure by Agent to promptly deliver any and all reports and other documents required to enable the Debtors to file any requisite returns with taxing authorities.

20.    Except as set forth in the Agency Agreement or the Sale Guidelines, the Debtors and/or the Agent (as the case may be) are authorized and empowered to transfer assets among the Debtors' distribution center and/or the Stores as provided in the Agency Agreement.

21.    In accordance with the terms of the Agency Agreement and effective as of the Payment Date, pursuant to section 364(d) of the Bankruptcy Code, Agent is granted a valid, binding, enforceable and perfected first priority security interest in and lien upon (x) the Merchandise, (y) proceeds realized from the disposition of the Agent Sale FF&E up to the

amount of the Agent's disposition commission related to Agent Sale FF&E as provided for in Section 15.9 of the Agency Agreement, and (z) the Proceeds, to secure all obligations of the Debtors to Agent under the Agency Agreement, provided, however, that the security interest granted to Agent shall remain junior and subordinate in all respects to (a) Agent's Payment Obligations and (b) the liens, security interests and claims of the GECC and the Lenders, to the extent of the unpaid portion of Agent's Payment Obligations. Upon entry of this Order and payment of the Guaranteed Amount Deposit and the issuance of the Letter of Credit, the security interest granted to the Agent shall be deemed properly perfected without the necessity of filing financing statements or other documentation. Subject to the Agent having satisfied its payment obligations under the Agency Agreement, any amounts owed by the Debtors to the Agent under the Agency Agreement are granted and shall have the status and priority of superpriority liens and claims pursuant to section 364(c) of the Bankruptcy Code, junior to the superpriority claims of the Lenders.

22. The Debtors shall have authority, in accordance with Section 5.6 of the Agency Agreement, to include the Put Option Stores in the Sales, and to enter into an agreement with the Agent governing the Sales related to the Put Option Stores, either through a new agency agreement or an amendment to the Agency Agreement, without further motion to or order of the Court; provided that the Debtors will provide written notice to the landlord of each affected store identifying each Put Option Store the Debtors elect to include in the Sales, which notice shall be given as soon as practicable upon notifying the Agent of such election, but at least five (5) days prior to commencement of Sales at such locations.

23. The Debtors and the Agent shall not extend the Sale Termination Date beyond April 30, 2011 without notice and further order of the Court; *provided, however*, that no notice

or further order of the Court shall be required for an extension that does not exceed fifteen (15) days; and *provided further, however*, that the Sale Termination Date with respect to any Put Option Store shall be as set forth in any agency agreement or amendment to the Agency Agreement, as applicable, but in no event shall the Sale Term with respect to any Put Option Store exceed ninety (90) days without notice and further order of the Court.

24.     The Agent's performance and payment of the Guaranteed Amount under the Agency Agreement will be made in good faith and for valid business purposes and uses, and accordingly the Agent is entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.  In the event any provisions of this Order are modified, amended or vacated by a subsequent order of the Bankruptcy Court or any other court, the Agent shall be entitled to the protections provided in section 364(e) of the Bankruptcy Code and no such appeal, modification, amendment or vacatur shall affect the validity and enforceability of the liens or priority authorized or created under the Agency Agreement or this Order.

25.     This Order and the terms and provisions of the Agency Agreement shall be binding on all of the Debtors' creditors (whether known or unknown), the Debtors, the Agent, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting an interest in the Assets, notwithstanding any subsequent appointment of any trustee, party, entity or other fiduciary under any section of the Bankruptcy Code with respect to the forgoing parties, and as to such trustee, party, entity or other fiduciary, such terms and provisions likewise shall be binding.  The provisions of this Order and the Agency Agreement, and any actions taken pursuant hereto or thereto shall survive the entry of any order which may be entered confirming or consummating any plan of the Debtors or converting the Debtors' cases from chapter 11 to chapter 7, and the terms and provisions of the

Agency Agreement, as well as the rights and interests granted pursuant to this Order and the Agency Agreement, shall continue in these or any superseding cases and shall be binding upon the Debtors, the Agent and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.  Any trustee appointed in these cases shall be and hereby is authorized to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of this Order and the Agency Agreement, and Agent and the trustee shall be and hereby are authorized to perform under the Agency Agreement upon the appointment of the trustee without the need for further order of this Court.

26.     The Agent shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Agent, in each case, other than as expressly provided for in the Agency Agreement.  The Agent shall have no successor liability whatsoever with respect to any Liens or claims of any nature that may exist against the Debtors.

27.     Pursuant to section 554(a) of the Bankruptcy Code, the Debtors and the Agent, as applicable, are permitted to abandon property of the Debtors' estates in accordance with the terms and provisions of the Agency Agreement without incurring liability to any person or entity.  In the event of any such abandonment, all applicable landlords shall be authorized to dispose of such property without any liability to any individual or entity that may claim an interest in such abandoned property, and such abandonment shall be without prejudice to any landlord's right to assert any claim based on such abandonment and without prejudice to the Debtors or other party in interest to object thereto.

28.     Before any sale, abandonment or other disposition of the Debtors' computers (including software) and/or cash registers and any other point of sale Owned FF&E located at

the Stores (collectively, "POS Equipment") which may contain customer lists, identifiable personal and/or confidential information about the Debtors' employees and/or customers, or credit card numbers ("Confidential Information") takes effect, the Debtors shall remove or cause to be removed the Confidential Information from the POS Equipment.

29. All entities that are presently in possession of some or all of the Assets in which the Debtors hold an interest hereby are directed to surrender possession of the Assets to the Agent.

30. The Debtors, the Agent and each of their respective officers, employees and agents are hereby authorized to execute such documents and to do such acts as are necessary or desirable to carry out the Sales and effectuate the Agency Agreement and each of the transactions and related actions contemplated or set forth therein.

31. The Agent and Debtors agree that no FFE (which includes supplies) at Seattle Best Coffee's ("SBC") Borders cafes will be sold without SBC's prior consent as to the protections, if applicable, of its trademarks, trade names and other propriety information / trade secrets under its licensing agreement with the Debtor, such consent not to be unreasonably withheld. Without limitation, the parties, including SBC, understand and agree that retail inventory will be sold to consumers as part of the going out of business sale by Agent (but not in bulk to third parties), café supplies subject to the SBC license agreement will be transferred to other SBC Borders cafes (and not sold in bulk to third parties), FFE bearing SBC marks may be sold after being de-identified, and espresso machines may be sold after removal of any SBC marks and proprietary data (including computer chips).

32. Any landlord seeking relief from the Sales Guidelines approved in this Order (the "Sales Guidelines Relief") must follow the procedures set forth in this Paragraph for seeking

such relief. At any time before the fifth (5th) business day following entry of this Order, or with respect to any Put Option Store before the fifth (5th) business day following service of a notice that any such store has been selected as a Put Option Store, any landlord (other than a landlord that is a party to a Side Letter with respect to the Store(s) at issue) may seek Sales Guidelines Relief by first emailing and faxing a notice explaining the nature of such relief to (i) counsel for the Debtors (Kasowitz, Benson, Torres & Friedman LLP, 1633 Broadway, New York, New York 10019, Attn: Adam L. Shiff and Daniel A. Fliman, email: AShiff@kasowitz.com; DFliman@kasowitz.com, fax: (212) 506-1800) and (ii) counsel for the Agent (Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Shai Y. Waisman and Victoria Vron, email: Shai.Waisman@weil.com; Victoria.Vron@weil.com, fax: (212) 310-8007). If the Debtors, the Agent and the landlord are unable to resolve the landlord's request for Sales Guidelines Relief within five (5) days of service of a notice of Sales Guidelines Relief, the landlord may file an objection with the Court seeking the Sales Guidelines Relief (a "Sales Guidelines Relief Objection") to be heard by the Court on an expedited basis subject to the Court's availability. Any issues relating to any Sales Guidelines Relief shall not affect the finality of this Order or limit or interfere with the conduct of the Sales prior to any ruling by this Court on the Sales Guidelines Relief Objection.

33. Nothing contained in any plan confirmed in the Debtors' chapter 11 cases or any order of this Court confirming such plan or in any other order in these chapter 11 cases (including any order entered after any conversion of these cases to cases under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Agency Agreement or the terms of this Order.

34.     Notwithstanding Bankruptcy Rules 4001 and 6004, or any other law that would serve to stay or limit the immediate effect of this Order, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Agent are free to perform under the Agency Agreement at any time, subject to the terms of the Agency Agreement.

35.     Based on the record of the Sale Hearing, the Motion, the Henry Declaration, the Etlin Declaration, and for the reasons stated on the record at the Sale Hearing, the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and accordingly the requirements of Bankruptcy Rule 6003 have been satisfied.

36.     The Agent is a party in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Agency Agreement and the conduct of the Sale.

37.     All references in this Order to "Stores" shall include any Put Option Stores as to which a Put Option is exercised.

Dated:  February 18, 2011
        New York, New York

                        /s/ Arthur J. Gonzalez
                        ARTHUR J. GONZALEZ
                        Chief United States Bankruptcy Judge

TAB 3

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                           :

In re                               :         **Chapter 11**
                                           :

**BLOCKBUSTER INC., et al.,[1]**        :         **Case No. 10-14997 (BRL)**
                                         :

                                         :         **(Jointly Administered)**

                 **Debtors.**          :
------------------------------------------------------------------x

### ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363 AND FED R. BANKR. P. 6004 AUTHORIZING THE DEBTORS TO CONTINUE TO CONDUCT STORE CLOSING SALES AND BULK INVENTORY SALES, APPROVING PROCEDURES WITH RESPECT TO ORDINARY COURSE STORE CLOSING SALES, <u>AND GRANTING ANCILLARY AND RELATED RELIEF</u>

Upon the Motion,[2] dated December 17, 2010 of Blockbuster Inc. and its debtor

affiliates, as debtors and debtors in possession (collectively, "***Blockbuster***" or the "***Debtors***") in

the above-captioned chapter 11 cases, pursuant to sections 105(a) and 363 of the Bankruptcy

Code and Bankruptcy Rule 6004, authorizing the Debtors to continue to conduct Store Closing

Sales and Bulk Inventory Sales, approving Store Closing Procedures, and granting ancillary and

related relief overriding or invalidating any contractual provisions or state or local laws that may

restrict such sales, all as more fully set forth in the Motion; and this Court having jurisdiction to

consider the Motion and grant the requested relief in accordance with 28 U.S.C. §§ 157 and 1334

and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New

York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and

---

[1]     The Debtors, together with the last four digits of each Debtor's federal tax identification number, are Blockbuster Inc. (5102); Blockbuster Canada Inc. (1269); Blockbuster Digital Technologies Inc. (9222); Blockbuster Distribution, Inc. (0610); Blockbuster Gift Card, Inc. (1855); Blockbuster Global Services Inc. (3019); Blockbuster International Spain Inc. (7615); Blockbuster Investments LLC (6313); Blockbuster Procurement LP (2546); Blockbuster Video Italy, Inc (5068); Movielink, LLC (5575); Trading Zone Inc. (8588); and B[2] LLC (5219).

[2]     Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

consideration of the Motion and the relief requested therein being a core proceeding pursuant to

28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409; and the Debtors having provided notice of the Motion to the Notice Parties, and it

appearing that no further notice need be given; and it appearing that the relief sought in the

Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest,

and that the legal and factual bases set forth in the Motion establish just and sufficient cause to

grant the requested relief herein;

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted as provided herein.

2. All objections to the Motion that have not been withdrawn, waived,

settled, or specifically addressed in this Order, and all reservations of rights included in such

objections, are overruled in all respects on the merits and denied.

3. The Store Closing Sales Procedures attached here to as ***Exhibit "1"*** are

approved, *provided* that the Debtors and landlords are authorized to enter into agreements

modifying the Store Closing Sales Procedures without further order of the Court; *provided*

*further* that such agreements do not have a material adverse effect on the Debtors or their estates.

4. The Debtors are immediately authorized, pursuant to sections 363 and

105(a) of the Bankruptcy Code, to continue to conduct Store Closing Sales at Closing Store

locations and Bulk Inventory Sales, in their sole discretion, *provided* that the Store Closing Sales

are conducted in accordance with the Store Closing Sales Procedures.

5. Pursuant to section 363(f) of the Bankruptcy Code, the assets being sold

pursuant to the Store Closing Sales and Bulk Inventory Sales shall be sold free and clear of any

and all mortgages, security interests, conditional sales or title retention agreements, pledges,

hypothecations, liens, judgments, encumbrances or claims of any kind or nature (including, without limitation, any and all "claims" as defined in section 101(5) of the Bankruptcy Code), including, without limitation, the liens and security interests of the DIP Lenders (collectively, the "**Liens**"), with such Liens, if any, attaching to the proceeds.  The provisions of the *Final Order (I) Authorizing Pospetition Superpriority Secured Financing Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e), (II) Authorizing Postpetition Use of Cash Collateral Pursuant to 11 U.S.C. § 363, and (III) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364* [Docket No. 432] (the "**DIP Order**") remain in full force and effect.

6.      All utilities, landlords, creditors and all persons acting for or on their behalf (but not Governmental Units as defined in Bankruptcy Code section 101(27)) shall not interfere with or otherwise impede the conduct of the Store Closing Sales and Bulk Inventory Sales, or institute any action against the Debtors or landlords in any court (other than in this Bankruptcy Court) or before any administrative body which in any way directly or indirectly interferes with, obstructs, or otherwise impedes the conduct of the Store Closing Sales and Bulk Inventory Sales.

7.      Any restrictions in any Restrictive Documents purporting to limit, condition, or impair the Debtors' ability to conduct the Store Closing Sales or the Bulk Inventory Sales that are inconsistent with this Order or the Store Closing Sales Procedures shall not be enforceable, nor shall any breach of such provisions constitute a default under a lease or provide a basis to terminate the lease.

8.      The Closing Stores may "go-dark" after the Store Closing Sales and remain "dark" despite any lease restriction to the contrary, and any "continuous operation" or

similar clause in any of the leases (or any lease provision that purports to increase the rent or impose any penalty for going dark) may not be enforced to hinder or interrupt the Store Closing Sales (and the going dark under such leases shall not be a basis to cancel or terminate the leases).

9. Subject to applicable state and local public health and safety laws (the "*Safety Laws*"), and any state or local laws, regulations, or police powers of general applicability, including, but not limited to, criminal, traffic, tax, labor, employment, environmental, privacy, and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, the "*General Laws*"), but excluding licensing and other requirements governing the conduct of store closing, liquidation, or other inventory clearance sales, including (but not limited to) federal, state, and local laws, statutes, rules, regulations, and ordinances related to store closing and liquidation sales, establishing licensing, permitting, or bonding requirements, waiting periods, time limits, bulk sale restrictions, augmentation limitations that would otherwise apply to the Store Closing Sales and Bulk Inventory Sales, or restrictions on safe, professional, and non-deceptive, customary advertising, such as signs, banners, and posting of signage solely in connection with Store Closing Sales (collectively, the "*Liquidation Sale Laws*"), the Debtors are authorized to take such actions as necessary and appropriate to conduct the Store Closing Sales and Bulk Inventory Sales without the necessity of a further order of this Court, including, but not limited to, advertising the Store Closing Sales.

10. Provided that the Store Closing Sales are conducted in accordance with the terms of this Order and the Store Closing Sales Procedures, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtors shall be presumed to be in compliance with any Liquidation Sale Laws and, subject to

4

paragraphs 13 through 16 herein, are authorized to conduct the Store Closing Sales and Bulk Inventory Sales in accordance with the terms of this Order and the Store Closing Sales Procedures without the necessity of compliance with any such Liquidation Sale Laws.  For the avoidance of doubt, the Store Closing Sales shall not be exempt from, and the Debtors shall not be entitled to a presumption of compliance with, laws other than Liquidation Sale Laws, including Safety Laws and/or General Laws.

11.     The Debtors shall be entitled to hang signs and/or interior or exterior banners advertising the Store Closing Sales in accordance with the Store Closing Sales Procedures (or as otherwise agreed between the Debtors and the respective landlords), including, without limitation, advertising the Store Closing Sales as "store closing," "sale on everything," or similar themed sales and by means of media advertising, A-frames, banners, and similar signage, without further consent of any person and without compliance with the Liquidation Sale Laws.  Provided that the use of banners is done in a safe, professional, and non-deceptive manner, such banners, in and of themselves, shall not be deemed to be in violation of Safety Laws and/or General Laws.

12.     Except as otherwise provided in this Order, each and every federal, state, or local agency, departmental or Governmental Unit with regulatory authority over the Store Closing Sales and Bulk Inventory Sales and all newspapers and other advertising media in which the Store Closing Sales are advertised shall consider this Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall Blockbuster be required to post any bond, for the conduct of the Store Closing Sales and Bulk Inventory Sales, unless and until there is a further order of this Court.

13.     Nothing in this Order shall be deemed to bar any Governmental Unit from enforcing Safety Laws and General Laws in the applicable non-bankruptcy forum, subject to the Debtors' right to assert that any such laws are not, in fact, Safety Laws or General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Order, or otherwise; *provided*, *however*, that, to the extent reasonably practicable, the Governmental Unit shall provide the Debtors with reasonable notice and opportunity to cure any such alleged violation of any applicable law or regulation prior to instituting formal administrative or judicial proceedings. The Debtors do not waive the right to argue that the conduct was in compliance with this Order and/or any applicable law, or preempted by applicable law.

14.     The Debtors shall serve copies of this Order within three (3) business days, via facsimile, electronic mail, or first class mail, upon (i) the State Attorney General's offices (upon (x) Chief or Director of the Consumer Protection Division or Bureau; and (y) Chief or Director of the Bankruptcy Division or Bureau) and State Consumer Protection Agency for each state in which a retail store is located, and (ii) the chief legal counsel for each local jurisdiction where a retail store is located, addressed to the attention of the consumer protection division.

15.     If there is a dispute as to whether the general conduct of the Store Closing Sales and Bulk Inventory Sales is in accordance with this Order or should be limited (a "***Reserved Dispute***"), resolution of that Reserved Dispute will take place before this Court, as provided in this paragraph.  Any time before the fifteenth (15th) day following the service of this Order as provided for in paragraph 15 hereof, any Governmental Unit may assert a Reserved Dispute by sending a notice explaining the nature of the dispute to the attorneys for the Debtors, the Creditors' Committee, and the lenders under the DIP Facility.  If the Debtors and the

Governmental Unit are unable to resolve the Reserved Dispute within ten (10) days of receipt of the notice, either party may file a motion with the Court requesting resolution of the dispute (a "***Dispute Resolution Motion***").  Any such Dispute Resolution Motion shall also be served upon any affected landlord(s).  Any issues relating to a Reserved Dispute shall not affect the finality of this Order or limit or interfere with the conduct of any Store Closing Sale prior to any ruling by this Court on said Reserved Dispute.

16.     If a Dispute Resolution Motion is timely filed, the Debtors shall be entitled to assert that the provisions of this Order and/or the conduct of the Store Closing Sales and Bulk Inventory Sales do not violate the Liquidation Sale Laws, or, if they do, that such Liquidation Sale Laws are subject to preemption by the Bankruptcy Code.  The Governmental Unit shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the validity of this Order, the requirements of its Liquidation Sale Laws, or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code.  Nothing in this Order shall be deemed to constitute a ruling with respect to any issues to be raised in the Dispute Resolution Motion, including whether the Liquidation Sale Laws are preempted by the Bankruptcy Code, whether the automatic stay applies to any proposed action, or whether sovereign immunity applies to any action relating to a Governmental Unit.

17.     If at any time a dispute arises between the Debtors and a Governmental Unit as to whether a particular law is a Liquidation Sale Law and subject to any provisions contained in this Order related to Liquidation Sale Laws, then any party to that dispute may utilize the provisions of paragraphs 15 and 16 hereof by sending a notice to the other party and proceeding thereunder in accordance with those paragraphs.  Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*.

18.     To the extent that any property of the Debtors, including any computers (hardware and/or software), cash registers, and/or similar equipment, contains or includes personal or confidential customer or employee information, the Debtors shall remove or cause to be removed such personal and confidential information, in accordance with federal and state requirements relating to handling of private personal information, before any sale or disposition of the property.

19.     In resolution of the objections of the Texas Ad Valorem Tax Authorities [Dkt. No. 731], Mobile County, Alabama [Dkt. No. 734], Carrollton-Farmers Branch Independent School District and Lewisville Independent School District [Dkt. No. 747], Burleson ISD, et al. [Dkt. No.750], Pima County, Arizona [Dkt. No. 753], Collin County Tax Assessor-Collector and Frisco Independent School District [Dkt. No. 767], Maricopa County, Arizona [Dkt. No. 797], and County of Riverside, A California Taxing Authority [Dkt. No. 816] (the "***Objecting Tax Authorities***"), for any Closing Store within the jurisdiction of any of the Objecting Tax Authorities, the Debtors shall maintain, as adequate protection for the secured claims of the Objecting Tax Authorities, a cash reserve in an amount equal to the sum of: (i) ad valorem taxes assessed and unpaid as of the date of the Store Closing Sale for such Closing Stores, and (ii) for ad valorem taxes not yet assessed but for which Ad Valorem Liens (as defined in the DIP Order) have attached prior to the date of the Store Closing Sale, an amount based on the prior year's assessed ad valorem taxes for such Closing Stores. The reserve of such funds shall be on the order of adequate protection and shall constitute neither the allowance of the claims of the Objecting Tax Authorities, nor a cap on the amounts they may be entitled to receive. Furthermore, the claims and liens of the Objecting Tax Authorities shall remain subject

to any objections any party in interest would otherwise be entitled to raise as to the amount of such claims or the priority, validity, or extent of such liens.

20.     Notwithstanding Bankruptcy Rules 6004 or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.

21.     The requirements of Local Rule 6004-1 are waived with respect to the Motion.

22.     Other than as set forth herein, this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: January 20, 2011
       New York, New York

/s/Burton R. Lifland_____
UNITED STATES BANKRUPTCY JUDGE

TAB 4

---------------------------------------------------------------x
                                             :
In re                                        :          Chapter 11 Case No.
                                             :
FINLAY ENTERPRISES, INC., *et al.*,          :          09-14873 (JMP)
                                             :
                               Debtors[1].   :          (Jointly Administered)
                                             :
---------------------------------------------------------------x

## ORDER APPROVING AGENCY AGREEMENT, <br> STORE CLOSING SALES AND RELATED RELIEF

Upon the Debtors' Motion Pursuant To Sections 105(a), 363, and 365 of the Bankruptcy

Code and Bankruptcy Rules 6004 and 6006 for (I) Approval of Procedures in Connection With

the Sale of All or Substantially All of the Debtors' Assets, (II) Authorization to Enter Into

Stalking Horse Agreement in Connection Therewith, (III) Approval of the Payment of Stalking

Horse Protections and (IV) the Setting of Related Auction and Hearing Dates, (the "Motion")[2];

and the Court having jurisdiction to consider the Motion and the relief requested therein in

accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided to (i) the Office of the United States Trustee for the Southern

District of New York, (ii) the attorneys for General Electric Capital Corporation ("GECC"), as

---

[1] The Debtors in these cases, along with the last four digits of the federal tax identification number for the Debtors are the following: Finlay Enterprises, Inc. (2802), Finlay Fine Jewelry Corporation (7757), Finlay Merchandising & Buying LLC (4597), Finlay Jewelry, Inc. (2931), eFinlay, Inc. (8315), Carlyle & Co. Jewelers LLC (4460), Park Promenade, LLC (5397) and L. Congress, Inc. (6150).
[2] Capitalized terms used by not defined herein shall have the meanings given to them in the Agency Agreement, the Consulting Agreement or Consignment Agreement (each as defined below), as the case may be.

agent under that certain Fourth Amended and Restated Credit Agreement dated as of November 9, 2007, (iii) the attorneys for Wilmington Trust FSB ("Wilmington Trust"), as successor trustee under that certain second lien indenture dated as of November 26, 2008, (iv) the attorneys for HSBC Bank USA, N.A. ("HSBC"), as trustee under that certain third lien indenture dated as of November 26, 2008, (v) the attorneys for the official committee of unsecured creditors appointed in these chapter 11 cases, (vi) the U.S. Securities and Exchange Commission, (vii) all parties that have either expressed an interest in purchasing the Assets or who the Debtors believe may express an interest in purchasing such Assets (the "Interested Parties"), (viii) all other affected federal and local regulatory and taxing authorities, including the Internal Revenue Service, (ix) all attorney general's offices in the states in which the Debtors do business, and (x) all parties entitled to notice pursuant to this Court's Order Implementing Certain Notice and Case Management Procedures dated August 6, 2009, and it appearing that no other or further notice need be provided; and the Court having entered an order dated August 20, 2009 approving the bidding procedures attached thereto; and an auction having been held on September 23, 2009 (the "Auction"); and Gordon Brothers having been the successful bidder at the Auction; and the Debtors and Gordon Brothers having agreed to (x) the terms of the sale in accordance with that certain Agency Agreement, dated September 24, 2009, by and between Gordon Brothers Retail Partners LLC ("Gordon Brothers"), as agent (the "Agent") and Finlay Fine Jewelry Corporation a copy of which is attached hereto as Exhibit A (the "Agency Agreement") pursuant to which Agent shall act as the Debtors' exclusive agent for the sale of Merchandise located in the Debtors' forty nine (49) specialty retail store locations set forth on Exhibit 1B to the Agency Agreement, and (y) the Debtors' assumption of the Existing Agreements (as defined below) with respect to merchandise located in the Current Stores; and further hearing having been held on

September 25, 2009 (the "<u>Sale</u> <u>Hearing</u>") to consider the relief requested in the Motion and approval of the Agency Agreement and assumption of the Existing Agreements; and the appearances of all interested parties having been noted in the record of the Sale Hearing; and upon the Affidavit of Arthur E. Reiner Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, sworn to on August 6, 2009, and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is

FOUND AND DETERMINED THAT:

A. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B. The statutory predicates for the relief requested are §§105(a), 363 and 365 of the Bankruptcy Code and Rules 2002, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

C. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D.    Notice of the Motion and of the Sale Hearing was given in accordance with the directive of the Court and as otherwise required by applicable law, as evidenced by the affidavits of service on file with the Clerk of the Court.

E.    The notice of the Motion and of the Sale Hearing was adequate and sufficient under the circumstances.  A reasonable opportunity to object or to be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities.

F.    As demonstrated by representations of counsel to the Debtors and other parties in interest made at the Sale Hearing, the Debtors have conducted the bidding solicitation and auction process fairly, with adequate opportunity for interested parties to submit Qualified Bids and in compliance with this Court's Order Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006 (I) Approving Procedures in Connection With the Sale of All or Substantially All of the Debtors' Assets, (II) Authorizing the Debtors to Enter Into Stalking Horse Agreement in Connection Therewith, (III) Approving the Payment of Stalking Horse Protections, And (IV) Setting Related Auction and Sale Hearing Dates, entered on August 20, 2009.

G.    The offer of Gordon Brothers, upon the terms and conditions set forth in the Agency Agreement and the Existing Agreements, including the form and total consideration to be realized by the Debtors pursuant to the Agency Agreement and the Existing Agreements (as defined below), (i) is the highest and best offer received by the Debtors, (ii) is fair and reasonable; and (iii) is in the best interests of the Debtors' estates.

H.    Approval of the Sale contemplates (a) assumption of the (i) Consulting Agreement dated as of March 20, 2009, between Finlay Fine Jewelry Corporation and Gordon Brothers as consultant (the "Consultant"), a copy of which is attached hereto as Exhibit B (as

amended by Amendment No. 1 dated as of May 20, 2009, and by the substitution of the revised

budget attached thereto, the "Consulting Agreement") and (ii) the Consignment Agreement,

made as of April 6, 2009, by and among Debtors and Consultant as "Consignor" (the

"Consignment Agreement" and together with the Consulting Agreement, and as modified

hereunder, the "Existing Agreements"), a copy of which is attached hereto as Exhibit C, and (b)

continuation of the store closings sales (the "Store Closing Sales" and collectively with the Sale,

the "Sales") at the Debtors' stores identified on Exhibit A to the Consulting Agreement (the

"Current Stores" and collectively, with the Stores, the "Retail Stores").

      I.      The transactions contemplated by the Agency Agreement do not include the sale

or lease of personally identifiable information, as defined in section 101(41A) of the Bankruptcy

Code ("Personally Identifiable Information") (or assets containing Personally Identifiable

Information).

      J.      The Debtors (i) have full corporate power and authority to execute and deliver the

Agency Agreement and all other documents contemplated thereby, and the Sale of the Debtors'

Merchandise has been duly and validly authorized by all necessary corporate action of the

Debtors, (ii) have all of the corporate power and authority necessary to consummate the

transactions contemplated by the Agency Agreement and (iii) have taken all corporate action

necessary to authorize and approve the Agency Agreement and the consummation of the

transactions contemplated thereby. No consents or approvals, other than those expressly

provided for in the Agency Agreement, are required for the Debtors to consummate such

transactions.

      K.      The Agency Agreement and the Existing Agreements were negotiated and entered

into in good faith, based upon arm's length bargaining, and without collusion or fraud. Neither

the Debtors nor Gordon Brothers has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of or implicate Section 363(n) of the Bankruptcy Code to the Agency Agreement or to the consummation of the transactions contemplated thereby.

L.     The Debtors were free to deal with any other party interested in liquidating some or all of the Debtors' assets.  Gordon Brothers has not violated section 363(n) of the Bankruptcy Code by any action or inaction.  Specifically, Gordon Brothers has not acted in a collusive manner with any person and was not controlled by any agreement among bidders.  Gordon Brothers is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code. No common identity of directors or controlling stockholders exists between Gordon Brothers and the Debtors.

Now, therefore, it is hereby

ORDERED, ADJUDGED AND DECREED THAT:

1.     The Motion is granted to the extent provided herein.  All objections to the Motion that have not been withdrawn, waived, settled, or specifically addressed in this Order, and all reservations of rights included in such objections, are overruled in all respects on the merits and denied.

2.     The Debtors are hereby authorized and empowered to enter into the Agency Agreement, and the Agency Agreement is hereby approved in its entirety and is incorporated herein by reference.  All amounts payable to the Agent under the Agency Agreement shall be payable to the Agent without the need for any application of the Agent therefor or a further order of the Court.

3.      Pursuant to section 365 of the Bankruptcy Code, assumption by the Debtors of the Existing Agreements is hereby directed, authorized and approved as a valid exercise of the Debtors' business judgment and all amounts payable to the Consultant under the Existing Agreements shall be payable to the Consultant without the need for any application of the Consultant therefor or a further order of the Court.

4.      The Debtors and the Agent are hereby authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the Sale at the Stores in accordance with the Agency Agreement and the Sale Guidelines, which Sale Guidelines are hereby approved in the form attached to this Order.

5.      The Debtors and the Consultant are hereby authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the Store Closing Sales at the Current Stores in accordance with the Existing Agreements, provided, however, notwithstanding anything to the contrary in the Existing Agreements, that such sales may hereinafter be conducted as GOB Sales (as defined below) in accordance with the Sales Guidelines, and that the Sale Termination Date (as defined in the Consulting Agreement) shall be December 31, 2009, unless such date is extended by mutual agreement of the Debtors (in consultation with the Lenders and the Creditors Committee) and the Consultant.

6.      Except as otherwise provided in the Agency Agreement, pursuant to Section 363(f) of the Bankruptcy Code, the assets being sold pursuant to the Agency Agreement shall be sold free and clear of any and all mortgages, security interests, conditional sales or title retention agreements, pledges, hypothecations, liens, judgments, encumbrances or claims of any kind or nature (including, without limitation, any and all "claims" as defined in section 101(5) of the Bankruptcy Code), including, without limitation, the liens and security interests of GECC, as

agent for lenders (in such capacity, the "Senior Lender Agent") that are party to that certain Fourth Amended and Restated Credit Agreement, dated as of November 9, 2007, with Debtors, as the same may have been amended from time to time, Wilmington Trust, as successor trustee under that certain second lien indenture dated as of November 26, 2008, and HSBC, as trustee under that certain third lien indenture dated as of November 26, 2008 (together with the Senior Lender Agent, the "Lenders"), whether arising by agreement, any statute or otherwise and whether arising before, on or after the date on which this chapter 11 case was commenced (collectively, the "Liens"), with such Liens to attach to the Guaranteed Amount, the Recovery Amount and any other amounts payable to the Debtors under the Agency Agreement (collectively, the "Transaction Proceeds") with the same validity, force and effect as the same had with respect to the assets at issue, subject to any and all defenses, claims and/or counterclaims or setoffs the Debtors may possess.

7.     All of the transactions contemplated by the Agency Agreement shall be protected by section 363(m) of the Bankruptcy Code in the event that this Order is reversed or modified on appeal.  The transactions contemplated by the Agency Agreement are not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

8.     Unless otherwise ordered by the Court, all newspapers and other advertising media in which the Sales may be advertised and all landlords are directed to accept this Order as binding authority so as to authorize the Debtors and Gordon Brothers to consummate the Agency Agreement and the Existing Agreements and to conduct the Sales at the Retail Stores, including, without limitation, conducting and advertising of the Sales (at the contractual rates charged to the Debtors prior to the Petition Date) in accordance with the Agency Agreement, the Existing

Agreements, the Sale Guidelines, and this Order; and no further approval, license or permits of any governmental authority shall be required.

9. Except as expressly provided herein or in the Sales Guidelines, and except as to any governmental unit of any state in which a Retail Store is located (referred to herein as a "State") (as to which this paragraph shall not apply) or any other governmental unit when enforcing applicable tax, labor, employment, environmental and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws"), no person or entity, including but not limited to any landlord or any federal governmental unit or any city, town, county, parish, or municipal or other local (referred to herein as "Local") governmental unit (as defined in Section 101(27) of the Bankruptcy Code), that was (i) served with a copy of the Motion or (ii) served with a copy of this Order that does not object pursuant to the provisions of this Order, shall in contravention of this Order take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Sales, or the advertising and promotion (including the use of signwalkers) of the Sales, and all such parties and persons of every nature and description, including landlords and utility companies and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, or otherwise impeding the conduct of the Sales and/or (b) instituting any action or proceeding in any court or administrative body seeking an order or judgment against, among others, the Debtors, Gordon Brothers, or the Debtors' landlords for the Retail Stores, that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sales as provided for herein and/or seek to recover damages for breach(es) of covenants or provisions in any lease or sublease based upon any relief authorized herein.

10.     The Debtors and Gordon Brothers are hereby authorized to take such actions necessary and appropriate to implement the Agency Agreement and Existing Agreements and to conduct the Sales without necessity of further order of this Court as provided by the Agency Agreement and Existing Agreements, including, but not limited to, (a) the sale of Assurant Service Contracts as provided in Section 8.8 of the Agency Agreement, and (b) advertising the Sales through the posting of signs (including the use of exterior banners) at (i) non-enclosed mall Retail Stores, and (ii) enclosed mall Retail Stores to the extent the applicable Retail Store entrance does not require entry into the enclosed mall common area, use of signwalkers and street signage, in accordance with the Agency Agreement and as otherwise provided in the Sale Guidelines.

11.     Provided that the Sales are conducted in accordance with the terms of this Order, the Sale Guidelines, the Agency Agreement, and the Existing Agreements, and in light of the provisions in the laws of many governmental units that exempt court-ordered sales from their provisions, the Debtors and Gordon Brothers shall be presumed to be in compliance with any GOB Laws (as defined herein) and, subject to paragraphs 15 through 19, are authorized to conduct the Sales in accordance with the terms of this Order, the Sale Guidelines the Agency Agreement and the Existing Agreements without the necessity of compliance with any such GOB Laws.  For purposes of this Order, GOB Laws shall mean any federal, state or local statute or ordinance or licensing requirement solely directed at regulating store closing, "going out of business," liquidation, bankruptcy, auction or similar sales ("GOB Sales"), including laws restricting safe, professional and non-deceptive, customary advertising of GOB Sales, such as signs, banners, posting of signage, and use of sign walkers, and including ordinances establishing licensing or permitting requirements, waiting periods, time limits or bulk sale

restrictions that would otherwise apply to the Sale ("GOB Laws"). For the avoidance of doubt, the Sales shall not be exempt from, and the Agent shall not be entitled to a presumption of compliance with laws other than GOB Laws, including General Laws.

12.     Subject to the provisions of paragraphs 11 and 15, Gordon Brothers' use, in conformity with the Sale Guidelines and this Order, of (i) signwalkers; (ii) interior store signage and banners; and (iii) exterior banners ("Banner and Signwalker Advertising"), is authorized notwithstanding any lease provisions which purport to regulate, prohibit, restrict, or in any way limit such activity so long as such activity is undertaken by Gordon Brothers in a safe, professional and non-deceptive manner. Any person (including without limitation any landlord but excluding any governmental unit), that, after having received a copy of this Order, and after having been specifically advised in writing of the provisions of this Order, continues to interfere with Banner and Signwalker Advertising undertaken in compliance with this Order, shall be liable to Gordon Brothers and/or Debtors and affected landlord(s) for any and all damages resulting from such continued interference.

