**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
In re:                                      :    Chapter 11
                                            :
FILENE'S BASEMENT, LLC, et al.,             :    Case No. 11-13511 (KJC)
                                            :
            Debtors.[1]                     :    Jointly Administered
                                            :
                                            :    **Hearing Date: 1/17/12 at 1:00 p.m. (ET)**
                                            :    **Related Docs: 284, 610, 611**
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**RESPONSE OF ROTHSCHILD INC. TO THE OBJECTIONS OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' AND THE OFFICIAL COMMITTEE OF SYMS CORP. EQUITY SECURITY HOLDERS TO DEBTORS' APPLICATION FOR AUTHORIZATION TO EMPLOY AND RETAIN ROTHSCHILD INC. AS FINANCIAL ADVISOR AND INVESTMENT BANKER FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE AND GRANTING WAIVER OF COMPLIANCE WITH CERTAIN INFORMATIONAL REQUIREMENTS PURSUANT TO LOCAL BANKRUPTCY RULE 2016-2(G)**

Rothschild Inc. ("Rothschild") hereby responds to the objections (collectively, the

"Objections") of the Official Committee of Unsecured Creditors, ("Creditors' Committee") and

the Official Committee of Syms Corp. Equity Security Holders ("Equity Committee" and,

together with the Creditors' Committee, the "Committees") to the "Debtors' Application for

Authorization to Employ and Retain Rothschild Inc. as Financial Advisor and Investment Banker

for the Debtors *nunc pro tunc* to the Petition Date and Granting Waiver of Compliance with

Certain Informational Requirements Pursuant to Local Bankruptcy Rule 2016-2(g)" (the

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Filene's Basement, LLC (8277), Syms Corp. (5228), Syms Clothing, Inc. (3869), and Syms Advertising Inc. (5234). The Debtors' address is One Syms Way, Secaucus, New Jersey 07094.

23582601v6

"Application") [docket no. 284].[2]  In support of this response (the "Response"), Rothschild respectfully submits as follows:

## PRELIMINARY STATEMENT

1.      On January 13, 2012, the Debtors filed their  Omnibus Reply to Omnibus Objections of the Committees to the Debtors' Applications to Retain Various Professionals in which Rothschild joins insofar as it relates to Rothschild's retention.

2.      Rothschild files this Response to respond to certain factual inaccuracies and unfounded allegations contained in the Objections.  Specifically, the Objections contend that immediately prior to the commencement of these cases Rothschild and the Debtors entered into a revised engagement letter in an improper attempt to grant Rothschild "a fee for events that had already transpired and were not compensable under the terms of the original engagement letter." Equity Committee Objection at ¶ 6.

3.      In fact, the alterations to Rothschild's engagement letter were made in response to changes in the circumstances and substance of its engagement and brought the engagement letter in line with the template Rothschild uses for engagements in bankruptcy. In addition, the modifications were openly disclosed to this Court and parties in interest in its Application and had no impact on its entitlement to a transaction fee from the Debtors.

## BACKGROUND

4.      Prior to the commencement of these cases, the Debtors selected Rothschild to act as their financial advisor and investment banker and retained Rothschild pursuant to that certain engagement letter, dated as of March 9, 2011 (the "March 9 Engagement Letter").

---

[2]  Capitalized terms used herein without definition have the meanings assigned to them in the Application.

23582601v6

5.      Rothschild was engaged to assist the Debtors with a "general review of strategic and financial alternatives." While the engagement did contemplate the possibility of a liquidation, it did not contemplate a bankruptcy filing by the Debtors.

6.      Rothschild assisted the Debtors in undertaking the review of strategic alternatives. Rothschild analyzed the business, operations, financial condition and prospects of the Debtor. Rothschild identified, contacted and negotiated with strategic, financial and real estate buyers, as well as liquidators, regarding the possibility of a transaction with the Debtors. After about eight months of substantial exploration, analysis and negotiations, Rothschild presented the Debtors with two alternatives: a going private transaction to be effected through a tender offer or a liquidation of retail operations followed by dispositions of real property. Ultimately, the Debtors determined with Rothschild's assistance that a liquidation would provide the best value for its stakeholders and decided to commence a liquidation. Thereafter, it was decided that the liquidation must occur in bankruptcy.

