UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FILENE'S BASEMENT, *et al.*,[1]<br><br>　　　　　　　Debtors | Chapter 11<br>(Jointly Administered)<br><br>Case No. 11-13511 (KJC)<br>(Re: D.I. 2450) |

## MEMORANDUM[2]

### BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

On February 19, 2013, I issued a Memorandum and Order (the "Decision") on the Cross-Motions for Summary Judgment between Syms Corp. ("Syms")[3] and U.S. Bank, N.A. ("U.S. Bank"), in which I granted both motions, in part, and denied both motions, in part. (D.I. 2441, 2442). Syms now moves this Court to reconsider the Decision (the "Motion for Reconsideration") (D.I. 2450). For the reasons stated below, I will deny Syms' Motion for Reconsideration.

### BACKGROUND[4]

On May 8, 1986, Syms assumed the rights as tenant to what is known as Severance Lease No. 5 (the "Lease") for use of real estate in Secaucus, New Jersey (the "Secaucus Property"), then the location of Syms' headquarters. In addition to net annual rent, the landlord also is

---

[1]The Debtors are: Filene's Basement, LLC, Syms Corp., Syms Clothing, Inc., and Syms Advertising, Inc.

[2]The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1334 & 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(A) & (B).

[3]Syms is now known as Trinity Place Holdings, Inc. For ease of reference, I will continue to refer to it in this Memorandum as "Syms."

[4]In deciding the Motion for Reconsideration, I summarize relevant portions of the background from the Decision. For a more complete background, see *In re Filene's Basement*, No. 11-13511, 2013 WL 620288 (Bankr. D. Del. Feb. 19, 2013).

entitled to percentage rent equal to 15 percent of the tenant's "Annual Net Cash Flow" (the "Percentage Rent"). Annual Net Cash Flow is defined in the Lease as "any net excess refinancing proceeds received during any calendar year from any permanent mortgage refinancing of all or any part of the Demised Land and/or any building thereon." Lease Article 2.4(b)(2). The term "net excess refinancing proceeds" is defined as:

> the amount by which the principal amount of any refinanced permanent mortgage covering a building on the Demised Land exceeds the unpaid principal balance of any existing mortgage covering such building, minus all costs and expenses incurred in connection with any such refinancing . . . .

*Id.* The Percentage Rent for each year comes due on February 28 of the following year. Lease Article 2.4(d).

Syms was also the borrower under a $75 million revolving credit facility with Bank of America N.A. ("Bank of America") pursuant to a Credit Agreement dated as of August 27, 2009 (the "Credit Agreement"). On March 8, 2011, Syms entered into the second of three amendments to the Credit Agreement with Bank of America (the "Second Amendment"). The Second Amendment provided for an approximately $10 million loan to act as working capital for Syms while it was finalizing the sale of a property located in Rockville, Maryland (the "$10 Million Loan"). According to the terms of the Second Amendment, the $10 Million Loan was to mature at the earlier of "(i) April 30, 2011, (ii) the consummation of any refinancing of the Secaucus Property . . . , or (iii) the consummation of any sale-leaseback or other disposition of the Rockville property permitted under the Second Amendment."

Bank of America required additional collateral for the $10 Million Loan, and Syms granted Bank of America a leasehold mortgage in the Lease on the Secaucus Property (the

"Mortgage").[5] Maximum liability on the Mortgage was capped at $23.4 million. The sale of the Rockville property closed on May 13, 2011, and the $10 Million Loan was repaid almost immediately thereafter.

Syms filed its chapter 11 bankruptcy petition on November 2, 2011. On February 29, 2012, the day after the Percentage Rent was due, U.S. Bank filed a proof of claim asserting an administrative claim for approximately $3.5 million, or 15% of the maximum liability under the Mortgage. When Syms moved to assume the Lease, U.S. Bank objected, based upon Syms' failure to pay the Percentage Rent, as well as unpaid additional rent and attorneys' fees. Syms and U.S. Bank agreed to create a reserve in an agreed amount for U.S. Banks' disputed claim to allow Syms to proceed with its plan of reorganization, which was confirmed by this Court on August 30, 2012.

On September 14, 2012, Syms moved for summary judgment on its motion to assume the unexpired lease for the Secaucus Property.[6] U.S. Bank filed a cross-motion for summary judgment, claiming that Syms owes Percentage Rent under the Lease equal to 15 percent of the $23.4 Million Mortgage. The parties dispute whether the Mortgage is a "permanent mortgage" within the meaning of Lease Article 2.4(b)(2). The consequence of this definitional entanglement, simply stated, is that if the Mortgage is a "permanent mortgage" within the meaning of the Lease, Syms' borrowing entitles U.S. Bank to a Percentage Rent payment. If not a "permanent mortgage," then any borrowings are insulated from the reach of the Percentage Rent clause in the Lease.

