IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FILENE'S BASEMENT, LLC, *et al.*,¹ | ) Case No. 11-13511 (KJC) |
| | ) |
| Reorganized Debtors. | ) Jointly Administered |
| | ) |
| | ) Hearing Date: April 2, 2014, at 2:00 p.m. (ET) [Requested] |
| | ) Objections Due: March 31, 2014, at 4:00 p.m. (ET) [Requested] |
| | ) |
| | ) Re: D.I. 1247, 2733, 2858 |

**REORGANIZED DEBTORS' MOTION FOR AN ORDER PURSUANT
TO 11 U.S.C. §§ 105(a), 363, AND 365, BANKRUPTCY RULE 9019, THE PLAN AND
CONFIRMATION ORDER FOR AN ORDER (I) APPROVING SETTLEMENT; (II)
AUTHORIZING ASSUMPTION AND ASSIGNMENT TO ASG EQUITIES SECAUCUS
LLC OF UNEXPIRED LEASE OF NON-RESIDENTIAL REAL PROPERTY AND
RELATED PROPERTY LOCATED AT ONE SYMS WAY, SECAUCUS, NEW JERSEY;
AND (III) GRANTING RELATED RELIEF**

The reorganized debtors in the above-captioned jointly administered cases (collectively, the "Reorganized Debtors"), including Trinity Place Holdings, Inc. f/k/a/ Syms Corp. ("Syms"), hereby move (the "Motion") for entry of an order, substantially in the form of **Exhibit A** attached hereto (the "Proposed Order"), approving a settlement and authorizing Syms to assume and assign that certain unexpired lease of non-residential real property located at One Syms Way, Secaucus, New Jersey (the "Secaucus Property"), including any amendments or modifications to such lease (collectively, the "Lease") to ASG Equities Secaucus LLC (the "Assignee").² In support of this Motion, the Reorganized Debtors respectfully state as follows:

---

¹ The Reorganized Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Filene's Basement, LLC (8277), Trinity Place Holdings, Inc. f/k/a Syms Corp. (5228), Syms Clothing, Inc. (3869), and Syms Advertising Inc. (5234).

² The Reorganized Debtors previously moved to assume the Lease in the *Motion for Order Pursuant to 11 U.S.C. §§ 105(a) and 365(a) and Fed. R. Bankr. P. 6006 and 9014 Authorizing Syms Corp. to Assume Unexpired Lease of Non-Residential Real Property for Property Located at One Syms Way, Secaucus, New Jersey* (D.I. 1247) (the "Assumption Motion") and *Syms's*

**PRELIMINARY STATEMENT**

1. The decision to file this Motion was not made lightly. Following the filing of the Hartz Settlement Motion (as defined below), the Assignee submitted a bid to purchase the Leasehold Interests that was multiple millions of dollars higher than Hartz's offer, on the same material terms with no closing conditions, and on an as-is basis. In light of this substantial increase in value, the Reorganized Debtors concluded after extensive deliberations that the proper exercise of their fiduciary duties to their stakeholders required them to file the instant Motion and seek approval of an assignment and sale of the Leasehold Interests to the Assignee.

2. The Reorganized Debtors submit that, subject to any higher or better offer they may receive, the Assignee's offer provides the highest value for the Leasehold Interests and should be approved by the Court.

**JURISDICTION AND VENUE**

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are sections 105, 363, 365, and 1146 of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by Rules 6004, 6006, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and pursuant to and in accordance with sections V.F., VII.H., VIII.I.2, IX.A., and XIII

---

*Supplemental Motion for Order Pursuant to 11 U.S.C. §§ 105(a) and 365(a) and Fed. R. Bankr. P. 6006 and 9014 Authorizing Assumption of Unexpired Lease of Non-Residential Real Property for Property Located at One Syms Way, Secaucus, New Jersey* (D.I. 2733) (the "Supplemental Motion"), which remain pending before the Court. Thus, this Motion does not address the request to assume the Lease.

of the Plan (as defined below), and paragraphs 18, 28, 31, 41, and 49 of the Confirmation Order (as defined below).

