## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | CHAPTER 11 |
| | : | |
| **FILENE'S BASEMENT, LLC.**, *et al.*[1] | : | |
| Debtors | : | Case No. 11- 13511 (KJC) |
| | : | (Re: 1247, 2733, 2802, 2864, 2877) |

## MEMORANDUM REGARDING
## COMPETING MOTIONS RELATED TO THE LEASE OF
## NON-RESIDENTIAL REAL PROPERTY LOCATED IN SECAUCUS, NEW JERSEY[2]

Currently before the Court are two competing motions regarding the Reorganized

Debtors' interest in a lease of non-residential real property located at One Syms Way, Secaucus,

New Jersey:

(1)    The Reorganized Debtors' Motion for an Order Pursuant to 11 U.S.C. §§ 105(a), 363 and 365, Bankruptcy Rule 9019, the Plan and Confirmation Order for an Order (i) Approving Settlement; (ii) Authorizing Assumption and Assignment to ASG Equities Secaucus LLC of Unexpired Lease of Non-Residential Real Property and Related Property Located at One Syms Way, Secaucus, New Jersey; and (iii) Granting Related Relief (the "ASG Motion") (D.I. 2864); and

(2)    The Motion to Enforce Settlement Agreement filed by 99 Hudson TIC II LLC and Hartz Mountain Industries, Inc. (the "Hartz Motion to Enforce Settlement") (D.I. 2877).

Hartz Mountain Industries, Inc. and 99 Hudson TIC II, LLC (jointly, "Hartz"), who

succeeded to the landlord's interest under the Lease (defined below) sometime after January 8,

---

[1]The Reorganized Debtors in this case are: Filene's Basement, LLC; Trinity Place Holdings, Inc. f/k/a Syms Corp.; Syms Clothing, Inc.; and Syms Advertising, Inc. (collectively, the "Reorganized Debtors").

[2]This Memorandum constitutes the findings of fact and conclusions of law required by Fed.R.Bankr.P. 7052. This Court has jurisdiction to decide the matters before it pursuant to 28 U.S.C. §§1334 and 157(a).  This is a core proceeding pursuant to 28 U.S.C. §157(b)(1) and (b)(2)(N).

2014, filed an objection to the ASG Motion.[3] The Reorganized Debtors filed an objection to the Hartz Motion to Enforce Settlement.  Alan Cohen, the Series A Preferred Trustee and Creditors' Board Representative (the "Creditors' Representative") filed a joinder to the ASG Motion and an objection to the Hartz Motion to Enforce Settlement.  An evidentiary hearing on the ASG Motion and the Hartz Motion to Enforce Settlement was held on April 2, 2014 and April 9, 2014.

For the reasons set forth herein, the ASG Motion will be granted, in part, and the Hartz Motion to Enforce Settlement will be denied.

## Background

On May 8, 1986, Syms Corp. assumed the rights as tenant to what is known as Severance Lease No. 5 (the "Lease") for use of real property located at One Syms Way, Secaucus, New Jersey (the "Property").  The Lease is one of many "severance leases" created as part of a larger ground lease.  The Lease is for a term of 299 years. The Property previously served as the headquarters for the Debtors; it now serves as the headquarters for Trinity Place Holdings, Inc. ("Trinity"), one of the Reorganized Debtors. (Tr. 1/8/2014 at 26:6 - 26:11).

On November 2, 2011, Syms Corp. and related entities filed chapter 11 bankruptcy petitions. The Prior Landlord filed two proofs of claim in the bankruptcy case: (1) a general unsecured claim for no less than $17,000 (the "Unsecured Claim") for Additional Rent, as that term is defined in the Lease, that was unpaid as of the Petition Date; and (2) an administrative expense claim (the "Administrative Claim") for (a) no less than $3.51 million for Percentage Rent, as that term is defined in the Lease, that the landlord claimed was due and payable as of

---

[3]U.S. Bank, National Association, in its capacity as trustee under the Metropolitan Trust Agreement, previously represented the interest of the successor landlord under the Lease ("US Bank" or the "Prior Landlord").

February 12, 2012; and (b) an amount owed pursuant to Article 16 of the Ground Lease for indemnification obligations. On or about April 30, 2012, the Debtors filed an objection to the Administrative Claim (the "Claim Objection") arguing that it owed no liability for Percentage Rent or otherwise.

On August 30, 2012, the Court entered the Findings of Fact, Conclusions of Law and Order (D.I. 1983) (the "Confirmation Order") confirming the Modified Second Amended Joint Chapter 11 Plan of Reorganization of Syms Corp. and its Subsidiaries (the "Plan").

(A)   The Original Assumption Motion and the Cure Reserve

On May 8, 2012, the Debtors filed a Motion for Order Pursuant to 11 U.S.C. §§105(a) and 365(a) and Fed.R.Bankr.P. 6006 and 9014 Authorizing Syms Corp. To Assume Unexpired Lease of Non-Residential Real Property for Property Located at One Syms Way, Secaucus, New Jersey (D.I. 1247) (the "Assumption Motion").[4] In the Assumption Motion, the Debtors sought authorization to assume the Lease upon payment of a cure claim in the amount of $5,026.55. The Prior Landlord informally objected to the Assumption Motion, asserting that the proper Cure Amount was at least $3.627 million. The Prior Landlord and the Debtors agreed to consolidate the Claim Objection and the Assumption Motion into one litigation (the "Cure Dispute").

The Plan and Confirmation Order provided that assumption and ultimate disposition of the Lease would be determined by this Court following the Plan's Effective Date. Confirmation

---

[4]On February 22, 2012, the Debtors filed a Motion for Order Under 11 U.S.C. §§ 105 and 365 and Fed.R.Bankr.P. 9006 Extending Time Within Which Debtors may Assume or Reject Unexpired Leases of Nonresidential Real Property (the "Motion for Extension") (D.I. 844) which sought to extend the deadline for assumption of certain leases, including the Lease, under Bankruptcy Code §365(d)(4). The Motion for Extension was granted by Order dated February 29, 2012 (D.I. 886), which extended the time for the Debtors to request court approval to assume the Lease to May 30, 2012.

Order, ¶¶ 28 and 31; Plan §§ IX.A. and XIII.