13.     Except as otherwise provided in paragraphs 15 through 19, this Court shall retain exclusive jurisdiction to resolve any disputes regarding this Order and the actions authorized hereunder brought by or against any person, including (i) any claim or issue relating to any efforts to prohibit, restrict or in any way limit Banner and Signwalker Advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional and non-deceptive manner, (ii) any claim of the Debtors, the landlords and/or the Agent for protection from interference with the Sales and (iii) any other disputes related to the Sales or arising under the Agency Agreement and the Existing Agreements or the implementation thereof. Except as provided in paragraph 15, no actions shall be taken by any

person against the Debtors, Gordon Brothers, the landlords or the Sales until this Court has resolved such dispute. This Court shall hear any such disputes on an expedited basis, as may be appropriate under the circumstances.

14. Except as expressly provided in the Agency Agreement, and notwithstanding anything to the contrary in the Existing Agreements, the Sales shall be conducted by the Debtors and the Agent notwithstanding any restrictive provision of any lease, sublease or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Sales, the rejection of leases, abandonment of assets or "going dark" provisions; provided, however, that nothing in this Order shall impact any objection that any of the Debtors' landlords may have to assumption, assignment or rejection of their respective lease or to any proposed cure amount or rejection damages claim in association with such assumption, assignment or rejection. Gordon Brothers and landlords of the Retail Stores are authorized to enter into agreements between themselves modifying the Sale Guidelines without further order of the Court, and such agreements shall be binding as among Gordon Brothers and any such landlords.

15. Nothing in this Order shall be deemed to bar any governmental unit from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' or Gordon Brothers' right to assert that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Order or otherwise, pursuant to paragraph 11.

16. To the extent reasonably practicable, each applicable governmental unit shall provide the Debtors and Gordon Brothers and any affected landlord with reasonable notice and opportunity to cure any alleged violation of any applicable law or regulation prior to instituting formal administrative or judicial proceedings; provided, however, cessation of alleged unlawful

conduct after notice shall not, in and of itself, render moot court action by any State, including the imposition of injunctive relief, even if the Debtors or Gordon Brothers has ceased the alleged unlawful conduct. No party waives any rights to argue any position with respect to whether the conduct was in compliance with this Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Order shall be deemed to have made any rulings on any such issues.

17.     The Debtors shall serve copies of this Order within five (5) business days, via first class mail, upon (i) the State Attorney General's offices (upon (x) Chief or Director of the Consumer Protection Division or Bureau; and (y) Chief or Director of the Bankruptcy Division or Bureau) and State Consumer Protection Agency for each State, and (ii) the Local mayor or similar official representative of each village, town or city, and the county or parish where a Store is located, addressed to the attention of the municipal, city or county attorney, in each case to the consumer protection division.

18.     If there is a dispute as to whether the general conduct of the Sales is in accordance with this Order, the Agency Agreement, the Existing Agreements or the Sales Guidelines or would violate a GOB Law and should be limited or barred (a "Reserved Dispute"), resolution of that Reserved Dispute will take place before this Court, as provided in this paragraph. Any time before the fifteenth (15th) day following the service of this Order as provided for in paragraph 17, any governmental unit may assert a Reserved Dispute by sending a notice explaining the nature of the dispute to counsel for the Debtor, Gordon Brothers, the Creditors' Committee, the Indenture Trustees and Harbinger. If the Debtor and the governmental unit are unable to resolve the Reserved Dispute within ten (10) days of receipt of the notice, either party may file a motion with the Court requesting resolution of the dispute (a "Dispute Resolution Motion"). Any such

Dispute Resolution Motion shall also be served upon any affected landlord(s). Any issues relating to a Reserved Dispute shall not affect the finality of this Order or limit or interfere with the conduct of the Sale prior to any ruling by this Court on said Reserved Dispute.

19. If such Dispute Resolution Motion is timely filed, the Debtors and/or Gordon Brothers shall be entitled to assert that the provisions of this Order and/or the conduct of the Sales do not violate the GOB Law, or, if they do, that such GOB Law is subject to preemption by the Bankruptcy Code. The governmental unit shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the validity of this Order, the requirements of its GOB Laws, or the lack of any preemption of such GOB Laws by the Bankruptcy Code. Nothing in this Order, including the presumption stated in paragraph 11, shall constitute a ruling with respect to any issues to be raised in the Dispute Resolution Motion, including whether the GOB Law is preempted by the Bankruptcy Code, whether the automatic stay applies to any proposed action, or whether sovereign immunity applies to any action relating to a governmental unit.

20. If at any time a dispute arises between the Debtors or Gordon Brothers and a governmental unit as to whether a particular law is a GOB Law and subject to any provisions contained in this Order related to GOB Laws, or whether enforcement of a conceded GOB Law may be preempted, then any party to that dispute may utilize the provisions of paragraphs 18 and 19 by sending a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is a GOB Law shall be made *de novo* in accordance with the definitions in this Order.

21. Throughout the applicable Sale Terms, Gordon Brothers shall have the right to use the Retail Stores and all related services, furniture, fixtures, equipment and other assets of

Debtors for the purpose of conducting the Sales, in each case solely in accordance with the applicable provisions of the Agency Agreement and the Existing Agreements.

22.     Until the applicable Sale Termination Date, Gordon Brothers shall be granted a limited license and right to use the Debtors' trade names, logos and customer lists relating to and used in connection with the operation of the Retail Stores, solely for the purpose of advertising the Sale and the Store Closing Sales in accordance with the applicable terms of the Agency Agreement and Existing Agreements.

23.     Except as expressly provided for in the Agency Agreement or the Existing Agreements, nothing in this Order or the Agency Agreement or the Existing Agreements and none of Gordon Brothers' actions taken in respect of the Sale or the Store Closing Sales shall be deemed to constitute an assumption by Gordon Brothers of any of the Debtors' obligations relating to any of the Debtors' employees.  Moreover, Gordon Brothers shall not become liable under any collective bargaining or employment agreement or be deemed a joint or successor employer with respect to such employees.

24.     Except as set forth in the Agency Agreement, and the Existing Agreements the Debtors and/or Gordon Brothers (as the case may be) are authorized and empowered to transfer assets among the Stores and among the Current Stores (but not among the Stores and Current Stores).  Gordon Brothers shall be permitted to include in the Sales as consigned goods the Additional Agent Merchandise in accordance with the terms and provisions of the Agency Agreement and the Existing Agreements.  At all times, title to the Additional Agent Merchandise shall remain with Gordon Brothers and the Additional Agent Merchandise and the proceeds thereof, shall not constitute property of the estate of any one or more of the Debtors.

25.     With respect to the Current Stores, the Consignment Agreement shall remain in full force and effect.  This Order shall be sufficient and conclusive evidence of the validity, perfection, and enforceability of Gordon Brothers' ownership and consignment interests in and superpriority liens upon ("Consignment Interests") any and all Additional Agent Merchandise (including Additional Goods whether consigned under the Agency Agreement or the Consulting Agreement and Consignment Agreement) and proceeds thereof (other than amounts payable to the Debtors with respect thereto) notwithstanding anything to the contrary in any other order of this Court, without the necessity of filing or recording any financing statement or other instrument or document, or taking any other act or giving any other notice, which otherwise may be required under state or federal law, rule or regulation of any jurisdiction to validate or perfect the Consignment Interests, or to entitle Gordon Brothers to the priorities granted herein or therein.  The Debtors may execute and Gordon Brothers may file or record financing statements or other instruments to evidence the continuing Consignment Interests, and the Debtors hereby are authorized and directed to execute and file or record any such statements or instruments as Gordon Brothers may request, but no such execution, filing or recordation shall be necessary or required in order to create or perfect such Consignment Interests.

26.     The Debtors grant to Gordon Brothers, solely in accordance with the terms of the Agency Agreement pursuant to sections 364(d) and 507 of the Bankruptcy Code of the Bankruptcy Code a valid and perfected first priority security interest and superpriority administrative claim (subject to the subordination provisions set forth below in this paragraph) in and lien upon the Merchandise and the Proceeds to secure all obligations of Debtors under the Agency Agreement; provided, however, that until the payment of the Guaranteed Amount, the Recovery Amount and Expenses due to Merchant under the Agency Agreement, Gordon

Brothers' security interest shall remain junior and subordinate in all respects to the liens, security interests and claims of the Lenders to the extent of the unpaid portion of the Guaranteed Amount, the Recovery Amount and Expenses. Upon entry of this Order and payment of the Initial Guaranty Payment and the issuance of the Guaranty L/C and the Expense L/C, the security interest granted to Gordon Brothers shall be deemed properly perfected without the need for further filings or documentation.

27.     The provisions of this Order, the Agency Agreement and the Existing Agreement and any actions taken pursuant hereto or thereto shall survive the entry of any order which may be entered confirming or consummating any plan of reorganization of the Debtors or converting the Debtors' cases from chapter 11 to chapter 7, and the terms and provisions of the Agency Agreement and the Existing Agreements as well as the rights and interests granted pursuant to this Order and the Agency Agreement and the Existing Agreements shall continue in this or any superseding case and shall be binding upon the Debtors, Gordon Brothers and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code. Any trustee appointed in these cases shall be and hereby is authorized to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of this Order and the Agency Agreement and the Existing Agreements, and Gordon Brothers and the trustee shall be and hereby are authorized to perform under the Agency Agreement and Existing Agreements upon the appointment of a trustee without the need for further order of this Court. In the event a chapter 7 trustee determines that it needs further order of this Court in connection with the continued operation of the business, such motion shall be heard on an expedited basis.

28.     To the extent that anything contained in this Order conflicts with a provision in the Agency Agreement or the Sale Guidelines, this Order shall govern and control. This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation of this Order or otherwise arising from or related to the Agency Agreement.

29.     Gordon Brothers shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Gordon Brothers, in each case, other than as expressly provided for in the Agency Agreement and the Existing Agreements. Gordon Brothers shall have no successor liability whatsoever with respect to any Liens or claims of any nature that may exist against the Debtors.

30.     No bulk sale or similar law shall prohibit the Debtors or Gordon Brothers from taking action contemplated by the Agency Agreement.

31.     The Debtors, Gordon Brothers and each of their respective officers, employees and agents are hereby authorized to execute such documents and to do such acts as are necessary or desirable to carry out the Sales and effectuate the Agency Agreement, the Existing Agreements and the related actions set forth therein.

32.     Notwithstanding Bankruptcy Rules 4001 and 6004, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any person or entity obtaining a stay pending appeal, the Debtors and Gordon Brothers are free to perform under the Agency Agreement and the Existing Agreements at any time, subject to the terms of the Agency Agreement and Existing Agreements.

33.     Gordon Brothers is a party in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Agency Agreement, the Existing Agreements and the conduct of the Sale.

34.     In resolution of the Objections of the Tax Appraisal District of Bell County, et al. (Docket No. 206), Lewisville Independent School District (Docket No. 203), Arlington ISD, et al. (Docket No. 209), the Local Texas Taxing Authorities (Docket No. 215), the Chatham County Tax Commissioner (Docket No. 229), and Fairfax County, Virginia (objection submitted to the Debtors) (collectively, the "Objecting Tax Authorities"), there shall be set aside by the Debtors, from the proceeds of the sale of any of the Debtors' assets, the amount of $1,801,057.70 in a segregated account as adequate protection for the secured claims of the Objecting Tax Authorities, prior to the distribution of any proceeds to any other creditor. The liens of the Objecting Tax Authorities shall attach to these proceeds to the same extent and with the same priority as the liens (if any) they now hold against the property of the Debtors being sold hereunder. The segregation of such funds shall be on the order of adequate protection and shall constitute neither the allowance of the claims of the Objecting Tax Authorities, nor a cap on the amounts they may be entitled to receive. Furthermore, the claims and liens of the Objecting Tax Authorities shall remain subject to any objections any party in interest would otherwise be entitled to raise as to the priority, validity or extent of such liens. These funds may be distributed upon agreement between the Objecting Tax Authorities and the Debtors, or by subsequent order of the Court, duly noticed to the Objecting Tax Authorities.

Dated:  New York, New York
        September 25, 2009

_____s/ James M. Peck_____
UNITED STATES BANKRUPTCY JUDGE

TAB 5

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - - - - - - - - - - - - - x
                                             :      Chapter 11
In re:                                       :
                                             :      Case No. 09-10124 (CSS)
GOODY'S, LLC, et al.,¹                        :
                                             :      Jointly Administered Pending
                   Debtors.                   :
                                             :      Related to Docket Nos. 13, 72
- - - - - - - - - - - - - - - - - - - - - - - - - x
```

## ORDER (I) APPROVING ASSUMPTION OF AGENCY AGREEMENT, (II) GRANTING APPROVAL OF SUPERPRIORITY ADMINISTRATIVE CLAIMS AND SECURITY INTERESTS, (III) APPROVING STORE CLOSING SALES FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES AND (IV) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion") of the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" or the "Company"), pursuant to sections 105(a), 363, 364, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), (i) authorizing the assumption of the Agency Agreement dated January 6, 2009, between Goody's LLC ("Goody's") and its direct and indirect subsidiaries, on the one hand, and a joint venture comprised of Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC (together, the "Agent"), on the other hand (the "Agency Agreement"); (ii) authorizing and approving the Debtors to conduct going-out-of-business, store closing sales (the "Store Closing Sales") in accordance with the terms of the Agency Agreement and the Store

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are:  Goody's, LLC (9573); New SYDOOG LLC (2047); New Trebor of TN, LLC (2157); New GOFAMCLO, LLC (2268); New Goody's Giftco, LLC (2366); New Goody's MS, L.P. (2490); New GFCTX, L.P. (2581); New Goody's IN, L.P. (3191); New GFCTN, L.P. (3266); New GFCGA, L.P. (3366); New Goody's ARDC, L.P. (3486); New Goody's Retail MS, L.P. (3527); New Goody's Holding TN, LLC (3620); and New Goody's TNDC, L.P. (3673).  The mailing address for Goody's LLC, New SYDOOG LLC and New GOFAMCLO LLC is 1209 Orange Street, Wilmington, DE 19801.  The mailing address for New Goody's Giftco, LLC is 265 Commonwealth Avenue, Suite 500, Wytheville, VA 24382.  The mailing address for the remaining Debtors is 400 Goody's Lane, Knoxville, TN  37922.

Closing Sale Guidelines (the "Sale Guidelines"), with such sales to be free and clear of all liens, claims, and encumbrances; and (iii) granting such other relief as may be appropriate; and upon the Amended Declaration of David Peek, Authorized Person of Each of the Debtors, In Support of Chapter 11 Petitions and First Day Pleadings (the "Peek Declaration"); the statements of counsel; and the entire record in these cases; and it appearing that the relief requested by the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefore, it is hereby

FOUND AND DETERMINED THAT:

A.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     The statutory predicates for the relief requested are sections 105(a), 361, 363, 364 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6003, 6004, 6006 and 9014.

C.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D.     An initial hearing on the Motion was conducted on January 15, 2009 (the "Initial Hearing"). At the conclusion of the Initial Hearing, the Court entered its *Order Approving Sale Guidelines under Agency Agreement and Granting Related Relief* (the "Initial Order")[2] (Dkt.

---

[2]     Capitalized terms used but not defined herein shall have the meaning ascribed to them first in the Initial Order, then if not defined in the Initial Order, in the Agency Agreement, and if not defined in the Agency Agreement, then in the Motion.

 a copy of which is attached as Exhibit 2,

No. 72), among other things, approving the Sale Guidelines, scheduling January 20, 2009 as the final hearing date (the "Final Hearing") to consider the balance of the relief requested under the Motion and not granted in the Initial Order and making certain modifications to the Agency Agreement necessary to effectuate the relief set forth in the Initial Order.

E.      The Court conducted the Final Hearing on January 20, 2009. Upon the evidence and arguments adduced at the Final Hearing and the Initial Hearing, and for the reasons set forth in the Motion, the Court has determined that the relief requested in the Motion is in the best interests of the Debtors and their estates, and that any and all objections with respect thereto, unless resolved by the terms of this Order, should be overruled.

F.      For the reasons set forth in the Motion, due and adequate notice of the Motion and the subject matter thereof has been provided to all parties-in-interest herein, and no other or further notice is necessary under the circumstances. A reasonable opportunity to object or to be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities.

G.      Effective January 6, 2009, the Debtors and the Agent entered into the Agency Agreement and thereafter commenced soft store sales on January 9, 2009. A copy of the Agency Agreement is attached hereto as **Exhibit 1**. To secure the obligations under the Agency Agreement, the Debtors agreed in the manner set forth in section 15 of the Agency Agreement to grant to Agent a valid and perfected security interest in and lien upon all of Debtors Merchandise, commission related to the disposition of Owned FF&E and DC FF&E, and all Proceeds thereof.

H.      Time is of the essence in assuming the Agency Agreement and continuing the Store Closing Sales uninterrupted. The Debtors will suffer immediate and irreparable harm if the

Agency Agreement is not immediately assumed and the Store Closing Sales are not allowed to proceed in accordance with the Sale Guidelines and pursuant to the procedures set forth herein.

I.    The Debtors (i) have full corporate power and authority to execute and deliver the Agency Agreement and all other documents contemplated thereby, and the Sale of the Debtors' assets has been duly and validly authorized by all necessary corporate action of the Debtors, (ii) have all of the corporate power and authority necessary to consummate the transactions contemplated by the Agency Agreement and (iii) have taken all corporate action necessary to authorize and approve the Agency Agreement and the consummation of the transactions contemplated thereby. No consents or approvals, other than those expressly provided for in the Agency Agreement, are required for the Debtors to consummate such transactions.

J.    The Debtors' decision to (i) immediately assume the Agency Agreement and (ii) continue performance under and make the payments required by the Agency Agreement is a reasonable exercise of the Debtors' sound business judgment consistent with their fiduciary duties and is in the best interest of the Debtors, their estates, their creditors, and all parties in interest. The Debtors have demonstrated good, sufficient, and sound business purposes and justification for the relief approved herein on an emergency basis. Immediate assumption of the Agency Agreement is therefore justified pursuant to section 365 of the Bankruptcy Code and approval of the sale of the Debtors' assets in accordance with the Agency Agreement and the Sale Guidelines is justified pursuant to section 363 of the Bankruptcy Code.

K.    The Agent is acting in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of sections 363(m) and 364(e) of the Bankruptcy Code with respect to the Assets subject to the Store Closing Sales, in connection

with the transactions contemplated by the Agency Agreement, and with regard to the security interest granted to Agent thereunder and pursuant to this Order.

L.     The Agency Agreement was negotiated in good faith and at arm's length between the Debtors and Agent, without collusion or fraud. Neither the Debtors nor the Agent have engaged in any conduct that would prevent the application of sections 363(m) or 364(e) of the Bankruptcy Code to the Agency Agreement or to the consummation of the transactions contemplated thereby, including, but not limited to, the grant of a security interest to the Agent.

M.     The Debtors' ability to obtain the accommodations extended to them by the Agent under the Agency Agreement is vital to the Debtors' estates and their creditors, so that the Debtors may maximize the orderly liquidation value of the Debtors' estates. The Debtors and their estates have benefited, and will continue to benefit, from the accommodations provided and to be provided under the Agency Agreement. Without the relief contained in this Order, the Debtors' estates will be immediately and irreparably harmed.

N.     A condition to Agent's continued performance under the Agency Agreement, including, but not limited to, the payment of the Guaranteed Amount Deposit and the posting of the Agent Letter of Credit and the Expense L/C under the Agency Agreement and the other accommodations made to the Debtors by the Agent, is approval of the relief set forth in this Order. The Debtors are unable to obtain the benefits of the Agency Agreement except pursuant to terms set forth in this Order, including granting the Agent the perfected first-priority security interests on property of the estate as set forth in section 15 of the Agency Agreement.

O.     The Agent would not have entered into the Agency Agreement and would not consummate the transactions contemplated thereby if the Sale did not permit the transfer of estate assets free and clear of any and all liens, claims, encumbrances, mortgages, security

interests, conditional sales or title retention agreements, pledges, hypothecations, judgments or claims of any kind or nature and other interests (including, without limitation, all "claims" within the meaning of section 101(5) of the Bankruptcy Code) (collectively, the "Liens"), or if the Agent would, or in the future could, be liable for any or all of such Liens, and without the ability to transfer the estates' assets, free and clear of Liens, the Debtors and their estates will be immediately and irreparably harmed.

P.      The Sale shall be conducted free and clear of all Liens against the Debtors or their estates because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

Q.      The accommodations made to the Debtors by the Agent pursuant to this Order are and shall be deemed to be made in good faith and for valid business purposes and uses. In closing any transaction contemplated by the Agency Agreement at any time after the entry of this Order, the Agent is and shall be deemed to be a purchaser in good faith under section 363(m) of the Bankruptcy Code and, as such, is entitled to the protections afforded by section 363(m) of the Bankruptcy Code. The Sale is being effectuated in good faith within the meaning of section 363(m) of the Bankruptcy Code.

R.      The Debtors were free to deal with any other party interested in liquidating some or all of the Debtors' assets. The Agent has not violated section 363(n) of the Bankruptcy Code by any action or inaction. Specifically, the Agent has not acted in a collusive manner with any person and the Agent was not controlled by any agreement among bidders. The Agent is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code. No common identity of directors or controlling stockholders exists between the Agent and the Debtors.

S.     The consideration provided by the Agent pursuant to the Agency Agreement constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and under the laws of the United States, any state or territory, possession or the District of Columbia.

T.     Good cause therefore has been shown for the relief sought in the Motion and the entry of this Order on an expedited basis.

Now, therefore, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Motion is granted as set forth herein. All objections to the Motion, except as expressly addressed herein, are hereby overruled on their merits. This Order shall constitute the Approval Order approving the assumption of the Agency Agreement in accordance with paragraph 2.2 of the Agency Agreement.

2.     To the extent that the relief set forth in the Initial Order differs in any way from that set forth in this Order, the relief set forth in this Order shall govern. Except as expressly set forth to the contrary in this Order, the relief granted in the Initial Order shall remain in full force and effect.

<u>**Assumption of the Agency Agreement**</u>

3.     Pursuant to section 365 of the Bankruptcy Code, assumption by the Debtors of the Agency Agreement is hereby directed, authorized and approved as a valid exercise of the Debtors' business judgment.

4.     The modifications to the Agency Agreement set forth in paragraph 2 of the Initial Order shall remain in full force and effect, <u>provided</u>, <u>however</u>, that the entry of this Order on or

before January 20, 2009 shall be deemed to satisfy the provisions of Section 3.1(a) of the Agency Agreement as amended by paragraph 2 of the Initial Order.

5. Other than the increase in the Retainer set forth in section 3.3(e) of the Agency Agreement to $4,868,319.00 in accordance therewith, which the parties have agreed occurred on January 16, 2009 in compliance with the terms of the Initial Order, the modifications to the Agency Agreement set forth in paragraph 3 of the Initial Order are abrogated and of no further force and effect. The Retainer as increased by paragraph 3 of the Initial Order shall be applied in the manner set forth in the Agency Agreement.

6. Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors are authorized to continue performance under and make all payments required by the Agency Agreement as and when due thereunder without further order of this Court.

7. The Debtors, the Agent and each of their respective officers, employees and agents be, and they hereby are, authorized to execute such documents and to do such acts as are necessary or desirable to carry out the Sale and effectuate the Agency Agreement and the related actions set forth therein.

8. The Debtors, the Agent and each of their respective officers, employees and agents be, and they hereby are, authorized and directed to execute and deliver, and empowered to perform under, consummate and implement, the Agency Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agency Agreement, and to take all further actions as may be requested by the Agent in relation thereto, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agency Agreement. The Debtors, the Agent and each of their respective

officers, employees and agents be, and they hereby are, authorized to take or refrain from taking any and all steps necessary to effectuate, consummate and/or implement the terms of this Order.

### Agent's Security Interest

9. Upon the payment of the Guaranteed Amount Deposit to the Debtors for the benefit of General Electric Capital Corporation ("GECC") and GB Merchant Partners, LLC, ("GBMP," and together with GECC, the "Senior Secured Lenders"), all amounts owed by the Debtors to the Agent under the terms of the Agency Agreement shall be and hereby are granted the status of superpriority claims in the Debtors' bankruptcy cases pursuant to Bankruptcy Code section 364(c), and shall have priority over all other costs and expenses of administration of the kinds specified in, but not limited to, sections 105, 326, 503(b), 507(a) or 507(b) of the Bankruptcy Code.

10. Upon the payment of the Guaranteed Amount Deposit to the Debtors for the benefit of the Senior Secured Lenders, the obligations owned by the Debtor to Agent under the Agency Agreement shall be and hereby are secured under sections 363(b) and 364(d) of the Bankruptcy Code by a valid and perfected first priority security interest in and lien upon the Merchandise, Agent's disposition commission related to Owned FF&E and DC FF&E as provided for in Section 16.10 of the Agency Agreement, the Agent's commission regarding the sale or other disposition of Merchant Consignment Goods under Section 5.5 of the Agency Agreement, and the Proceeds, to secure all obligations of Debtors to Agent, junior only to the Senior Secured Lenders up to (a) an amount equal to the unpaid portion of the Guaranteed Amount, (b) any amount owed by Agent to Debtors for Expenses (to the extent owed after consideration of Agent's offset rights under Section 3.3(d) of the Agency Agreement, if any), (c) the Recovery Amount and (d) any other amounts owed by Agent to Debtors under the

Agency Agreement. For the purposes of perfecting such security interests in the Proceeds, the financial institutions acting on behalf of the Debtors in receiving the Proceeds, other than GECC and GBMP, shall be deemed to be acting on behalf of Agent in an agency capacity. In addition, the obligations and liabilities of the Debtors under the prepetition revolving loan documents (the "Prepetition Revolver Loan Documents") with GECC, as agent for the revolving lenders (the "Revolver Secured Parties"), and the prepetition term loan documents (the "Prepetition Term Loan Documents") with the Term Loan Secured Parties, and the liens on the assets of the Debtors other than those transferred to Agent, and securing those obligations and liabilities shall be reinstated with full force and effect in such amount as is refunded or disgorged if, at any time after the payment in cash of all or any portion of such obligations and liabilities of the Debtors owing to GECC and the Revolver Secured Parties, or GBMP and the Term Loan Secured Parties, each as applicable, is voided, rescinded or refunded for any reason, including without limitation, reversal, modification or vacatur of this Order, all as though such payment had not been made. For the avoidance of doubt, the security interests granted Agent hereunder shall, subject only to the terms of Section 15 of the Agency Agreement, at all times be senior to the liens and/or security interests of the Senior Secured Lenders, including any liens and/or security interests reinstated pursuant to the preceding sentence.

11. The security interest granted hereby shall be deemed to and hereby is properly perfected upon entry of this Order without the need for further filings or further documentation. Without in any way diminishing the foregoing, the Debtors shall execute all such documents and take all such other actions as are reasonably required to perfect and maintain such security interest as a valid and perfected first priority security interest. The liens, claims and security interests and other protections granted to the Agent hereunder shall continue (including in any

successor case) and shall maintain their priority as provided in this Order until all of Debtors' obligations to Agent shall have been indefeasibly paid in full.

12.     The granting of the security interests under this Order shall constitute a transfer of estate assets and shall be afforded all of the protections of sections 363(n) and 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the transactions contemplated by the Agency Agreement pursuant to this Order and the Interim Order shall not affect the validity of such transactions, unless such authorization and consummation are properly stayed pending appeal.

## Sale of Estate Property

13.     Pursuant to sections 105(a) and 363 of the Bankruptcy Code, the Debtors, the Agent and each of their respective officers, employees and agents may conduct the Sale and are entitled in so doing to all of the protections afforded thereby.

14.     Except as otherwise provided in the Agency Agreement, pursuant to section 363(f) of the Bankruptcy Code, the Sale shall constitute a transfer of estate assets free and clear of Liens, with such Liens attaching only to the Guaranteed Amount and the Recovery Amount, with the same validity, priority, force, and effect that they now have as against such assets and the Merchandise, and subject to any and all defenses, claims and/or counterclaims or setoffs that may exist with respect thereto. The Debtors are hereby authorized and directed to utilize the Guaranteed Amount Deposit, and, as necessary, the Recovery Amount, to satisfy the Liens of GECC, as agent for the Revolver Secured Parties and GBMP, as agent for the Term Loan Secured Parties without need for further order of this Court in accordance with the waterfall provisions set forth in the Intercreditor Agreement dated October 20, 2008 by and among the Senior Secured Lenders and the Debtors. The Guaranteed Amount Deposit, and, as

necessary, the Recovery Amount, shall be distributed to the Secured Lenders as follows: first, to GECC, as agent for the Revolver Secured Parties until its prepetition debt is paid in full; second, to GBMP, as agent for the Term Loan Secured Parties until its prepetition debt is paid in full; third, $250,000.00 to fund the Revolver Indemnity Account (as defined in the Cash Collateral Order); fourth, $250,000.00 to fund the Term Loan Indemnity Account (as defined in the Cash Collateral Order); fifth, $250,000.00 to fund the Bank Products Indemnity Account (as defined in the Cash Collateral Order); sixth, to PGDYS Lending, LLC, as agent under the Tranche C and Tranche D loans until its prepetition debt is paid in full; and seventh, to the Company and the Agent, in such amounts as set forth in the Agency Agreement. To the extent that any over-funded amounts in respect of the Guaranteed Amount have been received by any Secured Party or Secured Parties and have not been reimbursed by Debtors, Agent shall inform Secured Parties of such overpayment in writing in respect of the Guaranteed Amount hereunder on account of the Merchandise and such reimbursement shall be paid (i) first, from PGDYS for the Tranche D lenders (the "Tranche D Secured Parties") to the extent of and until all amounts received by PGDYS and the Tranche D Secured Parties from the Guaranteed Amount hereunder shall have been exhausted, (ii) second, from PGDYS for the Tranche C lenders (the "Tranche C Secured Parties") to the extent of and until all amounts received by PGDYS and the Tranche C Secured Parties from the Guaranteed Amount hereunder shall have been exhausted, (iii) third, from GBMP for the Term Loan Secured Parties to the extent of and until all amounts received by GBMP and the Term Loan Secured Parties from the Guaranteed Amount hereunder shall have been exhausted and (iv) fourth, from GECC for the Revolver Secured Parties to the extent of and until all amounts received by GECC and Revolver Secured Parties hereunder from the Guaranteed Amount shall have been exhausted. Each Secured Lender agrees to disgorge such

overpayment required above in respect of the Guaranteed Amount hereunder on account of the Merchandise to Agent within two (2) business days of such written notice; provided, however, that such affected Secured Lender(s) may contest any required disgorgement, and any such contest shall toll the requirement for disgorgement hereunder until a court of competent jurisdiction instructs Secured Lender that such disgorgement is required. Failure by one or more Secured Lenders to make the disgorgement payments specified by this paragraph 11 shall not give rise to a right by Agent to seek disgorgement from any other Secured Lender if such Secured Lender is designated as being subject to disgorgement after the Secured Lender failing to make payment. For example and for the avoidance of doubt, failure by the Tranche C Secured Parties to disgorge payments received pursuant to this paragraph shall not in any way impact or result in the Agent's ability to require disgorgement by the Term Loan Secured Parties or the Revolver Secured Parties.

15.     Notwithstanding Bankruptcy Rules 6003, 6004 and 6006, sufficient cause, including a showing of irreparable and immediate harm to the Debtors, exists such that this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any person or entity obtaining a stay of this Order pending appeal, the Debtors and the Agent are free to perform under the Agency Agreement at any time, subject to the terms of the Agency Agreement, and the Agent shall be afforded the protections of section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the Agency Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

## The Sale and the Sale Guidelines

16.    No party has raised an objection to the relief set forth in Initial Order with respect to the manner in which the Sale is to be conducted and the Sale Guidelines within the time periods set forth in the Initial Order, including, as applicable, through date and time of the Final Hearing. As a result, the relief set forth in the Initial Order on an interim basis or extended only through the Continued Hearing Date (as such date was defined in the Initial Order) is hereby made final and granted without limitation.

17.    Immediately upon entry of this Order, the terms and provisions of this Order shall become valid and binding and inure upon the benefit of the Agent and the Debtors, all prepetition secured and unsecured lenders and creditors and all parties-in-interest, and any trustee or other fiduciary appointed in this Chapter 11 case. The provisions of this Order and the Agency Agreement and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered confirming or consummating any plan or plans of reorganization of the Debtors (including a plan or plans of liquidation), dismissing the case, or converting the Debtors' cases from Chapter 11 to Chapter 7 of the Bankruptcy Code, and the terms and provisions of the Agency Agreement as well as the rights and interests granted pursuant to this Order and the Agency Agreement shall continue in this or any superseding case and shall be binding upon the Debtors, all creditors (whether known or unknown) of the Debtors, the Agent, their affiliates and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors under Chapter 7 or Chapter 11 of the Bankruptcy Code. Any trustee appointed in these cases shall be and hereby is authorized·and directed to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of this Order and the Agency Agreement, and the Agent and

the trustee shall be and hereby are authorized to perform under the Agency Agreement upon the appointment of a trustee with the need for further order of this Court.

18.     The Owned FF&E or DC FF&E remaining in the Stores or the Distribution Centers as of the Sale Termination Date shall, unless the affected lessor has been previously notified in writing by the Debtors or the Agent to the contrary at least three (3) days prior to the Sale Termination Date, be deemed abandoned in place by the Debtors and/or the Agent, and the affected landlord may dispose of such property without liability to them, the Debtors, the Agent, or any third party.

19.     Before any sale or abandonment of computers (including software) and/or cash registers and any other point of sale Owned FF&E or DC FF&E (collectively, "POS Equipment") which may contain Personally Identifiable Information, the Debtors shall remove or cause to be removed the Personally Identifiable Information from the POS Equipment.

20.     Nothing in this Order shall (a) alter or affect the Debtors' obligation to comply with section 365(d)(3) of the Bankruptcy Code or (b) alter or modify the rights of any lessor or other counterparty to a lease with the Debtors to file an appropriate motion or otherwise seek appropriate relief if the Debtors fail to comply with section 365(d)(3) of the Bankruptcy Code.

21.     The Agent is a party-in-interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to the Agency Agreement and the conduct of the Sale.

22.     Notwithstanding any provisions of this Order or any order pertaining to post-petition financing, post-petition use of cash collateral, or the sale of the Debtors' assets, or any agreements validated by any such orders, the liens currently held by Brown CAD, Corsicans ISD, Ector CAD, Gregg County, Hunt County, Lamar CAD, Navarro County, Northeast TX

*Montgomery County*

Community College District, Smith County, Stephenville, Stephenville ISD, Anderson County,

Erath County and Longview ISD, (the "Local Texas Tax Authorities") shall neither be primed by

nor subordinated to any liens granted thereby.

23.     Furthermore, from the proceeds of the sale of any of the debtors' assets located in

the state of Texas, the amount of $55,000 [*$60,000*] shall be set aside by the debtors in a segregated

account as adequate protection for the secured claims of the Local Texas Tax Authorities prior to

the distribution of any proceeds to any other creditor. The liens of the Local Texas Tax

Authorities shall attach to these proceeds to the same extent and with the same priority as the

liens they now hold against the property of the debtors.  These funds shall be on the order of

adequate protection and shall constitute neither the allowance of the claims of the Local Texas

Tax Authorities, nor a cap on the amounts they may be entitled to receive.  The provision of

these funds shall not constitute an admission of liability by the Debtors to the Local Texas Tax

Authorities or of the existence, perfection or priority of any liens, or otherwise securing any

claims of the Local Texas Tax Authorities.  Furthermore, the claims and liens of the Local Texas

Tax Authorities shall remain subject to any objections any party would otherwise be entitled to

raise as to the priority, validity or extent of such liens. These funds may not be distributed apart

from agreement between the Local Texas Tax Authorities and the Debtors, or by subsequent

order of the Court, duly noticed to the Local Texas Tax Authorities.

24.     In accordance with the bidding procedures utilized at the auction, the joint venture

of Great American Group WF, LLC, Hudson Capital Partners, LLC, SB Capital Group, LLC,

and Tiger Capital Group, LLC (collectively, the "Stalking Horse") is entitled to the break-up fee

of $350,000 and the Debtors are authorized and directed to pay such amount immediately upon

the receipt of the Guarantee Amount Deposit from the Agent.

## General Provisions

24. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

25. The failure specifically to include any particular provisions of the Agency Agreement or in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Agency Agreement be authorized and approved in their entirety.

26. To the extent, if any, anything contained in this Order conflicts with a provision in the Agency Agreement or the Sale Guidelines, this Order shall govern and control; provided, however, that any side letter entered into by and between the Agent and any landlord shall control with respect to the conduct of the Sale as to those parties.

27. The Court shall retain exclusive jurisdiction over the parties to enforce this Order and the relief provided for herein, the Agency Agreement, the Sale Guidelines, any side letter entered into by and between the Agent and any landlord, all amendments or modifications to any of the foregoing, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, and to determine disputes thereunder, and protect the Agent against any Liens or interference with the Sale, or to resolve any disputes relating to the Sale or the Agency Agreement or the implementation thereof.

Dated: January 20, 2009
      Wilmington, Delaware

                                    _____
                                    Christopher S. Sontchi
                                    United States Bankruptcy Judge

TAB 6

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - - - - - - - - - - - - -   x   Chapter 11
                                                    :
In re:                                              :
                                                    :   Case No. 09-10124 (CSS)
                                                    :
GOODY'S, LLC, et al.,¹                              :
                                                    :   Jointly Administered Pending
                                                    :
                              Debtors.              :
- - - - - - - - - - - - - - - - - - - - - - - - -   x   Related to Docket No. 13
```

## ORDER APPROVING SALE GUIDELINES UNDER AGENCY AGREEMENT AND GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion") of the debtors and debtors in possession

in the above-captioned cases (collectively, the "Debtors" or the "Company"), pursuant to

sections 105(a), 361, 363, 364, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101–

1532 (the "Bankruptcy Code"), (i) authorizing the assumption of the Agency Agreement dated

January 6, 2009, between Goody's LLC ("Goody's") and its direct and indirect subsidiaries, on

the one hand, and a joint venture comprised of Hilco Merchant Resources, LLC and Gordon

Brothers Retail Partners, LLC (together, the "Agent"), on the other hand (the "Agency

Agreement"); (ii) authorizing and approving the Debtors to conduct going-out-of-business, store

closing sales (the "Store Closing Sales") in accordance with the terms of the Agency Agreement

and the Store Closing Sale Guidelines (the "Sale Guidelines"), with such sales to be free and

clear of all liens, claims, and encumbrances; and (iii) granting such other relief as may be

appropriate; and upon the Declaration of David Peek, Authorized Person of Each of the Debtors,

In Support of Chapter 11 Petitions and First Day Pleadings (the "Peek Declaration"); the

---

¹ The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification
number are: Goody's, LLC (9573); New SYDOOG LLC (2047); New Trebor of TN, LLC (2157); New
GOFAMCLO, LLC (2268); New Goody's Giftco, LLC (2366); New Goody's MS, L.P. (2490); New GFCTX, L.P.
(2581); New Goody's IN, L.P. (3191); New GFCTN, L.P. (3266); New GFCGA, L.P. (3366); New Goody's ARDC,
L.P. (3486); New Goody's Retail MS, L.P. (3527); New Goody's Holding TN, LLC (3620); and New Goody's
TNDC, L.P. (3673). The Debtors' executive headquarters' address is 400 Goody's Lane, Knoxville, TN 37922.

statements of counsel; and the entire record in these cases; and it appearing that the relief granted herein is in the best interests of the Debtors, the Debtors' estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefore, it is hereby

FOUND AND DETERMINED THAT:

A.     Subject to the Court's determination of the *Emergency Motion of the Ad Hoc Committee of Unsecured Creditors to Dismiss Chapter 11 Cases*, this Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     The statutory predicates for the relief requested are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 2002.