7.      After determining to liquidate, the Debtors concluded that they would require additional services from Rothschild, including assistance in structuring and negotiating a plan of reorganization or liquidation. In the light of a pending bankruptcy filing by the Debtors and the related change in the services that Rothschild was to provide, Rothschild and the Debtors entered into an amendment, dated October 31, 2011, modifying certain terms of the March 9 Engagement Letter (as amended, the "Engagement Letter").

**ARGUMENT**

I.      **Rothschild and the Debtors Amended Rothschild's Engagement Letter to Reflect the Change in the Circumstances and Substance of the Engagement**

8.      The March 9 Engagement Letter did not contemplate a bankruptcy filing by the Debtors. When it was determined that the Debtors would file for bankruptcy and that Rothschild

3

should continue to assist the Debtors in these cases, it became necessary to amend the engagement letter to reflect the rules and requirements of a bankruptcy proceeding. This type of amendment to engagement letters is common practice of Rothschild and other professionals. Other professionals in these cases entered into similar amendments to their engagement letters.

9. The principal purpose of the amendment was to include necessary provisions for Rothschild's bankruptcy related services, which had not been covered in the prior letter. The issues that the changes to the Engagement Letter addressed included, but were not limited to: (i) additional services unique to bankruptcy proceedings that Rothschild would provide the Debtors, such as participating in Court hearings, (ii) the requirement that the Debtors apply promptly to the Court pursuant to Section 327(a) and 328(a) of the Bankruptcy Code for the retention of Rothschild, and (iii) the jurisdiction of this Court over actions and proceedings arising out of the engagement.

10. In addition, the terms of Rothschild's compensation were modified to reflect the additional services it was to provide the Debtors. Rothschild's role now was to assist the Debtors in the liquidation and distribution of its assets pursuant to a plan of reorganization or liquidation. Consequently, the definition of Transaction—the consummation of which entitles Rothschild to a Transaction Fee—was modified to encompass specified transactions occurring "pursuant to a plan of reorganization or liquidation," including sales of assets as part of a "liquidation process."[3]

---

[3] The Engagement Letter provides that the term "Transaction" [means] any one or more of the following, whether out of court, pursuant to a plan of reorganization or liquidation (a "Plan") confirmed in connection with any case or cases commenced by or against the Company, any of its subsidiaries, any of its affiliates or any combination thereof, whether individually or on a consolidated basis (a "Bankruptcy Case"), under [the Bankruptcy Code], or otherwise (including, without limitation, any one or more of the following consisting of a transaction or series of transactions unrelated to a Bankruptcy Case or a Plan): (a) any transaction or series or combination of transactions whereby, directly or indirectly, a significant portion of the Company or its equity interests, assets or operating or business divisions are purchased or otherwise acquired, including, without limitation, a sale or exchange of capital

(continued...)

23582601v6

## II.   Rothschild's Application Fully Disclosed the Terms of the Amendment to this Court and Other Parties in Interest

11.   The Objections stress the timing of the amendment and describe the circumstances of the amendment as "highly suspicious." Creditors' Committee Objection at ¶ 28.  In fact, Rothschild and the Debtors took pains to ensure that the fact and substance of the amendment was clear and fully disclosed.  First, the very structure of the amendment was selected to promote clarity and openness.  The modifications to the March 9 Engagement Letter were implemented through a separate amendment to the existing agreement rather than through an amended and restated letter.