---

[5] The tenant is permitted to encumber its leasehold interest pursuant to Lease Article 20.1.

[6] Syms' Motion Pursuant to 11 U.S.C. §§105(a) and 365(a) and Fed.R.Bankr.P. 6006 and 9014 Authorizing Syms Corp. to Assume Unexpired Lease of Non-Residential Real Property for Property Located at One Syms Way, Secaucus, New Jersey (the "Motion to Assume Lease") is docket item no. 1247. Syms' Motion for Summary Judgment on the Motion to Assume Lease and to determine cure amounts in connection with assumption of the lease (the "Summary Judgment Motion") is docket item no. 2028.

On February 19, 2013, I issued my Decision, concluding that the Mortgage was a permanent mortgage within the meaning of Lease Article 2.4(b)(2), but the Percentage Rent to be calculated under the Lease terms is limited to the approximately $10 million in proceeds that Syms actually received under the Second Amendment.

## STANDARD OF REVIEW

Federal Rule of Bankruptcy Procedure 9023, which incorporates Federal Rule of Civil Procedure 59, governs motions for reconsideration. Fed. R. Civ. P. 59(e). A motion to alter or amend a judgment under Rule 59(e) must be grounded on (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice. *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). The motion should not relitigate issues the Court has already decided, nor should parties make additional arguments which should have been made prior to judgment. *Smith v. City of Chester*, 155 F.R.D. 95, 97 (E.D. Pa. 1994); *see also Bhantagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995) (finding a motion for reconsideration based on a new, alternate theory was "a classic attempt at a 'second bite at the apple'"). As a result, "finality of judgment and conservation of judicial resources dictate that Rule 59(e) [motions] be sparingly granted." *Skretvedt v. E.I. DuPont de Nemours and Co.*, No. 98-61, 2009 WL 1649495 (D.Del. June 12, 2009) citing *Pennsylvania Ins. Guaranty Ass'n v. Trabosh*, 812 F.Supp. 522, 524 (E.D. Pa. 1992).

## DISCUSSION

In its Motion for Reconsideration, Syms makes three arguments. First, Syms argues that, in determining that the Mortgage was a "permanent mortgage" under Lease Article 2.4(b)(2), the Court failed to consider whether the Mortgage constituted a "refinancing," since the Lease

4

provision refers to "permanent mortgage *refinancing*." Second, Syms argues that the Court improperly applied a canon of contract interpretation to the Lease that is applied only to adhesion contracts, such as insurance policies. Third, Syms argues that the Court's interpretation of the term "permanent," as used in Lease Article 2.4(b)(2), conflicts with common industry usage. The last two arguments are related and I will address them together. U.S. Bank, of course, disagrees with all three arguments.

### A. Syms' Original Summary Judgment Motion did not Properly Address the Refinancing Issue

Syms' initial argument in the Motion for Reconsideration asserts that the Court erred by not considering whether the Mortgage constituted a "refinancing." In response, U.S. Bank contends, *inter alia*, that the refinancing issue was not raised in Syms' summary judgment motion. According to Lease Article 2.4(b)(2), the Percentage Rent includes "all net excess *refinancing* proceeds received . . . from any permanent mortgage *refinancing* of all or any part of the Demised Land and/or any building thereon." Lease Art. 2.4(b)(2) (emphasis added). Syms is correct, then, that "refinancing" is a component of whether the mortgage proceeds should be part of the Percentage Rent calculation. However, the Decision did not address whether the Mortgage was also a "refinancing" because this issue was never addressed by Syms in the briefings or at argument. *See In re Filene's Basement*, No. 11-13511, 2013 WL 620288, at *4-5 (Bankr. D. Del. Feb. 19, 2013).

Syms argues that the Court should have considered whether the Mortgage was a refinancing, regardless of its omission in the briefings, because it is the Court's responsibility to ensure all terms within the Lease, including "refinancing," be given their full effect. *See Princeton Ins. Co. v. Converium Reinsurance (North America) Inc.*, 344 F. App'x. 759, 763 (3d Cir. 2009) ("in interpreting a contract, 'all parts of the writing and every word of it, will, if

5

possible, be given effect'" (quoting *Krosnowski v. Krosnowski*, 22 N.J. 376, 126 A.2d 182, 188 (N.J. 1956)).