## BACKGROUND

### A. Procedural History Related to the Lease and this Motion

5. On May 8, 2012, the Debtors filed the *Debtors' Motion for Order Pursuant to 11 U.S.C. §§ 105(a) and 365(a) and Fed. R. Bankr. P. 6006 and 9014 Authorizing Syms Corp. to Assume Unexpired Lease of Non-Residential Real Property for Property Located at One Syms Way, Secaucus, New Jersey* (D.I. 1247) (the "Assumption Motion"). Due to a cure dispute with U.S. Bank National Association, as trustee under the Metropolitan Trust Agreement ("U.S. Bank"), the landlord under the Lease,[3] the Assumption Motion has remained pending before this Court. No other party objected to the Assumption Motion.

6. On December 18, 2013, the Reorganized Debtors filed *Syms's Supplemental Motion for Order Pursuant to 11 U.S.C. §§ 105(a) and 365(a) and Fed. R. Bankr. P. 6006 and 9014 Authorizing Assumption of Unexpired Lease of Non-Residential Real Property for Property Located at One Syms Way, Secaucus, New Jersey* (D.I. 2733) (the "Supplemental Motion").[4] In the Supplemental Motion and at the January Hearing on the Supplemental Motion, the Reorganized Debtors advised the Court that they had received several significant expressions of interest in the Lease and Syms's related improvement interests (the "Leasehold Interests") and

---

[3] 99 Hudson TIC II LLC has represented that, pursuant to a purchase agreement with U.S. Bank, 99 Hudson TIC II LLC is now the landlord under the Lease (the "Landlord") and the holder of the claims filed by U.S. Bank.

[4] Capitalized but undefined terms used in this Motion shall have the meaning ascribed to them in the Supplemental Motion.

were therefore requesting authorization to assume the Lease notwithstanding the ongoing dispute with U.S. Bank over the appropriate cure amount.[5]

7. The Court did not rule on the Supplemental Motion at the January Hearing and, pursuant to the Order entered on January 15, 2014 (D.I. 2778), scheduled a status conference on the Supplemental Motion for February 20, 2014, which was subsequently continued to February 25, 2014 (the "February Hearing").

8. At the February Hearing, Landlord's counsel stated on the record that other than the Cure Dispute, there were no defaults that needed to be cured for Syms to assume and assign the Lease. Transcript of February Hearing ("Feb. Tr.") at 24:14-16. A copy of this transcript is attached hereto as **Exhibit B**. Also at the February Hearing, Landlord's counsel requested that the Reorganized Debtors file a motion to assign the Lease to Assignee to allow Landlord to evaluate Assignee's ability to provide adequate assurance of future performance under the Lease. This is the Landlord's requested assignment motion.

9. After the February Hearing, the Reorganized Debtors continued discussions and negotiations with Assignee and Landlord regarding the disposition of the Leasehold Interests. Following these negotiations, on March 18, 2014, the Reorganized Debtors filed the *Reorganized Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a), 365, Bankruptcy Rule 9019, the Plan and Confirmation Order for an Order (I) Approving Settlement (II) Authorizing Assumption and Assignment of Unexpired Lease of Non-Residential Real Property Located at One Syms Way, Secaucus, New Jersey and (III) Granting Related Relief* (D.I. 2858) (the "Hartz Settlement Motion"). The Hartz Settlement Motion contemplated a transaction in which Syms would assume, assign, and sell the Leasehold Interests to One Emerson Lane Leasehold LLC or

---

[5] Syms hereby incorporates the record and evidence from the January Hearing in support of this Motion.

4

such other entity (the "Hartz Assignee") as may be designated by Hartz Mountain Industries, Inc. ("Hartz") in exchange for (i) a payment of $24,000,000 from the Hartz Assignee, (ii) the release to Syms of the $1,250,000 held in reserve in connection with the Cure Dispute and a payment from Syms to Landlord of $250,000 to resolve all issues related to the Cure Dispute, and (iii) mutual releases between the Hartz Entities and Syms Parties (each as defined in the Hartz Settlement Motion) of any and all claims related to the Lease, the Leasehold Interests, the Hartz Settlement Motion, the Cure Dispute, and/or the Potential Claims (as defined in the Hartz Settlement Motion). The Hartz Settlement Motion also requested that the Court enter a settlement bar order precluding and enjoining the Barred Persons (as defined in the Hartz Settlement Motion) from asserting non-contractual indemnity or contribution claims against the Hartz Entities for any claim arising out of or reasonably flowing from the claims and allegations that are being settled between the Hartz Entities and Syms Parties.