On September 14, 2012, the Debtors and the Prior Landlord each filed a motion for summary judgment regarding the Cure Dispute. On February 19, 2013, this Court issued a Memorandum and Order (D.I. 2441 and D.I. 2442) (the "Summary Judgment Decision") granting, in part, and denying, in part, the Summary Judgment Motions by determining that:

    (1)    the Prior Landlord was entitled to a claim for Percentage Rent based upon a leasehold mortgage (that was capped at the amount of $23.4 million) granted by the Debtors in favor of Bank of America, N.A., although calculation of the Percentage Rent claim would be limited to a percentage of the loan proceeds the Debtors actually received under the leasehold mortgage in the amount of $10 million, thus decreasing the Percentage Rent claim from approximately $3.5 million to $1.5 million, less fees and expenses;

    (2)    the cross-motions for summary judgment were denied with respect to the Prior Landlord's claims for "Additional Rent," due to outstanding issues of material fact; and

    (3)    the Court reserved ruling on the issue of whether the Prior Landlord was entitled to reimbursement of attorney fees as part of its cure claim.

On March 5, 2013, the Reorganized Debtors filed a motion for reconsideration of the Summary Judgment Decision (D.I. 2450). This Court entered a third stipulated order modifying the scheduling order related to the Assumption Motion (D.I. 2463) (the "Third Modified Scheduling Order") on or about March 15, 2013. Although previous versions of the Scheduling Order required the Reorganized Debtors to fund a reserve for the cure amount, the Reorganized

Debtors did not do so. The Third Modified Scheduling Order provided, in part, that the Reorganized Debtors would establish a reserve for the "full Cure Amount on or before June 30, 2013." In July 2013, the parties agreed that the Reorganized Debtors should fund a reserve account in the amount of $1.5 million, less fees and expenses. Thereafter, the Reorganized Debtors placed $1.25 million in an account (the "Cure Reserve") and sent the Prior Landlord confirmation of the account posting on July 9, 2013.

On January 15, 2014, this Court issued a Memorandum and Order denying the Reorganized Debtors' motion for reconsideration of the Summary Judgment Decision (D.I. 2777, D.I. 2778).

(B)    The Supplemental Assumption Motion

On December 18, 2013, after receiving expressions of interest related to the assignment of the Lease and the Debtors' related improvements to the leased premises (the "Leasehold Interests"),[5] and while the Motion for Reconsideration was pending, the Reorganized Debtors filed the Supplemental Motion pursuant to 11 U.S.C. §§105(a) and 365(a) and Fed.R.Bankr.P. 6006 and 9014 Authorizing the Assumption of the Lease (the "Supplemental Motion") (D.I. 2733), restating its request that the Court authorize assumption of the Lease upon determining that the Reorganized Debtors satisfied the requirements of Bankruptcy Code §365(b)(1). The Prior Landlord objected to the Supplemental Motion arguing, among other things, that the Reorganized Debtors failed to provide adequate assurance of their ability to pay the disputed cure claim or adequate assurance of future performance.

---

[5]The improvements include a building, parking areas, other structures and improvements located on the Property. (*See* Ex. D-5).

On January 8, 2014, an evidentiary hearing was held on the Supplemental Motion, at which time Matthew Messinger, the president and CEO of Trinity, testified that the Reorganized Debtors' had provided adequate assurance of their ability to pay the cure amount upon resolution of the Cure Dispute, and adequate assurance of the Reorganized Debtors' future performance under the Lease. (Tr. 1/8/2014 at 28:12 - 29:19). Also, the Reorganized Debtors represented that they were in serious negotiations with a prospective purchaser for the Leasehold Interests, but the prospective purchaser was not identified. (Tr. 1/8/2014 at 27:5 - 28:11).

At the February 20, 2014 status hearing, and at continued hearing dates thereafter, the Reorganized Debtors and Hartz advised the Court that, although the parties were often frustrated, settlement discussions were ongoing. The Court encouraged the parties to keep negotiating.

(C)    The Hartz Settlement Motion

At a hearing on March 14, 2014, the Reorganized Debtors and Hartz announced their agreement to resolve the Cure Dispute litigation and to transfer, sell and assign the Leasehold Interests to an entity designated by Hartz. (Tr. 3/14/2014 at 6:1- 6:7). The parties asked the Court to enter a proposed form of order approving the settlement that day. The Reorganized Debtors noted that the proposed form of order preserved whatever claims the Reorganized Debtors may have held against a potential purchaser of the Lease (*i.e.,* ASG Equities Secaucus LLC ("ASG")). Further, the proposed form of order included a settlement bar order, prohibiting certain "Barred Persons" from asserting non-contractual indemnity or contribution claims against Hartz arising out of the claims that were being settled between Hartz and the Reorganized Debtors. ASG objected to the proposed form of order, particularly the settlement bar relief in favor of Hartz. The Court required the Reorganized Debtors to file a motion seeking approval of their settlement

6

with Hartz under Fed.R.Bankr.P. 9019 to provide ASG the opportunity to be heard on its objection.

On March 18, 2014, the Reorganized Debtors filed a motion for approval of the settlement agreement with and assignment of Leasehold Interests to Hartz (D.I. 2858) (the "Hartz Settlement Motion"). The Hartz Settlement Motion sought approval of a settlement (the "Hartz Settlement") in which the Reorganized Debtors would assume, assign and sell the Leasehold Interests to One Emerson Lane Leasehold LLC or such other entity as designated by Hartz (the "Hartz Assignee") in exchange for (i) a payment of $24 million from the Hartz Assignee; (ii) the release of the Cure Reserve in the amount of $1.25 million to the Reorganized Debtors; (iii) a payment from the Reorganized Debtors to Hartz of $250,000 to resolve all issues related to the Cure Dispute; and (iv) mutual releases between Hartz and the Reorganized Debtors of any and all claims related to the Lease, the Leasehold Interests, the Hartz Settlement Motion, the Cure Dispute, and/or Potential Claims (as defined in the Hartz Settlement Motion).

(D)    The ASG Motion

While the Reorganized Debtors and Hartz were negotiating, ASG continued to make offers for the Lease. On March 17, 2014, ASG made another offer by email to the Reorganized Debtors, but, believing that the Hartz Settlement was still the best offer, the Reorganized Debtors filed the Hartz Settlement Motion on March 18, 2014. (Tr. 4/2/2014 at 47:18 - 49:23; Ex. D-8). Counsel for Hartz was listed as a recipient of the ASG email.