C.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D.     For the reasons set forth in the Motion, due and adequate notice of the relief granted herein and the subject matter thereof has been provided to all parties-in-interest herein, and no other or further notice is necessary. A reasonable opportunity to object or to be heard with respect to the relief granted herein has been afforded to all interested persons and entities.

E.     Effective January 6, 2009, the Debtors and the Agent entered into the Agency Agreement and thereafter commenced soft store sales on January 9, 2009. A copy of the Agency Agreement was attached as Exhibit 1 to the Motion.[2]

F.     Time is of the essence with respect to the relief granted herein. The Debtors will suffer immediate and irreparable harm if the relief granted set forth herein is immediately granted.

G.     The Debtors have demonstrated good, sufficient, and sound business purposes and justification for the relief approved herein on an emergency basis.

H.     Good cause therefore has been shown for the relief set forth herein and the entry of this Order on an expedited basis.

Now, therefore, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

<u>**The Sale and the Sale Guidelines**</u>

1.     The Sale Guidelines attached hereto as **Exhibit 1** (the "Sale Guidelines") are ~~the~~ *as modified by any side letter agreement entered into by and between the Agent and any landlord,* hereby approved and shall be deemed ~~to be the "Sale Guidelines" as referred to in the Agency~~ Agreement.

2.     The parties to the Agency Agreement have agreed that section 3.1(a) of the Agency Agreement shall be modified to replace the date "January 15, 2009" with the later of (a) the date "January 20, 2009" or (b) ~~such date as the Debtors fail to comply with paragraph 3 of~~ ~~this Order.~~ *such later date, provided that the Debtors continue to increase the Retainer in accordance with paragraph 3 below.*

*In consideration for paragraph 2 hereof,* 3.     The parties agree that the Retainer set forth in section 3.3(e) of the Agency Agreement shall be increased to an amount ~~equal to~~ *not to exceed* $4,868,319.00. *subject to the Debtors' right to review and reconcile* The Debtors shall fund any

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Agency Agreement, and if not defined in the Agency Agreement, then in the Motion.

{00266466;v2}

3

amount of the Retainer not previously funded on or before January 16, 2009. Should the

Continued Hearing Date (as defined below) be extended, the Retainer shall be increased to an

amount equal to the expenses *reasonable expected to be incurred* through and including the continued date as set forth in the Budget

attached hereto as **Exhibit 2.** *subject to the Debtors' right to review and reconcile.* The Debtors shall fund any such increase in the Retainer no later

than one (1) business day following the continuance being granted by the Court.

4.      The Motion has been continued until January 20, 2009 (the ("Continued Hearing

Date"). From the date of entry of this Order through and including the Continued Hearing Date,

the Agent shall have the right to use the Stores, Distribution Centers and all related Store and

Distribution Center services, furniture, fixtures, equipment and other assets of the Debtors as

designated hereunder for the purpose of conducting the Sale free from interference of any entity

or person, in accordance with the provisions of the Agency Agreement.

5.      From the date of entry of this Order through and including the Continued Hearing

Date, the Agent shall be granted a limited license and right to use until the Sale Termination Date

the trade names, logos and customer lists relating to and used in connection with the operation of

the Stores and Distribution Centers, solely for the purpose of advertising the Sale in accordance

with the terms of this Order.

6.      Nothing in this Order or the Agency Agreement and none of the Agent's actions

taken in respect of the Sale shall be deemed to constitute an assumption by the Agent of any of

Debtors' obligations relating to any of the Debtors' employees, nor shall the Agent become liable

under any collective bargaining or employment agreement, if applicable, or be deemed a joint or

successor employer with respect to such employees.

7.      The Agent shall not be liable for any claims against the Debtors other than as expressly provided for in the Agency Agreement, and Agent shall have no successor liabilities whatsoever.

8.      Except as may otherwise expressly be provided for in this Order, the Agency Agreement or the Sale Guidelines, the Debtors and/or the Agent (as the case may be) are authorized and empowered to transfer the Merchandise, Owned FF&E and DC FF&E among the Stores and the Distribution Centers.

9.      Each and every federal, state or local agency, department or governmental authority with regulatory authority over the Sale and all newspapers and other advertising media in which the Sale may be advertised are directed to accept this Order as binding authority so as to authorize the Debtors and the Agent to conduct the Sale, including, without limitation, conducting and advertising the Sale in accordance with the Sale Guidelines and this Order without the need to comply with Liquidation Sale Laws.

10.     Subject to applicable state and local public health and safety laws ("Safety Laws"), and applicable tax, labor, employment, environmental and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws"), but with respect to Liquidation Sale Laws and Banner and Signwalker Advertising (as defined herein) not subject to Safety Laws or General Laws, the Debtors and the Agent be, and they hereby are, authorized to take such actions necessary and appropriate to implement the Agency Agreement and to conduct the Sale without the necessity of a further order of this Court as provided by the Agency Agreement, including, but not limited to, advertising the Sale through the posting of signs (including the use of exterior banners) in accordance with the Agency Agreement and as otherwise provided in the Sale Guidelines.

{00266466;v2}

5

11.  Except as may otherwise expressly be provided for in this Order, the Agency Agreement or the Sale Guidelines: no person or entity, including but not limited to any landlord, utility provider, creditor or federal or Governmental Unit (as defined in Bankruptcy Code Section 101(27)), (i) served with a copy of the Motion; or (ii) served with a copy of this Order who does not object pursuant to the provisions of this Order, shall take any action to directly or indirectly prevent, interfere with or otherwise hinder consummation of the Sale, or the advertising and promotion (including the posting of signs) of such Sale, and all such parties and persons of every nature and description, including landlords and utility companies and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, or otherwise impeding the conduct of the Sale and/or (b) instituting any action or proceeding in any court or administrative body seeking an order or judgment against, among others, the Debtors, the Agent or the Debtors' landlords, that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sale and/or seek to recover damages for breach(es) of covenants or provisions in any lease or sublease based upon any relief authorized herein, this Court shall retain exclusive jurisdiction to resolve such dispute, and such parties or persons shall take no action against the Debtors, the Agent, the landlords or the Sale until this Court has resolved such dispute.  This Court shall hear the request of such persons or parties with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.  No Governmental Units shall be bound by this injunctive provision unless it was either previously served with the Motion or subsequently served with this Order, and has had an opportunity to object as provided in this Order, and failed to timely file an objection.

12.     Except as may otherwise expressly be provided for in this Order, the Agency

Agreement or the Sale Guidelines, the Sale shall be conducted by the Debtors and the Agent

without the necessity of compliance with any federal, state or local statute or ordinance, lease

provision or licensing requirement affecting bulk sales, store closings, "going out of business,"

liquidation or auction sales, or advertising, including signs, banners, posting of signage and use

of signwalkers, other than Safety Laws and General Laws.  NOTWITHSTANDING THE

FOREGOING SENTENCE, OR ANY OTHER PROVISION OF THIS ORDER, OR OF THE

AGENCY AGREEMENT, OR OF THE SALE GUIDELINES TO THE CONTRARY, with

respect solely to Agent's use, in conformity with the Sale Guidelines, of (i) signwalkers;

(ii) interior store signage and banners; and (iii) exterior banners ("Banner and Signwalker

Advertising"), (A) Agent is unconditionally authorized to use Banner and Signwalker

Advertising (except only to the extent limited by an agreement between Agent and a landlord

entered into in connection with the Sale) notwithstanding any local Liquidation Sale Laws,

Safety Laws, General Laws, or lease provision which purports to regulate, prohibit, restrict, or in

any way limit such activity so long as such activity is undertaken by Agent in a safe and

professional manner; (B) any person (including, without limitation, any Governmental Unit or

landlord) who, after having received a copy of this Order, and after having been specifically

advised in writing of the provisions of this Section, continues to interfere with any Banner and

Signwalker Advertising, including any action by a Governmental Unit taken against a landlord

based on the activities of Agent undertaken pursuant to this Order (other than by seeking redress

to this Court as provided in this Section or as permitted by further ruling of the Court as a result

thereof) shall be liable to Agent and/or Debtors and affected landlord(s) for any and all damages

resulting from such continued interference; and (C) this Court shall retain exclusive jurisdiction

with respect to any claim or issue by any person (including without limitation any Governmental Unit or landlord) that seeks to regulate, prohibit, restrict, or in any other way limit Banner and Signwalker Advertising, or that alleges that Banner and Signwalker Advertising is not being undertaken in a safe and professional manner, with any such claim or issue to be heard by this Court on an expedited basis.

13.     Except as expressly provided in this Order, nothing in this Order shall be deemed to bar any Governmental Unit from enforcing Safety Laws and General Laws in the applicable non-bankruptcy forum, subject to the Debtors' or Agent's right to assert that any such laws are not in fact Safety Laws or General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Order or otherwise; provided, however, that the Governmental Unit shall in the first instance present the matter to this Court for resolution, or to request that the Governmental Unit be permitted to proceed with the matter in the applicable non-bankruptcy forum; provided further, however, the Governmental Unit shall provide the Debtors and the Agent with reasonable notice and opportunity to cure any such alleged violation absent extenuating circumstances and/or to oppose the relief sought by such Governmental Unit. The Debtors and/or the Agent do not waive the right to argue that the conduct was in compliance with this Order and/or any applicable law, or preempted by applicable law.

14.     The Debtors shall serve copies of this Order within two (2) business days, via first-class mail, upon (i) the State Attorney General's offices (upon (x) Chief or Director of the Consumer Protection Division or Bureau; and (y) Chief or Director of the Bankruptcy Division or Bureau) and State Consumer Protection Agency for each State where a Store or Distribution Center is located, and (ii) the Local mayor (as defined herein) or similar representative of each village, or city official, and the county or parish where a Store or Distribution Center is located,

{00266466;v2}

8

addressed to the attention of the municipal, city or county attorney, in each case to the consumer protection division. Except as otherwise expressly provided in this Order, this Court shall retain exclusive jurisdiction to resolve any dispute arising under local Liquidation Sale Laws and related to the Sale Guidelines, the Agency Agreement, or this Order, by any Governmental Unit raised on or before the Continued Hearing Date. Except as provided in this Order with respect to Banner and Signwalker Advertising, nothing herein shall preclude any Governmental Unit from enforcing Safety Laws or General Laws in an appropriate non-bankruptcy forum.

15. Provided that the Sale is so conducted in accordance with this Order (and subject to the provisions of this Order), the Debtors, the Agent and the Debtors' landlords shall be presumed to be in compliance with any State, county, parish or municipal or other local government's (hereinafter referred to as "Local") requirements governing the conduct of the Sale, including but not limited to Local statutes, regulations and ordinances establishing licensing or permitting requirements, waiting periods, time limits, or bulk sale restrictions that would otherwise apply to the Sale (collectively, the "Liquidation Sale Laws") of (i) any Governmental Unit served with a copy of the Motion; and (ii) any Governmental Unit served with this Order and who does not object pursuant to the provisions of this Order. The term "Liquidation Sale Laws" shall be deemed not to include any Safety Laws or General Laws. Notwithstanding any other provision in this Order, nothing herein shall exempt the Debtors and/or the Agent from compliance with any Safety Laws or General Laws or preclude any governmental entity from enforcing any Safety Laws or General Laws in the appropriate non-bankruptcy forum.

16. Nothing herein shall be deemed to constitute a ruling on whether any non-bankruptcy state law, regulation or rule applicable to the Sale is preempted by the Bankruptcy Code nor as to whether the automatic stay applies nor is this Order a ruling with respect to

{00266466;v2}

9

whether sovereign immunity applies, and the failure of any State to object to the entry of this Order shall not operate as a waiver with respect thereto.

17.     All state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales." The Agent shall accept return of any goods that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, provided that the consumer must return the merchandise within the time period proscribed by the Debtors' return policy that was in effect when the merchandise was purchased (except with respect to items purchased during the Sale, in which case such items must be returned within twenty-one (21) days of purchase), the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect. The Debtors shall reimburse Agent for any documented refund attributable to a "latent" defect as part of the weekly sale reconciliation process.

18.     Except as may otherwise expressly be provided for in this Order, the Agency Agreement or the Sale Guidelines, the Sale shall be conducted by the Debtors and the Agent notwithstanding any restrictive provision of any lease, sublease or other agreement relative to occupancy, including (without limitation) reciprocal easement agreements, agreements containing covenants, conditions and restrictions (including, without limitation, "go-dark" provisions and landlord recapture rights), or other similar documents or provisions (collectively, the "Restrictive Documents"), affecting or purporting to restrict the conduct of the Sale, the rejection of leases, abandonment of assets or "going dark" provisions; provided, however, that nothing in this Order shall impact any objection a landlord may have to assumption, assignment

or rejection of their respective lease or to any proposed cure amount or rejection damages claim in association with such assumption, assignment or rejection, all of which are expressly reserved.

19.    The Debtors are authorized, notwithstanding any restrictive provision of any lease purporting to affect the Store Closing Sales, to sell the Assets and to take such other and further actions as may be necessary to effectuate the Store Closing Sales, provided that such actions do not violate the Sale Guidelines. Except as otherwise explicitly provided in this Order, nothing herein shall relieve the Debtors of their obligations under section 365(d)(3) of the Bankruptcy Code with respect to the leases covering the premises for the Stores.

20.    Gift certificates, gift cards and merchandise credits issued by the Debtors prior to the Sale Commencement Date shall be accepted and honored by the Agent during the Sale Term as provided in the Agency Agreement.

21.    Nothing in this Order shall (a) alter or affect the Debtors' obligation to comply with section 365(d)(3) of the Bankruptcy Code or (b) alter or modify the rights of any lessor or, other counterparty to a lease with the Debtors to file an appropriate motion or otherwise seek appropriate relief if the Debtors fail to comply with Section 365(d)(3) of the Bankruptcy Code.

22.    The Agent is a party-in-interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to the Agency Agreement and the conduct of the Sale.

23.    The final hearing to consider entry of the Approval Order (the "Final Hearing") is scheduled for _January 20_, 2009 at _11:00 a_.m. (Eastern time) before The Honorable Christopher S. Sontchi, United States Bankruptcy Judge, Courtroom #6 at the United States Bankruptcy Court for the District of Delaware.

## General Provisions

24. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

25. The failure specifically to include any particular provisions of the Agency Agreement or in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Agency Agreement be authorized and approved in their entirety.

26. To the extent, if any, anything contained in this Order conflicts with a provision in the Agency Agreement or the Sale Guidelines, this Order shall govern and control; *provided, however, any Side letter entered into by and between the Agent and any landlord shall control.*

27. The Court shall retain exclusive jurisdiction over the parties to enforce this Order and the relief provided for herein, the Agency Agreement, the Sale Guidelines, all amendments or modifications to any of the foregoing, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, and to determine disputes thereunder, and protect the Agent against any Liens or interference with the Sale, or to resolve any disputes relating to the Sale or the Agency Agreement or the implementation thereof.

28. Notwithstanding any provision of this Order to the contrary, this Order shall not constitute the Approval Order or the approval *for the assumption* of the Agency Agreement.

Dated: __1/15__, 2009
Wilmington, Delaware

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
United States Bankruptcy Judge

{00266466;v2}

12

TAB 7

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ------------------------------------------------ x | |
| In re: | Chapter 11 |
| | |
| KB TOYS, INC. | Case No. 08-13269 (KJC) |
| a Delaware corporation, et al., | |
| | Jointly Administered |
| Debtors. | |
| ------------------------------------------------ x | Ref. Docket Nos. 25, 28 & 61 |

**ORDER: (I) AUTHORIZING AND APPROVING THE CONDUCT OF GOING OUT OF
BUSINESS, STORE CLOSING OR SIMILAR THEMED SALES, WITH SUCH SALES TO
BE FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES; (II)
AUTHORIZING THE DEBTORS TO ASSUME THE CONSULTING AGREEMENT; (III)
AUTHORIZING CUSTOMARY BONUSES TO STORE-LEVEL EMPLOYEES OF
GOING OUT OF BUSINESS LOCATIONS; AND (IV) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[1] of KB Toys, Inc. a Delaware

corporation, and certain of its direct and indirect subsidiaries, the debtors and debtors in possession

in the above cases (collectively, the "Debtors"),[2] by and through their undersigned counsel, for

entry of an order, pursuant to sections 105(a), 363, 365 and 554 of title 11 of the United States

Code (the "Bankruptcy Code"): (i) authorizing the Debtors to conduct going-out-of-business, store

closing or similar themed sales in accordance with the terms of the store closing sale guidelines

(the "Sale Guidelines") annexed hereto as Exhibit 1, with such sales to be free and clear of all

liens, claims and encumbrances, (ii) authorizing the assumption of the Consulting Agreement dated

as of December 11, 2008, by and between the Debtors and a joint venture comprised of Gordon

Brothers Retail Partners, LLC and Great American Group, LLC (the "Consulting Agreement"), a

---

[1] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the
Motion.

[2] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: KB
Toys, Inc. (0658), KB Toy of Massachusetts, Inc. (6093), KB Toys Retail, Inc. (3156), KB Toys Gift Cards, Inc.
(9425), KB Toys Puerto Rico, Inc. (2716), KB Toys Merchandising, Inc. (4697), Creative Innovations & Sourcing HK,
Inc. (6974), Creative Innovations & Sourcing, LLC (9936), and KB Holdings, LLC (7797). The Debtors' executive
headquarters' address is 100 West Street Pittsfield, MA 01201.

.067890.1001

copy of which is annexed hereto as Exhibit 2; (iii) authorizing the Debtors to pay customary

retention bonuses to store-level employees at going-out-of-business locations; and (iv) granting

such other related relief as may be appropriate; and due and proper notice of this Motion having

been provided; and it is appearing that no other or further notice need be provided; and after due

deliberation and sufficient cause appearing therefor, it is hereby

FOUND AND DETERMINED, AS FOLLOWS:

A.     The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157

and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these

cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.     The statutory predicates for the relief sought in the Motion are sections 105,

363, 365 and 554 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

C.     The findings and conclusions set forth herein constitute the Court's findings

of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this

proceeding pursuant to Bankruptcy Rule 9014.

D.     To the extent any of the findings of fact constitute conclusions of law, they

are adopted as such. To the extent any of the following conclusions of law constitute findings of

fact, they are adopted as such.

E.     For the reasons set forth in the Motion, due and adequate notice of the

Motion and the subject matter thereof has been provided to all parties-in-interest herein, and no

other or further notice is necessary. A reasonable opportunity to object or to be heard with respect

to the Motion and the relief requested therein has been afforded to all interested persons and

entities.

F.     The Consultant is acting in good faith, as that term is used in the Bankruptcy

Code and the decisions thereunder, and is entitled to the protections of sections 363(m) and (n) of

2

the Bankruptcy Code with respect to the Assets subject to the Store Closing Sales and in connection with the transactions contemplated by the Consulting Agreement.

G.    The Consulting Agreement was negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud. Neither the Debtors nor the Consultant have engaged in any conduct that would prevent the application of Bankruptcy Code section 363(m) or cause the application of or implicate section 363(n) of the Bankruptcy Code to the Consulting Agreement or to the consummation of the transactions thereby. The Consultant is entitled to the protections of section 363(m) of the Bankruptcy Code.

H.    The offer of the Consultant upon the terms and conditions set forth in the Consulting Agreement, including the form and total consideration to be realized by the Debtors pursuant to the Agreement, (i) is the highest or otherwise best offer received by the Debtors; (ii) is fair and reasonable; and (iii) is in the best interests of the Debtors' creditors and estates.

I.    Granting the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest. The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

J.    The assumption of the Consulting Agreement is a sound exercise of the Debtors' business judgment.

K.    The closing of the Closing Stores is in the best interest of the Debtors' estates.

L.    The conduct of the Store Closing Sales at the Closing Stores will provide an efficient means for the Debtors to dispose of the assets in accordance with the terms of the Consulting Agreement.

3

M.     The Debtors are authorized to sell the Assets pursuant to the Sale Guidelines free and clear of all liens, claims, interests and encumbrances of any kind or nature whatsoever, with such liens, claims, interests and encumbrances transferring and attaching to the proceeds of the Store Closing Sales with the same validity and priority as such interests had in merchandise and/or owned furniture, fixtures and equipment immediately prior to the consummation of the Store Closing Sales, because one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. Those holders of liens, claims, interests and encumbrances who did not object to the Motion or the relief requested therein, or who interposed and then withdrew their objections, are deemed to have consented to the Store Closing Sales and the sale of the Assets pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of liens, claims, interests and encumbrances who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their interests, if any, attach to the proceeds of the sale of the Assets.

N.     The Debtors have represented that they are neither selling nor leasing personally identifiable information pursuant to the Motion, although the Consultant will be authorized to distribute emails and promotional materials to the Debtors' customers.

NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

1.     The Motion is granted as set forth herein. All objections to the Motion to the extent not previously withdrawn, waived, settled or specifically addressed in this Order, and all reservations of rights included in such objections, are overruled in all respects on the merits and denied.

2.     The Debtors are authorized and empowered to take any and all further actions as may be reasonably necessary or appropriate to give effect to this Order.

4

3.    The Debtors are authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct Store Closing Sales at the Closing Stores identified in the Consulting Agreement annexed hereto as Exhibit 2. No bulk sale, "going-out-of-business", or similar law shall prohibit the Debtors or the Consultant from taking any action contemplated by the Consulting Agreement.

4.    In the event the Debtors, in consultation with the Lenders (as defined in the Consulting Agreement), determine (i) to exclude certain saleable inventory from "Merchandise" in accordance with the Consulting Agreement, and (ii) that the sale of such excluded inventory through a bulk sale or similar disposition through the Debtors' wholesale distribution business, auctions or otherwise will achieve a greater recovery than through the Store Closing Sales, the Debtors are authorized, pursuant to section 105(a) and 363(b)(1) of the Bankruptcy Code, to sell such excluded Merchandise through bulk sales or similar dispositions through the Debtors' wholesale distribution business, auctions, or otherwise with or without the assistance of the Consultant. No bulk sale, "going-out-of-business", or similar law shall prohibit the Debtors or the Consultant from selling such Assets through bulk sales or similar dispositions through the Debtors' wholesale distribution business, auctions or otherwise; provided, however, that the Debtors shall comply with applicable state and local public health and safety laws.

5.    The assumption of the Consulting Agreement, a copy of which is annexed hereto as Exhibit 2, by the Debtors pursuant to section 365 of the Bankruptcy Code is approved. The Debtors are authorized to act and perform in accordance with the terms of the Consulting Agreement, including, making payments required by the Consulting Agreement to the Consultant without the need for any application of the Consultant therefor or a further Order of the Court.

5

6.     Subject to applicable state and local public health and safety laws ("Safety Laws"), and applicable tax, labor, employment, environmental, and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws"), but with respect to Liquidation Sale Laws (as defined in this Order) and Banner and Signwalker Advertising (as defined in this Order), not subject to Safety Laws or General Laws, the Debtors and the Consultant be, and they hereby are, authorized to take such actions necessary and appropriate to implement the Consulting Agreement and to conduct the Store Closing Sales without the necessity of a further order of this Court as provided by the Consulting Agreement, including, but not limited to, advertising the Store Closing Sales through the posting of signs (including the use of exterior banners at (i) non-enclosed mall Closing Stores, and (ii) enclosed mall Closing Stores to the extent the applicable Closing Store entrance does not require entry into the enclosed mall common area, use of sign walkers and street signage, in accordance with the Consulting Agreement and as otherwise provided in the sale guidelines attached to the Consulting Agreement (the "Sale Guidelines"), which Sale Guidelines are hereby approved in the form attached hereto as Exhibit 1.

7.     The Debtors are authorized, notwithstanding any restrictive provision of any lease purporting to affect the Store Closing Sales, to sell the Assets and to take such other and further actions as may be necessary to effectuate the Store Closing Sales, provided that such actions do not violate the Sale Guidelines. Except as otherwise explicitly provided in this Order, nothing herein shall relieve the Debtors of their obligations under section 365(d)(3) of the Bankruptcy Code with respect to the leases covering the premises for the Closing Stores.

8.     The Assets shall be sold free and clear of all liens, mortgages, leases or other rights or claims of right to use or occupancy, encumbrances, security interest, claims, charges, or

6

other legal or equitable encumbrances and any other matter affecting title (collectively, "Liens"), with any Liens in such Assets, or the proceeds thereof, to attach to the proceeds of such sale with the same validity, priority and effect as they have against the Assets, with such proceeds to be used and applied in accordance with the Cash Collateral Order and the accompanying Budget. To the extent that the Debtors propose to sell or abandon FF&E consisting of the Debtors' computers (hardware and/or software) and/or cash registers or other similar equipment which may contain personal and/or confidential information about the Debtors' employees and/or customers (the "Confidential Information"), the Debtors shall remove the Confidential Information from such *as modified in Rider A annexed hereto.* items of equipment before such sale or abandonment.

9.      Except as to the States (as to which no injunction shall apply whatsoever), and except as expressly provided for herein or in the Sale Guidelines: no person or entity, including but not limited to any landlord or federal or Local Governmental Unit (as defined below), (i) served with a copy of the Motion; or (ii) served with a copy of this Order who does not object pursuant to the provisions of this Order, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Store Closing Sales, or the advertising and promotion (including the posting of signs) of such Store Closing Sales, and all such parties and persons of every nature and description, including landlords and utility companies and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, or otherwise impeding the conduct of the Store Closing Sales and/or (b) instituting any action or proceeding in any court or administrative body seeking an order or judgment against, among others, the Debtors or the Debtors' landlords for the Closing Stores, that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closing Sales and/or seek to recover damages for breach(es) of covenants or provisions in

7

any lease or sublease based upon any relief authorized herein, this Court shall retain exclusive jurisdiction to resolve such dispute, and such parties or persons shall take no action against the Debtors, the landlords or the Store Closing Sales until this Court has resolved such dispute. This Court shall hear the request of such persons or parties with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances. No Governmental Units (as defined in Bankruptcy Code section 101(27)) shall be bound by this injunctive provision unless it was either previously served with the Motion or subsequently served with this Order, and has had an opportunity to object as provided in this Order, and failed to timely file an objection.

10.     The Store Closing Sales at the Closing Stores shall be conducted by the Debtors and the Consultant without the necessity of compliance with any federal, state or local statute or ordinance, lease provision or licensing requirement affecting store closing, "going out of business," liquidation or auction sales, or affecting advertising, including signs, banners, posting of signage, and use of sign walkers, other than Safety Laws and General Laws, except as may otherwise expressly be provided for in the Sale Guidelines. NOTWITHSTANDING THE FOREGOING SENTENCE, OR ANY OTHER PROVISION OF THIS ORDER, OR OF THE AGREEMENT, OR OF THE SALE GUIDELINES TO THE CONTRARY, with respect solely to the Debtors' and the Consultant's use, in conformity with the Sale Guidelines, of (i) signwalkers; (ii) interior store signage and banners; and (ii) exterior banners ("Banner and Signwalker Advertising"), (A) the Debtors and the Consultant are unconditionally authorized to use Banner and Signwalker Advertising (except only to the extent limited by an agreement between the Debtors, the Consultant and a landlord entered into in connection with the Store Closing Sales) notwithstanding any local Liquidation Sales Laws, Safety Laws, General Laws, or lease provision which purports to regulate, prohibit, restrict, or in any way limit such activity so long as such

**8**

activity is undertaken by the Debtors or the Consultant in a safe and professional manner; (B) any

person (including without limitation any local Governmental Unit, or landlord) who, after having

received a copy of this Order, and after having been specifically advised in writing of the

provisions of this Section, continues to interfere with any Banner and Signwalker Advertisement,

including any action by a local Governmental Unit taken against a landlord based on the activities

of the Debtors or the Consultant undertaken pursuant to this Order (other than by seeking redress to

this Court as provided in this Section or as permitted by further ruling of the Court as a result

thereof) shall be liable to the Consultant and/or Debtors and affected landlord(s) for any and all

damages resulting from such continued interference; and (C) this Court shall retain exclusive

jurisdiction with respect to any claim or issue by any person (including without limitation any local

Governmental Unit or landlord) that seeks to regulate, prohibit, restrict, or in any other way limit

Banner and Signwalker Advertising, or that alleges that Banner and Signwalker Advertising is not

being undertaken in a safe and professional manner, with any such claim or issue to be heard by

this Court on an expedited basis.

11.    Except as expressly provided for in the Consulting Agreement, the Store

Closing Sales at the Closing Stores shall be conducted by the Debtors and the Consultant

notwithstanding any restrictive provision of any lease, sublease or other agreement relative to

occupancy affecting or purporting to restrict the conduct of the Store Closing Sales, the rejection of

leases, abandonment of assets or "going dark" provisions, provided, however, that nothing in this

Order shall impact any objection that any of the Debtors' landlords may have to assumption,

assignment or rejection of their respective lease or to any proposed cure amount or rejection

damages claim in association with such assumption, assignment or rejection.

9

12.     Except as otherwise provided in this Order, nothing in this Order shall be deemed to bar any Governmental Units from enforcing Safety Laws and General Laws in the applicable non-bankruptcy forum, subject to the Debtors' right to assert that any such laws are not in fact Safety Laws or General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Order or otherwise, provided that the Governmental Unit shall in the first instance present the matter to the Bankruptcy Court for resolution, or to request that they be permitted to proceed with the matter in the applicable non-bankruptcy forum; provided, however, that the Governmental Unit shall provide the Debtors and any affected landlord with reasonable notice and opportunity to cure any such alleged violation absent extenuating circumstances and/or to oppose the relief sought by such Governmental Unit; provided further, however, that cessation of alleged unlawful conduct after notice shall not, in and of itself, render court action by any State moot, under any circumstances, any injunctive relief that may lie even if the Debtor has ceased the alleged unlawful conduct. The Debtors do not waive the right to argue that the conduct was in compliance with this Order and/or any applicable law, or preempted by applicable law.

13.     The Debtors shall serve copies of this Order within five (5) business days, via first class mail, upon (i) the State Attorney General's offices (upon (x) Chief or Director of the Consumer Protection Division or Bureau; and (y) Chief or Director of the Bankruptcy Division or Bureau) and State Consumer Protection Agency for each State where a Store is located, and (ii) the local mayor or similar representative of each village, or city official, and the county or parish where a Closing Store is located, addressed to the attention of the municipal, city or county attorney, in each case to the consumer protection division. Except as provided for in paragraph 12 below, this Court shall retain exclusive jurisdiction to resolve any dispute arising under Liquidations Sales Laws (as defined below) and related to the Sale Guidelines or this Order, by any

DB02:7631528.5                                                                                              067890.1001

Local Governmental Unit filed within 20 days of service of this Order. Except as provided in paragraph 9 of this Order with respect to Banner and Signwalker Advertising, nothing herein shall preclude any Governmental Unit from enforcing Safety Laws or General Laws in an appropriate non-bankruptcy forum.

14.     The Debtors are authorized to conduct the Store Closing Sales in accordance with the terms of this Order and the Sale Guidelines. Provided that the Store Closing Sales are so conducted (and subject to the provisions of this Order), the Debtors and the Debtors' landlords shall be presumed to be in compliance with any State, county, parish, or municipal or other local government's (hereinafter referred to as "Local") requirements governing the conduct of the Store Closing Sales, including, but not limited to, Local statutes, regulation and ordinances establishing licensing or permitting requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply to the Store Closing Sales (collectively, the "Liquidation Sale Laws") of (i) any Local Governmental Unit (which means all Governmental Units other than the States or federal Governmental Units) served with a copy of the Motion; and (ii) any Local Governmental Unit served with this Order and who does not object pursuant to the provisions of paragraph 11 of this Order. The terms "Liquidation Sale Law" and "Liquidation Sale Laws" shall be deemed not to include any Safety Laws or General Laws. Except as provided in paragraph 9 of this Order with respect to Banner and Signwalker Advertising, nothing herein shall exempt the Debtors from compliance with any Safety Laws or General Laws or preclude any governmental entity from enforcing any Safety Laws or General Laws in the appropriate non-bankruptcy forum.

15.     If there is a dispute (a "Reserved Dispute") over the enforceability of a Liquidation Sale Law, resolution of such Reserved Dispute will take place before this Court, as provided herein and shall only operate prospectively.

16.     Any time before the twentieth (20ᵗʰ) day following the service of this Order as provided for above, any Local Governmental Unit may assert a Reserved Dispute by sending a notice explaining the nature of the dispute to Debtors' counsel. If the Debtors and the objecting Local Governmental Unit (as the case may be, the "Objecting Party") are unable to resolve the Reserved Dispute within fifteen (15) days of receipt of the Objecting Party's notice, either party may file a motion with the Court requesting a resolution of the dispute (a "Dispute Resolution Motion"). If such a Dispute Resolution Motion is timely filed, the Debtors shall be entitled to assert that the provisions in question are preempted by the Bankruptcy Code and/or that neither the terms of this Order nor the conduct of the Store Closing Sales violates the Liquidation Sales Law. The timely filing of a Dispute Resolution Motion will not affect the finality of this Order or limit or interfere with the ability to conduct the Store Closing Sales. By timely filing a Dispute Resolution Motion, all Governmental Units shall be entitled to assert any jurisdictional, procedural or substantive argument that it might heretofore have been entitled to raise. Any such Dispute Resolution Motion shall be served on any affected landlord.

17.     Nothing herein shall be deemed to constitute a ruling on whether any non-bankruptcy state law, regulation or rule applicable to the Store Closing Sales is preempted by the Bankruptcy Code nor as to whether the automatic stay applies nor is this Order a ruling with respect to whether sovereign immunity applies.

18.     This Court shall retain exclusive jurisdiction with regard to all issues or disputes in connection with the order and the relief provided for herein, including, without limitation, to protect the Debtors and/or the landlords from interference with the Store Closing Sales, and to resolve any disputes related to the Store Closing Sales.

12

19. Except as otherwise provided herein, each and every federal, state or local agency, department or governmental authority with regulatory authority over the Store Closing Sales is directed that this Order is evidence that the Court authorizes the Debtors to conduct the Store Closing Sales, including, without limitation, advertising of the Store Closing Sales in the manner contemplated by this Order and the Sale Guidelines.

20. As soon as reasonably practicable after the decision to terminate the Store Closing Sales at a particular Closing Store has been made, the Debtors shall post a notice in the Closing Store advising customers of the anticipated remaining duration of the Store Closing Sale in such location.