12.   Furthermore, by providing both the amendment and the March 9 Engagement Letter in the exhibits to the Application, Rothschild and the Debtors fully disclosed the terms of

---------------------

(continued...)

stock or assets, a merger or consolidation, a leveraged buyout, a tender or exchange offer, the formation of a joint venture or partnership, a minority interest or any other transaction; (b) any transaction or series of transactions that effects or proposes to effect material amendments to, or other material changes in, any of the Company's outstanding indebtedness, trade claims, leases, unfunded pension and retiree medical liabilities, and/or other liabilities (whether on or off balance sheet) including, without limitation, any exchange, repurchase or forgiveness of any portion thereof; (c) (i) any merger, consolidation, reorganization, recapitalization, financing, refinancing, business combination or other transaction pursuant to which the Company (or control thereof) is acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (an "Acquirer") or Acquirers, acting together or separately or (ii) any acquisition, directly or indirectly, by an Acquirer (or by one or more persons acting together with an Acquirer pursuant to a written agreement or otherwise) or Acquirers, acting together or separately, through a credit bid or otherwise, whether in a single transaction, multiple transactions or a series of transactions, of (x) other than in the ordinary course of business, any material portion of the assets or operations of the Company or (y) any outstanding or newly-issued shares of the Company's capital stock or any securities convertible into, or options, warrants or other rights to acquire such capital stock or other equity securities of the Company, for the purpose of effecting a recapitalization or change of control of the Company; (d) any sale of assets, whether in a single sale, multiple sales or a series of sales, by going out of business, store closing or other liquidation process, other than in the ordinary course of business; (e) any acquisition, directly or indirectly, by the Company, whether in a single transaction, multiple transactions or a series of transactions, any outstanding or newly-issued shares of another person's capital stock or any securities convertible into, or options, warrants or other rights to acquire such capital stock or other equity securities of another person, for the purpose of effecting a recapitalization or change of control of the other person; (f) any restructuring, reorganization, exchange offer, tender offer, refinancing or similar transaction, whether or not pursuant to a Plan; (g) any spin-off, split-off or other extraordinary dividend of cash, securities or other assets to stockholders of the Company or (h) any transaction similar to any of the foregoing.  For purposes of Paragraph 2 [of the Engagement Letter], consummation of a Transaction shall be deemed to occur no later than delivery of the first material part of the Consideration, if any, related thereto.

5

23582601v6

the original letter.  The Committees had a clear view of the changes made, as seen from their comments throughout their Objections.

III.     **Unless Retained with the Approval of this Court, Rothschild's Right to a Transaction Fee Will Be Governed by the terms of the March 9 Engagement Letter**

13.     The Engagement Letter clearly acknowledges that to provide post-petition services and earn compensation based on these services Rothschild must be retained with the approval of the Bankruptcy Court.  Section 2A(a) of the Engagement Letter states that "[t]he Company shall apply promptly to the Bankruptcy Court . . . for approval of (i) this Letter Agreement and (ii) Rothschild's retention by the Company."  It goes on to state Rothschild shall have no obligation to provide services unless its retention is approved.

14.     Moreover, in Section 2A(b) of the Engagement Letter, Rothschild acknowledges that once so retained "payment of Rothschild's fees and expenses shall be subject to . . . the jurisdiction and approval of the Bankruptcy Court."

15.     Contrary to the suggestion that the modifications to the March 9 Engagement Letter were an attempt by Rothschild to unilaterally improve its position, the terms of the amendment clearly indicate that these modifications will only be effective if Rothschild's retention is approved by this Court with the consent or over the objections of the Committees.  If this does not occur, any claim of Rothschild to compensation for its pre-petition services will be governed by the March 9 Engagement Letter.

23582601v6

WHEREFORE, Rothschild respectfully requests that the Court overrule the Objections and enter an Order approving the Application, and granting such other relief as the Court deems just and proper under the circumstances.

Dated:  January 16, 2012

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

By:    /s/ Raymond H. Lemisch
Raymond H. Lemisch, Esquire (No. 4204)
Jennifer E. Smith, Esquire (No. 5278)
222 Delaware Avenue, Suite 801
Wilmington, DE  19801
(302) 442-7010  telephone
(302) 442-7012  facsimile
rlemisch@beneschlaw.com
jsmith@beneschlaw.com

- and -

**DEBEVOISE & PLIMPTON LLP**
Richard F. Hahn
Derek P. Alexander
919 Third Avenue
New York, New York 10022
Telephone:  212.909.6235
Facsimile:  212.521.7292
rfhahn@debevoise.com
dalexand@debevoise.com

*Counsel for Rothschild Inc.*

7

23582601v6

Doc 6977747   Ver 1