In its Summary Judgment Motion, the exclusive focus of Syms' argument was that the Mortgage was not a "permanent mortgage" under the Lease. Syms failed to address the "refinancing" issue and summed up its argument thusly: "[s]ince the [Mortgage] does not meet the basic criteria of 'permanent mortgage loan' or a 'permanent loan,' it was not a 'permanent mortgage refinancing' . . . ." (Mem. of Law of Syms Corp. in Support of Summary Judgment Motion (the "Syms' Memo") (D.I. 2029) at 18). Syms did not seek a separate interpretation of the term "refinancing" from the Court.[7]

The only mention of refinancing is found in a footnote in Syms' Memo, which states that "[i]n the alternative, even if the [Mortgage] could be construed as a permanent mortgage, in this context, the [Lease] clearly does not contemplate a loan such as the [Mortgage] as constituting a 'refinancing.'"[8] (Syms' Memo at 18, n. 7). The footnote, however, is an undeveloped and unsupported argument, and I, therefore, did not address it as part of the original motion for summary judgment. *See U.S. v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"); *Mirza v. The Neiman Marcus Group, Inc.*, No. 06-CV-6484, 2009 WL 3824711 at *4 (N.D. Ill. Nov. 13, 2009) (finding that a defendant's "bald assertion – buried in a footnote . . . could not entitle [d]efendant to summary judgment").

---

[7] I am unable to determine whether Syms' failure to make this argument in a timely fashion was a product of strategy or oversight.

[8] U.S. Bank addresses this footnote in its objection to the Motion for Reconsideration. (*See* U.S. Bank Obj. (D.I. 2474) at 8). Syms, however, did not address the footnote in its Motion for Reconsideration papers, and did not discuss it until oral argument on the Motion for Reconsideration.

6

It is the responsibility of the parties to illuminate their arguments and present them - - fully - - to the Court. *See White Eagle Co-op. Ass'n v. Conner*, 553 F.3d 467, 476 n. 6 (7th Cir. 2009) ("It is not the province of the courts to complete litigants' thoughts for them, and we will not address [an] undeveloped argument."); *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs."). If Syms believed that it had an argument that the Mortgage was not a refinancing, then it should have made such an argument. It did not. It is not appropriate for Syms to raise a new, alternative theory in a motion for reconsideration. Therefore, I will not reconsider my previous Decision on this ground.

B.  **When Viewing the Document as a Whole, the Mortgage is a Permanent Mortgage Under the Lease**

The final two arguments asserted by Syms are related. Syms argues that the Court erred in applying a canon of contract interpretation to the term "permanent mortgage" that is properly applied only to interpretation of adhesion contracts. Syms argues that the Court should interpret "permanent mortgage" in light of its common industry usage. U.S. Bank disagrees and asserts that the Court's Decision was based on an interpretation of the contract as a whole, rather than application of one canon of contract interpretation.

Syms contends that insurance policies are contracts of adhesion and that canons of construction employed to interpret such contracts should not be applied to the Lease. Even if this is so, for the reasons that follow, Syms' argument is to no avail. In the prior Decision, I determined:

> The parties did not define the term "permanent mortgage" in the Lease. However, the parties agreed explicitly which type of financing should be excluded from inclusion in Annual Net Cash Flow and articulated that agreement in Article 2.4(c) of the Lease. If, as Syms argues, the parties intended that another type of financing should be insulated from the landlord's reach, the parties did not say so.

7

> In New Jersey, express contractual exclusions are to be narrowly construed. *See Princeton Ins. Co. v. Chunmuang*, 151 N.J. 80, 698 A.2d 9, 16 (1997) ("In general, insurance policy exclusions must be narrowly construed.").[FN8] Article 2.4(c) should also be construed narrowly and only those exclusions "specific, plain, clear, prominent, and not contrary to public policy will be given effect." *Doto v. Russo*, 140 N.J. 544, 659 A.2d 1371, 1378 (1995) (citations omitted). When looking at the Lease as a whole, it is more logical to conclude that if the mortgage at issue is not an Excluded Mortgage, then it must be considered a "permanent mortgage" within the meaning of Article 2.4(b)(2) of the Lease.
>
> [footnote 8: Insurance policies are to be construed as any other contract. *French v. New Jersey School Bd. Ass'n Ins. Group*, 149 N.J. 478, 694 A.2d 1008, 1015 (1997).]

*Filene's Basement*, 2013 WL 620288 at *5.

U.S. Bank contends that the Court's holistic approach to the interpretation of the Lease is the proper one and, even if the Court's reference to adhesion contract canons were excluded, the result would not change. *See Wheatley v. Sook Suh*, 217 N.J. 233, 525 A.2d 340, 344 (N.J. Super. Ct. App. Div. 1987) ("In construing a contract a court must not focus on an isolated phrase but should read the contract as a whole as considering the surrounding circumstances.").