10. After the Reorganized Debtors filed the Hartz Settlement Motion, Assignee submitted a substantially higher offer for the Leasehold Interests than Hartz's offer, which was conditioned on the filing of the instant Motion and withdrawal of the Hartz Settlement Motion. Following extensive deliberations and in consideration of the best interests of their creditors and shareholders, the Reorganized Debtors and the Creditors' Committee Director (as defined in the Plan) concluded that the Assignee's offer provided materially greater value and, notwithstanding Hartz's prior offer, their obligations to their stakeholders required prosecution of the instant Motion. As discussed in more detail below, following additional negotiations, the Assignee and the Reorganized Debtors have agreed to the settlement, assumption, assignment, and sale of the Leasehold Interests pursuant to the terms set forth in Proposed Order attached hereto as **Exhibit A**.

B.     **Relevant Provisions of the Plan and Confirmation Order**

11.    On August 30, 2012, the Court entered its *Findings of Fact, Conclusions of Law and Order Confirming the Modified Second Amended Joint Chapter 11 Plan of Reorganization of Syms Corp. and its Subsidiaries* (D.I. 1983) (the "Confirmation Order"). Pursuant to the Confirmation Order, the Court confirmed the *Modified Second Amended Joint Chapter 11 Plan of Reorganization of Syms Corp. and its Subsidiaries* (the "Plan").

12.    The Plan and Confirmation Order provide that assumption and ultimate disposition of the Lease and Leasehold Interests would be determined by this Court following the Effective Date (as defined in the Plan). See Confirmation Order ¶ 31; Plan §§ IX.A, XIII. Syms's landlord consented to entry of the Confirmation Order and confirmation of the Plan with these express reservations of post-Effective Date authority for the Court to rule on assumption and the ultimate disposition of the Lease and Leasehold Interests.

13.    Paragraph 18 of the Confirmation Order provides that section 1146 of the Bankruptcy Code applies to a transfer from any of the Reorganized Debtors to any other entity or person of real or personal property and will not be subject to any document recording tax, stamp tax, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment.

14.    Additionally, the Plan and Confirmation Order prohibit payment on any claim until (and then only to the extent that) such claim is an "Allowed" claim per the terms of the Plan. Confirmation Order ¶ 41; Plan §§ V.F., VIII.I.2. Specifically, the Plan provides that "no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim." Plan § VIII.I.2.

### C. Terms of the Settlement, Assumption, Assignment, and Sale to Assignee

15. The agreement with the Assignee under the Proposed Order provides, among other things, that

> a) Effective upon payment of $28,020,000 by Assignee to Syms, Syms shall in accordance with the Plan and Confirmation Order assume, assign, and sell the Lease as set forth in the General Assignment and Bill of Sale annexed as Exhibit A to the Proposed Order. The Assignee has deposited 20% of the purchase price, $5,604,000, in escrow to secure its obligations under the General Assignment and Bill of Sale.
>
> b) The $1,250,000 currently held in a reserve account by Syms in connection with the Cure Dispute shall remain in escrow pending resolution of the Cure Dispute.
>
> c) Upon Syms's receipt of the purchase price from the Assignee, the Syms Parties shall release the ASG Entities of any and all claims related to the Lease, the Leasehold Interest, the Motion, the Cure Dispute, and the 2004 Motion seeking an examination of Hartz and Landlord, filed February 10, 2014 [D.I. 2802] (the "2004 Motion"), including the additional discovery requests dated February 28, 2014 or the purported subject matter thereof.
>
> d) Upon receipt of the purchase price by Syms, the Reorganized Debtors shall release Hartz and Landlord solely with respect to claims sought to be investigated in the 2004 Motion (the "Prospective Claims").
>
> e) Syms shall have the right to enter into a short term lease agreement with Assignee for office space in the Secaucus Property rent free for a period of three weeks from entry of the Proposed Order.