On March 21, 2014, ASG made another offer to the Reorganized Debtors that was more than $2.5 million higher than the Hartz Settlement, which was enough to cover the Reorganized Debtors' exposure on the Cure Dispute. (Tr. 4/2/2014 at 53:4 - 55:2). The Reorganized Debtors

7

and the Creditors' Representative deliberated and concluded that ASG's offer provided materially greater value to the creditors and the shareholders. On March 24, 2014, the Reorganized Debtors withdrew the Hartz Settlement Motion (D.I. 2863) and filed the ASG Motion. The terms of the March 24, 2014 ASG offer included, in pertinent part, (i) ASG's payment of $28.02 million for the Leasehold Interests, with 20% of the purchase price deposited into escrow; (ii) retention of the Cure Reserve in escrow; (iii) the Reorganized Debtors' release of ASG from claims related to the Lease, the Leasehold Interests, the Cure Dispute and discovery requests related to the motion seeking an examination of Hartz under Bankruptcy Rule 2004, filed on February 10, 2014 (D.I. 2802) (the "Rule 2004 Motion"). Hartz filed an objection to the ASG Motion (D.I. 2891). The Creditors' Representative filed a joinder in support of the ASG Motion (D.I. 2902).

On March 27, 2014, Hartz submitted another offer to the Reorganized Debtors for the Leasehold Interests, which increased the purchase price ($27 million), and completely released the Cure Reserve and settled the Cure Dispute. (Tr. 56:25 - 59:7; Ex. D-4). The new Hartz offer also required the Reorganized Debtors' agreement that the offer would not be subject to higher or better offers. (*Id.*).

Later on March 27, 2014, and continuing through early March 28, 2014 (prior to the next hearing before this Court), ASG again increased its offer to the Reorganized Debtors for the Leasehold Interests. (Tr. 4/2/2014 at 59:8 - 59:22; Ex. D-5). ASG's offer raised the purchase price to $30.25 million (*i.e.,* $29 million plus the release of the Cure Reserve of $1.25 million). (*Id.*). The Cure Reserve would be replaced with a letter of credit in the amount of $4.017 million to cover the Reorganized Debtors' exposure on the Cure Dispute. (*Id.*). ASG agreed that this

8

offer, identified by the Reorganized Debtors as the "ASG Baseline Bid," could be subject to

overbidding. (Tr. 4/2/2014 at 61:15 - 61:17). ASG agreed to have an auction related to the

Leasehold Interest, subject to a minimum overbid of $100,000, with no break-up fee or expense

reimbursement. (Tr. 4/2/2014 at 61:18 - 61:24). At the evidentiary hearing, Hartz indicated that

it would not participate in an auction for the Leasehold Interests.

The Reorganized Debtors ask the Court to grant the relief requested in the ASG Motion,

as modified by the ASG Baseline Bid. The Reorganized Debtors' board of directors supports the

ASG Baseline Bid. (Tr. 4/2/2014 at 65:10 - 65:12). Further, the Reorganized Debtors kept the

Creditors' Representative and other stakeholders informed of the offers received for the

Leasehold Interests and those stakeholders support the Reorganized Debtors' efforts in this

informal, but competitive, process and their request for approval of the ASG Baseline Bid. (Tr.

4/2/2014 at 65:24 - 66:22).

    (E)    <u>The Hartz Motion to Enforce Settlement</u>

On March 28, 2014, Hartz filed the Hartz Motion to Enforce Settlement. The

Reorganized Debtors and the Creditors' Representative filed objections to the Hartz Motion to

Enforce Settlement (D.I. 2898, D.I. 2900).[6]

**Discussion**

(1)    <u>The Hartz Motion to Enforce Settlement</u>

Hartz argues that the Hartz Settlement is binding upon the Reorganized Debtors and must

---

[6]Esopus Creek Value Series Fund, LP ("Esopus"), a pre-petition shareholder of Syms Corp., chairman of the Official Committee of Equity Holders formed in the Syms Corp. bankruptcy case, one of the backstop parties under the Plan, and a shareholder of Trinity, filed a joinder to the Creditors' Representative's Objection (D.I. 2903).

be enforced by this Court. Hartz relies upon non-bankruptcy case law regarding the enforceability of settlement agreements and public policy favoring them. *See, e.g., Green v. John H. Lewis & Co.,* 436 F.2d 389, 390 (3d Cir. 1970) ("An agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the Court, and even in the absence of a writing."); *Rosso v. Foodsales, Inc.,* 500 F.Supp. 274, 276 (E.D.Pa. 1980) ("The authority of the trial court to enforce a settlement agreement has as its foundation the policy favoring the amicable adjustment of disputes and the avoidance of costly and time-consuming litigation.").

The Reorganized Debtors also rely upon non-bankruptcy law to argue that the Hartz Settlement was not binding under state law, arguing that the failure to deliver unconditionally a signed writing precludes formation of an enforceable written contract. *Tallent v. Meredith,* 1988 WL 40182, *2 (Del. Super. Ct. Apr. 25, 1988); *Barbetta Agency v. Sciaraffa,* 135 N.J. Super. 488, 495, 343 A.2d 770, 774 (N.J. Super.Ct. App.Div. 1975). The Reorganized Debtors point out that Hartz's counsel sent an email advising that she was holding the bill of sale executed by her client in escrow "until the entry of the order authorizing closing."(*See* Ex. D-6).

Neither of these positions is dispositive to resolution of the specific matter before me, which requires consideration of settlements and compromises made in connection with this bankruptcy case. Compromises are favored in bankruptcy to "minimize litigation and expedite the administration of a bankruptcy estate." *Myers v. Martin (In re Martin),* 91 F.3d 389, 393 (3d Cir. 1996) quoting COLLIER ON BANKRUPTCY ¶9019.03[1] (15th ed. 1993). However, settlements often involve the disposition of assets of the estate, which may be subject to provisions of the

Bankruptcy Code.[7]  Pursuant to Bankruptcy Rule 9019, a court may approve a compromise or

settlement "[o]n motion by the trustee and after notice and a hearing."  Fed.R.Bankr.P. 9019(a).

> These requirements afford due process protections to parties interested in the
> disposition of the estate but who did not themselves enter into the settlement
> agreement. "[T]his schema [of notice, a hearing, and approval] is intended to protect
> both debtors and creditors (as well as trustees) by subjecting a trustee's actions to
> complete disclosure and review by the creditors of the estate and by the bankruptcy
> court."

*Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 351 (3d Cir. 1999) quoting

*Martin*, 91 F.3d at 395.

Hartz argues that court approval under Bankruptcy Rule 9019 is not necessary for the

Hartz Settlement because the parties seeking approval are reorganized debtors, not trustees or

debtors-in-possession subject to the restrictions of the Bankruptcy Code and Bankruptcy Rules.

Moreover, the Plan specifically provides that:

> On or after the Effective Date, the Reorganized Company may operate its businesses
> and may use, acquire and dispose of property and compromise or settle any Claims
> without supervision or approval by the Bankruptcy Court and free of any restrictions
> of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly
> imposed by the Plan or the Confirmation Order.

Plan, Art. VII.A.1.  Hartz's argument against the need for court approval must be rejected,

however, for three reasons: (1) the Reorganized Debtors and Hartz specifically made court

approval a condition of the Hartz Settlement; (2) the Hartz Settlement included resolution of the

Assumption Motion, which was pending prior to confirmation and is specifically referenced as

outstanding in the Confirmation Order (¶28); and (3) Hartz required inclusion of the Bar Order as

---

[7]For example, section 363(b)(1) provides, in pertinent part, that "[t]he trustee, *after notice and a hearing,* may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."  11 U.S.C. §363(b)(1) (emphasis added).

part of the Hartz Settlement, which could not be granted by this Court without notice and

opportunity for a hearing to affected parties.

"Courts are divided on the issue of whether an agreement is binding on the parties

pending approval by the Bankruptcy Court." *Pineo v. Turner (In re Turner)*, 274 B.R. 675, 679

(Bankr.W.D.Pa. 2002) (collecting cases and recognizing that some courts reason that the absence

of court approval does not mean that the parties did not reach an agreement, while other courts

have determined that an agreement cannot be binding until court approval). *See also Rinehart v.

Stroud Ford, Inc. (In re Stroud Ford, Inc.),* 205 B.R. 722, 724 (Bankr.M.D.Pa. 1996) (same).

The Court of Appeals for the Third Circuit specifically indicated in *Martin* and *Northview* that it

was not deciding that particular issue. *Turner,* 274 B.R. at 679.

In this case, the Reorganized Debtors argue that they no longer support the Hartz

Settlement Motion due to the higher offer from ASG and, therefore, leaving the Hartz Settlement

Motion pending before this Court would have been "an exercise in futility." Hartz argues that it

is not appropriate to consider the changed circumstances in this matter - - *i.e.*, ASG's higher offer

for the Lease - - because the Hartz Settlement did not provide that it was subject to higher and

better offers. The Hartz Settlement was silent on the issue of higher or better offers, even though

the record before me indicates that (1) Hartz knew that the Reorganized Debtors had been

negotiating with ASG for the Leasehold Interests at the time they agreed to the Hartz Settlement,

and (2) Hartz continued to engage actively in further bidding even *after* submission of the Hartz

Settlement Motion.

In *Martin*, the Third Circuit Court of Appeals determined that a trustee is not required to

champion a motion for approval of a settlement if circumstances change and the trustee no longer

12

believes the settlement is in the best interest of the estate. *Martin*, 91 F.3d at 394. The *Martin* Court recognized that a trustee's duties of good faith and fair dealing with the settlement party may conflict with the trustee's fiduciary relationship with *all* creditors of the estate that requires the trustee to maximize the value of the estate. *Id.* When such a conflict occurs, the trustee should inform the court of any changed circumstances since entry of the settlement agreement and the court will determine whether to approve the settlement. *Id. See also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.)*, 283 F.3d 159, 165 (3d Cir. 2002) (deciding that the bankruptcy court should examine the settlement in light of the present circumstances).

To determine whether the Hartz Settlement should be enforced, I must decide whether, in light of the changed circumstances, the Hartz Settlement should be approved.[8]

"[T]he decision whether to approve a compromise under Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D.Del. 1997). "Under the 'fair

---

[8]Perhaps the Reorganized Debtors should not have withdrawn the Hartz Settlement Motion, even in light of the changed circumstances in the form of the higher offer for the Lease from ASG. One party to a settlement should not be permitted to unilaterally withdraw or revoke a settlement agreement while the motion for bankruptcy court approval is pending. *Turner,* 274 B.R. at 681. In *Turner,* the chapter 7 trustee settled litigation arising from a debtor's claim for false arrest, false imprisonment and related damages. Before the trustee filed the motion for approval of the settlement, the district court granted the defendants' summary judgment motion, and the defendants withdrew the settlement offer. The *Turner* Court determined that, based on principles of contract law, the parties reached an agreement that was binding on the parties pending court approval. *Turner,* 274 B.R. at 681. Court approval was a condition subsequent to the contract, which the trustee had sought promptly. *Id.* The *Turner* Court noted that the settlement was not conditioned upon whether a decision was rendered on the summary judgment motion. *Id.* The Court concluded that it would be inequitable to allow a party to an otherwise enforceable agreement to revoke an offer merely because the court had not yet heard the motion to approve it. *Id.* citing *In re Frye,* 216 B.R. 166, 174 (Bankr.E.D.Va. 1997).

However, I need not determine whether the Hartz Settlement is enforceable prior to court approval because, as a practical matter and despite any procedural irregularities, the issue of whether to approve the Hartz Settlement is now before me via the Hartz Motion to Enforce Settlement.

and equitable' standard, [the court looks] to the fairness of the settlement to the other persons,

*i.e.*, the parties who did not settle." *Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d

639, 645 (3d Cir. 2006).

A court's evaluation of a settlement is based upon a review of the four *Martin* factors: (1)

the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity

of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

(4) the paramount interest of the creditors. *Martin,* 91 F.3d at 393 citing *Protective Committee*

*for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424-25, 88

S.Ct. 1157, 1163-64, 20 L.Ed.2d 1 (1968).[9]

If the Hartz Settlement is not approved, the Reorganized Debtors will continue to incur

the expense, inconvenience and delay of resolving the Cure Dispute.  The main piece of the Cure

Dispute (the "Percentage Rent Issue"), however, has already been decided in favor of Hartz. The

Reorganized Debtors have placed the amount determined by the Court to be owing on the

Percentage Rent Issue in escrow. Whether the Reorganized Debtors choose to incur the time and

cost of pursuing an appeal of the Percentage Rent Issue is within their control.  The remaining

unresolved Cure Dispute issues should not involve a great expense for the Reorganized Debtors.