21. The Debtors and their respective officers, employees and agents be, and they hereby are, authorized to execute such documents and to do such acts as are necessary or desirable to carry out the Store Closing Sales to terms of the Consulting Agreement and the related actions set forth therein.

22. The provisions of this Order shall be self-executing notwithstanding any restrictions in the Consulting Agreement on the Consultant's ability to conduct regarding of the Store Closing Sales in compliance with applicable laws or closing Store leases. Unless otherwise ordered by the Court, all newspapers and other advertising media in which the Store Closing Sales may be advertised, and all landlords are directed to accept this Order as binding authority so as to authorize the Debtors and the Consultant to consummate the Consulting Agreement and to conduct the Store Closing Sales at the Closing Stores, including, without limitation, conducting and advertising of the Store Closing Sales Sale (at the contractual rates charged to the Debtors prior to the Petition Date) in accordance with the Consulting Agreement, the Sale Guidelines and this Order; and no further approval, license or permits of any governmental authority shall be required.

13

23.     The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered confirming or consummating any chapter 11 plan or reorganization of the Debtors, or which may be entered converting Debtors' cases from chapter 11 to chapter 7, and the rights and interests granted pursuant to this Order shall continue in this or any superseding case and shall be binding upon the Debtors and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code. Any trustee appointed in these chapter 11 cases shall be and hereby is authorized to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of this Order. In the event the chapter 7 trustee determines that it needs further order of this Court in connection with the continued operation of the business, such motion shall be heard on an expedited basis.

24.     This Order constitutes an authorization of conduct by the Debtors and nothing contained herein shall be deemed to constitute a ruling with regard to the sovereign immunity of any state, and the failure of any state to object to the entry of this Order shall not operate as a waiver with respect thereto.

25.     To the extent, if any, anything contained in this Order conflicts with a provision in the Sale Guidelines, this Order shall govern and control. The Court shall retain jurisdiction with respect to any matters, claims, rights, or disputes arising from or related to the implementation of this Order.

26.     The Debtors are authorized, but not directed, to pay the Store Closing Bonuses, in an amount not to exceed $1,500 per individual store-level employees and $900,000 in the aggregate, to eligible store-level employees that remain employed by the Debtors through the Store Closing Sales.

14

27.     Nothing in this Order shall (a) alter or affect the Debtors' obligation to comply with section 365(d)(3) of the Bankruptcy Code or (b) alter or modify the rights of any lessor or other counterparty to a lease with the Debtors to file an appropriate motion or otherwise seek appropriate relief if the Debtors fail to comply with section 365(d)(3) of the Bankruptcy Code.

28.     Notwithstanding anything to the contrary in the Court's Interim Order (i) Authorizing Use of Cash Collateral, (ii) Granting Adequate Protection, (iii) Modifying the Automatic Stay, and (iv) Scheduling a final hearing (the "Interim Cash Collateral Order"), and the Second Lien Agent (on behalf of itself and the Second Lien Lenders, as those terms are defined in the Interim Cash Collateral Order") having consented on the record to the provisions of this paragraph, any and all obligations of the Debtors and their estates to the Consultant under the Consulting Agreement, whether now existing or hereafter arising (the "Consulting Agreement Obligations"), shall be and hereby by are (a) entitled to allowance as administrative expenses in these cases, and (b) carved out from, entitled to payment prior to, and made senior in all respects to (i) the Pre-Petition Second Lien Obligations and all liens and claims (including, without limitation, claims arising under section 507(b) of the Bankruptcy Code) securing, arising from or relating to the same, and, subject to the provisions of the succeeding sentence, (ii) the Junior Adequate Protection Liens and all claims (including, without limitation, claims arising under section 507(b) of the Bankruptcy Code) arising from or relating to the same, and (iii) the Junior Adequate Protection Superpriority Claim. To the extent that the Second Lien Agent is otherwise entitled to receive Junior Adequate Protection Payments (other than the Debtors' ongoing payment of the reasonable fees, costs and expenses of legal counsel retained by the Prepetition Second Lien Agent and the Prepetition Second Lien Lenders) prior to the satisfaction by the Debtors and their estates of all Consulting Agreement Obligations then due and owing (the "Current Obligations"), such

15

monies shall instead be paid by the Debtors to the Consultant until all Current Obligations have

been paid in full; provided that all Junior Adequate Protection Payments to which the Second Lien

Agent is then entitled to receive in excess of the Current Obligations shall be delivered to counsel

to the Second Lien Agent to be held in escrow (in the firm's escrow account or pursuant to a third

party escrow arrangement reasonably satisfactory to the Consultant and the Second Lien Agent)

until all Consulting Agreement Obligations have been finally determined, following which any

unpaid Consulting Agreement Obligations shall be paid from such escrow prior to any distribution

to the Second Lien Agent or Second Lien Lenders. The provisions of this paragraph shall be

incorporated into any final order entered on the Debtors' request for use of cash collateral, together

with such conforming changes as may be necessary or appropriate in such final order to give full

effect thereto Nothing in this paragraph is intended to create any lien or claim having priority

senior to or *pari passu* with the liens and claims evidencing or securing the Prepetition First Lien

Obligations, the Senior Adequate Protection Liens, or the Senior Adequate Protection *in the Consulting*

Superpriority Claim. *→ Notwithstanding anything to the Contrary* *Agreement or this Order, the Consulting Agreement* *Shall not be amended, modified, supplemented or otherwise altered without*

29.     As soon as practicable hereafter, the Debtors shall reserve $12,000.00 of the

proceeds of such sales in a segregated account pending a determination of the claims of the Texas

Tax Units (as defined in the Texas Tax Unit's Objection to the Motion [Docket No. 79]). The liens

of the Texas Tax Units shall attach to the proceeds in the same validity, amount and priority as and

to the extent they exist on the collateral without prejudice to any parties' rights to assert defenses or

object to claims or liens of the Texas Tax Units. No distribution shall be made from the segregated

account absent consent of the Debtors and the Texas Tax Units, or by order the Court.

30.     Notwithstanding Bankruptcy Rules 6004 and 6006, this Order shall be

effective and enforceable immediately upon entry and its provisions shall be self-executing.

*→ the prior written consent of the Second Lien Lender, which consent* *Shall not be unreasonably withheld.*

DB02:7631528.5                                067890.1001

31. This Order shall be binding on all creditors (whether known or unknown) of the Debtors, its affiliates and any subsequent trustee(s) appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code and shall not be subject to rejection or revocation.

Dated: Wilmington, Delaware
December 18, 2008

Kevin J. Carey
United States Bankruptcy Judge

# Rider A

(a) Upon payment in full of the Prepetition First Lien Lenders[1] in accordance with the Interim Cash Collateral Order and Budget, payment in the form of an agreed § 506(c) surcharge shall be made for postpetition rent for the period December 11, 2008 through December 31, 2008 to each landlord who first agrees to proration of rent for February 2009;

(b) Payments shall then be made in accordance with the Interim Cash Collateral Order and Budget, subject to the entry of the Final Cash Collateral Order, provided, however: (i) residual funds not used for February 2009 rent as a result of a landlord's agreement under 8(a) above shall be set aside in a reserve account (the "503(b)(9) Reserve Account"), which account shall be guaranteed to be funded in a minimum amount of $1,700,000; (ii) upon termination of the Senior Indemnity Account (as defined in the Interim Cash Collateral Order) in accordance with the terms of the Interim Cash Collateral Order, any remaining funds shall be paid into the 503(b)(9) Reserve Account; (iii) any additional cost savings to be negotiated

---

[1] As defined in the Interim Cash Collateral Order [D.I. 47]

1

between the parties and agreed upon prior to the entry of the Final Cash Collateral Order; and (iv) funds in the 503(b)(9) Reserve Account shall be used to satisfy actual, allowed §503(b)(9) Claims after ~~determination~~ determination by final order of the Court. Any funds remaining in the 503(b)(9) Reserve Account after payment of all allowed §503(b)(9) Claims shall be returned to the estate for distribution in accordance with the Cash Collateral Order and Budget.

(c) The cap on Carve-Out funds available to be used by the Official Committee of Unsecured Creditors (the "Committee") for investigation pursuant Paragraph 17(l) of the Interim Cash Collateral Order shall be increased from $50,000 to $225,000.

(d) In light of and in consideration for the modifications and payments described above, the Committee agrees ~~that~~ no costs or expenses of administration which have been or may be incurred in these cases at any time shall be charged against any Prepetition Agent or Prepetition Lender, or any of their respective Claims or the Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise.[2]

---

[2] Terms in ~~this paragraph~~ have the meanings ascribed to them in the Interim Cash Collateral Order.

TAB 8

Gregg M. Galardi, Esq.
Ian S. Fredericks, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
One Rodney Square
PO Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Dion W. Hayes (VSB No. 34304)
Douglas M. Foley (VSB No. 34364)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

- and -

Chris L. Dickerson, Esq.
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Proposed Counsel to the Debtors
and Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTER DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - x
In re:                          :   Chapter 11
                                :
Circuit City Stores, Inc.,      :   Case No. 08- _____ (___)
et al.,                         :
                                :
            Debtors.            :   Jointly Administered
- - - - - - - - - - - - - - x

**ORDER GRANTING MOTION OF DEBTORS FOR ENTRY OF ORDER
PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363 AND 365 (I)
ASSUMING AGENCY AGREEMENT AMONG DEBTORS, HILCO MERCHANT
RESOURCES, LLC AND GORDON BROTHERS RETAIL PARTNERS, LLC,
AND (II) AUTHORIZING THE DEBTORS TO CONTINUE AGENCY
AGREEMENT SALES PURSUANT TO STORE CLOSING AGREEMENT**

Upon the motion (the "Motion")[1] of the Debtors

--------------------

[1]   Capitalized terms not otherwise defined herein shall have the
                                                            *(cont'd)*

for an order, pursuant to Bankruptcy Code sections
105(a), 363 and 365, (i) assuming the Store Closing
Agreement between the Debtors and Agent, and (ii)
authorizing the debtors to continue Store Closing Sales
pursuant to the Store Closing Agreement and the Sale
Guidelines; and upon the Besanko Declaration; and it
appearing that the relief requested by the Motion is in
the best interests of the Debtors' estates, their
creditors, and other parties in interest; and after due
deliberation and sufficient cause appearing therefor, it
is hereby

### FOUND AND DETERMINED that:

1.     This Court has jurisdiction over this
matter pursuant to 28 U.S.C. § 1334.  This is a core
proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.     Venue of the Debtors' chapter 11 Cases
and the Motion in this district is proper pursuant to 28
U.S.C. §§ 1408 and 1409.

_(cont'd from previous page)_
  meanings ascribed to such terms in the Motion or the Store
  Closing Agreement.

3.    Due and sufficient notice of the Motion has been given under the particular circumstances and no other or further notice need be given.

4.    On November 4, 2008, the Debtors and the Agent entered into the Store Closing Agreement and immediately commenced the Store Closing Sales.  A copy of the Store Closing Agreement is attached hereto as Exhibit A.  To secure their obligations under the Store Closing Agreement, the Debtors granted to Agent valid and perfected security interest in and lien upon all of Debtors Inventory located in the continental United States, all FF&E, and all Proceeds thereof (each of Inventory, FF&E and Proceeds as defined in the Store Closing Agreement).

5.    Time is of the essence in assuming the Store Closing Agreement and continuing the Store Closing Sales uninterrupted.

6.    The Debtors' decisions to (i) assume the Store Closing Agreement and (ii) continue performance under and payments required by the Store Closing Agreement is a reasonable exercise of the Debtors' sound business judgment and is in the best interests of the

Debtors, their estates, their creditors, and all parties
in interest.  Therefore, it is hereby

**ORDERED, ADJUDGED, AND DECREED that**:

1.   The Motion is GRANTED and any objections
not resolved on the record at the hearing are overruled.

2.   Pursuant to Bankruptcy Code section 365,
assumption by the Debtors of the Store Closing Agreement
attached as Exhibit A is hereby directed, authorized and
approved.

3.   Pursuant to Bankruptcy Code sections 105
and 363, the Debtors are authorized to continue
performance under and make all payments required by the
Store Closing Agreement as and when due thereunder
without further order of this Court.

4.   The Debtors are authorized to continue
the Store Closing Sales in the ordinary course of
business.

5.   The Sale Guidelines attached hereto as
Exhibit B are hereby approved.  Notwithstanding any
provision herein to the contrary, such approval is
hereby final.

6.     To the extent of any conflict between the
Sale Guidelines and the Store Closing Agreement, the
Sale Guidelines shall control over the Store Closing
Agreement.

7.     Except as otherwise provided in the Store
Closing Agreement, pursuant to section 363(f) of the
Bankruptcy Code, all Merchandise sold pursuant to the
Store Closing Agreement shall be sold free and clear of
any and all interests, including, without limitation,
mortgages, security interests, liens, judgments,
encumbrances and "claims" as defined in Bankruptcy Code
section 105 (collectively, "Liens"), with such Liens, if
any, attaching to the Proceeds.

8.     To the extent Agent is conducting the
Store Closing Sales in violation of any provision of any
of the Debtors' leases, all of the Debtors' landlords
are directed to accept this Order as binding authority
authorizing the Debtors and the Agent to conduct the
Store Closing Sales at the Closing Stores, including,
without limitation, conducting and advertising of the
Store Closing Sales in accordance with the Store Closing
Agreement, the Sale Guidelines and this Order.

9.     No approval, license or permits of any
governmental authority shall be required to conduct the
Store Closing Sales.

10.    If any parties or persons, including but
not limited to landlords, subtenants, utility companies,
governmental agencies, sheriffs, marshals or other
public officers, creditors and all those acting for or
on their behalf, believe that cause exists to: (a)
prohibit Agent from advertising the Store Closing Sales,
to the extent same is consistent with the Agency
Agreement, (b) in any way interfere with or otherwise
impede the conduct of the Store Closing Sales at the
Closing Stores or the use or maintenance of the Debtors'
assets of the Debtors located at the Closing Stores, or
(c) institute any action or proceeding in any court or
other administrative body having as its objective the
obtaining of an order or judgment against the Debtors,
Agent or a landlord that might in any way directly or
indirectly obstruct or otherwise interfere with or
adversely affect the conduct of the Store Closing Sales
and/or seek to recover damages for breach(es) of
covenants or provisions in any lease or sublease based

upon any relief authorized herein, this Court shall
retain exclusive jurisdiction to resolve such dispute,
and such parties or persons shall take no action against
the Debtors, Agent, the landlord related the Store
Closing Sales until this Court has resolved such dispute.
This Court shall hear the request of such persons or
parties with respect to any such disputes on an
expedited basis, as may be appropriate under the
circumstances.

          11.   The Store Closing Sales at the Closing
Stores shall be conducted by the Debtors and Agent
notwithstanding any restrictive provision of any lease,
sublease or other agreement relative to occupancy
affecting or purporting to restrict the conduct of the
Store Closing Sales, the rejection of leases,
abandonment of assets or "going dark" provisions;
provided, however, that nothing in this Order shall
impact any objection a landlord may have to assumption,
assignment or rejection of their respective lease or to
any proposed cure amount or rejection damages claim in
association with such assumption, assignment or
rejection.

12. Except as may otherwise be specifically
set forth in the Sale Guidelines, the Debtors and/or
Agent (as the case may be), are authorized and empowered
to transfer the Assets among the Closing Stores,
notwithstanding anything in applicable non-bankruptcy
law to the contrary.

13. No bulk sale or similar law shall
prohibit the Debtors or the Agent from taking action
contemplated by the Store Closing Agreement.

14. Provided that the Store Closing Sales are
conducted in accordance with the terms of this Order,
the Store Closing Agreement, and the Sale Guidelines,
the Debtors, their landlords and Agent are presumed to
be in compliance with the requirements of any applicable
"going out of business," "store closing," similar
inventory liquidation sales, bulk sale laws or any other
laws that purport to regulate, prohibit, restrict, or in
any way limit Agent's use, in conformity with the Sale
Guidelines, of (i) signwalkers; (ii) interior store
signage and banners; and (ii) exterior banners (each a
"GOB Law," and together, the "GOB Laws"). To the extent
there is a dispute arising from or relating to the Store

Closing Sales, this Order, the Store Closing Agreement,
or the Sale Guidelines (each a "Reserved Dispute", which
dispute relates to any GOB Law, this Court shall retain
exclusive jurisdiction to hear and determine all such
Reserved Disputes.

15.  Within five (5) business days of entry of
this Order, the Debtors shall serve copies of this Order,
the Store Closing Agreement and the Sale Guidelines via
e-mail, facsimile or regular mail, on: (i) the Attorney
General's office for each state where the Store Closing
Sale is being held, (ii) the county consumer protection
agency or similar agency for each county where the Store
Closing Sale will be held, and (iii) the division of
consumer protection for each state where the Store
Closing Sale will be held.  If, at any time within seven
(7) days following service of the entry of this Order,
any governmental authority wishes to assert that the
Store Closing Sale conducted pursuant to this Order, the
Store Closing Agreement and/or the Sale Guidelines is in
violation of a GOB Law, it shall send written notice of
such Reserved Dispute to counsel for the Debtors and
counsel for Agent at the addresses set forth in the

Store Closing Agreement so as to ensure delivery thereof
within one (1) business day thereafter. If the Debtors,
Agent and the governmental authority are unable to
resolve the Reserved Dispute within ten (10) days of
service of the notice, the aggrieved party may file a
motion with this Court requesting that this Court
resolve the Reserved Dispute.  In the event such a
motion is filed, nothing in this Order shall preclude
the Debtors, a landlord, the Agent or the other
interested party from asserting (i) that the provisions
of any GOB Law are preempted by the Bankruptcy Code or
(ii) that neither the terms of this Order, nor the
Debtors or Agent's conduct pursuant to this Order,
violates such GOB Law.  Filing a motion as set forth in
this paragraph shall not be deemed to affect the
finality of this Order or to limit or interfere with the
Debtors' or Agent's ability to conduct or to continue to
conduct the Store Closing Sales pursuant to this Order
and the Store Closing Agreement, absent further order of
this Court.

          16.   Upon the later of (i) the date on which
this Order becomes final and non-appealable and (ii) the

date on which payment of any monetary cure amounts due
and payable under the Store Closing Agreement in cash or
other immediately available funds is made all security
interests and liens granted under the Store Closing
Agreement shall be deemed released.  Agent shall execute
all documents and take all other actions as are
reasonably required to evidence the release of such
security interests and liens.

          17.  All Landlords and any official committee
seeking to object to the relief requested in this Motion
on the basis of adequate protection or as to approval of
the Sale Guidelines, must file such objection and
service it upon counsel for the Debtors so as to be
actually received on or before ten (10) days from entry
of this order for landlords or fifteen (15) days from
entry of this order for any official committee the
"Objection Deadline").

          18.  If an objection is not filed and actually
received on or before the Objection Deadline, the
remaining provisions of this Order shall automatically
become final and non-appealable.

19.   In the event that one or more objections
are filed, the Hearing on such objections shall be held
December 5, 2008 at 10:00 a.m. (ET).

20.   Notwithstanding Bankruptcy Rules 6004 and
6006, this Order shall be effective and enforceable
immediately upon entry and its provisions shall be self-
executing.   In the absence of any person or entity
obtaining a stay pending appeal, the Debtors and the
Agent are free to perform under the Store Closing
Agreement at any time, subject to the terms thereof.

21.   The Court shall retain exclusive
jurisdiction to resolve any dispute arising from or
relating to the interpretation or implementation of this
Order.

Dated:   Richmond, Virginia
         November 10, 2008


_____
UNITED STATES BANKRUPTCY JUDGE

TAB 9

# ORIGINAL

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **LINENS HOLDING CO., et al.,**[1] | ) | **Case No. 08-10832** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |
| | ) | |
| | ) | Re: Docket Nos. 1742 and 1783 |

## FINAL ORDER GRANTING THE DEBTORS' RELIEF FROM ANY STATE "FAST PAY" LAWS AND REGULATIONS WHEN TERMINATING EMPLOYEES

Upon the *Motion of the Debtors and Debtors in Possession for the Entry of Orders (I)*
*Approving Sale Procedures with Respect to the Sale of Substantially All of the Debtors' Assets as*
*a Going Concern and/or Via Store Closing Sales and (II) Authorizing Sale of Substantially All of*
*the Debtors' Assets Free and Clear of All Liens, Claims and Encumbrances Pursuant to Section*
*363 of the Bankruptcy Code* and supplement thereto (collectively, the "Motion"), filed by the
above-captioned debtors and debtors in possession (collectively, the "Debtors"); the Court
having reviewed the Motion and all pleadings related thereto; the Court having previously
entered an interim order on October 21, 2008 granting the Debtors' relief from any state "fast
pay" laws and regulations when terminating employees; and a final hearing on such relief having
been held on October 28, 2008; the Court finding that (i) the Court has jurisdiction over this
matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding pursuant to 28
U.S.C. § 157(b)(2)(A), (iii) notice of the Motion was sufficient under the circumstances and that
no other or further notice need be provided, and (iv) capitalized terms not otherwise defined

---

[1] The Debtors in these cases, along with the last four digits of the federal tax identification
number for each of the Debtors, are Linens Holding Co. (2917), Linens 'n Things, Inc. (3939), Linens 'n
Things Center, Inc. (0308), Bloomington, MN., L.T., Inc. (8498), Vendor Finance, LLC (5543), LNT,
Inc. (4668), LNT Services, Inc. (2093), LNT Leasing II, LLC (4182), LNT West, Inc. (1975), LNT
Virginia LLC (9453), LNT Merchandising Company LLC (2616), LNT Leasing III, LLC (3599) and
Citadel LNT, LLC (2479).

herein have the meaning given to them in the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors and their estates; and after due deliberation and sufficient cause appearing therefor

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. The Debtors shall not be required to comply with any state "fast pay" laws and regulations when terminating employees.

2. The Debtors, their officers, employees and agents, are authorized to take or refrain from taking such acts as are necessary and appropriate to implement and effectuate the relief granted herein.