Syms, on the other hand, disagrees and asserts that the only proper way to interpret the meaning of "permanent mortgage" is to apply its common industry usage, citing *Artesian Water Co., Inc. v. Chester Water Auth.*, Civ. Act. No. 10-7453, 2012 WL 3029689 at *4 (E.D. Pa. July 24, 2012) ("'In the absence of an express provision to the contrary, custom or usage, once established, is considered a part of a contract and binding on the parties though not mentioned therein . . . .'" (quoting *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 566 Pa. 494, 781 A.2d 1189, 1193 (Pa. 2001)); and *Conway v. 287 Corp. Ctr. Assocs.*, 187 N.J. 259, 901 A.2d 341, 347 (N.J. 2006) (extrinsic evidence such as custom or trade usage may be used to determine the intended meaning of contractual terms).

Relying on common industry usage, as Syms suggests, is appropriate when it is necessary to determine the meaning intended by the parties. *Conway*, 901 A.2d at 347. In *Conway*, the New Jersey Supreme Court wrote:

> The polestar of construction is the intention of the parties to the contract as revealed by the language used, taken as an entirety; and, in the quest for the intention, the situation of the parties, the attendant circumstances, and the object they were thereby striving to attain are necessarily to be regarded. The admission of evidence of extrinsic facts is not for the purpose of changing the writing, but to secure light by which to measure its actual significance. . . . . The judicial interpretive function is to consider what was written in the context of the circumstances under which it was written, and accord to the language a rational meaning in keeping with the expressed general purpose.

*Id.* quoting *Atl. N. Airlines v. Schwimmer,* 12 N.J. 293, 96 A.2d 652, 656 (N.J. 1953).

While I determined originally that the meaning of "permanent mortgage" can be found by reading the contract as a whole, Syms nevertheless insists that only a common industry usage would be appropriate to decipher the term's meaning and offers three definitions of "permanent mortgage" that it believes would be appropriate to apply when interpreting the Lease. They include:

- "A mortgage for a long period of time (over 10 years) in contrast to an interim loan or a construction loan . . . ." Finance Glossary, http://www.financeglossary.net/definition/2646-Permanent_Mortgage (last visited June 6, 2013);

- "A mortgage for an extended period of time, usually 10 to 25 years . . . ." The Free Dictionary, http://financial-dictionary.thefreedictioanary.com/permanent+mortgage (last visited June 6, 2013) (citing Denise L. Evans and William Evans, *The Complete Real Estate Encyclopedia* (2007));

- "Permanent Loan: Long-Term (maturity period 15-30 years) mortgage loan or bond issue . . . . Also called permanent financing or permanent mortgage . . . ." Business Dictionary, http://businessdictionary.com/definition/permanent-loan.html (last visited June 6, 2013).

As Syms properly asserts, all terms of a contract must be given their full affect. *See Princeton*, 344 F. App'x. at 763. But by applying any of the definitions offered by Syms for "permanent mortgage," other terms of the Lease would not be given their full effect, specifically, the mortgages excluded from the calculation of Percentage Rent.[9] A primary example can be found with the first excluded type of mortgage under lease Article 2.4(c), "any construction mortgage." The first definition offered by Syms specifically excludes construction mortgages as a type of permanent mortgage. If the parties had intended to apply common industry usage to "permanent mortgage" there would be no need to exclude explicitly "any construction mortgage" because it would be understood that construction mortgages did not apply to it. Thus, the more logical approach to interpreting "permanent mortgage" within the Lease, viewing the Lease as a whole, is not to add more items intended to be excluded from a calculation of Percentage Rent. *Concord Tech. Servs., LLC v. Sec. America Advisors, Inc.*, 2013 WL 1629062, *3 (N.J. Super. App. Div. April 17, 2013) ("In interpreting a contract, we endeavor to give meaning to every provision and are disinclined to interpret a provision that would make it superfluous.") (citing *Washington Constr. Co. v. Spinella*, 8 N.J. 212, 217, 84 A.2d 617 (N.J. 1951)).

---

[9] Lease Article 2.4(c) excludes from the calculation of percentage rent "*any construction* mortgage loan or initial permanent mortgage loan made by any Lending Institutions . . . covering all or any part of the Demised Land, any building or improvement thereon and/or the leasehold estate created hereby, and/or *any* subleasehold estate created from such leasehold estate." (emphasis added).
    The use of "any" multiple times when describing the types of mortgages that are *not* "permanent mortgages" also illustrates the parties' intent to adopt their own meaning of "permanent mortgage." According to the alternate definitions offered by Syms, "permanent mortgages" are mortgages that run over a long period of time, not less than 10 years. The drafters of the Lease clearly intended to include mortgages with terms shorter than 10 years as "permanent mortgages." Otherwise, there would have been no reason to specify construction mortgages separately, since the terms of such mortgages are, typically, less than 10 years.

## CONCLUSION

For the reasons set forth above, Syms' Motion for Reconsideration will be denied. An appropriate order follows.

BY THE COURT:

_____
KEVIN J. CAREY, JUDGE
UNITED STATES BANKRUPTCY COURT

Dated: January 15, 2014

11