### RELIEF REQUESTED

16. By this Motion, the Reorganized Debtors respectfully request that the Court enter an order, substantially in the form of **Exhibit A** attached hereto, approving the settlement memorialized in the Proposed Order and authorizing the Reorganized Debtors to assume, assign, and sell the Leasehold Interests to the Assignee, pursuant to Bankruptcy Code sections 105, 363, 365(f) and 1146, Bankruptcy Rule 9019, and the Plan and Confirmation Order.

## BASIS FOR RELIEF REQUESTED[6]

### A. The Settlement Should Be Approved

17. The settlement falls well within the range of reasonableness and should be approved by the Court. The Third Circuit has emphasized that "[t]o minimize litigation and expedite the administration of a bankruptcy estate, [c]ompromises are favored in bankruptcy." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (second alteration in original) (internal quotation marks omitted); see also In re World Health Alts., Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy"). The approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

18. Before approving a settlement under Bankruptcy Rule 9019, a court should determine whether "'the compromise is fair, reasonable, and in the interest of the estate.'" In re Marvel Entm't Grp., Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)). Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 425 (1968). The court need not be convinced that the settlement is the best possible compromise in order to approve it. In re Coram Healthcare Corp., 315 B.R. 321, 330 (Bankr. D. Del. 2004). Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Rep., 2008 WL 821088, at *5 (D.N.J. March 25, 2008) (citing Aetna Cas. & Sur. Co. v. Jasmine,

---

[6] In order to avoid duplicative briefing, Syms incorporates by reference the Assumption Motion and Supplemental Motion and the relief requested therein.

Ltd. (In re Jasmine, Ltd.), 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

19. Under the terms contained in the Proposed Order, the settlement between the Reorganized Debtors and the Assignee is fair, reasonable, and in the best interests of the Reorganized Debtors' creditors and shareholders. Following consummation of the sale of the Leasehold Interests, the settlement will resolve any potential litigation between the Reorganized Debtors and Hartz concerning the Prospective Claims. Moreover, the settlement will result in a payment of $28,020,000 to the Reorganized Debtors for the benefit of their creditors, shareholders, and other parties in interest.

20. When compared to the costs and likely protracted litigation over the Prospective Claims, which could include appeals to the District Court and Third Circuit, and the significant value obtained from the Assignee's purchase of the Leasehold Interests, it is evident that the settlement is a fair and reasonable resolution and should be approved.

21. For these reasons, the Court should approve the settlement.[7]

### B. Assignment of the Lease to Assignee Is Appropriate

22. Section 365(f) of the Bankruptcy Code provides that a debtor may assign an unexpired lease if (a) the debtor assumes the lease;[8] and (b) adequate assurance of future

---

[7] Except for the claims being settled pursuant to and in accordance with this Motion, the Reorganized Debtors expressly reserve and preserve all rights, claims, and remedies they have against any party.

[8] As set forth in the Assumption Motion and Supplemental Assumption Motion, assumption of the Lease should be authorized by the Court. The Reorganized Debtors and the Creditors' Committee Director request that the Court reject the Landlord's requested conditions to assumption of the Lease, specifically that Syms be required to: (a) pay Landlord $1,250,000, and (b) reserve $517,000 on disputed claims not yet subject to any ruling by the Court, as these conditions are prohibited by the Plan. As this Court is aware, under the Confirmation Order and Plan (to which the Landlord assented), no creditor is permitted to receive *any* payment on its claim until its claim becomes allowed by final order. See Confirmation Order ¶ 41; Plan §§ V.F, VIII.I.2. Here, the $1,250,000 additional rent claim for which Landlord seeks payment as a

performance by the assignee is provided. 11 U.S.C. § 365(f)(2); see In re Decora Indus., 2002 WL 32332749, at *8 (D. Del. May 20, 2002).[9]

23. This Court has explained that "[i]n order to assume and assign an executory contract or unexpired lease under section 365(f), the debtor must establish that the decision is one made in its sound business judgment." In re ANC Rental Corp., Inc., 278 B.R. 714, 723 (Bankr. D. Del. 2002).