Although settlement with Hartz of the Cure Dispute would have provided value to the

Reorganized Debtors, the ASG Baseline Bid eliminates the Reorganized Debtors' exposure for

---

[9]In *RFE Industries*, the Third Circuit noted that consideration of the paramount interest of
shareholders, rather than creditors, was consistent with the purpose of the *Martin* test, *i.e.*, to maximize
recovery of those to whom the company has obligations. *RFE Indus.*, 283 F.3d at 165. The creditors in
*RFE Industries* had already received full payment at the time the Court considered approval of a
settlement agreement.  In this case, I consider the paramount interests of both creditors and shareholders
of the Reorganized Debtors, since the Plan provides for full payment to unsecured creditors (except for
landlords).  It is the expectation of all parties that there will be distributions to shareholders.

the Cure Dispute by providing for the posting of a letter of credit to pay for Hartz's cure claim. Further, the ASG Baseline Bid is more than $5 million higher than the Hartz Settlement and $2 million higher than the increased offer made by Hartz on March 27, 2014. The Reorganized Debtors, the Creditors' Representative, and Esopus prefer the ASG Baseline Bid over the Hartz Settlement. The higher offer for the Leasehold Interests and the letter of credit protection for the Reorganized Debtors' liability (and potential liability) on the Claim Dispute, together with the preference of the Reorganized Debtors and the stakeholders, lead me to conclude that the Hartz Settlement should not be approved under Bankruptcy Rule 9019.

The Hartz Motion to Enforce Settlement will be denied.


(2)    The ASG Motion

Also pending before this Court is the ASG Motion, in which the Reorganized Debtors seek court approval of the ASG Baseline Bid. Hartz objects to the ASG Motion, arguing that: (i) the Lease cannot be assumed because it was terminated when it was not assumed within the time period set forth in Bankruptcy Code §365(d)(4) for unexpired leases of nonresidential real property; (ii) alternatively, if the Lease was not terminated, the Reorganized Debtors have not met the requirements for assumption of the Lease under Bankruptcy Code §365(b)(1) or for assignment of the Lease under Bankruptcy Code §365(f)(2); and (iii) the Reorganized Debtors have not demonstrated that they are entitled to a waiver of Bankruptcy Rules 6004(h) and 6006(d), which provide that an order assuming, assigning or selling property under Bankruptcy Code §§365 and/or 363 shall not be effective for fourteen days after entry.

(A)     Whether the Lease was terminated under Bankruptcy Code §365(d)(4)?

Hartz argues that the Lease was deemed rejected pursuant to Bankruptcy Code

§365(d)(4), which provides in pertinent part:

(A)     Subject to subparagraph (B), an unexpired lease of nonresidential real
        property under which the debtor is the lessee shall be deemed rejected, and
        the trustee shall immediately surrender that nonresidential real property to the
        lessor, if the trustee does not assume or reject the unexpired lease by the
        earlier of - -
        (i)     the date that is 120 days after the date of the order for relief; or
        (ii)    the date of the entry of an order confirming a plan.

(B)(i)   The court may extend the period determined under subparagraph (A), prior
         to the expiration of the 120-day period, for 90 days on the motion of the
         trustee or lessor for cause.
    (ii)  If the court grants an extension under clause (i), the court may grant a
          subsequent extension only upon prior written consent of the lessor in each
          instance.

11 U.S.C. §365(d)(4).  Since the enactment of the Bankruptcy Abuse and Prevention and

Consumer Protection Act ("BAPCPA") in 2005, which amended §365(d)(4), at least one court

has held that filing a motion to assume an unexpired lease satisfies the deadline of Bankruptcy

Code §365(d)(4) and prevents deemed rejection of the lease. *Cousins Properties, Inc. v. Treasure

Isles HC, Inc. (In re Treasure Isles HC, Inc.)*, 462 B.R. 645 (B.A.P. 6th Cir. 2011).[10]  The

*Treasure Isles* Court reasoned:

> [T]he deadline provisions of 11 U.S.C. § 365(d)(4) are intended to set a "bright line"
> regarding how much time the trustee has to decide whether to assume or reject a
> lease. Congress does not specify the manner in which the trustee is to announce the
> decision, although case law consistently holds that the mere filing of a motion to
> assume is sufficient. If we were to adopt the Appellant's interpretation of 11 U.S.C.

---

[10]The *Treasure Isles* Court noted that "almost every pre-BAPCPA case addressing this issue
holds that a trustee need only file its motion to assume the lease prior to the deadline under 11 U.S.C.
§365(d)(4) and does not have to obtain court approval of the same prior to the deadline to avoid having
its executory contract deemed rejected." *Treasure Isles*, 462 B.R. at 649 (listing cases).

§ 365(d)(4), such certainty would be destroyed. The period within which the trustee
could consider assumption or rejection would vary widely, depending on the vagaries
of a particular bankruptcy court's caseload and local procedures.

*Treasure Isles,* 462 B.R. at 650. Moreover, when Congress intends to set a time by which

the court must act, it says so explicitly.[11]

Here, on February 29, 2012, the Court entered an order approving the Debtors' request for

an extension of time for the Debtors to decide whether to assume or reject the Lease (D.I. 886).

The extended deadline was May 30, 2012. On May 8, 2012, the Debtors filed the original

Assumption Motion. The Prior Landlord and Hartz have known that the Debtors intended to

assume the Lease since the Assumption Motion was filed, despite the ongoing litigation over the

Cure Dispute. The Prior Landlord and Hartz have accepted rent payments from the Debtors and

Reorganized Debtors following May 2012. (Tr. 4/2/2014 at 64:8 - 64:10). Although the Prior

Landlord and Hartz have argued that the Debtors or Reorganized Debtors have failed to meet the

requirements to assume the Lease, they have never before asserted that the Lease had been

deemed rejected. (Tr. 4/2/2014 at 64:4 - 64:7). The Plan and Confirmation Order provided for

the rejection of certain unexpired leases, but specifically excepted the Lease from rejection, due

to the pending Assumption Motion and the pending contested matter to determine the

outstanding cure obligation. (*See* Confirmation Order (D.I. 1983), ¶31; Plan §IX.A).