3. This Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this order.

Dated: October 2̄8̄, 2008
Wilmington, Delaware

THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

2

TAB 10

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------------x
                                    :
In re                               :        Chapter 11 Case No.
                                    :
STEVE & BARRY'S                     :
MANHATTAN LLC, et al.,              :        08-12579 (ALG)
                                    :
            Debtors.                :        (Jointly Administered)
                                    :
-----------------------------------------------------------------x
```

ORDER PURSUANT TO SECTIONS 105(a), 363 AND 365 OF THE BANKRUPTCY
CODE AND BANKRUPTCY RULES 6004, 6006 AND 9014 (i) AUTHORIZING THE
SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, FREE AND CLEAR
OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; (ii) APPROVING
ASSET PURCHASE AGREEMENT; (iii) AUTHORIZING THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES; (iv) AUTHORIZING THE CONDUCT OF STORE CLOSING SALES;
(v) APPROVING AGENCY AGREEMENTS; AND (vi) GRANTING RELATED RELIEF

        Upon the amended motion (the "Motion"), dated July 16, 2008, of Steve &

Barry's Manhattan LLC and its debtor affiliates, as debtors and debtors-in-possession

(collectively, the "Debtors"), pursuant to sections 105, 363 and 365 of title 11 of the United

States Code (the "Bankruptcy Code"), and Rules 6004, 6006 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") seeking:

        (I)    an order (the "Bidding Procedures Order"), among other things, (A)

                approving procedures for (i) submitting bids for any or all of the Debtors'

                assets or businesses, (ii) conducting an auction with respect to any assets or

                businesses on which the Debtors receive more than one bid; (B) authorizing

                the Debtors to enter into a "stalking horse" agreement with a bidder or

                bidders; (C) approving procedures for the assumption and assignment of

                contracts and leases to any purchaser(s) of the Debtors' assets, and/or to

resolve any objections thereto; and (D) scheduling an auction and a hearing to approve any such sale; and

(II)   an order (the "Sale Order"), among other things, (A) authorizing the sale of all or substantially all of the Debtors' assets, free and clear of liens, claims and encumbrances; (B) authorizing the assumption, assignment and sale of the Debtors' contracts and leases; (C) approving either or both of (i) an asset purchase agreement for the sale of all or some of the Debtors' assets, and/or (ii) an agency agreement for the liquidation of all or some of the Debtors' inventory, with the party or parties submitting the highest or otherwise best bids; (D) affording the protections under section 363(m) to the successful bidder(s) as good faith purchasers; (E) authorizing the conduct of store closing sales notwithstanding any restrictions in restrictive documents that may impair the Debtors' ability to conduct store closing sales; and (F) exempting the Debtors' store closing sales from certain federal, state, and local laws, statutes, rules, and ordinances related to store closing and liquidation sales;

and the Court having entered the Bidding Procedures Order on August 5, 2008, among other things, authorizing the Debtors to enter into the following agreements with BH S&B Holdings, LLC (the "Purchaser" and "Agent") and Hilco Merchant Resources, LLC, on behalf of a joint venture composed of Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC (together, the "Sub-Agent"):

(i)   that certain Asset Purchase Agreement dated as of August 4, 2008, among the Debtors, Purchaser and Agent annexed to the Motion (as has been or may

be amended, the "Asset Purchase Agreement") for the Debtors' sale of the Purchased Assets (as defined in the Asset Purchase Agreement) to Purchaser, including without limitation (a) the assumption, assignment and sale, from time to time from the Closing Date (as defined in the Asset Purchase Agreement) through the Designation Deadline (defined in the Asset Purchase Agreement as January 31, 2009, or such later date as the Bankruptcy Court may authorize), of the Purchased Contracts and Purchased Leases (as such terms are defined in the Asset Purchase Agreement) to Purchaser (the "Purchaser Assumed Contracts") and of the Designee Contracts and Designee Leases (as such terms are defined in the Asset Purchase Agreement) to Purchaser's designee (the "Designee Assumed Contracts" and, together with the Purchaser Assumed Contracts, the "Assumed Contracts"), and (b) the right to act as the exclusive agent of the Debtors for the limited purposes of marketing and disposing of the Real Property Leases that have not yet been designated as Purchased Leases, Designee Leases or Excluded Leases from and after the Closing Date through the Applicable Lease Marketing Period (as all such terms are defined in the Asset Purchase Agreement), and thereafter to designate the ultimate assignee of all of the Debtors' right, title and interest in and to such Real Property Leases, all pursuant to and as described in the Asset Purchase Agreement (the "Asset Sale");

(ii)   that certain Agency Agreement dated as of August 4, 2008, as has been or may be amended from time to time, between the Debtors and Agent annexed

to the Asset Purchase Agreement as Exhibit D (the "<u>Agency Agreement</u>")
for the sale by the Agent of the GOB Assets (as defined in the Asset
Purchase Agreement) in store closing sales to be conducted through not later
than November 30, 2008 (or such later date as provided in the Agency
Agreement) at certain of the Debtors' retail locations, in conjunction with the
sale of the Purchased Assets under the Asset Purchase Agreement; and

(iii) a Standby Agency Agreement dated as of August 4, 2008 between the
Debtors and Agent annexed to the Asset Purchase Agreement as Exhibit G
(as has been or may be amended, the "<u>Standby Agency Agreement</u>" and,
together with the Agency Agreement, the "<u>Agency Agreements</u>") for the sale
by the Agent of substantially all of the Debtors' inventory and owned
furniture, fixtures and equipment in store closing sales to be conducted
through not later than November 30, 2008 (or such later date as provided in
the Standby Agency Agreement) at all of the Debtors' retail locations, in the
event the Asset Purchase Agreement is terminated (the store closing sales
under either the Agency Agreement or the Standby Agency Agreement are
referred to herein as the "<u>Store Closing Sales</u>"; and the Asset Sale, the Store
Closing Sales and all other transactions contemplated by the Asset Purchase
Agreement and Agency Agreements are collectively referred to herein as the
"<u>Sale</u>");

and an auction having been scheduled for and conducted on August 18, 19 and 20, 2008 (the
"<u>Auction</u>") in accordance with the Bidding Procedures Order; and the Debtors having served on
August 8, 2008, in accordance with the Bidding Procedures Order, Assignment Schedules and

Adequate Assurance Packages (as such terms are defined in the Bidding Procedures Order) upon each non-Debtor counterparty to the Debtors' executory contracts and unexpired leases which the Debtors may seek to assume and assign (collectively, the "Assumption and Assignment Notices"); and the Debtors having determined that the Asset Purchase Agreement together with the Agency Agreements (collectively, the "Agreements") constitute the highest and best bid for the Purchased Assets and the GOB Assets (collectively, the "Assets"); and a hearing having commenced on August 21, 2008 and as was continued from time to time (the "Sale Approval Hearing") to consider, among other things:

> (i) approval of (a) the sale of the Purchased Assets, including the sale of the right to dispose of the GOB Assets, to Purchaser pursuant to the Asset Purchase Agreement, and (b) the sale of the Merchandise and Owned FF&E (as such terms are defined in the Agency Agreements) and other Assets to be sold in the Store Closing Sales (collectively, "Store Closing Assets") by Agent pursuant to the Agency Agreements, in each case, free and clear of all liens, claims, encumbrances, and other Interests (as hereinafter defined), with such Interests to transfer, affix and attach to the Purchase Price (as defined in the Asset Purchase Agreement) and other amounts to be received by the Debtors under the Agreements (the "Sale Proceeds") with the same priority, force and effect, all as more fully set forth herein;

> (ii) authorizing the assumption and assignment of the Purchaser Assumed Contracts to Purchaser pursuant to and as provided for in the Asset Purchase Agreement; and

> (iii) authorizing the conduct of the Store Closing Sales;

and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.) and the General Order M-331 of the Board of Judges of the Southern District of New York for the Guidelines for the Conduct of Asset Sales, dated September 5, 2006 (Bernstein, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"); (ii) counsel for General Electric Capital Corporation ("GECC") and counsel for PrenSB LLC ("PrenSB"), as agents for the Debtors' prepetition secured lenders and participants (collectively, the "Prepetition Secured Lenders"); (iii) all known creditors of the Debtors; (iv) entities who have affirmatively requested notice under Bankruptcy Rule 2002, (v) all entities known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in any of the Assets, (vi) counsel to the official committee of unsecured creditors (the "Committee"), (vii) all parties that have either expressed an interest in purchasing the Assets or who the Debtors believe may express an interest in purchasing the Assets, (viii) all parties to the Debtors' executory contracts and unexpired leases which the Debtors may seek to assume and assign in connection with the Sale, and (ix) all affected federal and local regulatory and taxing authorities, including the Internal Revenue Service; and it appearing that no other or further notice need be provided; and the Court having considered the Motion and the Agreements, the objections thereto, the statements of counsel and any testimony or offer of proof as to the testimony on the record at the Sale Approval Hearing; and the Court having found and

determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein:

NOW, THEREFORE, upon the entire record of the Sale Approval Hearing and this case; and after due deliberation thereon; and good cause appearing therefor, IT IS HEREBY FOUND AND DETERMINED THAT:

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.    To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.    Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed thereto in the Motion or the Agreements, as the case may be.

D.    The Court has jurisdiction over the Motion and the proposed Sale pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

E.    The statutory predicates for the relief sought in the Motion are sections 105, 363 and 365 of the Bankruptcy Code, and Rules 2002, 6004, 6006 and 9014 of the Bankruptcy Rules.

F.    As evidenced by the affidavits of service and publication previously filed with the Court (i) due, proper, timely, adequate and sufficient notice of the Motion, the Sale Approval Hearing, and the proposed Sale (including without limitation the Store Closing Sales and the assumption, assignment and sale of the Purchaser Assumed Contracts), has been provided to all

persons entitled thereto in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, the Bidding Procedures Order, and the Agreements, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Sale Approval Hearing, or the proposed Sale is or shall be required.

G.      In accordance with the Assignment Procedures set forth in the Bidding Procedures Order, on August 8, 2008, the Debtors filed and served the Assumption and Assignment Notices upon each non-Debtor counterparty to the Debtors' executory contracts and unexpired leases which the Debtors may seek to assume and assign in connection with the Sale. The service of such Assumption and Assignment Notices was good, sufficient, and appropriate under the circumstances and no further notice need be given in respect of the proposed assumption and assignment of the Purchaser Assumed Contracts.  Non-debtor counterparties to such Purchaser Assumed Contracts have had a reasonable opportunity to object to the proposed cure amounts and the assumption and assignment of such contracts.

H.      As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Approval Hearing and (ii) the representations on the record at the Sale Approval Hearing, the Debtors have marketed the Assets and conducted the sale process in compliance with the Bidding Procedures Order, fairly, and with adequate opportunity for interested parties to submit bids.

I.      After giving effect to the provisions of the Bankruptcy Code and this Order, each Debtor (i) has full corporate power and authority to execute the Agreements and all other documents contemplated thereby, and the Sale by the Debtors has been duly and validly authorized by all necessary corporate action of each of the Debtors, (ii) has all of the corporate

power and authority necessary to consummate the transactions contemplated by the Agreements, (iii) has taken all corporate action necessary to authorize and approve the Agreements and the consummation by such Debtors of the Sale, and (iv) no consents or approvals, other than those expressly provided for in the Agreements, are required for the Debtors to consummate the Sale.

J.      Emergent circumstances and sound business reasons exist for Debtors' Sale of the Assets pursuant to the Agreements.  Entry into the Agreements and consummation of the Sale constitute the exercise by the Debtors of sound business judgment and such acts are in the best interests of the Debtors, their estates and creditors.  The Court finds that the Debtors have articulated good and sufficient business reasons justifying the Sale pursuant to sections 105, 363 and 365 of the Bankruptcy Code.  Such business reasons include, but are not limited to, the facts that (a) there is substantial risk of deterioration of the value of the Assets if the Sale is not consummated quickly; (b) the Agreements constitute the highest or best offer for the Assets; (c) the Agreements and the closing thereon will present the best opportunity to realize the value of the Debtors on a going concern basis and avoid decline and devaluation of the Debtors' business; and (d), unless the Sale is concluded and the Store Closing Sales conducted expeditiously as provided for in Motion and pursuant to the Agreements, creditors' recoveries may be diminished.

K.      The Agreements and the Sale contemplated thereby were negotiated and have been and are undertaken by the Debtors, the Purchaser, and the Agent at arms'-length, without collusion or fraud, and in good faith within the meaning of section 363(m) of the Bankruptcy Code.  The Auction was conducted in accordance with the Bidding Procedures Order, at which the Purchaser and Agent were declared the highest and/or best bidder, was conducted in good faith within the meaning of section 363(m) of the Bankruptcy Code.  The Purchaser and the

Agent have each proceeded in good faith in all respects in connection with this proceeding in that: (a) the Purchaser and the Agent each recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets and conducting the Store Closing Sales, respectively; (b) the Purchaser and the Agent each complied with the provisions in the Bidding Procedures Order; (c) the Purchaser and the Agent agreed to subject their bid to the competitive bidding procedures set forth in the Bidding Procedures Order; and (d) all payments to be made by the Purchaser and the Agent and other agreements or arrangements that have been or may be entered into by the Purchaser or the Agent in connection with the Sale have been disclosed. As a result of the foregoing, the Debtors, the Purchaser, and the Agent are entitled to the protections of section 363(m) of the Bankruptcy Code.

L.      The Debtors conducted the Auction in accordance with, and have otherwise complied in all respects with, the Bidding Procedures Order. The Auction established in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer for the Assets. The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner and a reasonable opportunity was given to any interested party to make a higher and better offer for the Assets. The Agreements constitute the highest and best offer for the Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Agreements constitute the highest and best offer for the Assets constitutes a valid and sound exercise of the Debtors' business judgment.

M.      Neither the Debtors, the Purchaser nor the Agent have violated section 363(n) of the Bankruptcy Code by any action or inaction or engaged in any conduct that would cause or permit any of the Agreements or the Sale to be avoided pursuant thereto. Specifically, the

Purchaser and the Agent each have not acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders. Steven Shore and Barry Prevor have agreed to participate as investors in the Purchaser, as set forth on the record at the Sale Approval Hearing. Such action does not prevent the Court from finding that the Purchaser is a good faith purchaser and has not violated section 363(n) of the Bankruptcy Code.

N.     The consideration provided by the Purchaser and the Agent for the Assets is the highest or otherwise best offer received by the Debtors and is fair and reasonable. The Agreements represent a fair and reasonable offer for the Assets under the circumstances of these chapter 11 cases. No other person or entity or group of entities, other than the Purchaser and Agent, has offered any amount for the Assets that would give greater economic value to the Debtors' estates. A sale of the Assets other than one free and clear of Interests would impact materially and adversely on the Debtors' estates, will yield substantially less value for the Debtors' estates, with less certainty than the available alternatives and thus the alternative would be of substantially less benefit to the estates of the Debtors.

O.     Based upon the record of the Sale Approval Hearing, actual written notice of the Sale Approval Hearing, the Motion and the Sale (and a reasonable opportunity to object thereto) has been afforded to all interested persons and entities, including: (i) the U.S. Trustee; (ii) counsel for the agents for the Prepetition Secured Lenders; (iii) all known creditors of the Debtors; (iv) all affected federal and local regulatory and taxing authorities, including the Internal Revenue Service; (v) all parties known to be asserting a lien on any of the Assets; (vi) all counterparties to unexpired real property leases and executory contracts potentially to be assumed and assigned; (vii) all entities known to have expressed an interest in acquiring any of the Assets; (viii) all attorney generals in states in which any of the Debtors does business; and

(ix) all other parties that have filed a notice of appearance and demand for service of papers in the Debtors' chapter 11 cases under Bankruptcy Rule 2002 as of July 15, 2008.

P.      Neither the Purchaser nor the Agent has a common identity of incorporators, directors or equity holders with any of the Debtors, and is not an "insider" of any of the Debtors, as that term is defined in section 101 of the Bankruptcy Code; provided, however, that as disclosed in the Declaration of Scott Sozio in Connection with BH S&B Holdings, LLC's Offer to Purchase Substantially All Assets of the Debtors, dated as of August 20, 2008, and at the Sale Approval Hearing, Steven Shore and Barry Prevor, who are equity holders and directors of the Debtors, will hold a significant minority interest in the Purchaser.

Q.      The Debtors are the sole and lawful owner of the Assets.  The transfer of the Assets pursuant to the Sale to the Purchaser and to the purchasers in the Store Closing Sales will be legal, valid, and effective transfers of the Assets, and will vest the respective purchasers with all right, title, and interest of the Debtors to the Assets (including the claims and causes of action of the estates being transferred pursuant to the Agreements) free and clear of all interests, including, but not limited to, those (A) that purport to give to any party a right or option to effect any forfeiture, modification, right of first offer or refusal, or termination of the Debtors' or the Purchaser's interest in the Assets, or any similar rights, (B) relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Assets prior to the Closing (as defined in the Asset Purchase Agreement), and (C) (i) all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of use, hypothecations, easements, servitudes, restrictive covenants, leases, subleases, covenants, rights of way, options, claims (including, without limitation, any and all "claims" as defined in section 101(5) of the Bankruptcy Code), restrictions, encroachments,

encumbrances or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership and (ii) all debts arising in any way in connection with any agreements, acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors or affiliates, claims (as that term is defined in the Bankruptcy Code), obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of these cases pursuant to chapter 11 of the Bankruptcy Code, and whether imposed by agreement, understanding, law, equity or otherwise, including but not limited to the liens and security interests (including adequate protection liens and security interests) of the Prepetition Secured Lenders and claims otherwise arising under doctrines of successor liability (collectively, "Interests"), with all such Interests attaching to the Sale Proceeds in the same order of priority and with the same force and effect as such Interests enjoyed with respect to the Assets.

R.     The Debtors may sell the Assets free and clear of all Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Interests in any Assets which did not object, or which withdrew their objections, to the Sale or the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Interests in any Assets who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Interests, if any, attach to the Sale Proceeds ultimately attributable to the property against or in which they claim an Interest.

S.     Subject to entry of this Order, each of the Prepetition Revolver Agent, the Prepetition Term Loan Agent (each as defined in the order of the Court entered on August 5, 2008, approving the Debtors' use of cash collateral (the "Cash Collateral Order")), the Prepetition Secured Lenders and the Committee have consented to the Sale.

T.     The Purchaser and the Agent would not have entered into the Agreements, and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates, and their creditors, if the sale of the Purchased Assets to the Purchaser, the assumption and assignment of the Purchaser Assumed Contracts to the Purchaser and all amounts due to the Agent pursuant to the Agency Agreements were not free and clear of all Interests of any kind or nature whatsoever, or if the Purchaser or the Agent would, or in the future could, be liable for any of the Interests.

U.     The Purchaser and the Agent will not consummate the transactions contemplated by the Agreements unless the Agreements specifically provide, and the Bankruptcy Court specifically orders, that none of the Purchaser, the Agent, or the affiliates, members or shareholders of the Purchaser and the Agent will have any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interest or Excluded Liability (as defined in the Asset Purchase Agreement).

V.     The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assumed Contracts in connection with the consummation of the Sale, and the assumption, assignment and sale of the Assumed Contracts is in the best interests of the Debtors, their estates, and their creditors.  The Assumed Contracts being assigned to the Purchaser or its designee, and the Assumed Liabilities being assumed by the Purchaser, are

an integral part of Purchased Assets being purchased under the Asset Purchase Agreement and, accordingly, such assumption, assignment and sale of Assumed Contracts and Assumed Liabilities are reasonable, enhance the value of the Debtors' estates, and do not constitute unfair discrimination.

W.     The Purchaser has (i) to the extent necessary, cured or provided adequate assurance of cure, of any default existing prior to the date hereof with respect to the Purchaser Assumed Contracts, within the meaning of 11 U.S.C. §§ 365(b)(1)(A) and 365(f)(2)(A), and (ii) to the extent necessary, provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Purchaser Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(B) and 365(f)(2)(A).  The Purchaser has demonstrated adequate assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B).

X.     The Sale constitutes the sale of substantially all of the Debtors' assets to Purchaser.  Any license or other contract that by its terms permits assignment of the contract without the non-Debtor counterparty's consent in connection with the sale of substantially all of the Debtors' assets, therefore, is assignable to Purchaser in connection with the Sale.

Y.     The Sale must be approved and consummated promptly in order to preserve the viability of the business subject to the Sale as a going concern, to maximize the value of the Debtors' estates.  Time is of the essence in consummating the Sale..

ORDERED, ADJUDGED AND DECREED THAT:

<u>General Provisions</u>

1.     The Motion is granted, as further described herein.

2.     All objections and responses concerning the Motion are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Approval Hearing and to the extent any such objection or response was not otherwise withdrawn, waived, or settled, they, and all reservations of rights (except as set forth herein) or relief requested therein, are overruled and denied. The Committee's objections to the Motion hereby are deemed withdrawn.

Approval of the Asset Purchase Agreement

3.     The Asset Purchase Agreement, a copy of which is annexed hereto as Exhibit A, and all of the terms and conditions thereof, is approved.

4.     Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized and directed to perform their obligations under and comply with the terms of the Asset Purchase Agreement, and consummate the Asset Sale, pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement.

5.     The Debtors are authorized and directed to execute and deliver, and empowered to perform under, consummate and implement, the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement, and to take all further actions as may be reasonably requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession, the Purchased Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement, all without cost to the Debtors.

Transfer of Purchased Assets

6.      Except as expressly permitted or otherwise specifically provided for in the Asset Purchase Agreement or this Order, upon Closing and payment of the amounts set forth in Section 3.1(b)(i) of the Asset Purchase Agreement (the "Initial Payment"), pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Assets shall be transferred to the Purchaser, and shall be free and clear of all Interests of any kind or nature whatsoever with all such Interests of any kind or nature whatsoever to attach to the Sale Proceeds in the order of their priority, and with the same validity, force and effect which they now have as against the Purchased Assets, subject to any claims and defenses the Debtors may possess with respect thereto.

7.      The transfer of the Purchased Assets to the Purchaser pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer of the Purchased Assets, and shall vest the Purchaser with all right, title, and interest of the Debtors in and to the Purchased Assets free and clear of all Interests of any kind or nature whatsoever.

8.      If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing Interests in the Debtors or the Purchased Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests which the person or entity has with respect to the Debtors or the Purchased Assets or otherwise, then, upon Closing and payment of the Initial Payment (a) the Debtors are authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Purchased Assets and (b) the Purchaser is authorized to file, register, or otherwise record a

certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests in the Purchased Assets of any kind or nature whatsoever. On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Debtors' interests in the Purchased Assets. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

9. Following the Closing Date (as defined in the Asset Purchase Agreement), except as expressly permitted by the Asset Purchase Agreement or by this Order, all persons and entities, including, but not limited to, the Debtors, employees, former employees, all debt security holders, equity security holders, administrative agencies, governmental, tax and regulatory authorities, secretaries of state, federal, state and local officials, lenders, contract parties, lessors, warehousemen, customs brokers, freight forwarders, carriers and other parties in possession of any of the Purchased Assets at any time, trade creditors and all other creditors, holding Interests of any kind or nature whatsoever against or in the Debtors or in the Debtors' interests in the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the operation of the Debtors' business before the Closing Date or with respect to any Interests arising out of or related to the Sale, shall be and hereby are forever barred, estopped and permanently enjoined from commencing, prosecuting or continuing in any manner any action or other proceeding of any kind relating to or connection with the Debtors, the Purchased Assets, or the operation of the Debtors' business before the Closing Date against

Purchaser, its property, its successors and assigns, alleged or otherwise, its affiliates or such Purchased Assets. Following the Closing Date, no holder of an Interest in the Debtors shall interfere with the Purchaser's title to or use and enjoyment of the Purchased Assets based on or related to such Interest, or any actions that the Debtors may take in their chapter 11 cases.

10. Notwithstanding anything in this Order or the Agreements, the Purchaser's rights to acquire goods pursuant to Section 2.1(c) of the Asset Purchase Agreement shall remain subject to any rights, liens and claims warehousemen, customers brokers, freight forwarders, carriers and shippers may have under applicable non-bankruptcy law with respect to such goods.

11. Subject to the Interests attaching to the Sale Proceeds as provided for in Paragraph 6 of this Order, this Order (a) shall be effective as a determination that, on the Closing Date, all Interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing Date have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.

12. On the Closing Date and subject to the Interests attaching to the Sale Proceeds as provided for in Paragraph 6 of this Order, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be

reasonably necessary to release its Interests in the Purchased Assets, if any, as such Interests may have been recorded or may otherwise exist.

13. Neither the Purchaser nor its affiliates, successors or assigns shall, as a result of the consummation of the transaction contemplated by the Asset Purchase Agreement: (a) be a successor to the Debtors or their estates; (b) have, de facto or otherwise, merged or consolidated with or into the Debtors or their estates; or (c) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors. Except for the Assumed Liabilities, the transfer of the Purchased Assets to Purchaser under the Asset Purchase Agreement shall not result in (i) the Purchaser, its affiliates, members, or shareholders as such, or the Purchased Assets, having any liability or responsibility for any claim against the Debtors or against an insider of the Debtors, (ii) the Purchaser, its affiliates, members, or shareholders as such, or the Purchased Assets, having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interest or Excluded Liability, or (iii) Purchaser, its affiliates, members, or shareholders as such, or the Purchased Assets, having any liability or responsibility to the Debtors except as is expressly set forth in the Asset Purchase Agreement. Without limiting the effect or scope of the foregoing, as a result of the closing of the transaction contemplated by the Asset Purchase Agreement, the Purchaser shall have no successor liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to,

liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing, and liabilities under the Worker Adjustment Retraining Notification Act ("WARN Act") or any similar state or local law, or with respect to Equal Employment Opportunity Commission or state-level employee claims arising with respect to any of the Debtors' employees prior to the Closing, or arising after the Closing with respect to any employees that are not Transferred Employees (as defined in the Asset Purchase Agreement) at the time such liability arises.

Assumption, Assignment and Sale
of Assumed Contracts

14.     Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Debtors' assumption, assignment and sale to the Purchaser, and the Purchaser's assumption on the terms set forth in the Asset Purchase Agreement, of the Purchaser Assumed Contracts, as modified by the terms of any lease modification, cure, consent and other agreements (the "Lease Assignment Agreements"), is approved, and the requirements of sections 365(b)(1), 365(b)(3) (to the extent applicable) and 365(f)(2) of the Bankruptcy Code with respect thereto are deemed satisfied.  The Lease Assignment Agreements hereby are approved and the Purchaser Assumed Contracts are hereby assumed according to their terms, as amended by the Lease Assignment Agreements to the extent applicable.

15.     The Debtors are authorized in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code to (a) assume and assign to the Purchaser, conditioned and effective upon the Closing of the Sale, the Purchaser Assumed Contracts identified on Exhibit B hereto free and clear of all Interests of any kind or nature whatsoever, and (b) execute and deliver to the

Purchaser such documents or other instruments as may be necessary to assign and transfer the Purchaser Assumed Contracts and Assumed Liabilities to the Purchaser.

16.      The Debtors are authorized in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code to assume and assign to the Purchaser free and clear of all Interests of any kind or nature whatsoever any additional Purchaser Assumed Contracts identified by Purchaser following the date of this Order that were listed on the Assumption and Assignment Notices and as to which no objection to Assignment (as opposed to an objection to cure amounts) was timely filed by the counterparty to such contract in accordance with the Bid Procedures Order; provided, that such Assumption and Assignment shall be effective following the provision of notice to such counterparty of such Assumption and Assignment and to Purchaser in accordance with the Assignment Procedures. Any dispute regarding cure amounts that has been preserved by the filing of an objection in accordance with the Bid Procedures Order or cure amounts arising and relating to the period from and after August 18, 2008 shall be resolved in accordance with Paragraph 19 of this Order.

17.      Subject to either compliance with the Assignment Procedures set forth in the Bidding Procedures Order or the consent of the non-Debtor party to an Assumed Contract, the Debtors are authorized in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code to (a) assume and assign to the Purchaser any Purchaser Assumed Contracts not identified on the Assumption and Assignment Notices, and (b) assume and assign to the Purchaser's designee any Designee Assumed Contracts, in each case free and clear of all Interests of any kind or nature whatsoever, and to execute and deliver to the Purchaser or its designee such documents or other instruments as may be necessary to assign and transfer such Assumed Contracts.

18.　　(i) With respect to the Purchaser Assumed Contracts identified on Exhibit B hereto, (ii) subject to Paragraph 16 of this Order, with respect to Purchaser Assumed Contracts identified on the Assumption and Assignment Notices but not listed on Exhibit B hereto, and (iii) subject to Paragraph 17 of this Order, with respect to Purchaser Assumed Contracts not identified in the Assumption and Assignment Notices and Designee Assumed Contracts, (a) the Assumed Contracts shall be transferred and assigned to, and following the assumption and assignment shall and shall be deemed valid and binding and remain in full force and effect for the benefit of, the Purchaser or its designee in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer, and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assumed Contracts after such assignment to and assumption by the Purchaser or its designee; (b) each such Assumed Contract is an executory contract of the Debtors under section 365 of the Bankruptcy Code; (c) the Debtors may assume each such Assumed Contract in accordance with Section 365 of the Bankruptcy Code; (d) the Debtors may assign each such Assumed Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the party to such Assumed Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (e) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Sellers and assignment to the Purchaser or its designee of each such Assumed

Contract have been satisfied and (f) upon (i) Closing, with respect to Purchaser Assumed Contracts identified on Exhibit B, (ii) assumption and assignment, with respect to any additional Purchaser Assumed Contracts identified by Purchaser following the date of this Order, provided such Purchaser Assumed Contracts were listed on the Assumption and Assignment Notices, or (iii) compliance with the Assignment Procedures set forth in the Bidding Procedures Order or the consent of the non-Debtor party to an Assumed Contract, with respect to Purchaser Assumed Contracts not identified on the Assumption and Assignment Notices and Designee Assumed Contracts, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser or its designee, as appropriate, shall be fully and irrevocably vested in all right, title and interest of each such Assumed Contract.

19.     If an objection is or has been filed pursuant to the Bidding Procedures Order with respect to the cure amount under any Assumed Contract, the dispute with respect to the cure amount may be resolved consensually, if possible, by the parties, or, if the parties are unable to resolve their dispute, by the Court.  During the pendency of a dispute relating to cure amount under an Assumed Contract, at Purchaser's option in its sole discretion, Purchaser may (i) pay the undisputed cure amount and escrow any reasonably disputed cure amount pending agreement of the parties or further order of the Court, in which case the pendency of the dispute relating to the cure amount shall not prevent or delay the assumption or assumption and assignment of such Assumed Contract, or (ii) pay the cure amount as and when either agreed upon by the parties consensually or finally determined by the Court as provided in Section 2.5(f) of the Asset Purchase Agreement, in which case assumption and assignment of the Assumed Contract shall not be effective immediately and, during the interim, in accordance with section 2.5(h) of the Asset Purchase Agreement, Purchaser shall be Debtors' agent-in-fact for the sole

purpose of allowing Purchaser to continue to operate under such contract or lease.  If, after determination by the Bankruptcy Court of the cure amount in respect of any Purchased Contract or Purchased Lease, Purchaser exercises its right under Section 2.5(f) of the Asset Purchase Agreement to redesignate such Purchased Contract or Purchased Lease as an Excluded Contract or Excluded Lease, any cure amounts paid by the Purchaser with respect to such Excluded Contract or Excluded Lease shall be returned by the non-Debtor counterparty within three business days of receiving notice of such redesignation.

20.     To the extent any license or permit that is necessary for the operation of the business is determined not to be an executory contract assumable and assignable under section 365 of the Bankruptcy Code, the Purchaser shall apply for and obtain any necessary license or permit promptly after the Closing and such licenses or permits of the Debtors shall remain in place for the Purchaser's benefit until new licenses and permits are obtained.

21.     The cure amounts set forth on Exhibit B and any cure amounts once resolved by agreement or by the Court (collectively, the "Cure Amounts") are the true, correct, final and fixed amounts, and only amounts, that are required to be paid upon assumption of the Assumed Contracts pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code (except as otherwise has been or may be agreed to in a signed writing between the Debtors and the lease counterparty) and the Purchaser is directed to pay such amounts under sections 105, 363(b) and 365 of the Bankruptcy Code upon assumption of such Assumed Contracts.  The Cure Amounts shall not be subject to further dispute or audit (except as otherwise has been or may be agreed to in a signed writing between the Debtors and the lease counterparty), including any based on performance prior to the time of assumption, assignment and sale, irrespective of whether such Assumed Contract contains an audit clause.  The payment of the applicable Cure Amounts (if

any) shall (a) effect a cure of all monetary and nonmonetary defaults existing under the Assumed Contracts as of the date of assumption and assignment, (b) compensate for any actual pecuniary loss to such non-Debtor party resulting from such default, and (c) together with the assumption of the Assumed Contracts by the Debtor, constitute adequate assurance of future performance thereof.

22.     Purchaser has demonstrated adequate assurance of future performance with respect to the Purchaser Assumed Contracts and has satisfied the requirements of the Bankruptcy Code, including, without limitation, sections 365(b)(1) and (3) and 365(f)(2)(B) to the extent applicable.

23.     There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Purchaser or its designee as a result of the assumption, assignment and sale of the Assumed Contracts.  The validity of the assumption, assignment and sale to the Purchaser or its designee shall not be affected by any dispute between any of the Debtors or their affiliates and another party to an Assumed Contract regarding the payment of any amount, including any cure amount under the Bankruptcy Code.

24.     Any party that may have had the right to consent to the assignment of its Assumed Contract is deemed to have consented to such assignment for purposes of Section 365(e)(2)(A)(ii) of the Bankruptcy Code and otherwise if it failed to object to the assumption and assignment.

25.     Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, each non-Debtor party to an Assumed Contract hereby is forever barred, estopped, and permanently enjoined from raising or asserting against the Debtors, the Purchaser, the Purchaser's designees, their affiliates or the property of any of them: (i) any fee, monetary or nonmonetary default,

breach, claim, pecuniary loss, liability or obligation (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinate) arising under or related to the Assumed Contract existing as of the date of assumption and assignment or arising by reason of the Closing (other than the Cure Amounts or such other amount as has been or may be agreed to in a signed writing between the Debtors and the lease counterparty), including without limitation under any Purchased Lease with respect to any tenant improvement obligations, recoupment rights with respect to tenant improvement payments, rent, percentage rent, common area charges, real estate taxes or utilities or other charges owing under the Purchased Lease (including any amounts owed to the landlord pursuant to any "true-up" provisions with respect to any of the foregoing for any portion of the current lease year which elapsed prior to the Closing), and (ii) any condition to assignment or objection to the assumption and assignment of such non-Debtor party's Assumed Contracts.

26.     Except as provided in the Asset Purchase Agreement or this Order, after the Closing, the Debtors and their estates shall have no further liabilities or obligations with respect to any Assumed Liabilities and all holders of such claims are forever barred and estopped from asserting such claims against the Debtors, their successors or assigns, their property or their assets or estates.

Approval of the Agency Agreements

27.     The Debtors are hereby authorized and empowered to enter into the Agency Agreements, and the Agency Agreements are each hereby approved, and it is further ordered that all amounts payable to the Agent under the Agency Agreements shall be payable to the Agent without the need for any application of the Agent therefor or a further order of the Court.

28. The Debtors, their officers, employees, and agents and the Agent are authorized and directed to execute and deliver, and empowered to perform under, consummate and implement, the Store Closing Sales, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agency Agreements, and to take all further actions as may be required under the Agency Agreements for the purpose of conveying any liens on the Merchandise and Owned FF&E (as such terms are defined in the Agency Agreements) and other Assets to be sold in the Store Closing Sales (collectively, "Store Closing Assets") pursuant to the applicable Agency Agreements to the Agent, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agency Agreements. The Agent and the Debtors are hereby authorized to take or refrain from taking any and all steps necessary to effectuate, consummate and/or implement the terms of this Order.

29. The Debtors are hereby authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the Store Closing Sales at the Closing Stores (as defined in the Agency Agreements) identified in accordance with the Agency Agreements.

30. Except as otherwise provided in the Agency Agreements, pursuant to section 363(f) of the Bankruptcy Code, the Assets sold pursuant to the Agency Agreements shall be sold free and clear of any and all Interests, with such Interests attaching to the Sale Proceeds.

31. Except as specified in the Agency Agreements, nothing in this Order or the Agency Agreements and none of the Agent's actions taken in respect of the Store Closing Sales shall be deemed to constitute an assumption by the Agent of any liabilities or obligations of the Debtors, including, without limitation, severance, termination pay, pension, profit sharing or any other employee benefit plans, any collective bargaining or employment agreement, compensation or retiree medical and other benefits and obligations or any obligation, claim or

amount under the WARN Act or COBRA, or any liability to such employees as a joint or successor employer, taxes, Interests, "adequate protection" obligations, mortgage obligations or legal fees incurred by professionals retained in the Debtors' cases, liability to any landlords under the store leases for reimbursement of prior construction work, rent concession, allowances or the like, whether known or unknown, disputed or undisputed, contingent or non-contingent, liquidated or unliquidated.

<u>Store Closings and the Conduct of the Store Closing Sales</u>

32.    Any restrictions in any Restrictive Documents (as defined in this Paragraph) that may impair the Debtors' ability to conduct the Store Closing Sales shall not apply to such sales.  Specifically, the Closing Stores will be located on properties that are leased by the Debtors.  In certain cases, the contemplated Store Closing Sales may be inconsistent with certain provisions of such leases or other documents with respect to any such leased premises, including (without limitation) reciprocal easement agreements, agreements containing covenants, conditions and restrictions (including, without limitation, "go-dark" provisions and landlord recapture rights), or other similar documents or provisions (collectively, the "<u>Restrictive Leases</u>").  In addition, promotional sales of certain Merchandise bearing licensed trademarks at the contemplated Store Closing Sales may be inconsistent with certain provisions of the Debtors' trademark licenses relating to such Merchandise (the "<u>Restrictive Licenses</u>" and, together with the Restrictive Leases, the "<u>Restrictive Documents</u>").

33.    The Closing Stores may "go-dark" during the Store Closing Sales and remain "dark" despite any lease restriction, real estate local act, local law, or ordinance to the contrary, and any "continuous operation" or similar clause in any of the leases (or any lease provision that purports to increase the rent or impose any penalty for going dark) may not be

enforced to hinder or interrupt the Store Closing Sales (and the going dark under such leases shall not be a basis to cancel or terminate the leases).

34.     Except as to the States (as to which no injunction shall apply whatsoever), and except as expressly provided for herein or in the Sale Guidelines, no person or entity, including but not limited to any landlord, licensor, creditor, or federal or Local Governmental Unit (as defined below), (i) served with a copy of the Motion or (ii) served with a copy of this Order who does not object pursuant to the provisions of this Order, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Store Closing Sales, or the advertising and promotion (including the posting of signs) of such Store Closing Sales, and all such parties and persons of every nature and description, including landlords, licensors, creditors, and utility companies and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, or otherwise impeding, the conduct of the Store Closing Sales and/or (b) instituting any action or proceeding in any court or administrative body seeking an order or judgment against, among others, the Debtors, the Agent, or the Debtors' landlords for the Closing Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closing Sales or other liquidation sales at the Closing Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease or license based upon any relief authorized herein.  This Court shall retain exclusive jurisdiction to resolve such dispute, and such parties or persons shall take no action against the Debtors, the Agent, the landlords or the Store Closing Sales until this Court has resolved such dispute.  This Court shall hear the request of such persons or parties with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.  No Governmental Units (as defined in Bankruptcy Code

section 101(27)) shall be bound by this injunctive provision unless it was either previously served with the Motion or subsequently served with this Order, and has had an opportunity to object as provided in this Order, and failed to timely file an objection.

35.     Subject to applicable state and local public health and safety laws (the "Safety Laws"), and applicable tax, labor, employment, environmental, and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, the "General Laws"), but excluding Liquidation Sale Laws (as defined below), the Debtors and the Agent be, and they hereby are, authorized to take such actions necessary and appropriate to implement the Agency Agreements and to conduct the Store Closing Sales without the necessity of a further order of this Court as provided by the Agency Agreements, including, but not limited to, advertising the Store Closing Sales as provided in the sale guidelines attached to the Agency Agreements (the "Sale Guidelines"), which Sale Guidelines are hereby approved in the forms annexed hereto as Exhibit C.

36.     The Store Closing Sales at the Closing Stores shall be conducted by the Debtors and the Agent without the necessity of compliance with any federal, state or local law, statute, regulation, or ordinance, lease provision or licensing requirement affecting store closing, "going out of business", liquidation or auction sales, or establishing licensing or permitting requirements, waiting periods, time limits, or bulk sale restrictions, or affecting advertising, including signs, banners, and posting of signage (collectively, the "Liquidation Sale Laws"), except to the extent set forth in the Sale Guidelines.  The Debtors and the Agent shall be entitled to use sign walkers, hang signs and/or interior or exterior banners advertising the Store Closing Sales in accordance with the Sale Guidelines (or as otherwise agreed between the Debtors, the Agent and the respective landlords), including, without limitation, advertising the Store Closing

Sales as "store closing," "sale on everything" or similar themed sales (to the extent permitted by the applicable Agency Agreement) and by means of media advertising, A-frames, banners, and similar signage, without further consent of any person and without compliance with the Liquidation Sale Laws. Provided that the use of banners and sign walkers is done in a safe and responsible manner, such sign walkers and banners, in and of themselves, shall not be deemed to be in violation of Safety Laws and/or General Laws.

37. Notwithstanding any restrictions in the Agency Agreements on the Agent's ability to conduct the Store Closing Sales in compliance with applicable laws or store leases and except as otherwise provided in this Order, each and every federal, state or local agency, department or Governmental Unit with regulatory authority over the Store Closing Sales and all newspapers and other advertising media in which the Store Closing Sales is advertised shall consider this Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required for the conduct of the Store Closing Sales, unless and until there is a further order of this Court.

38. State and/or Local authorities shall not fine, assess, or otherwise penalize the Debtors, the Agent or any of the landlords of the Closing Stores for conducting or advertising the Store Closing Sales in a manner inconsistent with state or Local law; provided, however, that the Store Closing Sales are conducted and advertised in a manner contemplated by this Order, the Sale Guidelines, and the Agency Agreements.

39. As and to the extent set forth in the Agency Agreements, the Debtors and/or the Agent (as the case may be), are authorized and empowered to transfer the Store Closing Assets among the Closing Stores. In addition, following the Closing of the Asset

Purchase Agreement, Purchaser shall have the right to direct the transfer of GOB Assets to be transferred from Closing Stores to such Purchaser's locations as Purchaser and Agent shall agree.

40.     Absent further order of this Court, the Agent shall not supplement the Store Closing Sale with augmented merchandise (the "Augmented Merchandise").  The term Augmented Merchandise does not include inventory in the Debtors' distribution centers, their stores, in transit among stores and the distribution centers, or on order by the Debtors.

41.     Gift certificates, gift cards, and merchandise credits issued by the Debtors prior to the Sale Commencement Date (as defined in the Agency Agreements) may be accepted and honored by the Agent during the Sale Term as and to the extent provided in the applicable Agency Agreement.

42.     Nothing in this Order shall be deemed to bar any Governmental Unit from enforcing Safety Laws and General Laws in the applicable non-bankruptcy forum, subject to the Debtors' or Agent's right to assert that any such laws are not in fact Safety Laws or General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Order or otherwise; provided, however, that the Governmental Unit shall in the first instance present the matter to this Court for resolution or request that the Governmental Unit be permitted to proceed with the matter in the applicable non-bankruptcy forum; provided, further, however, that the Governmental Unit shall provide the Debtors and the Agent with reasonable notice and opportunity to cure any such alleged violation absent extenuating circumstances and/or to oppose the relief sought by such Governmental Unit.  The Debtors and/or the Agent do not waive the right to argue that the conduct was in compliance with this Order and/or any applicable law, or preempted by applicable law.