24. Assignment of the Lease is an exercise of Syms's sound business judgment. The Leasehold Interests are substantial assets of the Reorganized Debtors and, upon their assignment and sale as contemplated by and pursuant to the Agreement, Plan, and Confirmation Order, Syms will receive $28,020,000 million from the Assignee that will inure to the benefit of the Reorganized Debtors' creditors and shareholders.

25. Further, in light of the modest, below-market obligations of the tenant under the Lease, Syms believes that the Assignee has or will satisfy the obligations to demonstrate adequate assurance of future performance pursuant to Bankruptcy Code section 365(f). Indeed, in prior communications between Landlord, the Reorganized Debtors, and Assignee, the Landlord's counsel stated that it would rely upon an executed sale agreement between the Reorganized Debtors and Assignee as adequate assurance of future performance.[10]

---

condition to assumption is only one integrated part of the larger Cure Dispute that remain subject to litigation before this Court. Additionally, the issues relating to the $517,000 portion of the Cure Dispute have not been the subject of any rulings and, even following any such rulings, the Reorganized Debtors may appeal any order allowing any part of the cure claims, preventing the claims from becoming allowed by final order until such appeals have been exhausted.

[9] Out of an abundance of caution, to the extent Landlord asserts the Lease prohibits assignment or conditions assignment on the consent of any party other than the Debtors—which the Debtors do not believe is supported by the terms of the Lease—such restrictions are unenforceable. See 11 U.S.C. § 365(f)(1); In re Rickel Home Ctrs., Inc., 240 B.R. 826, 831 (D. Del. 1998).

[10] Such reliance is unsurprising when comparing the significant purchase price to be paid by the Assignee for the Leasehold Interests ($28,020,000) and the very modest rent obligations

26. For these reasons, the Reorganized Debtors submit that assignment of the Lease as set forth herein is appropriate and should be approved.

### C. The Sale of the Leasehold Interests Should Be Approved

27. Pursuant to section 363 of the Bankruptcy Code, a debtor may sell, after notice and a hearing, assets outside the ordinary course of business. 11 U.S.C. § 363. Once a debtor articulates a valid business justification under section 363 of the Bankruptcy Code, a presumption arises that the decision was made on an informed basis, in good faith, and in the honest belief that the action was in the best interest of the company. See In re Martin, 91 F.3d at 395; Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992). The business judgment rule is applicable in chapter 11 cases and provides for judicial deference to debtors' management. See In re Integrated Res., 147 B.R. at 656; Comm. of Asbestos Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) (noting that the code favors debtors' continued operation of business and "a presumption of reasonableness attaches to a debtor's management decisions"). If a debtor's actions and rationale satisfy the business judgment rule, the court should approve the transaction or transactions in question under section 363(b)(1) of the Bankruptcy Code. See In re Dura Auto. Sys., Inc., 2007 WL 7728109, at *92 (Bankr. D. Del. Aug. 15, 2007).

28. As with assignment, a sale of the Leasehold Interests is an exercise of Syms's sound business judgment because it will generate substantial consideration for distribution to the Reorganized Debtors' creditors and currently represents the highest and best offer for the Leasehold Interests.

---

(approximately $80,000/year) under the Lease. Notably, the Assignee has already delivered a deposit of $5,604,000 into escrow in respect of the sale.

29. Moreover, in light of the explicit reservation of the Court's authority to order assumption, assignment, and disposition of the Lease under the Plan and Confirmation Order, <u>see</u> Confirmation Order ¶ 31; Plan §§ IX.A, XIII, under Third Circuit precedent, the Court has the authority to approve a sale of the Leasehold Interests under section 363 of the Bankruptcy Code. In <u>LRSC Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs.)</u>, 209 F.3d 291 (3d Cir. 2000), the Third Circuit held that a bankruptcy court's ability to approve assumption and assignment of a lease under section 365 of the Bankruptcy Code necessarily includes the authority to approve the sale of that interest under section 363. <u>Id.</u> at 303 (holding that assignment of leasehold interests constitutes sale of property under Bankruptcy Code section 363). Indeed, "[i]t is elementary that a leasehold is personal property and possibly of value to the debtor's estate, thus the assignment of a lease for a valuable consideration is a sale of property to which section 363(m) applies." <u>In re Adamson Co., Inc.</u>, 159 F.3d 896, 898 (4th Cir. 1998); <u>see also</u> <u>Cinicola v. Scharffenberger</u>, 248 F.3d 110, 124 (3d Cir. 2001) ("There is a nexus between § 363 and § 365….Even though assignments of executory contracts are governed by § 365 and not by the more general § 363 sales provision, assignments are in fact just a type of sale." (internal quotation omitted)).