------------------------

[11]*See, e.g.,* 11 U.S.C. §362(e)(1) providing, in pertinent part: "Thirty days after a request under
subsection (d) of this section for relief from the stay of any act against property of the estate under
subsection (a) of this section, such stay is terminated with respect to the party in interest making such
request, unless the court, after notice and a hearing, orders such stay continued in effect pending the
conclusion of, or as a result of, a final hearing and determination under subsection (d) of this section . . . .
If the hearing under this subsection is a preliminary hearing, then such final hearing shall be concluded
not later than thirty days after the conclusion of such preliminary hearing, unless a 30-day period is
extended with the consent of the parties in interest or for a specific time which the court finds is required
by compelling circumstances."

Based on the record before me and the reasoning of the *Treasure Isles* Court, I conclude that the Lease has not been deemed rejected.

(B)    Whether the Reorganized Debtors have met the requirements for assumption of the Lease under Bankruptcy Code §365(b)(1) and for assignment under Bankruptcy Code §365(f)(2)?

Hartz objects to the Reorganized Debtors' efforts to assume and assign the Lease to ASG because, they argue, the Reorganized Debtors have not met the requirements of Bankruptcy Code §365(b)(1) for assumption of the Lease or the requirements of Bankruptcy Code §365(f)(2) for assignment of the Lease.

"Section 365 enables the trustee to maximize the value of the debtor's estate by assuming executory contracts and unexpired leases that benefit the estate and rejecting those that do not." *L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.)*, 209 F.3d 291, 298 (3d Cir. 2000).  The Third Circuit further noted: "[b]ecause executory contracts and unexpired leases involve a continuing relationship between the debtor and other parties, section 365 'gives special treatment to rights and liabilities flowing from these contracts and leases.'" *Id.* quoting 2 Norton Bankruptcy Law & Practice 2d §39:1, at 39-6 (William L. Norton, Jr. ed., 1997).

Initially, a debtor must show a sound business purpose for assuming an unexpired lease. *Androse Assoc. of Allaire, LLC v. Great Atlantic & Pacific Tea Co., Inc. (In re Great Atlantic & Pacific Tea Co., Inc.),* 472 B.R. 666, 672 (S.D.N.Y. 2012); *In re ANC Rental Corp., Inc.,* 278 B.R. 714, 723 (Bankr.D.Del. 2002).  The *Great Atlantic & Pacific Tea Co.* Court determined:

> [I]n reviewing a debtor's decision to assume a lease, the bankruptcy court places itself in the position of the debtor-in-possession and determines whether assuming it would be a good business decision or a bad one. . . . The Code does not condition the right to assume on lack of prejudice to the non-debtor party and the disruption of non-debtors' expectations of profitable business arrangements is common in

bankruptcy proceedings. Thus, as long as assumption of a lease appears to enhance a debtor's estate, Court approval of a debtor in possession's decision to assume the lease should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code.

*Great Atlantic & Pacific Tea Co.,* 472 B.R. at 672-73 (internal punctuation and citations omitted). The Reorganized Debtors have shown that they will receive millions of dollars in value from the assumption and assignment of this long-term, advantageous Lease. This value, together with the Reorganized Debtors' obligation under the Plan to maximize the value of the assets, provide a sound business purpose for assuming the Lease.

Pursuant to §365(b)(1)(A), if there has been a default in an unexpired lease of the debtor, the trustee may not assume such lease unless, at the time of assumption, the trustee: (1) cures or provides adequate assurance that it will promptly cure the default; (2) compensates or provides adequate assurance of prompt future compensation for actual pecuniary loss resulting from the default; and (3) provides adequate assurance of future performance under the lease. *Rickel*, 209 F.3d at 298; 11 U.S.C. §365(b)(1).

Section 365 also authorizes assignment of an or unexpired lease, if (1) the trustee has properly assumed the lease, and (2) adequate assurance of future performance by the assignee is provided. 11 U.S.C. §365(f)(2). "This requirement provides needed protection to the non-debtor party because the assignment relieves the trustee and the bankruptcy estate from liability for breaches arising after the assignment." *Cinicola v. Scharffenberger*, 248 F.3d 110, 120 (3d Cir. 2001).

In order to assume the Lease, Hartz argues that Reorganized Debtors must provide adequate assurance of the Reorganized Debtors' ability to cure the defaults under the Lease by:

(i) paying $1.25 million to cure the Percentage Rent default that this Court has already

determined is owing, and (ii) establishing an escrow reserve in the amount of $517,000 for the

remaining two components of the Cure Dispute (*i.e.*, Additional Rent and attorneys fees). The

Reorganized Debtors argue, in response, that the Code does not specifically require payment or a

reserve account, but "adequate assurance" of their ability to promptly cure the defaults, once the

cure claim is finalized.

The term "adequate assurance" is not defined in the Bankruptcy Code. The phrase is

adopted from the Uniform Commercial Code and courts have recognized that what constitutes

"adequate assurance of future performance" must be determined by consideration of the facts of

the proposed assumption. *Cinicola*, 248 F.3d at 120 n.10 quoting *Richmond Leasing Co. v.*

*Capital Bank, N.A.,* 762 F.2d 1303, 3109-10 (5th Cir. 1985); *Great Atlantic & Pacific Tea,* 472

B.R. at 674 ("The term 'adequate assurance of future performance' is not statutorily defined, but

courts have determined that "[w]hether 'adequate assurance of future performance' has been

provided is determined by the facts and circumstances of each case."). A non-exclusive list of

factors that a court may review to determine whether a landlord is adequately assured includes

"the debtor's payment history, the extent and history of defaults, presence of a guarantee and/or a

security deposit, evidence of profitability, a plan with earmarked funds exclusively for the

landlord, the general outlook in the debtor's industry, and whether the lease is at or below the

prevailing market rate." *Great Atlantic & Pacific Tea Co.,* 472 B.R. at 675 (citations omitted).

Section 365, however, "does not give a landlord the right to improve its position upon the

bankruptcy of a tenant. The statute affords no relief to a landlord simply because it might seek to

escape the bargain it made." *Id.* quoting *In re Rock 49[th] Rest. Corp.*, No. 08-14557, 2010 WL

1418863, at *7 (Bankr.S.D.N.Y. Apr. 7, 2010).