43. If there is a dispute (a "Reserved Dispute") over the enforceability of a Liquidation Sale Law, resolution of such Reserved Dispute will take place before this Court, as provided herein and shall only operate prospectively.

44. Any time before the twentieth (20th) day following the service of this Order as provided for above, any Local Governmental Unit may assert a Reserved Dispute by sending a notice explaining the nature of the dispute to Debtors' and Agent's counsel at the applicable addresses set forth in the Agency Agreements. If the Debtors, the Agent and the objecting Local Governmental Unit (as the case may be, the "Objecting Party") are unable to resolve the Reserved Dispute within fifteen (15) days of receipt of the Objecting Party's notice, either party may file a motion with the Court requesting a resolution of the dispute (a "Dispute Resolution Motion"). If such a Dispute Resolution Motion is timely filed, the Debtors and the Agent shall each be entitled to assert that the provisions in question are preempted or otherwise rendered unenforceable by the Bankruptcy Code or applicable federal law and/or that neither the terms of this Order nor the conduct of the Store Closing Sales violates the Liquidation Sale Law. The timely filing of a Dispute Resolution Motion will not affect the finality of this Order or limit or interfere with the ability to conduct or to continue to conduct the Store Closing Sales pursuant to this Order and the Agency Agreements, absent further order of this Court. By timely filing a Dispute Resolution Motion, all Governmental Units shall be entitled to assert any jurisdictional, procedural or substantive argument that it might heretofore have been entitled to raise. Notwithstanding anything in the foregoing, any Local Governmental Unit may assert a Reserved Dispute at any time during the pendency of the Store Closing Sale by filing a Dispute Resolution Motion; provided, however, that the Agent shall be entitled to continue to conduct the Store Closing Sales pending resolution of the Reserved Dispute by an order of the Court.

45.    Nothing herein shall be deemed to constitute a ruling on whether any nonbankruptcy state law, regulation, or rule applicable to the Store Closing Sales is preempted by the Bankruptcy Code nor as to whether the automatic stay applies nor is this Order a ruling with respect to whether sovereign immunity applies.

46.    Other than as expressly provided for in the Agency Agreements, the Agent shall not be liable for any claims against the Debtors based, in whole or in part, directly or indirectly, on any theory of law or equity.  Notwithstanding anything in this Order to the contrary, the term "Agent" shall also mean the "Sub-Agent" as such term is used in the Agency Agreement.

47.    The Agent shall not be liable for sales taxes except as expressly provided in the Agency Agreements and the payment of such sale taxes is the responsibility of the Debtors.  The Agent shall collect and remit sales taxes as and to the extent provided in the Agency Agreements.

48.    All state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."  The Agent shall accept return of any goods that contains a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, provided that the consumer must return the merchandise within the time period prescribed by the Debtors' return policy that was in effect when the merchandise was purchased (except with respect to items purchased during the Store Closing Sales, in which case such items must be returned within twenty-one (21) days of purchase), the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect.

49. The Debtors, the Agent, and each of their respective officers, employees and agents shall be, and they hereby are, authorized to execute such documents and to do such acts as are necessary or desirable to carry out the Store Closing Sales and effectuate the Agency Agreements and the related actions set forth therein.

50. The Agent shall have the right to use the Closing Stores and all related store services, furniture, fixtures, equipment and other assets of the Debtors as designated in the Agency Agreements for the purpose of conducting the Store Closing Sales, free of any interference of any entity or person, subject to compliance with the Sale Guidelines and this Order.

51. The Purchaser shall grant to the Agent a limited license and right to use until the Sale Termination Date the trade names, logos and customer and mailing lists relating to and used in connection with the operation of the Closing Stores, solely for the purpose of advertising the Store Closing Sales in accordance with the terms of the Agency Agreements and the Sale Guidelines.

52. Subject to the terms of the Agency Agreements, any amounts due to the Agent pursuant to the Agency Agreements shall be free and clear of all Interests and shall be payable to the Agent out of the Proceeds (as defined in the Standby Agency Agreement) without further order of the Court and without the filing with the Court of fee applications.

53. Effective upon Closing and payment of the Initial Payment, Agent and Purchaser are hereby granted pursuant to section 364(c) of the Bankruptcy Code, a first priority security interest in and lien upon the Merchandise (as defined in the Agency Agreements), the Proceeds (as defined in the Agency Agreements), and such other collateral set forth in the Agency Agreements (collectively, the "Collateral") to secure all obligations of the Debtors to

Agent and Purchaser under the Agency Agreements and the Asset Purchase Agreement; provided, however, that (i) such lien shall be junior and subject to valid, preexisting liens and (ii) until payment of the balance of the Remaining Purchase Price, if any (which payments shall be made as provided for in the Asset Purchase Agreement) and Agent's reimbursement of Expenses (as provided for under the Agency Agreements), the security interests granted to the Agent and Purchaser shall remain junior to the liens of the Prepetition Secured Lenders in and to the Collateral to the extent of the unpaid portion of the Remaining Purchase Price and Expenses. The security interest granted to Agent and Purchaser under the Agency Agreements and the Asset Purchase Agreement shall be deemed properly perfected without the need for further filings or documentation.

54.     Within three (3) business days of the Debtors' receipt of a notice of the Sale Termination Date for one or more of the Closing Stores pursuant to the Agency Agreements, the Debtors shall electronically file with the Court a notice disclosing the Sale Termination Date, and shall serve a copy of such notice on the affected landlord(s) for the subject Closing Stores; provided, however, such notice shall not serve as a rejection of the lease for such named Closing Store, and the Debtors shall have no obligation to serve such notice on the unaffected landlords or any other party in interest.  In the event of an agreement between the Debtors and the Agent to extend the Store Closing Sales at a Closing Store beyond November 30, 2008, the Debtors shall electronically file a notice of such extension, and mail a copy of such notice to the affected landlord, counsel to each agent for the Prepetition Secured Lenders, counsel to the official committee of unsecured creditors, the U.S. Trustee, the attorney general for the state in which the subject Closing Store is located.  Absent consent of the affected landlords, the Debtors shall file an expedited motion to extend the Store Closing Sales at the

Closing Stores, which motion shall be filed no later than November 21, 2008 on notice to affected landlords with a hearing to be held on or before November 28, 2008 and the objection deadline with respect thereto to be set at 4 p.m. the day prior to such hearing.

55.     The Owned FF&E remaining in the Closing Stores as of the Sale Termination Date may, unless the affected lessor has been previously notified in writing by the Debtors or the Agent to the contrary at least three (3) days prior to the Sale Termination Date, be abandoned at the Closing Stores by the Debtors and/or the Agent; provided, however, that the Debtors shall provide any known third party holding or asserting an Interest in such Owned FF&E, including taxing authorities, with five (5) days' prior notice of such abandonment and if such third party fails to remove such Owned FF&E or to make arrangements to remove such Owned FF&E within such time as is deemed acceptable to the affected landlord prior to the expiration of such five (5) day notice period, such Owned FF&E shall be deemed abandoned by such third party and the affected landlord may dispose of such property without liability to any party; provided, however, that the abandonment of Owned FF&E authorized herein shall not impact the Debtors' obligation to leave the stores in an otherwise broom clean condition.

56.     Before any sale or abandonment of computers (including software) and/or cash registers and any other point of sale equipment (collectively, "POS Equipment"), which may contain Personally Identifiable Information, the Debtors shall remove or cause to be removed the Personally Identifiable Information from the POS Equipment.

57.     This Order constitutes an authorization of conduct by the Debtors and the Agent and nothing contained herein shall be deemed to constitute a ruling with regard to the sovereign immunity of any State, and the failure of any State to object to the entry of this Order shall not operate as a waiver with respect thereto.

58.     To the extent that the disposition of the Debtors' assets would constitute the sale of an interest in a consumer credit transaction that is subject to the Truth in Lending Act or an interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations (January 1, 2004), as amended from time to time, then the purchaser shall remain subject to all claims and defenses that are related to such consumer credit transaction or such consumer credit contract, to the same extent as such person would be subject to such claims and defenses of the consumer had such interest been purchased at a sale not under this section.

59.     Nothing in this Order shall (a) alter or affect the Debtors' obligation to comply with section 365(d)(3) of the Bankruptcy Code or (b) alter or modify the rights of any lessor or other counterparty to a lease with the Debtors to file an appropriate motion or otherwise seek appropriate relief if the Debtors fail to comply with section 365(d)(3) of the Bankruptcy Code.

Distribution of Sale Proceeds and Related Provisions

60.     The Sale Proceeds shall be distributed as follows:  (A) at the Closing (as defined in the Asset Purchase Agreement), first, $2.5 million, less amounts, if any, paid by the Debtors to estate professionals subsequent to the Commencement Date (which $2.5 million shall be free and clear of any and all liens, claims and encumbrances, including the liens and claims of the Prepetition Secured Lenders), shall be distributed to Weil, Gotshal & Manges LLP to be held in escrow on account of the Carve Out (as defined in the Cash Collateral Order); second, $780,000 shall be set aside pursuant to Paragraph 64 of this Order; third, such amount as necessary to permanently reduce the Prepetition Revolver Obligations (other than the Prepetition Participation Obligations) (each as defined in the Cash Collateral Order) until all such obligations, less $1,000,000, are indefeasibly paid in full shall be distributed to GECC; fourth,

the last $1,000,000 of the Prepetition Revolver Obligations (other than the Prepetition Participation Obligations) shall be distributed to an escrow account, subject to existing liens and further order of the Court (the "Creditor Escrow"); fifth, $250,000 of the Prepetition Term Loan Obligations shall be distributed to the Creditor Escrow; and sixth, the remainder of the Initial Payment shall be distributed to holder(s) of the Prepetition Term Loan Obligations to reduce the Prepetition Term Loan Obligations (as defined in the Cash Collateral Order); and (B) after the Closing, first, the remaining Sale Proceeds shall be distributed to holder(s) of the Prepetition Term Loan Obligations to permanently reduce the remainder of the Prepetition Term Loan Obligations until indefeasibly paid in full; and second, any and all remaining Sale Proceeds shall be distributed to the Debtors, subject to existing liens and further order of the Court.

61.     As disclosed at the Sale Hearing and as requested by the Purchaser, Steven Shore and Barry Prevor have agreed in good faith to purchase a junior last-out participation for $5 million at the time of the acquisition of the Prepetition Term Loan Obligations by the Purchaser, as set forth in an agreement between Steve Shore and Barry Prevor and Purchaser or an affiliate thereof (the "Participation Agreement" ), in the Prepetition Term Loan Obligations (which are being purchased by the Purchaser) in order to facilitate the Sale.  Notwithstanding anything in this Order to the contrary, such participation shall not on any basis be subject to attack, challenge, subordination, recharacterization, holdback or setoff by any party in interest (including by any trustee subsequently appointed in these cases) and shall be indefeasibly and timely paid in accordance with the distribution scheme set forth in Paragraph 60 hereof, subject only to the Participation Agreement.  Nothing in this Order in any way limits the Committee's rights to Challenge the liens of the Prepetition Junior Participants with respect to the Prepetition Revolver Facility as provided in paragraph 18 of the Cash Collateral Order.

62.     The Debtors agree to maintain their D&O Policies provided that within fifteen (15) business days of the Closing, the Prepetition Junior Participants shall pay all remaining outstanding amounts due with respect to director and officer insurance policies.

63.     The Purchaser shall make the Transferred Employees available to the Debtors at no cost to the Debtors or their estates for such time and to the extent reasonably necessary to assist the Debtors in performing the tasks on Exhibit D hereto, all to the extent such services do not materially interfere with such Transferred Employee's responsibilities to the Purchaser.

64.     There shall be set aside from the Sale Proceeds attributable to any sale located in the applicable jurisdiction of collateral subject to the Tax Authority Liens (as defined in the Cash Collateral Order) an amount equal to the claims (without double counting) of the Tax Authorities (as defined in the Cash Collateral Order and identified on Schedule D thereto, and which for purposes of this Order, shall include Chatham County Tax Commissioner) (as scheduled by the Debtors or as filed by the Tax Authorities) in a segregated account as adequate protection of the interests of the Tax Authorities.  The Tax Authority Liens shall attach to such sale proceeds to the same extent and with the same priority as the Tax Authority Liens had on such collateral as of the Commencement Date; provided that the Prepetition Agents' (as defined in the Cash Collateral Order) and Prepetition Secured Lenders' respective liens on such collateral shall continue to the same extent and with the same priority as such liens had on such collateral as of the Commencement Date.  Any such segregated funds may not be distributed other than by agreement between the Tax Authorities and the Debtors with the consent of the Prepetition Agents and Prepetition Secured Lenders, or by subsequent order of the Court upon notice and hearing.  Nothing herein shall constitute an allowance of the claims of the Tax Authorities, a cap

on the amounts the Tax Authorities may be entitled to receive, or a finding or ruling by this Court that any such Tax Authority Liens are valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party in interest including, but not limited to, the Debtors, the Statutory Committee, the Prepetition Agents (each as defined in the Cash Collateral Order), and the Prepetition Secured Lenders to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such Tax Authority Liens and/or security interests.

65. This Order shall be without prejudice to the respective rights, obligations, and/or claims of the Prepetition Secured Lenders under that certain Intercreditor Agreement dated as of February 1, 2008 (as supplemented by that certain side letter between the Prepetition Revolver Agent and Prepetition Term Loan Agent dated June 20, 2008) between the Prepetition Revolver Agent and Prepetition Term Loan Agent (each as defined in the Cash Collateral Order). Upon Closing, any such rights, obligations, and claims shall be deemed forever waived, barred, and released.

Additional Provisions

66. The Sale includes the transfer of "Personally Identifiable Information" (as defined in Bankruptcy Code section 101(41A)). The U.S. Trustee is directed to appoint a Consumer Privacy Ombudsman under Bankruptcy Code sections 332 and 363(b)(1). The transfer of Personally Identifiable Information shall not be effective until a Consumer Privacy Ombudsman is appointed, issues its findings, and the Court has an opportunity to review the findings and issue any rulings that are appropriate. Pursuant to Section 2.3(c) of the Asset Purchase Agreement, the Purchaser shall cover any and all costs of a Consumer Privacy Ombudsman.

67.     In accordance with Section 10.1(g) of the Asset Purchase Agreement, the Debtors are hereby authorized in their discretion and without further order of the Court to transfer the Intellectual Property (as defined in the Asset Purchase Agreement) set forth on Schedule 10.1(g)(ii) thereof to the Licensor (as defined in the Asset Purchase Agreement) in respect of the associated License (as defined in the Asset Purchase Agreement).

68.     Nothing in this Order shall be deemed to modify the Debtors' rights to seek Court approval of any extension as may be required pursuant to section 365(d)(4) of the Bankruptcy Code.

69.     Effective upon the Auction, the Committee released any and all claims and causes of action in respect of Prepetition Obligations (as defined in the Cash Collateral Order), other than claims or causes of action against the Prepetition Junior Participants or in connection with the Prepetition Participation Obligations.  The Challenge Period (as defined in the Cash Collateral Order) is hereby deemed to have expired, and the Challenge Period Termination Date (as defined in the Cash Collateral Order) is hereby deemed to have occurred.

70.     The Creditor Escrow and the funds therein shall be property of the Debtors' estates (as such term is defined in section 541 of the Bankruptcy Code).

71.     Each and every federal, state, and local governmental agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreements.

72.     This Court retains exclusive jurisdiction with regard to all matters, claims, rights, issues or disputes arising from or related to the implementation of this Order and the relief provided for herein and to enforce and implement the terms and provisions of the Agreements, all amendments thereto, any waivers and consents thereunder, and of each of the agreements

executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets to the Purchaser, (b) compel delivery of the Sale Proceeds or performance of other obligations owed to the Debtors, (c) resolve any disputes arising under or related to the Agreements, except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this Order, (e) protect the Purchaser and Agent against (i) any of the Excluded Liabilities or (ii) any Interests in the Debtors or the Purchased Assets, of any kind or nature whatsoever, attaching to the Sale Proceeds; (f) protect the Debtors, the landlords and/or the Agent from interference with the Store Closing Sales; and (g) resolve any disputes related to the Store Closing Sales or arising under the Agency Agreements or the implementation thereof; provided, however, that in the event the Court abstains from exercising or declines to exercise such jurisdiction or is without jurisdiction with respect to the Agreements or this Order, such abstention, refusal, or lack of jurisdiction shall have no effect upon, and shall not control, prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

73.     The Purchaser and the Agent each is a party in interest and each of them shall have the ability to appear and be heard on all issues related to or otherwise connected to the Agreements and the conduct of the Store Closing Sales.

74.     The transactions contemplated by the Agreements are undertaken by the Purchaser and the Agent in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the sale of the Purchased Assets to the Purchaser (including the assumption, assignment and sale of any of the Assumed Contracts), any term or condition of such sale or the transactions contemplated thereby, or the sale of Store

Closing Assets by Agent in the Store Closing Sales, unless such authorization is duly stayed pending such appeal.  In the absence of any person or entity obtaining a stay pending appeal, the Debtors, on the one hand, and the Purchaser and the Agent, on the other hand, are authorized to perform under the Agreements at any time, subject to the terms of the Agreements.  The Purchaser is purchasing the Purchased Assets, and the Agent is conducting the Store Closing Sales, in good faith.  Therefore, the Purchaser and the Agent shall each be afforded the protections of Bankruptcy Code § 363(m) as to all aspects of the transactions under and pursuant to the Agreements, if this Order or any authorization contained herein is reversed or modified on appeal.

75.      The consideration provided by Purchaser and Agent for the Assets under the Agreements (i) is fair and reasonable and may not be avoided under Bankruptcy Code section 363(n), and (ii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States.

76.      All entities that are presently, or on the Closing Date may be, in possession of some or all of the Assets in which the Debtors hold an interest hereby are directed to surrender possession of the Assets either to (i) the Debtors before the Closing Date, or (ii) to Purchaser and Agent on the Closing Date.

77.      Solely with respect to the objections filed by The Collegiate Licensing Company, Rutgers, The State University of New Jersey and/or Syracuse University ("Licensors") and notwithstanding anything contained in this Order to the contrary, the Licensors' and the licensees' rights as and between each other are preserved, and the Licensors are not deemed to waive any claims against the licensees thereto, or against the Purchaser,

Agent, or Sub-Agent, including, but not limited to, claims relating to, or arising out of, any expiration of one or more of the Licensors, Licenses or applicable law.

78.     Any amounts payable by the Debtors under the Agreements or any of the documents delivered by the Debtors in connection with the Agreements, shall be paid in the manner provided in the Agreements without further order of this Court.

79.     The terms and provisions of the Agreements (including the Purchaser's acquisition of the estates' causes of action pursuant to Section 2.1(q) of the Asset Purchase Agreement) and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, and their creditors, the Purchaser, the Agent, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting an Interest in the Purchased Assets to be sold to the Purchaser pursuant to the Asset Purchase Agreement or in the Store Closing Assets to be sold by the Agent pursuant to the Agency Agreements, notwithstanding any subsequent appointment of any trustee(s), party, entity or other fiduciary under any section of any chapter of the Bankruptcy Code or, as to which trustee(s), party, entity or other fiduciary such terms and provisions likewise shall be binding.

80.     Nothing contained in any plan of reorganization or liquidation confirmed in the Debtors' chapter 11 cases or any order of this Court confirming such plans or in any other order in these chapter 11 cases (including any order entered after any conversion of this case to a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Agreements or the terms of this Order.

81.     The provisions of this Order and the Agreements and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered confirming or consummating any plan of reorganization of the Debtors, or which may be entered converting

the Debtors' cases from chapter 11 to chapter 7 of the Bankruptcy Code, and the terms and provisions of the Agreements as well as the rights and interests granted pursuant to this Order and the Agreements shall continue in this or any superseding case and shall be specifically performable and enforceable against and binding upon the Debtors, their estates, the Purchaser, the Agent and their respective successors and permitted assigns, including any trustee, responsible officer or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, and shall not be subject to rejection, revocation or avoidance.  Such binding effect is an integral part of this Order.  Any trustee appointed in these cases shall be and hereby is authorized and directed to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of this Order and the Agreements, and the Purchaser and the Agent shall be and hereby are authorized to perform under the Agreements upon the appointment of a trustee without the need for further order of this Court.

82.     The failure specifically to include any particular provisions of the Agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreements be authorized and approved.

83.     The Agreements and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates and is filed on the docket with a statement of the Committee's "support" or no objection.

84.     To the extent, if any, anything contained in this Order conflicts with a provision in the Agreements or the Sale Guidelines, this Order shall govern and control.

85.     Notwithstanding the provisions of Interim Bankruptcy Rule 6004(h) and Bankruptcy Rule 6006(d), this Order shall not be stayed for ten days after the entry hereof, but shall be effective and enforceable immediately upon issuance hereof.  Time is of the essence in closing the transactions referenced herein, and the Debtors, Purchaser and Agent intend to close the Sale as soon as practicable.  Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

86.     The provisions of this Order are nonseverable and mutually dependent.

87.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

88.     The requirement set forth in Local Bankruptcy Rule 9013-1(b) that any motion or other request for relief be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or is otherwise waived.

Dated:  August 22, 2008
        New York, New York

/s/ Allan L. Gropper
UNITED STATES BANKRUPTCY JUDGE

TAB 11

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Whitehall Jewelers Holdings, Inc., et al., | ) | Case No. 08-11261 (KG) |
| | ) | Jointly Administered |
| Debtors. | ) | **Re: D.I. 15** |

### ORDER PURSUANT TO SECTIONS 105, 363 AND 365 OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO (A) IMPLEMENT AN AGENCY AGREEMENT WITH A LIQUIDATION AGENT, (B) CONDUCT STORE CLOSING SALES AT THE DEBTORS' LOCATIONS AND (C) SELL ASSETS AT SUCH LOCATIONS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES; (D) ESTABLISHING PROCEDURES IN CONNECTION WITH THE REJECTION OF LEASES FOR NONRESIDENTIAL REAL PROPERTY; AND (E) GRANTING ANCILLARY AND OTHER RELATED RELIEF

This matter coming before the Court on the Motion of Debtors for an Order Pursuant to Sections 105, 363 And 365 of the Bankruptcy Code (A) Authorizing Debtors to Enter into a Stalking Horse Agency Agreement in Connection with Store Closing Sales; (B) Approving Payment of a Break-Up Fee in Connection Therewith; (C) Approving Auction Procedures for a Disposition of Substantially All of the Debtors' Assets, and Subsequent to Such Action (1) Approving a Sale Transaction Pursuant to Which Certain of the Debtors' Stores Would Continue as Going Concerns and/or (2) Authorizing the Debtors to (a) Implement an Agency Agreement with a Liquidation Agent, (b) Conduct Store Closing Sales at the Debtors' Locations and (c) Sell Assets at Such Locations Free and Clear of All Liens, Claims and Encumbrances; (D) Establishing Procedures in Connection with the Rejection of Leases for Nonresidential Real Property; and (E) Granting Ancillary and Other Related Relief (the "Motion") filed by Whitehall Jewelers Holdings, Inc. and Whitehall Jewelers, Inc., the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for the entry of an

*[as such motion was modified on the record of the hearing held on August 8, 2008]*

order to (a) authorize Debtors to enter into an agency agreement in connection with proposed going-out-of-business sales, (b) approve a breakup fee, (c) approve auction procedures in connection with an auction to solicit bids (1) for a transaction whereby all or some of the Debtors' stores would continue as a going concern and/or (2) by parties to act as liquidation agent for the Debtors, (d) establish procedures in connection with (1) the rejection of certain leases for non-residential real property and (2) the abandonment of property of inconsequential value; (e) approve the manner and form of the notice of auction procedures, auction date and sale hearing and (f) grant certain ancillary and other relief related thereto; the Court having reviewed the Motion; the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (c) notice of this Motion having been provided to, *inter alia*, the Office of the United States Trustee for the District of Delaware; counsel to the Official Committee of Unsecured Creditors; counsel to the Debtors' secured lenders; all parties to Leases; Attorney Generals in the states in which the Debtors have leased locations; and all parties who have timely filed requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure; and (d) capitalized terms not otherwise defined herein have the meaning given to them in the Motion; and the Court having determined that the legal and factual basis set forth in the Motion establish just cause for the relief granted herein; and the Court having determined that the relief sought in the Motion, ~~as modified by the discussions on the record at the hearing on the Motion,~~ is in the best interests of the Debtors and their estates; and after due deliberation and sufficient cause appearing therefor,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.     The Motion is GRANTED as set forth herein.

-2-

## Rejection and Abandonment Provisions

2.    The Debtors are authorized, but not required, to reject Leases in accordance with the following Rejection Procedures:

a.    As applicable, the Debtors shall file with the Court a written notice (the "Rejection Notice") to reject any Lease, and will serve the Notice via facsimile or overnight mail upon (i) the landlords or counterparties (including sublessees) affected by the Rejection Notice, and via e-mail or Federal Express (or other reputable overnight delivery service) upon (ii) counsel to landlords or counterparties (including sublessees) affected by the Rejection Notice that have filed a notice of appearance in the Debtors' cases, (iii) other interested parties to each Lease sought to be rejected by the Debtors and/or its counsel, (iv) counsel to the Committee, and (v) the U.S. Trustee (collectively, the "Rejection Notice Parties"), advising the Rejection Notice Parties of the Debtors' intent to reject the specified Lease. If the Rejection Notice is issued by the Debtors prior to the effective date of a plan of reorganization, the affected Lease shall be deemed to be subject to a motion to reject for all purposes. *substantially*                                 *as may be modified by the Debtors in their*

b.    The Rejection Notice shall be *substantially* in the form of <u>Exhibit A</u> hereto *and* shall set forth the following information, to the best of the Debtors' *reasonable discretion* knowledge, as applicable: (1) the street address of real property that is the subject of any Lease that the Debtors seek to reject, (ii) the monthly rental obligation specified in the affected Lease, (iii) the remaining term specified for the affected Lease, (iv) the name and address of the affected landlords or counterparties (including sublessees), and (v) a description of the deadlines and procedures for filing objections to the Rejection Notice (as set forth below).

c.    Should a party-in-interest object to the rejection by the Debtors of a Lease, such party must file and serve a written objection so that such rejection is filed with this Court and actually received by the Rejection Notice Parties at the addresses set forth in the Rejection Notice no later than five (5) days after the date that the Debtors served the Rejection Notice to reject the Lease at issue.

d.    Absent an objection being filed in compliance with subparagraph (c) of this paragraph, without further notice, hearing or order of this Court, the rejection of each Lease shall become effective on the later of (i) five (5) days from the date the applicable Rejection Notice is served on the affected landlord or counterparty (including sublessees), or, (ii) the date that the Debtors unequivocally

relinquish control of the premises to the affected landlord by turning over keys or "key codes" to the affected landlord. Where a rejected Lease is subject to a sublease, the Debtors shall also provide notice to the sublessee that the sublease is being rejected.

e.   If an objection is properly filed and served on the Rejection Notice Parties as specified above, the Court will schedule a hearing to consider that objection. If that objection is overruled by the Court or withdrawn, the rejection of the affected Lease shall be deemed effective on the later of (1) ten (10) days from the date the applicable Rejection Notice was served on the affected landlord or counterparty (including sublessees), or (ii) the date that the Debtors unequivocally relinquished control of the premises to the affected landlord by turning over keys or "key codes" to the affected landlord. In the event an objection is filed by a party other than the landlord, the Court shall in ruling on any such objection determine the effective date of the rejection as well as the party liable for rent during the pendency of the objection.

f.   In connection with the rejection of a Lease, if the Debtors have deposited monies with a lessor as a security deposit or other arrangement, such lessor may not set off or otherwise use such deposit without the prior authority of the Court.

g.   In connection with the rejection of a Lease, with respect to any personal property of the Debtors located at any of the premises subject to any Rejection Notice, the Debtors shall remove such property prior to the later of (i) the expiration of the period within which a party must file and serve a written objection to the Rejection Notice and (ii) the date of rejection of the underlying Lease. If the Debtors determine that the value of the property at a particular location has a de minimis value or the cost of removing the property exceeds the value of such property, the Debtors shall generally describe the property in the Rejection Notice and, absent a timely objection, the property will be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as is, where is, effective as of the date of the rejection of the underlying Lease. The landlord may dispose of such abandoned property without liability to any party.

3.   All rights and defenses of all parties are preserved, including all rights and defenses of all parties with respect to a claim for damages arising as a result of a Lease rejection, including, but not limited to any right to assert an offset, counterclaim or deduction. In addition,

nothing in this Order or the Motion shall limit any parties' ability to subsequently assert that any particular Lease is terminated and is no longer an unexpired lease.

4.     The Debtors are authorized to abandon any unsold trade fixtures of de minimis value located at any of the Closing Stores (the "Abandoned Property"); provided however, that the Debtors shall provide notice of any such abandonment to the landlords and/or its counsel, counsel to the Debtors' secured lenders, and any party with a known interest in the Abandoned Property contemporaneously with the rejection Notice. The right of any party in interest to assert a claim against the Debtors' estate for costs associated with the Abandoned Property is fully preserved; provided however, that any claim must be made within the later of (i) the time set by this Court for filing proofs of claim or (ii) no later than thirty (30) days following the abandonment of the property. The Debtors' rights to contest any such claim are fully preserved.

### Store Closing/GOB Provisions

5.     Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors, through their officers, employees, agents, representative and/or through a consultant (provided the Debtors' engagement of such agent or consultant has been separately authorized and approved by this Court) (the "Agent") shall be, and hereby are, authorized and empowered to conduct liquidations, store closing sales, "going-out-of-business" sales or similar sales (collectively, the "GOB Sales") at any of the Debtors' store locations (the "Stores") in accordance with the terms of this Order, the Sale Guidelines set forth in Exhibit B attached hereto and any applicable agency or consultant agreement approved by the Court. Any reference herein to the Debtors shall also include the Debtors' applicable officers, employees, agents, representative and consultants.

6.     Accordingly, the Court grants to the Debtors authority to conduct the GOB Sales pursuant to the guidelines and procedures set forth herein and annexed as <u>Exhibit B</u> attached hereto (without prejudice to any party's ability to seek modification of those guidelines and procedures at a later date; and subject to any agreements between landlords and the Debtors or its agents regarding same) and take all actions reasonably related thereto or arising in connection therewith, including, without limitation, advertising such sales as "store closing sales" or "going-out-of-business sales" in media advertisements, and on interior and exterior banners and other signage so long as such banners and other signage complies with the other provisions of this Order, without complying with (i) any applicable state and local statutes, rules, or ordinances governing liquidation or "going-out-of-business" sales, and waives the requirements of any otherwise applicable bulk sales or similar laws, and (ii) any such restrictive Lease provisions, and enjoins the lessors under the Leases from in any way interfering with or otherwise restricting the Debtors from conducting the GOB Sales and from seeking to recover damages for breach of any such restrictive provisions; <u>provided, however,</u> that the Debtors shall comply with all state and local health and safety laws and consumer protection laws in conducting GOB Sales.

7.     The Stores may "go dark" during the GOB Sales and may remain "dark" despite any lease restriction, real estate act, local law, or ordinance to the contrary, and any "continuous operation" or similar clause in any of the leases (or any lease provision that purports to increase the rent or impose any penalty for going dark) may not be enforced to hinder or interrupt the GOB Sales (and the going dark under such leases shall not be a basis to cancel or terminate the leases) provided, however, that the Debtors shall otherwise comply with their obligations under the Bankruptcy Code, including Section 365.

- 6 -

8.  The Debtors shall be entitled to use sign walkers, hang signs and/or interior or exterior banners advertising the GOB Sales in accordance with the Sale Guidelines or as otherwise agreed between the Debtors and respective landlords provided that the Debtors' use of banners and sign walkers are done in a safe and responsible manner, such sign walkers and banners, in and of themselves, shall not be deemed to be in violation of Safety Laws (as defined below) and/or General Laws (as defined below).

9.  All newspapers and other advertising media in which the GOB Sales may be advertised, and all landlords of the Stores are directed to accept this Order as binding authority so as to authorize the Debtors to conduct the GOB Sales at the Stores, including, without limitation, conducting and advertising of the GOB Sales in accordance with the Sale Guidelines and this Order without the need to comply with the Liquidation Sale Laws (as defined herein).

10.  Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors are authorized and empowered to (i) take any and all actions necessary or appropriate to effect the commencement of the GOB Sales, the Sale Guidelines and this Order, and (ii) execute and deliver, perform under, consummate, implement all instruments and documents that may be reasonably necessary or desirable to implement the GOB Sales.

11.  Except as to the States (as to which no injunction shall apply whatsoever), and except as expressly provided for herein or in the Sale Guidelines: no person or entity, including but not limited to any landlord, or federal or Local Governmental Unit (defined below), (i) served with a copy of the Sale Motion or (ii) served with a copy of this Order who does not object pursuant to the provisions of this Order, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the GOB Sales, or the

- 7 -

advertising and promotion (including the posting of signs) of such GOB Sales, and all such parties and persons of every nature and description, including landlords and utility companies and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, or otherwise impeding the conduct of the GOB Sales and/or (b) instituting any action or proceeding in any court or administrative body, except for this Court, seeking an order or judgment against, among others, the Debtors, the Agent, or the Debtors' landlords for the Stores, that might in any way directly or indirectly interfere with, or adversely affect, the conduct of the GOB Sales. No Governmental Units shall be bound by this injunctive provision unless it was either previously served with the Sale Motion or subsequently served with this order, and has had an opportunity to object as provided in this Order, and failed to timely file an Objection.

12. The Debtors may, subject to the provisions of the Sale Guidelines, (and in accordance with the Consulting Agreement for the Liquidation of Assets annexed hereto as Exhibit C augment the GOB Sales with additional merchandise.

13. Provided that the GOB Sales are conducted as authorized herein, the Debtors, any agent or consultant, and the Debtors' landlords, shall be presumed to be in compliance with any requirements of all county, parish, or municipal or other local government (hereinafter referred to as "Local") and State requirements governing the conduct of the GOB Sale, including but not limited to Local statutes, regulation and ordinances establishing licensing or permitting requirements, waiting periods, time limits (except as provided herein), or bulk sale restrictions that would otherwise apply to the GOB Sales (collectively, the "Liquidation Sale Laws") of (i) any Local Governmental Unit served with a copy of the Motion filed on June 23, 2008; and (ii) any Local Governmental Unit served with this Order and who does not object pursuant to the provisions below.

- 8 -

14.    The term "Liquidation Sale Laws" shall be deemed not to include any public health or safety laws (the "Safety Laws") or any state and local laws, regulations, ordinance, or police powers of general applicability (the "General Laws") regarding matters such as consumer protection, labor and employment, taxes (including, but not limited to, the collection of sales taxes), the sale of gift certificates, layaway programs, return of goods, express or implied warranties of goods, and "weights and measures" regulation and monitoring, and the Debtors shall continue to be required to comply, as applicable, with such Safety Laws and General Laws, subject to any applicable provision of the Bankruptcy Code and federal law, and nothing in this Order shall be deemed to bar Governmental Units (as defined in section 101(27) of the Bankruptcy Code) or public officials from enforcing Safety Laws or General Laws. "Local Governmental Units" shall mean all Governmental Units other than the States or federal Governmental Units.

15.    Nothing in this Order shall be deemed to bar any Governmental Units from enforcing Safety Laws and General Laws in the applicable non-bankruptcy forum, subject to the Debtors' right to assert that any such laws are not in fact Safety Laws or General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Order or otherwise, and provided further that the Governmental Unit shall in the first instance present the matter to the Bankruptcy Court for resolution, or to request from the Bankruptcy Court that they be permitted to proceed with the matter in the applicable non-bankruptcy forum, provided however the such Governmental Unit shall provide the Debtors with reasonable notice and opportunity to cure any such alleged violation absent extenuating circumstances and/or to oppose the relief sought by such Governmental Unit; provided further however, cessation of alleged unlawful conduct after notice shall not, in and of itself, render court action by any State moot under any circumstances

any injunctive relief that may lie even if the Debtors have ceased the alleged unlawful conduct. The Debtors do not waive the right to argue that the conduct was in compliance with this Order and/or any applicable law, or preempted by applicable law. The Bankruptcy Court shall consider expedited hearings and shall grant telephonic appearances to any State Attorney General's Office upon submission of an application to appear pro hac vice; provided however, such telephonic appearance shall be limited to legal argument as the court will not allow the examination of witnesses nor the presentation of evidence by telephone. Subject to the provisions herein, nothing herein shall preclude any Governmental Unit from enforcing Safety Laws or General Laws in an appropriate non-bankruptcy forum. If there is a dispute (a "Reserved Dispute") over the enforceability of a Local Liquidation Sale Law, the resolution of such Reserved Dispute will take place before this Bankruptcy Court, as provided herein and shall only operate prospectively.

16.     The Debtors shall serve copies of this Order within five business (5) days, via first class mail, upon (i) the State Attorney General's offices (upon (x) Chief or Director of the Consumer Protection Division or Bureau; and (y) Chief or Director of the Bankruptcy Division or Bureau) and State Consumer Protection Agency for each State where a Store is located, and (ii) the Local mayor or similar representative of each village, or city official, and the county or parish where a Store is located, addressed to the attention of the municipal, city or county attorney, in each case to the consumer protection division. Except as provided for herein, this Court shall retain exclusive jurisdiction to resolve any dispute arising under Liquidations Sale Laws and related to the Sale Guidelines, any agency or consultant agreement, or this Order, by any Local Governmental Unit filed within 20 days of service of this Order.

17.     Any time before the twentieth (20th) day following the service of this Order as provided for above, any Local Governmental Unit may assert a Reserved Dispute by

sending a notice explaining the nature of the dispute to Debtors' counsel. If the Debtors and the objecting Local Governmental Unit (the "Objecting Party") are unable to resolve the Reserved Dispute within fifteen (15) days of receipt of the Objecting Party's notice, either party may file a motion with the Court requesting a resolution of the dispute ("Dispute Resolution Motion"). If such a Dispute Resolution Motion is timely filed, the Debtors shall each be entitled to assert that the provisions in question are preempted by the Bankruptcy Code and/or that neither the terms of this Order or the conduct of the GOB Sales violates the Liquidation Sales Law. The timely filing of a Dispute Resolution Motion shall not affect the finality of this Order or limit or interfere with the ability to conduct the GOB Sales. By timely asserting a Reserved Dispute, all Governmental Units shall be entitled to assert any jurisdictional, procedural or substantive argument that it might heretofore have been entitled to raise.

18.     Nothing herein shall be deemed to constitute a ruling on whether any non-bankruptcy state law, regulation or rule applicable to the GOB Sales is preempted by the Bankruptcy Code nor as to whether the automatic stay applies nor is this Order a ruling with respect to whether sovereign immunity applies.

19.     The Debtors (including their respective officers, agents, consultants, employees or directors) and the Agent shall not be required to obtain the approval of any landlord, managing agent or other third party to conduct the GOB Sales and the other transactions authorized herein. The Debtors and the Agent shall not be required (a) to obtain the approval of any federal, state, or local government agency, department or other authority, or (b) to execute, obtain or file releases, termination statements, assignments, consents, or other instruments to effect, consummate and implement the provisions hereof.

- 11 -

20.     At the conclusion of the GOB Sales, the Debtors are authorized to abandon the Abandoned Property; provided however, that the Debtors shall provide notice of any such abandonment to the landlords and/or its counsel, the Debtors' secured lenders and its counsel, and any party with a known interest in the Abandoned Property. The right of any party in interest to assert a claim against the Debtors' estate for costs associated with the Abandoned Property is fully preserved; provided however, that any claim must be made within the later of (i) the time set by this Court for filing proofs of claim or (ii) no later than thirty (30) days following the abandonment of the property. The Debtors' rights to contest any such claim are fully preserved. The landlords may dispose of Abandoned Property without liability to any party.

21.     This Order does not authorize the Debtors to transfer or sell to any party the Private Customer Data (as defined in the Sale Guidelines) of any customers unless such sale or transfer is permitted by the Debtors' privacy policy and state or federal privacy and/or identity theft prevention laws and rules (collectively, the "Applicable Privacy Laws"). The Debtors shall remove or cause to be removed any confidential and/or Private Customer Data in any of the Debtors' hardware, software, computers or cash registers or similar equipment which are to be sold or abandoned. At the conclusion of the GOB Sale, any agent or consultant working with the Debtors (including the Agent) shall provide the Debtors with written verification that such agent or consultant has not removed, copied, or transferred any Private Customer Data.

22.     The Debtors are authorized to conduct the GOB Sales through no later December 31, 2008 (the "Sale Term"); provided however, to the extent that the Debtors seek to extend the GOB Sale at one or more of the Stores, the Debtors shall file a motion on no less than ten (10) days notice. All parties rights are preserved with respect to any motion filed by the Debtors pursuant to 11 U.S.C. § 365(d)(4).

- 12 -

23. Any discount on items of merchandise shall be based upon the regular price of such merchandise.

24. All state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales". The Debtors shall accept return of any goods that contains latent defects in accordance with the provisions of the Sale Guidelines.

25. Notwithstanding anything in this Order to the contrary, the Debtors are not permitted to sell or abandon pursuant to this Order (a) personally identifiable information and/or assets containing personally identifiable information; (b) property which the Debtors do not own and/or property which the Debtors have leased from third parties, or (c) any interests which the Debtors may have in consumer credit transactions which are subject to the Truth in Lending Act or any interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations (January 1, 2004) as amended from time to time).

26. Notwithstanding anything in this Order to the contrary, the Debtors are not permitted to sell or abandon pursuant to this Order any assets which they own and have leased to third parties absent the consent of the counterparties to such lease arrangements.

27. Pursuant to 11 U.S.C. § 363, all sales of property pursuant and subject to the terms of this Order shall be free and clear of all liens, claims and encumbrances with any and all such valid and/or perfected liens, claims and encumbrances to attach to the proceeds of the sales with the same validity, priority, force and effect such liens, claims and encumbrances had on the property immediately prior to the sale, and subject to the rights, claims, defenses and objections, if any, of the Debtors and all interested parties with respect to any such asserted liens, claims and encumbrances.

28.     Purchasers of property sold by the Debtors or Agent pursuant to this Order shall be entitled to the protections afforded by 11 U.S.C. § 363(m) in the event of a reversal or modification of this Order appeal.

29.     The sale transactions consummated pursuant to this Order shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Order; and each and every federal, state, and local governmental agency or department is directed to accept this Order as sole and sufficient evidence of the transfer of title to any particular purchaser, and such agency or department shall rely upon this Order in consummating the transactions contemplated hereby.

30.     The requirements of Federal Rules of Bankruptcy Procedure 6004(h) and 6006(d), to the extent they would otherwise apply, are hereby waived.

31.     To the extent there is any conflict between this Order and Exhibit B, this Order shall control. Any agreements between landlords and the Debtors or its agents referenced herein shall control over the Order and Exhibit B.

32.     The Debtors shall provide notice of the conclusion of the GOB Sales to the States.

33.     This Court shall retain exclusive jurisdiction to resolve any dispute arising from or related to the GOB Sales or this Order.

34. Notwithstanding anything to the contrary herein, the rights of all landlords, attorneys general and taxing authorities that have objected of record to the relief sought in the Motion either prior to or during the August 8, 2008 hearing are hereby expressly preserved pending a hearing on their objections to be held on August 13, 2008 beginning at 9:00 a.m. As such hearing may be adjourned from time to time on the record of such hearing.

Dated:  August ⬥ 2008
        Wilmington, Delaware

_____
THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

Insert A

- 15 -

INSERT "A"

35) The Agent is not an "insider" of the Debtors, as that term is defined in section 101 (31) of the Bankruptcy Code.

36) Pursuant to Bankruptcy Code Section 363(m), the Consulting Agreement was negotiated at arm's-length and entered into in good faith by the respective parties thereto, and ~~Say~~ Agent is entitled to all the benefits and protections of section 363(m) of the Bankruptcy Code, in that: (i) Agent has not violated Section 363(n) of the Bankruptcy Code by any action or inaction; (ii) no common identity or directors or controlling stockholders exists between the Agent and the Debtors; (iii) the negotiation and execution of the Consulting Agreement and any other agreements or instruments related thereto was without collusion, at arm's-length and in good faith.

TAB 12

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - - x
In re:                          :   Chapter 11
                                :
GOODY'S FAMILY                  :   Case No. 08-11133 (CSS)
CLOTHING, INC., et al.,         :
                                :   Jointly Administered
              Debtors.          :
- - - - - - - - - - - - - - x       Related Docket No. 13
```