30. Not only has no party ever contested this Court's authority to approve assumption and assignment of the Lease under section 365, Syms's landlord consented to the entry of the Confirmation Order which explicitly reserved this Court's ability to approve assumption and assignment. Under the Third Circuit's decision in <u>Rickel</u>, this authority to approve assumption under section 365 necessarily included the ability to sell the Lease under section 363. See <u>Rickel</u>, 209 F.3d at 303 ("The result . . . that we reach here, is supported by

decisions from other courts of appeals that treated assignments of leasehold interests as sales of property under section 363 and applied section 363(m) to such assignments.").

31.     Under this precedent and in light of the explicit retention of authority of the Court in the Plan and Confirmation Order to approve assumption and disposition of the Leasehold Interests, the Court should approve the sale of the Leasehold Interests to Assignee under section 363 of the Bankruptcy Code.

### WAIVER OF BANKRUPTCY RULES 6004(H) AND 6006(D) IS APPROPRIATE

32.     Bankruptcy Rule 6006(d) provides that "[a]n order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."

33.     Bankruptcy Rule 6004(h) likewise provides that unless the Court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen days after entry of the order.

34.     The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h), 6006(d).  Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day period, the leading treatise on bankruptcy suggests that the stay period should be eliminated to allow the assignment and sale to close "immediately" in all cases where there has been no objection to the assignment or sale procedure. 10 COLLIER ON BANKRUPTCY ¶¶ 6004.09, 6006.05 (Resnick & Sommer, 16th rev. ed. 2013).  The treatise further provides that if an objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. Id.

13

35. Wavier of the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d) is necessary and appropriate here to expedite and remove uncertainty regarding the proposed assignment and sale of the Leasehold Interests. A fourteen-day stay of the effectiveness of the Proposed Order may unnecessarily delay, complicate, or jeopardize the assignment and sale and their benefits to the Reorganized Debtors' stakeholders. Moreover, the issues before the Court have been the subject of extensive briefing and hearings before this Court, in which the Reorganized Debtors, Assignee, and Landlord have participated, and the subject of wide-ranging discussions among the parties. Under these circumstances, the Reorganized Debtors submit that a waiver of the fourteen day stay period under Bankruptcy Rules 6004(h) and 6006(d) is appropriate.

36. For these reasons, the Reorganized Debtors request that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

## **NOTICE**

37. Notice of this Motion has been provided by hand delivery and/or overnight mail to (i) the U.S. Trustee; (ii) counsel to U.S. Bank and Landlord; (iii) counsel to the Assignee; and (iv) all parties who have requested notice in these cases pursuant to Bankruptcy Rule 2002. The Reorganized Debtors submit that, in light of the relief requested, no other or further notice need be provided.

[*Remainder of Page Intentionally Blank*]

WHEREFORE, the Reorganized Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (i) authorizing Syms to assume, assign and sell the Leasehold Interests to the Assignee, and (ii) granting such other relief as is just and proper.

| | |
|---|---|
| Dated: March 24, 2014<br>Wilmington, Delaware | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>  */s/ William M. Alleman, Jr.*  <br>Robert J. Dehney (No. 3578)<br>Curtis S. Miller (No. 4583)<br>William M. Alleman, Jr. (No. 5449)<br>1201 N. Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899-1347<br>Telephone:  (302) 658-9200<br>Facsimile:  (302) 658-3989<br><br>*Counsel for Reorganized Debtors* |

8034651.7