To provide evidence of their adequate assurance obligations, the Reorganized Debtors provided the testimony of Ezra Sultan, the executive vice president of ASG, and chief financial office of an affiliated company, Century 21 Department Stores, a position he has held for about 35 years. (Tr. 4/2/2014 at 109:24 - 111:4). Mr. Sultan explained that ASG was affiliated with other companies (including ASG Equities, LLC and Century 21 Department Stores) which were commonly owned by members of the Gindi family.[12] (*Id.*). His positions with those companies gave him familiarity with the finances of the companies and experience in other real estate transactions the companies have undertaken. (*Id.*).

Mr. Sultan testified that ASG has already provided the deposit of approximately $6 million to the Reorganized Debtors, which is being held in escrow, for the ASG Baseline Bid, and which will be forfeited if the transaction does not close due to ASG's fault. (Tr. 4/2/2014 at 111:20 - 112:9). Further, ASG has been pre-approved for the letter of credit. (Tr. 4/2/2014 at 118:10 - 118:18).

The Reorganized Debtors argue that the ASG letter of credit in the amount of $4 million provides adequate assurance that any defaults under the Lease will be promptly cured when the cure claim is settled or determined by a final order of this Court. The letter of credit amount exceeds amount of the disputed cure claim, which is composed of a Percentage Rent claim (already determined by this Court to be in the amount of $1.5 million, less costs and expenses, or $1.25 million, the "Percentage Rent Claim"), the Additional Rent claim of approximately

---

[12]The members of the Gindi family and their respective interests in ASG were identified at the hearing. (Tr. 4/2/2014 at 116:7 - 117:17).

21

$17,000, and the claim for indemnification of the landlord's attorney fees of approximately
$500,000.[13]

The Reorganized Debtors also argue that they have satisfied the requirements of
§365(f)(2) by providing adequate assurance of future performance by the assignee, ASG.  Mr.
Sultan testified that he had reviewed the tenant's obligations under the Lease and that ASG will
have the financial ability to satisfy those obligations going forward through funding by the
owners' equity contributions. (Tr. 4/2/2014 at 111:5 - 113:16). He testified that the owners have
a collective net worth of in excess of $500 million.  (Tr. 4/2/2014 at 115:17 - 115:21).  ASG will
be owned by five family members: two will hold a 25% interest each, and three will hold a
162/3% interest each. (Tr. 4/2/2014 at 116:7 - 117:17). Mr. Sultan's testimony was credible, and
Hartz provided neither evidence nor testimony on cross-examination to suggest otherwise.

Based on the record in this case, I conclude that, to meet the requirement of Bankruptcy
Code §365(b)(1) that the Reorganized Debtors provide adequate assurance that they will
*promptly* cure any defaults at the time the Lease is assumed, the Reorganized Debtors must (i)
pay the Percentage Rent Claim of $1.25 million; and (ii) obtain the ASG letter of credit to cover
the remaining claims of the Cure Dispute.  The Percentage Rent Claim must be *paid* because this
Court has already decided that the Percentage Rent is due in the Summary Judgment Decision
and a decision denying the Reorganized Debtors' motion for reconsideration of the Summary

---

[13]The Prior Landlord asserted that the total amount of the Percentage Rent claim was "no less
than $3,510,000," but in the Summary Judgment Decision, I determined that the Percentage Rent Claim
was $1.5 million, less expenses. The letter of credit provides further adequate assurance of payment for
the full amount of the Percentage Rent Claim, as asserted by the Prior Landlord, which could be owed if
Hartz successfully appeals the Summary Judgment Decision.

Judgment Decision. Hartz will not be required to wait indefinitely for the remaining components of the cure claim to be resolved.[14] I am satisfied by the testimony of Mr. Sultan that ASG has been preapproved for the letter of credit and will provide it at closing of the ASG Baseline Bid.

Upon satisfaction of the foregoing adequate assurance obligations for assumption of the Lease, the Debtors can assign the Lease to ASG under Bankruptcy Code 365(f)(2). The testimony of Mr. Sultan provides evidence that ASG is ready, willing and able to provide the funds to close on the ASG Baseline Bid and has the financial ability to perform the Lease obligations going forward. Mr. Sultan testified that the owners of ASG would not fail to perform the tenant's obligations under the Lease and risk losing their $34 million dollar investment. (Tr. 4/2/2014 at 113:9 - 113:16).

(C)    Whether the ASG Motion should be approved?

Upon concluding that the Reorganized Debtors can meet the requirements for assumption and assignment of the Lease, the Court must determine whether the ASG Motion should be approved.  As stated by the Court in *Cinicola*:

> For sales in bankruptcy, § 363 authorizes the trustee to use, sell, or lease property of the estate outside the ordinary course of business after providing notice and hearing. 11 U.S.C. § 363(b)(1).  The Bankruptcy Code broadly defines the property of the bankruptcy estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).  Executory contracts and leases also fall under this definition.

*Cinicola*, 248 F.3d at 121 citing *Rickel*, 209 F.3d at 303.  Transactions under §363 must be based

---

[14]The Reorganized Debtors point out, however, that the Plan provides that "[N]o payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim." Plan, §VIII.I.2. The objection to the Percentage Rent Claim has been resolved by two court orders.  To provide adequate assurance of prompt payment, the Percentage Rent Claim must be paid.

upon the sound business judgment of the debtor or trustee. *In re MF Global, Inc.,* 467 B.R. 726,

730 (Bankr.S.D.N.Y. 2012) citing *In re Chateaugay Corp.*, 973 B.2d 141 (2d Cir. 1992); *Comm.*

*Of Equity Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983).

> Generally, "[w]here the debtor articulates a reasonable basis for its business decisions
> (as distinct from a decision made arbitrarily or capriciously), courts will generally not
> entertain objections to the debtor's conduct." *In re Johns–Manville Corp.,* 60 B.R.
> 612, 616 (Bankr.S.D.N.Y.1986). If a valid business justification exists, then a strong
> presumption follows that the agreement at issue was negotiated in good faith and is
> in the best interests of the estate; the burden of rebutting that presumption falls to
> parties opposing the transaction. *See In re Integrated Res., Inc.,* 147 B.R. 650, 656
> (S.D.N.Y.1992). Once a court determines that a sound business justification exists,
> the court must determine whether (i) the debtor has provided all interested parties
> with adequate and reasonable notice, (ii) the sale price is fair and reasonable, and (iii)
> the purchaser is proceeding in good faith. *See In re Del. & Hudson Ry. Co.*, 124 B.R.
> 169, 176 (D.Del.1991).

*MF Global,* 467 B.R. at 730. Here, the Reorganized Debtors have articulated a reasonable basis

for their decision to accept the ASG Baseline Bid. As demonstrated by the record before me, the

ASG Baseline Bid was the highest offer received for the Leasehold Interests.  The price is fair

and reasonable because, although a formal auction was not held, the Reorganized Debtors

marketed the Leasehold Interests and the ASG Baseline Bid was received after two parties made

competing offers to the Reorganized Debtors. Further, the loss of the Cure Dispute settlement is

justified, since the Reorganized Debtors' exposure on the Cure Dispute is covered by the $4

million letter of credit that will be posted by ASG. Moreover, the reasonableness of the ASG

Baseline Bid is shown by the support of the Creditors' Representative and Esopus.

Hartz asserts a lack of good faith by both the Reorganized Debtors and ASG in

connection with the ASG Baseline Bid. The record describes the ongoing negotiations between

the Reorganized Debtors and ASG and shows that Hartz was aware that ASG continued to

submit offers to the Reorganized Debtors for the Leasehold Interests and, further, that Hartz, in response to the offers made by ASG after the Hartz Settlement Motion was filed, increased its own offer and requested that the Reorganized Debtors agree to put an end to the competitive bidding. The record before me shows two parties interested in obtaining the Leasehold Interests and the Reorganized Debtors engaging in arms-length negotiations with those parties. There is nothing in the record which would support a finding that either the Reorganized Debtors or ASG has not acted in good faith.

Finally, I also conclude that the ASG Motion should be approved based on a review of the four *Martin* factors: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. *Martin,* 91 F.3d at 393. Factors (1), (2), and (3) are essentially taken out of play by the posting of the letter of credit. Here, it is factor (4) which provides the most important benchmark. The settlement piece of the ASG Motion involving the release of claims between ASG and the Reorganized Debtors is justified by the higher price being paid by ASG for the Leasehold Interests. Further, as shown by the support of those most directly affected - - the Creditors' Representative and Esopus - - the settlement is in the best interest of the creditors.[15]

(D)     Whether the fourteen-day stay of Bankruptcy Rules 6004(h) and 6006(d) may be waived?

In the ASG Motion, the Reorganized Debtors ask this Court to waive the 14-day stay

---

[15]Hartz also objected to language in a revised proposed form of order approving the ASG Motion that enjoined Hartz from asserting claims against the Reorganized Debtors based upon the withdrawal of the Hartz Settlement. This relief was not requested in the ASG Motion; moreover, there is nothing in the record that would support the inclusion of an injunction to prevent Hartz from asserting such claims.

found in Bankruptcy Rules 6004(h) and 6006(d) of bankruptcy court orders authorizing the use, sale or lease of property or the assignment of executory contracts or unexpired leases.

Bankruptcy Rule 6004(h) provides: "An order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

Bankruptcy Rule 6006(d) provides: "An order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to "provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented. A short period of time is often needed and essential to an objecting party intending to appeal because, if the sale [or assignment] is closed in the absence of a stay, any appeal by an objecting party may well be moot." 10 COLLIER ON BANKRUPTCY ¶6004.11, ¶6006.04 (16th ed. 2014). The treatise further provides:

> Neither the rule nor the Advisory Committee Note addresses the question of when a court should order otherwise and either eliminate or reduce the 14-day stay period. First, because the purpose of the rule is to protect the rights of an objecting party, the court should eliminate the 14-day stay period and allow the sale or other transaction to close immediately in all cases where there has been no objection to the procedure. Second, *if an objection has been filed and is being overruled, the court should eliminate or reduce the 14-day stay period only upon a showing that there is a sufficient business need to close the transaction within the 14-day period and that the interests of the objecting party, taking into account the likelihood of success on appeal, are sufficiently protected.* If the objecting party informs the court that it intends to appeal and seek a stay, then the stay period should not be reduced to less than an amount of time sufficient to allow the objecting party to seek a stay, unless the court determines that the need to proceed sooner outweighs the objecting party's interests.

26

*Id.* (emphasis added).

The Reorganized Debtors argue that a waiver of the 14-day stay is necessary and appropriate here to expedite and remove uncertainty regarding the proposed assignment and sale of the Leasehold Interests. They further state: "A fourteen-day stay of the effectiveness of the Proposed Order may unnecessarily delay, complicate, or jeopardize the assignment and sale and the benefits to the Reorganized Debtors' stakeholders." (ASG Motion, ¶35).

While I understand the Reorganized Debtors' and ASG's desire to close quickly and, thereby, eliminate uncertainty regarding transfer of the Lease, a waiver of the entire 14-day period is not appropriate here. The Reorganized Debtors have not articulated an urgent business need requiring immediate closing. Hartz has objected to the assignment and sale of the Lease, and they are entitled to a reasonable period of time to file an appeal and request a stay from the District Court to prevent its appeal from possibly becoming moot.[16] However, to balance the competing interests, and as a courtesy to the District Court, I will reduce the stay of Bankruptcy Rules 6004(h) and 6006(d) to seven days from the date of entry of an order.

## Conclusion

For the reasons set forth above, the Hartz Motion to Enforce Settlement (D.I. 2877) will be denied, and the ASG Motion (D.I. 2864) will be granted, in part, as follows:

(1)     The Reorganized Debtors will be permitted to assign the Lease upon providing adequate assurance of their ability to cure promptly the defaults under the Lease by (i) paying the Percentage Rent Claim of $1.25 million at closing of the ASG Baseline Bid, and (ii) obtaining the ASG letter of credit in an appropriate amount

---

[16]I do not opine on whether any such Order is immediately appealable.

to cover the Reorganized Debtor's exposure on the remaining cure claims;

(2)    The Reorganized Debtors' proposed sale of the Leasehold Interests to ASG in accordance with the terms of the ASG Baseline Bid is approved; and

(3)    The 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d) is reduced to a 7-day stay, effective from the date of entry of the Order to be submitted by the Reorganized Debtors, as stated below.

Further, because the relief requested by the Reorganized Debtors in the Original Assumption Motion (D.I. 1247) and the Supplemental Assumption Motion (D.I. 2733) has been superseded by the relief sought in the ASG Motion, the Original Assumption Motion and the Supplemental Assumption Motion are determined to be moot.  The Rule 2004 Motion (D.I. 2802) will be marked as withdrawn.

The Reorganized Debtors shall submit a proposed form of Order, under certification, consistent with this Memorandum.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: April 29, 2014