**ORDER (A) APPROVING THE CONDUCT OF STORE CLOSING SALES
PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE,
(B) AUTHORIZING THE DEBTORS TO ENTER INTO THE AGENCY
AGREEMENT WITH THE STORE CLOSING AGENT TO CONDUCT THE
STORE CLOSING SALES, (C) APPROVING AN EMPLOYEE RETENTION
BONUS, AND (D) GRANTING OTHER RELIEF**

Upon the motion (the "Motion")[1] of the Debtors

for an order (the "Order"), pursuant to Bankruptcy Code

sections 105, 363, and 365 and Bankruptcy Rule 6004,

(i) authorizing the Debtors to enter into an agency

agreement (the "Agency Agreement") with a store closing

agent (the "Store Closing Agent") submitting the highest

or otherwise best offer and which is otherwise acceptable

to the Debtors to perform store-closing and related

services, (ii) authorizing the Debtors immediately to

begin selling the Merchandise (as defined in the Agency

Agreement) at the Closing Stores, as identified on

---

[1]     Capitalized terms not otherwise defined herein shall have the
        meanings ascribed to such terms in the Motion.

Exhibit 1 to the Agency Agreement (as defined herein),
through store closing sales or other methods as provided
for in the store closing sales procedures (the "Store
Closing Sales Procedures") attached hereto as Exhibit A
(the "Store Closing Sales"), (iii) authorizing the
Debtors to conduct the Store Closing Sales on a final
basis and to discontinue operations at the Closing Stores,
and (iv) granting ancillary and other related relief; and
upon the Peek Declaration; and due and sufficient notice
of the Motion having been given under the particular
circumstances; and it appearing that no other or further
notice need be provided; and it appearing that the relief
requested by the Motion is in the best interests of the
Debtors, their estates, their creditors, and other
parties in interest; and after due deliberation thereon
and sufficient cause appearing therefor, it is hereby

   **FOUND AND DETERMINED that:**[2]

   A.    Proper, timely, adequate, and sufficient
notice of the Motion and the Sale Hearing has been
provided.

---

[2]    Findings of fact shall be construed as conclusions of law and
conclusions of law shall be construed as findings of fact
where appropriate.  See Fed. R. Bankr. P. 7052.

2

B.    A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities.

C.    The closings of the Closing Stores is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

D.    The Debtors have advanced sound business reasons for seeking to enter into the Agency Agreement, as set forth in the Motion and at the Sale Hearing, and entering into the Agency Agreement is a reasonable exercise of the Debtors' business judgment and in the best interests of the Debtors and their estates.

E.    The conduct of the Store Closing Sales will provide an efficient means for the Debtors to dispose of the Merchandise (as defined in the Agency Agreement).

F.    The Agency Agreement was negotiated, proposed, and entered into by the Store Closing Agent and the Debtors without collusion, in good faith, from arm's-length bargaining positions.

G.    The Store Closing Agent has acted in "good faith" within the meaning of Bankruptcy Code section 363(m).

3

H.    The Store Closing Agent is not an "insider" of the Debtors as that term is defined in Bankruptcy Code section 363(n).

I.    Based upon the record before the Court, neither the Debtors nor the Store Closing Agent has engaged in any conduct that would cause or permit the Agency Agreement to be avoided pursuant to Bankruptcy Code section 363(n).

J.    The Agent is not purchasing any interest in a consumer credit transaction that is subject to the Truth in Lending Act or any interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations (January 1, 2004), as amended from time to time).

K.    The entry of this Order is in the best interest of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein.

L.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

M.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

Now, therefore, it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1. The Motion is GRANTED as provided herein.

**A. Approval of the Store Closing Sales.**

2. The Debtors are authorized, pursuant to Bankruptcy Code sections 363(b)(1) and (f), to immediately begin to sell the Merchandise through the Store Closing Sales.

3. The Store Closing Sales Procedures are approved, subject to the terms and conditions of this Order.

4. All sales of Merchandise pursuant to the Store Closing Sales whether by the Store Closing Agent or the Debtors shall be free and clear of any and all liens, claims, and encumbrances; provided, however, that any such liens, claims, and encumbrances shall attach to the proceeds of the Store Closing Sales with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Merchandise, subject to (i) any claims and defenses that the Debtors may possess with respect thereto and (ii) the Store

Closing Agent's security interest as provided in the
Agency Agreement and this Order.

     5.    The Debtors are authorized to pay promptly
the store closing expenses to third parties as
administrative expenses, subject to the terms of the DIP
Agreements (as such term is defined in the Debtors'
Motion for Interim and Final Orders Pursuant to 11 U.S.C.
§§ 105, 361, 362, 363, 364 and 507 and Federal Rules of
Bankruptcy Procedure 4001 (I) Authorizing Debtors (A) to
Obtain Post-petition Financing and (B) to Utilize Cash
Collateral; (II) Granting Adequate Protection; and
(III) Scheduling Interim and Final Hearings (the "DIP
Motion")) and any documents signed by the Debtors and
orders entered by the Court in connection therewith.

     6.    Subject to the provisions of paragraphs 8,
9, and 33 hereof, all private parties and persons of
every nature and description, including landlords and
utility companies and all those acting for or on behalf
of such private parties, are prohibited from
(a) interfering in any way with, or otherwise impeding,
the conduct of the Store Closing Sales, and/or
(b) instituting any action or proceeding in any court or

6

(other than this court)

administrative body seeking an order or judgment that might in any way directly or indirectly interfere with, or adversely affect, the conduct of the Store Closing Sales.

7.     The Store Closing Sales shall be conducted in accordance with the Store Closing Sales Procedures notwithstanding any provisions (the "Anti-Alienation Provisions") in the leases for the Closing Stores or any documents filed of record with respect to any of such leased premises (the "Premises") in the land records, including (without limitation) the leases for such Premises, reciprocal easement agreements, agreements containing covenants, conditions, and restrictions (including, without limitation, "go-dark" provisions and landlord recapture rights), or other similar documents or provisions (collectively, the "Restrictive Documents"), with respect to the Premises that are intended to protect the image of a shopping center or mall or avoid disruption of normal commerce, including Anti-Alienation Provisions purporting to restrict or prohibit the Debtors from conducting store closing, going out of business, inventory liquidation, or similar sales.  Notwithstanding

anything to the contrary in the Restrictive Documents,
the Store Closing Agent shall have the right to advertise
the Store Closing Sales in accordance with the Store
Closing Sales Procedures.

8.    The Debtors are authorized to conduct the
Store Closing Sales in accordance with the terms of this
Order and the Store Closing Sales Procedures and the
Agency Agreement, and any written agreements between the
Store Closing Agent and any landlord or overlord of the
Closing Stores modifying the terms of the Store Closing
Sales Procedures shall govern the conduct of the Store
Closing Sales at such Closing Stores and shall be
enforceable by the landlords against the Store Closing Agent in this
Court.    Provided that the Store Closing Sales are so
conducted, (i) this Order shall be deemed to constitute
the court order described in Ala. Code § 8-13-23(4)
(2008); Ark. Code Ann. § 4-74-103 (2008); Fla. Stat.
§ 559.25(1) (2008); Ga. Code Ann. § 10-1-393(b)(24)(C)(iv)
(2008); 815 Ill. Comp. Stat. 350/3 & 350/7 (2008); Ind.
Code Ann. § 24-5-0.5-6 & 25-18-1-2 (2008); Ky. Rev. Stat.
Ann. § 365.040(1) & (3) & 365.475 (2008); La. Rev. Stat.
§ 51:32, 51:43, 51:426(4) & (8), & 51:1406 (2008); N.C.

8

Gen. Stat. § 66-82 (2008); Ohio Rev. Code Ann. § 1345.12 (2008); Okla. Stat. tit. 15, § 754(2) & 766 (2008; Tenn. Code Ann. § 47-25-204(9) (2008); Tex. Bus. & Com. Code § 17.91(c) (2007); Va. Code Ann. § 8.6A-103 (2008); and W. Va. Code § 47-11A-8 & 47-11B-3 (2008), and any other similar state and/or federal law; and (ii) the Debtors and the Store Closing Agent shall be presumed to be in compliance with any licensing and other requirements governing the conduct of store closing or other inventory clearance sales, including (without limitation) state and local statutes and regulations establishing licensing or permitting requirements, waiting periods, time limits, bulk sale restrictions, or augmentation limitations that would otherwise apply to the Store Closing Sales (the "Liquidation Sale Laws"). The term "Liquidation Sale Laws" shall be deemed not to include any public health or safety laws (the "Safety Laws") or any state and local laws, regulations, or police powers of general applicability (the "General Laws"), regarding matters such as consumer protection, labor and employment, taxes (including, without limitation, the collection of sales taxes), the sale of gift certificates, layaway programs,

return of goods, express or implied warranties of goods, and "weights and measures" regulation and monitoring.

9.     The Store Closing Sales at the Closing Stores shall be conducted by the Debtors and the Store Closing Agent without the necessity of compliance with any federal, state or local statute or ordinance, lease provision or licensing requirement affecting store closing, "going out of business", liquidation or auction sales, or affecting advertising, including signs, banners, and posting of signage, other than Safety Laws and General Laws, except to the extent set forth in the Store Closing Sales Procedures; provided however, so long as the Store Closing Sales are being conducted in accordance with the Store Closing Sales Procedures and in a safe and professional manner, the Store Closing Agent shall be deemed to be in compliance with such Safety Laws and General Laws.

10.     Nothing in this Order shall be deemed to bar Governmental Units (as defined in Bankruptcy Code section 101(27)) from enforcing Safety Laws or General Laws in the applicable nonbankruptcy forum, subject to the Debtors' right to assert that any such laws are not

in fact Safety Laws or General Laws and/or that such
enforcement is impermissible under the Bankruptcy Code,
or otherwise. In addition, the restriction on
enforcement of the Liquidation Sale Laws contained herein
shall not apply to the conduct of the operations of any
of the Debtors' stores that are not being closed pursuant
to this Order.

11. As provided in the Agency Agreement, the
Store Closing Agent is authorized to elect to pay
retention bonuses as set forth in the Agency Agreement to
certain Store Level Employees that have not voluntarily
terminated employment nor been terminated for cause.

12. The Debtors are authorized to discontinue
operations at the Closing Stores in accordance with this
Order and the Store Closing Sales Procedures and the
Agency Agreement.

13. The Debtors and the Store Closing Agent
are authorized and empowered to conduct the Store Closing
Sales at the Closing Stores in accordance with the
provisions of this Order, the Store Closing Sales
Procedures, and the Agency Agreement, and to take all
actions reasonably related thereto or arising in

connection therewith, including (without limitation) advertising the Store Closing Sales in accordance with the Store Closing Sales Procedures.

14. Neither the Debtors nor the Store Closing Agent nor any of their officers, employees, or agents shall be required to obtain the approval of any landlord or any other third parties to conduct the Store Closing Sales and to take the related actions authorized herein.

15. All parties and persons of every nature and description, including (without limitation) creditors, newspapers, other advertising mediums, and all those acting for or on their behalf, are prohibited from charging advertising rates in excess of the rates charged pursuant to the Debtors' prepetition ~~advertising~~ executory agreements.

16. All benefits and protections granted the Debtors in this Order shall also inure to the benefit of the Store Closing Agent and the Debtors' landlords to the extent set forth herein

17. The Debtors and/or the Store Closing Agent shall not be allowed to augment inventory through inventory owned by persons or entities other than the Debtors. The foregoing shall not preclude the Debtors or

12

the Store Closing Agent from including additional

inventory that was on-order by the Debtors prior to the

*or other product designated for the Debtors.*

Sale Commencement Date ^ The Debtors and the Store

Closing Agent shall be permitted to transfer Merchandise

between and among the Stores, as set forth in sections

5.1(a) and 8.1(e) of the Agency Agreement, without

further order of the Court.

18. No equipment that is leased by the Debtors

or that is otherwise not owned by the Debtors may be sold

during the Store Closing Sales without the express

written permission of such lessor or owner. The Debtors

shall notify in writing (the "Lessor Notice") such

lessors or owners of the date of the store closures five

business days prior to the closing of any store in which

their equipment is located.

**B.   Authority To Enter Into The Agency Agreement.**

19. The terms of the Agency Agreement,

attached hereto as Exhibit B, as submitted in *substantially* final form

to the Court by the Debtors, hereby are approved,

including (without limitation) the provisions for

compensation of the Store Closing Agent.

13

20. This Order and the Agency Agreement shall be binding upon the Debtors, all creditors of the Debtors, and any trustees appointed in these proceedings or any trustees appointed in any subsequent proceedings under chapter 7 or chapter 11 of the Bankruptcy Code to these chapter 11 bankruptcy cases.

21. Subject to the restrictions set forth in this Order and the Store Closing Sales Procedures, the Debtors and the Store Closing Agent hereby are authorized to take any and all actions as may be necessary or desirable to implement the Agency Agreement; and each of the transactions contemplated by the Agency Agreement, and any actions taken by the Debtors and the Store Closing Agent necessary or desirable to implement the Agency Agreement prior to the date of this Order, hereby are approved and ratified.

22. The Debtors and their officers, employees, and agents hereby are authorized to execute such documents as are necessary or desirable to carry out the Store Closing Sales and related actions authorized herein, including (without limitation) the Agency Agreement.

14

23.    Subject to the limitations set forth in the Agency Agreement, the Store Closing Agent hereby is granted a limited license and right to use, from the Sale Commencement Date to the Sale Termination Date (as defined in the Agency Agreement), the Closing Stores, and the trade names, logos, and customer lists relating to, and used in connection with, the operation of the Closing Stores, solely for the purpose of conducting the Store Closing Sales, provided, however, with respect to customer lists the Store Closing Agent shall not have control or possession of such lists.

24.    Except as expressly set forth in the Agency Agreement, the Store Closing Agent shall not be liable for any claims against the Debtors, and the Store Closing Agent shall not be deemed to be a successor of the Debtors for any purpose.

25.    Notwithstanding the DIP Agreements, Any amounts owed by the Debtors to the Store Closing Agent under the terms of the Agency Agreement shall be and hereby are granted the status of superpriority claims in the Debtors' bankruptcy cases pursuant to Bankruptcy Code section 364(c) and shall be and hereby are deemed secured by valid and perfected

15

first-priority security interests in accordance with section 15 of the Agency Agreement pursuant to Bankruptcy Code section 364(d). The Store Closing Agent shall not be required to file financing statements to perfect the security interests granted in this Order.

26. Notwithstanding the DIP Agreement, The first priority liens granted by the preceding paragraph of this Order shall be junior to existing liens only to the extent of (a) an amount equal to the unpaid part of the Guaranteed Amount and (b) any amount owed by the Store Closing Agent to any of the Debtors for Expenses.

27. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions authorized herein, and the Store Closing Agent shall expressly be authorized to sell Merchandise through bulk sales in accordance with the Agency Agreement and the Store Closing Sales Procedures.

28. Consistent with Bankruptcy Code section 363(m), the Agency Agreement was negotiated at arm's length, and entered into in good faith by the respective parties, and thus the Store Closing Agent is entitled to

16

the benefits and protections provided by Bankruptcy Code
section 363(m).

29. The consideration provided by the Store
Closing Agent should be deemed to constitute reasonably
equivalent value and fair consideration under the
Bankruptcy Code and applicable non-bankruptcy law, and
based upon the record at the Sale Hearing may not be
avoided pursuant to Bankruptcy Code section 363(n).

30. Consistent with the terms of the Agency
Agreement, the Store Closing Agent shall not be liable
for sales taxes, and the Debtors shall be responsible for
complying with sales tax obligations, but the Store
Closing Agent is responsible for providing truthful and
accurate information to the Debtors to complete the tax
returns.

31. Consistent with the terms of the Agency
Agreement, the Debtors' employees shall at all times
remain employees of the Debtors and are not employees of
the Store Closing Agent.

32. To the extent of any conflict between this
Order, the Store Closing Sales Procedures, and the Agency
Agreement, the terms of this Order shall control over all

17

other documents and the Store Closing Sales Procedures shall control over the Agency Agreement. Except as provided in paragraphs 8, 9, and 33 of this Order, the Court shall retain exclusive jurisdiction to resolve any dispute arising from or relating to the Store Closing Sales Procedures, the Agency Agreement, or this Order.

33. Except as set forth expressly herein, nothing contained in this Order shall alter or affect the Debtors' obligations under any unexpired lease of nonresidential real property, pursuant to Bankruptcy Code section 365(d)(3). The assumption or rejection of a lease for a Closing Store shall be accomplished by a motion other than the Motion granted hereby.

34. (a) The Debtors shall serve copies of this Order within five days, via first class, U.S. Mail on all federal, state, and local regulatory or taxing authorities or recording offices that have a reasonably known interest in the relief requested in the Motion. Any time before thirty (30) days following the Sale Commencement Date (as defined in the Agency Agreement), any governmental unit may assert a dispute arising from or relating to the Store Closing Sales, this Order, the

18

Agency Agreement, or the Store Closing Sales Procedures, which dispute relates to any Liquidation Sale Law (a "Reserved Dispute"), by sending a notice explaining the nature of the dispute to the Debtors' counsel. If the Debtors and such governmental unit are unable to resolve the Reserved Dispute within fifteen (15) days of receipt of the governmental unit's notice, then either party may file a motion with the Court requesting the Court to resolve the Reserved Dispute, including (without limitation) determining that the Governmental Unit may enforce the law that is the subject of the Reserved Dispute without regard to the presumption in paragraph 8. In the event that such a motion is filed, nothing in this Order shall preclude the Debtors from asserting, among other things, that (i) the provisions of the Liquidation Sale Laws are preempted by the Bankruptcy Code, or (ii) that neither the terms of this Order, nor the Debtors' conduct pursuant to this Order violate such Liquidation Sale Laws. Filing a motion set forth in this subparagraph (a) shall not be deemed to affect the finality of this Order or to limit or interfere with the Debtors' and/or the Store Closing Agent's ability to

conduct the Store Closing Sales pursuant to this Order. Any Governmental Unit filing a motion with respect to a Reserved Dispute shall be entitled to assert any jurisdictional, procedural, or substantive defenses that it might heretofore have been entitled to raise, and the determination of the Reserved Dispute shall be made without regard to the presumption in paragraph 9.

(b)    Nothing herein shall preclude any governmental entity from enforcing Safety Laws or General Laws in the appropriate nonbankruptcy forum; provided, however, that, except for extenuating circumstances, the affected Governmental Unit shall provide the Debtors and the Store Closing Agent with reasonable notice of any such alleged violation of any Safety Laws or General Laws as they pertain to the conduct of the Store Closing Sales.

(c)    Nothing in this Order shall be deemed to constitute a ruling on whether any applicable nonbankruptcy state law, regulation, or rule applicable to the Store Closing Sales is preempted by the Bankruptcy Code, nor as to whether the automatic stay applies to any actions by a Governmental Unit and such issues may be litigated by any party.

20

35.   Nothing in this Order shall be deemed to constitute a ruling with respect to the sovereign immunity of any state.

36.   Nothing in this Order, unless expressly so stated, overrides, changes, or modifies any provision of the DIP Agreements (as defined in the DIP Motion) or of the ~~Final~~ _Interim_ Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (1) Approving Postpetition Financing, (2) Authorizing Use of Cash Collateral, and (3) Granting Liens and Providing Superpriority Administrative Expense, as each may be amended from time to time, _and Final Order, if and when entered._

37.   Notwithstanding Bankruptcy Rule 6004(g), this Order shall take effect immediately upon its entry.

Dated:    Wilmington, Delaware
          _June_ _13_, 2008

~~UNITED~~ ~~STATES~~ BANKRUPTCY JUDGE

21

TAB 13

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LINENS HOLDING CO. et al.,[1] | ) | Case No. 08-10832 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | Re: Docket No. 110 |

## ORDER APPROVING LIQUIDATION
## AGREEMENT, SALE, AND RELATED RELIEF

Upon the motion (the "Motion") of the above-captioned debtors and debtors in

possession (each a "Debtor" and collectively, the "Debtors") for the entry of an order (this

"Order") approving Auction Procedures,[2] the Agency Agreement, the Sale (the "Sale") and

related relief; and it appearing that the relief requested is in the best interests of the Debtors'

estates, their creditors and other parties in interest; and it appearing that this Court has

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this

Motion is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2); and it appearing that venue of

this proceeding and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and

1409; and due and proper notice of this Motion having been provided; and it appearing that no

other or further notice need be provided; and after due deliberation and sufficient cause

appearing therefor,

---

[1] The Debtors in these cases are: Linens Holding Co. ("Linens Holding"), Linens 'n Things, Inc. ("Linens Inc."), Linens 'n Things Center, Inc. ("Linens Center"), Bloomington MN, LT, Inc., Vendor Finance LLC, LNT, Inc., LNT Services, Inc., LNT Leasing II LLC, LNT West, Inc., LNT Virginia LLC, LNT Merchandising Company LLC, LNT Leasing III LLC, and Citadel LNT LLC. The following are the Debtors' Canadian subsidiaries and affiliates, which are not debtors in these Chapter 11 cases: Linens 'n Things Investment Canada I Company, Linens 'n Things Investment Canada II Company, Linens 'n Things Canada Limited Partnership, and Linens 'n Things Canada Corp. (collectively, the "Canadian Subsidiaries" and, together with the Debtors, the "Linens Companies").

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

IT IS HEREBY FURTHER FOUND AND DETERMINED, AS FOLLOWS:

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.    To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.    Notice of the Motion, and of the Sale Hearing was given in accordance with the directive of the Court and as otherwise required by applicable law, as evidenced by the affidavits of service on file with the Clerk of the Court.

D.    The notice provided of the Motion and of the Sale Hearing was adequate and sufficient under the circumstances, and any otherwise applicable requirement for notice is hereby waived and dispensed with.

E.    Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Motion or the Agency Agreement between a joint venture comprised of Tiger Capital Group, LLC and SB Capital Group, LLC (collectively, the "Agent"), Linens Holding and GE Retail Finance Group (the "Lenders") dated as of May 29, 2008 (the "Agency Agreement") a copy of which is attached hereto as Exhibit B.

F.    The Agent is acting in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of Bankruptcy Code §§ 363(m) and (n) with respect to all of the Merchandise and the Owned FF&E (collectively, the "Liquidation Assets") and in connection with all of the transactions contemplated by the Agency Agreement. The Agency Agreement was negotiated and entered into in good faith, based upon arm's length

2

{00359355.DOC;}

bargaining, and without collusion or fraud. Neither the Debtors nor the Agent have engaged in any conduct that would prevent the application of Bankruptcy Code § 363(m) or cause the application of or implicate Bankruptcy Code § 363(n) to the Agency Agreement or to the consummation of the transactions contemplated thereby. The Agent is entitled to all the protections and immunities of Bankruptcy Code § 363(m).

G.      The offer of the Agent, upon the terms and conditions set forth in the Agreement, including the form and total consideration to be realized by the Debtors pursuant to the Agreement, (i) is the highest and best offer received by the Debtors; (ii) is fair and reasonable; and (iii) is in the best interests of the Debtors' creditors and estates.

H.      The closing of the closing Stores is in the best interest of the Debtors' estate.

I.      The conduct of the Sales at the closing Stores will provide an efficient means for the Debtors to dispose of the Liquidation Assets located at the closing Stores in accordance with the terms of the Agency Agreement.

J.      The Debtors have represented to this Court that they are neither selling nor leasing personally identifiable information, as defined in 11 U.S.C. 101(41A) ("Personally Identifiable Information") (or assets containing personally identifiable information) pursuant to the Motion, although the Agent will be authorized to distribute promotional materials to the Debtors' customers through the Debtors' retained third party service provider.

IT IS HEREBY ORDERED AS FOLLOWS:

1.      The Motion is granted to the extent provided herein. All objections to the Motion to the extent not previously withdrawn or resolved or granted herein are denied.

2.      The Debtors are hereby authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the Sale of the Liquidation Assets at the closing Stores

3

{00359355.DOC;}

identified on Exhibit "A" annexed hereto in accordance with the Agency Agreement. No bulk sale, "going -out-of-business", or similar law shall prohibit the Debtors or the Agent from taking any action contemplated by the Agency Agreement.

       3.    The Debtors are hereby authorized and empowered to enter into the Agency Agreement, and the Agency Agreement is hereby approved in its entirety and is incorporated herein by reference, and it is further ordered that all amounts payable to the Agent under the Agency Agreement shall be payable to the Agent without the need for any application of the Agent therefor or a further order of the Court.

       4.    Subject to applicable state and local public health and safety laws ("Safety Laws"), and applicable tax, labor, employment, environmental, and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws"), but excluding Liquidation Sale Laws, the Debtors and the Agent be, and they hereby are, authorized to take such actions necessary and appropriate to implement the Agency Agreement and to conduct the Sale without the necessity of a further order of this Court as provided by the Agency Agreement, including, but not limited to, advertising the Sale through the posting of signs (including the use of exterior banners in non-enclosed malls), use of sign walkers and street signage, in accordance with the Agency Agreement and as otherwise provided in the sale guidelines attached to the Agency Agreement (the "Sale Guidelines"), which Sale Guidelines are hereby approved in the form annexed hereto as Exhibit "C".

       5.    Except as otherwise provided in the Agency Agreement, pursuant to section 363(f) of the Bankruptcy Code, the Liquidation Assets, sold pursuant to the Agency Agreement shall be sold free and clear of any and all mortgages, security interests, conditional sales or title retention agreements, pledges, hypothecations, liens, judgments, encumbrances or

4

{00359355.DOC;}

claims of any kind or nature (including, without limitation, any and all "claims" as defined in section 101(5) of the Bankruptcy Code), including, without limitation, the liens and security interests of the Lenders, the Indenture Trustee, and the Noteholders, whether arising by agreement, any statute or otherwise and whether arising before, on or after the date on which these chapter 11 cases were commenced (collectively, the "<u>Liens</u>"), with such Liens, if any, to attach to the Guaranteed Amount, and any other amounts payable to Linens Holding under the Agency Agreement with the same validity, force and effect as the same had with respect to the Liquidation Assets at issue, subject to any and all defenses, claims and/or counterclaims or setoffs that may exist.

6.     Except as expressly provided for in the Agency Agreement, nothing in this Order or the Agency Agreement and none of the Agent's actions taken in respect of the Sale shall be deemed to constitute an assumption by Agent of any of Debtors' obligations relating to any of the Debtors' employees, nor shall Agent become liable under any collective bargaining or employment agreement or be deemed a joint or successor employer with respect to such employees.

7.     All of the transactions contemplated by the Agency Agreement shall be protected by section 363(m) of the Bankruptcy Code in the event that this Order is reversed or modified on appeal.

8.     The provisions of this Order shall be self-executing notwithstanding any restrictions in the Agency Agreement (other than the need for the Debtors' prior consent) on the Agent's ability to conduct the Sale in compliance with applicable laws or closing Store leases. All newspapers and other advertising media in which the Sale may be advertised, and all landlords are directed to accept this Order as binding authority so as to authorize the Debtors and

*Unless otherwise ordered by the Court,*

5

{00359355.DOC;}

the Agent to consummate the Agency Agreement and to conduct the Sale at the closing Stores, including, without limitation, conducting and advertising of the Sale (at the contractual rates charged to the Debtors prior to the Petition Date) in accordance with the Agency Agreement, the Sale Guidelines and this Order; and no further approval, license or permits of any governmental authority shall be required.

9.    Except as to the States (as to which no injunction shall apply whatsoever), and except as expressly provided for herein or in the Sale Guidelines: no person or entity, including but not limited to any landlord or federal or Local Governmental Unit (as defined below), (i) served with a copy of the Sale Motion; or (ii) served with a copy of this Order who does not object pursuant to the provisions of this Order, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Store Closing Sale, or the advertising and promotion (including the posting of signs) of such Sale, and all such parties and persons of every nature and description, including landlords and utility companies and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, or otherwise impeding the conduct of the Sale and/or (b) instituting any action or proceeding in any court or administrative body seeking an order or judgment against, among others, the Debtors, the Agent, or the Debtors' landlords for the Stores, that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sale or other liquidation sales at the closing Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease or sublease based upon any relief authorized herein, this Court shall retain exclusive jurisdiction to resolve such dispute, and such parties or persons shall take no action against the Debtors, the Agent, the landlords or the Sale until this Court has resolved such dispute. This Court shall hear the request of such persons or parties with respect to

6

{00359355.DOC;}

any such disputes on an expedited basis, as may be appropriate under the circumstances. No Governmental Units (as defined in Bankruptcy Code section 101(27)) shall be bound by this injunctive provision unless it was either previously served with the Sale Motion or subsequently served with this Order, and has had an opportunity to object as provided in this Order, and failed to timely file an objection.

10.     The Sale at the closing Stores shall be conducted by the Debtors and the Agent without the necessity of compliance with any federal, state or local statute or ordinance, lease provision or licensing requirement affecting store closing, "going out of business", liquidation or auction sales, or affecting advertising, including signs, banners, and posting of signage, other than Safety Laws and General Laws, except to the extent set forth in the Sale Guidelines; provided however, so long as the Sale is being conducted in accordance with the Sale Guidelines and in a safe and professional manner, the Agent shall be deemed to be in compliance with such Safety Laws and General Laws.

11.     Except as expressly provided for in the Agency Agreement, the Sale at the closing Stores shall be conducted by the Debtors and the Agent notwithstanding any restrictive provision of any lease, sublease or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Sale, the rejection of leases, abandonment of assets or "going dark" provisions, provided, however, that nothing in this Order shall impact any objection a Landlord may have to assumption, assignment or rejection of their respective lease or to any proposed cure amount or rejection damages claim in association with such assumption, assignment or rejection.

12.     Except as may otherwise be specifically set forth in the Sale Guidelines, the Debtors and/or the Agent (as the case may be), are authorized and empowered to transfer the Liquidation Assets among the closing Stores.

7

{00359355.DOC;}

13.     Nothing in this Order shall be deemed to bar any Governmental Units from enforcing Safety Laws and General Laws in the applicable non-bankruptcy forum, subject to the Debtors' or Agent's right to assert that any such laws are not in fact Safety Laws or General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Order or otherwise, and provided further that the Governmental Unit shall in the first instance present the matter to the Bankruptcy Court for resolution, or to request that they be permitted to proceed with the matter in the applicable non-bankruptcy forum, provided however the Governmental Unit shall provide the Debtors and Agent with reasonable notice and opportunity to cure any such alleged violation absent extenuating circumstances and/or to oppose the relief sought by such Governmental Unit; provided further, however, cessation of alleged unlawful conduct after notice shall not, in and of itself, render court action by any State moot, under any circumstances, any injunctive relief that may lie even if the Debtors or the Agent has ceased the alleged unlawful conduct. The Debtors and/or the Agent do not waive the right to argue that the conduct was in compliance with this Order and/or any applicable law, or preempted by applicable law.

14.     The Debtors shall serve copies of this Order within five (5) business days, via first class mail, upon (i) the State Attorney General's offices (upon (x) Chief or Director of the Consumer Protection Division or Bureau; and (y) Chief or Director of the Bankruptcy Division or Bureau) and State Consumer Protection Agency for each State where a Store is located, and (ii) the Local mayor or similar representative of each village, or city official, and the county or parish where a Store is located, addressed to the attention of the municipal, city or county attorney, in each case to the consumer protection division. Except as provided for in paragraph 15 below, this Court shall retain exclusive jurisdiction to resolve any dispute arising under Liquidations Sales Laws and related to the Sale Guidelines, the Agency Agreement, or this

8

{00359355.DOC;}

Order, by any Local Governmental Unit filed within 20 days of service of this Order. Nothing herein shall preclude any Governmental Unit from enforcing Safety Laws or General Laws in an appropriate non-bankruptcy forum.

15.     The Debtors are authorized to conduct the Sale in accordance with the terms of this Order, the Sale Guidelines, and the Agency Agreement. Provided that the Sales are so conducted (and subject to the provisions of this Order) the Debtors, the Agent, and the Debtors' landlords, shall be presumed to be in compliance with any State, county, parish, or municipal or other local government's (hereinafter referred to as "Local") requirements governing the conduct of the Store Closing Sale, including but not limited to Local statutes, regulation and ordinances establishing licensing or permitting requirements, waiting periods, time limits (except as provided in paragraph 33 below with respect to time limits), or bulk sale restrictions that would otherwise apply to the Store Closing Sales (collectively, the "Liquidation Sale Laws") of (i) any Local Governmental Unit (which means all Governmental Units other than the States or federal Governmental Units) served with a copy of the Motion filed on [May 6, 2008]; and (ii) any Local Governmental Unit served with this Order and who does not object pursuant to the provisions of paragraph 14 of this Order. The terms "Liquidation Sale Law" and "Liquidation Sale Laws" shall be deemed not to include any Safety Laws or General Laws. Notwithstanding any other provision in this Order, nothing herein shall exempt the Debtors And/or the Agent from compliance with any Safety Laws or General Laws or preclude any governmental entity from enforcing any Safety Laws or General Laws in the appropriate non-bankruptcy forum.

16.     If there is a dispute (a "Reserved Dispute") over the enforceability of a Liquidation Sale Law, resolution of such Reserved Dispute will take place before this Court, as provided herein and shall only operate prospectively.

9

{00359355.DOC;}

17.     Any time before the twentieth (20th) day following the a service of this Order as provided for above, any Local Governmental Unit may assert a Reserved Dispute by sending a notice explaining the nature of the dispute to Debtors' and Agent's counsel. If the Debtors and the objecting Local Governmental Unit (as the case may be, the "Objecting Party") are unable to resolve the Reserved Dispute within fifteen (15) days of receipt of the Objecting Parties notice, either party may file a motion with the Court requesting a resolution of the dispute ("Dispute Resolution Motion"). If such a Dispute Resolution Motion is timely filed, the Debtors and Agent shall each be entitled to assert that the provisions in question are preempted by the Bankruptcy Code and/or that neither the terms of this Order nor the conduct of the Sale violates the Liquidation Sales Law. The timely filing of a Dispute Resolution Motion, will not affect the finality of this Order or limit or interfere with the ability to conduct the Sale. By timely filing a Dispute Resolution Motion, all Governmental Units shall be entitled to assert any jurisdictional, procedural or substantive argument that it might heretofore have been entitled to raise.

18.     Nothing herein shall be deemed to constitute a ruling on whether any non-bankruptcy state law, regulation or rule applicable to the Sale is preempted by the Bankruptcy Code nor as to whether the automatic stay applies nor is this Order a ruling with respect to whether sovereign immunity applies.

19.     This Court shall retain exclusive jurisdiction with regard to all issues or disputes in connection with the order and the relief provided for herein, including, without limitation, to protect the Debtors, the landlords and/or the Agent from interference with the Sale, and to resolve any disputes related to the Sale or arising under the Agency Agreement or the implementation thereof.

10

{00359355.DOC;}

20.     The Agent shall not be liable for any claims against the Debtors other than as expressly provided for in the Agency Agreement.

21.     Subject to Safety Laws and General Laws, the Debtors and the Agent are hereby authorized to conduct the Sale pursuant to the Agency Agreement and the Sale Guidelines, and take all actions reasonably related thereto or arising in connection therewith, including, without limitation, advertising the Sale as "store closing," "sale on everything" or similar themed sales in media advertisements, interior banners, and in closing Stores not located in the interior of a mall, exterior banners, and other signage, including street signage and sign-walkers, as the Debtors and Agent deem appropriate, notwithstanding any prohibitions in any statutes or ordinances affecting advertising, signs, banners, or the posting of signage, and the requirements of any otherwise applicable bulk sales laws are also hereby waived. Neither the Debtors nor the Agent shall advertise the Sale as a "going-out-of-business" sale.

22.     All state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales". Agent shall accept return of any goods that contains a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, provided that the consumer must return the merchandise within the time period proscribed by the Debtors' return policy that was in effect when the merchandise was purchased (except with respect to items purchased during the Sale, in which case such items must be returned within twenty-one (21) days of its purchase), the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect. The Debtors shall reimburse Agent for any documented refund attributable to a "latent" defect as part of the weekly sale reconciliation process.

11

23.     The Debtors, the Agent and each of their respective officers, employees and agents be, and they hereby are, authorized to execute such documents and to do such acts as are necessary or desirable to carry out the Sale and effectuate the Agency Agreement and the related actions set forth therein.

24.     Agent shall have the right to use the Stores and all related Store services, furniture, fixtures, equipment and other assets of Merchant as designated hereunder for the purpose of conducting the Sale, in accordance with the provisions of the Agency Agreement.

25.     Agent shall be granted a limited license and right to use until the Sale Termination Date the trade names, logos and customer lists relating to and used in connection with the operation of the Stores, solely for the purpose of advertising the Sale in accordance with the terms of the Agency Agreement..

26.     Upon payment of the Initial Guaranty Payment as provided in the Agency Agreement and issuance of the Letter of Credit, the Agent shall have a first priority security interest in and lien upon the Merchandise and the Proceeds to secure all obligations of the Debtors to the Agent under the Agency Agreement; provided, however, until payment of the balance of the Guaranteed Amount (which payments shall be made as provided for in the Agency Agreement), and disbursed in accordance with the final order, entered on May 28, 2008, approving post-petition financing and authorizing the use of cash collateral (the "DIP Order", Docket No. 476), the security interests granted to the Agent shall remain junior to the security interest of the Lenders, the Indenture Trustee, and the Noteholders, to the extent of the unpaid portion of the Guaranteed Amount and Expenses. Upon entry of this Order, the security interest granted hereby shall be properly perfected without the need for further filings or further

12

{00359355.DOC;}

documentation. To the extent the Agent is owed the Adjustment Amount, and the Lenders received the Adjustment Amount, then the Lenders shall promptly, upon the written request of the Agent, disgorge and remit the Adjustment Amount to the Agent..

27.     Disbursement of the Guaranteed Amount (including the Initial Guaranty Payment), the Recovery Amount and the Net FF&E Proceeds, and any other amounts payable by Agent to Merchant under the Agency Agreement, shall be done in accordance with the DIP Order.

28.     The provisions of this Order and the Agency Agreement and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered confirming or consummating any plan of reorganization of the Debtors, or which may be entered converting Debtors' cases from Chapter 11 to Chapter 7, and the terms and provisions of the Agency Agreement as well as the rights and interests granted pursuant to this Order and the Agency Agreement shall continue in this or any superseding case and shall be binding upon the Debtors, the Agent and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors under Chapter 7 or 11 of the Bankruptcy Code. Any trustee appointed in these cases shall be and hereby is authorized ~~and~~ ~~directed~~ to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of this Order and the Agency Agreement and the Agent and the trustee shall be and hereby are authorized to perform under this Agreement upon the appointment of a trustee with the need for further order of this Court. *In the event the chapter 7 trustee determines that it needs further order of this Court in connection"*

29.     Within three (3) business days of the Debtors receipt of a notice of the Sale Termination Date for one or more of the closing Stores pursuant to Section 6.1 of the Agency Agreement, the Debtors shall electronically file a notice of sale termination date with the Court,

*+ with the continued operation of the business, such motion shall be heard on an expedited basis.*

13

{00359355.DOC;}

and shall serve a copy of such notice on the affected landlord(s) for the subject closing Stores; provided however, such notice shall not serve as a rejection of the lease for such named closing Store, and the Debtors shall have no obligation to serve such notice on the affected landlords or any other party in interest. In the event of an agreement between the Debtors and the Agent to extend the Sale at a closing Store beyond August 31, 2008, the Debtors shall electronically file a notice of such extension, and mail a copy of such notice to the affected landlord, counsel to Lenders, counsel to the Official Committee, the US Trustee, the Attorney(s) General for the State(s) in which the subject closing Store is located, with such parties having the right to object to such extension and to seek an expedited hearing before this Court . Nothing in the paragraph should be deemed to modify the Debtors' obligations to obtain Court approval of any further Section 365(d)(4) extensions as may be required.

30.     The Owned FF&E remaining in the closing Stores as of the Sale Termination Date shall, unless the affected lessor has been previously notified in writing by the Debtors or the Agent to the contrary at least three (3) days prior to the Sale Termination Date, be deemed abandoned by the Debtors and/or the Agent; provided however, the Debtors shall provide any known third party holding or asserting a Lien or other interest in such Owned FF&E, including taxing authorities, with five (5) days' prior notice of such abandonment and if such third party fails to remove such Owned FF&E or to make arrangements to remove such Owned FF&E within such time as is deemed acceptable to the affected landlord prior to the expiration of such five (5) day notice period, such Owned FF&E shall be deemed abandoned by such third party and the affected Landlord may dispose of such property without liability to the s or any third party.

14

31.     Before any sale, abandonment or other computers (including software) and/or cash registers and any other point of sale Owned FF&E (collectively, "POS Equipment"), which may contain Personally Identifiable Information, the Debtors shall remove or cause to be removed the Personally Identifiable Information from the POS Equipment.

32.     This Order is the "Approval Order" described in the Agency Agreement.

33.     Absent further order of this Court, the Agent shall not be authorized to supplement the Sale with additional goods not owned by the Debtors.

34.     This Order constitutes an authorization of conduct by the Debtors and nothing contained herein shall be deemed to constitute a ruling with regard to the sovereign immunity of any state, and the failure of any state to object to the entry of this Order shall not operate as a waiver with respect thereto.

35.     To the extent, if any, anything contained in this Order conflicts with a provision in the Agency Agreement or the Sale Guidelines, this Order shall govern and control. The Court shall retain jurisdiction with respect to any matters, claims, rights, or disputes arising from or related to the implementation of this Order.

36.     To the extent that the disposition of the Liquidation Assets would constitute the sale of an interest in a consumer credit transaction that is subject to the Truth in Lending Act or an interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations (January 1, 2004), as amended from time to time, then the purchaser shall remain subject to all claims and defenses that are related to such consumer credit transaction or such consumer credit contract, to the same extent as such person would be subject to such claims and defenses of the consumer had such interest been purchased at a sale not under this section.

15

{00359355.DOC;}

37.     Gift certificates, gift cards, and merchandise credits issued by the Debtors prior to the Sale Commencement Date (as defined in the Agency Agreement) shall be accepted and honored by the Agent during the Sale Term as provided in the Agency Agreement.

38.     Nothing in this Order shall (a) alter or affect the Debtors' obligation to comply with section 365(d)(3) of the Bankruptcy Code or (b) alter or modify the rights of any lessor or other counterparty to a Lease with the Debtors to file an appropriate motion or otherwise seek appropriate relief if the Debtors fails to comply with section 365(d)(3) of the Bankruptcy Code.

39.     The transactions contemplated by the Agency Agreement are not subject to avoidance pursuant to Bankruptcy Code § 363(n).

40.     Notwithstanding Bankruptcy Rules 6004, and 6006, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Agent are free to perform under the Agency Agreement at any time, subject to the terms of the Agency Agreement and the Agent shall be afforded the protections of Bankruptcy Code § 363(m) as to all aspects of the transactions under and pursuant to the Agency Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

41.     This Order shall be binding on all creditors (whether known or unknown) of the Debtors, all successors and assigns of the Agent, the Debtors, their affiliates and any subsequent trustee(s) appointed in the Debtors' chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code and shall not be subject to rejection or revocation.

42.     The Agent is a party in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Agency Agreement and the conduct of the Sale.

16

{00359355.DOC;}

43.     The Debtors are authorized and directed to hold and use the Guaranteed Amount to perform their obligations under the Agency Agreement.

Dated:  May 30, 2008
        Wilmington, Delaware

_____
The Honorable Christopher S. Sontchi
UNITED STATES BANKRUPTCY JUDGE

17

{00359355.DOC;}

TAB 14

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------------------x

In re:

SHARPER IMAGE CORPORATION,[1]

        Debtor.

-----------------------------------------------------------------------x

    :    **Chapter 11**

    :    **Case No. 08-10322 (KG)**

    :    **Re:   Docket No. 469**

## ORDER APPROVING ASSET PURCHASE AGREEMENT, AGENCY AGREEMENT, STORE CLOSING SALES, AND RELATED RELIEF

Upon the motion, dated April 25, 2008 (the "Sale Motion"),[2] of Sharper Image Corporation, as debtor and debtor in possession ("Sharper Image" or the "Debtor"), pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") seeking approval of the sale of Sharper Image's assets (the "Sale") and other related relief, all as more fully set forth in the Sale Motion; and the Court having entered an order on May 14, 2008 (the "Procedures Order") approving, among other things, certain proposed procedures in connection with the auction (the "Auction") and Sale of Sharper Image's assets; and a hearing on the Sale Motion having been held before the Court on May 30, 2008 (the "Sale Hearing"); and such relief being in the best interests of the Debtor, its estate, creditors, and all parties in interest:

---

[1] The address of the Debtor's principal executive offices is 350 The Embarcadero, 6th Floor, San Francisco, California 94105.  The Debtor's EIN is 94-2493558.

[2] Capitalized terms used herein but not defined herein shall have the meanings ascribed to them in the Sale Motion.

NOW, THEREFORE, upon the entire record of the Sale Hearing and this case; and after due deliberation thereon; and good cause appearing therefore, IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.      This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334.

B.      Determination of the Sale Motion is a core proceeding under 28 U.S.C. §§ 157(b) (2) (A), (N), and (O).   Venue of this case and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.      As evidenced by the affidavits of service previously filed with the Court, and based on the representations of the attorneys at the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, the Sale Hearing, the Sale, the assumption and assignment of the Core IP Contracts (as defined in the Asset Purchase Agreement, which is defined below) and the Cure Amounts has been provided in accordance with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and the provisions of the Procedures Order, (ii) such notice was good and sufficient and appropriate under the circumstances of this case, and (iii) no other or further notice of the Sale Motion, the Auction, the Sale Hearing, the Sale, the assumption and assignment of the Core IP Contracts, or the entry of this Order is required.

D.      In accordance with the Cure Procedures, Sharper Image has served notice of the Cure Amounts (the "Cure Notice") upon each non-Debtor counterparty to a pre-petition contract that the Debtor may be seeking to assume and assign.   The service of such Cure Notice

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.   *See* Bankruptcy Rule 7052.

was good, sufficient, and appropriate under the circumstances and no further notice need be given in respect of establishing a Cure Amount for the pre-petition contracts. Non-debtor counterparties to the pre-petition contracts have had a reasonable opportunity to object to the Cure Amount and the possible assumption and assignment of such pre-petition contracts.

E.      The statutory predicates for the relief sought in the Sale Motion are sections 105(a), 363(b), (f), (k), (m), (n), and 365 of the Bankruptcy Code and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure.

F.      As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of the attorneys made on the record at the Sale Hearing, Sharper Image has marketed the Purchased Assets (as defined in the Asset Purchase Agreement, which is defined below) and conducted the Sale process in compliance with the Procedures Order, fairly, and with adequate opportunity for interested parties to submit bids.

G.      A reasonable opportunity to object or be heard regarding the relief requested in the Sale Motion has been afforded to all interested persons and entities, including, among others, (i) all Interested Parties, (ii) the U.S. Trustee, (iii) the Committee, (iv) the Secured Lender, (v) Sharper Image's secured creditors, (vi) all parties who have requested notice pursuant to Bankruptcy Rule 2002, (vii) all parties to the Core IP Contracts, (viii) all appropriate federal, state, and local taxing authorities, (ix) all government agencies entitled to receive notice of the proceedings, (x) all parties known to have expressed an interest in acquiring the Purchased Assets, and (xii) the attorneys general of all states in which the Purchased Assets are located.

H.      Sharper Image and a joint venture formed among (i) Gordon Brothers Retail Partners, LLC, (ii) GB Brands, LLC, (iii) Hilco Merchant Resources, LLC, and (iv) Hilco

Consumer Capital, LLC (collectively, the "Purchaser" or the "Agent") entered into that certain Asset Purchase Agreement (the "Asset Purchase Agreement"), a copy of which is annexed hereto as Exhibit A, following good-faith, arm's length negotiations.

I.      Sharper Image and the Purchaser entered into that certain Agency Agreement (the "Agency Agreement"), a copy of which is annexed hereto as Exhibit B, following good-faith, arm's length negotiations.

J.      The transfer of the Purchased Assets pursuant to the Asset Purchase Agreement and Agency Agreement (i) are or will be legal, valid, and effective transfers of property or rights of or to the Purchased Assets to the Purchaser, (ii) except as set forth herein, vest or will vest the Purchasers with good and valid title, and all the right, title, and interest of Sharper Image in and to the Purchased Assets, free and clear of all adverse interests of any kind or nature whatsoever and all debts arising under or out of, in connection with, or in any way relating to, any acts of the Debtor, liens, claims and encumbrances, rights, causes of action (whether in law or in equity), obligations, demands, guaranties, contractual commitments, restrictions, interests and matters of any kind or nature whatsoever, whether arising prior to or subsequent to the commencement of this case, and whether imposed by agreement, understanding, law, equity or otherwise, except as expressly provided in the Asset Purchase Agreement (all collectively "Adverse Interests"), and (iii) constitute transfers for reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and similar laws of any state, territory, possession or the District of Columbia.

K.      The Sale and all transactions related thereto, including, without limitation, the assumption and assignment of the Purchased Assets, reflects the exercise of Sharper Image's

4

sound business judgment.    There are compelling circumstances for the Sale other than in the ordinary course of business under 11 U.S.C. § 363(b) because, among other things, there is uncertainty about Sharper Image's liquidity and its ability to obtain needed inventory, the immediate consummation of the Sale is necessary and appropriate to maximize the value of Sharper Image's estate, and the Sale will provide the means for Sharper Image to maximize distributions to creditors.

L.    The Debtor (i) has full corporate power and authority to execute and deliver the Asset Purchase Agreement and all other documents contemplated thereby, and the sale of the Purchased Assets by the Debtor has been duly and validly authorized by all necessary corporate action of the Debtor, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement, and (iii) has taken all corporate action necessary to authorize and approve the Asset Purchase Agreement and the consummation of the transactions contemplated thereby.    No consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, are required for the Debtor to consummate such transactions.

M.    Approval of the Asset Purchase Agreement and the Agency Agreement and the consummation of the Sale and other transactions contemplated thereby are in the best interests of Sharper Image, its estate, creditors, and other parties in interest.    Good and sufficient business justification for consummating the Sale pursuant to sections 105(a) and 363 of the Bankruptcy Code has been established because, among other things:

a.    Sharper Image, in its sound business judgment, determined that the sale of the Purchased Assets is necessary to maximize the value of its estate; and

b.  Unless a sale to the Purchaser is concluded expeditiously as provided for in the Sale Motion and pursuant to the Asset Purchase Agreement and the Agency Agreement, creditors' recoveries may be diminished.

N.  The terms and conditions of the Asset Purchase Agreement and the Agency Agreement are fair and reasonable.  The purchase price (the "Purchase Price") of the Purchased Assets under the Asset Purchase Agreement and the Agency Agreement (i) represents the highest and best offer for the Purchased Assets, (ii) is fair and reasonable, and (iii) will provide a greater recovery for creditors than would be provided by any other practical available alternative.

O.  The holders of liens on the Purchased Assets and non-Debtor parties to Core IP Contracts that did not object, or that withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to 11 U.S.C. §§ 105 and 363(f)(2).

P.  The Debtor may sell the Purchased Assets free and clear of all Adverse Interests because, in each case, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

Q.  The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate, and its creditors, if the sale of the Purchased Assets and the assignment of the Core IP Contracts to it were not free and clear of all Adverse Interests, or if the Purchaser would, or in the future could, be liable for any of the Adverse Interests.

R.  The Purchaser has demonstrated adequate assurance of its future performance under the Core IP Contracts within the meaning of sections 365(b)(1)(C) and (f)(2)(B) of the Bankruptcy Code.

NY2:\1875824\06\147#806!.DOC\73656.0003

S.     The Core IP Contracts being assigned to the Purchaser are an integral part of the value of the Purchased Assets and, accordingly, the assumption and assignment of the Core IP Contracts is reasonable, enhances the value of the Debtor's estate, and does not constitute unfair discrimination.

T.     Other than as set forth in the Asset Purchase Agreement and the Agency Agreement, the (i) transfer of the Purchased Assets to the Purchaser and (ii) the assumption by the Purchasers of the Assumed Liabilities (as defined in the Asset Purchase Agreement) do not and will not subject the Purchaser or the Purchased Assets to any claims or liabilities arising under or out of, in connection with or in any way relating to the ownership or operation of Sharper Image or the Purchased Assets prior to the Closing Date (as defined in the Asset Purchase Agreement).

U.     The Asset Purchase Agreement and the Agency Agreement were negotiated, proposed, and entered into by Sharper Image and the Purchaser without collusion, in good faith, and from arm's length bargaining positions.   Each Purchaser is a purchaser in good faith under section 363(m) of the Bankruptcy Code and, as such, is entitled to the protections afforded by section 363(m) of the Bankruptcy Code.   Each Purchaser will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transaction contemplated by the Asset Purchase Agreement at any time after the entry of this Order. Based upon the record before the Court, neither Sharper Image nor the Purchaser has engaged in any conduct that would cause or permit the Asset Purchase Agreement, the Agency Agreement, or the transactions contemplated thereby to be avoided under section 363(n) of the Bankruptcy Code.   The Purchaser are not "insiders" as that term is defined in section 101(31) of the Bankruptcy Code.

V.    Time is of the essence in closing the Sale and Sharper Image and the Purchaser intend to close the Sale as soon as possible.

W.    The relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

NOW THEREFORE, IT IS HEREBY:

ORDERED that the Sale Motion is granted to the extent provided herein; and it is further

ORDERED that all objections to the Sale Motion or the relief requested therein or the Sale of the Purchased Assets that have not been withdrawn, waived, settled, or specifically addressed in this Order, and all reservations of rights included in such objections, are overruled in all respects on the merits; and it is further

ORDERED that the Asset Purchase Agreement (and each of the transactions contemplated thereby) is approved in its entirety subject to the provisions of this Order; and it is further

ORDERED that the Agency Agreement (and each of the transactions contemplated thereby), is approved in its entirety subject to the provisions of this Order; and it is further

ORDERED that, pursuant to section 363(b) of the Bankruptcy Code, Sharper Image is authorized to sell the Purchased Assets under the terms of the Asset Purchase Agreement and the Agency Agreement to the Purchaser; and it is further

ORDERED, that the Debtor, its officers, employees, and agents and the Purchaser are authorized and directed to execute and deliver, and empowered to perform under, consummate and implement, the Sale, together with all additional instruments and documents

that may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the Agency Agreement, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, conferring or reducing to possession the Purchased Assets to the Purchaser, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement and the Agency Agreement. The Purchaser and the Debtor are hereby authorized to take or refrain from taking any and all steps necessary to effectuate, consummate and/or implement the terms of this Order and to take or refrain from taking such acts as are incident to carrying out the Store Closing Sales (as hereinafter defined); and it is further

ORDERED that Sharper Image is authorized in accordance with section 365 of the Bankruptcy Code, and subject to the terms of the Asset Purchase Agreement, to (i) assume and assign to the Purchaser, and have Purchaser accept such assignment, each of the Core IP Contracts identified on Schedule 2.6(b) of the Asset Purchase Agreement free and clear of all Adverse Interests of any kind or nature whatsoever, such Adverse Interests deemed unconditionally released, discharged and terminated, and (ii) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer to Purchaser, and have Purchaser assume, the Core IP Contracts, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied; and it is further

ORDERED that, pursuant to the terms of the Asset Purchase Agreement and consistent with the requirements of the Bankruptcy Code, any amount determined by the Court to be necessary to the cure defaults, if any, under the Core IP Contracts (including, to the extent allowed by the Court, all actual or pecuniary losses that have resulted from such defaults under the Core IP Contracts) shall be paid by the Purchaser, on or before the Closing Date, and not by

Sharper Image, and Sharper Image shall have no liability therefore, *provided, however*, that Purchaser shall not be required to pay any cure amount that is in dispute as of the Closing Date if Purchaser has set aside such amount in an escrow or other commercially reasonable arrangement with respect thereto established by agreement among the parties or pursuant to an order of the Court and such cure amount shall be paid to Sharper Image or the counterparty to the Core IP Contract, as the case may be, from such escrow or other account upon resolution of the dispute; *provided further, however*, that Purchaser shall not be obligated to cure any such default that is (i) greater than 110% of the total amount set forth in Schedule 2.6(a) to the Asset Purchase Agreement or (ii) in excess of the total amount set forth in the cure amount schedule, dated May 21, 2008, whichever is greater (with such excess being Sharper Image's sole responsibility) (this paragraph being referred to as the "Cure Provisions"); and it is further

ORDERED that upon Purchaser's compliance with the Cure Provisions, all defaults or other obligations of the Debtor under the Core IP Contracts arising or accruing prior to the date of this Order without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code, if any, shall be deemed cured on the Closing Date or as soon thereafter as practicable, and the Purchaser shall have no further liability for any such default or obligation, except as otherwise expressly provided in the Asset Purchase Agreement; and it is further

ORDERED that the Purchaser shall have the right to a reduction of the Purchase Price (by an amount agreed to by Sharper Image, in consultation with the Committee, the Secured Lender, and Purchaser or as determined by the Court) as a result of the failure by Sharper Image to assume and assign to Purchaser any Core IP Contract (as defined in the Asset

Purchase Agreement), but Purchaser shall not have the right to terminate the Asset Purchase Agreement in such event; and it is further

ORDERED that the Core IP Contracts shall, upon assignment to the Purchaser, be deemed to be valid and binding and in full force and effect and enforceable in accordance with their terms, and the counterparties to the Core IP Contracts shall not (x) offset amounts owed by Sharper Image pre-petition against post-petition royalties due under the respective Core IP Contracts, or (y) reduce such royalties based upon the closing by Sharper Image of some or all of its retail stores, and, pursuant to section 365(k) of the Bankruptcy Code, Sharper Image shall be relieved from any liability under the Core IP Contracts occurring after such assignment, including any liability for any breach thereof occurring after such assignment; and it is further

ORDERED that the Core IP Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Core IP Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer; and it is further

ORDERED that the failure of the Debtor or the Purchaser to enforce at any time one or more terms or conditions of any Core IP Contract shall not be a waiver of such terms or conditions, or of the Debtor's and Purchaser's rights to enforce every term and condition of the Core IP Contracts; and it is further

ORDERED that this Order shall not apply to Sharper Image's assumption and assignment of that certain License Agreement, dated September 1, 2007, between Sharper Image and Pure Hi-Tech, Inc. and the assumption and assignment of such License Agreement, if necessary shall be subject to further Court order; and it is further

ORDERED that at Closing, the Purchaser shall (a) identify certain executory contracts (including, without limitation, any Core IP Contracts and/or IP Contracts) and/or leases (other than non-residential real property leases), and (b) direct Seller to reject such contracts and/or leases; and

ORDERED that following the Closing Date, except as expressly provided for herein, no holder of an Adverse Interest against the Debtor shall interfere with the Purchaser's title to or use and enjoyment of the Purchased Assets based on or related to such Adverse Interests, or any actions that the Debtor may take in its Chapter 11 case; and it is further

ORDERED that the Asset Purchase Agreement and the Agency Agreement, and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto after consultation with the Secured Lender and the Committee in accordance with the terms thereof without further order of this Court, provided that any such modification, amendment, or supplement (i) is filed with this Court, (ii) is not material and adverse to Sharper Image or any other party in interest, and/or (iii) is to reflect the terms and provisions of this Order, and provided further that no such modification will impair the rights otherwise accorded to any governmental unit in this Order; and it is further

ORDERED that to the extent the Purchaser purchases an interest in a consumer credit transaction that is subject to the Truth in Lending Act or any interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations (January 1, 2004), as amended from time to time), the Purchaser shall remain subject to all claims and defenses that are related to such consumer credit transaction or such consumer credit contract, to the same extent the Purchaser would be subject to such claims and defenses of the consumer had

such interest been purchased at a sale not under section 363 of the Bankruptcy Code; and it is further

ORDERED that, pursuant to section 363(f) of the Bankruptcy Code, the Agent shall be entitled to sell all of the Merchandise (as defined in the Agency Agreement) free and clear of all Adverse Interests, with any Adverse Interest on all or any portion of the Merchandise or the Proceeds attaching only to the Guaranteed Amount and other amounts to be received by Sharper Image under the Asset Purchase Agreement and Agency Agreement; and it is further

ORDERED that Sharper Image and the Agent are authorized and empowered, pursuant to section 363(b) of the Bankruptcy Code, to conduct "going-out-of-business," "store closing," "bankruptcy," or similarly themed sales (the "Store Closing Sales") at the Stores (as defined in the Agency Agreement), effective as of the Sale Commencement Date (as defined in the Agency Agreement), in the manner and on the terms and conditions described in the Agency Agreement and the Store Closing Sales Procedures annexed hereto as Exhibit C; and it is further

ORDERED that the Store Closing Sales Procedures are approved; provided, that written agreements between the Agent and any landlord or overlandlord of the Stores modifying the terms of the Store Closing Sales Procedures at applicable locations shall govern the conduct of the Store Closing Sales at such closing locations; and it is further

ORDERED that the Agent shall have the right to use the Stores and all related Store services, furniture, fixtures, equipment and other assets of Sharper Image as designated in the Agency Agreement for the purpose of conducting the Sale, free of any interference from any entity or person subject to compliance with this Order; and it is further

ORDERED that the Agent shall be granted a limited license and right to use until the Sale Termination Date (as defined in the Agency Agreement) the trade names, logos and

customer and mailing lists relating to and used in connection with the operation of the Stores, solely for the purpose of advertising the Store Closing Sales in accordance with the terms of the Agency Agreement and the Store Closing Sales Procedures; and it is further

ORDERED that Sharper Image and the Agent shall jointly employ a mutually acceptable independent inventory taking service (the "Inventory Taking Service") to conduct a SKU and retail physical inventory (the "Inventory Taking") of the Merchandise, consistent with the Agency Agreement; and it is further

ORDERED that the Inventory Taking Service shall be paid in the ordinary course of business in accordance with the Agency Agreement for all services specified in the Agency Agreement provided to Sharper Image and the Agent with respect to the Inventory Taking; and it is further

ORDERED that Sharper Image is authorized to pay promptly store closing expenses to third parties as administrative expenses, subject to the terms of the Agency Agreement and this Order; and it is further

ORDERED that, subject to the terms of the Agency Agreement, any amounts due to the Agent pursuant to the Agency Agreement shall be free and clear of all Adverse Interests and shall be payable to the Agent out of the Sale proceeds without further order of the Court and without the filing of fee applications; and it is further

ORDERED that upon the Closing (as defined in the Asset Purchase Agreement), the proceeds of the Sale shall be applied in accordance with the order approving the DIP Credit Agreement (the "Final DIP Order") such that all Obligations (as defined in the DIP Credit Agreement) of whatever kind, including overadvance fees and overadvance interest shall be paid (subject to the Creditors' Committee's right to challenge such amounts) and the Secured Lender

14

shall have no further obligations to make any loans or advances to, or issue any letters of credit for, Sharper Image and all commitments of the Secured Lender are terminated; and it is further

ORDERED that Sharper Image shall cash collateralize in the amount required under the DIP Credit Agreement outstanding letters of credit under the DIP Credit Agreement, which cash collateral promptly shall be returned to the Debtor upon expiration, termination or other cancellation of such letters of credit; and it is further

ORDERED that the Secured Lender is granted relief from the automatic stay to apply cash collateral held to backstop letters of credit under the DIP Credit Agreement if and to the extent such letters of credit are drawn and for any letter of credit fees that have accrued without further Court order; and it is further

ORDERED that, to the extent necessary, Secured Lender is granted relief from the automatic stay to draw under the Guaranteed L/C and Expense L/C as and when set forth in the Agency Agreement and such funds, if drawn, shall be applied in accordance with the Final DIP Order; and it is further

ORDERED that Sharper Image will pay into the Pre-Petition Indemnity Account (as defined in the Final DIP Order) $150,000 from the proceeds of the sale to be held in accordance with the Final DIP Order; and it is further

ORDERED that, without limiting the Agent's setoff rights, if any, as set forth in the Agency Agreement, subject to payment of the Guaranteed Amount Expenses, the Agent is hereby granted pursuant to Bankruptcy Code § 364(d) a valid and perfected first priority security interest in and lien upon the Merchandise and any proceeds to which the Agent is entitled under the Agency Agreement (the "Security Interest"). Until the payment of the Guaranteed Amount and Expenses in full (to the extent owed after consideration of Agent's offset rights under the

Agency Agreement, if any), the Security Interest granted to the Agent hereunder shall remain junior to the security interest of the Secured Lender to the extent of the unpaid portion of the Guaranteed Amount and Expenses.    Upon entry of this Order and payment of the Initial Guaranty Payment and the issuance of the Guaranty L/C and the Expense L/C, the Security Interest granted to the Agent shall be deemed properly perfected without the need for further filings or documentation; and it is further

ORDERED that Agent is authorized to conduct, advertise, post signs and otherwise promote the Store Closing Sales (including, without limitation, by means of media advertising, A-frame, interior and exterior banners and similar signage and use of sign walkers), without further consent of any person, in accordance with the terms and conditions of the Agency Agreement and this Order (as the same may be modified and approved by this Court), and without further compliance with applicable federal, state or local laws governing, *inter alia*, the conduct of store closing sales (the "Liquidation Sale Laws").    The term "Liquidation Sale Laws" shall be deemed not to include any public health or safety laws (or any state or local laws, regulations or police powers of general applicability, including but not limited to environmental protection, sales and payroll tax, labor and employment, privacy, consumer protection, deceptive practices and false advertising laws) (the "General Laws"), and Sharper Image and the Agent shall continue to be required to comply, as applicable, with all such General Laws, including specifically the obligation of Sharper Image to pay sales taxes on all Merchandise sold in the Stores.    Except as to a Reserved Dispute (as defined below), nothing herein shall preclude any governmental unit from enforcing such General Laws in the appropriate non-bankruptcy forum, subject to any applicable provision of the Bankruptcy Code and federal law; and it is further

ORDERED that all utilities, landlords, creditors and all persons acting for or on their behalf shall not interfere with or otherwise impede the conduct of the Store Closing Sales, institute any action in any court (other than in this Court) or before any administrative body which in any way directly or indirectly interferes with or obstructs or impedes the conduct of the Store Closing Sales; and it is further

ORDERED that, notwithstanding any restrictions in the Agency Agreement on the Agent's ability to conduct Store Closing Sales in compliance with applicable laws or Store leases and except as otherwise provided in this Order, each and every federal, state or local agency, department, or governmental unit with regulatory authority over the Store Closing Sales and all newspapers and other advertising media in which the Store Closing Sales are advertised shall consider this Order as binding authority that no further approval, license, or permit of any governmental unit shall be required for the conduct of the Store Closing Sales, unless and until there is a further order of this Court; and it is further

ORDERED that state and/or local authorities shall not fine, assess, or otherwise penalize the Agent or any of the Landlords of the Stores for conducting or advertising the Store Closing Sales in a manner inconsistent with local law; *provided, however*, that the Store Closing Sales are conducted and advertised in the manner contemplated by this Order, the Store Closing Sales Procedures, and the Agency Agreement; and it is further

ORDERED that, to the extent not inconsistent with the Store Closing Sales Procedures, Sharper Image and the Agent shall comply with all provisions of the leases of the Stores; and it is further

ORDERED that this Court shall retain jurisdiction to resolve any dispute arising from or relating to the Store Closing Sales, the Agency Agreement, the Asset Purchase

Agreement, or this Order including any dispute (a "Reserved Dispute") over the enforceability of a Liquidation Law (including a dispute whether a law is a Liquidation Law or a General Law), but that nothing herein shall preclude any governmental unit from enforcing General Laws in the appropriate nonbankruptcy forum. Resolution of any Reserved Dispute will take place before this Court as provided herein. In furtherance of this paragraph, within five business days of its entry, Sharper Image shall serve this Order (including all exhibits) on (i) the Attorney General's office for each state where a Sale will be held; (ii) the consumer protection agency or similar agency for each county, city or municipality where a Sale will be held; and (iii) the division of consumer protection for each state where a Sale will be held. Any time before 30 days following the Sale Commencement Date (as defined in the Agency Agreement), any governmental unit may assert a Reserved Dispute by sending a notice explaining the nature of the dispute to the attorneys for Sharper Image, the Committee, the Secured Lender, and the Agent at the addresses set forth in the Agency Agreement. If Sharper Image, the Committee, the Secured Lender, the Agent and such governmental unit are unable to resolve the Reserved Dispute or believe that the Reserved Dispute concerns a dispute whether a law is a Liquidation Law or a General Law and so notifies the governmental unit within 15 days of receipt of the governmental unit's notice, the governmental unit may file a motion with the Court requesting the Court to resolve the Reserved Dispute, including, but not limited to, determining that the governmental unit may enforce the law that is the subject of the Reserved Dispute. The determination of the Reserved Dispute shall be made without reliance on the initial presumption of compliance with such laws set forth above, and the Court shall determine *de novo* whether the law in dispute (if any) is a General Law or Liquidation Law. Filing a motion as set forth in this paragraph shall not be deemed to affect the finality of this Order or to limit or interfere with

18

Sharper Image's or the Agent's ability to conduct or to continue to conduct the Store Closing Sales pursuant to this Order and the Agency Agreement, absent further order of this Court. Nothing herein shall preclude Sharper Image, the Committee, the Secured Lender, or the Agent from asserting that the provisions of any such Liquidation Law is preempted or otherwise rendered unenforceable by the Bankruptcy Code or applicable federal law, in whole or in part, and any other parties' ability to present a contrary position; and it is further

ORDERED that all entities that are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets are hereby directed to surrender possession of the Purchased Assets to the Purchaser on the Closing Date; and it is further

ORDERED that Sharper Image will discontinue its ecommerce on the Closing Date or such earlier date as agreed by Sharper Image; and it is further

ORDERED that all parties and persons of every nature and description, including but not limited to creditors, newspapers, other advertising mediums, and all those acting for or on their behalf, are prohibited and enjoined from charging advertising rates in excess of the rates charged pursuant to Sharper Image's prepetition advertising agreements or, if no such agreements exist, charging advertising rates in excess of rates regularly and customarily charged in the ordinary course of business to non-bankrupt customers; and it is further

ORDERED that any and all bulk sales laws, to the extent applicable, are waived because creditors are protected by the notice provided by the Sale Motion and the jurisdiction of this Court; and it is further

ORDERED that, except as provided in the Agency Agreement, the Store Closing Sales will not subject the Agent to any liability for any claims against Sharper Image based, in

whole or in part, directly or indirectly, on any theory of law or equity including, without limitation, any theory of equitable law or successor liability; and it is further

ORDERED that the Agent shall not be liable for sales taxes except as expressly provided in the Agency Agreement; and it is further

ORDERED that the Agent is hereby authorized to exercise its setoff rights without further order of the Court; and it is further

ORDERED that the Agent shall not be permitted to include in the Store Closing Sales inventory owned by persons or entities other than Sharper Image; and it is further

ORDERED that this Order, the Asset Purchase Agreement, and Agency Agreement shall be binding on any subsequent chapter 11 or chapter 7 trustee who may be appointed in this case or any succeeding chapter 7 case; and it is further

ORDERED that the stay provided under Bankruptcy Rule 6004(h) is waived and no stay shall apply to any transaction contemplated under the Asset Purchase Agreement or the Agency Agreement; and it is further

ORDERED that the transactions contemplated by the Asset Purchase Agreement are undertaken by the Purchaser and the Debtor in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Purchaser, unless such authorization is duly stayed pending such appeal. The Purchaser is a purchaser in good faith of the Purchased Assets and the Core IP Contracts and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code; and it is further

ORDERED that in the event of a conflict between the Asset Purchase Agreement, Agency Agreement, the Store Closing Sales Procedures, and this Order, this Order shall control; and it is further

ORDERED that the Court shall retain jurisdiction over the parties to enforce this Order, the Asset Purchase Agreement, the Agency Agreement, and the Store Closing Sales Procedures, all amendments or modifications to any of the foregoing, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, and to determine disputes thereunder, and protect the Purchaser against any Adverse Interests upon the Assets; and it is further

ORDERED that nothing contained in any plan of reorganization or liquidation confirmed in the Debtor's chapter 11 case or any order of this Court confirming such plan shall conflict with or derogate from the provisions of the Asset Purchase Agreement, the Agency Agreement or the terms of this Order; and it is further

ORDERED that the failure specifically to include any particular provisions of the Asset Purchase Agreement or the Agency Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Asset Purchase Agreement and the Agency Agreement be authorized and approved in their entirety.

ORDERED that upon closing, Sharper Image and the Creditors' Committee shall release all claims arising under the prepetition credit facility in a form acceptable to Sharper Image, the Creditors' Committee and Secured Lender.

ORDERED that Agent is authorized to commence the Sale under the terms of the Agency Agreement on Saturday May 31, 2008 so long as, upon entry of this Order or as soon as practicable thereafter (but in any event, no later than one business day after entry of this Order) (i)

21

the Deposit shall be released to the Seller and (ii) Purchaser shall pay to Seller the sum of $14,150,000 (the "Advance"), provided that the Deposit and the Advance shall be credited dollar for dollar to reduce the Purchase Price for the Purchased Assets upon the Closing. The Sale and all other matters contemplated under the Agency Agreement will be governed in all respects by the terms and conditions of the Agency Agreement. In the event that the Closing does not occur with respect to the Purchased Intellectual Property, the Agency Agreement shall remain in full force and effect according to its terms, except that the Guaranteed Amount shall be deemed to be $18,500,000.

ORDERED that Furthermore, from the proceeds of the sale of any of the Debtor's assets located in the state of Texas, the amount of $130,000 shall be set aside by the Debtor in a segregated account as adequate protection for the secured claims of the objecting Local Texas Tax Authorities prior to the distribution of any proceeds to any other creditor. The liens of the Local Texas Tax Authorities shall attach to these proceeds to the same extent and with the same priority as the liens they now hold against the property of the Debtor. These funds shall be on the order of adequate protection and shall constitute neither the allowance of the claims of the Local Texas Tax Authorities, nor a cap on the amounts they may be entitled to receive. Furthermore, the claims and liens of the Local Texas Tax Authorities shall remain subject to any objections any party would otherwise be entitled to raise as to the priority, validity or extent of such liens. These funds may be distributed upon agreement between the Local Texas Tax Authorities and the debtor, and upon such agreement funds may be distributed in payment of their tax claims with any remaining funds after satisfaction of all the tax claims distributed according to the terms of this Order, or upon motion of the Debtor and subsequent order of the Court, duly noticed to

the Local Texas Tax Authorities. After payment to the Local Texas Tax Authorities, any excess funds will be returned to the Estate.

Dated:   May **30** , 2008

HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE